DAVID H. KRAMER, SBN 168452
Email: dkramer@wsgr.com
MAURA L. REES, SBN 191698
Email: mrees@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300

ERIC P. TUTTLE, SBN 248440
Email: eric.tuttle@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone: (206) 883-2500

*Counsel for Defendant*
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| J.L., C.B., K.S., P.M., N.G., R.F., J.D., and G.R. individually, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | CASE NO.: 3:23-cv-03440-AMO <br><br> **DEFENDANT GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> **Filed Concurrently Herewith:** <br> Request for Judicial Notice and Consideration of Materials Incorporated by Reference <br><br> Date: January 25, 2024 <br> Time: 2:00 p.m. <br> Courtroom: 10 <br> Judge: Hon. Araceli Martínez-Olguín |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ..................................................................... 1

STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED ........................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

PLAINTIFFS' ALLEGATIONS........................................................................... 3

ARGUMENT ............................................................................................... 4

I.     The Complaint Violates Rule 8's Plain Statement Requirement. ......................... 4

II.    Plaintiffs Lack Article III Standing for Their State Law Claims Because They Have Failed to Allege Injury in Fact (Counts 1-7). ....................................... 7

III.   Plaintiffs Fail to State a Claim for Negligence (Count 2). ................................ 10

IV.   Plaintiffs Fail to State Claims for Invasion of Privacy and Intrusion Upon Seclusion (Counts 3-4). ........................................................................ 12

V.    Plaintiffs Fail to State Claims for Larceny and Conversion (Counts 5-6). ........... 15

VI.   Plaintiffs Fail to State a Claim for Unjust Enrichment (Count 7). ...................... 18

VII.  Plaintiffs Fail to State a Claim under California's Unfair Competition Law (Count 1). ........................................................................................ 19

VIII. J.L. Fails to State a Claim for Copyright Infringement Based on Bard or Its Outputs (Count 8)............................................................................. 24

IX.   J.L. Fails to State a Claim Under 17 U.S.C. § 1202 (Count 10). ....................... 25

X.    The Copyright Act Preempts Plaintiffs' Claims for Negligence, Conversion, Larceny, Unjust Enrichment, and Unfair Competition (Counts 1, 2, 5-7)............ 28

CONCLUSION ........................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aguilar v. Hartford Accident & Indem. Co.*,
  2019 WL 2912861 (C.D. Cal. Mar. 13, 2019) ...................................................................11

*Antoine v. Berkshire Hathaway Guard Ins.*,
  2023 U.S. Dist. LEXIS 13087 (C.D. Cal. Jan. 25, 2023)...................................................22

*Archer v. United Rentals, Inc.*,
  195 Cal. App. 4th 807 (2011)............................................................................................20

*Armstrong-Harris v. Wells Fargo Bank, N.A.*,
  2022 WL 3348426 (N.D. Cal. Aug. 12, 2022)...........................................................19, 20

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015)..............................................................................................18

*Author's Guild v. Google, Inc.*,
  804 F.3d 202 (2d Cir. 2015).................................................................................................6

*Bass v. Facebook, Inc.*,
  394 F. Supp. 3d 1024 (N.D. Cal. 2019) ............................................................................17

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
  2020 WL 1877707 (N.D. Cal. Apr. 15, 2020)...................................................................24

*Bender v. LG Elecs. U.S.A., Inc.*,
  2010 WL 889541 (N.D. Cal. Mar. 11, 2010) .....................................................................6

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*,
  149 F. Supp. 3d 1167 (N.D. Cal. 2015) ............................................................................24

*Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*,
  373 F.3d 296 (2d Cir. 2004).............................................................................................29

*Burns v. Mammoth Media, Inc.*,
  2023 WL 5608389 (C.D. Cal. Aug. 29, 2023)....................................................................9

*Byars v. Sterling Jewelers, Inc.*,
  2023 WL 2996686 (C.D. Cal. Apr. 5, 2023).......................................................................8

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011).............................................................................................5

*Cahen v. Toyota Motor Corp.*,
  717 F. App'x 720 (9th Cir. 2017)........................................................................................8

*Calhoun v. Google LLC*,
  526 F. Supp. 3d 605 (N.D. Cal. 2021) ........................................................................16, 18

*Chiu v. NBS Default Servs., LLC*,
  2015 WL 1221399 (N.D. Cal. Mar. 17, 2015)..................................................................19

*Cottle v. Plaid Inc.*,
   536 F. Supp. 3d 461 (N.D. Cal. 2021) ...............................................................20

*Dang v. Samsung Elecs. Co.*,
   2018 WL 6308738 (N.D. Cal. Dec. 3, 2018) ......................................................23

*Dielsi v. Falk*,
   916 F. Supp. 985 (C.D. Cal. 1996)......................................................................30

*Doe 1 v. GitHub, Inc.*,
   2023 WL 3449131 (N.D. Cal. May 11, 2023) ...........................................8, 9, 12

*Dolls Kill, Inc. v. Zoetop Bus. Co.*,
   2022 WL 16961477 (C.D. Cal. Aug. 25, 2022) ..................................................28

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010)............................................................................19

*ExperExchange, Inc. v. Doculex, Inc.*,
   2009 WL 3837275 (N.D. Cal. Nov. 16, 2009).....................................................30

*Experian Info. Sols., Inc. v. Nationwide Mktg. Servs. Inc.*,
   893 F.3d 1176 (9th Cir. 2018).............................................................................25

*Fashion Nova, LLC v. Blush Mark, Inc.*,
   2023 WL 2540418 (C.D. Cal. Mar. 15, 2023) ...................................................27

*Firoozye v. Earthlink Network*,
   153 F. Supp. 2d 1115 (N.D. Cal. 2001) ..............................................................30

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
   2015 WL 263556 (D. Haw. Jan 21, 2015) .........................................................28

*Gardiner v. Walmart, Inc.*,
   2021 WL 4992539 (N.D. Cal. July 28, 2021) ....................................................16

*Google LLC v. Oracle Am., Inc.*,
   141 S. Ct. 1183 (2021) ..........................................................................................6

*Green Desert Oil Grp. v. BP W. Coast Prods.*,
   2011 WL 5521005 (N.D. Cal. Nov. 14, 2011)..............................................10, 11

*Greenstein v. Noblr Reciprocal Exch.*,
   585 F. Supp. 3d 1220 (N.D. Cal. 2022) ................................................................8

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) ................................................................5

*Hall v. SeaWorld Ent., Inc.*,
   2015 WL 9659911 (S.D. Cal. Dec. 23, 2015)...............................................22, 23

*Hammerling v. Google LLC*,
   2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ....................................................14

*Harrington v. Pinterest, Inc.*,
   2022 WL 4348460 (N.D. Cal. Sept. 19, 2022)...............................................26, 27

*Hart v. TWC Prod. & Tech. LLC,*
    526 F. Supp. 3d 592 (N.D. Cal. 2021) ...................................................................16

*Heldt v. Guardian Life Ins. Co. of Am.,*
    2019 WL 651503 (S.D. Cal. Feb. 15, 2019) .........................................................13

*Hill v. Nat'l Collegiate Athletic Assn.,*
    7 Cal. 4th 1 (1994)........................................................................................... 13, 14

*Hodges v. Apple Inc.,*
    2013 WL 4393545 (N.D. Cal. Aug. 12, 2013) .....................................................23

*Holmes v. Johnson & Johnson,*
    617 F. App'x. 639 (9th Cir. June 30, 2015) .........................................................23

*Huynh v. Quora, Inc.,*
    2020 WL 7408230 (N.D. Cal. June 1, 2020) .......................................................11

*I.C. v. Zynga, Inc.,*
    600 F. Supp. 3d 1034 (N.D. Cal. 2022) .............................................................8, 9

*In re Facebook, Inc., Consumer Priv. User Profile Litig.,*
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ...........................................................10, 16

*In re Facebook, Inc. Internet Tracking Litig.,*
    956 F.3d 589 (9th Cir. 2020)................................................................................10

*In re Google, Inc. Priv. Policy Litig.,*
    58 F. Supp. 3d 968 (N.D. Cal. 2014) ..................................................................14

*In re Google Location History Litig.,*
    428 F. Supp. 3d 185 (N.D. Cal. 2019) ................................................................12

*In re iPhone Application Litig.,*
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..............................................................16

*In re Meta Browser Tracking Litig.,*
    No. 22-cv-5267-AMO, ECF No. 91 (N.D. Cal. Aug. 17, 2023)........................8, 9

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,*
    903 F. Supp. 2d 942 (S.D. Cal. 2012) .................................................................11

*In re Yahoo Mail Litig.,*
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) .............................................................14, 15

*Johnson v. Maker Ecosystem Growth Holdings, Inc.,*
    2023 WL 2191214 (N.D. Cal. Feb. 22, 2023)......................................................11

*Katz-Lacabe v. Oracle Am., Inc.,*
    2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) .......................................................20

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120 (9th Cir. 2009)........................................................................21, 22

*Kipp Flores Architects, LLC v. Pradera SFR, LLC,*
    2022 WL 1105751 (W.D. Tex. Apr. 13, 2022) ....................................................28

*Kirk Kara Corp. v. W. Stone & Metal Corp.*,
  2020 WL 5991503 (C.D. Cal. Aug. 14, 2020) .................................................28

*Klauber Bros., Inc. v. Roma Costumes, Inc.*,
  2023 WL 3903908 (C.D. Cal. June 7, 2023) .................................................24

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) .................................................24

*Kuciemba v. Victory Woodworks, Inc.*,
  14 Cal. 5th 993 (2023) .................................................11

*Kwikset Corp. v. Superior Ct.*,
  51 Cal. 4th 310 (2011) .................................................19

*Langan v. United Servs. Auto. Ass'n*,
  69 F. Supp. 3d 965 (N.D. Cal. 2014) .................................................10

*Laws v. Sony Music Ent., Inc.*,
  448 F.3d 1134 (9th Cir. 2006) .................................................29

*Litchfield v. Spielberg*,
  736 F.2d 1352 (9th Cir. 1984) .................................................24

*Lloyd v. Facebook, Inc.*,
  2022 WL 4913347 (N.D. Cal. Oct. 3, 2022) .................................................12, 13, 14

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) .................................................16, 17

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .................................................7

*Madrid v. Perot Sys. Corp.*,
  130 Cal. App. 4th 440 (2005) .................................................24

*Maloney v. T3Media, Inc.*,
  853 F.3d 1004 (9th Cir. 2017) .................................................28, 29

*Marolda v. Symantec Corp.*,
  672 F. Supp. 2d 992 (N.D. Cal. 2009) .................................................23

*McCluskey v. Hendricks*,
  2023 WL 3376564 (9th Cir. May 11, 2023) .................................................13

*McCoy v. Alphabet, Inc.*,
  2021 WL 405816 (N.D. Cal. Feb. 2, 2021) .................................................13

*McGee v. S-L Snacks Nat'l*,
  982 F.3d 700 (9th Cir. 2020) .................................................7

*McGowan v. Weinstein*,
  505 F. Supp. 3d 1000 (C.D. Cal. 2020) .................................................15, 17, 18

*McHenry v. Renne*,
  84 F.3d 1172 (9th Cir. 1996) .................................................5, 7

*Media.net Advert. FZ-LLC v. NetSeer, Inc.*,
    156 F. Supp. 3d 1052 (N.D. Cal. 2016) ...................................................30

*Mikulsky v. Noom, Inc.*,
    2023 WL 4567096 (S.D. Cal. July 17, 2023)................................................8

*Mills v. Netflix, Inc.*,
    2020 WL 548558 (C.D. Cal. Feb. 3, 2020) ..................................................27

*Montz v. Pilgrim Films & Television, Inc.*,
    649 F.3d 975 (9th Cir. 2011)........................................................................29

*MultiCraft Imports, Inc. v. Mariposa USA, Inc.*,
    2017 WL 5664996 (C.D. Cal. Sept. 14, 2017) ............................................24

*O'Neal v. Sideshow, Inc.*,
    583 F. Supp. 3d 1282 (C.D. Cal. 2022).................................................26, 27

*Packingham v. North Carolina*,
    582 U.S. 98 (2017) .........................................................................................5

*People v. Kwok*,
    63 Cal. App. 4th 1236 (1998)......................................................................18

*Peter T. Erdelyi & Assocs. v. Optimum Seismic, Inc.*,
    2021 WL 4775635 (C.D. Cal. July 1, 2021) ...............................................27

*Phantomalert, Inc. v. Google Inc.*,
    2016 WL 879758 (N.D. Cal. Mar. 8, 2016) ................................................30

*Philpot v. Alternet Media, Inc.*,
    2018 WL 6267876 (N.D. Cal. Nov. 30, 2018) ............................................27

*Pruchnicki v. Envision Healthcare Corp.*,
    845 F. App'x 613 (9th Cir. 2021).................................................................17

*Robert L. Stark Enters., Inc. v. Neptune Design Grp., LLC*,
    2017 WL 1345195 (N.D. Ohio Apr. 12, 2017)............................................28

*Rojas-Lozano v. Google, Inc.*,
    159 F. Supp. 3d 1101 (N.D. Cal. 2016) .................................................18, 19

*Romero v. Flowers Bakeries, LLC*,
    2015 WL 2125004 (N.D.Cal. May 6, 2015) ...............................................18

*Saroya v. Univ. of the Pac.*,
    503 F. Supp. 3d 986 (N.D. Cal. 2020) ........................................................19

*Sateriale v. R.J. Reynolds Tobacco Co.*,
    697 F.3d 777 (9th Cir. 2012)........................................................................22

*Sega Enters. Ltd. v. Accolade, Inc.*,
    977 F.2d 1510 (9th Cir. 1992)........................................................................6

*Shade v. Gorman*,
    2009 WL 196400 (N.D. Cal. Jan. 28, 2009) ...............................................30

*Silver v. Stripe Inc.*,
    2021 WL 3191752 (N.D. Cal. July 28, 2021) ...................................................21

*Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*,
    2012 WL 13028094 (C.D. Cal. Apr. 4, 2012) ................................................23

*Skidmore v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) ......................................................................24

*Smith v. Facebook, Inc.*,
    745 F. App'x 8 (9th Cir. 2018) ....................................................................14

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) .......................................................................................5

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) .......................................................................................7

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ........................................................................26

*Stevens v. CoreLogic, Inc.*,
    899 F.3d 666 (9th Cir. 2018) ..................................................................26, 27

*Taylor v. Google LLC*,
    632 F. Supp. 3d 1077 (N.D. Cal. 2022) ......................................................15

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
    546 F.3d 991 (9th Cir. 2008) ........................................................................24

*United States v. Abouammo*,
    2022 WL 17584238 (N.D. Cal. Dec. 12, 2022) .........................................16, 17

*United States v. Dunkel*,
    927 F.2d 955 (7th Cir. 1991) ..........................................................................5

*Varnado v. Midland Funding LLC*,
    43 F. Supp. 3d 985 (N.D. Cal. 2014) ...........................................................12

*Vassigh v. Bai Brands LLC*,
    2015 WL 4238886 (N.D. Cal. July 13, 2015) ..............................................22

*Vess v. Ciba-Geigy Corp. USA*,
    317 F. 3d 1097 (9th Cir. 2003) .....................................................................22

*West v. City & Cnty. of San Francisco*,
    2022 WL 1556415 (N.D. Cal. May 17, 2022) ..............................................11

*Williams v. Apple, Inc.*,
    449 F. Supp. 3d 892 (N.D. Cal. 2020) .........................................................22

*Wiskind v. JPMorgan Chase Bank, N.A.*,
    2015 WL 400549 (N.D. Cal. Jan. 29, 2015) .................................................7

*Young v. Facebook, Inc.*,
    790 F. Supp. 2d 1110 (N.D. Cal. 2011) .......................................................11

*Yumul v. Smart Balance, Inc.*,
       733 F. Supp. 2d 1117 (C.D. Cal. 2010)..................................................................23

*Yunker v. Pandora Media, Inc.*,
       2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ........................................................15

*Zito v. Steeplechase Films, Inc.*,
       267 F. Supp. 2d 1022 (N.D. Cal. 2003) ..................................................................30

**STATUTES**

17 U.S.C. § 102 ..................................................................................................................29

17 U.S.C. § 106 ..................................................................................................................29

17 U.S.C. § 107 ....................................................................................................................6

17 U.S.C. § 301 ..................................................................................................................28

17 U.S.C. § 1202 ..............................................................................................25, 26, 27, 28

Cal. Bus. & Prof. Code § 17204 ........................................................................................20

Cal. Civ. Code § 1798.99.80 ..............................................................................................20

Cal. Civ. Code § 1798.140 ............................................................................................20, 21

Cal. Civ. Code § 1798.150 ..................................................................................................21

Cal. Code Regs. tit. 11, § 7012(h) ......................................................................................21

Cal. Penal Code § 496 ............................................................................................15, 17, 18

**RULES**

Fed. R. Civ. P. 8 ................................................................................................................2, 5

**MISCELLANEOUS**

Cal. Sen. Com. on Jud., Analysis of AB 375 (June 25, 2018) ............................................21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

**PLEASE TAKE NOTICE** that on January 25, 2024 at 2 p.m., Defendant Google LLC ("Google") will move this Court pursuant to Federal Rules of Civil Procedure ("Rules") 8, 12(b)(1), and 12(b)(6) for an order dismissing Plaintiffs' Complaint (ECF No. 1).

**STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED**

Google respectfully requests that the Court dismiss the Complaint in its entirety for failure to comply with Rule 8. In the alternative, Google requests that Causes of Action 1-7 be dismissed under Rule 12(b)(1) for lack of standing; Causes of Action 1-7, 9, and 10 be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted; and Cause of Action 8 be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted except as to the claim that the copyright in J.L.'s book was infringed by copying the book and using the copy to train Bard.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Generative artificial intelligence ("AI") holds perhaps unprecedented promise to advance the human condition. It is already beginning to revolutionize the way we use technology, serving as a companion that can help research, summarize, and synthesize information; brainstorm ideas; write original creative or factual text and software code; and create images, videos, and music. It will open doors to new insights and forms of expression, as well as better, personalized help and advice in areas such as education, health care, government services, and business productivity.

To realize the promise of this technology, Generative AI models must learn a great deal: for example, to communicate in human language, recognize context and connections in data, and respond usefully on a multitude of subjects. Like a human mind, computer models require a great deal of training to learn these things. That means exposure to vast quantities of information that is publicly available or otherwise lawful to use. Care is required both in training the models and in filtering the models' responses to human requests to reduce unhelpful or inappropriate output. And so, in developing its publicly available Generative AI tools such as Bard, Google has gone to great lengths to ensure they are trained and operate in a responsible way.

Plaintiffs' Complaint, a 383-paragraph anti-AI polemic, ignores all of this. It would take

a sledgehammer not just to Google's services but to the very idea of Generative AI. Plaintiffs ask, purportedly on behalf of anyone whose information is posted on the internet, to prevent use of that information in training Generative AI models. They do so through a false premise: that training Generative AI models on information publicly shared on the internet is "stealing." Compl. ¶ 1. But using publicly available information to learn is not stealing. Nor is it an invasion of privacy, conversion, negligence, unfair competition, or copyright infringement.

The Complaint fails to plausibly allege otherwise because Plaintiffs do not plead facts establishing the elements of their claims. Allegations must be "simple, concise, and direct," Fed. R. Civ. P. 8(d), so as to apprise the defendant of the basis of the claims and enable an informed response. Yet much of Plaintiffs' Complaint concerns irrelevant conduct by third parties and doomsday predictions about AI. Next to nothing illuminates the core issues, such as what specific personal information of Plaintiffs was allegedly collected by Google, how (if at all) that personal information appears in the output of Google's Generative AI services, and how (if at all) Plaintiffs have been harmed. Without those basic details, it is impossible to assess whether Plaintiffs can state any claim and what potential defenses might apply. For these reasons, Plaintiffs' Complaint should be dismissed for noncompliance with Rule 8.

Even if Plaintiffs' Complaint were adequate under Rule 8, their state law claims must be dismissed for numerous reasons:

- Having failed to specify the information at issue or allege present, particularized harm, Plaintiffs do not plead an Article III injury in fact based on the collection or use of public information.

- Plaintiffs allege negligence, but fail to plead facts demonstrating either a cognizable duty or injury.

- Plaintiffs allege invasion of privacy and intrusion upon seclusion, but fail to identify the supposedly private information at issue and actually admit that their information was publicly available.

- Plaintiffs allege conversion and larceny, but fail to allege a property interest in their personal information, the conversion or theft of that information, or any injury.

- Plaintiffs allege unjust enrichment, but that is not an independent cause of action and Plaintiffs fail to plead facts supporting any quasi-contract.

- Plaintiffs allege violation of California's Unfair Competition Law, but fail to allege statutory standing or the requisite unlawful, unfair, or fraudulent conduct.

- Plaintiffs' state law property claims are preempted by federal copyright law to the extent they assert a right, with respect to information they published on the internet, to control the copying, display, and use of that information to create new content.

Plaintiff J.L., supposedly on behalf of every U.S. copyright holder, asserts federal claims for copyright infringement and removal of copyright management information ("CMI") that fare no better. J.L. advances two theories of infringement. The first, that Google infringed her unidentified book by copying it and using it to train a Generative AI model, is better addressed on a more complete factual record. But J.L.'s alternative claim—that Google's Bard product itself, or its output, infringes the copyright—fails on the pleadings. Merely providing information about a copyrighted book or on the same subject matter does not constitute infringement, nor does it suffice to allege that Bard "offers" to do more or that it *mischaracterizes* the book. The Complaint must show substantial similarity between Bard or its output and the copyrighted expression in the book, but it does not even attempt to do so. And J.L.'s barebones CMI claims do not come close to pleading facts sufficient to plausibly allege the statutory elements of those causes of action.

Google identified all of these issues for Plaintiffs and gave them ample opportunity to correct them through amendment. Plaintiffs refused. Accordingly, Google must ask the Court to dismiss Plaintiffs' Complaint.

## PLAINTIFFS' ALLEGATIONS

***Defendant.*** Google LLC is a leading provider of internet related services, including search (Google Search), email (Gmail), and video sharing (YouTube). *E.g.*, Compl. ¶ 50. Google has developed artificial intelligence models and publicly released products or services based on those models, such as its chatbot, Bard. Compl. ¶¶ 51-53.

***Plaintiffs.*** Plaintiffs are eight pseudonymous individuals who allege that Google collected information related to them that was shared on the internet and used it to develop artificial intelligence products. Compl. ¶¶ 1, 16-57. One plaintiff, J.L., is an author who alleges that Google used a copyrighted book she wrote to train its Bard chatbot and that, upon request, Bard will output information related to that book. Compl. ¶¶ 13-15.

***Plaintiffs' Claims.*** Plaintiffs' Complaint is a general diatribe about artificial intelligence and the gathering of information that is publicly available on the internet (which Plaintiffs call "web-scraping"). Whole swaths are dedicated to criticisms of other companies, *e.g.*, Compl. ¶¶ 156-159, and predictions that AI "might evolve to act against human interests," *e.g.*, Compl. ¶ 186. But as to Plaintiffs' actual claims, the Complaint is lacking in specifics. Plaintiffs' theory appears to be that Google found their personal information on the internet and used it to develop AI services like Bard. But this theory is framed at a sweeping level of generality: Plaintiffs assert that "the entire internet was unlawfully scraped," and they claim that the "Personal Information" allegedly collected included but was not limited to "personally identifiable information ('PII'), copyrighted works, creative content, Google searches, Gmail conversations, medical information, or financial information." Compl. ¶ 194. The Complaint never identifies the specific personal information regarding Plaintiffs that Google allegedly collected or used, or any concrete harm that Plaintiffs suffered as a result. Indeed, Plaintiffs do not even allege that Google's Bard service disclosed any of their personal or copyrighted information to anyone.

Plaintiffs nevertheless assert ten causes of action: (1) California's Unfair Competition Law; (2) negligence; (3) invasion of privacy; (4) intrusion upon seclusion; (5) larceny/receipt of stolen property; (6) conversion; (7) unjust enrichment; (8) direct copyright infringement; (9) vicarious copyright infringement; (10) Digital Millennium Copyright Act. Compl. ¶¶ 217-383. The three copyright-related claims (Counts 8-10) are asserted only by J.L. Compl. ¶¶ 349-383. Plaintiffs seek to represent two putative classes, one for the state law claims (an "Internet-User Class"), and another for the copyrighted-related claims (a "Copyright Class"). Compl. ¶ 195.

## ARGUMENT

### I.   The Complaint Violates Rule 8's Plain Statement Requirement.

Instead of a short and plain statement, Plaintiffs' 85-page Complaint (comprising almost 400 paragraphs and 200 footnotes) presents a protracted parade of horribles about AI generally—much of which has no apparent connection to Plaintiffs —leaving Google to guess at the precise nature and factual basis for Plaintiffs' claims. That fails to meet the minimal pleading

1   requirements of Rule 8. *See* Fed. R. Civ. P. 8(a)(2), 8(d)(1) ("Each allegation must be simple,

2   concise, and direct.").

3          The Court may dismiss a complaint as violating Rule 8 where it lacks a "short and plain"

4   statement, and instead "mixes allegations of relevant facts, irrelevant facts, political argument,

5   and legal argument in a confusing way." *McHenry v. Renne*, 84 F.3d 1172, 1174, 1179-80 (9th

6   Cir. 1996). "Although normally 'verbosity or length is not by itself a basis for dismissing a

7   complaint,'" a pleading may not be "of unlimited length and opacity." *Cafasso, U.S. ex rel. v.*

8   *Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058-59 (9th Cir. 2011); *see also McHenry*, 84

9   F.3d at 1179 ("Prolix, confusing complaints ... impose unfair burdens on litigants and judges.").

10  "Judges are not like pigs, hunting for truffles buried in briefs," *United States v. Dunkel*, 927 F.2d

11  955, 956 (7th Cir. 1991), and "[t]he same is true for allegations," *Hadley v. Kellogg Sales Co.*,

12  243 F. Supp. 3d 1074, 1106 (N.D. Cal. 2017).

13         Substituting prolixity for precision, Plaintiffs' Complaint fails to apprise Google of even

14  the most basic information about Google's supposed wrongs or Plaintiffs' supposed harms.

15  Plaintiffs rest their state-law claims on the supposed "theft" of their "Personal Information" (*see,*

16  *e.g.*, Compl. ¶¶ 153, 240-241, 288-292), which they vaguely define to include "personally

17  identifiable information ('PII'), copyrighted works, creative content, Google searches, Gmail

18  conversations, medical information, or financial information" (*id.* ¶ 194). Nowhere, however, do

19  Plaintiffs identify their *specific* "personal information" that they contend Google actually

20  misused, which—under Plaintiffs' sweeping definition—could encompass anything from a two-

21  sentence comment publicly posted on a news site to private medical records.

22         While the Complaint elides these differences, they matter. For example, Google has

23  various agreements with Plaintiffs, including those governing its services, under which it is

24  authorized to use content in a variety of ways. Further, Google has a First Amendment right to

25  gather and use public information. *See Packingham v. North Carolina*, 582 U.S. 98, 107 (2017)

26  (holding that banning people from "gain[ing] access to information" through social media

27  inhibits "the legitimate exercise of First Amendment rights"); *Sorrell v. IMS Health Inc.*, 564

28  U.S. 552, 570 (2011) ("[T]he creation and dissemination of information are speech within the

1   meaning of the First Amendment."). And whether Plaintiffs have a reasonable expectation of

2   privacy in information depends on what that information is and where it is disseminated.

3          The lack of specificity infects Plaintiffs' copyright claims as well. For example, J.L. does

4   not allege specific facts showing how any particular copyrighted work was infringed in the

5   output of Google's AI services, or how copyright management information was illicitly removed

6   from any particular work. Such specifics matter not only for making out a claim, but also for

7   Google's defenses. Again, Plaintiffs (including J.L.) have authorized various uses of information

8   in their agreements with Google and others. Further, the fair use doctrine allows even the

9   "wholesale copying" of a work for transformative purposes, such as those at issue here. *See, e.g.*,

10  *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1527 (9th Cir. 1992) (copying as preliminary

11  step to access ideas and create new work is fair use); *see also Author's Guild v. Google, Inc.*, 804

12  F.3d 202, 216-18 (2d Cir. 2015) (copying entire books to enable search and viewing snippets is

13  fair use); *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1197-1210 (2021) (copying computer

14  code to create a new platform that would be familiar to users is fair use); 17 U.S.C. § 107.

15         Compounding these problems, the Complaint does not even clearly identify the Google

16  products at issue. Plaintiffs refer to the "Products," limitlessly defined to mean "Defendants' AI

17  products, including but not limited to" five listed items. (Compl. ¶ 63.) Beyond the listed

18  examples, Google does not know what Plaintiffs consider to be the "AI products" at issue in each

19  claim. Even some of the listed examples are never discussed again (*e.g.*, ¶¶ 67-69 ("Imagen,"

20  "MusicLM," and "Duet AI")), and Plaintiffs acknowledge that some (*e.g.*, ¶ 70 ("Gemini")) were

21  "still in development" when Plaintiffs sued. Without specifics, Plaintiffs do not demonstrate how

22  all, or really any, "AI products" supposedly infringe their privacy rights and copyrights. *Cf.*,

23  *Bender v. LG Elecs. U.S.A., Inc.*, 2010 WL 889541, at *2 (N.D. Cal. Mar. 11, 2010) (complaint

24  that fails to specifically identify accused product in patent case is deficient under Rule 8).

25         Plaintiffs' vague allegations do not give Google fair notice of what it stands accused of,

26  and Google cannot be required to guess. Rule 8 requires simple but specific details of Plaintiffs'

27  claims so that Google may investigate them, answer them, and assert applicable defenses. Absent

28  that basic level of detail, Plaintiffs' Complaint cannot survive even Rule 8's forgiving standard.

But Plaintiffs' Rule 8 problems go still further. Where the Complaint does include details and specific facts, they are generally irrelevant. Among its hundreds of paragraphs and footnotes, for example, the Complaint repeatedly theorizes about harm that artificial intelligence in general could conceivably cause. *See, e.g.*, Compl. ¶¶ 90-92, 124-130, 144, 147-157, 186, 189. It also offers extensive discussion of claims against ***other***, non-party technology companies. *See id.* ¶¶ 99, 145, 156-159, 169, 191-192. And it commingles extensive legal argument and citations (*e.g.*, Compl. ¶¶ 161 & n.149, 182), with dozens of news and journal articles (*e.g.*, 162 & n.150, 168 & n.159) and the musings of unidentified social media users and bloggers (*e.g.*, *id.* ¶ 100 n.77, ¶¶ 187-188 nn.173, 175; *id.* ¶ 190 n.177). From this morass, Google and this Court cannot tell what actually matters to Plaintiffs' claims. As the Ninth Circuit has made clear:

> Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint.

*McHenry*, 84 F.3d at 1180; *see also Wiskind v. JPMorgan Chase Bank, N.A.*, 2015 WL 400549, at *2 (N.D. Cal. Jan. 29, 2015). Rule 8 requires dismissal.

## II.     Plaintiffs Lack Article III Standing for Their State Law Claims Because They Have Failed to Allege Injury in Fact (Counts 1-7).

Plaintiffs' state-law claims also should be dismissed because they have failed to sufficiently plead a cognizable injury in fact. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).[1] "[A]t the pleading stage, the plaintiff must clearly allege facts demonstrating each element of standing'"—injury, traceability, and redressability. *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 705 (9th Cir. 2020) (cleaned up). To sufficiently plead "injury in fact," each plaintiff must allege facts showing that they "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citing *Lujan*, 504 U.S. at 560).

---

[1] Plaintiffs assert that California law applies even to the out-of-state Plaintiffs' claims. *See* Compl. ¶¶ 209-215. For purposes of this motion, Defendants assume so.

1    Plaintiffs' state-law claims, and their purported underlying injuries, broadly fall into two

2    categories: privacy and property. For the privacy-based claims—invasion of privacy and

3    intrusion upon seclusion—Plaintiffs must allege an injury in fact from an invasion of their

4    privacy rights. For the property-based claims—unfair competition, negligence, conversion,

5    larceny, and unjust enrichment—Plaintiffs must allege an injury in fact from a property rights

6    violation. Plaintiffs have done neither.

7    ***Privacy-based claims.*** To determine whether a privacy-based injury suffices to confer

8    standing, "courts must examine the nature of the specific information at issue to determine

9    whether privacy interests [a]re implicated at all." *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1050

10   (N.D. Cal. 2022) (dismissing, for lack of injury in fact, claim based on disclosure of email

11   addresses, phone numbers, usernames, and passwords); *Greenstein v. Noblr Reciprocal Exch.*,

12   585 F. Supp. 3d 1220, 1228 (N.D. Cal. 2022) (disclosure of "Plaintiffs' names, addresses, and

13   driver's license numbers" in data breach did not support standing). Courts routinely find a lack of

14   privacy-based standing where the plaintiff has failed to "identify the specific sensitive or private

15   information at issue." *E.g.*, *In re Meta Browser Tracking Litig.*, No. 22-cv-5267-AMO, ECF No.

16   91 at 12 (N.D. Cal. Aug. 17, 2023) (Martínez-Olguín, J.) (dismissing privacy claims for lack of

17   standing where plaintiffs failed to specifically allege "what information was gathered"); *Doe 1 v.

18   GitHub, Inc.*, 2023 WL 3449131, at *4 (N.D. Cal. May 11, 2023); *Mikulsky v. Noom, Inc.*, 2023

19   WL 4567096, at *5 (S.D. Cal. July 17, 2023); *Byars v. Sterling Jewelers, Inc.*, 2023 WL

20   2996686, at *3 (C.D. Cal. Apr. 5, 2023). Courts also find a lack of standing where "there are no

21   specific allegations as to why th[e collected] data [wa]s sensitive or individually identifiable."

22   *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 724 (9th Cir. 2017).

23   Here, Plaintiffs have done nothing more than generically allege that Google "scraped"

24   and exploited "the entire internet," including generic, broad categories of "Personal

25   Information." *E.g.*, Compl. ¶¶ 194, 221, 309. Nowhere do Plaintiffs identify the specific

26   information at issue or explain why that information was private and sensitive. Nor do they

27   explain how their privacy was violated; for example, they do not allege that Google accessed

28

1  private servers or that Bard has ever shared a single piece of personal information about any of

2  them. Without such detail, Plaintiffs have not plausibly alleged an injury in fact.

3      Much of the information on the internet is public and intentionally so. Indeed, Plaintiffs

4  *admit* that the data they accuse Google of "scraping" was "public." *E.g.*, Compl. ¶¶ 73, 76, 79.

5  And the Complaint's description of how Plaintiffs have used the internet focuses on Plaintiffs'

6  "post[ing]" or "sharing" content on social media platforms or other public sites—precisely so it

7  would be viewed by others (*e.g.*, *id.* ¶¶ 18-19, 28-30, 35-36, 41, 48, 55-56), with some Plaintiffs

8  admitting that they publish this information for "self-promotion" (*e.g.*, *id.* ¶¶ 19, 36). What is

9  more, users of Google services, like Plaintiffs, expressly authorize Google to use their

10 information to "improve [Google's] services and to develop new products." *See* Compl. ¶ 93

11 n.73; Request for Judicial Notice ("RJN") Ex. 2 (Dec. 15, 2022 Privacy Policy). In the face of

12 such admissions, to have any hope of plausibly alleging a privacy-based injury, Plaintiffs must

13 identify the specific information at issue, plead facts showing that information was collected and

14 used, and allege how Google's collection or use of that information violates each Plaintiff's

15 privacy rights. Without those allegations, Plaintiffs' claims for invasion of privacy and intrusion

16 upon seclusion must be dismissed for lack of standing. *See Doe 1*, 2023 WL 3449131, at *5.

17      ***Property-based claims.*** Plaintiffs also fail to plausibly allege injury to any property right

18 in their personal information. "[T]o show injury in fact under this theory, [plaintiffs] must

19 establish both the existence of a market for [their] personal information and an impairment of

20 [their] ability to participate in that market." *Zynga, Inc.*, 600 F. Supp. 3d at 1054; *Burns v.*

21 *Mammoth Media, Inc.*, 2023 WL 5608389, at *4 (C.D. Cal. Aug. 29, 2023) (plaintiff must allege

22 market for users to sell "the same type of data" and plaintiff's data "commands a lesser price"

23 due to defendant's conduct).

24      Plaintiffs' failure to specifically identify the personal information at issue dooms them on

25 standing. *See In re Meta Browser Tracking Litigation*, No. 22-cv-5267-AMO, ECF No. 91 at 12

26 (dismissing unjust enrichment claim for lack of standing where plaintiffs failed to specifically

27 allege "what information was gathered"). And Plaintiffs' generic allegations about the supposed

28 existence of markets for personal information (*see* Compl. ¶¶ 161-167) cannot save them. Even

1  assuming Plaintiffs' personal information "is worth a certain amount of money" if collected and

2  sold, "it does not follow that the same information, when not disclosed, has independent

3  economic value to an individual user." *In re Facebook, Inc., Consumer Priv. User Profile Litig.*,

4  402 F. Supp. 3d 767, 784 (N.D. Cal. 2019). Here, where Plaintiffs allege their information was

5  scraped from the internet (*e.g.*, Compl. ¶ 21), Plaintiffs have not plausibly alleged any market for

6  individuals to sell such publicly-available information. And having failed to identify the specific

7  information at issue or any specific facts about their use of that information, Plaintiffs have not

8  plausibly alleged that "they intended to sell their" information or that "someone else would have

9  bought it as a stand-alone product," or that Google's conduct impaired their ability to sell it. *In re*

10  *Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d at 784.

11      Plaintiffs assert that they have "a legal interest in unjustly earned profits based on

12  unauthorized harvesting of personal data" sufficient to support standing for unjust enrichment,

13  Compl. ¶ 166, relying on *In re Facebook, Inc. Internet Tracking Litig.*, in which the complaint

14  specifically alleged how Facebook directly profited from selling plaintiffs' browsing history. 956

15  F.3d 589, 600 (9th Cir. 2020). Here, Plaintiffs' Complaint contains no factual allegations

16  showing similar direct profit from Plaintiffs' amorphous Personal Information. In any event,

17  Plaintiffs' unjust enrichment theory fails on its own terms. *See infra* 18-19.

18      Plaintiffs' property-based claims for unfair competition, negligence, conversion, larceny,

19  and unjust enrichment, should be dismissed for lack of standing.

20  **III.    Plaintiffs Fail to State a Claim for Negligence (Count 2).**

21      Beyond the Complaint's overarching deficiencies, Plaintiffs' allegations fail to state a

22  claim. Plaintiffs' negligence claim, for example, fails because they have not adequately alleged a

23  duty of care or any cognizable injury.

24      "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to

25  establishing a claim for negligence." *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965,

26  987 (N.D. Cal. 2014) (citation omitted). A duty must be "imposed by law," "assumed by the

27  defendant," or "aris[e] out of a preexisting relationship." *Green Desert Oil Grp. v. BP W. Coast*

28  *Prods.*, 2011 WL 5521005, at *5 (N.D. Cal. Nov. 14, 2011), *aff'd*, 571 F. App'x 633 (9th Cir

2014). Here, Plaintiffs allege a hodgepodge of supposed duties Google owed, including to avoid "web scraping without consent," "using Personal Information to train their AI products," and "collecting and sharing Users' data." Compl. ¶ 292; *see also id.* ¶ 287. But while Plaintiffs vaguely allege that these duties "arose from several sources" (*id.* ¶ 288), they never ***identify*** those sources.[2] Plaintiffs do not cite any statute or allege that Google somehow assumed these duties or that they arise out of a preexisting, special relationship. Because the Complaint "properly invokes none of these," Plaintiffs' negligence claim fails. *See Green Desert*, 2011 WL 5521005, at *5 (dismissing claim where plaintiffs failed to plead source of alleged duty); *accord Johnson v. Maker Ecosystem Growth Holdings, Inc.*, 2023 WL 2191214, at *5 (N.D. Cal. Feb. 22, 2023); *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1118 (N.D. Cal. 2011).

Plaintiffs also fail to adequately plead cognizable injury. They allege that Google's negligence caused them "significant harm" (Compl. ¶¶ 291, 293), but do not ***identify*** the harm. *See West v. City & Cnty. of San Francisco*, 2022 WL 1556415, at *13 (N.D. Cal. May 17, 2022) (dismissing negligence claim where plaintiff did "not allege how he was injured by" defendant "nor what damages he sustained"). And the allegations of harm scattered elsewhere in Plaintiffs' Complaint are not recoverable under a negligence theory. For example, Plaintiffs allege a "loss of value ... of their Personal Information." Compl. ¶ 241. But the economic loss rule would bar that recovery on a negligence theory because it is not alleged to have been "accompanied by some form of physical harm" and Plaintiffs have not alleged any "special relationship" between the parties. *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 961 (S.D. Cal. 2012). Plaintiffs' alleged "loss of control" (Compl. ¶ 241) over unspecified Personal Information "is also insufficient to establish damages for a negligence claim." *Aguilar v. Hartford Accident & Indem. Co.*, 2019 WL 2912861, at *2 (C.D. Cal. Mar. 13, 2019). So too are their allegations of potential future harm—*e.g.*, that Google's services "could ***someday*** result in" their "professional obsolescence" (Compl. ¶ 31 (emphasis added))—as "appreciable, nonspeculative, present harm is an essential element of a negligence cause of action." *Huynh v.*

---

[2] While Plaintiffs do allege that "Defendants had a common law duty to prevent foreseeable harm" (Compl. ¶ 288), "'foreseeability alone is not sufficient to create an independent tort duty.'" *Kuciemba v. Victory Woodworks, Inc.*, 14 Cal. 5th 993, 1025 (2023).

1  *Quora, Inc.*, 2020 WL 7408230, at *5 (N.D. Cal. June 1, 2020) (citation omitted). Nor can

2  Plaintiffs recover for their alleged "embarrassment and emotional distress" (Compl. ¶ 241), as

3  "[r]ecovery for emotional distress in negligence cases is generally not available unless malice,

4  breach of a fiduciary duty, physical injury or impact, or some other unusually extreme or

5  outrageous circumstance, can be shown." *Varnado v. Midland Funding LLC*, 43 F. Supp. 3d 985,

6  990 (N.D. Cal. 2014) (cleaned up). Plaintiffs have not attempted to plead any such facts.

7

8  **IV.     Plaintiffs Fail to State Claims for Invasion of Privacy and Intrusion Upon Seclusion (Counts 3-4).**

9       Plaintiffs' privacy claims under the California Constitution and for intrusion upon

10  seclusion also fail. Courts consider these similar claims "together and ask whether: (1) there

11  exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Lloyd v.

12  Facebook, Inc.*, 2022 WL 4913347, at *10 (N.D. Cal. Oct. 3, 2022) (cleaned up). Because the

13  law "sets a 'high bar' for establishing" a privacy claim, these threshold requirements serve to

14  "weed out" claims that do not involve sufficient intrusions into a "protected privacy interest" in

15  "precluding the dissemination or misuse of sensitive and confidential information." *In re Google

16  Location History Litig.*, 428 F. Supp. 3d 185, 196 (N.D. Cal. 2019).

17       Plaintiffs insist that they have a reasonable expectation of privacy in ***all*** of their

18  generically-defined "Personal Information." Compl. ¶¶ 194, 296, 309. But Plaintiffs' failure to

19  adequately specify ***what*** information is actually at issue here again is fatal. *See supra* 8-9; *Doe 1*,

20  2023 WL 3449131, at *4 ("Plaintiffs do not identify the specific sensitive or private information

21  at issue" and "therefore do not allege facts sufficient for the Court to infer that Plaintiffs' privacy

22  interests are implicated by the alleged misuse of such information"). Without such detail, the

23  Complaint's mere reference to broad categories of "Personal Information"—public content on

24  the internet, search terms, and emails—cannot support an invasion of privacy claim.

25       ***Plaintiffs Cannot State a Privacy Claim Based on Publicly Available Information.***

26  Plaintiffs allege that they have spent years ***publicly sharing*** on the internet various generically-

27  described text, photos, audio, and videos, *see, e.g.,* Compl. ¶¶ 18-19, 28-30, 35-36, 41, 48, 55-56,

28  including for "self-promotion," Compl. ¶¶ 19, 36. Plaintiffs nevertheless assert that this

1    information is "private." *Id.* ¶¶ 21, 32, 38, 42, 50, 57. But "the plaintiff in an invasion of privacy

2    case must have conducted himself or herself in a manner consistent with an actual expectation of

3    privacy." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 26 (1994). Plaintiffs have pleaded

4    facts showing the *opposite*, and have therefore failed to adequately plead a legally protected

5    privacy interest or reasonable expectation of privacy for the "Personal Information" they

6    disclosed online. *See McCluskey v. Hendricks*, 2023 WL 3376564, at *2 (9th Cir. May 11, 2023)

7    (affirming 12(b)(6) dismissal of intrusion claim where plaintiff failed to "show[] that she has a

8    justifiable expectation of privacy in her social media posts—many of which were posted on a

9    business social media page and liked by dozens to hundreds of people"); *Heldt v. Guardian Life*

10   *Ins. Co. of Am.*, 2019 WL 651503, at *7 (S.D. Cal. Feb. 15, 2019) (dismissing invasion of

11   privacy claim where plaintiff "voluntarily shared the information with his Facebook friends

12   knowing there is a possibility that his friends could share the information with others").[3]

13        Google's clear disclosures in its Privacy Policy[4] that it "may collect information that's

14   publicly available online … to help train Google's language models" further undermine

15   Plaintiffs' claim of a reasonable expectation of privacy in information that they posted publicly.

16   *See Lloyd*, 2022 WL 4913347, at *10 (no reasonable expectation where Facebook's Data Policy

17   disclosed that third-parties "provide information [to Facebook] about your activities off

18   Facebook") (emphasis omitted). These disclosures also refute the general charge of some "highly

19   offensive" intrusion. Even assuming Plaintiffs did not "affirmatively consent[] to the collection"

20   of their public data, Plaintiffs have not shown how any data collection was "'blatantly deceitful,'

21

22        [3] While Plaintiffs define "Personal Information" to include medical and financial information
23   (Compl. ¶ 194), they do not actually allege that Defendants collected any specific, non-public
     medical or financial information. *See, e.g.*, Compl. ¶ 19 (Plaintiff C.B. publicly "posted media
24   related to 'psychological support,' such as motivational quotes to cancer victims"); ¶¶ 48-49
     (Plaintiff J.D. publicly commented on the "financial market" on Twitter and publicly shared
25   unspecified "medical information" on "Facebook support group pages").

          [4] Compl. ¶ 98; RJN Ex. 2 (Dec. 15, 2022 Privacy Policy). That same language appeared in
26   Google's Privacy Policy in effect since May 2018. *See* Updates: Privacy Policy - Privacy Terms
     - Google, available at https://policies.google.com/privacy/archive?hl=en-US (last visited Oct. 14,
27   2023). As explained in Google's concurrently-filed Request for Judicial Notice, Google's past
     and present Privacy Policies may properly be considered on this motion dismiss, including
28   because Plaintiffs' Complaint quotes and cites them. *See* Compl. ¶¶ 5, 93 n.73, 98, 142-43, 233
     & n.185; *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *2 (N.D. Cal. Feb. 2, 2021).

1  as in other cases where highly offensive intrusions have been found." *Hammerling v. Google*

2  *LLC*, 2022 WL 17365255, at *9 (N.D. Cal. Dec. 1, 2022).

3  　　　　**Plaintiffs Cannot State a Privacy Claim Based on Google Searches.** Plaintiffs also base

4  their privacy claim on Defendants' alleged collection and use of their "Google searches" without

5  consent. Compl. ¶¶ 21, 25, 32, 38, 42, 50, 57, 194. Plaintiffs are simply wrong in suggesting that

6  users' Google search terms were used to train the generative AI models behind Bard. But they

7  fail to plead a plausible claim in any event.

8  　　　　Plaintiffs' *sole* basis for falsely alleging that users' Google searches were used to train

9  Bard is that Google's Privacy Policy says Google may collect user activity including "terms

10  [users] search for" and that Google uses the information "to improve [their] services and to

11  develop new products." Compl. ¶ 93 & n.73. But if, as Plaintiffs aver, the Privacy Policy they

12  accepted discloses that Google could use search terms, Plaintiffs cannot plausibly plead that such

13  use violated some reasonable expectation of privacy or was highly offensive. *See, e.g.*, *Smith v.*

14  *Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (affirming dismissal of intrusion claim given

15  users' acquiescence to terms and policies disclosing the data-collection practices at issue); *In re*

16  *Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1037-38 (N.D. Cal. 2014); *Hill*, 7 Cal. 4th at 26, 36-37 ;

17  *Lloyd*, 2022 WL 4913347, at *10.

18  　　　　Moreover, courts in the Ninth Circuit have consistently held that the collection of data

19  regarding "routine commercial behavior" online, including search queries, "is not sufficiently

20  egregious to be characterized as highly offensive." *Hammerling*, 2022 WL 17365255, at *9

21  (dismissing privacy claims because collection of data regarding plaintiff's online searches is "not

22  considered a highly offensive intrusion of privacy in this district"); *accord In re Google, Inc.*

23  *Priv. Policy Litig.*, 58 F. Supp. 3d 968, 973-74, 988 (N.D. Cal. 2014). In light of the extensive

24  precedent concerning the collection of search data, and the disclosures in Google's Privacy

25  Policy, Plaintiffs have not pleaded a privacy violation.

26  　　　　**Plaintiffs Fail to State a Privacy Claim Based on Gmail Conversations.** Lastly,

27  Plaintiffs allege that Google surreptitiously used "private emails" from its Gmail platform to

28  train Bard. Compl. ¶¶ 93-4, 194, 236. That allegation is false. But assuming its truth at this

1  pleading stage, it is inadequate. Plaintiffs have pleaded *no* facts about the specific content of

2  particular emails that were supposedly collected or why Plaintiffs have a privacy interest in that

3  content. That is fatal. To state a privacy claim, "Plaintiffs must allege that the email[s]

4  [allegedly] intercepted actually included content that qualifies under California law as

5  'confidential' or 'sensitive.'" *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1040-41 (dismissing

6  privacy claim where plaintiffs' "conclusory" allegations did not include "any facts related to

7  what particular emails Yahoo intercepted, or the content within particular emails.").

8  **V.      Plaintiffs Fail to State Claims for Larceny and Conversion (Counts 5-6).**

9              Plaintiffs claim that all of their unspecified "Personal Information" is "property" that

10  Google "stole" and "conver[ted]" when Google copied it from the internet and used it to train AI

11  models. Compl. ¶¶ 319-338. Plaintiffs invoke Penal Code Section 496(a), which provides a civil

12  cause of action to "[a]ny person who has been injured" by a defendant who has received, bought,

13  sold, concealed, or withheld "property" that has been "stolen." Cal. Penal Code § 496(a), (c).

14  Plaintiffs similarly assert a common-law conversion claim, which requires a plaintiff's

15  "ownership or right to possession of the property," "the defendant's conversion by a wrongful

16  act," and damages. *McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1021 (C.D. Cal. 2020).

17  Plaintiffs have failed to state a claim under either theory, for at least three reasons: (i) they do not

18  plausibly allege that their "Personal Information" is "property"; (ii) the allegation that their

19  Personal Information was copied from the internet does not (and cannot) establish that it was

20  "stolen" or "converted"; and (iii) they have not adequately alleged injury or damages.

21              ***First***, Plaintiffs have failed to adequately allege that their "Personal Information" is

22  "property." In evaluating conversion claims, courts "apply a three-part test to determine whether

23  a property right exists: First, there must be an interest capable of precise definition; second, it

24  must be capable of exclusive possession or control; and third, the putative owner must have

25  established a legitimate claim to exclusivity." *Taylor v. Google LLC*, 632 F. Supp. 3d 1077, 1082

26  (N.D. Cal. 2022) (cleaned up). Courts in this District have repeatedly found that personal

27  information is *not* property because it is not capable of exclusive possession or control. *See, e.g.*,

28  *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *17 (N.D. Cal. Mar. 26, 2013) (noting that

"courts have [been] reluctant to find that [personally identifiable information] is a form of personal property"); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1075 (N.D. Cal. 2012) (the "weight of authority holds that a plaintiff's 'personal information' does not constitute property."); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028, 1030 (N.D. Cal. 2012) (dismissing conversion claim because "'personal information' does not constitute property"). This is particularly true where, as here, the purported property is a "broad category" of *publicly available* "Personal Information" that is not "capable of precise definition." *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1075; *accord United States v. Abouammo*, 2022 WL 17584238, at *12 (N.D. Cal. Dec. 12, 2022) ("an individual does not have an inherent property right to publicly available personal information because that information is not, and cannot, be under the user's exclusive control."). Plaintiffs' failure to adequately plead a property right dooms their larceny and conversion claims.

Plaintiffs rely on *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 635 (N.D. Cal. 2021) to support the sweeping allegation that ***all*** of their "Personal Information" is property. Compl. ¶335. But *Calhoun* does not help them. *Calhoun* relied on authority suggesting that, in some circumstances, theft of personal information can result in "lost value"—namely, "losing the sales value of that information." 526 F. Supp. 3d at 635. But, as explained above, courts have repeatedly rejected application of that theory absent any plausible allegations that the plaintiffs ***actually were*** in the practice of selling the personal information at issue. *See, e.g.*, *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 603 (N.D. Cal. 2021) (rejecting allegation that plaintiff "lost property" when defendant collected his geolocation data, since plaintiff had "not shown how this information has economic value *to him*") (cleaned up); *Gardiner v. Walmart, Inc.*, 2021 WL 4992539, at *3 (N.D. Cal. July 28, 2021) (rejecting lost value allegations where plaintiff did not "allege that he has been unable to sell, profit from, or monetize his personal information"); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d at 784 (rejecting lost value allegations where plaintiff did "not plausibly allege that they intended to sell their non-disclosed personal information to someone else").

1    Here, Plaintiffs do not allege, let alone *plausibly* allege, that they had any intention or

2    ability to sell their "Personal Information"—i.e., what was already publicly available on the

3    internet, their emails, or their Google search queries—or that anyone was prepared to buy it. *See,*

4    *e.g.* Compl. ¶ 165 (alleging only that "internet users **like** Plaintiffs ... **can** sell or monetize their

5    own personal data and internet usage information") (emphasis added). Having failed even to

6    identify that information, it is hard to see how they could make these additional allegations. And

7    Plaintiffs' allegations that their "Personal Information" is valuable to *Google* (*id.* ¶ 321) also do

8    not suffice, as the mere fact "[t]hat the information has external value, but no economic value to

9    plaintiff, cannot serve to establish that plaintiff has personally lost money or property." *Bass v.*

10   *Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019); *accord Pruchnicki v. Envision*

11   *Healthcare Corp.,* 845 F. App'x 613, 614-15 (9th Cir. 2021) ("[T]he 'mere misappropriation of

12   personal information' does not establish compensable damages.").

13   **Second**, Plaintiffs cannot plausibly allege that their "Personal Information" was stolen or

14   converted by a wrongful act. Plaintiffs say that happened when Defendants copied it from the

15   internet. Compl. ¶¶ 321, 336. But as courts have recognized, "[w]here property is capable of

16   being copied, wrongful possession of copies does not typically give rise to a conversion claim if

17   the rightful owner retains possession of the original or retains access to other copies." *McGowan*,

18   505 F. Supp. 3d at 1022. Here, Plaintiffs seek to hold Google liable for copying **public**

19   information (or emails or search terms) that Plaintiffs never exclusively possessed and that

20   Plaintiffs retained access to. There is no basis in Section 496 or California conversion law for

21   such liability. *See LinkedIn Corp.*, 900 F. Supp. 2d at 1030 (dismissing conversion claim given

22   that "information such as what LinkedIn profile pages are viewed by a user is not 'capable of

23   exclusive possession or control'"); *Abouammo*, 2022 WL 17584238, at *12 (explaining that "a

24   business's collection of users' personal information" is not conversion "because that information

25   is not, and cannot, be under the user's exclusive control," *e.g.*, "when a website records a user's

26   email address, the user does not lose exclusive control of the email address"). Certainly there is

27   no basis in California law or Plaintiffs' allegations to conclude that copying information publicly

28

available on the internet constitutes criminal *theft*, or that Google would *know* such information

was stolen, as required for Section 496(a).[5]

**Lastly**, Plaintiffs have not adequately alleged that they were injured or harmed, as

required for both their larceny and conversion claims. Cal. Penal Code § 496(c); *McGowan*, 505

F. Supp. 3d at 1021. The closest they come are allegations that Google's actions were "***intended***

to deprive" them of the "ability to use their Personal Information" and "***calculated*** to injure

Plaintiffs." Compl. ¶¶ 327, 331 (emphasis added). But those dubious allegations are a far cry

from alleging that Plaintiffs actually ***were*** injured, let alone how.

## VI.    Plaintiffs Fail to State a Claim for Unjust Enrichment (Count 7).

Plaintiffs purport to advance an unjust enrichment claim against Defendants (Count

Seven), but "there is not a standalone cause of action for unjust enrichment" under California

law. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (cleaned up). As

such, an unjust enrichment claim is construed "as a quasi-contract claim seeking restitution,"

which requires a plaintiff to plead that "a defendant has been unjustly conferred a benefit through

mistake, fraud, coercion, or request." *Id.* (cleaned up). But "when a plaintiff fails 'to sufficiently

plead an actionable misrepresentation or omission, his [or her] restitution claim must be

dismissed.'" *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1120 (N.D. Cal. 2016).

In *Astiana*, a typical unjust enrichment case, the plaintiff stated a quasi-contract claim by

alleging that the defendant's misleading labels duped her into purchasing a product. 783 F.3d at

762; *see also Romero v. Flowers Bakeries, LLC*, 2015 WL 2125004, at *9 (N.D.Cal. May 6,

2015). This case bears no resemblance to those facts. Plaintiffs have not alleged that they quasi-

contractually "conferred" a benefit on Google (*e.g.*, by giving Google their data), or that their

consent to such a transaction was procured through deception, mistake, coercion, or the like. To

---

[5] The district court in *Calhoun* held that copying could in some circumstances support a
claim for theft even where the owner retained possession of the original property, 526 F. Supp.
3d at 635. But the case it cited for that proposition, *People v. Kwok*, 63 Cal. App. 4th 1236,
1249-51 (1998), concerned the copying of a *house key*, which was theft because it deprived the
owner of exclusive control of *other property*—her home. *Id.* Here, by contrast, Plaintiffs do not
allege that they have been deprived of exclusive control over *any* property, let alone any *other*
property, through the alleged copying of their publicly available information, email, or searches.
In any event, *Calhoun* did not involve information that plaintiffs publicly posted on the internet.

1   the contrary, they allege Google acted on its own by scraping "everything ever created and

2   shared" on the internet "without notice or consent from anyone." Compl. ¶¶ 1, 7. That does not

3   state a claim in quasi contract. *See Chiu v. NBS Default Servs., LLC*, 2015 WL 1221399, at *9

4   (N.D. Cal. Mar. 17, 2015) (dismissing unjust enrichment claim without leave to amend where

5   allegations were "conclusory and speculative as to how Defendant received an unjust benefit

6   from Plaintiff"); *Rojas-Lozano*, 159 F. Supp. 3d at 1120 (dismissing unjust enrichment claim

7   where plaintiff failed to allege a material representation or omission that "she relied on,"

8   "impacted her conduct," and "caused her any injury").

9          To the extent Plaintiffs base their unjust enrichment claim on Google's alleged collection

10   of data from users of Google services, that claim also fails because "an unjust enrichment claim

11   does not lie where the parties have an enforceable express contract," here, the applicable Terms

12   of Service and Privacy Policy. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010);

13   *see also* Compl. ¶ 211 & n.184 (relying on Google Terms of Service); *id.* ¶¶ 93 n.73, 233 &

14   n.185 (relying on Google Privacy Policy); RJN Exs. 2 (Privacy Policy) & 3 (Terms of Service).

15   And Plaintiffs have not alleged that the terms they agreed to are somehow unenforceable or

16   invalid. *See Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 998 (N.D. Cal. 2020). Simply put,

17   Plaintiffs have not plausibly alleged a quasi-contract claim.

18
19   **VII.   Plaintiffs Fail to State a Claim under California's Unfair Competition Law (Count 1).**

20          Plaintiffs also bring unfair competition claims under Cal. Bus. & Prof. Code §§ 17200, *et*

21   *seq.* (the "UCL"). To plead a UCL violation, a plaintiff must allege a "business act or practice"

22   that is "either 'unlawful,' 'unfair,' or 'fraudulent.'" *Armstrong-Harris v. Wells Fargo Bank, N.A.*,

23   2022 WL 3348426, at *2 (N.D. Cal. Aug. 12, 2022). Plaintiffs fail to state a claim under any of

24   the three prongs.

25          ***Plaintiffs have failed to allege UCL statutory standing.*** For reasons similar to Plaintiffs'

26   Article III deficiencies, courts have repeatedly held that complaints like this one do not

27   sufficiently plead statutory standing under the UCL, which is limited to plaintiffs who have

28   suffered an "economic injury," *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011), *i.e.*,

1    "lost money or property as a result of ... unfair competition," Cal. Bus. & Prof. Code § 17204.

2    *See, e.g.*, *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 2838118, at *8 (N.D. Cal. Apr. 6, 2023)

3    (the "weight of authority" holds that the "'mere misappropriation of personal information'" is

4    not an economic injury) (collecting cases); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 484 (N.D.

5    Cal. 2021) (rejecting theory of economic injury based on "loss of the inherent value of ...

6    personal data"); *Archer v. United Rentals, Inc.*, 195 Cal. App. 4th 807, 816 (2011) (dismissing

7    UCL invasion of privacy claim because "plaintiffs have failed to demonstrate how ... unlawful

8    collection and recordation of personal identification information ... translates into a loss of

9    money or property"). Those authorities should control, and Plaintiffs do not plead such economic

10   injury. *See* Compl. ¶¶ 268, 284. But standing aside, Plaintiffs cannot make out a 17200 claim.

11            **Plaintiffs have failed to plead a claim under the unlawful prong.** A claim brought under

12   the UCL's "unlawful" prong "borrows violations of other laws and treats them as unlawful

13   practices." *Armstrong-Harris*, 2022 WL 3348426, at *3. So "[i]f a plaintiff cannot state a claim

14   under the predicate law, ... the UCL claim also fails." *Id.* (citation omitted). That is the case here.

15            *California Data Broker Law.* Plaintiffs assert that Google "failed to register as data

16   brokers under California law as required." Compl. ¶ 221. Plaintiffs' theory appears to be that

17   Google's "illegal web scraping" of personal information for use in Google's own services

18   renders it a data broker. *See id.* A data broker is "a business that knowingly collects and sells to

19   third parties the personal information of a consumer with whom the business does not have a

20   direct relationship." Cal. Civ. Code § 1798.99.80. Plaintiffs nowhere allege that Google sells

21   personal information to third parties. Most Plaintiffs also allege that they have a direct

22   relationship with Google. *See, e.g.*, Compl. ¶¶ 17, 24, 27, 34, 40, 44, 53. Plaintiffs also fail to

23   allege facts establishing that "personal information" under the statute is implicated, as the

24   statutory definition expressly excludes "publicly available information." Cal. Civ. Code

25   §§ 1798.99.80(e), 1798.140(v)(2).

26            *California Consumer Privacy Act (CCPA).* Plaintiffs next assert that Google violated the

27   CCPA. Compl. ¶ 223. Plaintiffs theorize that, by scraping the internet, Google collects

28   consumers' personal information without "provid[ing] notice" to consumers "at or before the

1   point of collection." Compl. ¶ 227. But a CCPA claim cannot serve as the predicate for a UCL

2   claim. *See* Cal. Civ. Code §§ 1798.150(a), (c) ("Nothing in this act shall be interpreted to serve

3   as the basis for a private right of action under any other law."); Cal. Sen. Com. on Jud., Analysis

4   of AB 375 (June 25, 2018), p. 22 ("It appears that this provision would eliminate the ability of

5   consumers to bring claims for violations of the Act under statutes such as the [UCL]")

6   ([https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201720180AB375#](https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201720180AB375#));

7   *Silver v. Stripe Inc.*, 2021 WL 3191752, at *7 (N.D. Cal. July 28, 2021) (dismissing UCL

8   "unlawful" claim and noting "the CCPA has no private right of action and on its face states that

9   consumers may not use the CCPA as a basis for a private right of action under any statute").[6]

10      *Other Statutes and Claims.* To the extent that Plaintiffs' claim is predicated on Plaintiffs'

11   other causes of action, Compl. ¶ 221, those other claims fail for the reasons set forth above. And

12   while the Complaint mentions an assortment of other statutes—*e.g.*, the Children's Online

13   Privacy Protection Act; the California Online Privacy Protection Act, Section 5 of the Federal

14   Trade Commission Act, and Cal. Bus. & Prof. Code §§ 22575, *et seq.* (Compl. ¶ 223)—there are

15   no allegations addressing whether or how Google violated these statutes. *See Silver*, 2021 WL

16   3191752, at *7 (dismissing UCL unlawful claim where "the complaint does an inadequate job of

17   explaining the specific violations of those statutes").

18      **Plaintiffs have failed to plead a claim under the fraudulent prong.** Plaintiffs have failed

19   to plead their fraudulent prong claim with the requisite particularity. A UCL claim sounding in

20   fraud must satisfy Rule 9(b)'s requirements for pleading with specificity. *See, e.g.*, *Kearns v.*

21   *Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). That means the Complaint must state

22

23      [6] In any event, Plaintiffs do not establish a CCPA violation. First, web scraping does not
collect "personal information," which by definition excludes "publicly available" information.

24   *See* Cal. Civ. Code § 1798.140(v)(2). Second, by regulation, Google is exempt from the CCPA's
notice requirement because web scraping—finding public information on the internet—does not

25   "directly" collect information from the consumer, and Google is not alleged to "sell" or "share"
the information. *See* Cal. Code Regs. tit. 11, § 7012(h) ("A business that neither collects nor

26   controls the collection of personal information directly from the consumer does not need to
provide a Notice at Collection to the consumer if it neither sells nor shares the consumer's

27   personal information."); Cal. Civ. Code § 1798.140(ad) (defining "sell" to mean transfer of the
personal information "to a third party for monetary or other valuable consideration"); *Id.*

28   § 1798.140(ah) (defining "share" narrowly to mean communicating the information to "a third
party for cross-context behavioral advertising"); Compl. ¶¶ 73-74 (describing web scraping).

1    details about "'the who, what, when, where, and how' of the misconduct charged," as well as

2    "what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp.*

3    *USA*, 317 F. 3d 1097, 1106 (9th Cir. 2003) (cleaned up).

4         Plaintiffs fail to plead with particularity how Google made a false statement. Plaintiffs

5    appear to allege that Google falsely represented in its Privacy Policy that it respected user

6    privacy and did not use publicly available information to train its AI models. But Plaintiffs' own

7    Complaint acknowledges that Google's Privacy Policy has long disclosed that Google may use

8    *"information that's publicly available online or from other public sources to train Google's*

9    *language models*." Compl. ¶ 98 (emphasis added); *supra* fn. 4. Plaintiffs fail to explain why that

10   statement was false and likely to deceive the public. *See, e.g.*, *Hall v. SeaWorld Ent., Inc.*, 2015

11   WL 9659911, at *10 (S.D. Cal. Dec. 23, 2015) (dismissing UCL claim that did not explain why

12   alleged misrepresentations were false); *Vassigh v. Bai Brands LLC*, 2015 WL 4238886, at *4

13   (N.D. Cal. July 13, 2015) (same); *Antoine v. Berkshire Hathaway Guard Ins.*, 2023 U.S. Dist.

14   LEXIS 13087, at *6-12 (C.D. Cal. Jan. 25, 2023) (failure to plead why particular statements

15   were likely to deceive the public dooms UCL claim).

16        Plaintiffs must also plead with particularity "actual reliance on the allegedly deceptive or

17   misleading statements, and that the misrepresentation was an immediate cause of their injury-

18   producing conduct." S*ateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir. 2012)

19   (cleaned up). The Complaint fails to allege that Plaintiffs ever read Google's Privacy Policy, let

20   alone relied on it. Indeed, the Complaint alleges that "the average consumer using the internet—

21   including non-Google-affiliated sites—would have no reason to check Google's privacy policy."

22   Compl. ¶ 142. Plaintiffs have thus failed to plead actual reliance with particularity. *See, e.g.*,

23   *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 912-14 (N.D. Cal. 2020).

24        To the extent Plaintiffs intend a theory based on alleged omissions, Plaintiffs also fail to

25   satisfy Rule 9(b). Omissions, too, must be pleaded with particularity. *See Kearns*, 567 F.3d at

26   1127. Plaintiffs "must describe the content of the omission and where the omitted information

27   should or could have been revealed, as well as provide representative samples of advertisements,

28   offers, or other representations *that plaintiff relied on* to make her purchase and that failed to

1   include the allegedly omitted information." *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992,

2   1002 (N.D. Cal. 2009) (emphasis added). Plaintiffs must also plead with particularity the source

3   of the duty to disclose the allegedly omitted information. *See Hodges v. Apple Inc.*, 2013 WL

4   4393545, at *5 (N.D. Cal. Aug. 12, 2013), *aff'd*, 640 F. App'x 687 (9th Cir. 2016). Again,

5   Plaintiffs nowhere plead this information. For example, they point to no specific representations

6   *that Plaintiffs relied on*, let alone what was misleading and what should have been included. *See*

7   *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1124 n.10 (C.D. Cal. 2010). Nor do they

8   explain why Google had a duty to disclose any omitted information. Plaintiffs vaguely allege that

9   the duty arose from "the important public interest in securing basic privacy and property rights."

10  Compl. ¶ 254. But courts reject broad obligations to disclose and instead require identification of

11  a specific duty to sustain an omission claim. *See Hall*, 2015 WL 9659911, at *6.

12          ***Plaintiffs have failed to plead a claim under the unfair prong.*** Plaintiffs' allegations

13  under the unfair prong of the UCL are the same as the allegations under the fraudulent and

14  unlawful prongs. Compl. ¶ 243, 245, 247. "[W]here the unfair business practices alleged under

15  the unfair prong of the UCL overlap entirely with the business practices addressed in the

16  fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the

17  claims under the other two prongs of the UCL do not survive." *Dang v. Samsung Elecs. Co.*,

18  2018 WL 6308738, at *10 (N.D. Cal. Dec. 3, 2018), *aff'd*, 803 F. App'x 137 (9th Cir. 2020); *see*

19  *also Holmes v. Johnson & Johnson*, 617 F. App'x. 639, 644 (9th Cir. June 30, 2015) (dismissing

20  plaintiff's UCL claim based on the unfair prong because "the same activity [] form[ed] the basis

21  of her fraudulent ground" and the allegations "similarly fail[ed] to satisfy [Rule 9(b)'s]

22  requirements"). Nor do Plaintiffs allege any concrete harm tied to the allegedly unfair practices.

23          ***Plaintiffs have failed to plead facts justifying UCL remedies.*** "Remedies under the UCL

24  are limited to restitution and injunctive relief, and do not include damages." *Silvercrest Realty,*

25  *Inc. v. Great Am. E&S Ins. Co.*, 2012 WL 13028094, at *2 (C.D. Cal. Apr. 4, 2012). Plaintiffs

26  have not pleaded a basis for restitution. Plaintiffs do not allege that Google took any money from

27  them. Nor do they identify any property that could be returned to them. Rather, Plaintiffs seek

28  "disgorgement of [Google's] unjust gains" (Compl. ¶¶ 280, 265), a form of nonrestitutionary

disgorgement—i.e., money obtained from third parties by the defendant, rather than money obtained from the plaintiff. Such "nonrestitutionary disgorgement is akin to a damages remedy," *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1009 (9th Cir. 2008), and unavailable under the UCL. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003); *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 460 (2005).

## VIII.   J.L. Fails to State a Claim for Copyright Infringement Based on Bard or Its Outputs (Count 8).

A single plaintiff, J.L., asserts three claims for infringement of the copyright in her unspecified non-fiction book. First, she contends that Google infringed by copying her book and using it to "train[]" the AI language models underlying the Bard chatbot. Compl. ¶¶ 356, 364-65. Second, she asserts that "Bard itself[] is a derivative work." Compl. ¶ 359. Third, she claims that Google infringes whenever Bard, in response to user queries, generates an output related to her book. Compl. ¶ 362, 364. The second and third claims should be dismissed on the pleadings because J.L. has failed to plead representative infringements or substantial similarity.

To allege direct copyright infringement, J.L. must sufficiently allege "unlawful appropriation," which requires "substantial similarities" between the protected expression in the allegedly copied and infringing work. *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc). To do so, J.L. must plead at minimum "a 'representative sampling'" of the allegedly infringing content. *See Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2020 WL 1877707, at *6 (N.D. Cal. Apr. 15, 2020); *Klauber Bros., Inc. v. Roma Costumes, Inc.*, 2023 WL 3903908, at *5 (C.D. Cal. June 7, 2023) (dismissing for failure to "properly plead representative infringement"); *MultiCraft Imports, Inc. v. Mariposa USA, Inc.*, 2017 WL 5664996, at *3 (C.D. Cal. Sept. 14, 2017) ("Absent any allegations of even representative infringements, the FAC fails to provide notice as a matter of law."); *Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*, 149 F. Supp. 3d 1167, 1175 (N.D. Cal. 2015).

As to Bard itself, J.L. has not plausibly alleged that Bard is an infringing derivative work. Labeling something a "derivative work" does not alter the requirement that, to infringe, it must be substantially similar in protected expression to the copyrighted work. *See Litchfield v.*

*Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984) (rejecting as "frivolous" the argument that "any work based on a copyrighted work" is an infringing derivative work, irrespective of substantial similarity); *see also* 4 Patry on Copyright § 12:13 (2022) (collecting cases) ("[T]o infringe the derivative right, there must be substantial similarity in protectible expression between the parties' works."). J.L. does not and cannot plead substantial similarity between protected expression in her book and the software code underlying Bard.

As to Bard's output, J.L. also fails to plead substantial similarity. J.L. alleges that Bard will "offer" to "summarize" or "regenerate the text" of her book. Compl. ¶ 15. But, tellingly, J.L. stops short of alleging that Bard actually reproduced any text from her book—even in response to her prompting. *See id.* ¶ 354. This is especially glaring in light of her allegation that Bard *mischaracterizes* the content of books, *id.* ¶ 249, which is not copyright infringement, and that Bard was also trained on statements she made to the media, *id.* ¶ 353, in which she does not claim a registered copyright. At most, J.L.'s allegations suggest Bard's output was related to the *topic* of her "non-fiction book." Compl. ¶ 14. But even assuming that Bard's output included facts derived from J.L.'s book, "[f]acts are not copyrightable." *Experian Info. Sols., Inc. v. Nationwide Mktg. Servs. Inc.*, 893 F.3d 1176, 1181 (9th Cir. 2018). J.L. nowhere alleges (let alone shows) that Bard's output was substantially similar to the copyrightable expression in her book. Accordingly, J.L. has not plausibly alleged infringement based on Bard's output.[7]

## IX.   J.L. Fails to State a Claim Under 17 U.S.C. § 1202 (Count 10).

J.L. asserts a claim under § 1202(b) of the Digital Millennium Copyright Act ("DMCA"), which prohibits the "intentional[] remov[al] or alter[ation]" of copyright management information ("CMI"), *see* 17 U.S.C. § 1202(b)(1), and the "distribut[ion]" of "works" or "copies of works ... knowing that [CMI] has been removed or altered," *see id.* § 1202(b)(3). J.L alleges that (1) Google "removed" CMI from copies of her work when "train[ing]" its AI models, in violation of Section 1202(b)(1); and (2) Bard was "design[ed]" to "reproduce" copyrighted

---

[7] Plaintiffs plead a claim for vicarious copyright infringement (Count 9), but assert it only against former defendants Google DeepMind and Alphabet, Inc. (Compl. ¶¶ 368-76), both of whom Plaintiffs dismissed. ECF No. 13. With those defendants out of the case, the vicarious infringement claim cannot proceed.

1    works without "preserv[ing] any CMI," in violation of Section 1202(b)(3). Compl. ¶ 382. J.L.

2    fails to state a claim under either theory.

3        *Section 1202(b)(1).* To plead a claim under Section 1202(b)(1), a plaintiff must plausibly

4    allege: (1) the existence of CMI on a work; (2) removal or alteration of the CMI from the work

5    or copy without authorization; and that the removal or alteration was done (3) intentionally and

6    (4) knowing or having reasonable grounds to know that it would induce, enable, facilitate, or

7    conceal copyright infringement. 17 U.S.C. § 1202(b); *Stevens v. CoreLogic, Inc.*, 899 F.3d 666,

8    673 (9th Cir. 2018) (discussing the mental state elements); *O'Neal v. Sideshow, Inc.*, 583 F.

9    Supp. 3d 1282, 1286-87 (C.D. Cal. 2022) (discussing other elements).

10       J.L has not plausibly alleged removal of specified CMI from copies of her book, much

11   less intentional removal. The Complaint includes a conclusory allegation that Google "copied

12   Plaintiff J.L.'s … copyrighted works [and] removed the copyright management information"

13   before training Bard's language model. Compl. ¶ 382. Though the Complaint does not specify

14   what CMI was supposedly removed, J.L elsewhere alleges that her book contained "customary

15   copyright-management information including the name of the author and the year of

16   publication." Compl. ¶ 14. J.L.'s theory appears to be that Google copied her book in its entirety

17   and then deleted her name and the year of publication before using it to train Bard.

18       J.L offers no facts that might support such a theory, and instead alleges facts that

19   contradict it, averring that Google trained Bard on "the exact digital version of [her] book."

20   Compl. ¶ 353. Further, the Complaint does not allege how and why Google would delete author

21   names and publication years from books in the training data. Indeed, J.L. does not even allege

22   Google knew of the existence of CMI in her book, and thus could not plausibly allege its

23   "intentional" removal. *See Harrington v. Pinterest, Inc.*, 2022 WL 4348460, at *4 (N.D. Cal.

24   Sept. 19, 2022). J.L.'s conclusory speculation of CMI removal, for no apparent reason and

25   contrary to the allegation that Google trained Bard using an exact digital version of her book, is

26   precisely the kind of "unwarranted deduction[] of fact" that this Court must disregard on a

27   motion to dismiss. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

28

J.L. also has not satisfied the obligation to plead facts showing Google knew or should have known the supposed removal of CMI would facilitate downstream copyright infringement. J.L.'s sole allegation is a conclusory sentence reciting the statutory language: "Defendant[] knew or had reasonable grounds to know that this removal of CMI would facilitate copyright infringement." Compl. ¶ 383. Under Ninth Circuit precedent, "specific allegations as to how identifiable infringements 'will' be affected are necessary." *Stevens*, 899 F.3d at 674. Plaintiffs must "make an affirmative showing, such as by demonstrating a past 'pattern of conduct' or 'modus operandi,' that the defendant was aware or had reasonable grounds to be aware of the probable future impact of its actions." *Id.* at 673-74. Courts routinely dismiss claims based on "conclusory" repetition of the statutory language, devoid of "any facts that [Defendant] had the required mental state." *See Philpot v. Alternet Media, Inc.*, 2018 WL 6267876, at *5 (N.D. Cal. Nov. 30, 2018); *Harrington*, 2022 WL 4348460, at *5; *O'Neal*, 583 F. Supp. 3d at 1287; *Peter T. Erdelyi & Assocs. v. Optimum Seismic, Inc.*, 2021 WL 4775635, at *6 (C.D. Cal. July 1, 2021); *Mills v. Netflix, Inc.*, 2020 WL 548558, at *3 (C.D. Cal. Feb. 3, 2020). That is the case here.

J.L.'s pleading failure is especially glaring because, as she alleges, the training dataset is "largely secret." Compl. ¶ 75. But "[t]he point of CMI is to provide the public with notice that a work is copyrighted." *Fashion Nova, LLC v. Blush Mark, Inc.*, 2023 WL 2540418, at *4 (C.D. Cal. Mar. 15, 2023). The alleged removal of CMI from a secret dataset could not deprive "the public" of any notice. J.L. does not explain why Google would know that removal of CMI from its internal training datasets would facilitate downstream infringement.

***Section 1202(b)(3).*** J.L.'s Section 1202(b)(3) claim fails for similar reasons. To properly plead such a claim, a plaintiff must plausibly allege: (1) the existence of CMI on a work, (2) removal or alteration of the CMI from the work or a copy without authorization, (3) distribution of the work or copy knowing the CMI was removed or altered without authorization, and (4) knowing or having reasonable grounds to know that this would induce, enable, facilitate, or conceal copyright infringement. 17 U.S.C. § 1202(b); *see also Stevens*, 899 F.3d at 673.

As explained above, J.L. has not plausibly alleged removal of CMI, knowledge of that removal, or that Google knew its conduct would facilitate infringement.

J.L.'s Section 1202(b)(3) claim fails for an additional reason: That provision does not apply unless the works "distribute[d]" are the original "works" themselves or actual "copies of [them]," from which the original CMI has been "removed." 17 U.S.C. § 1202(b)(3). The law does not require that CMI in some underlying original be *carried forward* into allegedly infringing *derivative works*. *See Kipp Flores Architects, LLC v. Pradera SFR, LLC*, 2022 WL 1105751, at *3 (W.D. Tex. Apr. 13, 2022) (dismissing § 1202(b)(3) claim because "'[r]emoval' of CMI from a copyrighted work is not the same as the failure to add CMI to a nonidentical rendition or a derivative of the protected work"); *Robert L. Stark Enters., Inc. v. Neptune Design Grp., LLC*, 2017 WL 1345195, at *11 (N.D. Ohio Apr. 12, 2017) (rejecting § 1202(b)(3) claim based on "creat[ion of] derivative works without retaining [copyright owner's] CMI" because § 1202(b)(3) requires distribution of "copies"); *see also Frost-Tsuji Architects v. Highway Inn, Inc.*, 2015 WL 263556, at *4 (D. Haw. Jan 21, 2015), *aff'd*, 600 F. App'x 674 (9th Cir. 2017).

J.L. does not allege that Bard distributed copies of her book. *See* Compl. ¶ 382. Indeed, she does not even allege that Bard reproduced any part of her book. At most, her allegations suggest that Bard produced output on the same subject matter. Even if that output somehow infringed J.L.'s copyright—which she has not plausibly alleged—§ 1202 "does not prohibit merely omitting CMI from an infringing work." *Dolls Kill, Inc. v. Zoetop Bus. Co.*, 2022 WL 16961477, at *3-4 (C.D. Cal. Aug. 25, 2022); *see also Kirk Kara Corp. v. W. Stone & Metal Corp.*, 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020) (dismissing claim because "while the works may be *substantially similar*, [d]efendant did not make *identical* copies of Plaintiff's works and then remove the engraved CMI").

## X.     The Copyright Act Preempts Plaintiffs' Claims for Negligence, Conversion, Larceny, Unjust Enrichment, and Unfair Competition (Counts 1, 2, 5-7).

All of Plaintiffs' property-based state law claims should be dismissed for yet another reason: They are preempted by the Copyright Act. State law claims are preempted where (i) "the 'subject matter' of the state law claim falls within the subject matter of copyright"; and (ii) the rights asserted under state law are "equivalent to rights within the general scope of copyright." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010, 1019 (9th Cir. 2017); 17 U.S.C. § 301(a).

The subject matter of Plaintiffs' state law claims falls squarely within the subject matter of copyright. In alleging "theft" of their "Personal Information" (defined to include "copyrighted works" and "creative content" (Compl. ¶¶ 194, 309)), Plaintiffs aver that Google took written text, photographs, videos, and audio that Plaintiffs posted online. *See, e.g.*, Compl. ¶¶ 18-19, 24, 28-29, 35-36, 41, 44, 48-49, 53, 55-56. These are all the subject of copyright law. *See* 17 U.S.C. §§ 102(a)(1), (5)-(7); *Maloney*, 853 F.3d at 1011; Compl. ¶ 179 (alleging users have "copyright interests" in their "content posted online," including "text, images, music, video," which "fall under the purview of copyright law").[8]

Moreover, the rights Plaintiffs claim in this information "are not qualitatively different from the rights protected under copyright law." *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1144 (9th Cir. 2006). The Copyright Act affords copyright owners the exclusive rights to "reproduce the copyrighted work in copies," "prepare derivative works," and "distribute" and "display" copies. 17 U.S.C. §§ 106(1)-(3), (5). Indeed, J.L.'s copyright claim alleges that Google violated her copyright by copying her work, using it to create a "derivative work" by training an AI model, and displaying her work in the model's output. Compl. ¶¶ 354, 359, 364. Those same theories underlie Plaintiffs' property-based state-law claims: Plaintiffs' conversion/theft,[9] unjust enrichment,[10] and negligence[11] claims allege that Google copied Plaintiffs' information on the internet, used it to create an AI model, and/or further displayed it, all without Plaintiffs' consent.

---

[8] Whether all of Plaintiffs' "Personal Information" is actually entitled to copyright protection is irrelevant, as "the scope of the subject matter of copyright law is broader than the protections it affords." *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 979 (9th Cir. 2011). Plaintiffs' "Personal Information" "need not consist entirely of copyrightable material in order to meet the subject matter requirement, but instead need only fit into one of the copyrightable categories in a broad sense." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004).

[9] *See* Compl. ¶¶ 319-322, 335-336 (alleging Plaintiffs' property right to control their Personal Information, which Google stole and converted by copying "the contents of the internet" and using it to "create" products like Bard without Plaintiffs' consent).

[10] *See* Compl. ¶ 341 (alleging Google improperly benefited by copying Plaintiffs' Personal Information and using it to create Bard and other models).

[11] *See* Compl. ¶ 292 (alleging Google breached a duty to "avoid web scraping without consent," to "avoid using Personal Information to train their AI products," and to "avoid collecting and sharing Users' data").

1    In other words, Plaintiffs assert rights to control the reproduction and display of their

2    creative content posted on the internet, and its use to create another work. Those are copyright

3    claims masquerading as state law property claims, and they are preempted. *See, e.g.*, *Zito v.*

4    *Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022, 1027 (N.D. Cal. 2003) (conversion claim arising

5    from unauthorized reproduction "is equivalent to a claim for copyright infringement");

6    *Phantomalert, Inc. v. Google Inc.*, 2016 WL 879758, at *14 (N.D. Cal. Mar. 8, 2016)

7    (preemption of conversion claim based on alleged copying of plaintiff's database); *Firoozye v.*

8    *Earthlink Network*, 153 F. Supp. 2d 1115, 1128, 1130 (N.D. Cal. 2001) (preemption of

9    conversion and unjust enrichment claims alleging copying); *Shade v. Gorman*, 2009 WL 196400,

10   at *5 (N.D. Cal. Jan. 28, 2009) (unjust enrichment claim preempted where "gravamen" is

11   defendants' copying of video and photos and use to make a movie); *Dielsi v. Falk*, 916 F. Supp.

12   985, 992 (C.D. Cal. 1996) (preemption of negligence claim where essential allegation is

13   unlawful copying of plaintiff's information and use to create derivative work). Plaintiffs' unfair

14   competition claim is likewise preempted to the extent predicated on these state law claims or

15   Google's alleged copyright infringement (Compl. ¶¶ 220, 223, 236). *See Media.net Advert. FZ-*

16   *LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052, 1075 (N.D. Cal. 2016); *ExperExchange, Inc. v.*

17   *Doculex, Inc.*, 2009 WL 3837275, at *25 (N.D. Cal. Nov. 16, 2009).

## CONCLUSION

18   For these reasons, Google requests dismissal of the Complaint.

21   Dated:  October 16, 2023                     WILSON SONSINI GOODRICH & ROSATI
22                                                Professional Corporation

23                                                By:  */s/ David H. Kramer*
24                                                     David H. Kramer
                                                      dkramer@wsgr.com
25                                                    Maura L. Rees
                                                      mrees@wsgr.com
26                                                    Eric P. Tuttle
                                                      eric.tuttle@wsgr.com

27                                                *Counsel for Defendant*
28                                                Google LLC