1  DAVID H. KRAMER, SBN 168452
Email: dkramer@wsgr.com
2  MAURA L. REES, SBN 191698
Email: mrees@wsgr.com
3  WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
4  650 Page Mill Road
Palo Alto, CA 94304-1050
5  Telephone:  (650) 493-9300

6  ERIC P. TUTTLE, SBN 248440
Email: eric.tuttle@wsgr.com
7  WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
8  701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
9  Telephone:  (206) 883-2500

10  *Counsel for Defendant*
GOOGLE LLC

11

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14               SAN FRANCISCO DIVISION

15

| | |
|---|---|
| 16  JILL LEOVY, NICHOLAS GUILAK, CAROLINA BARCOS, PAUL MARTIN, 17  MARILYN COUSART, ALESSANDRO DE LA TORRE, VLADISSLAV VASSILEV, JANE 18  DASCALOS, and minor G.R., individually, and on behalf of all other similarly situated, 19                    Plaintiffs, 20            v. 21  GOOGLE LLC, 22                    Defendant. 23  24  25  26 | CASE NO.:  3:23-cv-03440-AMO  **DEFENDANT GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**  **Filed Concurrently Herewith:** Request for Judicial Notice and Consideration of Materials Incorporated by Reference  Date:    May 16, 2024 Time:    2 p.m. Courtroom: 10 Judge:  Hon. Araceli Martínez-Olguín |

27

28

1

# TABLE OF CONTENTS

2

**Page**

3   TABLE OF AUTHORITIES ...................................................................................................ii

4   NOTICE OF MOTION AND MOTION ...............................................................................1

5   STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED ...........................1

6   MEMORANDUM OF LAW ..................................................................................................1

7   PLAINTIFFS' ALLEGATIONS...............................................................................................2

8   ARGUMENT ..........................................................................................................................4

9       I.    The Amended Complaint Violates Rule 8. ...........................................................4

10       II.    Plaintiffs Fail to State a Claim. ............................................................................7

11             A.    Plaintiffs Fail to State a Claim for Negligence (Count 2). .........................7

12             B.    Plaintiffs Fail to State a Claim Under CDAFA (Count 3). .........................8

13             C.    Plaintiffs Fail to State a Claim for Invasion of Privacy or Intrusion

14                  Upon Seclusion (Counts 4-5). ...................................................................10

15             D.    Plaintiffs Fail to State a Claim for Larceny, Conversion, or Trespass
               to Chattels (Counts 6-8). ..........................................................................14

16             E.    Plaintiffs Fail to State a Claim for Breach of Contract or Tortious

17                  Interference (Counts 9-10). .......................................................................16

18             F.    Plaintiffs Fail to State a Claim for Unjust Enrichment (Count 11). ..........20

          G.    Plaintiffs Fail to State a Claim Under the UCL (Count 1). .......................20

19             H.    Most of Plaintiffs' Claims Are Preempted by the Copyright Act

20                  and/or Superseded by California's Trade Secret Act (Counts 1-3, 6-

21                  9, 11)........................................................................................................28

22             I.    Plaintiffs Fail to State a Claim for Copyright Infringement (Count
               12)............................................................................................................30

23   CONCLUSION ....................................................................................................................30

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

2

### CASES

3

4

*AdTrader, Inc. v. Google LLC,*
    2018 WL 3428525 (N.D. Cal. July 13, 2018) ................................................................... 19

5

6

*Alert Enter., Inc. v. Rana,*
    2023 WL 2541353 (N.D. Cal. Mar. 16, 2023) ................................................................. 30

7

*Andersen v. Stability AI Ltd.,*
    2023 WL 7132064 (N.D. Cal. Oct. 30, 2023) ............................................................ 17, 19

8

9

*Armstrong-Harris v. Wells Fargo Bank, N.A.,*
    2022 WL 3348426 (N.D. Cal. Aug. 12, 2022) ................................................................. 21

10

11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................................................ 13

12

*Astiana v. Hain Celestial Grp., Inc.,*
    783 F.3d 753 (9th Cir. 2015) ........................................................................................... 20

13

14

*Balsam v. Tucows Inc.,*
    627 F.3d 1158 (9th Cir. 2010) ......................................................................................... 17

15

16

*Bass v. Facebook, Inc.,*
    394 F. Supp. 3d 1024 (N.D. Cal. June 21, 2019) ............................................................ 21

17

*Beecher v. Google N. Am. Inc.,*
    2018 WL 4904914 (N.D. Cal. Oct. 9, 2018) ................................................................... 17

18

19

*Best Carpet Values, Inc. v. Google, LLC,*
    90 F.4th 962 (9th Cir. 2024) ........................................................................... 14, 15, 28, 29

20

21

*Brodsky v. Apple Inc.,*
    445 F. Supp. 3d 110 (N.D. Cal. 2020) .............................................................................. 8

22

*Callaway Golf Co. v. Dunlop Slazenger Grp. Ams., Inc.,*
    318 F. Supp. 2d 216 (D. Del. 2004) ................................................................................ 30

23

24

*Chiu v. NBS Default Servs., LLC,*
    2015 WL 1221399 (N.D. Cal. Mar. 17, 2015) ................................................................. 20

25

26

*Chrisman v. City of Los Angeles,*
    155 Cal. App. 4th 29 (2007) ............................................................................................. 8

27

*Cottle v. Plaid Inc.,*
    536 F. Supp. 3d 461 (N.D. Cal. 2021) ............................................................................ 21

28

*Dang v. Samsung Elecs. Co.*,
    2018 WL 6308738 (N.D. Cal. Dec. 3, 2018) ........................................................... 27

*Davidson v. Hewlett-Packard Co.*,
    2021 WL 4222130 (N.D. Cal. Sept. 16, 2021) ........................................................ 11

*Doe v. GitHub, Inc.*,
    2023 WL 3449131 (N.D. Cal. May 11, 2023) ........................................................... 6

*Doe v. GitHub, Inc.*,
    2024 WL 235217 (N.D. Cal. Jan. 22, 2024) ...................................................... 28, 29

*Durell v. Sharp Healthcare*,
    183 Cal. App. 4th 1350 (2010) ............................................................................... 20

*EF Cultural Travel BV v. Zefer Corp.*,
    318 F.3d 58 (1st Cir. 2003) ....................................................................................... 4

*Feldman v. Discover Bank*,
    2021 WL 8895125 (C.D. Cal. Dec. 22, 2021) ......................................................... 19

*Field v. Google Inc.*,
    412 F. Supp. 2d 1106 (D. Nev. 2006) ................................................................. 4, 19

*Garcia v. Google, Inc.*,
    786 F.3d 733 (9th Cir. 2015) ................................................................................... 16

*George v. Grossmont Cuyamaca Cmty. Coll. Dist*,
    2022 WL 17330467 (S.D. Cal. Nov. 29, 2022) ..................................................... 4, 6

*Gonzales v. Uber Techs., Inc.*,
    305 F. Supp. 3d 1078 (N.D. Cal. 2018) .................................................................... 8

*Green Desert Oil Grp. v. BP W. Coast Prods.*,
    2011 WL 5521005 (N.D. Cal. Nov. 14, 2011) .......................................................... 7

*Greenley v. Kochava, Inc.*,
    __ F. Supp. 3d __, 2023 WL 4833466 (S.D. Cal. July 27, 2023) ............................ 21

*Hall v. SeaWorld Ent., Inc.*,
    2015 WL 9659911 (S.D. Cal. Dec. 23, 2015) ..................................................... 26, 27

*Hammerling v. Google LLC*,
    2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ......................................................... 12

*Hazel v. Prudential Fin., Inc.*,
    2023 WL 3933073 (N.D. Cal. June 9, 2023) ........................................................... 21

*Heiting v. Tara Pharm. USA, Inc.*,
    2023 WL 9319049 (C.D. Cal. Dec. 26, 2023) ........................................................... 9

*Heldt v. Guardian Life Ins. Co. of Am.*,
    2019 WL 651503 (S.D. Cal. Feb. 15, 2019) ...................................................................... 11

*Heller v. Cepia, L.L.C.*,
    2012 WL 13572 (N.D. Cal. Jan. 4, 2012) ......................................................................... 29

*Hill v. Nat'l Collegiate Athletic Assn.*,
    7 Cal. 4th 1 (1994)............................................................................................................. 10

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    31 F.4th 1180 (9th Cir. 2022)............................................................................... 3, 4, 9, 11

*Hodges v. Apple Inc.*,
    2013 WL 4393545 (N.D. Cal. Aug. 12, 2013) ................................................................. 27

*Holmes v. Johnson & Johnson*,
    617 F. App'x. 639 (9th Cir. 2015)..................................................................................... 27

*I.C. v. Zynga, Inc.*,
    600 F. Supp. 3d 1034 (N.D. Cal. 2022) .............................................................................. 6

*In re Anthem, Inc. Data Breach Litig.*,
    162 F. Supp. 3d 953 (N.D. Cal. 2016) .............................................................................. 17

*In re Google Assistant Priv. Litig.*,
    457 F. Supp. 3d 797 (N.D. Cal. 2020) .............................................................................. 23

*In re Google Location Hist. Litig.*,
    428 F. Supp. 3d 185 (N.D. Cal. 2019) .............................................................................. 10

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................................................ 15

*In re Meta Browser Tracking Litig.*,
    No. 3:22-cv-5267-AMO, ECF No. 91 (N.D. Cal. Aug. 17, 2023)...................................... 6

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) ................................................................................ 13

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
    525 F. Supp. 3d 1017 (N.D. Cal. 2021) .............................................................................. 8

*Intel Corp. v. Hamidi*,
    30 Cal. 4th 1342 (2003).................................................................................................... 14

*Joude v. WordPress Found.*,
    2014 WL 3107441 (N.D. Cal. July 3, 2014) ..................................................................... 17

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
    171 Cal. App. 4th 939 (2009)............................................................................................ 30

*Kadrey v. Meta Platforms, Inc.*,
   2023 WL 8039640 (N.D. Cal. Nov. 20, 2023) .................................................. 7, 28, 29, 30

*Kalitta Air, LLC v. Cent. Tex. Airborne Sys., Inc.*,
   315 F. App'x 603 (9th Cir. 2008) ................................................................................ 7

*Katz-Lacabe v. Oracle Am., Inc.*,
   2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) ............................................................. 21

*Kazenercom Too v. Turan Petroleum, Inc.*,
   2009 WL 10679984 (C.D. Cal. June 9, 2009) ............................................................ 4

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .................................................................................. 26

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ........................................................................................... 19

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011) ............................................................................................. 21

*Laws v. Sony Music Ent., Inc.*,
   448 F.3d 1134 (9th Cir. 2006) .................................................................................. 28

*Litchfield v. Spielberg*,
   736 F.2d 1352 (9th Cir. 1984) .................................................................................. 30

*Lloyd v. Facebook, Inc.*,
   2022 WL 4913347 (N.D. Cal. Oct. 3, 2022) ......................................................... 10, 12

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) .................................................................... 15

*M.K. v. Google LLC*,
   2023 WL 2671381 (N.D. Cal. Mar. 27, 2023) ........................................................... 21

*Maloney v. T3Media, Inc.*,
   853 F.3d 1004 (9th Cir. 2017) .................................................................................. 28

*Marolda v. Symantec Corp.*,
   672 F. Supp. 2d 992 (N.D. Cal. 2009) ...................................................................... 27

*Martin v. Meredith Corp.*,
   657 F. Supp. 3d 277 (S.D.N.Y. 2023) ....................................................................... 23

*Mattel, Inc. v. MGA Ent., Inc.*,
   782 F. Supp. 2d 911 (C.D. Cal. 2011) ....................................................................... 29

*McCluskey v. Hendricks*,
   2023 WL 3376564 (9th Cir. May 11, 2023) ........................................................... 9, 11

*McGowan v. Weinstein*,
    505 F. Supp. 3d 1000 (C.D. Cal. 2020) ...................................................... 14, 15

*Media.net Advert. FZ-LLC v. NetSeer, Inc.*,
    156 F. Supp. 3d 1052 (N.D. Cal. 2016) .......................................................... 29

*Melendez v. Vaiana*,
    2017 WL 8183139 (C.D. Cal. Oct. 19, 2017) .................................................. 17

*Metro Servs. Grp. v. Travelers Cas. & Sur. Co. of Am.*,
    2021 WL 2633416 (N.D. Cal. June 25, 2021) ................................................. 18

*Moore v. Centrelake Med. Grp., Inc.*,
    83 Cal. App. 5th 515 (Cal. Ct. App. 2022) ..................................................... 21

*name.space, Inc. v. Internet Corp. for Assigned Names & Nos.*,
    795 F.3d 1124 (9th Cir. 2015) ........................................................................ 19

*Noel v. Bank of Am.*,
    2012 WL 5464608 (N.D. Cal. Nov. 8, 2012) .................................................... 4

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
    50 Cal. 3d 1118 (1990) .................................................................................. 18

*Packingham v. N. Carolina*,
    582 U.S. 98 (2017) ............................................................................... 5, 9, 25

*Phantomalert, Inc. v. Google Inc.*,
    2016 WL 879758 (N.D. Cal. Mar. 8, 2016) ..................................................... 29

*Sandvig v. Sessions*,
    315 F. Supp. 3d 1 (D.D.C. 2018) ..................................................................... 9

*Saroya v. Univ. of the Pac.*,
    503 F. Supp. 3d 986 (N.D. Cal. 2020) ........................................................... 20

*Sateriale v. R.J. Reynolds Tobacco Co.*,
    697 F.3d 777 (9th Cir. 2012) .......................................................................... 26

*Semi-Materials Co. v. SunPods, Inc.*,
    2012 WL 3962487 (N.D. Cal. Sept. 10, 2012) ................................................ 19

*Silver v. Stripe Inc.*,
    2021 WL 3191752 (N.D. Cal. July 28, 2021) ............................................ 23, 25

*Skidmore v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) (en banc) ........................................................ 30

*Smith v. Facebook, Inc.*,
    745 F. App'x 8 (9th Cir. 2018) ................................................................. 12, 14

*Sugarfina, Inc. v. Sweet Pete's LLC*,
    2017 WL 4271133 (C.D. Cal. Sept. 25, 2017) ................................................................. 20

*Sunbelt Rentals, Inc. v. Victor*,
    43 F. Supp. 3d 1026 (N.D. Cal. 2014) ........................................................................... 8

*Swipe & Bite, Inc. v. Chow*,
    147 F. Supp. 3d 924 (N.D. Cal. 2015) .......................................................................... 18

*Taboola, Inc. v. Ezoic Inc.*,
    2020 WL 1900496 (S.D.N.Y. Apr. 17, 2020) ............................................................... 18

*Thomson Reuters Enter. Ctr. GmbH v. Ross Intel. Inc.*,
    2023 WL 6210901 (D. Del. Sept. 25, 2023) ......................................................... 28, 29

*UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*,
    117 F. Supp. 3d 1092 (C.D. Cal. 2015) ........................................................................ 18

*UMG Recordings, Inc. v. Norwalk Distribs.*,
    2003 U.S. Dist. LEXIS 26303 (C.D. Cal. June 12, 2003) ............................................ 18

*United States v. Abouammo*,
    2022 WL 17584238 (N.D. Cal. Dec. 12, 2022) ....................................................... 15, 16

*Van Buren v. United States*,
    141 S. Ct. 1648 (2021) ................................................................................................... 9

*Vassigh v. Bai Brands LLC*,
    2015 WL 4238886 (N.D. Cal. July 13, 2015) ............................................................... 26

*Vess v. Ciba-Geigy Corp. USA*,
    317 F. 3d 1097 (9th Cir. 2003) ..................................................................................... 26

*Waste & Compliance Mgmt. v. Stericycle, Inc.*,
    2017 WL 4358145 (S.D. Cal. Oct. 2, 2017) .................................................................. 19

*Williams v. Apple, Inc.*,
    449 F. Supp. 3d 892 (N.D. Cal. 2020) .......................................................................... 26

*Yumul v. Smart Balance, Inc.*,
    733 F. Supp. 2d 1117 (C.D. Cal. 2010) ........................................................................ 27

*Yunker v. Pandora Media, Inc.*,
    2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) .............................................................. 16

**CONSTITUTIONAL PROVISION AND STATUTES**

17 U.S.C.
    § 102(a) ......................................................................................................................... 28

§ 106 .................................................................................................. 29
§ 301(a) ............................................................................................. 28

Cal. Penal Code
§ 496(a) ............................................................................................. 14
§ 496(c) ............................................................................................. 14

California Consumer Privacy Act (CCPA), Cal. Civ. Code
§ 1798.99.80 ..................................................................................... 22
§ 1798.140 ........................................................................................ 22
§ 1798.150 ........................................................................................ 22

California Online Privacy Protection Act (CalOPPA), Cal. Bus. & Prof. Code
§ 22575 ............................................................................................. 23
§ 22576 ............................................................................................. 23

California's Unfair Competition Law (UCL),
Cal. Bus. & Prof. Code §§ 17200, *et seq.* ........................ 2, 3, 20, 21, 22, 23, 25, 26, 27, 30

California Uniform Trade Secrets Act (CUTSA),
Cal. Civ. Code §§ 3426, *et. seq.* ................................................. 29

Children's Online Privacy Protection Act (COPPA),
15 U.S.C. §§ 6501, *et. seq.* .................................................. 23, 24, 25

Comprehensive Computer Data Access and Fraud Act (CDAFA),
Cal. Penal Code § 502 ................................................... 3, 8, 9, 29, 30

Computer Fraud and Abuse Act (CFAA),
18 U.S.C. § 1030 ............................................................................. 9

U.S. Const. amend. I ................................................................. 2, 5, 9, 25

**RULES AND REGULATIONS**

16 C.F.R. § 312.2 ......................................................................... 24, 25

76 Fed. Reg. 59804 (Sept. 27, 2011) ..................................................... 24

Cal. Code Regs. § 7012(h) ................................................................ 22

Fed. R. Civ. P. 8 ................................................................. 1, 2, 4, 6, 7, 8

Fed. R. Civ. P. 9(b) ...................................................................... 26, 27

Fed. R. Civ. P. 11 ............................................................................ 13

Fed. R. Civ. P. 12(b)(6) ..................................................................... 1

**NOTICE OF MOTION AND MOTION**

**PLEASE TAKE NOTICE** that on May 16, 2024 at 2 p.m., Defendant Google LLC will move this Court pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6) for an order dismissing Plaintiffs' Amended Complaint (ECF No. 28 or "FAC").

**STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED**

Google respectfully asks the Court to dismiss the amended complaint in its entirety for failure to comply with Rule 8. In the alternative, Google asks the Court to dismiss, for failure to state a claim upon which relief can be granted, all claims except the part of Count 12 alleging that Google infringed plaintiff Leovy's copyright by copying her book and using it to train Bard.

**MEMORANDUM OF LAW**

Generative artificial intelligence ("AI") holds perhaps unprecedented promise to advance the human condition. It is already beginning to revolutionize the way we use technology, serving as a companion that can help research, summarize, and synthesize information; brainstorm ideas; write original creative or factual text and software code; and create images, videos, and music. It will open doors to new insights and forms of expression, as well as better, personalized help and advice in areas such as education, health care, government services, and business productivity.

To realize the promise of this technology, Generative AI models must learn a great deal: for example, to communicate in human language, to recognize context and connections in data, and to respond usefully on a multitude of subjects. Like a human mind, computer models require extensive training to learn. That means exposure to vast quantities of information that is publicly available or otherwise lawful to use. Care is required both in teaching the models and in filtering the models' responses to human requests to reduce unhelpful or inappropriate output. And so, in developing generative AI products such as its chatbot Bard, Google has gone to great lengths to ensure its products learn and operate in a responsible way.

Plaintiffs' massive amended complaint, an anti-AI polemic, ignores all of this. But the Court need not grapple with whether generative AI is good or bad for society; it need only decide whether Plaintiffs' claims are viable. They are not. Plaintiffs imagine they have a property or privacy right in information they shared publicly on the internet that entitles them to stop anyone

from gathering and using such information in ways they don't like, such as for generative AI. But outside copyright law (including its protection for fair use), there is no general right to control publicly-available information. And a state law that purported to create such a right would not only render ordinary internet use unlawful, but would also run headlong into preemption and the First Amendment. Instead, state law recognizes limited claims with specific elements that can be met only when certain information is used in particular ways and circumstances. Gathering and using public information is not, as Plaintiffs claim on behalf of all U.S. internet users, "stealing." Nor is it an invasion of privacy, trespass, hacking, negligence, unfair competition, or any of the other wrongs Plaintiffs charge. Accordingly, Plaintiffs' state law claims should be dismissed.

One plaintiff, purportedly on behalf of every copyright holder in the United States, asserts a claim for copyright infringement. Her claim that Google infringed the copyright in her book by using it to teach Bard, while meritless, is better disposed of on a developed record. Her alternative claim that Bard's output necessarily infringes the copyrights in all the works Bard trained on, however, is flatly inconsistent with copyright law and should be dismissed.

Plaintiffs try to obscure the deficiencies in their claims through shotgun pleading. Complaints must be "short and plain," with "simple, concise, and direct" allegations (Fed. R. Civ. P. 8). But Plaintiffs' amended complaint recites *103 pages of "background"* and then incorporates it wholesale into twelve different counts, all but two of which (the copyright claim and the jumbled UCL claim) are conclusory boilerplate. This makes it impossible to tell what allegations support each count and how, or what defenses might apply. It also conceals Plaintiffs' failure to plead basic facts, such as what specific personal information of Plaintiffs (if any) was allegedly used or disclosed by Google and how (if at all) Plaintiffs have actually been harmed. Apart from its failure to state a claim, the complaint should be dismissed under Rule 8. Plaintiffs have had multiple opportunities to fix these issues but have only made things worse, including after seeing similar arguments in Defendants' prior motion (ECF No. 20). Dismissal should be with prejudice.

**PLAINTIFFS' ALLEGATIONS**

*Defendant*. Google LLC is a leading provider of internet-related services, including search (Google Search) and email (Gmail). Google has developed artificial intelligence models and

1  publicly released services based on those models, such as its chatbot for consumers, Bard.

2        **Plaintiffs.** Plaintiffs are eight adults and one minor who allege that Google collected

3  information they shared on the internet and used it to develop AI products. FAC ¶¶ 13-98. One

4  plaintiff, Jill Leovy, is an author who alleges that Google used her copyrighted book (among

5  countless other things) to train its Bard chatbot. FAC ¶¶ 14-15.

6        **Plaintiffs' Claims.** Plaintiffs' amended complaint is a diatribe about the purported dangers

7  of artificial intelligence and a general attack on what Plaintiffs call "web-scraping" (but which

8  they do not differentiate from any form of gathering and using information that is publicly

9  available on the internet). Plaintiffs' theory is that Google stole from them when it found their

10  information on the internet, like anyone presumably could, and used it to teach AI models used in

11  services like Bard. This theory is articulated at a sweeping level of generality: Plaintiffs allege that

12  they shared broad categories of purportedly personal information on the internet and that Google

13  trained Bard on information collected from the internet. Plaintiffs never connect those two dots by

14  expressly alleging that Bard was trained on any specific personal information of any particular

15  Plaintiff. And while they speculate that they could potentially be harmed by such training if Bard

16  actually learned and then shared their personal information, Plaintiffs do not allege that Bard has

17  ever disclosed any of their personal information to anyone.

18        Plaintiffs assert twelve causes of action: (1) violation of California's Unfair Competition

19  Law ("UCL"); (2) negligence; (3) violation of California's Comprehensive Computer Data and

20  Fraud Act ("CDAFA"); (4) invasion of privacy; (5) intrusion upon seclusion; (6) larceny;

21  (7) conversion; (8) trespass to chattels; (9) intentional interference; (10) third-party beneficiary

22  breach of contract; (11) unjust enrichment; and (12) copyright infringement. FAC ¶¶ 420-646. The

23  copyright infringement claim is asserted by Leovy only. FAC ¶ 633. Plaintiffs seek to represent

24  three putative classes, two for the state-law claims (an "Internet-User Class" and a "Minor User

25  Class"), and another for the copyright-related claims (a "Copyright Class"). FAC ¶ 398.

26        **Scraping**. Much of Plaintiffs' complaint involves allegations that Google "scraped"

27  information from the internet. "Scraping involves extracting data from a website and copying it

28  into a structured format, allowing for data manipulation or analysis." *hiQ Labs*, *Inc. v. LinkedIn*

*Corp.*, 31 F.4th 1180, 1186 n.4 (9th Cir. 2022). It is "typically done by a web robot or 'bot'" in an automated fashion, *id.*; *see also* FAC ¶ 129, but the same information could be viewed and extracted "manually" by a human looking at the website, *see EF Cultural Travel BV v. Zefer Corp.*, 318 F.3d 58, 63 (1st Cir. 2003). "A web crawler is one common type of bot that systematically searches the Internet and downloads copies of web pages, which can then be indexed by a search engine." *hiQ Labs*, 31 F.4th at 1186 n.3. Indeed, Google's well-known search function depends on crawling and indexing the public web. *Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1110 (D. Nev. 2006). If a website does not want certain content to be crawled it can use a long-standing protocol to express that preference to the bot, or simply choose not to share a page in response to a request from the bot. *Id.* at 1112-13; *see also hiQ Labs*, 31 F. 4th at 1186 n.3. Websites will generally share with crawlers only content that they make available to everyone or that they want to appear in public search results. *Field*, 412 F. Supp. 2d at 1112-13.

## ARGUMENT

### I.     The Amended Complaint Violates Rule 8.

Swapping prolixity for clarity, the amended complaint fails to fairly apprise Google of the specific wrongs and harms being asserted amidst its 137 pages, 646 paragraphs, and 301 footnotes. Rule 8 requires a "short and plain" statement. Fed. R. Civ. P. 8(a). But this is a classic "shotgun complaint," where hundreds of facts are alleged in a lengthy background section (*see* ¶¶ 1-419) and then incorporated wholesale into numerous boilerplate counts (*see* Counts 2-11), making it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief," and under what theory. *Kazenercom Too v. Turan Petroleum, Inc.*, 2009 WL 10679984, at *1-2 (C.D. Cal. June 9, 2009). Such complaints do not satisfy Rule 8 and should be dismissed. *See George v. Grossmont Cuyamaca Cmty. Coll. Dist*, 2022 WL 17330467, at *15-16 (S.D. Cal. Nov. 29, 2022); *Noel v. Bank of Am.*, 2012 WL 5464608, at *2-3 (N.D. Cal. Nov. 8, 2012).

Perhaps by design, Plaintiffs' approach makes it all but impossible to tell whether they can state a claim for which they have standing and what defenses apply. For example, Plaintiffs assert a "privacy interest" and a "property interest" in their "Personal Information." *E.g.*, FAC ¶¶ 319-20, 551, 578. But Plaintiffs limitlessly define such "Personal Information" to "includ[e] but not

[be] limited to" all "personally identifiable information ('PII'), copyrighted works, creative content, Google searches, Gmail conversations, medical information, or financial information." FAC ¶ 372. To guess what "Personal Information" is at issue in each of Plaintiffs' claims, one must hunt through hundreds of paragraphs of allegations and try to construct a claim for them.

That is no straightforward task. Take Plaintiffs' invasion of privacy claim. Almost all the information connected to Plaintiffs in the complaint is generically-described content (such as comments, photos, and videos) that Plaintiffs appear to have shared on public websites and social media precisely so that it would be seen by others. *See id.* ¶¶ 18-97, 158-165. Indeed, Plaintiffs characterize the data they accuse Google of "scraping" as "public." FAC ¶¶ 128, 131. Plaintiffs have no privacy right to control such publicly-shared information and their attempt to do so runs smack into the First Amendment, which protects the right to "access" and "us[e]" information on public websites. *See Packingham v. N. Carolina*, 582 U.S. 98, 106-07 (2017) (First Amendment protects right of access to "commonplace social media websites"). While Plaintiffs allege that "hundreds" of allegedly scraped websites "are password protected" and host "confidential" information (FAC ¶¶ 157, 166-168), they do not actually (let alone plausibly) allege that Google accessed restricted portions of these websites as opposed to the public portions accessible to *every user*, or even that Plaintiffs *use* most of the sites they mention. And while they suggest that some of their social media posts were intended for a small audience (FAC ¶¶ 158-165), they do not allege facts showing those posts were sensitive or who had access to them. Similarly, while Plaintiffs allege that Google used nonpublic data from Google services like Gmail and search, they admit that Google users, including Plaintiffs themselves, expressly authorize Google to use their information to "improve [Google's] services and to develop new products." FAC ¶ 148 n.74; Request for Judicial Notice ("RJN") Ex. 2 (Privacy Policy). As these examples show, there are many potential problems with Plaintiffs' claims, but which of those problems bar the claims depends on what particular information of Plaintiffs and what conduct of Google is at issue.

Plaintiffs' shotgun pleading also conceals a formidable standing problem. To determine whether Plaintiffs have standing for their privacy claims, "courts must examine the nature of the specific information at issue to determine whether privacy interests [a]re implicated at all." *I.C. v.*

*Zynga, Inc.*, 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022). That cannot be done when the complaint fails to identify the specific sensitive or private information. *See In re Meta Browser Tracking Litig.*, No. 3:22-cv-5267-AMO, ECF No. 91 at 12 (N.D. Cal. Aug. 17, 2023) (Martínez-Olguín, J.); *Doe v. GitHub, Inc.*, 2023 WL 3449131, at *4 (N.D. Cal. May 11, 2023). Here, Plaintiffs' boundless definition of "Personal Information" coupled with their stew of allegations makes it impossible to determine whether they have each alleged harm from some invasion of a cognizable privacy interest. Likewise, while Plaintiffs attempt to establish injury and standing for their property claims by alleging that personal information in general *can* have commercial value (FAC ¶¶ 320-327), their approach obscures whether any of their information at issue *actually* had such value and whether Google deprived them of it. For example, it is far from clear how Plaintiffs can claim injury to a privacy right in, or a commercial opportunity to sell, information they intentionally shared with the world on public platforms. More fundamentally, Plaintiffs nowhere directly allege that any specific personal information of any particular Plaintiff was actually gathered and used for any generative AI purpose. Nor do Plaintiffs allege that any of their personal information has ever been revealed by Google's generative AI chatbot, Bard.

Plaintiffs compound these problems by adding scads of irrelevant allegations.[1] Such a complaint, "replete with 'immaterial facts not obviously connected to any particular cause of action,'" is an "impediment to Defendants' fair notice" and warrants dismissal under Rule 8. *George*, 2022 WL 17330467, at *15-16.

In sum, it does not suffice for Plaintiffs to allege a morass of facts about how people use the internet and how Google collects information and trains its AI models, and then assert many different boilerplate causes of action generically complaining about Google's alleged "theft" of Plaintiffs' catch-all "Personal Information." To have any chance of pleading valid claims for which they have standing, and to fairly apprise Google and the Court of those claims, Plaintiffs must, for each claim, identify the specific information for each Plaintiff that they claim was

---

[1] These include fears about harm that artificial intelligence or web crawling in general could cause to the world (e.g., FAC ¶¶ 121-125, 177, 180-199, 233-236, 248-260, 282-290, 363-378), alleged misconduct by other technology companies (*id.* ¶¶ 249, 294-297, 369-370), and the musings of social media users, bloggers, and commenters (*id.* ¶¶ 170, 262-279, 285-290, 364-366).

misused, how Google is alleged to have misused it, and how Plaintiffs were harmed by that. Having failed to do so, Plaintiffs have not complied with Rule 8.

## II.     Plaintiffs Fail to State a Claim.

As best Google can construe Plaintiffs' allegations, they are fundamentally misguided.

### A.     Plaintiffs Fail to State a Claim for Negligence (Count 2).

Plaintiffs' negligence claim is barred by the economic loss rule and independently fails because Plaintiffs do not adequately allege a duty of care.[2]

In the very similar case of *Kadrey v. Meta Platforms, Inc.*, 2023 WL 8039640, at \*2 (N.D. Cal. Nov. 20, 2023), Judge Chhabria held that the economic loss rule bars any negligence claim against Meta based on its alleged breach of a duty "to act in a reasonable manner" when copying public information from the internet to train an AI model. The same is true here. Plaintiffs vaguely allege that Google's negligent scraping of their "Personal Information" caused them "significant harm" (FAC ¶ 534), but the only harm Plaintiffs gesture at is financial, most specifically the "loss of value ... of their Personal Information." FAC ¶ 450; *see also id.* ¶¶ 318-334. Such negligence claims are barred by the economic loss rule. *Kadrey*, 2023 WL 8039640, at \*2 (citing *Kalitta Air, LLC v. Cent. Tex. Airborne Sys., Inc.*, 315 F. App'x 603, 605-06 (9th Cir. 2008)).

The negligence claim also fails because Plaintiffs do not adequately allege Google owed them a duty of care. A duty must be "imposed by law," "assumed by the defendant," or "aris[e] out of a preexisting relationship." *Green Desert Oil Grp. v. BP W. Coast Prods.*, 2011 WL 5521005, at \*5 (N.D. Cal. Nov. 14, 2011), *aff'd*, 571 F. App'x 633 (9th Cir 2014). Plaintiffs identify a hodgepodge of supposed duties Google owed, including to avoid "web scraping without consent," "using Personal Information to train its AI products," and "collecting and sharing Users' data." FAC ¶¶ 528, 533. But those are simply made-up, and while Plaintiffs assert that the supposed duties "arose from several sources" (*id.* ¶ 529), the amended complaint does not identify those sources. Accordingly, the negligence claim fails. *Green Desert,* 2011 WL 5521005, at \*5.

---

[2] Plaintiffs assert that California law applies. *See* FAC ¶¶ 412-419. For purposes of this motion only, Defendant assumes so.

**B.      Plaintiffs Fail to State a Claim Under CDAFA (Count 3).**

Plaintiffs' claim under CDAFA, Cal. Pen. Code § 502, also fails. CDAFA is a criminal "anti-hacking statute," *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1043 (N.D. Cal. 2021), designed to "'deter and punish … outsiders who break into a computer system to obtain or alter the information contained there,'" *Chrisman v. City of Los Angeles*, 155 Cal. App. 4th 29, 34 (2007). The act enumerates fourteen hacking-related crimes that trigger civil liability where a violation causes the "owner" of the computer or data "damage or loss." Cal. Pen. Code § 502(c); *id.* § 502(e). Plaintiffs assert a violation of a subsection prohibiting "[k]nowingly access[ing] and without permission tak[ing], cop[ying], or mak[ing] use of any data from a computer." Cal. Pen. Code § 502(c)(2). Plaintiffs aver that Google "accessed, scraped, copied, analyzed, and used Plaintiffs' … Private Information and other internet contributions (*i.e.*, data)" from "servers," "without authorized consent." FAC ¶ 544. The claim fails for multiple reasons.

First, the Rule 8 problem infecting Plaintiffs' complaint is especially pronounced here. The count is a boilerplate recitation of the statute. *See* FAC ¶¶ 535-548. Plaintiffs do not specify what "computer[s]" or specific "data" are at issue, how Plaintiffs "own[ed]" that data, what acts constitute Google's "knowing[] access" of those computers or its "tak[ing], copy[ing], or mak[ing] use" of that data, how Google acted "without permission," or how Plaintiffs suffered "damage or loss." Cal. Pen. Code § 502. Neither Google nor the Court "should have to guess." *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1090 (N.D. Cal. 2018). Courts routinely dismiss such "threadbare recitals" of CDAFA claims. *See Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1033 (N.D. Cal. 2014); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132 (N.D. Cal. 2020).

But the claim's problems are much more acute. In Plaintiffs' view, apparently, anyone who visits a public webpage, receives a copy of the webpage from the web server, and then uses the information on that webpage for his own purposes commits a *computer hacking crime* under CDAFA if he fails to first obtain express permission from everyone who claims to own content on that page. That approach would criminalize everyday use of the internet, along with foundational web search tools like Google Search and Microsoft Bing, which depend on crawling and indexing the public internet. No court has ever applied this decades-old statute in that sweeping manner.

1       To the contrary, courts have forcefully rejected far less extreme attempts to extend

2  CDAFA and its federal analogue, the Computer Fraud and Abuse Act ("CFAA"). In *Van Buren v.*

3  *United States*, the Supreme Court rejected arguments that CFAA, in prohibiting conduct that

4  "exceeds authorized access" to a computer, covered use of computers or websites in violation of

5  use policies or terms of service, including because that "would attach criminal penalties to a

6  breathtaking amount of commonplace computer activity." 141 S. Ct. 1648, 1661 (2021). In *hiQ*

7  *Labs*, the Ninth Circuit rejected arguments that "scraping" public LinkedIn profiles violated

8  CFAA, noting that "a defining feature of public websites" is that they are "open to anyone with a

9  web browser," and that those who make their data "publicly available … quite evidently intend

10  them to be accessed by others." 31 F.4th at 1190, 1199, 1201.

11       Just as courts have refused, with CFAA, "to turn a criminal hacking statute into a

12  'sweeping Internet-policing mandate,'" *id.* at 1201, so too with CDAFA. In *McCluskey v.*

13  *Hendricks*, the court rejected a claim that defendants accessed and took screenshots of plaintiff's

14  posts on social media without plaintiff's permission, holding "this cannot be the sort of harm the

15  California legislature had in mind when enacting the statute." 2021 WL 6773140, at *5 (C.D. Cal.

16  Nov. 17, 2021), *aff'd*, 2023 WL 3376564 (9th Cir. May 11, 2023). To read CDAFA to criminalize

17  viewing and using the internet would collide both with the First Amendment and the rule of lenity.

18  *See Packingham*, 582 U.S. at 107; *Sandvig v. Sessions*, 315 F. Supp. 3d 1, 25-26 (D.D.C. 2018)

19  (interpreting CFAA to criminalize use of website content beyond purposes permitted by terms of

20  service would "burden a great deal of expressive activity" and "bring[] the First Amendment into

21  play"); *hiQ Labs*, 31 F.4th at 1201 (rule of lenity requires narrowly construing  criminal CFAA).

22       Plaintiffs do not allege that Google hacked into password-protected servers to obtain their

23  private financial, medical, or other personal information. While the complaint alludes to password-

24  protected portions of websites like Walmart's pharmacy portal (*e.g.*, FAC ¶¶ 157, 166-168),

25  Plaintiffs do not directly (let alone plausibly) allege that Google somehow circumvented password

26  protections to obtain their private information from any site. CDAFA does not apply. Even if it

27  did, Plaintiffs have not alleged the damage or loss to their computers or data required for this

28  claim. *See Heiting v. Taro Pharms. USA, Inc.*, 2023 WL 9319049, at *7 (C.D. Cal. Dec. 26, 2023).

1

**C.      Plaintiffs Fail to State a Claim for Invasion of Privacy or Intrusion Upon Seclusion (Counts 4-5).**

2

3        Plaintiffs' privacy claim under the California Constitution and claim for intrusion upon

4   seclusion also fail. Courts consider these similar claims "together and ask whether: (1) there exists

5   a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Lloyd v.*

6   *Facebook, Inc.*, 2022 WL 4913347, at *10 (N.D. Cal. Oct. 3, 2022) (cleaned up). The law "sets a

7   'high bar' for establishing" a privacy claim to "weed out" claims that do not involve sufficient

8   intrusions into a "protected privacy interest." *In re Google Location Hist. Litig.*, 428 F. Supp. 3d

9   185, 196 (N.D. Cal. 2019).

10       Plaintiffs premise their privacy claims on individuals having an unqualified interest in *any*

11  so-called "Personal Information" (FAC ¶ 372) on the internet, regardless of the nature of that

12  information, whether it is publicly available, or the circumstances of any alleged collection. *E.g.*,

13  FAC ¶¶ 1, 6, 12, 25, 237-239. That is not the law, nor could it be without subjecting all internet

14  users to constant liability. To state a claim, Plaintiffs must identify the specific private information

15  at issue, and plausibly allege both a *reasonable* expectation of privacy in that information and a

16  "*highly offensive*" intrusion into that protected interest. *Lloyd*, 2022 WL 4913347, at *10.

17  Plaintiffs appear to suggest that Google collected three categories of information for use in

18  training Bard: (i) publicly available information that Plaintiffs themselves posted on the internet;

19  (ii) "Google searches"; and (iii) private emails from Google's Gmail platform. Plaintiffs cannot

20  state a claim for misuse of *any* of this information.

21       ***Plaintiffs Cannot State a Privacy Claim Based on Publicly-Available Information.***

22  Plaintiffs allege that Google invaded their privacy by scraping the internet, pointing to various

23  generically-described text, photos, audio, and videos that Plaintiffs shared, *see, e.g.*, FAC ¶¶ 18-

24  21, 30-32, 40-42, 52-55, 62-66, 74-75, 77-78, 87-88, 97, 158-65, including for "self-promotion,"

25  *id.* ¶¶ 21, 30. There is no protected privacy right in such publicly-available information.

26       To establish a legally protected privacy interest, Plaintiffs "must have conducted

27  [themselves] in a manner consistent with an actual expectation of privacy." *Hill v. Nat'l Collegiate*

28  *Athletic Assn.*, 7 Cal. 4th 1, 26 (1994). Plaintiffs allege facts showing the *opposite* for the

"Personal Information" they publicly disclosed online. *See hiQ Labs*, 31 F.4th at 1190 ("doubtful" that users who "make their [social media] profiles public actually maintain an expectation of privacy with respect to the information that they post publicly"). Such claims must be dismissed. *McCluskey v. Hendricks*, 2023 WL 3376564, at *2 (9th Cir. May 11, 2023) (affirming dismissal for failure to show "justifiable expectation of privacy in [plaintiff's] social media posts—many of which were posted on a business social media page and liked by dozens to hundreds of people"); *Davidson v. Hewlett-Packard Co.*, 2021 WL 4222130, at *6-7 (N.D. Cal. Sept. 16, 2021) (no reasonable privacy expectation in medical information posted to "publicly accessible blog").

Allegations that certain Plaintiffs posted content on social media sites that they subjectively did not expect to be viewed, gathered, or used fare no better. FAC ¶¶ 31, 52, 88, 158-165. For starters, no Plaintiffs directly allege that *any* of their posts (let alone posts they identify and plausibly allege to be sensitive) were actually scraped or used by Google to train AI models. Second, sites like Facebook make clear in their privacy policies that public posts, photos, and comments, including activity on public pages and groups, can "be seen by anyone," including "[s]earch engines," and "can appear in search results on the internet."[3] Third, while Plaintiffs seem to imply that some of their posts were shared with only a small number of people, they do not actually allege this. Nor do they directly allege that Google scraped any of their posts that were actually *private*, as opposed to viewable by *any* user. And they have not plausibly alleged facts showing how Google would have had access to their private posts. Put differently, Plaintiffs do not allege facts showing a reasonable expectation of privacy in unspecified information they voluntarily shared with unspecified numbers of other users, who have no identified relationship with Plaintiffs and were presumably free to further share it. *See Heldt v. Guardian Life Ins. Co. of Am.*, 2019 WL 651503, at *7 (S.D. Cal. Feb. 15, 2019) (dismissing claim where plaintiff "voluntarily shared the information with his Facebook friends knowing there is a possibility that his friends could share the information with others"); *Davidson*, 2021 WL 4222130, at *6.

Plaintiffs certainly cannot point to anything Google told them as the basis for an expectation of privacy in content they publicly posted online. To the contrary, Google's clear and

---

[3] *See* RJN Ex. 4 (Meta Privacy Policy) at 38-39.

1  public disclosure in its Privacy Policy that it "may collect information that's publicly available

2  online … to help train Google's language models" undermines any supposed privacy expectation,

3  particularly given Plaintiffs' agreement to that policy in connection with their own use of

4  Google's services.[4] *See Lloyd*, 2022 WL 4913347, at *10 (no reasonable expectation where

5  Facebook's Data Policy disclosed that third parties "provide information [to Facebook] about your

6  activities off Facebook") (emphasis omitted). These disclosures also refute the element of a

7  "highly offensive" intrusion. Plaintiffs have not shown how any data collection was "'blatantly

8  deceitful,' as in other cases where highly offensive intrusions have been found." *Hammerling v.*

9  *Google LLC*, 2022 WL 17365255, at *9 (N.D. Cal. Dec. 1, 2022).

10     Lastly, Plaintiffs' complaint shows that even they do not take seriously the argument that

11  privacy laws protect information shared publicly on the internet. They have copied into their

12  complaint numerous tweets and comments that various third parties posted online (*see, e.g.*, FAC

13  ¶¶ 174, 262-279, 285-290), demonstrating Plaintiffs' recognition that copying and using

14  information publicly shared on the internet invades no protected privacy interest.

15     ***Plaintiffs Cannot State a Privacy Claim Based on Google Searches.*** Plaintiffs also fail to

16  plead a plausible privacy claim based on what they describe as Google's alleged collection and use

17  of "Google searches." *E.g.*, FAC ¶¶ 148 & n.74, 349.a, 372, 423. It is unclear what Plaintiffs are

18  claiming. But the sole basis for their allegation is Google's Privacy Policy, which says Google

19  may collect user activity, including "terms [users] search for," and that Google uses the

20  information "to improve [its] services and to develop new products." FAC ¶ 148 & n.74. If, as

21  Plaintiffs aver, the Privacy Policy they accepted discloses that Google could collect and use search

22  terms, then Plaintiffs cannot plausibly plead that such use violated a reasonable expectation of

23  privacy or was highly offensive. *See, e.g.*, *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir.

24  2018) (affirming dismissal of intrusion claim given users' acquiescence to terms disclosing data-

25  collection practices); *Lloyd*, 2022 WL 4913347, at *10. Moreover, Plaintiffs nowhere allege what

26  their search queries were or how they were sensitive and private—especially as to Google, to

27

28

---

[4] FAC ¶¶ 201, 444, 607-609; RJN Ex. 2. That language had appeared in Google's Privacy Policy since May 2018. *See* https://policies.google.com/privacy/archive?hl=en-US; RJN at 1-3.

1   whom they were directly communicated. Nor do Plaintiffs allege *how* Google supposedly misused

2   their searches. They certainly do not allege that Google disclosed their searches to anyone.

3   **Plaintiffs Fail to State a Privacy Claim Based on Gmail Conversations**. Some Plaintiffs

4   who claim to use Gmail allege that Google surreptitiously used "private emails" from Gmail to

5   train Bard. As Google told Plaintiffs when they made the same allegation in their original

6   complaint, that is false. ECF No. 20 at 14:26-28. Plaintiffs attempted to manufacture plausibility

7   for that false allegation by adding one "fact" to their amended complaint: a tweet from a former

8   Google employee named Margaret Mitchell. FAC ¶ 174. Plaintiffs allege Ms. Mitchell's "AI

9   pedigree" and "experience" make her "well equipped to speak" to this issue, and that her tweet

10   "confirmed" that "Personal Gmail is used in training Bard." *Id.* ¶¶ 175, 179. But her tweet

11   confirmed no such thing. Ms. Mitchell responded to someone else's tweet by expressing surprise

12   at the suggestion that Google used Gmail to train Bard, as shown by her use of a question mark:

13   "Personal Gmail is used in training Bard?" *Id.* ¶ 174. Even in the light most favorable to Plaintiffs,

14   this does not "allow[] the court to draw the reasonable inference that" private Gmail conversations

15   were used to train Bard. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Counsel for Defendant

16   wrote to counsel for Plaintiffs pointing this out and asked if they had a Rule 11 basis to allege

17   Plaintiffs' private email was used to train Bard. Plaintiffs did not respond, confirming they do not.

18   Even if Plaintiffs had plausibly (but falsely) alleged that Google used someone's private

19   Gmail to train Bard, no Plaintiffs directly allege that any *particular private email of theirs* was

20   used. That is fatal. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1040-41 (N.D. Cal. 2014)

21   (dismissing privacy claim with no "facts related to what particular emails Yahoo intercepted, or

22   the content within particular emails"). Only four Plaintiffs even reference specific private

23   information in their Gmail at all, such as bank statements (FAC ¶¶ 22, 56, 68, 76), and those

24   Plaintiffs do not actually allege that Google used *those* emails/attachments to train Bard. In any

25   event, a claim based on such use would be barred by Google's terms, which Plaintiffs agreed to

26   when they created Gmail accounts and which they admit say Google may "collect the content you

27   create, upload, or receive from others when using our services," including "email you write and

28   receive," and use such information "to improve our services and to develop new products, features

and technologies." RJN Ex. 2 (Privacy Policy) at 2, 20; FAC ¶¶ 148 n.74, 444, 607-609; *see also* RJN Ex. 3 (Terms of Service) at 6-8, 20 (similar, including as to "emails [users] send and receive through Gmail"); *Smith*, 745 F. App'x at 8-9 (affirming dismissal of privacy claims where Facebook disclosed its data collection and use practices in its Terms and Policies).

### D.       Plaintiffs Fail to State a Claim for Larceny, Conversion, or Trespass to Chattels (Counts 6-8).

Plaintiffs claim that *all* of their "Personal Information" and "internet data," including their public internet posts, is their "property" that Google "stole," "conver[ted]," and "interfered with" when Google allegedly copied web pages from the internet and used them to train Bard. FAC ¶¶ 12, 574-604. California law creates no such property right, and the causes of action Plaintiffs invoke are not viable. Plaintiffs cite Penal Code Section 496(a), which provides a civil cause of action to anyone "injured" by a defendant who has received "property" that has been "stolen." Cal. Penal Code § 496(a), (c). Plaintiffs also assert a common-law conversion claim, which requires "ownership or right to possession of the property," "the defendant's conversion by a wrongful act," and damages. *McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1021 (C.D. Cal. 2020). And they assert a claim for trespass to chattels, which "lies where [1] an intentional interference with [2] the possession of personal property has [3] proximately caused injury.'" *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350 (2003) (cleaned up). Plaintiffs fail to state any of these claims for at least three reasons: (i) intangible copies of content that they publicly posted online are not "property"; (ii) allegations that Google copied publicly accessible web pages and other data do not establish theft, conversion, or interference; and (iii) they have not adequately alleged injury or damages.

First, Plaintiffs have failed to allege a cognizable property interest in copies of their "Personal Information" and "internet data" that they publicly "shared on the internet." FAC ¶¶ 1, 12. The Ninth Circuit recently rejected a similar argument, holding unambiguously "that a cognizable property right does not exist in a website copy." *Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 968-70 (9th Cir. 2024) (remanding for dismissal of trespass to chattels claim). The plaintiffs there alleged a property interest "in the copies of their websites that are transmitted to a[n] [internet] user's device." *Id.* The court disagreed, applying a three-part test to determine

1  whether a property right exists: "First, there must be an interest capable of precise definition;

2  second, it must be capable of exclusive possession or control; and third, the putative owner must

3  have established a legitimate claim to exclusivity." *Id.* at 968. The court held that "a website copy

4  is not 'capable of exclusive possession or control'" because "once the website copy is generated

5  and sent to the user's device, *users* have control over what to do with it." *Id.* at 969. That loss of

6  control renders copies of web pages "fundamentally different from other types of intangible

7  property recognized as being subject to California state-law property claims," such as financial

8  assets. *Id.* at 970. For the same reasons, Plaintiffs do not have a cognizable property interest in

9  copies of content they posted to publicly accessible web pages on the internet. *Accord United*

10 *States v. Abouammo*, 2022 WL 17584238, at *12 (N.D. Cal. Dec. 12, 2022) ("an individual does

11 not have an inherent property right to publicly available personal information because that

12 information is not, and cannot, be under the user's exclusive control.").

13       To the extent Plaintiffs contend that any of the unspecified "Personal Information" or other

14 "internet data" or "content" they accuse Google of taking was *not* public, their broad allegations

15 do not state a property interest "capable of precise definition," as required. *Best Carpet*, 90 F.4th at

16 969 ("California law requires that the property interest be 'well-defined' and 'like staking a claim

17 to a plot of land at the title office.'"); *accord In re iPhone Application Litig.*, 844 F. Supp. 2d

18 1040, 1075 (N.D. Cal. 2012) (dismissing conversion claim where plaintiffs claimed a property

19 interest in a "broad category" of "personal information" not "capable of precise definition").

20       Second, Plaintiffs cannot plausibly allege that their possession of "Personal Information"

21 and data was interfered with. Copying public information (or other data, such as emails or search

22 terms) that Plaintiffs never exclusively possessed and still retain access to does not constitute a

23 wrongful act of conversion, trespass, or criminal theft in California. On the contrary, "[w]here

24 property is capable of being copied, wrongful possession of copies does not typically give rise to a

25 conversion claim if the rightful owner retains possession of the original or retains access to other

26 copies." *McGowan*, 505 F. Supp. 3d at 1022; *see also Best Carpet*, 90 F.4th at 969-970 (no

27 trespass for copies of websites); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010,  1030 (N.D. Cal.

28 2012) (no conversion because "information such as what LinkedIn profile pages are viewed by a

1   user is not 'capable of exclusive possession or control'"); *Abouammo*, 2022 WL 17584238, at *12

2   ("a business's collection of users' personal information" is not conversion "because that

3   information is not, and cannot, be under the user's exclusive control," *e.g.*, "when a website

4   records a user's email address, the user does not lose exclusive control of the email

5   address");*Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *17 (N.D. Cal. Mar. 26, 2013)

6   (no exclusivity in PII such as age and gender).

7          Plaintiffs attempt to get around this problem by imagining a sui generis property right in

8   public information: the right to "delete" that information and have it be "forgotten," which they

9   allege copying interferes with. *See, e.g.*, FAC ¶¶ 199, 244, 297, 338, 355. Plaintiffs ignore that

10  "such a 'right to be forgotten' … is not recognized in the United States," *Garcia v. Google, Inc.*,

11  786 F.3d 733, 745 (9th Cir. 2015), and finds no support in the California law of theft, conversion,

12  or trespass. Even Plaintiffs do not take this made-up right seriously, as again evidenced by their

13  copying into the FAC numerous tweets, comments, and other posts that third parties shared on the

14  internet. FAC ¶¶ 174, 262-279, 285-290. That information now persists in a public pleading, with

15  no ability by the posters to delete it or have it be forgotten.

16         Lastly, Plaintiffs have not adequately alleged they were injured or harmed, as required for

17  all three claims. Plaintiffs claim that Google's actions were "*intended* to deprive" them of the

18  ability to use their information, "*calculated* to injure" them, and "put[] millions *at risk* for their

19  likeness to be cloned to perpetrate fraud, or to embarrass or otherwise harm them." FAC ¶¶ 329,

20  582, 586 (emphasis added). Those dubious allegations are a far cry from alleging that Plaintiffs

21  actually *were* injured by Google's alleged larceny, conversion, or trespass, let alone how.

22         **E.     Plaintiffs Fail to State a Claim for Breach of Contract or Tortious Interference**

23              **(Counts 9-10).**

24         *Breach of Contract.* Plaintiffs next claim that Google has violated their contractual rights

25  as supposed third-party beneficiaries of the terms of websites that Google allegedly scraped. FAC

26  ¶¶ 615-622. If taken seriously, this theory could subject every internet user who accesses or uses

27  information on the internet to a breach of contract claim from any other user who disapproves of

28  that access or use. But the claim fails for basic reasons: Plaintiffs fail to identify the contracts at

1   issue and fail to allege facts showing that they are third-party beneficiaries of any such contract.

2         Plaintiffs cannot state a claim by vaguely alleging that websites "often" or "typically" limit

3   scraping (FAC ¶ 308) or that some unspecified subset of the thousand websites listed in Exhibit B

4   to the FAC and "other similar websites" have "similar terms" that prohibit scraping in some

5   circumstances (FAC ¶ 618). Rather, Plaintiffs must identify the contracts and "allege the specific

6   provisions" breached. *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 978 (N.D. Cal.

7   2016); *see also, e.g.*, *Beecher v. Google N. Am. Inc.*, 2018 WL 4904914, at *2 (N.D. Cal. Oct. 9,

8   2018). Pointing to thousands of unidentified, assumed agreements that Plaintiffs acknowledge may

9   vary in material ways, and which relate to websites Plaintiffs do not even claim to use, does not

10  suffice. *See Andersen v. Stability AI Ltd.*, 2023 WL 7132064, at *16 (N.D. Cal. Oct. 30, 2023)

11  (dismissing breach of contract claim for failure to identify the "exact provisions in the TOS they

12  contend [defendant] breached and facts in support of breach of each identified provision").

13        Plaintiffs have not alleged that they are third-party beneficiaries of even the few cherry-

14  picked contracts they reference in the complaint. "[I]n the internet platform context, a third-party

15  beneficiary must still be expressly contemplated and intended by the contracting parties."

16  *Melendez v. Vaiana*, 2017 WL 8183139, at *5 (C.D. Cal. Oct. 19, 2017). Courts routinely reject

17  claims that websites' terms confer third-party beneficiary status on other users. *See id.* at *6

18  ("Each Twitter user is not an intended beneficiary of every other Twitter user's agreement.");

19  *Joude v. WordPress Found.*, 2014 WL 3107441, at *5 (N.D. Cal. July 3, 2014). Here, Plaintiffs

20  identify three websites with terms they allege limit scraping: LinkedIn, Pinterest, and Yahoo. FAC

21  ¶¶ 308-311. No Plaintiff is alleged to use Pinterest or Yahoo, so even under their own theory

22  Plaintiffs are not third-party beneficiaries of those terms. *See* FAC ¶ 619 (alleging terms are

23  intended to benefit "websites' other users"). The LinkedIn terms (like many other such terms)

24  expressly *disclaim* any third-party beneficiaries. *See* RJN Ex. 5 (LinkedIn User Agreement) at 12

25  ("There are no third-party beneficiaries to this Contract."); *see also* Ex. 6 (Yahoo Terms of

26  Service) at 8 ("[Terms] do not create any third party beneficiary rights."). This forecloses any

27  third-party beneficiary claim. *See Balsam v. Tucows Inc.*, 627 F.3d 1158, 1163 (9th Cir. 2010)

28  (rejecting third-party beneficiary theory because of "'No Third Party Beneficiaries' clause").

***Tortious Interference.*** Plaintiffs' tortious interference claim fares no better. Plaintiffs must allege they had "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). The FAC alleges that, by scraping the internet, Google intentionally caused numerous websites to breach their promise to their users that the users would retain ownership of their data. FAC ¶¶ 607-14. Again, Plaintiffs theory sweeps in far too much as it would subject to tort liability every user of the internet who gathers information from public websites without express permission from everyone who contributed to those sites. Unsurprisingly, that theory fails.

First, Plaintiffs fail to plead the existence of valid contract between themselves and third-party websites. Plaintiffs must "identify the third party or parties with whom they contracted, and the nature and extent of their relationship with that party or parties." *UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1115 (C.D. Cal. 2015); *see also Metro Servs. Grp. v. Travelers Cas. & Sur. Co. of Am.*, 2021 WL 2633416, at *4-5 (N.D. Cal. June 25, 2021); *UMG Recordings, Inc. v. Norwalk Distribs.*, 2003 U.S. Dist. LEXIS 26303, at *7 (C.D. Cal. June 12, 2003) (allegation of "various valid contracts" not enough). The FAC alludes to contracts with "various websites," including (but "not limited to") over 1,000 websites listed in Exhibit B to the FAC. FAC ¶¶ 613, 607-08. It does not identify the specific contracts each Plaintiff entered.

Second, the FAC falls well short of plausibly alleging that Google knew of each Plaintiff's contract with each website. Plaintiffs assume that, because Google "also accessed" websites, Google was somehow aware that "every user of each website was individually under contract with the website." FAC ¶ 609. But knowledge of specific contracts with "specific customers" is necessary. *Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 935 (N.D. Cal. 2015); *see also Taboola, Inc. v. Ezoic Inc.*, 2020 WL 1900496, at *11 (S.D.N.Y. Apr. 17, 2020) (public availability of a website's terms insufficient). Plaintiffs fail to allege Google's knowledge of any specific websites' terms, let alone that Google knew these websites contracted with ***Plaintiffs***.

Third, Plaintiffs fail to allege Google's "intentional acts designed to induce a breach." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1155 (2003). Plaintiffs must show Google "acted either with the desire to interfere or the knowledge that interference was certain or substantially certain to occur as a result of its action." *Id.* at 1164-65. The FAC's conclusory allegations that Google "knew" "web-scraping would necessarily result in the websites' breach of their promises" (FAC ¶ 612), without any explanation or factual support, do not suffice. *See, e.g.*, *name.space, Inc. v. Internet Corp. for Assigned Names & Nos.*, 795 F.3d 1124, 1134 (9th Cir. 2015); *Semi-Materials Co. v. SunPods, Inc.*, 2012 WL 3962487, at *5-6 (N.D. Cal. Sept. 10, 2012). Web crawling (or what Plaintiffs call "scraping") has been a foundational element of search engines for decades, and underpins the internet as we know it today. *See, e.g.*, *Field*, 412 F. Supp. 2d at 1110. Given the longstanding and settled practice, the complaint fails to explain how Google was "substantially certain" that its crawling would breach contracts between websites and users.

Finally, the FAC also fails to allege that unspecified websites breached their unspecified contracts with Plaintiffs. To establish that element, Plaintiffs must identify "what terms of the contract" the websites allegedly breached, *Feldman v. Discover Bank*, 2021 WL 8895125, at *2 (C.D. Cal. Dec. 22, 2021), and "explain the facts underlying such breach." *Waste & Compliance Mgmt. v. Stericycle, Inc.*, 2017 WL 4358145, at *4 (S.D. Cal. Oct. 2, 2017). The FAC's vague allegations that websites "promised to protect Plaintiffs' ownership of their data" or "in some way or another" assured Plaintiffs that "their data remained their own," and that Google "caused each website to breach" (FAC ¶¶ 610-11), are not close. *See AdTrader, Inc. v. Google LLC*, 2018 WL 3428525, at *5 (N.D. Cal. July 13, 2018) (dismissing for failure to plead specific breach); *Andersen*, 2023 WL 7132064, at *16. The FAC gestures at vague statements in a handful of websites' terms (for Dropbox, GitHub, Spotify, and Reddit) like "Your Stuff is Yours" or "Our legitimate interests here include protecting intellectual property and original content." FAC ¶¶ 301-304. But these statements cannot plausibly be read as contractual promises by those websites to prevent sharing of information Plaintiffs chose to make *publicly available* on those sites—particularly when the sites **specifically disclose** that they share data with Google or the public. *See* RJN Ex. 7 at 4 ("Dropbox shares your personal information with trusted third parties

… includ[ing] … Google LLC"); Ex. 8 at 6 ("Much of the information on the Services is public and accessible to everyone, even without an account. By using the Services, you are directing us to share this information publicly and freely."); *see also* Ex. 9 (GitHub), Ex. 10 (Spotify) (similar).

**F.      Plaintiffs Fail to State a Claim for Unjust Enrichment (Count 11).**

Again threatening to impose liability on anyone who uses public information on websites, Plaintiffs advance what they call an unjust enrichment claim. But "there is not a standalone cause of action for 'unjust enrichment'" under California law. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Such a claim is construed "as a quasi-contract claim seeking restitution," which requires that "a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Id*. Such a "quasi-contractual relationship" requires, at minimum, an "affiliation or connection" between the plaintiff and defendant. *Sugarfina, Inc. v. Sweet Pete's LLC*, 2017 WL 4271133, at *8 (C.D. Cal. Sept. 25, 2017).

Plaintiffs do not satisfy these requirements. To the extent the claim is premised on Google allegedly scraping "everything" on the internet "without notice or consent from anyone" (FAC ¶¶ 1, 7), Plaintiffs allege no relationship with Google through which they quasi-contractually "conferred" a benefit (e.g., by giving Google their information), let alone that Google procured any such transaction through deception, request, coercion, or the like. *See Chiu v. NBS Default Servs., LLC*, 2015 WL 1221399, at *9 (N.D. Cal. Mar. 17, 2015) (dismissing "conclusory and speculative [allegations] as to how Defendant received an unjust benefit from Plaintiff").

To the extent Plaintiffs base their claim on Google's alleged collection of data from users of Google services, it still fails because "an unjust enrichment claim does not lie where the parties have an enforceable express contract," here, the applicable Terms of Service and Privacy Policy. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010); *see also* FAC ¶¶ 415 & n.296, 435 & n.297, 444, 607-609 (Plaintiffs agreed to Terms and Privacy Policy); RJN at 3-4 & Exs. 2-3. And Plaintiffs have not alleged that the terms they agreed to are somehow unenforceable or invalid. *See Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 998 (N.D. Cal. 2020).

**G.      Plaintiffs Fail to State a Claim Under the UCL (Count 1).**

Plaintiffs also bring unfair competition claims under the UCL, Cal. Bus. & Prof. Code

§§ 17200, *et seq*. To plead a UCL claim, Plaintiffs must allege a "business act or practice" that is "'unlawful,' 'unfair,' or 'fraudulent.'" *Armstrong-Harris v. Wells Fargo Bank, N.A.*, 2022 WL 3348426, at *2 (N.D. Cal. Aug. 12, 2022). Plaintiffs fail to demonstrate standing or state a claim.

**Plaintiffs have failed to allege UCL statutory standing.** Courts have repeatedly held that complaints like this one, alleging hypothetical lost value of unspecific personal information, do not sufficiently plead the "economic injury" required for standing under the UCL. *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 321-25 (2011) (UCL standing limited to persons who "lost money or property as a result of ... unfair competition"); *see, e.g.*, *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 2838118, at *8 (N.D. Cal. Apr. 6, 2023) (the "weight of authority" holds that the "'mere misappropriation of personal information'" is not an economic injury) (collecting cases); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 484 (N.D. Cal. 2021) (rejecting theory of economic injury based on "loss of the inherent value of ... personal data"); *M.K. v. Google LLC*, 2023 WL 2671381, at *5 (N.D. Cal. Mar. 27, 2023) (dismissing minors' UCL invasion of privacy claim for failure to demonstrate how "the unlawful collection and recordation of plaintiff's personal identification information ... translates into a loss of money or property" (cleaned up)).

While the FAC refers to platforms that purportedly allow users to "monetize their own data," FAC ¶ 327, nowhere do Plaintiffs allege that these platforms pay for their particular kinds of data (*e.g.*, their Reddit comments, tweets, Spotify playlists, or Facebook posts). Nor do they allege they "ever attempted or intended to participate in [these] market[s], or otherwise to derive economic value from their PII." *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538-39 (Cal. Ct. App. 2022); *see also Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. June 21, 2019) (same); *Greenley v. Kochava, Inc.*, __ F. Supp. 3d __, 2023 WL 4833466, at *18 (S.D. Cal. July 27, 2023) ("[c]ourts have consistently found that alleging the economic value of data is not enough, if a plaintiff fails to allege the economic value to *him*"); *Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) (same). Accordingly, Plaintiffs do not have UCL standing for their data claims.

**Plaintiffs have failed to plead a claim under the unlawful prong.** A UCL "unlawful" prong claim "borrows violations of other laws and treats them as unlawful practices." *Armstrong-*

*Harris*, 2022 WL 3348426, at *3. Thus, if the "predicate" claim fails, "the UCL claim also fails." *Id.* (citation omitted). Plaintiffs seemingly try to "borrow" every privacy statute they can think of. None helps them.

*California Data Broker Law.* Plaintiffs assert that Google "failed to register as [a] data broker[]." FAC ¶ 423(b). Plaintiffs' theory appears to be that Google's "web scraping" of personal information for use in Google's own services renders it a data broker. *See id.* In their view, anyone gathering and using publicly-available information on the web can be sued under this law. That is not remotely correct. A data broker is "a business that knowingly collects and sells to third parties the personal information of a consumer with whom the business does not have a direct relationship." Cal. Civ. Code § 1798.99.80(c). This does not apply here for three reasons. First, Plaintiffs fail to allege facts establishing that Google collected and sold their "personal information," as the statutory definition expressly excludes "publicly available information." Cal. Civ. Code §§ 1798.99.80(e), 1798.140(v)(2). Second, Plaintiffs nowhere allege that Google sells personal information to third parties. Third, every plaintiff except Leovy alleges that they have a direct relationship with Google. *See, e.g.*, FAC ¶¶ 17, 29, 39, 51, 61, 73, 83-85, 93-96.

*California Consumer Privacy Act (CCPA).* Plaintiffs next assert that Google violated the CCPA. FAC ¶ 425. Plaintiffs theorize that, by scraping the internet, Google collects consumers' personal information without "provid[ing] notice" to consumers "at or before the point of collection." FAC ¶ 429. Again, Plaintiffs would subject to suit anyone who gathers publicly-available personal information on the internet. That is wrong on many levels.[5] But most simply, the CCPA cannot serve as the predicate for a UCL claim. *See* Cal. Civ. Code §§ 1798.150(a), (c) ("Nothing in this title shall be interpreted to serve as the basis for a private right of action under any other law."); RJN Ex. 11 at 22 (Cal. Sen. Com. on Jud., Analysis of AB 375 (June 25, 2018)) ("It appears that this provision would eliminate the ability of consumers to bring claims for

---

[5] Web scraping does not collect "personal information," which, under the statute, excludes "publicly available" information. *See* Cal. Civ. Code § 1798.140(v)(2). And Google is exempt from the CCPA's notice requirement because finding public information on the internet does not "directly" collect information from the consumer, and Google is not alleged to "sell" or "share" the information. *See* 11 Cal. Code Regs. § 7012(h); Cal. Civ. Code § 1798.140(ad), (ah).

1  violations of the Act under statutes such as the [UCL]"); *Silver v. Stripe Inc.*, 2021 WL 3191752,

2  at *7 (N.D. Cal. July 28, 2021) (dismissing UCL "unlawful" claim and noting "the CCPA has no

3  private right of action and on its face states that consumers may not use the CCPA as a basis for a

4  private right of action under any statute").

5      *California Online Privacy Protection Act (CalOPPA).* Next on Plaintiffs' statutory

6  checklist is CalOPPA (FAC ¶¶ 440-444), a statute requiring various privacy policy disclosures.

7  *See* Cal. Bus. & Prof. Code §§ 22575-79. But a party violates CalOPPA's disclosure requirements

8  "only if [it] fails to post its [compliant] policy within 30 days after being notified of

9  noncompliance." *Id.* § 22575(a). Here, Plaintiffs do not allege they (or anyone) notified Google of

10  any supposed noncompliance and so fail to plead a CalOPPA violation. *See Martin v. Meredith*

11  *Corp.*, 657 F. Supp. 3d 277, 286 (S.D.N.Y. 2023). Moreover, Plaintiffs do not explain ***how***

12  Google's policy violated the requirements in section 22575(b).[6] To the extent Plaintiffs seek to

13  claim Google failed to comply with the privacy disclosures it did make (FAC ¶ 444), the FAC

14  never alleges what disclosures are implicated, how Google failed to comply, or facts showing

15  Google acted with the requisite culpability. *See* Cal. Bus. & Prof. Code § 22576. Without those

16  details, no statutory violation to support the UCL claim is pleaded. *See In re Google Assistant*

17  *Priv. Litig.*, 457 F. Supp. 3d 797, 831, 841 (N.D. Cal. 2020) (dismissing UCL claim premised on

18  § 22576 for failure to identify how Google breached specific obligations in Google's Privacy

19  Policy); *Silver*, 2021 WL 3191752, at *7.

20      *Children's Online Privacy Protection Act (COPPA).* Plaintiffs also try to support a UCL

21  claim by charging that Google violated COPPA, a federal statute aimed at protecting children's

22  privacy. FAC ¶ 425. Plaintiffs' theory is that Google "scraped the entire internet, which it knew to

23  contain information of children under the age of 13, to build Bard, and then it enabled children to

---

24

25  [6] Contrary to Plaintiffs' claims, CalOPPA does not require disclosure of whether information can
be deleted from a trained AI model (FAC ¶ 440), nor does it impose requirements for collection of

26  information from minors (FAC ¶ 442). *See* Cal. Bus. & Prof. Code § 22575(b). While CalOPPA
***does*** require an operator to disclose whether other parties may collect PII about a user's online

27  activities (*id.* § 22575(b)(6); FAC ¶ 441), Plaintiffs do not explain why Google's Privacy Policy,
which contains a section titled "Sharing your information" that discusses this topic, fails to satisfy

28  that requirement. *See* RJN Ex. 2 (Dec. 15, 2022 Privacy Policy).

use Bard." FAC ¶ 385. The charge of a COPPA violation is sophistry.

COPPA is a carefully-calibrated statutory regime, balancing commercial, free speech, and privacy interests and informed by decades of FTC rulemaking. The statute applies only to (1) "operator[s] of a website or online service" that is "directed to children" under the age of 13 who collect personal information from those children; and (2) operators with "actual knowledge" that they are collecting personal information from a child under the age of 13. 15 U.S.C. §§ 6501(1), 6502(a)(1); *see also* 76 Fed. Reg. 59804, 59806 (Sept. 27, 2011) (COPPA "was never intended to apply to the entire Internet, but rather to a subset of Web sites and online services"). Plaintiffs ignore these critical limitations on COPPA's reach and imagine a world in which anyone gathering publicly-available information risks breaking the law if the information turns out to be associated with a child. That is not remotely how COPPA works.

Plaintiffs allege two supposed violations of COPPA: (1) that Google "scraped data from websites across the entire internet despite knowing full well that children under the age of 13 use these websites" (FAC ¶ 383); and (2) that Google collected information from children who use Bard (FAC ¶¶ 384-385). Both are meritless. Plaintiffs do not even try to allege that Google operates a service "directed to children." So they must allege facts plausibly showing that Google had "actual knowledge that it is collecting personal information from a child" under age 13. 15 U.S.C. §§ 6501(1), 6502(a)(1).

With respect to "scraping," Plaintiffs do not allege facts showing Google had actual knowledge that any information it crawled was from a child. Plaintiffs do not even allege that, when crawling the internet, Google is an "operator" of a website or online service that is collecting information "from a child," as required. 15 U.S.C. § 6502(a)(1). Plaintiffs allege that Google collects information from *other websites*, and that those other sites may have collected information from a child. But an "operator" is a person who "operates a Web site located on the Internet or an online service and who collects or maintains personal information *from or about the users of or visitors to such Web site or online service*." 16 C.F.R. § 312.2 (emphasis added). In crawling other websites, Google is not collecting information from or about users of *a site or service Google operates*. While FTC regulations extend COPPA to a site or service that "has *actual knowledge*

1  that it is collecting personal information *directly from users* of another Web site or online service

2  *directed to children*," 16 C.F.R. § 312.2 (emphasis added), that does not apply either. In crawling

3  the web, Google is not collecting information "directly from users" of other websites, and has no

4  actual knowledge that it is collecting personal information from sites directed to children.

5        With respect to collection from Bard users, Plaintiffs do not allege facts showing Google

6  had "actual knowledge" it was collecting personal information from any child. Plaintiffs do not

7  even allege facts showing Google collected information from any Bard user who was *in fact* a

8  "child" under COPPA. COPPA defines "child" as "an individual under the age of 13." 15 U.S.C.

9  § 6501(1). The sole minor Plaintiff—and the **only** minor Plaintiffs identify as having used Bard—

10  is a "thirteen (13) year old." FAC ¶ 93.[7] She is outside COPPA's purview.

11        That Plaintiffs' theory does not fit with COPPA is no surprise, because it would upend the

12  way the internet has worked for the 25 years since COPPA was enacted. Under Plaintiffs' logic,

13  anyone who operates an online service and gathers information from another website could be

14  held liable if that information happens to have been contributed by a child. This would certainly

15  end web search because search companies could not possibly know the age of the supplier of

16  every bit of online information. Such an interpretation would be entirely inconsistent with the

17  balance reflected in COPPA, as well as the First Amendment right to access public information on

18  the internet. *See Packingham*, 582 U.S. at 107.

19        *Other Statutes and Claims*. To the extent Plaintiffs' UCL claim purports to rest on their

20  other causes of action, those fail for the reasons set forth herein. And while the FAC mentions

21  other statutes ("California civil and criminal cyberstalking laws" (FAC ¶ 423), Section 5 of the

22  Federal Trade Commission Act (FAC ¶ 425), and "California Penal Code, including Sections 484

23  and 532" (FAC ¶ 443)), there are no allegations addressing how Google violated these statutes.

24  *See Silver*, 2021 WL 3191752, at *7 (dismissing UCL unlawful claim where "the complaint does

25  an inadequate job of explaining the specific violations of those statutes"). In short, Plaintiffs have

26  failed to allege the predicate illegality required for a UCL claim.

27  _____

28  [7] This is unsurprising given that, in the United States, Bard is available only to individuals 13 years old and older. *See, e.g.*, https://support.google.com/bard/answer/13278668.

1    ***Plaintiffs have failed to plead a claim under the fraudulent prong.*** Plaintiffs have also

2    failed to plead a claim under the fraudulent prong. A UCL claim sounding in fraud must satisfy

3    Rule 9(b)'s particularity requirements. *See, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125

4    (9th Cir. 2009). Thus, the FAC must state details about "'the who, what, when, where, and how'

5    of the misconduct charged," as well as "what is false or misleading about a statement, and why it

6    is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F. 3d 1097, 1106 (9th Cir. 2003) (cleaned up).

7        Plaintiffs fail to plead with particularity how Google made any deceptive statement.

8    Plaintiffs appear to allege that Google's Privacy Policy falsely represented that Google respected

9    privacy and concealed until July 2023 that Google was collecting information from the internet to

10   train its AI models. But as Plaintiffs acknowledge, even before the July 2023 revision, Google's

11   Privacy Policy had long disclosed that Google "may collect information that's publicly available

12   online or from other public sources to help train Google's language models." FAC ¶ 201; RJN Ex.

13   2 at 33; *supra* fn. 4. Plaintiffs fail to explain why that statement was false and likely to deceive the

14   public. *See, e.g.*, *Hall v. SeaWorld Ent., Inc.*, 2015 WL 9659911, at *10 (S.D. Cal. Dec. 23, 2015)

15   (dismissing UCL claim that did not explain why alleged misrepresentations were false); *Vassigh v.*

16   *Bai Brands LLC*, 2015 WL 4238886, at *4 (N.D. Cal. July 13, 2015).

17       Plaintiffs must also plead with particularity "actual reliance on the allegedly deceptive or

18   misleading statements, ... and that the misrepresentation was an immediate cause of their injury-

19   producing conduct." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir. 2012)

20   (cleaned up). The FAC fails to allege that Plaintiffs ever read Google's Privacy Policy, let alone

21   relied on it. To the contrary, the FAC alleges that "the average consumer using the internet—

22   including non-Google-affiliated sites—would have no reason to check Google's privacy policy."

23   FAC ¶ 246. Plaintiffs have failed to plead their actual reliance with particularity. *See, e.g.*,

24   *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 912-14 (N.D. Cal. 2020).

25       To the extent Plaintiffs intend a theory based on alleged omissions, Plaintiffs also fail to

26   satisfy Rule 9(b). Omissions, too, must be pleaded with particularity. *See Kearns*, 567 F.3d at

27   1127. Plaintiffs "must describe the content of the omission and where the omitted information

28   should ... have been revealed, as well as provide representative samples of ... representations that

plaintiff relied on … and that failed to include the allegedly omitted information." *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009). Plaintiffs must also plead with particularity the source of the duty to disclose. *See Hodges v. Apple Inc.*, 2013 WL 4393545, at *5 (N.D. Cal. Aug. 12, 2013), *aff'd*, 640 F. App'x 687 (9th Cir. 2016). Again, they point to no specific representations *they relied on*, let alone what was misleading and what should have been included. *See Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1124 n.10 (C.D. Cal. 2010). Nor do they explain why Google had a duty to disclose any omitted information. Plaintiffs vaguely allege that the duty arose from "the important public interest in securing basic privacy and property rights." FAC ¶ 495. But courts reject broad obligations to disclose and instead require identification of a specific duty to sustain an omission claim. *See Hall*, 2015 WL 9659911, at *6.

Plaintiffs' assertions that Google made "misrepresentations and omissions" regarding Bard to attract children to use it, FAC ¶¶ 457-458, fail for similar reasons. Plaintiffs again fail to identify any specific statements from Google concerning children's use of Bard, let alone explaining why such statements are deceptive or misleading, or how Plaintiffs relied on any statements. Nor do they allege the source of any duty to disclose more.

**Plaintiffs have failed to plead a claim under the unfair prong.** Plaintiffs' allegations under the unfair prong of the UCL are the same as those under the fraudulent and unlawful prongs. *See* FAC ¶¶ 452-469 (alleging, under "unfair" heading, that Google engaged in "unlawful" conduct that "violated regulations and laws," and that Google made "misrepresentations and omissions" that were "deceptive" and "fraudulent"). "[W]here the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive." *Dang v. Samsung Elecs. Co.*, 2018 WL 6308738, at *10 (N.D. Cal. Dec. 3, 2018), *aff'd*, 803 F. App'x 137 (9th Cir. 2020); *see also Holmes v. Johnson & Johnson*, 617 F. App'x. 639, 644 (9th Cir. 2015) (dismissing UCL claim based on unfair prong because "the same activity [] form[ed] the basis of her fraudulent ground" and the allegations "similarly fail[ed] to satisfy [Rule 9(b)'s] requirements").

1

2

**H.      Most of Plaintiffs' Claims Are Preempted by the Copyright Act and/or Superseded by California's Trade Secret Act (Counts 1-3, 6-9, 11).**

3       Counts 1-3, 6-9, and 11 should be dismissed for yet another reason: they are preempted by

4   the Copyright Act. Copyright preemption applies where (i) "the 'subject matter' of the state law

5   claim falls within the subject matter of copyright"; and (ii) the rights asserted under state law are

6   "equivalent to rights within the general scope of copyright." *Maloney v. T3Media, Inc.*, 853 F.3d

7   1004, 1010, 1019 (9th Cir. 2017); 17 U.S.C. § 301(a).

8       As several courts in this district have recently held, state-law claims based on the alleged

9   copying of information to train AI models are preempted because such claims are fundamentally

10  "premised on the rights protected by the Copyright Act." *Kadrey*, 2023 WL 8039640, at *2. In

11  *Kadrey*, Judge Chhabria held preempted the plaintiffs' negligence claim based on Meta's alleged

12  breach of a duty to "to act in a reasonable manner" when "copying the plaintiffs' books to train"

13  AI models, as well as their unjust enrichment claim based on such copying and use. *Id.* Similarly,

14  in *Doe v. GitHub, Inc.*, 2024 WL 235217, at *5-8 (N.D. Cal. Jan. 22, 2024), Judge Tigar held that

15  claims for interference with prospective economic relations, unjust enrichment, negligence, and

16  unfair competition were preempted because each was based on the defendants' use of copies of the

17  plaintiffs' code to train AI models. *See also Thomson Reuters Enter. Ctr. GmbH v. Ross Intel. Inc.*,

18  2023 WL 6210901, at *12 (D. Del. Sept. 25, 2023) (preemption of tortious interference claim

19  premised on copying to train AI); *Best Carpet*, 90 F.4th at 970-74 (preemption of unjust

20  enrichment claim based on displaying copies of websites). The same is true here.

21      The subject matter of Plaintiffs' claims falls squarely within the subject matter of

22  copyright. Plaintiffs aver that Google copied written text, photographs, videos, and audio that

23  Plaintiffs posted online. *See, e.g.*, FAC ¶¶ 14-15, 18-22, 30-33, 40-44, 52-56, 62-68, 74-78, 85-88,

24  94-97. Plaintiffs admit these are all the subject of copyright law. *See* FAC ¶ 356 (alleging users

25  have "copyright interests" in their "content posted online," including "text, images, music, video,"

26  which "fall under the purview of copyright law"); 17 U.S.C. §§ 102(a)(1)-(7).

27      Moreover, the rights Plaintiffs claim in this content "are not qualitatively different from the

28  rights protected under copyright law." *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1144 (9th

Cir. 2006). The Copyright Act affords exclusive rights to "reproduce the copyrighted work in copies," "prepare derivative works," and "distribute" and "display" copies publicly. 17 U.S.C. §§ 106(1)-(3), (5). These theories underlie Plaintiffs' CDAFA,[8] larceny/conversion/trespass,[9] unjust enrichment,[10] negligence,[11] and intentional interference[12] claims, which all allege that Google copied Plaintiffs' information from the internet, used it to create an AI model, and/or further displayed it to the public, all without Plaintiffs' consent. In other words, Plaintiffs assert rights to control the reproduction and public distribution of their creative content posted on the internet, and its use to create another work. Those are copyright claims masquerading as state-law property claims, and they are preempted, as Judges Chhabria, Tigar, and other courts have held. *See Kadrey*, 2023 WL 8039640, at *2; *GitHub, Inc.*, 2024 WL 235217, at *5-8; *Thomson Reuters*, 2023 WL 6210901, at *12; *Best Carpet*, 90 F.4th at 970-74; *Phantomalert, Inc. v. Google Inc.*, 2016 WL 879758, at *14 (N.D. Cal. Mar. 8, 2016) (preemption of conversion claim). Plaintiffs' unfair competition claim is likewise preempted to the extent predicated on these state law claims or alleged copyright infringement. *See Media.net Advert. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052, 1075 (N.D. Cal. 2016); *Kadrey*, 2023 WL 8039640, at *2; *GitHub*, 2024 WL 235217, at *8.

It is unclear whether any of Plaintiffs' claims concern material that is actually confidential. But to the extent Plaintiffs seek to evade copyright preemption on that basis, those claims would be barred as superseded by the California Uniform Trade Secrets Act ("CUTSA"). *See, e.g.*, *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011) (CUTSA "supersedes claims based on the misappropriation of confidential information" of value to plaintiff, whether or not it qualifies as a trade secret); *Heller v. Cepia, L.L.C.*, 2012 WL 13572, at

---

[8] *See* FAC ¶ 541 Google violated CDAFA by "knowingly accessing and without permission taking, copying, analyzing, and using Plaintiffs' and Class Members' Private Information").

[9] *See* FAC ¶¶ 576, 578-579, 591, 599 (Google stole, converted, and interfered with Plaintiffs' property right to control their Personal Information by copying "the contents of the internet," including Plaintiffs' "content and data," and using it to "create" products without consent).

[10] *See* FAC ¶ 625 (Google improperly benefited by copying Plaintiffs' Personal Information and using it to create Bard and other models).

[11] *See* FAC ¶ 533 (Google breached a duty to avoid "web scraping without consent," "using Personal Information to train their AI products," and "collecting and sharing Users' data").

[12] *See* FAC ¶ 612 (Google interfered by "stealing the data of other users through web-scraping").

1   *7 (N.D. Cal. Jan. 4, 2012) (conversion, unjust enrichment, and trespass claims superseded);

2   *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 961-62

3   (2009) (same as to UCL claim); *Callaway Golf Co. v. Dunlop Slazenger Grp. Ams., Inc.*, 318 F.

4   Supp. 2d 216, 221-22 (D. Del. 2004) (negligence claim); *Alert Enter., Inc. v. Rana*, 2023 WL

5   2541353, at *6-*7 (N.D. Cal. Mar. 16, 2023) (violation of CDAFA).

6          **I.      Plaintiffs Fail to State a Claim for Copyright Infringement (Count 12).**

7          One plaintiff, Leovy, asserts a claim for copyright infringement of her non-fiction book,

8   *Ghettoside*, under two theories. FAC ¶¶ 14, 633-646. First, she contends Google infringed by

9   copying her book and using it to "train[]" the AI models underlying Bard. FAC ¶ 644. Second, she

10  appears to contend that, because Google's models were allegedly taught using copyrighted works,

11  every output of the Bard chatbot is "necessarily" an infringing "derivative" of those works. FAC

12  ¶ 639. This second theory fails as a matter of law, as Judge Chhabria held in rejecting an identical

13  argument last year. *See Kadrey*, 2023 WL 8039640, at *1.

14         To allege direct copyright infringement, Leovy must sufficiently allege "substantial

15  similarities" between the asserted work's protected expression and the allegedly infringing

16  derivative. *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc). Here, Leovy

17  must "adequately allege" that "the outputs (or portions of the outputs) are similar enough to [her]

18  book[] to be infringing derivative works." *Kadrey*, 2023 WL 8039640, at *1. Leovy has failed to

19  plead even a single example of an allegedly infringing output. Leovy's theory—that every output

20  is "necessarily derivative" of the works used to train the AI language model, FAC ¶ 639—is

21  manifestly wrong. *See Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984) (rejecting as

22  "frivolous" the argument that "any work based on a copyrighted work" is an infringing derivative

23  work, irrespective of substantial similarity); *Kadrey*, 2023 WL 8039640, at *1 (rejecting plaintiffs'

24  argument that "they do not need to allege any similarity between [model] outputs and their books

25  to maintain a claim based on derivative infringement"). Leovy's infringement claim based on

26  output should be dismissed.

27                                          **CONCLUSION**

28         For these reasons, Google requests dismissal of the complaint with prejudice.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated:  February 9, 2024

WILSON SONSINI GOODRICH & ROSATI
  Professional Corporation

By:  */s/ David H. Kramer*
      David H. Kramer
      dkramer@wsgr.com
      Maura L. Rees
      mrees@wsgr.com
      Eric P. Tuttle
      eric.tuttle@wsgr.com

*Counsel for Defendant*
Google LLC