**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (CA SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart (CA SBN 306499)
*yhart@clarksonlawfirm.com*
Tiara Avaness (CA SBN 343928)
*tavaness@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050

**CLARKSON LAW FIRM, P.C.**
Tracey Cowan (CA SBN 250053)
*tcowan@clarksonlawfirm.com*
95 3rd St., 2nd Floor
San Francisco, CA 94103
Tel: (213) 788-4050

*Counsel for Plaintiffs and the Proposed Classes*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLAINTIFFS JILL LEOVY, NICHOLAS GUILAK; CAROLINA BARCOS; PAUL MARTIN; MARILYN COUSART; ALESSANDRO DE LA TORRE; VLADISSLAV VASSILEV; JANE DASCALOS, and minor G.R., individually, and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>    vs.<br><br>GOOGLE LLC,<br><br>            Defendant. | Case No. 3:23-cv-3440-AMO<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT GOOGLE LLC'S MOTION TO DISMISS AMENDED COMPLAINT**<br><br>**Hearing Information:**<br>Date: May 16, 2024<br>Time: 2:00 p.m.<br>Courtroom: 10<br><br>Judge: Hon. Araceli Martínez-Olguín |

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

## **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................1

II.   STATEMENT OF ISSUES TO BE DECIDED ...............................4

III.  STATEMENT OF RELEVANT FACTS .........................................4

IV.  ARGUMENT ...................................................................................5

    A.  Plaintiffs Satisfy Rule 8 ...........................................................6

    B.  Plaintiffs State Claims Upon Which Relief Can Be Granted.............7

        1.  Plaintiffs Adequately State a Claim Under the UCL (Count 1) ..........................7

            a.  Plaintiffs have sufficiently alleged statutory standing ........................7

            b.  Plaintiffs adequately alleged the UCL's unlawful prong ...................8

            c.  Plaintiffs adequately alleged the UCL's unfair prong ......................10

        2.  Plaintiffs Adequately Plead Larceny, Conversion, and Trespass to Chattels.......11

            a.  Plaintiffs have a property right in their personal information...........12

            b.  Copying is actionable taking............................................13

            c.  Plaintiffs adequately allege injury as a result of Google's theft ........14

        3.  Plaintiffs Properly Plead Invasion of Privacy and Intrusion Upon Seclusion ...................................................................14

            a.  "Publicly available" information ......................................15

            b.  Google searches ........................................................17

            c.  Gmail Conversations....................................................17

            d.  Google Terms or Privacy Policy do not Permit Google's Data Collection Practices ..........................................18

        4.  Plaintiffs Adequately Alleged Violations of the CDAFA ..................................19

        5.  Plaintiffs Adequately Plead Unjust Enrichment (Count 11) ..............................21

        6.  Plaintiffs Adequately Plead a Negligence Claim ..................................22

            a.  The economic loss doctrine does not bar Plaintiffs' claim ...............22

            b.  Google owed a duty to Plaintiffs and Class Members ......................23

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

7.  Plaintiffs Adequately State a Claim for Breach of Contract and Tortious
    Interference (Counts 9-10) ........................................................................24
        a.  Tortious Interference .................................................................24
        b.  Breach of Third-Party Beneficiary Contract .....................................26
8.  Plaintiffs Adequately Plead Direct Copyright Infringement Based
    on Output (Count 12) ............................................................................27
C.  Plaintiffs' Claims Are Not Preempted by the Copyright Act or the California Uniform
    Trade Secret Act ("CUTSA") (Counts 1-3, 6-9, 11) .........................................28
V. CONCLUSION .............................................................................................30

PLAINTIFFS' OPPOSITION TO DEFENDANT GOOGLE LLC'S MOTION TO DISMISS AMENDED COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

1

**TABLE OF AUTHORITIES**

2  *AdTrader, Inc. v. Google LLC*,

3      2018 U.S. Dist. LEXIS 118470 (N.D. Cal. July 13, 2018)....................................24

4  *Alpi Int'l, Ltd. v. Ad-Line Indus., Inc.*,

5      2012 U.S. Dist. LEXIS 178347 (N.D. Cal. Dec. 14, 2012) ...............................28

6  *Altera Corp. v. Clear Logic, Inc.*,

7      424 F.3d 1079 (9th Cir. 2005)......................................................................28, 29

8  *Andersen v. Stability AI Ltd.*,

9      2023 U.S. Dist. LEXIS 194324 (N.D. Cal. Oct. 30, 2023)............................24, 26

10  *Astiana v. Hain Celestial Grp. Inc.*,

11      783 F.3d 753 (9th Cir. 2015) ................................................................................21

12  *Bass v. Facebook, Inc.*,

13      394 F. Supp. 3d 1024 (N.D. Cal. 2019) ...........................................................8, 23

14  *Bear Down Brands, LLC v. Bora Servs.*,

15      2023 U.S. Dist. LEXIS 142749 (C.D. Cal. May 25, 2023)................................25

16  *Beecher v. Google N. Am. Inc.*,

17      2018 U.S. Dist. LEXIS 173805 (N.D. Cal. Oct. 9, 2018)..................................26

18  *Best Carpet Values, Inc. v. Google, LLC*,

19      90 F.4th 962 (9th Cir. 2024)........................................................................12, 29

20  *Bosco Wai-Choy Chiu v. NBS Default Servs., LLC*,

21      2015 U.S. Dist. LEXIS 33721 (N.D. Cal. Mar. 17, 2015) ..................................21

22  *Brodsky v. Apple Inc.*,

23      445 F. Supp. 3d 110 (N.D. Cal. 2020) ...............................................................20

24  *Broidy Capital Mgmt. LLC v. Muzin*,

25      2020 U.S. Dist. LEXIS 58302 (D.D.C. Mar. 31, 2020)......................................30

26  *Brown v. Google LLC*,

27      2023 U.S. Dist. LEXIS 139895 (N.D. Cal. Aug. 7, 2023).....................6, 7, 8, 19

28

PLAINTIFFS' OPPOSITION TO DEFENDANT GOOGLE LLC'S MOTION TO DISMISS AMENDED COMPLAINT

*Brown v. Google LLC*,

    2021 U.S. Dist. LEXIS 244695 (N.D. Cal. Dec. 22, 2021) ..................................................8

*Brown. Moore v. Centrelake Med. Grp., Inc.*,

    83 Cal.App.5th 515, 538- 39 (2022) .................................................................................8

*Cal. Privacy Prot. Agency v. Superior Court*,

    99 Cal.App.5th 705 (2024)..............................................................................................14

*Calhoun v. Google LLC*,

    526 F. Supp. 3d 605 (N.D. Cal. March 17, 2021)................................................12, 13, 14

*Campbell v. Facebook, Inc.*,

    77 F. Supp. 3d 836 (N.D. Cal. 2014) ...............................................................................18

*Catch Curve, Inc. v. Venali, Inc.*,

    519 F. Supp. 2d 1028 (C.D. Cal. 2007)...........................................................................24

*Chabner v. United of Omaha Life Ins. Co.*,

    225 F.3d 1042 (9th Cir. 2000)............................................................................................9

*Chrisman v. City of Los Angeles*,

    155 Cal.App.4th 29, 34 (2007)........................................................................................19

*City of Los Angeles v. Wells Fargo & Co.*,

    22 F. Supp. 3d 1047 (C.D. Cal. 2014)................................................................................6

*Clear Channel Outdoor, Inc. v. Bently Holdings Cal. LP*,

    2011 U.S. Dist. LEXIS 140764 (N.D. Cal. Dec. 7, 2011) ...............................................21

*C.M. v. MarinHealth Med. Grp., Inc.*,

    2024 U.S. Dist. LEXIS 10189 (N.D. Cal. Jan. 19, 2024) ...............................................21

*Cottle v. Plaid Inc.*,

    536 F. Supp. 3d 461 (N.D. Cal. 2021) ..............................................................................8

*CTC Real Estate Servs. v. Lepe*,

    140 Cal.App.4th 856 (2006)............................................................................................12

*Dang v. Samsung Elecs. Co*,

    2018 U.S. Dist. LEXIS 204471 (N.D. Cal. Dec. 3, 2018) ...............................................11

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

PLAINTIFFS' OPPOSITION TO DEFENDANT GOOGLE LLC'S MOTION TO DISMISS AMENDED COMPLAINT

*Davidson v. Hewlett-Packard Co.*,

    2021 U.S. Dist. LEXIS 176709 (N.D. Cal. Sep. 16, 2021).....................................................16

*Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig.)*

    956 F.3d 589, 599 (9th Cir. 2020)...................................................................................... *passim*

*Delgado v. Meta Platforms, Inc.*,

    2024 U.S. Dist. LEXIS 33534 (N.D. Cal. Feb. 27, 2024)....................................................13

*Del Madera Props. v. Rhodes & Gardner*,

    820 F.2d 973 (9th Cir. 1987)...............................................................................................28

*Doe v. Github, Inc.*,

    2023 U.S. Dist. LEXIS 86983 (N.D. Cal. May 11, 2023) ...........................................7, 28, 29

*Doe v. Meta Platforms, Inc.*,

    2023 U.S. Dist. LEXIS 158683 (N.D. Cal. Sep. 7, 2023)...............................................5, 17

*Durell v. Sharp Healthcare*,

    183 Cal.App.4th 1350 (2010)...............................................................................................22

*Erhart v. Bofi Holding, Inc.*,

    612 F. Supp. 1062, 1117 (S.D. Cal. 2020) ...........................................................................30

*ESG Cap. Partners, LP v. Stratos*,

    828 F.3d 1023 (9th Cir. 2016)..............................................................................................21

*Espinosa v. Bluemercury, Inc.*,

    2017 U.S. Dist. LEXIS 41885 (N.D. Cal. Mar. 22, 2017) .....................................................6

*Facebook, Inc. v. ConnectU LLC*,

    489 F. Supp. 2d 1087 (N.D. Cal 2007) ................................................................................29

*Farmers Ins. Exch. v. Superior Court*,

    2 Cal.4th 377 (1992) .............................................................................................................8

*Ferrington v. McAfee, Inc.*,

    2010 U.S. Dist. LEXIS 106600 (N.D. Cal. Oct. 5, 2010).......................................................9

*Field v. Google Inc.*,

    412 F. Supp. 2d 1106 (D. Nev. 2006) ..................................................................................25

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

*Flannery v. Am. Express Co.*,

      2024 U.S. Dist. LEXIS 16487 (C.D. Cal. Jan. 29, 2024).....................................................12

*Garcia v. Google, Inc.*,

      786 F.3d 733 (9th Cir. 2015)........................................................................................13

*Green Desert Oil Grp. v. BP W. Coast Prods.*,

      2011 U.S. Dist. LEXIS 131140 (N.D. Cal. Nov. 14, 2011).............................................23

*Greenley v. Kochava, Inc.*,

      2023 U.S. Dist. LEXIS 130552 (S.D. Cal. July 27, 2023)..................................................8

*Griffith v. Tiktok, Inc.*,

      2023 U.S. Dist. LEXIS 195368 (C.D. Cal. Oct. 6, 2023) ................................................13

*G.S. Rasmussen & Assocs. v. Kalitta Flying Serv.*,

      958 F.2d 896, 904 (9th Cir. 1992)...............................................................................29

*Hammerling v. Google LLC*,

      2022 U.S. Dist. LEXIS 217020 (N.D. Cal. Dec. 1, 2022) ..............................................16

*Hazel v. Prudential Fin., Inc.*,

      2023 U.S. Dist. LEXIS 100974 (N.D. Cal. June 9, 2023) .................................................8

*Hearns v. San Bernardino Police Dep't*,

      530 F.3d 1124 (9th Cir. 2008)........................................................................................6

*Heldt v. Guardian Life Ins. Co. of Am.*,

      2019 U.S. Dist. LEXIS 25315 (S.D. Cal. Feb. 15, 2019) ...............................................16

*Henry Schein, Inc. v. Cook*,

      2017 U.S. Dist. LEXIS 29183 (N.D. Cal. Mar. 1, 2017)................................................20

*hiQ Labs, Inc. v. LinkedIn Corp.*,

      31 F.4th 1180 (9th Cir. 2022)......................................................................................20

*Holmes v. Johnson & Johnson*,

      617 F. 639 (9th Cir. 2015)...........................................................................................11

*I.C. v. Zynga, Inc.*,

      600 F. Supp. 3d 1034 (N.D. Cal. 2022) ...........................................................................7

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

*In re Accellion, Inc. Data Breach Litig.*,

    2024 U.S. Dist. LEXIS 15525 (N.D. Cal. Jan. 29, 2024) ...................................................23

*In re Adobe Sys. Privacy Litig.*,

    66 F. Supp. 3d 1197 (N.D. Cal. 2014) ...................................................................................10

*In re Ambry Genetics Data Breach Litig.*,

    567 F. Supp. 3d 1130 (C.D. Cal. 2021)...................................................................................21

*In re Anthem, Inc. Data Breach Litig.*,

    2016 U.S. Dist. LEXIS 70594 (N.D. Cal. May 27, 2016) .......................................................14

*In re Anthem Data Breach Litig.*,

    162 F. Supp. 3d 953 (N.D. Cal. 2016) ...................................................................................26

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,

    78 F. Supp. 3d 1051 (N.D. Cal. 2015) ...................................................................................11

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,

    362 F. Supp. 3d 1295 (N.D. Ga. 2019) .................................................................................23

*In re Facebook, Inc.*,

    402 F. Supp. 3d 767 (N.D. Cal. 2019) .............................................................................15, 23

*In re Google Location History Litig.*,

    428 F. Supp. 3d 185 (N.D. Cal. 2019) ...................................................................................15

*In re Google Location History Litig.*,

    514 F. Supp. 3d 1147 (N.D. Cal. 2021) ............................................................................21, 22

*In re Google RTB Consumer Priv. Litig.*,

    606 F. Supp. 3d 935 (N.D. Cal. 2022).....................................................................................5

*In re iPhone Application Litig.*,

    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................................................11, 12

*In re Marriott Int'l, Inc. Cust. Data Sec. Breach Litig.*,

    440 F. Supp. 3d 447 (D. Md. 2020) .......................................................................................14

*In re Meta Pixel Healthcare Litig.*,

    647 F. Supp. 3d 778 (N.D. Cal. 2022) ...................................................................................19

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

PLAINTIFFS' OPPOSITION TO DEFENDANT GOOGLE LLC'S MOTION TO DISMISS AMENDED COMPLAINT

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,

    996 F. Supp. 2d 942 (S.D. Cal. 2014) ................................................................23

*In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*,

    2017 U.S. Dist. LEXIS 140212 (N.D. Cal. Aug. 30, 2017).................................14

*In re Yahoo Mail Litigation*,

    7 F. Supp. 3d 1016 (N.D. Cal. 2014) ................................................................17

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,

    525 F. Supp. 3d 1017 (N.D. Cal. 2021) ................................................................19

*Integral Dev. Corp. v. Tolat*,

    675 Fed. 700 (9th Cir. 2017).................................................................30

*Intel Corp. v. Hamidi*,

    30 Cal.4th 1342 (2003) ................................................................11

*Javo Bev. Co. v. Cal. Extraction Ventures, Inc.*,

    2019 U.S. Dist. LEXIS 207483 (C.D. Cal. Dec. 2, 2019) .................................30

*Joude v. WordPress Found.*,

    2014 U.S. Dist. LEXIS 91345 (N.D. Cal. July 3, 2014).....................................26

*Kadrey v. Meta Platforms, Inc.*,

    2023 U.S. Dist. LEXIS 207683 (N.D. Cal. Nov. 20, 2023)........................................ *passim*

*Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys.*,

    315 F. 603 (9th Cir. 2008)................................................................22

*Katz-Lacabe v. Oracle Am., Inc.*,

    2023 U.S. Dist. LEXIS 61306 (N.D. Cal. Apr. 6, 2023) ....................................8

*Kellman v. Spokeo, Inc.*,

    599 F. Supp. 3d 877 (N.D. Cal. 2022) ................................................................15

*Klein v. Facebook, Inc.*,

    580 F. Supp. 3d 743 (N.D. Cal. 2022) ................................................................7

*Kremen v. Cohen*,

    337 F.3d 1024 (9th Cir. 2003)................................................................11

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

PLAINTIFFS' OPPOSITION TO DEFENDANT GOOGLE LLC'S MOTION TO DISMISS AMENDED COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

*Kwikset Corp. v. Superior Court*,

    51 Cal.4th 310 (2011) ...........................................................................................7

*Laws v. Sony Music Entm't*,

    448 F.3d 1134 (9th Cir. 2006)............................................................................28

*Levitt v. Yelp! Inc.*,

    765 F.3d 1123 (9th Cir. 2014)............................................................................10

*Litchfield v. Spielberg*,

    736 F.2d 1352 (9th Cir. 1984)............................................................................28

*Lit'l Pepper Gourmet, Inc. v. Airgas USA, LLC*,

    2019 U.S. Dist. LEXIS 203437 (S.D. Cal. Nov. 21, 2019) ..................................8

*Lloyd v. Facebook, Inc.*,

    2022 U.S. Dist. LEXIS 180710 (N.D. Cal. Oct. 3, 2022)....................................15

*Low v. LinkedIn Corp.*,

    900 F. Supp. 2d 1010 (N.D. Cal. 2012) .........................................................13, 14

*Martin v. Meredith Corp.*,

    657 F. Supp. 3d 277 (S.D.N.Y. 2023)..................................................................9

*McCluskey v. Hendricks*,

    2023 U.S. App. LEXIS 11572 (9th Cir. May 11, 2023) .................................16, 20

*McCoy v. Alphabet, Inc.*,

    2021 U.S. Dist. LEXIS 24180 (N.D. Cal. Feb. 2, 2021)......................................19

*Media.net Adver. FZ-LLC v. NetSeer, Inc.*,

    156 F. Supp. 3d 1052 (N.D. Cal. 2016) .............................................................30

*Melendez v. Vaiana*,

    2017 U.S. Dist. LEXIS 230332 (C.D. Cal. Oct. 19, 2017)..................................26

*Merritt v. Countrywide Fin. Corp.*,

    2015 U.S. Dist. LEXIS 125284 (N.D. Cal. Sep. 17, 2015)...................................6

*Mintz v. Mark Bartelstein & Assocs.*,

    906 F. Supp. 2d 1017 (C.D. Cal. 2012).............................................................18

ix

*M.K. v. Google LLC,*

    2023 U.S. Dist. LEXIS 51895 (N.D. Cal. Mar. 27, 2023) ....................................................8

*Moore v. Apple, Inc.,*

    73 F. Supp. 3d 1191 (N.D. Cal. 2014) ...........................................................................24

*MDY Indus., LLC v. Blizzard Entm't, Inc.,*

    2011 U.S. App. LEXIS 3428 (9th Cir. 2011)...................................................................29

*Nacarino v. Chobani, LLC,*

    2022 U.S. Dist. LEXIS 20671 (N.D. Cal. Feb. 4, 2022).................................................8

*Opperman v. Path, Inc.,*

    84 F. Supp. 3d 962 (N.D. Cal. 2015) ...........................................................................29

*Packingham v. N. Carolina,*

    582 U.S. 98 (2017) .........................................................................................................7

*People v. Kozlowski,*

    96 Cal.App.4th 853 (2002).............................................................................................13

*PhantomALERT, Inc. v. Google Inc.,*

    2016 U.S. Dist. LEXIS 30321 (N.D. Cal. March 8, 2016) ...........................................29

*Roger Feldman v. Discover Bank,*

    2021 U.S. Dist. LEXIS 259900 (C.D. Cal. Dec. 22, 2021) .....................................24, 25

*Rutherford v. FIA Card Servs., N.A.,*

    2012 U.S. Dist. LEXIS 164287 (C.D. Cal. Nov. 16, 2012).........................................27

*Sandvig v. Sessions,*

    315 F. Supp. 3d 1 (D.D.C. 2018) ................................................................................20

*Saroya v. Univ. of the Pac.,*

    503 F. Supp. 3d 986 (N.D. Cal. 2020) ........................................................................22

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.,*

    2007 U.S. Dist. LEXIS 39599 (N.D. Cal. May 16, 2007) ...........................................25

*Silver v. Stripe Inc.,*

    2021 U.S. Dist. LEXIS 141090 (N.D. Cal. July 28, 2021)............................................9

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

PLAINTIFFS' OPPOSITION TO DEFENDANT GOOGLE LLC'S MOTION TO DISMISS AMENDED COMPLAINT

*Skidmore v. Led Zeppelin*,

    952 F.3d 1051 (9th Cir. 2020)........................................................................27

*Sunbelt Rentals, Inc. v. Victor*,

    43 F. Supp. 3d 1026 (N.D. Cal. 2014) ..........................................................20

*Swipe & Bite, Inc. v. Chow*,

    147 F. Supp. 3d 924 (N.D. Cal. 2015) ..........................................................25

*Taboola, Inc. v. Ezoic Inc.*,

    2020 U.S. Dist. LEXIS 67934 (S.D.N.Y. Apr. 17, 2020)..............................25

*United States v. Abouammo*,

    2022 U.S. Dist. LEXIS 223931 (N.D. Cal. Dec. 12, 2022) ...........................13

*United States v. Christensen*,

    828 F. 3d 763 (9th Cir. 2015)...................................................................19, 20

*United States v. Musical.Ly*,

    2019 U.S. Dist. LEXIS 252187 (C.D. Cal. March 27, 2019) .........................14

*Van Buren v. United States*,

    141 S. Ct. 1648 (2021) ...................................................................................20

*Waste & Compliance Mgmt. v. Stericycle, Inc.*,

    2017 U.S. Dist. LEXIS 162889 (S.D. Cal. Oct. 2, 2017)...............................24

*Weingand v. Harland Fin. Sols., Inc.*,

    2012 U.S. Dist. LEXIS 84844 (N.D. Cal. June 19, 2012) .............................29

*Yunker v. Pandora Media, Inc.*,

    2013 U.S. Dist. LEXIS 42691 (N.D. Cal. March 26, 2013) ..........................13

**Rules & Statutes:**

17 U.S.C. § 106 ..........................................................................................................28

Cal. Pen. Code, § 496(a) ...........................................................................................11

Cal. Pen. Code, § 484 ................................................................................................11

Fed. R. Civ. P. 8(a)(2)(3) ..........................................................................................22

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

PLAINTIFFS' OPPOSITION TO DEFENDANT GOOGLE LLC'S MOTION TO DISMISS AMENDED COMPLAINT

I.      **INTRODUCTION**

Last month, the FTC declared: "data is the new oil" and there is nothing "data-hungry as AI." At the same time, it reminded AI companies of the most basic prerequisite to using consumer information commercially: consent. Google's motion to dismiss reflects its belief that when it instead helped itself to the personal information of millions to build Bard and other AI products, no financial (or other) harm occurred. To credit that would be like declaring oil worthless.

It would also require turning a blind eye to the legitimate market for training data detailed in the Complaint, in which law-abiding companies seek consent to use people's personal information for AI training—and pay them. That's because we own our personal information as extensions of our personhood and because it is valuable. After all, the stolen personal information at the heart of Plaintiffs' claims is the fuel on which Bard runs. It's also what makes this innovation different from any that came before. Take the printing press. It revolutionized the world, as AI will. But it wasn't built using, nor did it operate on, the stolen property of the people whose jobs it ultimately displaced. Bard was and it does—and displace it will. No one consented to the use of their personal information to build this destabilized future of social unrest and worsening poverty for everyday people, while Google's pockets overflow with profit.

By its motion, Google seeks to dismiss the concerns of consumers, while it proceeds to negotiate multi-million-dollar deals with other powerful companies to pay for data to which Google also illegally helped itself. But the righting of Google's wrongful theft should not depend on wealth and privilege. The people also deserve a seat at the table. After all, the act of theft was the same, and the invasion of privacy even worse. Google cannot credibly argue the user-generated content it stole is any less valuable than the copyrighted material it stole from companies like the New York Times. That's because Bard depends uniquely on conversational data. Without it, Bard would not communicate "like a human"—in fact, Bard could not work at all. Plaintiffs' claims arising from Google's theft and its resulting unjust enrichment must therefore stand. To hold otherwise would be like letting Exxon drill for oil in residential backyards across the country, without permission, and take all the oil, worth billions, for free. But taking a landowner's oil requires consent and compensation. So too does taking one's digital property.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

PLAINTIFFS' OPPOSITION TO DEFENDANT GOOGLE LLC'S MOTION TO DISMISS AMENDED COMPLAINT

A fundamental theme of mistruth runs through Google's motion. None of this is about "scraping" for indexing, or anything else Google has always done, or just "how the internet works." That kind of scraping is reasonably expected and a mutually beneficial practice that ultimately results in full attribution to the content producer, driving traffic to them. What Google does now is different. It has embedded all personal information and content on the internet into volatile AI products, for its sole commercial gain. None of the stolen information can ever be deleted from the products, even though privacy law enshrines the "right to be forgotten." Google announced a "contest" to see if the public could invent an effective method to delete precise data from AI models—after releasing Bard worldwide. Only Big Tech would have the gall to release a product and then figure out how to comply with the law it obviously violates.

Another critical difference between scraping for indexing and Google's current conversion for commercialization is how it swallows the market for the content-creating victims of Google's theft. For example, it forever interferes with market incentives to purchase non-fiction books chock-full of novel insights. After all, just ask Bard; it will tell you what you need to know. That's because to "train" Bard, Google fed it thousands of books it took, at no cost—from websites known for pirated content. Surely the information Google took from these illegal websites cannot be the "publicly available information" to which Google refers vaguely in the opening pages of its motion as "otherwise lawful to use."

Google's other arguments as to publicly available information also fail. The public status of information has never translated to an absolute license to use, and laws must be followed when dealing in it: (i) you cannot take personal information from anywhere on the web and use it commercially without first registering as a data broker under California and other law. As alleged, Google knows this, after the very public scandal involving Clearview AI, a company that similarly "scraped" personal photographs for commercial use only later to register properly as a data broker— Google still has not; (ii) you cannot breach the terms of thousands of websites that prohibit "scraping" to collect otherwise 'available' information, as Google did; (iii) you cannot release a product that researchers have proven can spit out personal information due to inadequate safeguards, and especially without providing a technological mechanism to deliver on a consumer's guaranteed

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

legal right to have that information deleted—regardless of whether it is also available elsewhere; (iv) you cannot collect, commercially use, and profit from minors' personal information without parental consent, as Google has done with the data of millions of minors it knows use Bard for homework and other purposes; and (v) you cannot take personal information without consent to obtain an unfair business advantage in your quest for AI dominance when law-abiding competitors are doing the right thing and paying for the data. Any one of these infractions (and more) provides a sufficient predicate for Plaintiffs' claims under California's Unfair Competition Law.

Another obvious problem for Google: much of the stolen information was not public at all. It pilfered hundreds of password-protected and otherwise restricted platforms. According to former employees, it even used Gmail, including that of our Plaintiffs who detail the sensitive information they transmitted via email and reasonably did not believe would be misappropriated for AI. Google, for its part, denies using Gmail. That's fine. It's a classic fact dispute that can be resolved at trial, but not properly at this stage.

Google also says it did not use Gmail but *could if it wanted to* based on its privacy policy. This too raises fact questions unsuitable for resolution right now, and good thing. Google's efforts to quietly change terms long after its original theft occurred (and three days after OpenAI was first, but similarly, sued for theft of personal data) demands further scrutiny. After all, the FTC has warned: in the new AI economy, where user data is gold, companies may not quietly, deceptively, and retroactively change terms and call it "consent."

Worse, Google's revised policies doubled down on its earlier secret position that anything on the internet is fair game for its private gain and commercial use. Google has thus presented everyone with a dystopian ultimatum: either use the internet and surrender all your personal and copyrighted information to Google's insatiable AI models or avoid the internet entirely. The latter is untenable, as the internet is an essential tool for professional, educational, and social engagement. Using the internet should not necessitate a default forfeiture of users' privacy and personal data to Google's unlawful and anti-competitive practices. This unjust and coercive predicament Google has foisted onto the world exemplifies its disregard for individual rights in its relentless pursuit of AI dominance.

Google will no doubt chide Plaintiffs' counsel (again) on Reply. Hyperbole, it will say. But the truth cannot be dismissed as hyperbole just because it is inconvenient. We owe our clients and the millions of people they seek to represent a duty to lay bare what is really at stake here and the real-world implications of Google's unlawful misconduct. Plus, none of this would be necessary at all, had Google simply followed the law. Law simple at its core and thus reflected in three simple words: notice, consent, and compensation. Google disregarded all three. Its motion should be denied.

## II.    STATEMENT OF ISSUES TO BE DECIDED

Three issues exist. First, should the Court deny the Motion under Rule 8 because the Complaint (FAC) sufficiently puts Google on notice of its liability. Second, should the Court deny the Motion under Rule 12(b)(6) because Plaintiffs' allegations, taken as true, state claims upon which relief can be granted. Third, should the Court decline to find Counts 1-3, 6-9, and 11 preempted because they are outside the purview of the Copyright Act and CUTSA.

## III.    STATEMENT OF RELEVANT FACTS

To create AI products (the "Products"), including Bard, Imagen, MusicLM, Duet AI, and Gemini, Google pilfered the internet for years, stealing personal and copyrighted information from millions worldwide, without their knowledge or consent, and without offering just compensation for any of the valuable data on which the Products depend. *Id.,* ¶¶ 1-2, 6, 9, 111-117. Google's wide-scale theft included the entirety of an internet user's virtual footprint: personally identifiable information, personal and family photographs, copyrighted works, creative content, Google searches and other sensitive browsing data, Gmail conversations, medical information, financial information, and information from private and password protected websites (collectively, "Personal Information"). *Id.,* ¶¶ 1, 139-140, 148, 157, 166-167, 372. Plaintiffs each detail the specific websites and Google platforms from which their personal information was stolen.[1] Google also

---

[1] *See Id.,* ¶¶ 133-134 (selection of thousands of scraped websites); ¶¶ 18-21 (Plaintiff Guilak); ¶¶ 30-32 (Plaintiff Barcos); ¶¶ 40-43 (Plaintiff Martin); ¶¶ 52-55 (Plaintiff Cousart); ¶¶ 62-66 (Plaintiff De La Torre); ¶¶ 74-75, 77-78 (Plaintiff Vassilev); ¶¶ 84, 87-88 (Plaintiff Dascalos); ¶¶ 96-97 (Minor Plaintiff G.R.); ¶¶ 17, 29, 39, 51, 61, 73 (Bard users); ¶¶ 22, 29, 33, 56, 68, 76, 83, 94 (Gmail

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

misappropriated thousands of already once stolen books from platforms known for pirated content. *Id.,* ¶¶ 11, 141-142. For example, Google took and copied Plaintiff Leovy's New York Times best-selling non-fiction book called *Ghettoside: A True Story of Murder in America* in full, to train the Products, without purchasing it or otherwise providing Ms. Leovy compensation. *Id.,* ¶¶ 13-15. Plaintiff Leovy owns the copyright to her book, which reflects insights not available elsewhere. *Id.* Google's unlawful collection of data allowed it to realize billions in value. *Id.,* ¶¶ 215-217. In the age of Big Tech, experts have long recognized data as the "world's most valuable resource," even more so now in the AI economy because all generative AI products depend on personal information to work at all. There are active market exchanges for internet users to monetize their data, and Google's law-abiding competitors seek consent or pay for training data. ¶ 327 (collecting companies). Google paid not a single dime for troves of data. It chose theft instead. The harm resulting from Google's theft and negligent business practices are as varied as they are serious. The Products lack safeguards to secure the hordes of stolen Personal Information. ¶¶ 179-189, 199, 200, 601. It can thus be stolen through cyberattacks, and the Products used to create misinformation, deepfakes, clones, scams, blackmail, pornography, and hate and bias, to name a few. *Id.,* ¶¶ 180-200, 248-260, *id.,* ¶ 241, 373-374 (risks to children). Still, Google proceeded with commercialization—in violation of the law and duties to Plaintiffs and society at large. *Id.,* ¶¶ 227-234, 528-531. Even Google does not fully understand how the Products are working or what they might evolve, on their own, to "learn" or do next. *Id.,* ¶¶ 242-243. By collecting previously obscure and personal data of millions and permanently entangling it with the Products, Google has therefore put everyone in a zone of risk unacceptable by any measure of responsible data use and privacy.

## IV.       ARGUMENT

Dismissal under Rule 12(b)(6) is improper where a complaint pleads "enough facts to state a claim. . .that is plausible on its face." *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 942 (N.D. Cal. 2022) (internal quotations omitted). The Court "accepts the plaintiff's allegations as true," drawing all reasonable inferences in their favor. *Doe v. Meta Platforms, Inc.*,

---

users); ¶¶ 17, 29, 39, 83, 94; (Google search engine); ¶¶ 23, 33, 44, 56, 67, 85, 95 (other Google platforms); *id.,* ¶¶ 25, 35, 47, 57, 69, 79, 89, 98, 149-156, 158-165 (Plaintiffs' expectations); *id.,* ¶¶ 25, 35, 47, 57, 69, 79, 89, 98, 292; *id.,* ¶ 391 (lack of knowledge and consent).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

2023 U.S. Dist. LEXIS 158683, at *7 (N.D. Cal. Sep. 7, 2023).

### A. **Plaintiffs Satisfy Rule 8.**

Google's argument that the FAC is a "shotgun pleading" fails because the FAC sufficiently puts Google on fair notice of its potential liability, which is "all that is required under the liberal pleading standard of Rule 8(a)." *City of Los Angeles v. Wells Fargo & Co.*, 22 F. Supp. 3d 1047, 1062 (C.D. Cal. 2014). Length alone does not warrant dismissal. *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008). The FAC covers a lot of ground due to the unprecedented nature, scope, and impact of Google's misconduct and the brand-new AI technology. But the FAC is also clear and intelligible and clearly delineates the legal claims against Google. *Merritt v. Countrywide Fin. Corp.*, 2015 U.S. Dist. LEXIS 125284, at *42 (N.D. Cal. Sep. 17, 2015) ("[C]omplaints with excessive factual detail may generally move forward if they are intelligible and clearly delineate the claims[.]") The FAC is also not an impermissible "shotgun" pleading "just because it re-alleges by reference all of the factual paragraphs preceding the claims for relief." *Espinosa v. Bluemercury, Inc.*, 2017 U.S. Dist. LEXIS 41885, at *12 (N.D. Cal. Mar. 22, 2017). Plaintiffs make clear the "factual basis supporting each count," unlike the plaintiffs in every case Google cites. Mot. at 4.

To the extent Google also is trying to make a half-hearted standing challenge under Rule 8 that is improper and, regardless, fails. *Brown v. Google LLC,* 2023 U.S. Dist. LEXIS 139895, at *14 (N.D. Cal. Aug. 7, 2023) ("[T]he assertion that federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data is untenable.") (citing *Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig.)*, 956 F.3d 589, 599 (9th Cir. 2020) ("*Facebook Tracking*"). The FAC sufficiently identifies all facts compromising harm. Plaintiffs define the "Personal Information" as "personally identifiable information ("PII"), copyrighted works, creative content, Google searches, Gmail conversations, medical information, or financial information." FAC, ¶ 372. Plaintiffs specify websites where Google has harvested personal, medical, financial, and other information, including password protected sites. *Id.,* ¶¶ 157, 166-167; *see also id.,* ¶¶ 133-134. Plaintiffs detail the types of personal information they each shared on those

websites that Google took without consent.[2] Plaintiffs also allege clear harms stemming from Google's interference with their right to control their valuable data, *id.,* ¶¶ 26, 36, 48, 52, 58, 70, 80, 90, 199, 297 (impact on right to delete); *id.,* ¶¶ 320-329 (interference with ability to monetize data), among other present and imminent harms. *Id.,* ¶¶ 193-200 (imminent risks presented by injection and extraction attacks), ¶¶ 248-260 (other risks, such as the creation of misinformation, deepfakes, clones, scams, blackmail, pornography, and hate and bias), ¶¶ 241, 373-374 (risks to children). This detail renders Google's cases inapposite. *Cf. I.C. v. Zynga, Inc.,* 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (only "basic contact information") *Doe v. Github, Inc.,* 2023 U.S. Dist. LEXIS 86983, at *10-11 (N.D. Cal. May 11, 2023) (no relief for unalleged injury) ("*Github*"); *In re Meta Browser Tracking Litig.*, ECF No. 91 (N.D. Cal. Aug. 17, 2023) (harms not specified).

Finally, Google's argument that *Packingham v. N. Carolina*, 582 U.S. 98 (2017), enshrines a First Amendment right to use information for any purpose fails. *Packingham* addressed sex offenders, holding they have a right to *access social media*, but that States could still limit their *use* of data *to avoid unlawful conduct*. 582 U.S. at 107. Google is free to *access* public information, but the law precludes Google from using it *unlawfully.* Plus, Google stole restricted data too.

**B.   Plaintiffs State Claims Upon Which Relief Can Be Granted.**

**1.   Plaintiffs Adequately State a Claim Under the UCL (Count 1).**

a.   Plaintiffs have sufficiently alleged statutory standing.

Plaintiffs must allege "lost money or property as a result of the unfair competition." Cal Bus & Prof Code § 17204; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011) (standing where plaintiffs "acquire in a transaction less, than he or she otherwise would have"). Here they lost both money and property, and the "growing trend across courts" is to "recognize the lost property value of [personal] information." *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 803 (N.D. Cal. 2022). Where plaintiffs allege data has cash value, and there is a market for it, standing exists. *Brown v. Google LLC*, 2023 U.S. Dist. LEXIS 139895, at *55 (N.D. Cal. Aug. 7, 2023).

---

[2] *See id.,* ¶¶ 18-21 30-32 40-43 52-55, 62-66, 74-75, 77-78, 84, 87-88, 96-97 (websites Plaintiffs frequented); ¶¶ 17, 22, 23, 29, 33, 39, 44, 56, 67, 68, 76, 83, 85, 94, 95 (Google services Plaintiffs use); ¶¶ 14, 15, 19-23, 30-33, 40-44, 52-56, 62-68, 75-78, 83-88, 94-97 (data Google shared).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

Like plaintiffs in *Brown*, Plaintiffs here allege that, in the modern era of technology, their data has value—value that is "large and still growing"—and a robust market for data drives the entire technology economy. FAC, ¶¶ 318-324; *c.f. Greenley v. Kochava, Inc.*, 2023 U.S. Dist. LEXIS 130552, at *49 (S.D. Cal. July 27, 2023) (dismissing UCL claim but because plaintiffs *did not* allege there was a market for their data); *Hazel v. Prudential Fin., Inc.*, 2023 U.S. Dist. LEXIS 100974, at *15 (N.D. Cal. June 9, 2023) (same); *Katz-Lacabe v. Oracle Am., Inc.*, 2023 U.S. Dist. LEXIS 61306, at *22 (N.D. Cal. Apr. 6, 2023) (dismissing UCL claim for lack of standing pre-*Brown*). Plaintiffs cite three studies reflecting current market values for data, proving their data has a "cash value." FAC, ¶¶ 321, 324. Plaintiffs detail a host of companies that pay users for their data, so there is a fair way to collect data and train AI models. *Id.* at ¶¶ 327-329. Plaintiffs need not allege they have already otherwise sold data or tried. *Brown v. Google LLC*, 2021 U.S. Dist. LEXIS 244695, at *47 (N.D. Cal. Dec. 22, 2021) ("[I]t is plausible that Plaintiffs will decide to sell their data at some point."). Google's cites to do not consider the modern trend following *Brown*. *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538- 539 (2022); *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019) (same). Google's cases not involving economic injury stemming from the collection and misuse of data for profit are inapposite.[3] The bottom line is this: the FTC calls AI training data "oil," and the Complaint details the legitimate market for it. Google's no "harm" arguments therefore fail. Under *Brown* and its progeny, standing exists.

### b. Plaintiffs adequately alleged the UCL's unlawful prong.

The unlawful prong "borrows violations of other laws and treats these violations…as unlawful practices independently actionable under section 17200 et. seq." *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992). "Virtually any law can serve as the predicate for a section 17200 action." *Nacarino v. Chobani, LLC*, 2022 U.S. Dist. LEXIS 20671, at *16 (N.D. Cal. Feb. 4, 2022) (internal citations omitted). A plaintiff need only "plausibly allege a violation of some other predicate law." *Lit'l Pepper Gourmet, Inc. v. Airgas USA, LLC*, 2019 U.S. Dist. LEXIS 203437, at *11 (S.D. Cal. Nov. 21, 2019) (internal citations omitted). Plaintiffs have alleged several:

---

[3]*See Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 483 (N.D. Cal. 2021) (finding alleged loss of indemnity rights too hypothetical); *M.K. v. Google LLC*, 2023 U.S. Dist. LEXIS 51895, at *14 (N.D. Cal. Mar. 27, 2023) (alleging information was collected and stored, not sold or used commercially).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

*California Data Broker Law*: California law defines a "data broker" as anyone who sells personal data of consumers with whom they do not have a direct relationship. FAC, ¶ 423. Plaintiffs allege Google sold the Personal Information it unlawfully collected by commercializing the stolen data by forever embedding it into Bard and other profit-generating products. *Id.,* ¶ 347. As alleged, Google's business is like Clearview AI, another data company that only registered as a data broker in California after it was revealed to have stolen online "public" photographs for commercial AI efforts. *Id.,* ¶¶ 294-297. Google also was not in a "direct relationship" with Plaintiffs to exempt it from this law, because it stole their Personal Information from third-party websites.

*California Consumer Privacy Act (CCPA)*: Plaintiffs plausibly alleged a violation of the CCPA. FAC, ¶¶ 426-437. Contrary to the outlier *Silver v. Stripe Inc.*, 2021 U.S. Dist. LEXIS 141090, at *19-20 (N.D. Cal. July 28, 2021), courts regularly hold that causes of action that do not provide for private rights of action can serve as predicate UCL claims. *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) ("section 17200 can form the basis for a private cause of action even if the predicate statute does not."); *Ferrington v. McAfee, Inc.*, 2010 U.S. Dist. LEXIS 106600 at *41 (N.D. Cal. Oct. 5, 2010) (same). Google also does not argue there is an "absolute bar" to private enforcement of CCPA, and for that reason too, it is a valid predicate. *See Ferrington*, 2010 U.S. Dist. LEXIS 106600 at *44 (UCL claim proceeded where defendant cited no authority that limitation was an "express, absolute bar" to private enforcement).

*California Online Privacy Protection Act (CalOPPA)*: Google's argument that Plaintiffs failed to comply with CalOPPA's statutory notice requirement fails. It relies only on one non-binding out of circuit case. *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 286 (S.D.N.Y. 2023). Plus, any notice defect was cured upon amendment. Plaintiffs also sufficiently alleged *how* Google failed to comply with CalOPPA, unlike the law Google cites.[4] FAC, ¶¶ 438-442; *cf. Stripe Inc.*, 2021 U.S. Dist. LEXIS 141090, at *19 (unlike here, complaint failed to explain privacy violations).

*Children's Online Privacy Protection Act (COPPA)*: COPPA applies to *both* (1) "operator[s] of a website or online service directed to children" *and* (2) "operator[s] that [have] actual knowledge

---

[4] Specifically, Google violated CalOPPA by failing properly to disclose that it collects PII when a consumer uses Google's websites and AI Products, and that the data that was used to train Google's AI Products cannot be deleted from them. FAC, ¶¶ 440-441.

9

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

that [they are] collecting personal information from a child." 15 U.S.C. § 6502(1). Google might not "direct" its AI Products to children, but Plaintiffs plausibly allege Google had *actual knowledge* millions under the age of thirteen were using Bard, and still, Google surreptitiously collected their information from Bard, as well as websites, disregarding all underlying permissions and safeguards. FAC, ¶¶ 381, 383, 385, 463; ¶ 391 ("it is common knowledge that minors, and school-aged children are using Bard"). Google argues minor Plaintiff G.R. is not protected by COPPA because G.R. is *now* thirteen. But as alleged, Plaintiff G.R. began using Bard in early 2023, *before* she turned thirteen. Mot. at 25; FAC, ¶ 93.[5] Google argues holding it accountable would "upend the way the way the internet has worked." Mot. at 25. Untrue. This would not open the door to holding liable *any* online service operator who "happens" to or incidentally collects information from children, because COPPA *requires knowledge*. Google did not merely "happen" upon the data it stole from children—it knowingly took it from minors it knew was using Bard and otherwise.

*Other Claims*: Plaintiffs' claims for tortious interference with contract, breach of third-party beneficiary contract, CDAFA, larceny, and invasion of privacy also serve as predicate violations.

### c.  Plaintiffs adequately alleged the UCL's unfair prong.

Google argues Plaintiffs' unfair allegations fail because they are supported by the same facts as other prongs. Mot. at 27. But each prong of the UCL is a "separate and distinct theory of liability." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1136 (9th Cir. 2014); *In re Adobe Sys. Privacy Litig.*, 66 F. Supp. 3d 1197, 1223 (N.D. Cal. 2014) (same). Thus, the "unfair practices prong offers plaintiffs an ***independent basis for relief***." *Levitt*, 765 F.3d at 1136 (internal citations omitted) (emphasis added). As alleged, Google's conduct is unfair under each of the three tests used to assess the unfair prong. FAC, ¶ 454. Plaintiffs need only show that "the effects of [defendant's] conduct are comparable to or the same as a violation of the law, or otherwise significantly threaten or harm competition." *In re Adobe*, 66 F. Supp. At 1227 (internal citations omitted). They have done so. Google's conduct violated a host of privacy laws, as discussed *supra*, and is thus unfair under the "tethering test." Google's theft also harms law-abiding competitors, who **seek consent or pay** for AI training data.

---

[5] Plaintiffs mistakenly alleged minor Plaintiff G.R. was thirteen at the time of filing the FAC, but minor Plaintiff G.R. did not turn thirteen until the month after Plaintiffs filed the FAC.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

FAC, ¶¶ 327, 470-471. Given Plaintiffs' "unfair" allegations regarding Google's competitors, it cannot be said the conduct underlying the unfair and unlawful prongs "entirely overlap," as it did in the few cases on which Google relies.  *Cf. Dang v. Samsung Elecs. Co*, 2018 U.S. Dist. LEXIS 204471, at *8 (N.D. Cal. Dec. 3, 2018); *Holmes v. Johnson & Johnson*, 617 F. App'x 639, 644 (9th Cir. 2015). **It is "unfair" to help yourself to training data when others are paying for it.**

Under the balancing test, the gravity of harm to consumers outweighs the utility of Google's "illegal scraping, tracking, and misuse of Personal Information." FAC, ¶ 454. This cost comes with no corresponding benefit. *Id.* As Plaintiffs allege, there is a fair and responsible way to collect data and train AI—by seeking consent and paying users for their data—thus Google's unlawful practices are unnecessary. *Id.*, ¶ 327. Further, it would be improper to conclusively determine this "balancing" *against* Plaintiffs on the pleadings alone. *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1117 (N.D. Cal. 2015) (the balancing test "is not properly suited for resolution at the pleading stage."); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1073 (N.D. Cal. 2012) (same). Finally, Plaintiffs allege that the injury caused by Google's actions was substantial, unavoidable, and provided no countervailing benefits to consumers or competition. FAC, ¶¶ 427, 480, 488. Plaintiffs' personal, financial, and medical information was taken without their knowledge or consent. FAC, ¶¶ 22, 46, 52, 56, 68, 76, 88. Google acted secretly, so harm could not be avoided.

### 2. Plaintiffs Adequately Plead Larceny, Conversion, and Trespass to Chattels.

Larceny is obtaining property "in any manner constituting theft." Cal. Penal Code § 496(a). Theft includes obtaining property "by . . . false . . . representation or pretense." Cal. Penal Code § 484. For conversion, plaintiff must allege "ownership or right to possession of property, wrongful disposition of the property right and damages." *Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003). Trespass to chattels requires "an intentional interference with the possession of personal property [that] proximately caused injury." *Intel Corp. v. Hamidi,* 30 Cal. 4th 1342, 1350-1351 (2003). Plaintiffs' facts support each claim: Google took Plaintiffs' personal information, which they own, without consent for monetary gain, injuring Plaintiffs. FAC, ¶¶ 18, 30, 40, 52, 62, 215-218, 382-385. All of Google's arguments to the contrary fail.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

a. Plaintiffs have a property right in their personal information.

Under California law, "**users have a property interest in their personal information.**" *Flannery v. Am. Express Co.*, 2024 U.S. Dist. LEXIS 16487, *11 (C.D. Cal. Jan. 29, 2024) (citing *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 635 (N.D. Cal. March 17, 2021)); *see also CTC Real Estate Servs. v. Lepe*, 140 Cal. App. 4th 856, 860 (2006) ("A person's identifying information is a valuable asset"); *Facebook Tracking,* 956 F.3d at 600-601 (citing *Lepe*, holding plaintiffs suffered economic injury after Facebook took their personal information).

Despite this law, Google insists personal information is not property, arguing Plaintiffs lack exclusive control over it. Mot. at 14. But Google's reliance on *Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962 (9th Cir. 2024), is misplaced. There, the court found that the website-owner plaintiff class did not have an interest in their website-copies that were displayed in Google *search results* because, unlike a domain name that plaintiffs could control, a website copy that is intentionally sent to users' devices relinquishes their possession for the purposes of trespass to chattels. *Best Carpets*, 90 F.4th at 969-970. But Plaintiffs did not post *copies* of their content. Mot. at 15. They posted the content—they had control when and where it was posted, and how it was accessed—none of it was like a pre-generated website copy. Because the stolen data can never be deleted from the Products, Plaintiffs also lost full control of the content, including its property right to request Google delete it. Plus, Google's argument makes no sense in relation to private Gmail, and private documents transmitted therein, in some cases that Plaintiffs sent to themselves only, and which Google also misappropriated. The personal information is also "capable of precise definition." *Id*. Unlike a website copy that can be displayed in a variety of ways, Plaintiffs' content is not amorphous.. FAC, ¶ 372. That is why similar property theft has been deemed actionable. *See Calhoun*, 526 F. Supp. 3d at 635-636 (larceny claim where Google stole Chrome user information and data); *Facebook Tracking,* 956 F.3d at 599-601 (reversing dismissal of property claims where personal information was collected without consent).

Google's cherry-picked dicta from outdated cases is unavailing because those cases fail to account for all the categories of personal information at issue here. *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1075 (only the PII at issue was incapable of exclusive possession or control);

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

*Yunker v. Pandora Media, Inc.*, 2013 U.S. Dist. LEXIS 42691, *48-49 (N.D. Cal. March 26, 2013) (same); *United States v. Abouammo*, 2022 U.S. Dist. LEXIS 223931, at *38-39 (N.D. Cal. Dec. 12, 2022) (property interest because data was employer-owned confidential business information).

b. <u>Copying is actionable taking.</u>

Google claims Plaintiffs' theft claims fail because it merely *copied* Personal Information. Mot. at 15. This district has already rejected Google's "copying is not stealing" pitch, holding that "although the owner may retain possession of the original property, there has been nevertheless a deprivation of property when a copy is made." *Calhoun*, 526 F. Supp. 3d at 635; *see also People v. Kozlowski*, 96 Cal. App. 4th 853, 869 (2002). Plus, Plaintiffs allege more than just mere copying: Google surreptitiously collected, tracked, aggregated, and commercially misappropriated the Personal Information. FAC, ¶¶ 171, 177, 504.

*Calhoun* notably rejected the outdated position that personal information is not property, coming from the cases Defendant relied on, such as *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1030 (N.D. Cal. 2012). When *Low* was decided, "the weight of authority" held personal information was not property. *Low*, 900 F. Supp. 2d at 1030. Nine years later, *Calhoun* declared the modern view to the contrary. *Calhoun*, 526 F. Supp. 3d at 635 (collecting cases); *see also Griffith v. Tiktok, Inc.*, 2023 U.S. Dist. LEXIS 195368, at *28-30 (C.D. Cal. Oct. 6, 2023) (rejecting argument that plaintiff had no property interest in personal information). Plaintiffs' FAC similarly demonstrates this modern reality: that data is the "world's most valuable resource," and cites real world examples of this market. FAC, ¶¶ 320, 324, 327. Holding that personal data is *not* property would conflict with recent case law and the modern ideologies of society—not to mention the FTC's declaration last month that AI training data is valuable as oil.

Courts also recognize the right to delete personal information as part of the property right to control one's information and privacy.[6] *See Delgado v. Meta Platforms, Inc.,* 2024 U.S. Dist. LEXIS 33534, *9 (N.D. Cal. Feb. 27, 2024) (noting CCPA protects right to "control over how their personal

---

[6] Google simultaneously misconstrues Plaintiffs' allegations while misstating the Ninth Circuit's dicta in *Garcia v. Google, Inc.,* 786 F.3d 733 (9th Cir. 2015), where the court references the Court of Justice for the European Union affirming the requirement for Google to consider individual requests to remove personal information from its search engines, *not* the right to request Google delete Plaintiffs' scraped data from their AI training models. *Id.* at 745-746.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

information is collected, used, and disclosed by a covered business.") (citing *Cal. Privacy Prot. Agency v. Superior Court*, 99 Cal. App. 5th 705, 712 (2024) (consumers' rights under the CCPA include "the right to request deletion of their personal information")); *United States v. Musical.Ly*, 2019 U.S. Dist. LEXIS 252187, *11 (C.D. Cal. March 27, 2019) (defendants violated COPPA by failing to delete a child's personal information upon request). This right to delete underscores Plaintiffs' property interest, which Google violated[7] because it is *impossible* to remove the stolen information Google embedded into Bard and other AI products. FAC, ¶¶ 186, 243-245.

c.   Plaintiffs adequately allege injury as a result of Google's theft.

Plaintiffs have adequately alleged injury: Google took their property without consent or payment, forever interfered with their property right of deletion, and otherwise misused the data subjecting them to ongoing threat of injection attacks, among other harms. Google overlooks these allegations, and, as it has in the past, the law too. *See Calhoun*, 526 F. Supp. 3d at 635-636 ("Google ignores this Court's other rulings, both before and after *Low v. LinkedIn Corp.*, [900 F. Supp. 2d 1010 (N.D. Cal. 2012)]"); *In re Anthem, Inc. Data Breach Litig.*, 2016 U.S. Dist. LEXIS 70594, at *205 (N.D. Cal. May 27, 2016) (plaintiffs' personal information was stolen and lost value, constituting an injury); *In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*, 2017 U.S. Dist. LEXIS 140212 at *63 (N.D. Cal. Aug. 30, 2017) (same); *In re Marriott Int'l, Inc. Cust. Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 461 (D. Md. 2020) (Courts recognize the "growing trend across courts . . . to recognize the lost property value" of personal information).

**3.   Plaintiffs Properly Plead Invasion of Privacy and Intrusion Upon Seclusion.**

For invasion of privacy under California law, courts consider "whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Facebook Tracking,* 956 F.3d at 601. As Google notes, intrusion upon seclusion can be considered together with invasion of privacy. Google challenges both on the same grounds, arguing Plaintiffs lack an expectation of privacy in public information, Google searches, and Gmail. Mot. at 10. But Plaintiffs maintain a reasonable expectation of privacy across all three categories (not to mention those Google fails to address—

---

[7] FAC, ¶¶ 26, 36, 48, 52, 58, 70, 80, 90, 199, 297.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

password protected and otherwise restricted access groups). The sheer scope of the collection alone, as alleged, also could not have been expected regardless of any single category. *See Facebook Tracking,* 956 F.3d at 606 (in light of "significant" amount of data collected, plaintiffs sufficiently alleged reasonable expectation of privacy). Google deals not at all with this scope problem.

a.   "Publicly available" information.

Courts evaluate both the nature of the collection and the sensitivity of the data collected when considering an expectation of privacy. *Facebook Tracking,* 956 F.3d at 603. Google claims that because the information it stole is "publicly available," Plaintiffs cannot establish a privacy interest. Mot. at 10. This is not the case. Here, not only did Plaintiffs share sensitive information such as religious and political views, private photos, professional knowledge, financial information, and private health information, they also reasonably believed they were sharing this information with specific audiences for specific purposes. FAC, ¶¶ 159-168, 350. The fact that this information can "divulge a user's personal interests, queries, and habits on third-party website" proves it is sensitive and worthy of privacy protections. *Facebook Tracking,* 956 F.3d at 605. Additionally, Google stole data traditionally considered private from countless websites including password protected sites and member-only groups, and from websites where the "scraping"—i.e., conversion for commercialization—was expressly prohibited. FAC, ¶¶ 18, 30, 40, 52, 62, 157-168, Exhibit A.

Google's claim that Plaintiffs lack a reasonable expectation of privacy to *anything* they shared on the internet disregards relevant precedent: "[A] right to privacy encompasses the individual's **control of information** concerning his or her person." *Kellman v. Spokeo, Inc.,* 599 F. Supp. 3d 877, 889 (N.D. Cal. 2022); *cf. Lloyd v. Facebook, Inc.,* 2022 U.S. Dist. LEXIS 180710 (N.D. Cal. Oct. 3, 2022) (no reasonable expectation of privacy only where users were on clear notice of third-party use); *In re Google Location History Litig.*, 428 F. Supp. 3d 185 (N.D. Cal. 2019) (declining to recognize information privacy only because Google tracked *on* its platforms).

In *In re Facebook, Inc.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019), further explains: **"[T]here can be 'degrees and nuances to societal recognition of our expectations of privacy: the fact that the privacy one expects in a given setting is not complete or absolute does not render the expectation unreasonable as a matter of law.'"** *Id.* at 782. Furthermore, "[s]haring information

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

with your social media friends **does not** categorically eliminate your privacy interest in that information." *Id.* at 783 (emphasis added). Google's unnuanced argument otherwise should be rejected. As alleged, dozens of everyday citizens have spoken out about what Plaintiffs claim here: a reasonable expectation of privacy in personal information, despite sharing it on the internet for specific audiences. Google's case law is distinguishable. In each, the information gathered was not in an unauthorized or illegal manner, as plead here.[8] Google also fails to address Plaintiffs' reasonable expectation of privacy in their browsing data. As confirmed by the FTC earlier this month, browsing data is sensitive, as it is capable of "paint[ing] an intimate picture of a person's life."[9] As alleged, Google stole this highly sensitive and private information.

Google's conduct is also highly offensive and breaches social norms. This is illuminated by the risks presented from Google's failure to safeguard the sensitive data—injection and extraction attacks demonstrate Plaintiffs' personal information can be accessed and also contribute to the creation of pornography and deepfakes, blackmail, or predatory advertising, identity theft, and other nefarious purposes. FAC, ¶¶ 236, 240-241, 259-260. Plaintiffs also have adequately pled *what* specific and personal data Google obtained, and *how* they were harmed by the unauthorized use, rendering Google's reliance on *Hammerling v. Google LLC*, 2022 U.S. Dist. LEXIS 217020 (N.D. Cal. Dec. 1, 2022), unpersuasive. Finally, the Court need look no further than the widespread public outrage, detailed in the Complaint, to see: People did not expect this invasion of privacy and intrusion on seclusion and they are highly offended by it. FAC, ¶¶ 261-279; 277 ("It's violating our trust and privacy") These facts withstand a motion to dismiss.

---

[8] *See McCluskey v. Hendricks*, 2023 U.S. App. LEXIS 11572, at *4 (9th Cir. May 11, 2023) (analyzing privacy of business social media accounts); *Davidson v. Hewlett-Packard Co.*, 2021 U.S. Dist. LEXIS 176709, at *27 (N.D. Cal. Sep. 16, 2021) (analyzing privacy of blog); *Heldt v. Guardian Life Ins. Co. of Am.*, 2019 U.S. Dist. LEXIS 25315, at *18 (S.D. Cal. Feb. 15, 2019) (analyzing the privacy of a handful of Facebook posts).
[9] *FTC Cracks Down on Mass Data Collectors: A Closer Look at Avast, X-Mode, and InMarket*, FEDERAL TRADE COMMISSION (March 4, 2024), https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2024/03/ftc-cracks-down-mass-data-collectors-closer-look-avast-x-mode-inmarket.

PLAINTIFFS' OPPOSITION TO DEFENDANT GOOGLE LLC'S MOTION TO DISMISS AMENDED COMPLAINT

b.  Google searches.

Google's argument that Plaintiffs cannot state a plausible privacy claim regarding its unlawful use of "Google searches" is unfounded. Mot. at 12. First, Plaintiffs allege not merely that Google collects search terms on its platform, but rather that Google stole browsing data from across the *entire internet*, including search terms, keystrokes, cookies, and more. FAC, ¶¶ 372, 423. Second, Plaintiffs maintain a reasonable expectation of privacy over Google searches too, because the Plaintiffs' chosen terms and their results "could divulge a user's personal interests, queries, and habits on third party websites." *Facebook Tracking,* 956 F.3d at 605. This is especially true here where Google combined that information with the rest of people's digital footprint feeding it all to powerful AI technology which can draw new connections, and thus conclusions about people they never revealed publicly. *See also* ¶¶ FAC 335-355 (detailing why we have privacy interest in public information, including from privacy experts). Plus, as noted, the FTC recently highlighted the sensitivity of browsing data, noting that its proposed orders against other data giants requiring them to "treat people's browsing and location information as the sensitive data that it is."[10] Any argument Plaintiffs abandoned these serious privacy interests based on unclear and ever-changing terms and conditions is a fact question.

c.  Gmail Conversations.

Two former employee whistleblowers have confirmed Google used private Gmail conversations to train Bard. FAC, ¶¶ 148, 174-175. The Court cannot disregard those facts just because Google naturally reads them differently, in a light most favorable to it, and "denies" them, when the governing legal standard demands the opposite. *See Doe v. Meta Platforms, Inc.,* 2023 U.S. Dist. LEXIS 158683, at *7 (N.D. Cal. Sep. 7, 2023). Google seeks to minimize its former AI ethicist, Margaret Mitchell's comments on the dangerous nature of Google's data collection practices. FAC, ¶ 174. But that is something it can try and do at trial. Right now, the FAC sufficiently supports Google used Gmail for training. FAC, ¶¶ 148, 174-177, 179 (former Google Employee, explaining that Google's training data includes private Gmail conversations). Google's reliance on *In re Yahoo Mail Litigation*, 7 F. Supp. 3d 1016, 1040-1041 (N.D. Cal. 2014), is also unpersuasive.

---

[10] *See* n. 9.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

There, plaintiffs did not allege the content of their emails, or whether they contained confidential or sensitive information. Plaintiffs here do both.[11] Google also contends, without any legal support, that Plaintiffs' privacy claims should be dismissed because they did not respond to its letter requesting Plaintiffs further detail the basis for Gmail allegations. Mot. at 13. The law imposes no such obligation. The basis for the allegation is set forth in the FAC. FAC, ¶¶ 148, 174-177, 179. Plaintiffs' choice (and right) not to respond to a threatening letter seeking to strongarm everyday consumers into dismissing claims is of no legal consequence. Google cannot hide its training data from the world and then escape all scrutiny simply by denying what former employees say about it.

                d.   <u>Google Terms or Privacy Policy do not Permit Google's Data Collection Practices.</u>

Contrary to whistleblowers, Google also says it did not use Gmail for training, but that *it could if it wanted to* under Google's Terms and Privacy Policy. It says the same about Google searches. Mot. at 13-14. But the version of its Privacy Policy Google seeks to judicially notice includes no clear mention of Bard, or Google's other generative AI technology. Thus, a reasonable user would not be put on notice of the full scope of Defendant's collection practices as alleged here even if they did consent to the Privacy Policy. *See Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 847-848 (N.D. Cal. 2014) (explaining that, for a finding of consent, the disclosures must have given users notice of the **"specific practice"** at issue). As alleged, users did not knowingly give permission for Google to use their data for the purpose of developing commercial AI products.

Moreover, the extent and opacity of Google's data collection and usage practices, even if consented to, can still breach reasonable privacy expectations and reach a threshold of offensiveness, especially when the implications of data use are not made transparent. Consent, in the context of digital privacy, cannot be an all-encompassing waiver of one's right to privacy,

---

[11] *See, e.g.,* FAC, ¶ 22 (Plaintiff Guilak alleging his Gmail contained bank statements, tax documents exchanged with a CPA, medical documents, pay stubs, Social Security information, loan details); *Id.* ¶ 56 (Plaintiff Cousart alleging her Gmail contains tax information, medical appointment details, car insurance documents, private videos); *Id.* ¶ 68 (Plaintiff De La Torre alleging his Gmail contained bank statements sent to his CPA); *Id.* ¶ 76 (Plaintiff Vassilev alleging his Gmail contained bank statements); *see also Mintz v. Mark Bartelstein & Assocs.*, 906 F. Supp. 2d 1017, 1033 (C.D. Cal. 2012) (finding plaintiff had a "legally protected interest in the privacy of his employment and financial affairs").

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

especially when the application of collected data extends beyond reasonable user expectations or the bounds of what was disclosed, as here. *See e.g. McCoy v. Alphabet, Inc.*, 2021 U.S. Dist. LEXIS 24180, at \*17 (N.D. Cal. Feb. 2, 2021) (denying dismissal: Google's Privacy Policy did not clearly put users on notice that data from off-platform applications would be collected); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793-794 (N.D. Cal. 2022) (use of plaintiffs' data went beyond reasonable expectation stemming from privacy policy). No one could have imagined, nor did they imagine, the unprecedented scope of Google's secret AI operation, ultimately giving it the ability to profile users based on the entirety of their digital history consumed by powerful AI. Regardless, the impact of ambiguous terms raises an issue not ripe for decision on a motion to dismiss. *Hicks v. PGA Tour*, Inc., 897 F.3d 1109, 1113 (9th Cir. 2018).

### 4. Plaintiffs Adequately Alleged Violations of the CDAFA.

Google's arguments as to CDAFA are unpersuasive, overexaggerated policy arguments based on inapplicable cases. Google says should the CDAFA proceed here, it could then be used to criminalize "everyday use of the internet." Nothing Google did here is "everyday use." Mot. at 8. *See In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1043 (N.D. Cal. 2021) (CDAFA claims dismissed as plaintiffs did not adequately allege harm, court did not opine as to criminalization of the internet); *Chrisman v. City of Los Angeles,* 155 Cal.App. 4th 29, 34 (2007) (court found employee misuse of employer's computers to be noncriminal).

Google goes even further, claiming "[n]o court has **ever** applied this decades-old statute in [such] sweeping manner." Mot. at 8 (emphasis added). But in *Brown v. Google* Google lost a similar argument and Judge Gonzales Rogers permitted similar claims to proceed. *See Brown,* 2023 U.S. Dist. LEXIS 139895 (N.D. Cal. Aug. 7, 2023). This is consistent with the Ninth Circuit's explanation that "access" under the CDAFA includes "logging into a database with a valid password and subsequently taking, copying, or using the information in the database improperly." *United States v. Christensen*, 828 F. 3d 763, 789 (9th Cir. 2015); *Brown*, 525 F. Supp. 3d at 1075 (finding that software accessing consumers' data without permission violated the CDAFA because that software "would render ineffective any barrier Plaintiffs wished to use to prevent the transmission of their data."). Plaintiffs' allegations are sufficient to state a claim under the CDAFA as it has been

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

interpreted, because they sufficiently allege that Google took data that it was not given access to, including data that was protected by password authorization systems; and detail *how* Google acted without permission, including by using 'bots' to "scan and copy the information on webpages then store and index the information" without Plaintiffs' knowledge or consent.[12] Plaintiffs did not give their permission for Google to associate the private browsing data with individual user profiles, to develop and train AI Products. These allegations of "misusing the information obtained" are separate and independent violations of the CDAFA. *Henry Schein, Inc. v. Cook,* 2017 U.S. Dist. LEXIS 29183, at *12 (N.D. Cal. Mar. 1, 2017).

Google's cases are distinguishable, focusing on the CFAA as opposed to the CDAFA. *See Van Buren v. United States*, 141 S. Ct. 1648 (2021) (CFAA does not cover bad actors who "obtain[] information that is *otherwise available to them*"); *hiQ Labs, Inc. v. LinkedIn Corp.,* 31 F.4th 1180, 1190 (9th Cir. 2022) (CFAA does not apply specifically where *public websites* are at issue, however, the CFAA is violated when, as alleged here, a user *circumvents the website's permissions*, such as a password authorization system, to access data); *Sandvig v. Sessions*, 315 F. Supp. 3d 1, 25-26 (D.D.C. 2018) (a CFAA case challenging a specific statutory provision preventing research of online purchases and transaction discrimination); *McCluskey v. Hendricks*, 2021 U.S. Dist. LEXIS 252560, at *13 (C.D. Cal. Nov. 17, 2021) (analyzing the CDAFA in the context of a narrow dispute over an individual Instagram user's unauthorized *screenshotting* of another individual user's posts).

Further, none of Google's cited cases had the detailed allegations present here. *See e.g. Gonzales,* 305 F. Supp. 3d at 1090 (dismissing for lack of alleged facts); *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1033 (N.D. Cal. 2014) (same); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132 (N.D. Cal. 2020) (dismissing for failure to allege causation). Google's overly narrow interpretation is not supported by the law. *See United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015) (CDAFA merely requires knowing access).

---

[12] FAC, ¶¶ 11, 143, 157, 168, 299 (password protected information); *id.* at ¶¶ 157, 139, 166-167 (data from restricted websites); *id.* at ¶¶ 126, 129 (how Google acted without permission); *id.* at ¶¶ 18-21 30-32 40-43 52-55, 62-66, 74-75, 77-78, 84, 87-88, 96-97 (third-party websites Plaintiffs share data with); *id*. at ¶ 540.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

### 5.   Plaintiffs Adequately Plead Unjust Enrichment (Count 11).

Unjust enrichment is an independent cause of action under California law or may be construed as a quasi-contract claim. *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *Astiana v. Hain Celestial Grp. Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). To make a case for unjust enrichment, plaintiff must allege defendant received and unjustly retained a benefit at plaintiff's expense. *ESG Cap. Partners, LP*, 828 F.3d at 1038. That is what Plaintiffs allege: Google was unjustly enriched by taking and misusing Plaintiffs' valuable Personal Information (without notice, consent, and compensation) to build AI products for profit. FAC, ¶ 625. *See also Facebook Tracking,* 956 F.3d at 600 (disgorgement is required "regardless of whether a defendant's actions caused a plaintiff to directly expend his or her own financial resources or whether a defendant's actions directly caused the plaintiff's property to become less valuable."). Plaintiffs' allegations are neither speculative nor hypothetical, as in the case Google cites. *See Bosco Wai-Choy Chiu v. NBS Default Servs., LLC*, 2015 U.S. Dist. LEXIS 33721, at *25 (N.D. Cal. Mar. 17, 2015) (too speculative where plaintiff alleged unjust enrichment only "if" foreclosure on property).

Courts routinely allow unjust enrichment claims to proceed in data misuse cases. *C.M. v. MarinHealth Med. Grp., Inc.*, 2024 U.S. Dist. LEXIS 10189, at *15 (N.D. Cal. Jan. 19, 2024) (declining to dismiss an unjust enrichment claim at the pleading stage where plaintiff alleged defendant failed to uphold their promises regarding data security); *Facebook Tracking,* 956 F.3d at 600 ( "[p]laintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data" obtained without consent); *In re Google Location History Litig.*, 514 F. Supp. 3d 1147, at 1159 (N.D. Cal. 2021) (valid unjust enrichment claim where company collected and stored data without consent); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1145 (C.D. Cal. 2021) ("[T]he failure to secure a plaintiff's data can give rise to an unjust enrichment claim").

Defendant argues that, to the extent Plaintiffs base their allegations on Google's data collection from Google services, there are express contracts precluding this claim. But Plaintiffs can plead unjust enrichment because any supposed contracts are ineffective. *See* Fed. R. Civ. P. 8(a)(2), (3); *Clear Channel Outdoor, Inc. v. Bently Holdings Cal. LP*, 2011 U.S. Dist. LEXIS 140764, at *27 (N.D. Cal. Dec. 7, 2011) (can allege unjust enrichment and breach of contract in the alternative).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

1  Mot. at 20. Regardless, it would not be reason to dismiss Plaintiffs' claims, as much of them relate

2  to Google's theft from third-party websites and other platforms to which Google has no rights, and

3  which otherwise fall outside the Privacy Policy and Terms. *In re Google Location History Litig.*,

4  514 F. Supp. 3d at 1160 **("It is not plausible that the Terms of Service govern conduct outside**

5  **of Google's provision of services.").** Further, the Privacy Policy prior to July of 2023 did *not even*

6  *mention* Bard, or AI machine learning. FAC, ¶¶ 5, 201l; *c.f. Durell v. Sharp Healthcare*, 183 Cal.

7  App. 4th 1350, 1370 (2010) (plaintiff did challenge that the contract governed the relationship);

8  *Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 998 (N.D. Cal. 2020) (same). The Privacy Policy

9  therefore cannot be said to control Plaintiffs' and Google's relationship as to something it did not

10 contemplate or disclose. Google's recent amendment trying to cement its position that anything on

11 the internet is fair game for AI training bears no weight, especially regarding content it stole years

12 before. Google also cannot declare ownership over the internet for its own private gain. This would

13 conflict with public policy and common sense: non-Google users are not bound to terms at all, and

14 even sometimes-Google users do not surrender rights to Google when they are on *other* platforms.

### 6.   Plaintiffs Adequately Plead a Negligence Claim.

#### a.   The economic loss doctrine does not bar Plaintiffs' claim.

17       The single case on which Google relies to bar Plaintiffs' claims under the economic loss

18 doctrine, *Kadrey v. Meta Platforms, Inc.*, 2023 U.S. Dist. LEXIS 207683, at *6 (N.D. Cal. Nov. 20,

19 2023), contains no analysis of the doctrine or why it purportedly applies in that case, only briefly

20 mentioning the doctrine in a closing sentence—and in dicta because the court had already otherwise

21 disposed of the claim. 2023 U.S. Dist. LEXIS 207683, at *6. The decision also cites *Kalitta Air,*

22 *L.L.C. v. Cent. Tex. Airborne Sys.*, 315 F. App'x 603, 607 (9th Cir. 2008), which held courts must

23 consider each factor of a 6-factor test to determine whether there is a "special relationship" between

24 the parties that renders the economic loss doctrine inapplicable. 2023 U.S. Dist. LEXIS 207683, at

25 *6 (citing *Kalitta Air, L.L.C.*, 315 F. App'x at 606) (reversing JMOL because the lower court failed

26 to consider all six factors ). *Kadrey* failed to consider this test, so it lacks weight, just like Google's

27 argument. Perhaps Google overlooks these factors because *all six* weigh in Plaintiffs' favor: It was

28 foreseeable and certain Plaintiffs would be directly harmed by Google's unlawful practices, which

failed to compensate Plaintiffs for the value of their data. Google's internet-wide theft was reprehensible, and allowing predatory data collection of this nature to go unchecked to build insufficiently safeguarded AI products that can further harm, would decimate property and privacy rights of the entire internet community. *Kalitta*, 315 F. App'x at 605-606 (discussing factors).

b. Google owed a duty to Plaintiffs and Class Members.

In one paragraph, Google declares Plaintiffs' "hodgepodge" of duties is "made up." But companies naturally owe a duty to protect personal information in their possession. *Bass v. Facebook, Inc.*, 394 F. Supp. 3d at 1039. Further, foreseeable harm may occur when a company fails to deploy reasonable care in handling personal information, as alleged here, particularly when that information is sensitive or private. *Id.* To hold otherwise "'would create perverse incentives for businesses who profit off the use of consumers' personal data to turn a blind eye and ignore known security risks.'" *Id.* (quoting *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1325 (N.D. Ga. 2019). Other courts are in accord. *See In re Accellion, Inc. Data Breach Litig.*, 2024 U.S. Dist. LEXIS 15525, at *21 (N.D. Cal. Jan. 29, 2024) (courts routinely find a "special relationship" exists "between data companies and the owners of the data."); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 966 (S.D. Cal. 2014) ("the legal duty [to safeguard confidential information] is well supported by both common sense and California [] law"); *In re Facebook, Inc.,* 402 F. Supp. 3d 767, 799 (N.D. Cal. Sept. 9, 2019) (negligence claim proceeded: "Facebook failed to use reasonable care to safeguard information"); *cf. Green Desert Oil Grp. v. BP W. Coast Prods.*, 2011 U.S. Dist. LEXIS 131140, at *15-17 (N.D. Cal. Nov. 14, 2011) (dismissing negligence claim based on special relationship because plaintiffs could not allege the software component was intended for them or caused their harm).

Here, Plaintiffs plausibly plead Google owed them a duty of care. Google collected their personal information, including from password protected and restricted sites, thereby placing it in Google's possession. FAC, ¶¶ 11, 18, 30, 40, 52, 62, 133, 148-167, 372, 544. Plaintiffs allege much of this information was sensitive. FAC, ¶¶ 22, 56, 168, 76, 148-149, 152-514. Google thus had a duty and "obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks." *Corales,* 567 F.3d at 572. It failed, including because of the Products'

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

1     inadequate safety and privacy features. As proven by researchers, the Products spit out personal

2     information and are subject to other serious attacks. FAC, ¶¶ 179-180, 200, 242-243, 528-530.

3            **7.   Plaintiffs Adequately State a Claim for Breach of Contract and**

4            **Tortious Interference (Counts 9-10).**

5                    a.   Tortious Interference.

6            Plaintiffs adequately allege that Google intentionally interfered with contracts between

7     Plaintiffs and third-party websites by scraping Plaintiffs' personal information in violation of those

8     websites' terms of service. FAC, ¶¶ 605-613. Arguing otherwise, Google seeks to rely on cases

9     where the parties to the contracts were not named and the relationship between parties was not

10    established. Mot. at 28-29. But none of those deficiencies exist here. Plaintiffs have identified valid,

11    existing contracts and specified the obligations at issue, namely, the websites' duties to safeguard

12    and protect data ownership. FAC, ¶ 133. Plaintiffs also sufficiently allege the *type* of contracts, and

13    the *type* of parties to those agreements. FAC, ¶ 610. *Moore v. Apple, Inc.,* 73 F. Supp. 3d 1191, 1203

14    (N.D. Cal. 2014) (allegations identifying contract and duty sufficient). Plaintiffs detail the exact

15    type of breaches at issue. FAC, ¶ 610. Any limitation in further naming each contract and each

16    provision is the result of the sheer volume of contracts and provisions Google breached, and its

17    secrecy over training data. *Catch Curve, Inc. v. Venali, Inc.*, 519 F. Supp. 2d 1028, 1039 (C.D. Cal.

18    2007) (finding that plaintiffs could determine the contracts breached through discovery). Further, to

19    the extent that Plaintiffs do not currently identify exact language from each contract at issue, doing

20    so is not required to state a claim for tortious interference. *Moore*, 73 F. Supp. 3d at 1203 *see also*

21    *Waste & Compliance Mgmt. v. Stericycle, Inc.*, 2017 U.S. Dist. LEXIS 162889, at *11 (S.D. Cal.

22    Oct. 2, 2017) (faulting plaintiff for not explaining facts underlying breach, but not requiring that

23    plaintiff allege specific terms); *AdTrader, Inc. v. Google LLC*, 2018 U.S. Dist. LEXIS 118470, at

24    *16 (N.D. Cal. July 13, 2018) (faulting plaintiff for not alleging facts specific to each breach, but

25    not requiring specific terms). The cases Google cites to the contrary are inapplicable because they

26    involved separate standards from tortious interference. *Andersen v. Stability AI Ltd.*, 2023 U.S. Dist.

27    LEXIS 194324, at *42 (N.D. Cal. Oct. 30, 2023) (breach of contract); *Roger Feldman v. Discover*

28

*Bank*, 2021 U.S. Dist. LEXIS 259900, at *4 (C.D. Cal. Dec. 22, 2021) (breach of contract and intentional interference as one).

Google argues that Plaintiffs failed to allege that it knew of each of Plaintiffs' relationships with third-party websites. Mot. at 18. But Google need not know about each particular contract, "it is sufficient to allege that the defendant knew the plaintiff had contracts with a certain group or type of party." *Bear Down Brands, LLC v. Bora Servs.*, 2023 U.S. Dist. LEXIS 142749, at *5 (C.D. Cal. May 25, 2023); *Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, 2007 U.S. Dist. LEXIS 39599, at *11 (N.D. Cal. May 16, 2007) (noting that the cases that find allegations of knowledge insufficient do so because the plaintiff failed to give defendant notice of the very "nature" of the contract).

More fundamentally, Plaintiffs *did* allege Google had knowledge of Plaintiffs' use of each website on which Google unlawfully converted data for commercialization. FAC, ¶ 609. Google, as a user of each website, knew it—and all other users—were subject to usage terms. FAC, ¶ 609. Google reasonably knew Plaintiffs were using each website given the presence of their data, and it knew websites have terms declaring user-generated content "property" which Plaintiffs "own" and offering Plaintiffs other protections. *Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, 2007 U.S. Dist. LEXIS 39599, at *12 (N.D. Cal. May 16, 2007) (finding that defendant was on notice of the contract, even though the customer-parties were not named, because the type of agreement was "common in the industry"). Google cannot credibly argue it lacks familiarity with basic web "terms and conditions" rendering the cases on which it relies inapposite. *Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 935 (N.D. Cal. 2015) (dismissing claim because plaintiffs only vaguely alleged that defendant had knowledge of their contracts with "contractors, vendors, employees, and customers"); *Taboola, Inc. v. Ezoic Inc.*, 2020 U.S. Dist. LEXIS 67934, at *31 (S.D.N.Y. Apr. 17, 2020) (dismissing claim based only on assumption Defendant "could have known").

Finally, Plaintiffs sufficiently alleged Google acted intentionally by "scraping"—i.e., converting for commercial gain—personal information on third-party websites, despite the sites prohibiting that very conduct. *Bear Down Brands, LLC*, 2023 U.S. Dist. LEXIS 142749, at *5 ("[I]t is sufficient to allege that the defendant knew that interference with the plaintiff's contract with a third party was certain or substantially certain to occur as a result of its actions."); *Moore*, 73 F.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

Supp. 3d 1203 ("'[I]ntentional acts' do not require that the defendant's primary motive be to disrupt

a contract"). Google relies on *Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1110 (D. Nev. 2006) to

argue that its data scraping amounts to a "foundational element of search engines," but that argument

fails for two reasons. First, Google's conversion for commercialization is *not* akin to the "crawling"

referenced in *Field*, where HTMLs were created and saved to caches to *provide search results.*

Instead, Google engaged in wide-scale theft and conversion of personal data for its exclusive

commercial profit. This is not "scraping" for indexing, and it surely is not a "foundational element"

of the internet. *Facebook Tracking* 956 F.3d at 606. (recognizing that data collection practices can

be highly offensive).

### b. Breach of Third-Party Beneficiary Contract.

Plaintiffs are intended third-party beneficiaries of contracts Google entered into with the

websites it unlawfully "scraped." FAC, ¶ 619. Plaintiffs specifically alleged the type and nature of

the contracts at issue. FAC, ¶ 618 ("Websites listed within **Exhibit B** and other similar website. . .

contained specific terms expressly prohibiting all users from engaging in data scraping—either

entirely, for a 'commercial purpose,' or without the prior consent of the website") Plaintiffs provide

select examples of these Anti-Scraping provisions. *See e.g.* FAC, ¶ 309. Plaintiffs' allegations are

thus distinguishable from Google's cited cases, where *no terms* of the contracts at issue were cited.

*In re Anthem Data Breach Litig.*, 162 F. Supp. 3d 953, 978 (N.D. Cal. 2016); *Beecher v. Google N.*

*Am. Inc.*, 2018 U.S. Dist. LEXIS 173805, at *5 (N.D. Cal. Oct. 9, 2018); *Andersen v. Stability AI*

*Ltd.*, 2023 U.S. Dist. LEXIS 194324, at *42 (N.D. Cal. Oct. 30, 2023). When Google discloses a

complete list of pilfered websites, Plaintiffs can identify with even more specificity all the Anti-

Scraping Provisions at issue (on belief, thousands).

Plaintiffs also sufficiently allege that they are intended third-party beneficiaries of the

contracts between Google and the websites. FAC, ¶ 619. Google refers to *Joude v. WordPress*

*Found.*, 2014 U.S. Dist. LEXIS 91345, at *13-14 (N.D. Cal. July 3, 2014) and *Melendez v. Vaiana*,

2017 U.S. Dist. LEXIS 230332, at *14 (C.D. Cal. Oct. 19, 2017) to argue being an internet user is

not sufficient to establish third-party beneficiary status. But neither case says that. Rather, they

indicate that "in the internet platform context, a third-party beneficiary must still be expressly

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

contemplated and intended by the contracting parties." *Melendez*, 2017 U.S. Dist. LEXIS 230332, at *14. Here, Plaintiffs allege they are expressly contemplated beneficiaries. FAC, ¶ 619. While Google can cherry pick among hundreds of pilfered websites to find examples disclaiming third-party beneficiary status, *some* provisions do not defeat Plaintiffs' claims as *to all.* In fact, they make them even stronger as to all the other (and bulk) of websites that do not disclaim. Even for those with disclaimers, Plaintiffs allege other terms indicating the intent for anti-scraping provisions to benefit users as a whole, thus granting them rights. *Rutherford v. FIA Card Servs., N.A.*, 2012 U.S. Dist. LEXIS 164287, at *13 (C.D. Cal. Nov. 16, 2012) ("[Even language disclaiming third party beneficiaries may not be dispositive when contradicted by other contractual provisions…")

**8.   Plaintiffs Adequately Plead Direct Copyright Infringement Based on Output (Count 12).**

Plaintiffs adequately plead that Google unlawfully appropriated Plaintiff Leovy's copyrighted materials by (1) using the entirety of her materials to train Google's AI products, and (2) delivering outputs in Bard that were necessarily derivative of these materials. FAC, ¶¶ 637-640. Google does not move to dismiss her copyright claims based on unlawfully *inputting* Plaintiff's materials for training purposes, acknowledging resolution of that claim requires a factual record. But the *"output"* copyright claim also requires a fact record for resolution.

As alleged, "[t]he ideas, representation, style, and identity of Bard's outputs are developed based on the ideas, representations, style, and identities" of Plaintiff Leovy and the copyright classes' works. Thus, they are "necessarily derivative." *Id.* ¶ 639; ¶ 15 (Bard outputs can deliver chapter-by-chapter summary). Plaintiff Leovy and the class adequately allege that the "outputs [of Bard] incorporate in some form a portion of the plaintiffs' books," rendering Google's reliance on *Kadrey* unpersuasive. *Cf.* 2023 U.S. Dist. LEXIS 207683, at *3 (plaintiff's allegations insufficient because complaint "offered *no allegation* of the contents of *any output*"). Plaintiff Leovy also adequately alleges the "necessarily derivative" outputs are "substantially similar" based on Google's copying of the entirety of her work, and unlawful misappropriation by embedding it in Bard, enabling Bard to use it to develop those outputs. *Id.* ¶ 639; *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (noting that the "substantial similarity" shorthand encompasses two

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

components: "copying" and "unlawful appropriation"). Plaintiff does not merely allege that Bard's responses were "based on" her copyrighted work—rather, she alleges that training Bard with her work allowed Bard to capture and appropriate its entire identity. *Cf. Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984) (dismissing claim because movie was only "based on" play). Because of the volume and variance of Google's infringing outputs, which can vary based on *user* inputs, fact issues preclude dismissal. *Alpi Int'l, Ltd. v. Ad-Line Indus., Inc.*, 2012 U.S. Dist. LEXIS 178347, at *7 (N.D. Cal. Dec. 14, 2012) (dismissal proper only if works are "both before the court, capable of examination and comparison").

**C.  Plaintiffs' Claims Are Not Preempted by the Copyright Act or the California Uniform Trade Secret Act ("CUTSA") (Counts 1-3, 6-9, 11).**

First, Counts 1-3, 6-9, 11 are not preempted by the Copyright Act because they are "qualitatively different" from copyright rights. *Altera Corp. v. Clear Logic, Inc.,* 424 F.3d 1079, 1089 (9th Cir. 2005). Courts first "determine whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. § 102 and 103." *Laws v. Sony Music Entm't*, 448 F.3d 1134, 1137 (9th Cir. 2006). If it does, then courts "determine whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the *exclusive rights of copyright holders*," *Id.* at 1137-1138 (emphasis added), including "rights of reproduction, preparation of derivative works, distribution, and display." *Altera*, 424 F.3d at 1089.

A state claim survives preemption when it "protect[s] rights which are qualitatively different from [] copyright rights," and has "an extra element which changes the nature of the action." *Del Madera Props. v. Rhodes & Gardner*, 820 F.2d 973, 977 (9th Cir. 1987), *overruled on other grounds*; *see also Altera Corp.*, 424 F.3d at 1089 (similar). **"[S]tate law tort claims concerning *unauthorized use* are not preempted by the Copyright Act**." *Github*, 2023 U.S. Dist. LEXIS 86983 at *27 (emphasis added).

Here, Plaintiffs allege more than mere reproduction; Counts 1-3, 6-9, 11 contain "extra elements" of data misuse and unauthorized access including of noncopyrightable information,

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

breach of duty and contractual relationships, and theft of private, confidential information.[13] *See e.g., Opperman v. Path, Inc.,* 84 F. Supp. 3d 962, 972 (N.D. Cal. 2015) (conversion not preempted: **"Plaintiffs' allegations involve more than the mere reproduction of Plaintiffs' address book data; they include the unauthorized access, transmission, misuse, and misappropriation of that data."**); *G.S. Rasmussen & Assocs. v. Kalitta Flying Serv.*, 958 F.2d 896, 904, 906-7 (9th Cir. 1992) (reversing conversion preemption because defendant misused information going beyond reproduction); *Weingand v. Harland Fin. Sols., Inc.*, 2012 U.S. Dist. LEXIS 84844, *19-20 (N.D. Cal. June 19, 2012) (**no preemption of unjust enrichment where "some of the material involved is [not] copyrightable" and includes "confidential data"**); *Facebook, Inc. v. ConnectU LLC*, 489 F. Supp. 2d 1087, 1093 (N.D. Cal 2007) (no preemption of unauthorized access to Facebook and misappropriation of email: Facebook is not "a work of authorship [that would] give rise to copyright preemption [. . .] of some uncopyrightable facts posted on it); *MDY Indus., LLC v. Blizzard Entm't, Inc.,* 2011 U.S. App. LEXIS 3428, *69 (9th Cir. 2011) (tortious interference claim not preempted: it "seeks to enforce contractual rights that are not equivalent to any of its exclusive rights of copyright").

Google misinterprets Plaintiffs' claims as solely concerning content reproduction/distribution. Mot. at 29; *cf. Altera Corp.*, 424 F.3d at 1089 ("The right at issue is not the reproduction of the software as [defendant] argues, but is more appropriately characterized as the use of the [software]"). Google's expansion of the Copyright Act to several non-copyright claims would eviscerate state tort and contract law, and the cases on which Google relies are different. *Kadrey* 2023 U.S. Dist. LEXIS 207683, at *1 (books, not personal and private information); *Thomson Reuters,* 2023 U.S. Dist. LEXIS 170155, at *2 (compilations or systems of opinion "headnotes" and not personal or private information); *Best Carpet*, 90 F.4th at 970-74 (copies of websites); *Github,* 2023 U.S. Dist. LEXIS 86983, at *27 ("[p]laintiffs do not allege that [d]efendants' use of [p]laintiffs' [software] code for training purposes violated their rights"); *PhantomALERT, Inc. v. Google Inc.*, 2016 U.S. Dist. LEXIS 30321, *44-45 (N.D. Cal. March 8,

---

[13] *See* FAC, ¶¶ 1, 11-12, 211, 372, 423, 428, 445, 454, 474, 492 (theft of private information), 529-533 (negligent breach of duties), 544, 576-579, 591, 597-599 (theft and unauthorized access of private information), 609-613 (interference with contractual relationships), 625-627.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050  F: (213) 788-4070 | clarksonlawfirm.com

2016) (no extra element, such as **"invasion of privacy"**); *Media.net Adver. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052, 1074-1075 (unlike here, no facts alleged under UCL beyond copyright).

<u>Second</u>, there is no preemption under CUTSA for claims, like those here, that do not "require that the confidential information qualify as a 'trade secret.'" *Integral Dev. Corp. v. Tolat*, 675 Fed. Appx. 700, 704 (9th Cir. 2017) (citations omitted); *see also Broidy Capital Mgmt. LLC v. Muzin*, 2020 U.S. Dist. LEXIS 58302, *41 (D.D.C. Mar. 31, 2020) (finding intrusion upon seclusion and conversion claims *not* preempted by CUTSA: "each have a basis independent of any misappropriate of a trade secret"); *Javo Bev. Co. v. Cal. Extraction Ventures, Inc.*, 2019 U.S. Dist. LEXIS 207483, *14-15 (C.D. Cal. Dec. 2, 2019) (*denying preemption* of intentional interference with contractual relations claim based upon non-trade secret information).

Instead, CUTSA displaces only claims "based on the same nucleus of facts as the [underlying] misappropriation of trade secrets claim for relief" or the misappropriation of "confidential business and proprietary information." *Erhart v. Bofi Holding, Inc.*, 612 F. Supp. 1062, 1117, 1119 (S.D. Cal. 2020) (citations omitted). Plaintiffs' claims are neither. *Id.* at 1119; *see also Broidy Capital Mgmt, LLC v. Muzin*, 2022 U.S. Dist. LEXIS 98241, at *11 (D.D.C. June 2, 2022) (**defendants "have not identified a single case that found CUTSA to preempt misconduct involving personal, private information. Nor have they offered any account of why a statute that regulates trade secrets would cover private information."**). Finally, Google's cases do not support CUTSA preemption. None involve misappropriation of consumer information. They are business-to-business or business-to-employee disputes based on traditional trade secrets. Mot. at 29-30 (collecting inapplicable cases).

## V.   **CONCLUSION**

Plaintiffs request that the Court deny Google's Motion. If the Court is inclined to grant any portion, Plaintiffs request leave to amend.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway, Malibu, CA 90265 | P: (213) 788-4050 F: (213) 788-4070 | clarksonlawfirm.com

DATED: March 15, 2024                    **CLARKSON LAW FIRM, P.C.**

                                         _/s/ Ryan J. Clarkson_
                                         Ryan Clarkson, Esq.
                                         Yana Hart, Esq.
                                         Tracey Cowan, Esq.
                                         Tiara Avaness, Esq.

                                         _Counsel for Plaintiffs and the Proposed Classes_

PLAINTIFFS' OPPOSITION TO DEFENDANT GOOGLE LLC'S MOTION TO DISMISS AMENDED COMPLAINT