1   DAVID H. KRAMER, SBN 168452
    Email: dkramer@wsgr.com
2   MAURA L. REES, SBN 191698
    Email: mrees@wsgr.com
3   WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation
4   650 Page Mill Road
    Palo Alto, CA 94304-1050
5   Telephone:  (650) 493-9300

6   ERIC P. TUTTLE, SBN 248440
    Email: eric.tuttle@wsgr.com
7   WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation
8   701 Fifth Avenue, Suite 5100
    Seattle, WA 98104-7036
9   Telephone:  (206) 883-2500

10  *Counsel for Defendant*
    GOOGLE LLC

11

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14                     SAN FRANCISCO DIVISION

15

16  JILL LEOVY, NICHOLAS GUILAK,          )   CASE NO.:  3:23-cv-03440-AMO
    CAROLINA BARCOS, PAUL MARTIN,         )
17  MARILYN COUSART, ALESSANDRO DE LA     )   **DEFENDANT GOOGLE LLC'S**
    TORRE, VLADISSLAV VASSILEV, JANE      )   **REPLY IN SUPPORT OF MOTION**
18  DASCALOS, and minor G.R., individually, and )   **TO DISMISS AMENDED**
    on behalf of all others similarly situated,  )   **COMPLAINT**
19                                        )
                  Plaintiffs,             )
20                                        )   Date:    May 16, 2024
          v.                              )   Time:    2:00 p.m.
21                                        )   Courtroom:  10
    GOOGLE LLC,                           )   Judge:  Hon. Araceli Martínez-Olguín
22                                        )
                  Defendant.              )
23                                        )
                                          )
24                                        )
                                          )
25  _____     )

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2

<u>**Page**</u>

3  TABLE OF AUTHORITIES ................................................................................................ ii

4  ARGUMENT ..................................................................................................................... 2

5       I.      The Amended Complaint Violates Rule 8. ........................................................... 2

6       II.     Plaintiffs Fail to State a Claim. ........................................................................... 3

7               A.      Plaintiffs Fail to State a Claim for Negligence (Count 2). ......................... 3

8               B.      Plaintiffs Fail to State a Claim Under CDAFA (Count 3). ......................... 4

9               C.      Plaintiffs Fail to State a Claim for Invasion of Privacy or Intrusion
                        Upon Seclusion (Counts 4-5). .................................................................. 5
10
                D.      Plaintiffs Fail to State a Claim for Larceny, Conversion, or Trespass
11                      (Counts 6-8)........................................................................................... 8

12              E.      Plaintiffs Fail to State a Claim for Breach of Contract and Tortious
                        Interference (Counts 9-10). ..................................................................... 9
13
                F.      Plaintiffs Fail to State a Claim for Unjust Enrichment (Count 11).......... 11
14
                G.      Plaintiffs Fail to State a Claim Under the UCL (Count 1). ..................... 11
15
                H.      Most of Plaintiffs' Claims Are Preempted by the Copyright Act
16                      and/or Superseded by California's Uniform Trade Secret Act
                        (Counts 1-3, 6-9, 11). ........................................................................... 14
17
                I.      Plaintiffs Fail to State a Claim for Copyright Infringement (Count
18                      12)....................................................................................................... 17

19  CONCLUSION ............................................................................................................... 17

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Andrews v. Plains All Am. Pipeline, L.P.,*
    2019 WL 6647930 (C.D. Cal. Nov. 20, 2019) ................................................................. 3

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................................................ 7

*Bear Down Brands, LLC v. Bora Servs.,*
    2023 WL 5167355 (C.D. Cal. May 25, 2023)................................................................ 10

*Best Carpet Values, Inc. v. Google, LLC,*
    90 F.4th 962 (9th Cir. 2024)................................................................................... 8, 9, 15

*Brown v. Google LLC,*
    2023 WL 5029899 (N.D. Cal. Aug. 7, 2023)............................................................ 4, 11

*Calhoun v. Google LLC,*
    526 F. Supp. 3d 605 (N.D. Cal. 2021) ........................................................................ 8, 9

*Casillas v. Berkshire Hathaway Homestate Ins. Co.,*
    79 Cal. App. 5th 755 (2022)........................................................................................... 9

*Chabner v. United of Omaha Life Ins.,*
    225 F.3d 1042 (9th Cir. 2000)...................................................................................... 12

*Clear Channel Outdoor, Inc. v. Bently Holdings Cal. LP,*
    2011 WL 6099394 (N.D. Cal. Dec. 7, 2011) ............................................................... 11

*Davis v. Riversource Life Ins.,*
    240 F. Supp. 3d 1011 (N.D. Cal. 2017) ...................................................................... 14

*Doe 1 v. GitHub, Inc.,*
    2024 WL 235217 (N.D. Cal. Jan. 22, 2024) .......................................................... 15, 16

*Doe v. Meta Platforms, Inc.,*
    2023 WL 5837443 (N.D. Cal. Sept. 7, 2023)............................................................... 12

*Dolin v. Facebook, Inc.,*
    2018 WL 2047766 (N.D. Cal. May 2, 2018) ............................................................... 10

*Driscoll's Inc. v. Cal. Berry Cultivars, LLC,*
    2023 WL 2717445 (E.D. Cal. Mar. 30, 2023) ............................................................. 10

*Farmers Ins. Exch. v. Steele Ins. Agency, Inc.,*
    2013 WL 3872950 (E.D. Cal. July 25, 2013) .............................................................. 17

*Field v. Google Inc.,*
    412 F. Supp. 2d 1106 (D. Nev. 2006) ......................................................................... 11

*Griffith v. TikTok, Inc.,*
    2023 WL 7107262 (C.D. Cal. Oct. 6, 2023) ............................................................... 8, 9

*Heller v. Cepia, L.L.C.*,
    2012 WL 13572 (N.D. Cal. Jan. 4, 2012) ........................................................ 16

*Hill v. Nat'l Collegiate Athletic Assn.*,
    7 Cal. 4th 1 (1994) .............................................................................................. 6

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    31 F.4th 1180 (9th Cir. 2022) ............................................................................. 5

*In re Accellion, Inc. Data Breach Litig.*,
    2024 WL 333893 (N.D. Cal. Jan. 29, 2024) ...................................................... 4

*In re Actimmune Mktg. Litig.*,
    2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) .................................................... 14

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ............................................................... 6

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ...................................................................... 5, 6, 7

*In re Facebook Priv. Litig.*,
    572 F. App'x 494 (9th Cir. 2014) ..................................................................... 11

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    996 F. Supp. 2d 942 (S.D. Cal. 2014) ................................................................ 4

*In re Vaccine Cases*,
    134 Cal. App. 4th 438 (2005) ........................................................................... 12

*Infectolab Am. LLC v. ArminLabs GmbH*,
    2021 WL 292182 (N.D. Cal. Jan. 28, 2021) .................................................... 10

*Kadrey v. Meta Platforms, Inc.*,
    2023 WL 8039640 (N.D. Cal. Nov. 20, 2023) ...................................... 15, 16, 17

*Katz-Lacabe v. Oracle Am., Inc.*,
    668 F. Supp. 3d 928 (N.D. Cal. 2023) ............................................................. 11

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ......................................................................... 14

*Kellman v. Spokeo, Inc.*,
    599 F. Supp. 3d 877 (N.D. Cal. 2022) ............................................................... 6

*Laws v. Sony Music Ent., Inc.*,
    448 F.3d 1134 (9th Cir. 2006) ......................................................................... 15

*Martin v. Sephora USA, Inc.*,
    2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) .................................................... 3

*Mattel, Inc. v. MGA Ent., Inc.*,
    782 F. Supp. 2d 911 (C.D. Cal. 2011) ............................................................. 17

*McCluskey v. Hendricks*,
    2021 WL 6773140 (C.D. Cal. Nov. 17, 2021) .................................................... 4

*Montz v. Pilgrim Films & Television, Inc.*,
    649 F.3d 975 (9th Cir. 2011)................................................................................ 15

*Moore v. Centrelake Med. Grp., Inc.*,
    83 Cal. App. 5th 515 (2022)................................................................................ 12

*Park-Kim v. Daikin Indus., Ltd.*,
    2016 WL 6744764 (C.D. Cal. Nov. 14, 2016) ................................................... 14

*Pruchnicki v. Envision Healthcare Corp.*,
    845 F. App'x 613 (9th Cir. 2021) ....................................................................... 11

*R. Power Biofuels, LLC v. Chemex LLC*,
    2016 WL 6663002 (N.D. Cal. Nov. 11, 2016)................................................... 10

*S. Cal. Gas Leak Cases*,
    7 Cal. 5th 391 (2019)............................................................................................ 3

*Sandvig v. Sessions*,
    315 F. Supp. 3d 1 (D.D.C. 2018) ......................................................................... 6

*Swarts v. Home Depot, Inc.*,
    2023 WL 5615453 (N.D. Cal. Aug. 30, 2023) ................................................... 12

*Tanner v. Acushnet Co.*,
    2023 WL 8152104 (C.D. Cal. Nov. 20, 2023) ................................................... 11

*Thomson Reuters Enters. Ctr. GMBH v. Ross Intel. Inc.*,
    2023 WL 6210901 (D. Del. Sept. 25, 2023) ................................................ 15, 16

*Tremblay v. OpenAI, Inc.*,
    2024 WL 557720 (N.D. Cal. Feb. 12, 2024)...................................... 3, 4, 11, 17

*UCAR Tech. (USA) Inc. v. Li*,
    2018 WL 2555429 (N.D. Cal. June 4, 2018) ..................................................... 16

*Williams v. Apple, Inc.*,
    449 F. Supp. 3d 892 (N.D. Cal. 2020) ............................................................... 14

*X Corp. v. Ctr. for Countering Digit. Hate, Inc.*,
    2024 WL 1246318 (N.D. Cal. Mar. 25, 2024) ............................................ 1, 4, 6

## CONSTITUTIONAL PROVISION AND STATUTES

17 U.S.C. § 102(a)..................................................................................................... 15

California Consumer Privacy Act (CCPA), Cal. Civ. Code
    § 1798.99.80................................................................................................... 12
    § 1798.140...................................................................................................... 12
    § 1798.150...................................................................................................... 12

California Online Privacy Protection Act (CalOPPA), Cal. Bus. & Prof. Code
    § 22575........................................................................................................... 13

U.S. Const. amend. I ........................................................................................ 1, 5, 6, 7

1

## RULES AND REGULATIONS

2 16 C.F.R. § 312.2 ............................................................................................................. 13

3 Fed. R. Civ. P. 8 ......................................................................................................... 2, 3, 7

4 Fed. R. Civ. P. 9(b) ........................................................................................................ 14

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The imagined right upon which Plaintiffs' case rests—an unbounded right to control how the information they publicly shared on the internet is used—does not exist, and this Court should not create it. While Plaintiffs insist they narrowly target the use of their information to train AI models, nothing in their legal theories is limited to such use. If the information Plaintiffs share online is their "digital property," then Plaintiffs could bring the same claims against anyone who makes a copy without asking permission or uses it in any way that Plaintiffs disapprove—asserting that this interferes with their property rights. As Judge Breyer recently explained, "[w]hile scraping is one way to collect" online information, "members of the public" also can and do access, collect, and use such information in a manner that implicates the same supposed property and privacy interests. *See X Corp. v. Ctr. for Countering Digit. Hate, Inc.*, 2024 WL 1246318, at *21 (N.D. Cal. Mar. 25, 2024). In Plaintiffs' world, all of that ordinary internet activity would now be unlawful, and indeed, criminal. That alone shows the folly of Plaintiffs' claims. Plaintiffs' theories also run headlong into the First Amendment, which forbids their effort to so vaguely, yet substantially, impede anyone's ability to access and use public information.

To be sure, there are causes of action with specific elements that apply when certain kinds of information are misused in particular ways. But nothing in the Complaint or the Opposition articulates any such claim with remotely sufficient clarity. Plaintiffs' overwrought rhetoric does not substitute for well-pleaded facts and the fair notice of claims to which Google is entitled. The Complaint expresses itself in sweeping generalities and leaves it to the reader to try to piece together the factual basis for each asserted count. Even after two detailed motions to dismiss, Plaintiffs still cannot or will not clearly identify what specific personal information of Plaintiffs was allegedly used or disclosed by Google, how Plaintiffs' allegations satisfy the elements of their specific claims, and how Plaintiffs have actually been harmed. Rather, Plaintiffs merely regurgitate the same generalities as the Complaint, sprinkling in scattered references to the pleading. *E.g.*, Opp. 11 ("Google took Plaintiffs' personal information, which they own, without consent for monetary gain, injuring Plaintiffs. FAC, ¶¶ 18, 30, 40, 52, 62, 215-218, 382-385.").

On the rare occasion when Plaintiffs try to wed their allegations to a cognizable theory, they still fail. Plaintiffs' allusions to "password protected" websites are mere handwaving because

they have not alleged any particular information of theirs was password protected or any facts rendering it plausible that Google somehow circumvented the access restrictions for any particular website hosting Plaintiffs' private information in order to collect that information. Likewise infirm are Plaintiffs' allegations that Google improperly collected data from Gmail, as Plaintiffs misrepresent the stray statements they cite as support and fail to assert that any particular private email of Plaintiffs' was used to train Bard. Plaintiffs' claims should be dismissed.

**ARGUMENT**

**I.      The Amended Complaint Violates Rule 8.**

Plaintiffs assert that their Complaint is "clear … and clearly delineates the legal claims against Google," but the Opposition offers no clarity. Opp. 6. In reality, Plaintiffs' claims are as clear as mud. Plaintiffs alternate between impenetrable jumbles (*see* FAC ¶¶ 420-525) and boilerplate recitation (*e.g.*, *id.* ¶¶ 526-548), but in both cases the claims are based on Google's supposed taking or misuse of unspecified "Personal Information." As Google explained (Mot. 4-7), the Complaint fails to identify fundamental facts: for each Plaintiff and for each cause of action, what information is at issue and how Plaintiffs were supposedly harmed by Google's misuse of it.

The Opposition only underscores the problem. Plaintiffs gesture at vague categories of "Personal Information," thousands of undifferentiated "scraped" websites, and conjectural harms, and they cite wide-ranging allegations—from claims that Plaintiff Barcos shared "photos and information about her dog" on Facebook, to claims that artificial intelligence could (somehow, some day) "amplify societal division"—with no meaningful explanation of their import. *See* Opp. 6-7 & n.2 (citing FAC ¶¶ 31, 257). The Opposition's statement of "relevant facts" is long on hyperbole and generalities, but fatally short on specific facts underlying Plaintiffs' non-copyright claims. Opp. 4-5 & n.1 (falsely asserting that "Plaintiffs each detail the specific websites and Google platforms from which their personal information was stolen," and pointing to a hundred paragraphs including statements like "Plaintiff Martin has also posted online about his political views" (FAC ¶ 43)). Plaintiffs' arguments likewise cite to strings of scattered allegations, illustrating the impossibility of determining which, if any, of the hundreds of background allegations support which counts. *E.g.*, Opp. 11 ("Plaintiffs' personal, financial, and medical

information was taken without their knowledge or consent. FAC, ¶¶ 22, 46, 52, 56, 68, 76, 88.");

*Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *5-6 (E.D. Cal. Mar. 30, 2023) (dismissing privacy claims for violation of Rule 8 where plaintiffs "fail[ed] to identify which specific facts are allocated to which claim" and their vague allegations "fail[ed] to provide enough detail to guide discovery"). This is contrary to Rule 8; it is not for the Court and Google to puzzle through a morass to ascertain what might be relevant to what and how it fits together.

## II.     Plaintiffs Fail to State a Claim.

### A.     Plaintiffs Fail to State a Claim for Negligence (Count 2).

Plaintiffs do not dispute that the only harm caused by Google's alleged negligence is the supposed "loss of value ... of their Personal Information" (FAC ¶ 450), which implicates the economic loss rule, as this Court has recognized. Mot. 7; *see also Tremblay v. OpenAI, Inc.*, 2024 WL 557720, at *7 n.7 (N.D. Cal. Feb. 12, 2024). Instead, they suggest that the rule is inapplicable because of the "special relationship" exception. Opp. 22-23. But Plaintiffs do not allege such a relationship. *Id.* Nor could they. A "special relationship" requires that a plaintiff was an "intended beneficiary of a particular transaction involving [the] defendant," "but was harmed by the defendant's negligence in carrying it out." *Andrews v. Plains All Am. Pipeline, L.P.*, 2019 WL 6647930, at *4 (C.D. Cal. Nov. 20, 2019) (citing *S. Cal. Gas Leak Cases*, 7 Cal. 5th 391, 400 (2019)). Plaintiffs claim that Google negligently "obtain[ed]" their "Personal Information" "without consent" (FAC ¶¶ 528, 533), not pursuant to any alleged transaction. The economic loss rule bars their claim. Mot. 7.

Plaintiffs also fail again to identify the basis for any duty of care. Mot. 7. They abandon many of the duties alleged in the Complaint, focusing only a supposed "duty to protect personal information" scraped from the public internet. Opp. 23-24. In *Tremblay*, this Court dismissed a similar negligence claim because the plaintiffs failed to "identify what duty exists" to "safeguard" "public information." 2024 WL 557720, at *6. The Court should do the same here. Plaintiffs' data-breach cases do not suggest a different result. Opp. 23-24. In those cases, defendants owed a duty because plaintiffs *gave* them their confidential personal information and entrusted them to safeguard it, but defendants failed to do so, resulting in disclosures of that information to third

parties.[1] Here, Plaintiffs claim that Google collected their personal information from the internet without consent, *not* that they entrusted that information to Google. Opp. 23; *see also* FAC ¶¶ 1, 215, 237. Because they allege no such "custodial relationship," the data-breach cases are "inapposite." *Tremblay*, 2024 WL 557720, at *7. Finally, even if Google did owe an amorphous "duty to protect," Plaintiffs have not alleged any breach. Unlike the data-breach cases, Plaintiffs do not allege that Google disclosed their information, confidential or not, to anyone.

## B.  Plaintiffs Fail to State a Claim Under CDAFA (Count 3).

Plaintiffs do not deny that their CDAFA claim tries to leverage a criminal anti-hacking statute into a right to control public information on the internet. In response to the charge that this would represent an unprecedented application of a decades-old statute, Plaintiffs can point to only one case supposedly permitting "similar claims" to proceed. Opp. 19. That case, however, concerned alleged access to "plaintiffs' *computers*." *Brown v. Google LLC*, 2023 WL 5029899, at *19 (N.D. Cal. Aug. 7, 2023) (defendant allegedly caused plaintiffs' browsers to output browsing information even when plaintiffs chose private browsing mode) (emphasis added). No case endorses a theory remotely like Plaintiffs': that anyone who accesses and uses content by or about a person publicly available on the internet without that person's permission commits a computer-hacking crime. *See, e.g.*, FAC ¶ 544. And Plaintiffs have no response to the cases that reject it. *E.g.*, *McCluskey v. Hendricks*, 2021 WL 6773140, at *5 (C.D. Cal. Nov. 17, 2021).

Plaintiffs insist their theory would not criminalize "everyday use of the internet," Opp. 19, but Plaintiffs offer no principled basis for distinguishing their theory here about scraping and "misusing" data from a theory that would criminalize *any* use of *any* data online without prior permission from the owner. Opp. 20. "[S]craping, for various ends, is commonplace," and used by many, including search engines, academic researchers, and journalists. *See X Corp.*, 2024 WL 1246318, at *21. Under Plaintiffs' theory, *any* use—whether it be indexing for a search engine, research for a study, newsgathering, or training for AI—is criminal if "Plaintiffs did not give their

---

[1] *See, e.g.*, *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 966 (S.D. Cal. 2014) (plaintiffs "entrusted" Sony to "safeguard" confidential information "as part of a commercial transaction"); *In re Accellion, Inc. Data Breach Litig.*, 2024 WL 333893, at *1, *5 (N.D. Cal. Jan. 29, 2024) (plaintiffs "required to provide" PII when transacting and "relied on Accellion to safeguard" it).

1    permission." *See* Opp. 20. As for any narrower theory that Google somehow "took … data that

2    was protected by password authorization systems," *id.*, Plaintiffs nowhere point to any password-

3    protected data of Plaintiffs or any facts rendering it plausible that Google circumvented that

4    password protection and collected that data. Mot. 9. Plaintiffs also fail to distinguish well-reasoned

5    cases that refused to turn the federal analogue, CFAA, from "a criminal hacking statute into a

6    'sweeping Internet-policing mandate.'" *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1201 (9th

7    Cir. 2022). Plaintiffs suggest CDAFA is broader than CFAA, but if so, that only amplifies the First

8    Amendment and rule of lenity concerns expressed by courts assessing CFAA. *See* Mot. 9.

9    Finally, Plaintiffs do not dispute they have failed to allege the requisite "damage or loss"

10   to their computers or data. Mot. 9. That failure independently requires dismissal.

11   **C.    Plaintiffs Fail to State a Claim for Invasion of Privacy or Intrusion Upon**

12   **Seclusion (Counts 4-5).**

13   The Opposition confirms that Plaintiffs' privacy claims are without foundation. Relying on

14   *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ("*Facebook Tracking*"),

15   Plaintiffs argue that the "sheer scope" of Google's alleged collection of their "Personal

16   Information" is "alone" sufficient to state their claims. Opp. 14-15. That is not the law. Mot. 10-

17   14. Nor is it the holding of *Facebook Tracking*. There, the plaintiffs alleged that Facebook

18   "surreptitiously" collected their "sensitive," *nonpublic* browsing data when they were logged out

19   of Facebook, despite promising it would not do so, and then used that data to "compile[] highly

20   personalized profiles" that it sold to advertisers. 956 F.3d at 603-606. This case is nothing like

21   that. Plaintiffs *publicly* shared the vast majority of "Personal Information" that they gesture at in

22   the Complaint, Google publicly described its collection practices, and Plaintiffs do not allege that

23   Google "profile[d] users" (Opp. 19) or disclosed anything. Mot. 10-14. And while Plaintiffs

24   summarily assert that Google's privacy statements were "ambiguous" and "unclear" they do not

25   explain *how* or even engage with the language. Opp. 17-19. Regardless, the "critical fact" in

26   *Facebook Tracking* was that Facebook "represented to the plaintiffs that their information would

27   not be collected, but then proceeded to collect it anyway." 956 F.3d at 603; *see also* Mot. 12.

28   Plaintiffs make no such allegations here. Plaintiffs' "sheer scope" theory is meritless; so too are

their arguments about each category of "Personal Information" they claim is at issue:

**Publicly Available Information.** Plaintiffs do not dispute that they fail to *directly* allege that Google scraped/collected/used *any* particular information that Plaintiffs publicly posted. Opp. 15-16. That alone defeats their claims. Plaintiffs also disregard that to state a privacy invasion claim they "must have conducted [themselves] in a manner consistent with an actual expectation of privacy." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 26 (1994); Mot. 10-12. Even if Plaintiffs "believed they were sharing" their public posts "with specific audiences for specific purposes," Opp. 15, that fails to establish a reasonable expectation that such public information would remain *private* or limited in its dissemination, as opposed to freely viewable and usable by *anyone*. Mot. 10-12; *see also X Corp.*, 2024 WL 1246318, at *21 ("a user can have no expectation that a tweet that he has publicly disseminated will not be seen by the public….").

In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019), relied on by Plaintiffs (Opp. 15-16), underscores why Plaintiffs have failed to demonstrate a privacy interest in information they shared publicly. There, Facebook users had shared information with only "a *limited number* of *friends*," and Facebook allegedly then disclosed it to "tens of thousands of" third parties. 402 F. Supp. 3d at 776, 787, 797 (emphasis added). Plaintiffs allege neither limited sharing (or restricted access or password protection) on their part nor any disclosure by Google. Their other cases do not help them either. Opp. 15-16. *Facebook Tracking* concerned the collection of *nonpublic* browsing data, not information plaintiffs publicly shared. 956 F.3d at 596. And *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 886 (N.D. Cal. 2022), is a right of *publicity* case not involving any *privacy* claims.

Moreover, this claim brings the First Amendment problems with Plaintiffs' case into sharp relief. Plaintiffs concede "Google is free to *access* public information" and suggest their issue is with "us[e]" of that information. Opp. 7. But an intrusion upon seclusion claim is all about *access*. *See* Rest. 2d of Torts § 652B, Comment b ("The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind …."). Regardless, if Plaintiffs' claims actually turn on use, that use is also protected by the First Amendment. *See Sandvig v. Sessions*, 315 F. Supp. 3d 1, 17 (D.D.C. 2018) ("[applying CFAA to] publishing original material

1    that uses publicly available information … triggers First Amendment scrutiny"); Mot. 5, 9, 25.

2        **Google Searches**. The Complaint does not allege what Plaintiffs' searches on Google were,

3 how they were sensitive or private, how Google violated a privacy interest in information Plaintiffs

4 communicated directly to Google, or that Google actually misused or disclosed Plaintiffs' search

5 queries. Mot. 12-13. The Opposition disputes none of this. Nor do Plaintiffs address the language

6 in Google's Privacy Policy explaining that it may collect "terms [users] search for" "to improve

7 [its] services and to develop new products" (Mot. 12), other than to say it is "unclear" (Opp. 17);

8 but Plaintiffs obviously thought it clear enough to base their entire allegation that Google trained

9 on search terms on that very same language (FAC ¶ 148 & n.74), and cannot have it both ways.

10 Plaintiffs speculate about harms that "could" result from the collection of search terms. *Id.* But

11 that does not state a privacy claim. Nor does their naked assertion that Google collected their

12 "browsing data from across the *entire internet*, including search terms, keystrokes, cookies, and

13 more." Opp. 17. Unlike *Facebook Tracking*, 956 F.3d at 596 (Opp. 17), where there were detailed

14 allegations about Facebook's use of plug-ins and cookies to collect specific browsing information,

15 Plaintiffs here do not plead a single fact to support this irresponsible accusation. Plaintiffs cannot

16 state privacy claims by merely incanting words like "browser" and "keystrokes." FAC ¶ 423.

17        **Gmail Conversations**. Plaintiffs do not dispute that the *only* basis for their false allegation

18 that "Google used private Gmail conversations to train Bard" (Opp. 17) are tweets they blatantly

19 mischaracterize in their Complaint (and again in the Opposition). Mot. 13. Plaintiffs say nothing

20 about the actual language of Mitchell's tweet, or how she "confirmed" (*id.*) something she

21 *questioned*. Mot. 13-14; FAC ¶ 174. Nor do they allege *anything* about the other former employee

22 she responded to, let alone that he had knowledge of Bard's training. *See* FAC ¶ 148 & n.73; Opp.

23 17. These are not plausibly alleged "facts." Opp. 17. It would turn Rule 8 on its head if Plaintiffs

24 could state plausible claims by self-servingly misrepresenting social media posts in a complaint.

25 *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Gmail-based claims also fail given the

26 language of Google's contractual terms (Mot. 13-14), which Plaintiffs agreed to but gloss over in

27 their Opposition (at 18-19). The Opposition also confirms that only four Plaintiffs actually

28 reference specific private information in their Gmail (Opp. n.11), and it does not dispute that *none*

of them directly alleges that any particular private email of theirs was used to train Bard, which alone requires dismissal. Mot. 13.

### D. Plaintiffs Fail to State a Claim for Larceny, Conversion, or Trespass (Counts 6-8).

Plaintiffs' failure to plead facts establishing a "cognizable property interest" under the Ninth Circuit's controlling three-part test for intangible information dooms their property claims. *See Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 968-69 (9th Cir. 2024); Mot. 14-16. First, Plaintiffs' opaque allegations that Google collected their "Personal Information" and "internet data" (FAC ¶¶ 12, 372) fail to describe something "capable of precise definition." *Best Carpet*, 90 F.4th at 969. Plaintiffs assert that the "content is not amorphous" (Opp. 12), but fail to allege precisely *what* "content" they imagine to be their property. Second, the "Personal Information" that Plaintiffs publicly shared on the internet is by definition not "capable of exclusive possession or control" since other internet "*users* have control over what to do with" that information. *Best Carpet*, 90 F.4th at 969.[2] Third, Plaintiffs have no "legitimate claim to exclusivity" over information about them that they or others have posted online. *Id.*

Plaintiffs attempt to evade *Best Carpet* by arguing that they "did not post *copies* of their content," but rather "posted the content" itself, of which they "had control." Opp. 12. That is inscrutable. Plaintiffs do not allege that Google hacked their computers to steal some original content that they exclusively possessed. Plaintiffs allege that they publicly posted content online and that Google (and anyone else who accessed it) obtained a copy. Mot. 14-15. As in *Best Carpet*, where the supposed "'chattels' at issue" were "the copies of Plaintiffs' websites," 90 F.4th at 967, the purported "property" at issue here are copies of information Plaintiffs claim to exclusively control. Regardless, the dispositive test that *Best Carpet* articulates for a property interest in intangibles does not turn on such semantics, and Plaintiffs do not come close to satisfying it.

As noted, the great weight of district court authority is in accord. Mot. at 15-16. That did not stop Plaintiffs from relying heavily on two outlier decisions, *Calhoun* and *Griffith*, to suggest

---

[2] Plaintiffs' reliance on "private Gmail" is also unavailing (Opp. 12), as they make no effort to explain how emails are property or which emails they claim as property, how any use was unauthorized given Google's Terms of Service and Privacy Policy, or how they alleged that any particular email was actually used to train Bard.

a property interest may exist in "personal information" under certain narrow circumstances. Opp. 12-14. But those cases concerned *specific*, *nonpublic* information.[3] They have no application to the imprecisely-defined, shared information at issue here that is not subject to Plaintiffs' exclusive control. More broadly, those cases failed to apply the controlling test from *Best Carpet* (and *Kremen* before it), and are therefore no longer good law, to the extent they ever were.

Finally, the Opposition confirms that Plaintiffs fail to allege that they have *actually* been injured or harmed, as required for their property claims. Mot. 16. Plaintiffs assert that Google "forever interfered with their property right of deletion," Opp. 14, but they identify no authority recognizing such a California *property* right, citing only to irrelevant privacy statutes. Opp. 13-14. Mere "copying" does not injure "property interests." *Casillas v. Berkshire Hathaway Homestate Ins. Co.*, 79 Cal. App. 5th 755, 764-65 (2022). The only other "harm" the Opposition identifies is the "threat of injection attacks." Opp. 14. That does not state an *actual* injury. Mot. 16.

**E.      Plaintiffs Fail to State a Claim for Breach of Contract and Tortious Interference (Counts 9-10).**

***Breach of Contract.*** Plaintiffs do not dispute that, to state a breach of contract claim, they must identify a contractual promise of which they are an intended beneficiary. *See* Mot. 16-17. While Plaintiffs argue they have alleged "the type and nature of the contracts at issue" (Opp. 26), they cite no authority holding that a breach of contract claim can be stated by vaguely gesturing at "thousands" of agreements that may or may not contain a certain "type" of provision.

Plaintiffs point to "select examples" of "Anti-Scraping" provisions (Opp. 17), but as Google explained (Mot. 17), those examples merely showcase the infirmities of Plaintiffs' claim. Plaintiffs do not contest that they have not actually alleged use of either Pinterest or Yahoo, or that LinkedIn and Yahoo expressly disclaim third-party beneficiaries. *Id.* Indeed, Plaintiffs do not even argue that they are beneficiaries of any of the three agreements they identify in the Complaint. That is fatal. Plaintiffs argue that a no-beneficiaries provision may not be dispositive where contradicted by other provisions (Opp. 27), but identify ***no*** provisions in the LinkedIn or Yahoo

---

[3] *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 613-14 (N.D. Cal. 2021) (detailing the nonpublic browsing data at issue); *Griffith v. TikTok, Inc.*, 2023 WL 7107262, at *1-2 (C.D. Cal. Oct. 6, 2023) (claims concerned specific, *private* browsing data).

terms (or in any other terms) that are actually contradictory. In short, Plaintiffs are nowhere close to stating a claim for breach of contract as a third-party beneficiary.

**Tortious Interference.** The Opposition insists that Google intentionally caused unidentified websites to breach unidentified provisions of their terms of service agreements with users, but this does not establish a tortious interference claim.

Plaintiffs' threshold failure to identify the specific contracts is dispositive. "[B]ecause Plaintiff alleges a class of companies rather than specific companies and because it is impossible to even determine how many contracts are at issue, the claim for tortious interference with contract fails." *R. Power Biofuels, LLC v. Chemex LLC*, 2016 WL 6663002, at *17 (N.D. Cal. Nov. 11, 2016). And since Plaintiffs failed to identify specific contracts, they could not have adequately pleaded the required breach or disruption of a specific provision of the contract. *Driscoll's Inc. v. Cal. Berry Cultivars, LLC*, 2023 WL 2717445, at *5 (E.D. Cal. Mar. 30, 2023). As to the couple of contracts actually identified in the Complaint, Plaintiffs do not even try to explain how they were breached or disrupted. *See* Mot. 19-20.

Plaintiffs also fail to plead that Google knew of their contracts with third-party websites. Citing outlier (and inapposite) authority, Plaintiffs argue that Google need only have known Plaintiffs "had contracts with a certain group or type of party." Opp. 25; *Bear Down Brands, LLC v. Bora Servs.*, 2023 WL 5167355, *2 (C.D. Cal. May 25, 2023) (defendant, an authorized distributor of plaintiff's, knew plaintiff had contracts with other authorized distributors). The weight of authority holds that general awareness that websites have terms of service does not provide knowledge that *Plaintiffs* had contracts with *specific* websites, or what those terms were. *See Infectolab Am. LLC v. ArminLabs GmbH*, 2021 WL 292182, at *4 (N.D. Cal. Jan. 28, 2021) (collecting cases, and holding that awareness that types of agreements are "common" not sufficient to allege knowledge); *Dolin v. Facebook, Inc.*, 2018 WL 2047766, at *4 (N.D. Cal. May 2, 2018) (awareness of shopping website did not imply knowledge of contracts with its "users").

As to the element of intent, the Complaint's formulaic allegation—that Google "knew … web-scraping would necessarily result in the websites' breach of their promises … to protect [] data ownership" (FAC ¶ 612)—does not suffice. *See* Mot. 19. It is simply implausible that, having

1  crawled the web without incident "since 1998," *see, e.g.*, *Field v. Google Inc.*, 412 F. Supp. 2d

2  1106, 1111 (D. Nev. 2006), Google somehow always knew that such crawling/scraping caused

3  websites to breach their terms of service agreements. Plaintiffs try to distinguish "'scraping' for

4  [purposes of] indexing" (Opp. 26) from scraping for use in generative AI services, but do not

5  explain how one intentionally causes a breach and the other does not. *See also supra* at 4-5.

### F.        Plaintiffs Fail to State a Claim for Unjust Enrichment (Count 11).

7          In *Tremblay*, this Court dismissed an unjust enrichment claim against OpenAI based on its

8  alleged nonconsensual copying of the plaintiffs' copyrighted books because there were no

9  allegations "that OpenAI unjustly obtained benefits … through fraud, mistake, coercion, or

10 request." 2024 WL 557720, at *7. Plaintiffs do not dispute that the same defect infects their theory

11 that Google collected their "Personal Information" from "third-party websites" without notice or

12 consent. Opp. 21-22. That should end the analysis.

13         As to data that Google allegedly collected from users of its services, Plaintiffs seek to

14 sidestep the express contracts that preclude any quasi-contract claim by suggesting that Google's

15 Terms and Privacy Policy are "ineffective." Opp. 21-22. Whatever that means, the Complaint

16 alleges no "facts as to how the [parties' express] contract would be unenforceable," as required to

17 state an unjust enrichment claim. *Clear Channel Outdoor, Inc. v. Bently Holdings Cal. LP*, 2011

18 WL 6099394, at *9 (N.D. Cal. Dec. 7, 2011); *see also* Mot. 20; RJN (ECF No. 34) at 3 (Plaintiffs

19 allege a contract with Google).

### G.        Plaintiffs Fail to State a Claim Under the UCL (Count 1).

21         Plaintiffs' Opposition fails to address the fatal flaws in their UCL claim.

22         ***There is no statutory standing.*** "The weight of the authority in the district and the state"

23 holds that the "'mere misappropriation of personal information'" is not an economic injury under

24 the UCL. *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 943 (N.D. Cal. 2023) (quoting

25 *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021)) (collecting

26 cases). Despite what Plaintiffs' say (*see* Opp. 7-8), *Brown v. Google LLC* does not represent a sea

27 change in the law, particularly when "the most relevant Ninth Circuit authority requires dismissal."

28 *Tanner v. Acushnet Co.*, 2023 WL 8152104, at *9 (C.D. Cal. Nov. 20, 2023) (reviewing cases and

1  agreeing with *In re Facebook Priv. Litig.*, 572 F. App'x 494 (9th Cir. 2014), that loss of value of

2  personal information does not confer UCL standing); *Swarts v. Home Depot, Inc.*, 2023 WL

3  5615453, at *9-10 (N.D. Cal. Aug. 30, 2023) (agreeing with "[n]umerous courts" that "disclosure

4  of personal information alone does not constitute economic or property loss").

5      Even assuming that some personal information has value in the abstract, Plaintiffs have not

6  sufficiently alleged that they "attempted or intended to participate in" an actual market for the

7  personal information at issue here. *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515,

8  538-39 (2022). And Plaintiffs could not make the requisite allegations, given that most (if not all)

9  of the information at issue is publicly available on the internet, and given Plaintiffs' allegations

10  that they do not wish to have their personal information used for training AI models. *See, e.g.*,

11  FAC ¶¶ 21, 36, 48, 58, 70, 80, 90, 98; *see also Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, at

12  *17 (N.D. Cal. Sept. 7, 2023) (distinguishing *Brown*; holding allegations that plaintiffs' personal

13  information was highly sensitive rendered it unlikely they "could *and* would participate in a

14  legitimate market" to sell it). Plaintiffs cannot base their standing on the alleged lost sale value of

15  their personal information when they never allege they could and would sell such information.

16  This alone disposes of Plaintiffs' UCL claim.

17      **Plaintiffs fail to allege any unlawful conduct.** Plaintiffs' Opposition confirms their failure

18  to allege any predicate unlawful act.

19      *California Data Broker Law*: Plaintiffs do not begin to grapple with the law's explicit

20  carveout for the collection and use of "publicly available information." Cal. Civ. Code

21  §§ 1798.99.80(c), 1798.140(v)(2). Nor do Plaintiffs explain how Google "sells" data, which

22  requires transfer "to a third party for monetary or other valuable consideration." Cal. Civ. Code

23  § 1798.140(ad). *See* Mot. 22. Rhetoric that Google is "like Clearview AI" is not enough. Opp. 9.

24      *California Consumer Privacy Act (CCPA)*: Unlike the statutes at issue in Plaintiffs' cited

25  cases, the CCPA expressly bars its use "as the basis for a private right of action under any other

26  law." Cal. Civ. Code §§ 1798.150(a), (c). Because the Legislature "specifically conclude[d] that

27  no action should lie," *In re Vaccine Cases*, 134 Cal. App. 4th 438, 458-59 (2005), Plaintiffs cannot

28  use UCL to "plead around" this "absolute bar to relief." *Chabner v. United of Omaha Life Ins.*,

225 F.3d 1042, 1048 (9th Cir. 2000) (cleaned up). And Plaintiffs do nothing to address the myriad defects plaguing the merits of the CCPA claim. *See* Mot. 22 n.5.

*California Online Privacy Protection Act (CalOPPA)*: The Opposition abandons any alleged CalOPPA violations other than Google's purported failure to disclose that (1) *Google* collects PII when consumers use Google services; and (2) data used to train AI services cannot be deleted. Opp. 9 n.4 (citing FAC ¶¶ 440-41). The former is not even alleged: The Complaint asserts that Google fails to disclose "whether *other* parties" may collect PII (FAC ¶ 441) and Plaintiffs do not respond to Google's point that its Privacy Policy expressly addresses this (Mot. 23 n.6). As to the latter, Plaintiffs still fail to identify how CalOPPA mandates disclosure of *what* data *cannot* be deleted, when the statute only requires the disclosure of removal procedures *if* data can be deleted. *See* Cal. Bus. & Prof. Code § 22575(b); Mot. 23 n.6.

*Children's Online Privacy Protection Act (COPPA)*: Plaintiffs concede that Bard is not "directed to" children (Opp. 10) and offer no meaningful defense of their "scraping" theory (*see* Mot. 24). Plaintiffs are left to argue that Google violated COPPA because it had actual knowledge that, through Bard, it was collecting personal information from a child under 13. This theory fails.

The original and amended complaints imply that the only minor identified as having used Bard—Plaintiff G.R.—was 13 at the time. *See* FAC ¶ 93 (alleging, in January 2024, that "G.R. is a thirteen (13) year old minor who started using Bard earlier this year"); Compl. (ECF No. 1) ¶ 52 (alleging, in July 2023, that G.R. was "13"). Plaintiffs assert these were "mistake[s]" and that G.R. was actually 12 when she started using Bard, Opp. 10 n.5, a fact nowhere alleged. But even if that is true and G.R. somehow accessed Bard despite its minimum age requirements, Plaintiffs do not allege a COPPA violation.

Plaintiffs admit that COPPA demands "actual knowledge." Opp. 10. But they identify no pleaded facts that plausibly allege Google's actual knowledge that Bard was collecting personal information from a child under 13. For starters, Plaintiffs fail to allege that Bard collected from G.R. any of the "individually identifiable information" that COPPA regulates (*see* 15 U.S.C. § 6501(8); 16 C.F.R. § 312.2), instead vaguely alleging only that G.R. revealed unidentified "personal information about herself to Bard" (FAC ¶ 93). More importantly, Plaintiffs do not

1    plausibly allege Google's actual knowledge that G.R. was under 13 at the time—a fact that cannot

2    even be discerned from the Complaint.

3          ***Plaintiffs failed to allege any fraudulent or unfair conduct.*** Plaintiffs do not rebut

4    Google's arguments about the "fraudulent" prong of the UCL claim, thereby conceding that their

5    allegations do not satisfy the heightened Rule 9(b) standard. Instead, Plaintiff's Opposition tries to

6    repackage their fraud-based claim under the UCL's "unfair" prong. But the crux of these

7    allegations remains that Google "failed to disclose" that it was crawling information to train its

8    generative AI services. FAC ¶ 452; *see also, e.g.*, FAC ¶¶ 456-490 (characterizing practices as

9    "deceptive" and "fraudulent" throughout the "unfair" section). Because the allegations are

10   "grounded in fraud," Plaintiffs "must satisfy the particularity requirement of Rule 9(b)," no matter

11   what UCL prong they invoke. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009)

12   (UCL unfairness prong claim properly dismissed when fraudulent course of conduct not pleaded

13   with particularity). That requires, for example, explaining why Google's Privacy Policy

14   disclosures were fraudulent, Mot. 22, and how Plaintiffs actually relied on them. *Id.*; *see also Davis*

15   *v. Riversource Life Ins.*, 240 F. Supp. 3d 1011, 1017 (N.D. Cal. 2017) (actual reliance required

16   "where… the claim is based on alleged misrepresentation"); *Williams v. Apple, Inc.*, 449 F. Supp.

17   3d 892, 912-14 (N.D. Cal. 2020) (same). The Complaint fails to satisfy that high bar.

18         To the extent there is anything to Plaintiffs' unfairness claim independent of alleged

19   unlawfulness or fraud, and to the extent Plaintiffs have any standing to assert that claim, Google

20   has no idea what the basis for that remaining claim is. Plaintiffs would have to be much clearer

21   than they have been if they hope to state a claim. *See Park-Kim v. Daikin Indus., Ltd.*, 2016 WL

22   6744764, at *14 (C.D. Cal. Nov. 14, 2016) (plaintiffs must "specifically plead which alleged acts

23   were unfair"); *In re Actimmune Mktg. Litig.*, 2009 WL 3740648, at *14 (N.D. Cal. Nov. 6, 2009),

24   *aff'd*, 464 F. App'x 651 (9th Cir. 2011) (dismissing unfairness claim because plaintiffs failed to

25   identify "unfair, but non-fraudulent" conduct).

26       **H.**    **Most of Plaintiffs' Claims Are Preempted by the Copyright Act and/or**

27                **Superseded by California's Uniform Trade Secret Act (Counts 1-3, 6-9, 11).**

28         Plaintiffs do not contest the first question in copyright law's two-part preemption test—

whether their claims fall within the subject matter of copyright. Mot. 28. While they assert that their claims extend to "noncopyrightable information," Opp. 28, that is irrelevant. The content at issue "need not consist entirely of copyrightable material"; it "need only fit into one of the copyrightable categories in a broad sense." *Best Carpet*, 90 F.4th at 971; *accord Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 979 (9th Cir. 2011) ("the scope of the subject matter of copyright law is broader than the protections it affords."). The content Plaintiffs describe (albeit vaguely)—text, photographs, videos, and audio they posted online—falls within the statutory categories. *See* Mot. 28; 17 U.S.C. §§ 102(a)(1)-(7).

As to the second question—whether their claims protect qualitatively different interests than those protected under copyright law—Plaintiffs make no meaningful effort to distinguish the decisions by Judges Chhabria and Tigar (and others) holding that the Copyright Act preempts state-law claims premised on the alleged copying of material to train AI models. Mot. 29 (citing *Kadrey v. Meta Platforms, Inc.*, 2023 WL 8039640 (N.D. Cal. Nov. 20, 2023), *Doe 1 v. GitHub, Inc.*, 2024 WL 235217 (N.D. Cal. Jan. 22, 2024), and *Thomson Reuters Enters. Ctr. GMBH v. Ross Intel. Inc.*, 2023 WL 6210901, at *1 (D. Del. Sept. 25, 2023)). Plaintiffs argue that their state-law claims do not "solely" concern rights protected by the Copyright Act because they allege supposedly "extra elements." Opp. 28-29. But these supposed extra elements were also alleged in *Kadrey*, *GitHub*, and *Thomson Reuters*; the "mere presence of an additional element" does not matter unless, as pleaded, it "transform[s] the nature of the action" and makes it "qualitatively" different. *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1144 (9th Cir. 2006). Plaintiffs cannot show this. The crux of their claims is that Google "scraped"—*i.e.*, copied—their content without their permission. *See, e.g.*, FAC ¶¶ 6, 128, 148-167, 291-98. That is a copyright-based claim even when Plaintiffs try to dress it up with extraneous elements.

Plaintiffs' allegation of "misuse" of their content (Opp. 28-29)—apparently, in the training process—does not transform or rescue their claims. For one thing, Plaintiffs do not actually allege that Google trained any AI model on any particular content of theirs. Regardless, the plaintiffs in *Kadrey* (2023 WL 8039640, at *1-2), *GitHub* (2024 WL 235217, at *7), and *Thomson Reuters* (2023 WL 6210901, at *1), all alleged that their content was used to train AI models, and their

1   state law claims still were preempted. Here, as there, the Complaint does not allege how "training"

2   an AI model implicates interests relevant to the state law claims that are qualitatively different than

3   those addressed by copyright law. *See* Opp. 27 (arguing Google infringed Leovy's copyright by

4   "using the entirety of her materials to train Google's AI products"). Indeed, Plaintiffs consistently

5   focus on the "scraping" (*i.e.*, copying) of information. Their conversion, larceny, and trespass

6   claims, for example, allege that Google "stole the contents of the internet" by "tak[ing]/scrap[ing]

7   this information in order to train its AI Products" (FAC ¶ 576), that Google's alleged "theft and

8   misappropriation stems from its covert scraping of the internet" (*id.* ¶ 291), and that this "Web

9   Scraping Violated and Continues to Violate Plaintiffs' Property Interests" (*id.* at 74).

10      To the extent Plaintiffs allege that training implicates anything beyond copying, they point

11  to other interests protected by copyright law: the assertion that training "creates" a derivative work

12  whose outputs in turn are "necessarily derivative" of the copied training data, or the risk that a

13  trained AI model will repeat their content to others—*i.e.*, publicly display or distribute it. *See* FAC

14  ¶¶ 188, 190, 199 (alleging that training data can be repeated); *id.* ¶¶ 576, 639 (alleging Google

15  "stole the contents of the internet" which were "used to create its Products" like Bard, and "Bard's

16  outputs were necessarily derivative" of the copied training data); Compl. ¶ 359 (alleging "Bard

17  itself, is a derivative work"); Mot. 29 & nn.8-12. Just as in *Kadrey*, *GitHub*, and *Thomson Reuters*,

18  the Copyright Act preempts Plaintiffs' state-law claims based on allegations that their content was

19  unlawfully copied to train AI models.

20      Insofar as Plaintiffs seek to avoid copyright preemption by asserting "theft of private,

21  confidential information" (Opp. 29), those claims are barred by CUTSA. Under California law,

22  "common law claims premised on the wrongful taking of information that does not qualify as a

23  trade secret are also superseded, unless the plaintiff identifies some law which confers property

24  rights protecting the information." *Heller v. Cepia, L.L.C.*, 2012 WL 13572, at *7 (N.D. Cal. Jan.

25  4, 2012); *see also UCAR Tech. (USA) Inc. v. Li*, 2018 WL 2555429, at *4 (N.D. Cal. June 4, 2018)

26  ("Intangible information that does not fit the definition of a trade secret, and is not otherwise made

27  property by some provision of positive law, belongs to no one, and cannot be converted or

28  stolen."). Plaintiffs respond that their claims hinge on the supposed misappropriation of

1  "confidential" "consumer" information, rather than "trade secrets" or "confidential business and

2  proprietary information." Opp. 29. But courts have applied CUTSA preemption to claims

3  involving consumer information. *See, e.g.*, *Farmers Ins. Exch. v. Steele Ins. Agency, Inc*., 2013

4  WL 3872950, at *1, *9–10, *14-15 (E.D. Cal. July 25, 2013) (CUTSA superseded alleged taking

5  of "Confidential Policyholder Information," including names, addresses, phone numbers, and

6  social security numbers). And Plaintiffs "cannot 'identify any property right' in [their] confidential

7  information 'outside of trade secrets law,' because no such property right exists under California

8  law." *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011).

9      **I.**    **Plaintiffs Fail to State a Claim for Copyright Infringement (Count 12).**

10      Plaintiffs have not plausibly alleged that the output of Google's Bard chatbot infringes the

11  only copyrighted work at issue, Leovy's *Ghettoside*. *See* Mot. 30. Both this Court and Judge

12  Chhabria have rejected the same, now well-worn argument Leovy makes here: that an AI model's

13  output necessarily infringes the copyright of all the works upon which the model was trained.

14  *Tremblay*, 2024 WL 557720, at *3; *Kadrey*, 2023 WL 8039640, at *1. Plaintiffs assert that this

15  case is different because they allege Bard can provide "summar[ies]." Opp. 27. But the *Tremblay*

16  plaintiffs did that and more, alleging the AI model "generated accurate summaries" and attaching

17  outputs to their complaint. *See* 2024 WL 557720, at *1. Because Plaintiffs have not "allege[d] that

18  any particular output is substantially similar" to protected expression in *Ghettoside*, they have

19  failed to state a claim as to output. *See id.* at *3.

20                                 **CONCLUSION**

21      For these reasons, Google requests dismissal of the Amended Complaint.

22

23                              Respectfully submitted,

24  Dated:  April 5, 2024             WILSON SONSINI GOODRICH & ROSATI
                             Professional Corporation

25

26                           By:  */s/ David H. Kramer*
                             David H. Kramer

27                               Maura L. Rees
                             Eric P. Tuttle

28                           *Counsel for Defendant*
                         Google LLC