DAVID H. KRAMER, SBN 168452
Email: dkramer@wsgr.com
MAURA L. REES, SBN 191698
Email: mrees@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300

ERIC P. TUTTLE, SBN 248440
Email: eric.tuttle@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone: (206) 883-2500

*Counsel for Defendants*
GOOGLE LLC AND ALPHABET INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| *In re Google Generative AI Copyright Litigation* | Master File Case No.: 5:23-cv-03440-EKL<br>Consolidated with Case No.: 5:24-cv-02531-EKL<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEREOF**<br><br>**Filed Concurrently Herewith:**<br>Request for Judicial Notice and Consideration of Materials Incorporated by Reference<br><br>Date:        April 23, 2025<br>Time:        10:00 a.m.<br>Courtroom: 7<br>Judge:       Hon. Eumi K. Lee |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ........................................................................................ 1

STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED ........................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

PLAINTIFFS' ALLEGATIONS ................................................................................................. 3

ARGUMENT ............................................................................................................................... 6

    I.       Plaintiff Andersen Failed To Allege Registration Of Her Allegedly Infringed Images. ................................................................................................ 6

    II.     The Complaint Improperly Alleges Infringement Of Unidentified Works ........... 10

    III.    Plaintiffs Fail To Allege Entitlement To Injunctive Relief. .................................. 13

    IV.    The Vicarious Infringement Claim Against Alphabet Should Be Dismissed. ....... 15

    V.     Plaintiffs' Complaint Violates Rule 8's Plain Statement Requirement. ............... 21

CONCLUSION .......................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ambrosetti v. Ore. Cath. Press*,
  458 F. Supp. 3d 1013 (N.D. Ind. 2020)...................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................................17

*Banff Ltd. v. Ltd., Inc.*,
  869 F. Supp. 1103 (S.D.N.Y. 1994) ......................................................16, 17, 18

*Becton v. Cytek Bioscis. Inc.*,
  2020 WL 1877707 (N.D. Cal. April 15, 2020) ......................................................21

*Bender v. LG Elecs. U.S.A., Inc.*,
  2010 WL 889541 (N.D. Cal. Mar. 11, 2010) ........................................................21

*Blain v. Liberty Mut. Fire Ins. Co.*,
  2023 WL 3612390 (S.D. Cal. May 22, 2023) ........................................................14

*Brunson v. Cook*,
  2023 WL 2668498 (M.D. Tenn. Mar. 28, 2023)......................................................9

*Cole v. John Wiley & Sons, Inc.*,
  2012 WL 3133520 (S.D.N.Y. Aug. 1, 2012) ........................................................12

*Cousart v. OpenAI LP*,
  2024 WL 3282522 (N.D. Cal. May 24, 2024) ........................................................5

*Dauman v. Hallmark Card, Inc.*,
  1998 WL 54633 (S.D.N.Y. Feb. 9, 1998) ......................................16, 17, 18, 19

*DBW Partners, LLC v. Bloomberg, L.P.*,
  2019 WL 5892489 (D.D.C. Nov. 12, 2019)..........................................................11

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) ...........................................................................................13

*Ellison v. Robertson*,
  357 F.3d 1072 (9th Cir. 2004)..............................................................................19

*Epikhin v. Game Insight N. Am.*,
  145 F. Supp. 3d 896 (N.D. Cal. 2015) ...................................................................6

*Erickson Prods., Inc. v. Kast*,
  921 F.3d 822 (9th Cir. 2019)................................................................................20

*Flava Works, Inc. v. Clavio*,
  2012 WL 2459146 (N.D. Ill. June 27, 2012) ........................................................11

*Football Ass'n Premier League Ltd. v. YouTube, Inc.*,
  297 F.R.D. 64 (S.D.N.Y. 2013)............................................................................10

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com LLC*,
    586 U.S. 296 (2019) ................................................................................ 6, 11

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
    772 F.2d 505 (9th Cir. 1985) ........................................................................ 16

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*,
    886 F.2d 1545 (9th Cir. 1989) ...................................................................... 18

*Hubbard v. Google LLC*,
    2024 WL 3302066 (N.D. Cal. July 1, 2024) ................................................ 14

*Hunter Killer Prods., Inc. v. Zarlish*,
    2020 WL 3980117 (D. Haw. June 15, 2020) ............................................... 14

*Impinj, Inc. v. NXP USA, Inc.*,
    2023 WL 6955477 (N.D. Cal. Oct. 3, 2023) ................................................ 13

*In re "Santa Barbara Like It Is Today" Copyright Infringement Litig.*,
    94 F.R.D. 105 (D. Nev. 1982) ...................................................................... 21

*Kifle v. YouTube LLC*,
    2021 WL 1530942 (N.D. Cal. Apr. 19, 2021) ............................................. 11

*Kodadek v. MTV Networks, Inc.*,
    152 F.3d 1209 (9th Cir. 1998) ........................................................................ 6

*Kremer v. Alphabet Inc.*,
    2024 WL 923900 (M.D. Tenn. Mar. 4, 2024) ............................................. 21

*Lambertini v. Fain*,
    2014 WL 4659266 (E.D.N.Y. Sept. 17, 2014) ............................................ 11

*Lancaster v. Alphabet Inc.*,
    2016 WL 3648608 (N.D. Cal. July 8, 2016) ................................................ 21

*Livingston v. Morgan*,
    2006 WL 8459602 (N.D. Cal. July 31, 2006) .............................................. 11

*Logan v. Meta Platforms, Inc.*,
    636 F. Supp. 3d 1052 (N.D. Cal. 2022) ......................................................... 7

*Manigault-Johnson v. Google, LLC*,
    2019 WL 3006646 (D.S.C. Mar. 31, 2019) ................................................. 21

*Mayimba Music, Inc. v. Sony Corp. of Am.*,
    2014 WL 5334698 (S.D.N.Y. Aug. 19, 2014) ............................................. 16

*McHenry v. Renne*,
    84 F.3d 1172 (9th Cir. 1996) ................................................................. 21, 23

*Mertik Maxitrol GmbH & Co. KG v. Honeywell Techs. SARL*,
    2011 WL 1454067 (E.D. Mich. Apr. 13, 2011) .......................................... 18

*MGM Studios, Inc. v. Grokster, Ltd.*,
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) ....................................................... 14

*Morgan v. Hawthorne Homes, Inc.*,
    2009 WL 1010476 (W.D. Pa. Apr. 14, 2009) ............................................................... 18

*Munaf v. Geren*,
    553 U.S. 674 (2008) ............................................................................................... 13

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ............................................................................................... 13

*Paul Rudolph Found. v. Paul Rudolph Heritage Found.*,
    2022 WL 4109723 (S.D.N.Y. Sept. 8, 2022) ............................................................... 10

*Pegasus Imaging Corp. v. Northrop Grumman Corp.*,
    2008 WL 5099691 (M.D. Fla. Nov. 24, 2008) ........................................................ 17, 18

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ................................................................................. 16

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) .......................................................... 10, 11, 19, 20, 23

*Perfect 10, Inc. v. Google, Inc.*,
    653 F.3d 976 (9th Cir. 2011) ................................................................................. 13

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ................................................................................. 15

*Philips v. Ford Motor Co.*,
    726 F. App'x 608 (9th Cir. 2018) ........................................................................... 13

*Plakhova v. Hood*,
    2017 WL 10592315 (C.D. Cal. June 20, 2017) ........................................................... 11

*Premier Tracks, LLC v. Fox Broad. Co.*,
    2012 WL 13012714 (C.D. Cal. Dec. 18, 2012) ........................................................... 11

*Rentmeester v. Nike, Inc.*,
    883 F.3d 1111 (9th Cir. 2018) ............................................................................... 11

*Schneider v. YouTube, LLC*,
    674 F. Supp. 3d 704 (N.D. Cal. 2023) ............................................................... 10, 12

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ................................................................................. 13

*Stross v. Meta Platforms, Inc.*,
    2022 WL 1843129 (C.D. Cal. Apr. 6, 2022) ............................................................... 20

*Synopsys, Inc. v. ATopTech, Inc.*,
    2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ........................................................... 21

*TD Bank N.A. v. Hill*,
    928 F.3d 259 (3d Cir. 2019) ................................................................................... 14

*UAB "Planner 5D" v. Facebook, Inc.*,
    2020 WL 4260733 (N.D. Cal. July 24, 2020) ............................................................... 7

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
    595 U.S. 178 (2022) ............................................................................. 6, 9

*United States v. Bestfoods*,
    524 U.S. 51 (1998) .................................................................................. 16

*Ward v. Mitchell*,
    2013 WL 1758840 (N.D. Cal. Apr. 24, 2013) ......................................... 7

*Wolo Mfg. Corp. v. ABC Corp.*,
    349 F. Supp. 3d 176 (E.D.N.Y. 2018) ..................................................... 11

**STATUTES**

17 U.S.C. § 101 ............................................................................................. 7

17 U.S.C. § 103 ............................................................................................. 7

17 U.S.C. § 411 ................................................................................... 6, 9, 11

17 U.S.C. § 412 ............................................................................... 8, 12, 15

17 U.S.C. § 502 ........................................................................................... 13

17 U.S.C. § 503 ........................................................................................... 13

**RULES AND REGULATIONS**

89 Fed. Reg. 58,991 (July 22, 2024) ............................................................ 8

Fed. R. Civ. P. 8 ......................................................................................... 21

Fed. R. Civ. P. 9 ......................................................................................... 23

**OTHER AUTHORITIES**

Nimmer on Copyright § 12.04 (2024) ......................................................... 16

*Neman Bros. & Assoc., Inc. v. Interfocus, Inc.*,
    No. 2:20-cv-11181-CAS-JPR, ECF No. 85 (C.D. Cal. Apr. 13, 2022) ............... 8

*PalatiumCare, Inc. v. Notify LLC & Lucas Narbatovics*,
    No. 2:22-cv-00217-JPS, ECF No. 101 (E.D. Wis. July 11, 2023) ................. 8

Paul Goldstein, *Goldstein on Copyright* § 16.1 (3d ed., 2023-2 Supp.) ....................... 10

United States Copyright Office, *Compendium of U.S. Copyright Office Practices*
    (3rd ed. Jan. 28, 2021) ......................................................................... 4, 7, 8

1 **NOTICE OF MOTION AND MOTION**

2    **PLEASE TAKE NOTICE** that on April 23, 2025, at 10:00 a.m., Defendants Google LLC

3 and Alphabet Inc. will move under Federal Rules of Civil Procedure 8 and 12(b)(6) for an order

4 dismissing Plaintiffs' Consolidated Amended Complaint (ECF No. 91 or "CAC").

5    **STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED**

6    Google respectfully requests that the Court dismiss (1) Plaintiff Sarah Andersen's direct

7 and vicarious copyright infringement claims for failure to plead valid copyright registrations

8 covering the allegedly infringed images; (2) Plaintiffs' direct and vicarious copyright infringement

9 claims as to works not identified in the Consolidated Amended Complaint; (3) Plaintiffs' request

10 for injunctive relief because the Complaint fails to allege irreparable harm or inadequate remedies

11 at law; (4) Plaintiffs' claim that Alphabet is vicariously liable for the allegedly infringing activity

12 of its corporate subsidiary, Google; and (5) Plaintiffs' Complaint insofar as it violates Rule 8.

13    **MEMORANDUM OF POINTS AND AUTHORITIES**

14    This case concerns artificial intelligence ("AI") models designed to enhance human

15 creativity. These models are software trained to identify relationships and patterns in data and

16 generate new content, such as text and images, based on that training. Some models are trained on

17 vast text repositories, enabling the models to predict the sequence of words best suited to answer a

18 question, solve a math problem, or create original stories. Other models are trained on hundreds of

19 millions or even billions of publicly available images to recognize the characteristics and

20 dimensions of the people, places, and things depicted in them, and, in turn, generate new images in

21 response to users' prompts.

22    The named plaintiffs in this consolidated putative class action are visual artists and authors

23 who assert that their copyrights were infringed when certain visual works they created were

24 allegedly copied and used to train Imagen, a Google AI model capable of generating images based

25 on text inputs, and when certain written works were used to train Gemini, a Google AI model

26 capable of generating text. CAC ¶¶ 27, 32, 45, 51, 64, 72, 78, 86, 95, 101. The Complaint also

27 references virtually every version of every model, service, and product Google has ever

28 announced (*e.g.*, *id.* ¶ 105), although Plaintiffs never elucidate how these other models, services,

1  and products may or may not relate to their claims.

2  One of the fundamental issues in this lawsuit will be whether copyright law bars the use of

3  publicly accessible content to enable generative AI models to learn the ideas and facts that

4  constitute humanity's collective knowledge. But before these questions of copyright law are

5  joined, Plaintiffs must clear several threshold hurdles and plead facts sufficient to state a copyright

6  claim. Plaintiffs have repeatedly failed to do so, and their most recent Complaint is subject to

7  dismissal on at least five grounds.

8  First, to sue for copyright infringement, a plaintiff must plausibly plead that she registered

9  her allegedly infringed copyrighted work with the United States Copyright Office before filing

10  suit. But Plaintiff Sarah Andersen has failed to do so with respect to all of her asserted works.

11  Andersen cites five registrations that she claims cover the works she has put at issue. But those

12  registrations are for compilations of previously published art and anything newly added; they

13  expressly exclude any works of art that were previously published. At least some of the allegedly

14  infringed images at issue in this case indisputably were previously published before registration,

15  and thus are not covered by the registrations. Absent some other, valid registration for the works at

16  issue, Andersen's claims cannot proceed.

17  Second, to state a plausible infringement claim and provide fair notice to the defendant, a

18  plaintiff must specifically identify the copyrighted works allegedly infringed. Plaintiffs seek to

19  proceed based on open-ended infringement allegations about "at least" certain allegedly infringed

20  works. *See, e.g.*, CAC ¶ 18. That is improper as a matter of law. Plaintiffs' infringement claims for

21  any unnamed works should be dismissed.

22  Third, as in prior complaints, Plaintiffs demand injunctive relief but fail to allege the basic

23  requisites for obtaining such relief, *i.e.*, irreparable harm and lack of an adequate remedy at law.

24  Indeed, apart from conclusory assertions, CAC ¶ 181, the only alleged harms are "monetary" and

25  do not support an injunction, *e.g.*, CAC ¶ 29.

26  Fourth, a claim for vicarious copyright infringement requires pleading that the defendant

27  had the right and ability to control the infringing activity and obtained a direct financial benefit

28  from it. In prior complaints, Plaintiffs had either abandoned any vicarious infringement claim,

1   ECF No. 13 (voluntary dismissal of Google's parent, Alphabet), or simply asserted it based on the

2   mere fact of a parent-subsidiary relationship between Alphabet and Google. Plaintiffs'

3   Consolidated Amended Complaint resurrects the claim and adds additional allegations, but they

4   establish nothing more than an ordinary parent-subsidiary relationship, which does not render

5   Alphabet liable for Google's supposed infringement under basic principles of corporate and

6   copyright law.

7       Finally, like the three prior *Leovy* complaints—one of which the Court dismissed on Rule 8

8   grounds, ECF No. 46 at 1—the current Complaint violates Rule 8's plain statement requirement. It

9   fails to apprise Defendants of which "products" Plaintiffs accuse of infringement, and the basis for

10  those accusations. It also contains incendiary and apparently irrelevant accusations of conspiracy

11  and fraud. *See* CAC ¶¶ 158, 161, 162. This flouts Rule 8's requirement of a short and plain

12  statement that defines the metes and bounds of the case and provides notice of what Defendants

13  must investigate and answer. Indeed, Plaintiffs have propounded discovery requests about ***all***

14  generative AI models ever created, plus those in development by Google. Defendants therefore

15  again ask the Court to dismiss the Complaint and give Plaintiffs one final chance to provide the

16  concise pleading Rule 8 contemplates.

17                                  **PLAINTIFFS' ALLEGATIONS**

18      ***Defendants.*** Google is a leading provider of internet-related services, including search,

19  advertising, and cloud computing. *See* CAC ¶ 3. Google is developing generative AI models that

20  expand the bounds of human productivity and creativity. CAC ¶ 114.

21      Alphabet is Google's corporate parent. CAC ¶ 104. It is a stock holding company with no

22  operations of its own. Declaration of Qifan Huang in Support of Defendants' Request for Judicial

23  Notice and Consideration of Materials Incorporated by Reference ("Huang Decl.") Ex. 7

24  (Alphabet Inc., Form 10-K (Jan. 30, 2024)), at 4 (cited at CAC ¶ 107 n.13).

25      ***Plaintiffs.*** Plaintiffs are 10 "visual artists and authors" who purport to own U.S. registered

26  copyrights in various visual and literary works. CAC ¶¶ 1, 17-103. Their Complaint includes 31

27  asserted copyright registrations, ECF No. 91-1 ("CAC Ex. A"), and, for most of the plaintiffs

28  claiming copyrights in visual works, a list of images Defendants allegedly infringed, ECF No. 91-

2 ("CAC Ex. B").

***Plaintiffs' Pleading History.*** This is the fifth complaint presented by Plaintiffs in these consolidated cases, *see* ECF No. 1, 28, 47, 91; *Zhang v. Google LLC*, No. 5:24-cv-02531-EKL (N.D. Cal. Apr. 26, 2024), ECF No. 1, and the deficiencies Defendants highlight here have been present throughout. This Court ordered the parties to meet and confer over Plaintiffs' Consolidated Amended Complaint, and specifically directed Plaintiffs to "make substantial good-faith efforts to address the issues Google raised at the conference and in prior motions to dismiss." ECF No. 77 at 2. Unfortunately, that process yielded little change or improvement in Plaintiffs' relevant allegations.

Pre-Suit Registration. Google's prior motion to dismiss highlighted how Plaintiffs failed to properly allege pre-suit registration of the works asserted by Plaintiffs Sarah Andersen and Hope Larson. *See Zhang*, ECF No. 24 at 8-12. After Google showed that the allegedly infringed image from Larson's work *Chiggers* was never registered with the United States Copyright Office, *id.* at 12, Plaintiffs abandoned any claim based on that work. But the Complaint does nothing to address the defective registration allegations as to Andersen's works. Just as before, Andersen asserts registrations for compilations containing previously published images, *see* Compl., Ex. A at 8-12, but the registrations for compilations cannot cover material "previously published," United States Copyright Office, *Compendium of U.S. Copyright Office Practices* (3rd ed. Jan. 28, 2021) ("Compendium") § 618.6. Andersen added no allegations even attempting to show that the images she asserts were themselves separately registered.

Identification of Works. Google previously explained that pleading an infringement claim requires specific identification of the allegedly infringed copyrighted works and that Plaintiffs' attempt to assert open-ended infringement claims by identifying only "representative" works was improper. *Zhang*, ECF No. 24 at 6-8. Undeterred, Plaintiffs' Consolidated Amended Complaint identifies some works, but alleges that Defendants infringed "at least" these works, leaving open the possibility that Plaintiffs intend the Complaint to cover other, unidentified works. CAC ¶¶ 18, 31, 49, 68, 76, 90, 99.

Injunctive Relief. While the *Zhang* plaintiffs never before sought injunctive relief, Leovy

1    previously demanded a sweeping injunction, including an order that this Court sit as AI overseer

2    for Leovy's so-called "Accountability Protocols." ECF No. 47 ¶ 100. Google's motion to dismiss

3    pointed out the absence of factual allegations required to support equitable relief, *e.g.*, how Leovy

4    would supposedly suffer irreparable injury absent an injunction, and why monetary relief would

5    be an inadequate remedy. Plaintiffs' Consolidated Amended Complaint abandons any request for

6    Accountability Protocols, but still seeks an indeterminate injunction, *see* CAC ¶ 196 (requesting

7    "injunctive relief as detailed above" without ever describing the relief). Plaintiffs offer nothing

8    more than conclusory assertions of "irreparable injury," *id.* ¶ 181, and the actual harms they plead,

9    if they exist, would be compensable through monetary damages, *e.g.*, *id.* ¶ 29.

10           <u>Vicarious Liability.</u> Plaintiffs in the *Leovy* action initially asserted a claim for vicarious

11    liability against Alphabet, Google's parent, ECF No. 1 ¶¶ 368-76, but quickly abandoned it when

12    Google explained the claim was both legally baseless and also unnecessary given Google's own

13    financial resources, ECF No. 13 (voluntary dismissal of Alphabet Inc.). When the *Zhang* Plaintiffs

14    tried the same tack in their complaint, *Zhang*, ECF No. 1 ¶¶ 57-61, Google moved to dismiss,

15    explaining that parent-subsidiary relationships alone cannot establish vicarious liability under

16    bedrock legal principles, *Zhang*, ECF No. 24 at 13-15. Plaintiffs' Consolidated Amended

17    Complaint nevertheless maintains the vicarious infringement claim, adding a handful of additional

18    allegations about Alphabet, CAC ¶¶ 106-10, 182-95. But none of the new material is actually

19    directed toward the standard for establishing a parent company's vicarious liability for a

20    subsidiary's infringement: a substantial and continuous connection to the subsidiary's specific acts

21    of alleged infringement, and a right and ability to control, and derivation of financial benefit from,

22    the subsidiary's alleged infringement.

23           <u>Rule 8.</u> Plaintiffs in many of the cases against generative AI providers have used their

24    pleadings as polemics against generative AI. This case has been no exception. On Google's

25    motion, Judge Martínez-Olguín dismissed the second *Leovy* complaint as violative of Rule 8 in the

26    main, ordering Plaintiffs to file a "streamlined" complaint with a "crystallize[d]" theory of the

27    case. ECF No. 46 at 1 (dismissing complaint, citing *Cousart v. OpenAI LP*, 2024 WL 3282522, at

28    *1 (N.D. Cal. May 24, 2024)); *see also Cousart*, 2024 WL 3282522, at *1 (dismissing complaint

1    on Rule 8 grounds; "the plaintiffs need to understand that they are in a court of law, not a town

2    hall meeting."). Notwithstanding that Order, and Rule 8's directive to provide a short and plain

3    statement of the claim showing the pleader is entitled to relief, Plaintiffs' latest Complaint drops in

4    unsupported, seemingly irrelevant charges of conspiracy and fraud. CAC ¶¶ 111-12, 158-62. And

5    in one important respect, the Complaint is even more confusing than before: it has expanded

6    seemingly to implicate all "versions and iterations" of virtually every product, service, and AI

7    model Google has ever announced. *See* CAC ¶¶ 3, 105. Plaintiffs offer no factual allegations to

8    support that expansion, and Rule 8 does not countenance this kitchen-sink approach. Plaintiffs'

9    specific allegations of infringement are directed to only two generative AI models—Gemini and

10   Imagen. *See* CAC ¶¶ 27, 32, 45, 51, 64, 72, 78, 86, 95, 101. The Court should require Plaintiffs to

11   make clear that that is what this case is about so that Defendants have fair notice of what they

12   must actually defend.

### ARGUMENT

13

14   **I.      Plaintiff Andersen Failed To Allege Registration Of Her Allegedly Infringed Images.**

15       Defendants' prior motion to dismiss in *Zhang* identified Sarah Andersen's failure to

16   adequately plead that her copyright registrations cover the images that Google purportedly

17   infringed. *Zhang*, ECF No. 24 at 8-10. The Complaint does nothing to cure these issues, and the

18   Court should dismiss Andersen's claims with prejudice.

19       To state a claim for copyright infringement, a complaint must "'plausibly plead on its face'

20   copyright registrations covering the works that the defendant allegedly infringed." *UAB "Planner*

21   *5D" v. Facebook, Inc.*, 2020 WL 4260733, at *2 (N.D. Cal. July 24, 2020) (citation omitted). A

22   valid registration is a "prerequisite for bringing a 'civil action for infringement' of the copyrighted

23   work." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 181 (2022) (quoting 17

24   U.S.C. § 411(a)); *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com LLC*, 586 U.S. 296, 296-97

25   (2019) (same). If a work is not covered by a valid registration, a lawsuit for infringement of that

26   work is "foreclosed." *Epikhin v. Game Insight N. Am.*, 145 F. Supp. 3d 896, 902 (N.D. Cal. 2015)

27   (quoting *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998)).

28

Pre-suit registration covering the works at issue must be pleaded by the complaint, and failure to plead registration of the allegedly infringed material requires dismissal. *See UAB "Planner5D"*, 2020 WL 4260733, at \*2; *Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052, 1059-60 (N.D. Cal. 2022) (dismissing claim for failure to allege "that the photos at issue are registered"); *Ambrosetti v. Ore. Cath. Press*, 458 F. Supp. 3d 1013, 1018-19 (N.D. Ind. 2020) (dismissing infringement claim because unregistered work at issue "was published prior to its inclusion" in a subsequent registered work and thus not covered by the registration); *Ward v. Mitchell*, 2013 WL 1758840, at \*4 (N.D. Cal. Apr. 24, 2013) (dismissing claim for failure to allege registration of the copyrighted works).

Andersen is a cartoonist and illustrator for "Sarah's Scribbles," a webcomic that she makes freely available to the world via her website and various social media platforms, including X (formerly known as Twitter). *See* CAC ¶ 30; CAC Ex. A at 8-12; https://sarahcandersen.com/; https://x.com/SarahCAndersen/. Over the years, she has also published print books and calendars compiling her previously-published webcomics. *See* CAC Ex. A at 8-12. The Complaint identifies registrations covering five such compilations and contends that Defendants infringed six images from them. *Id.* at 8-12 (registrations); CAC Ex. B at 2-7 (allegedly infringed images). But Andersen has failed to plead facts showing that these five registrations cover the asserted images.

All five registrations are for compilations, *see* CAC Ex. A at 8-12, which are "formed by the collection and assembling of preexisting materials." 17 U.S.C. § 101. Registration of a compilation "extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work." 17 U.S.C. § 103(b). As the Copyright Office has repeatedly explained, a compilation registration "does not cover any preexisting material or data that has been previously published." United States Copyright Office, *Compendium of U.S. Copyright Office Practices* (3rd ed. Jan. 28, 2021) ("Compendium") § 618.6; *see also* Compendium § 508.2. That "longstanding practice of precluding previously published material" remains applicable "even if the author of the collective work ... is the author of the previously published material and owns all of the rights in the material." Compendium § 1008.2; *see also* Compendium § 618.7(B)(2) (registration of collective works may cover underlying contributions

1    by the same author "only if those contributions have not been previously published")[1]. And

2    identification of unclaimable material such as previously published works "is essential to defining

3    the claim that is being registered." Compendium § 621.1. The Register of Copyrights has

4    reaffirmed these positions in court submissions around the country and in its own rulemaking

5    processes. *See, e.g.*, *PalatiumCare, Inc. v. Notify LLC & Lucas Narbatovics*, No. 2:22-cv-00217-

6    JPS, ECF No. 101, at 9 (E.D. Wis. July 11, 2023) ("a compilation or derivative work registration

7    will not cover any previously published, previously registered, or public domain material");

8    *Neman Bros. & Assoc., Inc. v. Interfocus, Inc.*, No. 2:20-cv-11181-CAS-JPR, ECF No. 85, at 9

9    (C.D. Cal. Apr. 13, 2022) ("Whether owned by another person or owned by the applicant, material

10   that was previously published or previously registered is considered 'unclaimable'"); 89 Fed. Reg.

11   58,991, 58,995 (July 22, 2024) ("Consistent with any collective work registration, any [works]

12   included in the collective work that were previously published … are automatically excluded from

13   the claim").

14        Three of Andersen's five registrations expressly disclose the presence of previously-

15   published (and thus unclaimable) material. *See* CAC Ex. A at 8-9, 11 (disclosing, as "[p]re-

16   existing [m]aterial," "previously published art with accompanying text," "[s]ome cartoons [that]

17   previously appeared on author's website," and "[s]ome cartoons [that were] previously published

18   online"). Consistent with that disclosure, the Certificates of Registration for these three copyrights

19   explicitly note that these previously-published materials are "excluded from this claim." Huang

20   Decl. Exs. 1, 2, 3.

21        Andersen's other two registrations fail to disclose that the compilations being registered

22   contain previously-published, unclaimable artwork. But they do. According to Andersen, two of

23   the images at issue, CAC Ex. B at 4-5 (Andersen training images 3 and 4), were registered as part

24   of the "Big Mushy Happy Lump" collection published on December 12, 2016, *see* CAC Ex. A at

25   

26   [1] This practice "clarifies the date of publication for a particular work, which may assist the
     courts in assessing the copyright owner's eligibility for statutory damages and attorney's fees in

27   an infringement action." Compendium § 1008.2; *see also* 17 U.S.C. § 412 (no statutory damages
     or fees for infringements commenced after first publication and before registration, unless

28   registration is made within three months of first publication).

10. But Andersen previously published these two individual images on X. *See* Huang Decl. Exs. 4-5 (showing publication of these images on X on December 23, 2015 and February 3, 2016, respectively). Similarly, Andersen published the sole remaining image at issue, CAC Ex. B at 7 (Andersen training image 6)—which she claimed was registered as part of the "Oddball" collection published on December 7, 2021 (*see* CAC Ex. A at 12)—on X, before registration. *See* Huang Decl. Ex. 6 (showing publication of this image on X on October 24, 2020). Andersen's posting her images on X constituted publication under the Copyright Act both because the images could "be viewed and shared by the public" and because, under X's terms of service, her posting granted X "permi[ssion] to copy the work."" *Brunson v. Cook*, 2023 WL 2668498, at *13-14 (M.D. Tenn. Mar. 28, 2023) (concluding that "when Plaintiff made Plaintiff's work available on YouTube, Instagram, and Twitter, she published her work within the meaning of the Copyright Act"). Because the three images at issue that Andersen posted on X were published before the compilations, they are not covered by the registrations for the compilations. Andersen's failure to disclose to the Copyright Office her inclusion of unclaimable material in these two registrations may ultimately require referral to the Register of Copyrights and invalidation of the registrations under 17 U.S.C. § 411(b). *See Unicolors*, 595 U.S. at 181[2]. Regardless, for now, Andersen has failed to plausibly plead that these or *any* registrations cover the allegedly infringed images she has chosen to assert in this case.

In sum, at least three of Andersen's six allegedly infringed images (CAC Ex. B at 4-5, 7 (Andersen training images 3, 4, and 6)) were previously published online before their inclusion in

---

[2] Plaintiff Fink relies on a registration for *Chester 5000 XYV, Book 2: Isabelle & George HC*, which she told the Copyright Office was published in 2016. *See* CAC Ex. A at 19. But Fink appears to have started publishing the work in daily webcomic form in 2011, more than five years earlier. *See* Jess Fink, CHESTER BOOK TWO: Isabelle and George: START READING HERE, Chester 5000 XYV (Jan. 1, 2011), https://jessfink.com/Chester5000XYV/?p=332. Similarly, Almond relies on a registration for *The evil B. B. Chaw and other stories*, which does not disclose the existence of any previously published material. *See* CAC Ex. A at 4. But the work's copyright page states that the stories had all been previously published. *See* https://www.google.com/books/edition/The_Evil_B_B_Chow_and_Other_Stories/Bo-wEGFb0DIC?hl=en&gbpv=1&pg=PP7&printsec=frontcover. Here too, there are serious questions as to whether Plaintiffs' registrations cover the material that Plaintiffs contend Google infringed.

1   the print works Andersen later registered. *See* Huang Decl. ¶¶ 5-7; Huang Decl. Exs. 4, 5, 6. These

2   images are thus not covered by the registrations for the subsequent print works. The remaining

3   three images (CAC Ex. B at 2-3, 6) come from compilations whose registrations expressly note

4   the exclusion of unclaimable material, Huang Decl. Exs. 1, 2, 3. Yet the Complaint—like the prior

5   *Zhang* Complaint—relies on the summary exhibits, and never alleges that these images are new,

6   claimable material actually covered by the registrations at issue. *See* CAC Ex. A at 8-9, 11; Ex. B

7   at 2-3, 6; *compare* CAC ¶¶ 30-31 *with Zhang*, ECF No. 1 ¶¶ 15-16 (containing similar conclusory

8   allegations about ownership and registration). That cannot serve as a plausible allegation that

9   Andersen validly registered the allegedly infringed images, given the obvious inclusion of

10  unclaimable material in the registrations. And though Anderson has known of this problem since

11  Defendants raised it almost seven months ago, she apparently has not obtained separate

12  registrations for the previously-published material and has made no attempt to plead additional

13  facts in the Complaint to solve it.

14      Because the Complaint fails to plausibly plead valid registrations covering any of

15  Andersen's allegedly infringed images, the Court should dismiss Andersen's direct and vicarious

16  infringement claims with prejudice.

17  **II.    The Complaint Improperly Alleges Infringement Of Unidentified Works.**

18      A copyright infringement lawsuit is "'a specific lawsuit by a specific plaintiff against a

19  specific defendant about specific copyrighted [works].'" *Perfect 10, Inc. v. Giganews, Inc.*, 847

20  F.3d 657, 673 (9th Cir. 2017) (citation omitted). It is not a "'lawsuit against copyright

21  infringement in general.'" *Id.* (citation omitted). Indeed, "[e]very copyright claim turns 'upon facts

22  which are particular to that single claim of infringement, and separate from all the other claims.'"

23  *Schneider v. YouTube, LLC*, 674 F. Supp. 3d 704, 717 (N.D. Cal. 2023) (quoting *Football Ass'n*

24  *Premier League Ltd. v. YouTube, Inc.*, 297 F.R.D. 64, 66 (S.D.N.Y. 2013)).

25      Accordingly, "[w]hen pleading a claim of copyright infringement a plaintiff must plead

26  which specific original works are the subject of the copyright claim." *Paul Rudolph Found. v.*

27  *Paul Rudolph Heritage Found.*, 2022 WL 4109723, at *7 (S.D.N.Y. Sept. 8, 2022); *accord* Paul

28  Goldstein, *Goldstein on Copyright* § 16.1 (3d ed., 2023-2 Supp.) ("[A] complaint must specifically

identify the works that the plaintiff claims the defendant has infringed."). Courts have routinely required plaintiffs to name all allegedly infringed works in their complaints. *See, e.g.*, *Wolo Mfg. Corp. v. ABC Corp.*, 349 F. Supp. 3d 176, 202 (E.D.N.Y. 2018) (dismissing copyright claims with respect to "unspecified 'Other Works'"); *Premier Tracks, LLC v. Fox Broad. Co.*, 2012 WL 13012714, at *8 (C.D. Cal. Dec. 18, 2012) (Plaintiffs cannot maintain claims for works "yet to be identified"); *Lambertini v. Fain*, 2014 WL 4659266, at *3 (E.D.N.Y. Sept. 17, 2014) ("Plaintiff has the burden of identifying the specific works at issue in her pleading."); *DBW Partners, LLC v. Bloomberg, L.P.*, 2019 WL 5892489, at *3 (D.D.C. Nov. 12, 2019) (dismissing copyright infringement claim; holding that plaintiff could not plausibly allege defendant "is liable for copyright infringement" without "first identify[ing] the copyrighted works that form the basis of its claims").

There is an obvious reason for requiring copyright plaintiffs to identify each work at issue: it is necessary to state a plausible claim. A claim for infringement requires a plaintiff to plausibly allege that "he owns a valid copyright [in the asserted work]" and "that [the defendant] copied protected aspects of the [work's] expression." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116-17 (9th Cir. 2018). A plaintiff must also "plausibly allege[] that he obtained a valid copyright registration for [the work] before initiating th[e] lawsuit." *Kifle v. YouTube LLC*, 2021 WL 1530942, at *6 (N.D. Cal. Apr. 19, 2021); *accord Fourth Est. Pub. Benefit Corp.*, 586 U.S. at 296-97 (under 17 U.S.C. § 411(a), registration is a "requirement that the owner must satisfy before suing"). Without naming the specific works at issue, a plaintiff cannot plausibly allege ownership, infringement, or pre-suit registration. *See, e.g.*, *Plakhova v. Hood*, 2017 WL 10592315, at *2 (C.D. Cal. June 20, 2017) ("Without specifically identifying the exact works and the instances of infringement, Plakhova cannot sufficiently allege direct copyright infringement."); *Flava Works, Inc. v. Clavio*, 2012 WL 2459146, at *2 (N.D. Ill. June 27, 2012) ("Implicit in the elements" of an infringement claim "is identification of an allegedly-infringed 'work.'"). Indeed, the requirement for specific identification of works follows from Rule 8 and the work- and infringement-specific nature of a copyright infringement claim. *See Giganews*, 847 F.3d at 673; *Livingston v. Morgan*, 2006 WL 8459602, at *3 (N.D. Cal. July 31, 2006) (a claim for "copyright infringement fails to

satisfy the requirements of Rule 8(a) if it does not allege the specific copyrighted work that has been infringed").

Identification of the allegedly infringed works is also necessary to provide Defendants with fair notice of the claims against them and to enable Defendants to answer the complaint. Infringement claims are "subject to defenses that require their own individualized inquiries." *Schneider*, 674 F. Supp. 3d at 717. Each work and alleged infringement involved in the lawsuit will require Defendants to investigate, among other things, the existence and timing of the registration (including to determine availability of statutory damages under 17 U.S.C. § 412); whether a plaintiff actually owns the copyright in the work; whether the work was actually copied and used by Defendants; whether Defendants possess any sort of license or authorization; and whether the claim is barred by the applicable statute of limitations. Defendants obviously cannot conduct the requisite inquiries as to works that Plaintiffs have not specifically identified.

The Complaint does list certain specific registered works that Plaintiffs contend Defendants infringed. *See* CAC ¶¶ 18, 31, 36, 49, 55, 68, 76, 82, 90, 99; CAC Ex. A (list of registrations), Ex. B (list of allegedly infringed images). But the Complaint also alleges Defendants infringed "at least" these works, leaving open the possibility that Plaintiffs intend the Complaint to cover and put at issue others. CAC ¶¶ 18, 31, 49, 68, 76, 90, 99.[3] A copyright plaintiff cannot "list certain works that are the subject of an infringement claim, and then allege that the claim is also intended to cover other, unidentified works." *Cole v. John Wiley & Sons, Inc.*, 2012 WL 3133520, at *12 (S.D.N.Y. Aug. 1, 2012). Nor may Plaintiffs flout the Scheduling Order's now-passed deadline for amending pleadings, ECF No. 88 at 2, by smuggling in new works and infringement claims through some *ad hoc* and informal identification process. Among

---

[3] During the Court-ordered meet-and-confer requiring Plaintiffs to disclose "all new parties, new claims, and new allegations," ECF No. 77 at 2, Plaintiffs identified to Google copyrighted works they ultimately did not list in the Complaint. And Plaintiffs' allegations do not line up with their exhibits, because certain works and images are mentioned in the allegations but not the exhibits, and vice versa. *Compare* CAC ¶ 60 (alleging Hubbard's *Wanderlove* appears in LAION-400M, citing CAC Ex. B), *with* CAC Ex. B (omitting any mention of *Wanderlove*); *compare* CAC Ex. B at 9 (alleged LAION-400M training image for Larson's *All Summer Long*), *with* CAC ¶¶ 67-74 (omitting any mention of LAION-400M). In other words, Plaintiffs still have not precisely identified the works at issue.

1    other problems, that would force Defendants to recommence their investigation and defense of the

2    claims in the case at Plaintiffs' whim. In short, Plaintiffs' claims are limited to the works

3    identified in Exhibits A and B to the Complaint and their claims should be dismissed as to any

4    copyrighted work they have failed to specifically identify.

5    **III.    Plaintiffs Fail To Allege Entitlement To Injunctive Relief.**

6    The Copyright Act provides that courts "may" grant injunctive relief as a possible remedy

7    for infringement in addition to damages. 17 U.S.C. §§ 502, 503. Injunctions are not "automatic[]"

8    upon a finding of infringement. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006).

9    Rather, to obtain injunctive relief, a plaintiff must prove that she satisfies the traditional equitable

10   factors, *i.e.*, "(1) that [she] has suffered an irreparable injury; (2) that remedies available at law,

11   such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the

12   balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4)

13   that the public interest would not be disserved by a permanent injunction." *Id.* at 391; *see also*

14   *Impinj, Inc. v. NXP USA, Inc.*, 2023 WL 6955477, at *1 (N.D. Cal. Oct. 3, 2023) ("The movant

15   must prove that it meets all four equitable factors."). Injunctive relief is "an 'extraordinary and

16   drastic remedy,'" and there is no "presumption[]" of irreparable harm or "thumb on the scale" in

17   favor of injunctive relief for claims of copyright infringement. *Perfect 10, Inc. v. Google, Inc.*, 653

18   F.3d 976, 980 (9th Cir. 2011) (recognizing that *eBay* overruled prior case law holding that

19   irreparable harm can be presumed to follow from infringement (citing *Munaf v. Geren*, 553 U.S.

20   674, 689-90 (2008)). Even proven infringement does not give rise to a presumption of irreparable

21   harm. *See id.*

22   Demands for injunctive relief should be dismissed where the complaint "fail[s] … to

23   establish the basic requisites of the issuance of equitable relief," including "the likelihood of

24   substantial and immediate irreparable injury, and the inadequacy of remedies at law." *See O'Shea*

25   *v. Littleton*, 414 U.S. 488, 502 (1974) (affirming district court's dismissal); *see also Sonner v.*

26   *Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (affirming dismissal of request for

27   equitable restitution where "the operative complaint [did] not allege that Sonner lacks an adequate

28   legal remedy") (citing *O'Shea*); *Philips v. Ford Motor Co.*, 726 F. App'x 608, 609 (9th Cir. 2018)

1  (affirming dismissal of request for injunctive relief where "the district court correctly determined

2  that [plaintiffs] were required to plead the inadequacy of their legal remedies to state a claim for

3  injunctive relief."). As with other aspects of a complaint, in pleading the prerequisites for

4  equitable relief, "conclusory allegations will not suffice." *Hubbard v. Google LLC*, 2024 WL

5  3302066, at *4 (N.D. Cal. July 1, 2024) (dismissing request for equitable relief); *accord Blain v.*

6  *Liberty Mut. Fire Ins. Co.*, 2023 WL 3612390, at *3 (S.D. Cal. May 22, 2023) ("[r]elying only on

7  conclusory and conditional statements …. does not pass the pleading standards established by

8  *Iqbal* and *Twombly*"; dismissing request for equitable relief).

9      Here, as in prior complaints, Plaintiffs' demands for injunctive relief are supported only by

10  conclusory allegations about "immediate and irreparable injury." *See* CAC ¶ 181. The Complaint

11  hints at "categories of harm that resist traditional monetary remediation," *id.*, but never identifies

12  these harms or alleges that they flow from any alleged infringement. Plaintiffs suggest that a threat

13  of "future infringement" justifies injunctive relief, *id.*, but never plausibly plead a threat of future

14  infringement, and in any event, "the prospect that infringement will continue merely precipitates

15  the question whether any future infringement would irreparably injure the copyright owner." *TD*

16  *Bank N.A. v. Hill*, 928 F.3d 259, 280 (3d Cir. 2019) (vacating injunction); *see also MGM Studios,*

17  *Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1214-15 (C.D. Cal. 2007) ("irreparable harm" from

18  "future infringement ... cannot be presumed"). Plaintiffs' total failure to describe the injunctive

19  relief they actually seek underscores their failure to articulate any form of irreparable harm. *See*

20  CAC ¶ 196 (requesting "injunctive relief as detailed above" without ever describing the relief). In

21  sum, the Complaint includes no factual allegations explaining how Plaintiffs will supposedly

22  suffer irreparable injury absent an injunction, or why monetary relief is an inadequate remedy.

23      What Plaintiffs have chosen *not* to allege is telling, particularly given Google's prior

24  motion to dismiss the injunctive relief demand. *See* ECF No. 55 at 9-12; ECF No. 62 at 3-7. In

25  trying to establish irreparable harm, copyright owners frequently point to the alleged ongoing

26  distribution of their work by the defendant, which undermines their own ability to control and

27  profit from the distribution of their work. *See, e.g.*, *Hunter Killer Prods., Inc. v. Zarlish*, 2020 WL

28  3980117, at *5 (D. Haw. June 15, 2020) (granting injunction where defendant "continue[d] to

distribute [plaintiff's copyrighted] software applications" and "without an injunction, … will likely be the source for others to repeatedly download [plaintiff's works]"). Here, Plaintiffs pointedly make no such allegations in support of their infringement claim. *See* CAC ¶ 174 (alleging "unauthorized reproduction and use"). Prior complaints vaguely hinted at the possibility that Google's Gemini (formerly Bard) service might be making portions of works available to users. *See, e.g.*, ECF No. 1 ¶¶ 15, 108, 111, 354, 359, 362; ECF No. 28 ¶¶ 15, 211, 214, 639. But after Google repeatedly moved to dismiss claims directed to Gemini's output, ECF No. 20 at 25; ECF No. 33 at 30, Plaintiffs abandoned that theory in the Second Amended Complaint, *see* ECF No. 47-1 at 13, and it is absent this time around too, *see* CAC ¶¶ 171-81.

The Complaint devotes almost exclusive attention to supposed "monetary harm[s]," CAC ¶ 176, repeatedly asserting that Google's alleged use of Plaintiffs' works to train models somehow "deprived [Plaintiffs] of licensing revenue" and caused "harm to the commercial value" of their works, CAC ¶¶ 29, 34, 47, 53, 66, 74, 80, 88, 97, 103. Plaintiffs seek monetary relief in the form of either "actual damages," or statutory damages if Plaintiffs can prove their works were properly registered before the alleged infringement commenced, 17 U.S.C. § 412; CAC ¶ 196. But whatever damages Plaintiffs ultimately pursue, they have provided no reason to think monetary relief would be inadequate to remedy their supposed harms (if they ultimately prevail). Plaintiffs' conclusory allegations of irreparable harm fail to raise any plausible entitlement to whatever undefined form of injunctive relief Plaintiffs imagine. Their request for injunctive relief should not proceed.

## IV.     The Vicarious Infringement Claim Against Alphabet Should Be Dismissed.

Plaintiffs' vicarious infringement claim against Google's parent company, Alphabet, fails because Plaintiffs do not allege facts plausibly showing that Alphabet had *any* connection to or involvement in Google's alleged copying of Plaintiffs' works to train certain "Generative AI Models." CAC ¶ 1. To state a claim for vicarious copyright infringement, a plaintiff must generally "allege that the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007). Consistent with the foundational principle that "a parent

1  corporation … is not liable for the acts of its subsidiaries," *United States v. Bestfoods*, 524 U.S.

2  51, 61 (1998), a parent-subsidiary relationship "standing alone, is not enough to" meet these

3  elements. *Mayimba Music, Inc. v. Sony Corp. of Am.*, 2014 WL 5334698, at *13 (S.D.N.Y. Aug.

4  19, 2014). That "rule[] make[s] sense, since 'every parent will benefit from its subsidiary's profit-

5  generating activities, and every parent will have the opportunity to guide the affairs of its

6  subsidiary.'" *Dauman v. Hallmark Card, Inc.*, 1998 WL 54633, at *6 (S.D.N.Y. Feb. 9, 1998)

7  (cleaned up). Thus, in the parent-subsidiary context, the Ninth Circuit has held that "[a] parent

8  corporation cannot be held liable for the infringing actions of its subsidiary unless there is a

9  ***substantial and continuing connection*** between the two ***with respect to the infringing acts*.**

10  *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 519-20 (9th Cir. 1985)

11  (emphasis added); *accord Banff Ltd. v. Ltd., Inc.*, 869 F. Supp. 1103, 1108 (S.D.N.Y. 1994)

12  (same); 3 Nimmer on Copyright § 12.04 (2024) (same).

13      ***Substantial And Continuing Connection For Infringing Acts.*** Plaintiffs here allege no

14  such connection between Alphabet and Google. The Complaint makes clear that Google is the sole

15  entity alleged to have copied and used Plaintiffs' works to train certain AI models. *See, e.g.*, CAC

16  ¶¶ 2, 8, 105, 120-157, 171-181. And it does not contain a single allegation that Alphabet—a stock

17  holding company—had any involvement in Google's decisions regarding what data to use to train

18  its AI models. Instead, Plaintiffs base their vicarious infringement claim on vague and conclusory

19  allegations about Alphabet's supposed "substantial control over Google LLC's operations" and

20  "AI development strategy" ***generally***, *id.* ¶ 106, and its supposed generation of revenues from "AI

21  integration," "AI solutions," and "AI-Powered Products" in "Google's product suite," *id.* ¶¶ 3,

22  178, 185-86. None of that comes close to alleging a substantial and continuous connection

23  specifically with respect to Google's allegedly improper copying for training purposes, or to

24  satisfying the two prongs of the vicarious infringement standard.

25      ***Right And Ability To Control.*** To satisfy the "control" prong, Plaintiffs must plausibly

26  allege that Alphabet had "both a legal right to stop or limit the directly infringing conduct, as well

27  as the practical ability to do so." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th

28  Cir. 2007). Plaintiffs attempt to meet this requirement by alleging that Alphabet and Google share

1  a few of the same executive officers, that Alphabet "orchestrated" a merger between Google Brain

2  and Google DeepMind in 2023 and "facilitated the subsequent transfer of the Gemini team to

3  DeepMind in 2024," and that Alphabet has made "substantial investments" in AI and "touted"

4  those investments in SEC filings and public statements by its CEO. CAC ¶¶ 106-08, 184. From

5  there, Plaintiffs leap to the conclusion that "Alphabet exercises substantial," "centralized," and

6  "direct operational control" and "supervisory authority" over Google's "AI development strategy"

7  and "AI initiatives." *Id.* ¶¶ 106, 184, 188-89; *see also id.* ¶¶ 110-11 (conclusory allegations that

8  "the Defendants in this Complaint" acted as each other's "agents" and as a "seamless, integrated

9  enterprise"). These allegations about "control" and "authority" lack any substance, and nowhere

10  do Plaintiffs explain how they flow from the mere existence of overlapping executives or from

11  Alphabet's alleged role in restructuring and investing in its subsidiaries' operations—activities

12  common to parent-subsidiary relationships.

13       Regardless, Plaintiffs' paltry allegations do not "allow[] the court to draw the reasonable

14  inference that" Alphabet and Google maintained a substantial and continuous connection with

15  respect to Google's alleged use of Plaintiffs' works to train generative AI models, the only acts

16  that matter for purposes of this claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts applying

17  the "substantial and continuous" standard have held that the requisite control only exists where

18  there are "indicia … that the parent is actually involved with the decisions, processes, or personnel

19  directly responsible for the infringing activity," *Banff*, 869 F. Supp. at 1108-09, such as where the

20  parent exerts "day-to-day control" over the subsidiary's operations, *Pegasus Imaging Corp. v.

21  Northrop Grumman Corp.*, 2008 WL 5099691, at *2 (M.D. Fla. Nov. 24, 2008); *accord Dauman*,

22  1998 WL 54633, at *6 ("a parent corporation can be liable only if there is a substantial continuing

23  involvement by the parent specifically with [] respect to the allegedly infringing activity of the

24  subsidiary"). Nothing remotely like that is alleged here. Plaintiffs do not allege a single fact

25  suggesting *any* involvement by Alphabet in the training process, much less the required substantial

26  and continuous involvement in Google's specific decisions regarding what training data to use.

27       Courts have consistently dismissed vicarious infringement claims for lack of "control"

28  where plaintiffs similarly failed to allege that a parent company had the requisite connection to the

specific allegedly infringing acts of its subsidiary. *See, e.g.*, *Dauman*, 1998 WL 54633, at *6 (granting motion to dismiss where subsidiary was "responsible for its own operations" and parent company "did not instruct … what products to make or sell" and "did not direct, approve or otherwise have any responsibility for the choices of images used in" the allegedly infringing products); *Pegasus Imaging*, 2008 WL 5099691, at *2-3 (same, where complaint's allegations regarding "interlocking directors, officers and employees" failed to establish the parent company's "direct participation in the decisions, processes, or personnel directly responsible for the infringing activity") (citation omitted); *Mertik Maxitrol GmbH & Co. KG v. Honeywell Techs. SARL*, 2011 WL 1454067, at *5 (E.D. Mich. Apr. 13, 2011) (same, where allegations relied on "organization charts" and corporate presentation materials that "merely summarize[d] the size and scope of the [parent] corporation's activities" but "fail[ed] to demonstrate any connection between [the parent] and the day-to-day production and sourcing decisions of its foreign subsidiaries"); *cf. Banff*, 869 F. Supp. at 1110 (granting summary judgment for defendant where subsidiary's employees made "the day-to-day decisions" regarding which allegedly infringing products to sell); *Morgan v. Hawthorne Homes, Inc.*, 2009 WL 1010476, at *22 (W.D. Pa. Apr. 14, 2009) (same, where there were "no facts to support a conclusion" that holding company "could direct the use of the [allegedly infringing] drawings on the [subsidiary's] website" or was involved in the "day-to-day affairs of its subsidiaries"). And the type of parent-subsidiary relationships that have been deemed sufficient for imposing vicarious liability are a far cry from what Plaintiffs allege here. *See, e.g.*, *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1547-48, 1553 (9th Cir. 1989) (finding MGM, Inc. vicariously liable for subsidiary MGM Grand's infringing use of plaintiffs' works in theatrical production where MGM Grand employees who "created" the production were hired by MGM, Inc., "consulted with" and were "assisted by" employees from MGM, Inc. "in preparing the show," and "got clearances for the material" used, including plaintiffs' works, from MGM, Inc.).

In sum, Plaintiffs' highly generalized assertions about Alphabet's "strategic oversight and influence" on Google (CAC ¶ 106) fail to sufficiently allege "control" or a substantial and continuing connection between the two with respect to the alleged infringements.

***Direct Financial Benefit.*** Plaintiffs similarly fail to allege facts sufficient to satisfy the "direct financial benefit" element required for vicarious liability. "The essential aspect" of that inquiry "is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps." *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004). Here, Plaintiffs allege that Google "monetizes its copyright infringements through two revenue streams": "(1) direct revenue from subscription and licensing fees for access to its Generative AI Models, and (2) indirect revenue from integration of those Generative AI Models into its AI-Powered Products." CAC ¶ 120. Plaintiffs claim that these revenues benefit Alphabet through "multiple channels," including "revenue growth," "increased market capitalization," and "enhanced competitive position in the AI market." *Id.* ¶ 185.

Those allegations fall far short of satisfying the Ninth Circuit's standard for alleging a direct financial benefit. Indeed, they make clear that any supposed financial benefit to Alphabet is decidedly *indirect*, and attributable solely to its status as Google's parent company. Plaintiffs allege only that "*Google* monetizes its copyright infringements." CAC ¶ 120 (emphasis added). Any alleged resulting benefit to Alphabet exists solely because it receives "revenues and income" (*id.* ¶ 108) through its subsidiaries, as is true of all stock holding companies. But the mere facts that a parent company "owns" and "does business through" its subsidiary and "receives the benefit of [its subsidiary's] sales" are "insufficient" to state a claim for vicarious infringement. *Dauman*, 1998 WL 54633, at *6.

Plaintiffs attempt to overcome their exclusive reliance on the parent-subsidiary relationship by alleging that Alphabet benefits financially from Google's "AI products" in particular, which are "built on infringing materials." CAC ¶ 185. But to support vicarious liability, the financial benefit must result directly "from the infringement in this case," *i.e.*, from "the infringement of the plaintiff's material, rather than [] general copyright infringement." *Giganews*, 847 F.3d at 673 (quoting *Ellison*, 357 F.3d at 1079 n.10). Plaintiffs do not plausibly allege any such "causal link between the infringement of [each] plaintiff's own copyrighted works and any profit to" Alphabet. *Id.* Instead, they gesture broadly at Google's "infringing conduct" and use of "infringing materials" by the "millions" across its "broader product ecosystem," CAC ¶¶ 1, 185, 187, and

1    claim that Alphabet (through Google) received "billions in revenue" therefrom, *id.* ¶ 186. Those

2    allegations about a supposed financial benefit from "general copyright infringement" do not

3    satisfy the "direct financial benefit" prong for vicarious copyright liability. *Giganews*, 847 F.3d at

4    673.

5        For similar reasons, Plaintiffs' passing suggestion that Google's alleged infringements

6    "drive increased usage and revenue" across its "product suite" do not sustain the claim. CAC

7    ¶ 185. While the requisite direct financial benefit may exist if "the availability of infringing

8    material acts as a draw for customers," *Giganews*, 847 F.3d at 673, the draw must be from

9    infringement of the plaintiff's works specifically, *see id.* at 674 (affirming summary judgment for

10   defendant where "there was no evidence indicating that anyone subscribed … because of

11   infringing [] material [owned by the plaintiff]"); *Stross v. Meta Platforms, Inc.*, 2022 WL

12   1843129, at *3 (C.D. Cal. Apr. 6, 2022) (finding allegation "that copyright infringement in general

13   occurs on" defendant's platform "not sufficient to show that Defendant drew users to Facebook

14   because of Plaintiff's infringed works"). Plaintiffs do not plead any facts to plausibly suggest that

15   Google's alleged use of *their* particular works to train certain AI models drew customers to any

16   "AI-Powered Products." CAC ¶¶ 3, 185. And again, any such draw would only directly benefit

17   *Google* and draw users to "*Google*'s AI-Powered Products," *id.* ¶ 9 (emphasis added), not

18   Alphabet, which is not alleged to have had anything to do with Google's alleged use of Plaintiffs'

19   works.

20       Finally, Plaintiffs' claim that Alphabet benefited from "cost savings" by "avoiding

21   necessary licensing fees for copyrighted works" (CAC ¶ 185) is also insufficient as a matter of law

22   because the "avoidance of licensing fees" does not "constitute[] a direct financial benefit."

23   *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 830 (9th Cir. 2019); *see id.* ("[T]he direct infringer's

24   avoidance of fees alone cannot satisfy the requirement of a direct financial benefit to the vicarious

25   infringer."). Further, here too, any supposed avoidance would be of theoretical benefit to *Google*,

26   not directly to Alphabet.

27       Beyond Plaintiffs' conclusory and deficient allegations, the Complaint "provides no reason

28   for the Court to depart from the 'deeply ingrained' principle" that Alphabet "is not liable for the

1   wrongs of its subsidiaries." *Lancaster v. Alphabet Inc.*, 2016 WL 3648608, at *7 (N.D. Cal. July 8,

2   2016) (dismissing vicarious infringement and other claims against Alphabet); *accord Kremer v.*

3   *Alphabet Inc.*, 2024 WL 923900, at *5 (M.D. Tenn. Mar. 4, 2024); *Manigault-Johnson v. Google,*

4   *LLC*, 2019 WL 3006646, at *2 (D.S.C. Mar. 31, 2019). Plaintiffs' claim for vicarious copyright

5   infringement against Alphabet should be dismissed.

6   **V.    Plaintiffs' Complaint Violates Rule 8's Plain Statement Requirement.**

7          In Plaintiffs' fifth attempt at pleading copyright infringement, they still fail to offer a

8   "short and plain" statement of their claim stated through "simple, concise, and direct" allegations.

9   Fed. R. Civ. P. 8(a)(2), 8(d)(1).

10         Rule 8 requires simple but clear details of Plaintiffs' claims so that Google may investigate

11  them, answer them, and assert applicable defenses. *See McHenry v. Renne*, 84 F.3d 1172, 1178-80

12  (9th Cir. 1996) (Rule 8 requires a complaint set forth "who is being sued, for what relief, and on

13  what theory, with enough detail to guide discovery," to minimize "discovery disputes" and

14  "surprise" at trial); *In re "Santa Barbara Like It Is Today" Copyright Infringement Litig.*, 94

15  F.R.D. 105, 108 (D. Nev. 1982) (Rule 8 "serves to sharpen the issues to be litigated and to confine

16  discovery within reasonable grounds"). Copyright claims need not be pleaded with "heightened …

17  particularity," but "claims must be plausible under Rule 8, *Twombly*, and *Iqbal*." *Synopsys, Inc. v.*

18  *ATopTech, Inc.*, 2013 WL 5770542, at *4 (N.D. Cal. Oct. 24, 2013). Absent basic details about the

19  allegedly infringing products at issue, the Complaint cannot survive even Rule 8's forgiving

20  standard. *See Becton v. Cytek Bioscis. Inc.*, 2020 WL 1877707, at *6 (N.D. Cal. April 15, 2020)

21  (dismissing claim where plaintiff failed to allege "in what Cytek document or software such

22  copying is manifest"); *cf. Bender v. LG Elecs. U.S.A., Inc.*, 2010 WL 889541, at *2 (N.D. Cal.

23  Mar. 11, 2010) (failure to specifically identify accused product in patent case violates Rule 8).

24         Plaintiffs still do not identify the Google products through which their copyrights were

25  supposedly infringed—despite being on notice of this precise problem from prior pleadings. For

26  example, as Google explained, ECF No. 20 at 6, Leovy's original complaints defined the Google

27  products at issue limitlessly, as "Defendants' AI products, including but not limited to," Google

28  Bard, Imagen, Music LM, Duet AI, and Gemini. ECF No. 1 ¶¶ 63-70; ECF No. 28 ¶¶ 110-120

1    (same). The Court granted Google's motion and dismissed Leovy's First Amended Complaint on

2    Rule 8 grounds, ECF No. 46 at 1. But rather than meet Google's objection by specifying the

3    products at issue in her Second Amended Complaint, Leovy removed any definition of "Products"

4    at all. *See* ECF No. 47.

5          Plaintiffs' latest pleading is even more opaque. Once again, Plaintiffs do not allege any

6    Google product or service where copying of their writings, illustrations, or photographs "is

7    manifest," but instead sweepingly generalize by apparently referencing any Google product that

8    might in any way use artificial intelligence technology. In the Complaint, Plaintiffs claim that

9    Google copied their works "to build and train its generative artificial intelligence models"

10   ("Generative AI models"), CAC ¶ 1, which they define to "include" not only "Bard, Gemini,

11   Imagen, PaLM, GLaM, LaMDA, Codey, Chirp, Veo, MedLM, LearnLM, SecLM, Gemma,

12   CodeGemma, RecurrentGemma, PaliGemmia," but also "all versions, iterations, and relatives of"

13   the same. *id.* ¶ 105. Plaintiffs likewise claim that Google is "integrating its Generative AI Models

14   into a growing set of Google products" ("AI-Powered Products"), *id.* ¶ 3, which "include all

15   versions and iterations of Google Search, Google Cloud, Gmail, Google Docs, Google Ads,

16   Google Slides, Chrome, YouTube, Google Photos, Google Sheets, Google Meet, Google Pixel,

17   Google Maps, Google AI Studio, Google Vids, Google Workspace, and Vertex AI," *id.* ¶ 105.

18         It is unclear what connection (if any) those dozens of models and products have to

19   Plaintiffs' actual claims of infringement. Outside of the definitions of "Generative AI Models" and

20   "AI-Powered Products," *id.* ¶¶ 1, 3, 105, the vast majority of those models and products are never

21   mentioned again in the Complaint—and certainly not in connection with any of Plaintiffs'

22   copyrighted works, *see id.* ¶¶ 17-103 (referencing only Gemini and Imagen). That can come as no

23   surprise. There is no reason to believe that Google's coding assistant, Codey, was trained on

24   Lemos's "Shark Fink Sticker" illustration, or that any (much less "all") versions of YouTube use

25   Larson's *All Summer Long* graphic novel.

26         Again, in the actual articulation of their copyright claim, Plaintiffs define Google's

27   supposed infringement without reference to ***any*** particular copyrighted works, models or products:

28   "Google LLC directly infringed upon Plaintiffs' exclusive rights through multiple distinct acts of

1    unauthorized reproduction and use: a) copying of works when assembling training datasets

2    through tools like 'img2dataset'; b) multiple reproductions during the pre-training and training

3    phases of model development; and/or c) creating derivative works when assembling training

4    datasets or during the pre-training and training phases of model development." CAC ¶ 174. In

5    other words, Plaintiffs claim Google committed infringement by assembling some undefined

6    datasets and training some unspecified models on unspecified works. Those allegations are

7    insufficient. *See Giganews, Inc.*, 847 F.3d at 673 (an infringement suit "is a specific lawsuit by a

8    specific plaintiff against a specific defendant about specific copyrighted images; it is not a lawsuit

9    against copyright infringement in general"). And they create the very guessing game that Rule 8 is

10   intended to prevent.

11          Plaintiffs' detail-free assertions also fail to "guide discovery" in any meaningful way.

12   *McHenry*, 84 F.3d at 1178-80 (the failure under Rule 8 to set out "who is being sued, for what

13   relief, and on what theory, with enough detail" produces "discovery disputes"). Allegations that a

14   particular training dataset contains Plaintiffs' works cannot open the door to discovery into any

15   and all of Google's generative AI models or products, where Plaintiffs have failed to make any

16   allegations connecting those models or products to Plaintiffs' works. Yet that is precisely what

17   Plaintiffs contemplate in the wide-ranging discovery requests they propounded—seeking

18   information about all versions and iterations of every generative AI model Google ever

19   conceived.

20          Separately problematic are the scurrilous and irrelevant assertions that Plaintiffs have

21   added. In boilerplate language, Plaintiffs claim that Defendants engaged in "knowing and active

22   fraudulent concealment and denial of the facts alleged," CAC ¶ 158, and acted with "intent to

23   mislead, deceive, or defraud Plaintiffs," *id.* ¶ 161. But allegations of fraud must be pleaded with

24   "particularity." Fed. R. Civ. P. 9(b). And Plaintiffs make no attempt to identify what supposedly

25   fraudulent "representations and omissions" are at issue. CAC ¶ 162. In any event it is plain that

26   they have nothing to do with Plaintiffs' copyright claim and seemingly function to obscure the

27   actual issues in dispute. The Federal Rules do not countenance such pleading.

28

1

# CONCLUSION

2     For these reasons, Defendants ask that the Court dismiss Plaintiff Andersen's claims,

3   Plaintiffs' demand for injunctive relief, and Plaintiffs' vicarious liability claim with prejudice;

4   dismiss any claim as to any unidentified work without prejudice; and require Plaintiffs to

5   comport with Rule 8 by plainly stating what they accuse of infringement and dropping

6   extraneous allegations, such as those directed to supposed fraud and concealment.

7

8                                     Respectfully submitted,

9   Dated:  January 17, 2025          By:  */s/ Maura L. Rees*_____

10                                         David H. Kramer, SBN 168452
                                           Email: dkramer@wsgr.com
11                                         Maura L. Rees, SBN 191698
                                           Email: mrees@wsgr.com
12                                         **WILSON SONSINI GOODRICH & ROSATI**
                                           **Professional Corporation**
13                                         650 Page Mill Road
                                           Palo Alto, CA 94304-1050
14                                         Telephone:  (650) 493-9300

15                                         Eric P. Tuttle, SBN 248440
                                           Email: eric.tuttle@wsgr.com
16                                         **WILSON SONSINI GOODRICH & ROSATI**
                                           **Professional Corporation**
17                                         701 Fifth Avenue, Suite 5100
                                           Seattle, WA 98104-7036
18                                         Telephone:  (206) 883-2500

19                                         *Counsel for Defendants*
                                           GOOGLE LLC AND ALPHABET INC.

20

21

22

23

24

25

26

27

28