1  DAVID H. KRAMER, SBN 168452
   Email: dkramer@wsgr.com
2  MAURA L. REES, SBN 191698
   Email: mrees@wsgr.com
3  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
4  650 Page Mill Road
   Palo Alto, CA 94304-1050
5  Telephone:  (650) 493-9300

6  ERIC P. TUTTLE, SBN 248440
   Email: eric.tuttle@wsgr.com
7  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
8  701 Fifth Avenue, Suite 5100
   Seattle, WA 98104-7036
9  Telephone:  (206) 883-2500

10 *Counsel for Defendants*
   GOOGLE LLC AND ALPHABET INC.

11

12 **UNITED STATES DISTRICT COURT**

13 **NORTHERN DISTRICT OF CALIFORNIA**

14 **SAN JOSE DIVISION**

15

16 *In re Google Generative AI Copyright*       Master File Case No.: 5:23-cv-03440-EKL
   *Litigation*                                  Consolidated with Case No.: 5:24-cv-02531-EKL
17
                                                 **DEFENDANTS' NOTICE OF MOTION AND**
18                                               **MOTION TO STRIKE CLASS**
                                                 **ALLEGATIONS AND MEMORANDUM OF**
19                                               **POINTS AND AUTHORITIES IN SUPPORT**
                                                 **THEREOF**
20
                                                 Date:        April 23, 2025
21                                               Time:        10:00 a.m.
                                                 Courtroom:   7
22                                               Judge:       Hon. Eumi K. Lee

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

NOTICE OF MOTION AND MOTION ..................................................................................1

STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED ...........................1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................1

BACKGROUND........................................................................................................................4

      A.    Plaintiffs' Shifting Class Definition.................................................................4

      B.    Plaintiffs' Individualized Claims .....................................................................5

      C.    Plaintiffs' Approach to Discovery....................................................................7

LEGAL STANDARD ................................................................................................................7

ARGUMENT .............................................................................................................................9

      A.    The Court Should Strike the Class Allegations Because Plaintiffs' Proposed "Fail-Safe" Class Is Facially Uncertifiable. ...........................................9

            1.    Fail-safe classes are improper. .................................................9

            2.    Plaintiffs allege a fail-safe class. ..............................................11

            3.    Plaintiffs' class allegations should be stricken...........................12

      B.    Plaintiffs' Shift to a Fail-Safe Class Shows the Fundamental Problems Underlying Their Class Action. ...........................................................14

      C.    Alternatively, the Court Should Stay Discovery Unrelated to Class Certification........................................................................................16

CONCLUSION ........................................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alcantar v. Hobart Serv.*,
    800 F.3d 1047 (9th Cir. 2015) ........................................................................ 9

*Angulo v. Providence Health & Servs. – Wash.*,
    2024 WL 3744258 (W.D. Wash. Aug. 9, 2024) ........................................ 9, 11

*Baton v. Ledger SAS*,
    ---F. Supp. 3d ----, 2024 WL 3447511 (N.D. Cal. July 16, 2024) ................... 8

*Boucher v. First Am. Title Ins. Co.*,
    2012 WL 3023316 (W.D. Wash. July 24, 2012) ........................................... 13

*Brazil v. Dell Inc.*,
    585 F. Supp. 2d 1158 (N.D. Cal. 2008) .......................................................... 9

*Briggs v. Blomkamp*,
    70 F. Supp. 3d 1155 (N.D. Cal. 2014) .......................................................... 11

*Cashatt v. Ford Motor Co.*,
    2021 WL 1140227 (W.D. Wash. Mar. 24, 2021) ....................................... 9, 11

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ......................................................................................... 9

*Dixon v. Monterey Fin. Servs.*,
    2016 WL 4426908 (N.D. Cal. Aug. 22, 2016) .............................................. 12

*Dixon v. Monterey Fin. Servs. Inc.*,
    2016 WL 3456680 (N.D. Cal. June 24, 2016) .............................................. 10

*Dodd-Owens v. Kyphon, Inc.*,
    2007 WL 420191 (N.D. Cal. Feb. 5, 2007) .................................................... 9

*Football Ass'n Premier League v. YouTube, Inc.*,
    297 F.R.D. 64 (S.D.N.Y. 2013) .................................................................... 15

*Goodrich v. Cross River Bank*,
    2022 WL 2954933 (N.D. Cal. July 26, 2022) ............................................. 8, 9

*Greene v. Select Funding, LLC*,
    2021 WL 4926495 (C.D. Cal. Feb. 5, 2021) ................................................ 11

*Harris v. LSP Prods. Grp., Inc.*,
    2021 WL 2682045 (E.D. Cal. June 30, 2021) ................................................ 8

*In re Toll Roads Litig.*,
    2018 WL 4952594 (C.D. Cal. July 31, 2018) .............................................. 10

*Kamar v. RadioShack Corp.*,
    375 F. App'x 734 (9th Cir. 2010) ......................................................... 2, 10, 13

*Kevari v. Scottrade, Inc.*,
    2018 WL 6136822 (C.D. Cal. Aug. 31, 2018) ............................................................ 9, 16

*Kihn v. Bill Graham Archives LLC*,
    2022 WL 18935 (9th Cir. Jan. 3, 2022) ............................................................ 12, 14, 15

*Lautemann v. Bird Rides, Inc.*,
    2019 WL 3037934 (C.D. Cal. May 31, 2019)................................................................. 16

*Lenz v. Univ. Music Grp.*,
    815 F.3d 1145 (9th Cir. 2016) ...................................................................................... 11

*Messner v. Northshore Univ. Health Sys.*,
    669 F.3d 802 (7th Cir. 2012)................................................................................... 10, 11

*Niantic, Inc. v. Glob. ++*,
    2020 WL 1548465 (N.D. Cal. Jan. 30, 2020) .............................................................. 12

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022).................................................................... 2, 9, 10, 11, 13

*Palmer Kane LLC v. Scholastic Corp.*,
    2012 WL 2952898 (S.D.N.Y. July 16, 2012) .............................................................. 15

*Pepka v. Kohl's Dep't Stores, Inc.*,
    2016 WL 8919460 (C.D. Cal. Dec. 21, 2016) ............................................... 10, 12, 14

*Ruiz Torres v. Mercer Canyons Inc.*,
    835 F.3d 1125 (9th Cir. 2016)................................................................... 10, 11, 12

*Salaiz v. eHealthIns. Servs., Inc.*,
    2023 WL 2622138 (N.D. Cal. Mar. 22, 2023) ............................................................. 8

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ......................................................................... 8

*Schneider v. YouTube LLC*,
    674 F. Supp. 3d 704 (N.D. Cal. 2023) ..................................................................... 2, 15

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) ............................................................................................... 11, 12

*Sosna v. Iowa*,
    419 U.S. 393 (1975) ..................................................................................................... 13

*Tietsworth v. Sears, Roebuck & Co.*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) ........................................................................ 7

*Tomaszewski v. Circle K Stores Inc.*,
    2021 WL 2661190 (D. Ariz. Jan. 12, 2021)............................................................. 8, 12

*Valentine v. Crocs, Inc.*,
    2024 WL 1636716 (N.D. Cal. Apr. 15, 2024) ........................................................ 16, 17

*Van Lith v. iHeartmedia & Ent., Inc.*,
    2016 WL 4000356 (E.D. Cal. July 25, 2016) ........................................................... 8, 9

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) ................................................................. 8

*Whittlestone, Inc. v. Handi-Craft Co.*,
    618 F.3d 970 (9th Cir. 2010) ................................................................. 8

*Winters v. Loan Depot LLC*,
    2022 WL 22865378 (D. Ariz. Mar. 17, 2022) ..................................... 9

*Young v. Nationwide Mut. Ins. Co.*,
    693 F.3d 532 (6th Cir. 2012) ............................................................... 10

**STATUTES**

17 U.S.C. § 106 ...................................................................................... 1

17 U.S.C. § 107 ............................................................................ 11, 13

17 U.S.C. § 501 ...................................................................................... 1

**RULES**

Fed. R. Civ. P. 12 ................................................................................ 8

Fed. R. Civ. P. 23 ...................................................................... 3, 8, 10

Fed. R. Civ. P. 26 .............................................................................. 16

**NOTICE OF MOTION AND MOTION**

**PLEASE TAKE NOTICE** that on April 23, 2025 at 10:00 a.m., Defendants Google LLC and Alphabet Inc. (together, "Google") will move for an order striking the class allegations contained in Plaintiffs' Consolidated Amended Complaint (ECF No. 91 ("Complaint" or "CAC")), pursuant to Federal Rules of Civil Procedure 23(c)(1)(A), 23(d)(1)(D), and 12(f).

**STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED**

Google respectfully requests that the Court strike the class allegations without leave to amend. If further leave to amend is nevertheless granted, Google requests a stay of discovery unrelated to class certification until class certification is decided.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Before the Initial Case Management Conference last month, Plaintiffs told Google and the Court that their forthcoming consolidated Complaint would be filed on behalf of "all persons in the United States who own a registered United States copyright in any work that was used to train a Google generative AI product." ECF No. 80 at 1-2. As Google's counsel pointed out at the conference in advocating for an early determination of class certification, such a class was doomed to fail because of "all of the individualized issues associated with who owns the work, is the work registered, when was the work registered, was the work licensed expressly or impliedly, what kind of injury has the plaintiff suffered, if any, what remedies are they entitled to." ECF No. 93 ("CMC Tr.") at 19:10-17. As but one example, Google pointed out that it has millions of content licenses presenting individualized issues that alone would be sufficient to defeat class certification under Ninth Circuit and District precedent. *Id.* at 19-20.

Plaintiffs apparently agreed. Two days later, in contravention of the Court's Order that they first meet and confer with Google over any amendments to their complaint, they took a fundamentally different and previously undisclosed approach, redefining the putative class in their Consolidated Amended Complaint:

> All persons or entities who: (1) are domiciled in the United States; (2) own a **valid** copyright registration for one or more works under the Copyright Act; (3) whose exclusive rights under 17 U.S.C. § 106 in their registered works were **infringed** upon, under 17 U.S.C. § 501, by Google **without license or authorization** in order to train Google's Generative AI Models during the Class Period; and (4) held such copyright registration prior to Google's unauthorized use.

CAC ¶ 164 (emphasis added).  The evident purpose of this new class definition was to try to wave away some of the inherently individualized issues by imagining a class consisting only of persons whose claims would, by definition, succeed.  A person would not be a class member unless they owned a ***valid*** copyright registration in a work, Google's use of that work constituted ***infringement***, and Google lacked any ***license or authorization*** for that use.

Plaintiffs' latest zigzag in what is now the fifth complaint in this consolidated action is dead on arrival.  What they now propose is a classic example of an improper "fail-safe" class: one whose membership can only be determined after each individual's claim is resolved on the merits.  Such a class is "palpably unfair to the defendant" because it defines away anyone who could be bound by a loss, and is inherently "unmanageable"—"for example, to whom should the class notice be sent?"  *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010).  For these reasons, the Ninth Circuit recently clarified in an en banc decision that "[a] court may not … create a fail safe class."  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022) (en banc).  Courts in this Circuit routinely strike class allegations related to such purported fail-safe classes, and this Court should do the same.

But Plaintiffs' "fail-safe" class definition is not merely a matter of last-second wordplay.  Their gambit shines a spotlight on a core flaw in their case.  No matter how Plaintiffs purport to define their class, the Court will still be forced to wade into an impenetrable thicket of questions on copyright ownership, registration, validity, license, injury, timing, and other individualized issues for each of the allegedly "millions" of putative class members (CAC ¶ 11).  The effort required to investigate and adjudicate each of those individualized issues will require a granular, work-by-work undertaking, as the named Plaintiffs' allegations make clear.  That is why courts have consistently recognized that copyright claims are not suitable for class-action treatment.  *See, e.g.*, *Schneider v. YouTube LLC*, 674 F. Supp. 3d 704, 717-18 (N.D. Cal. 2023) ("[e]very copyright claim" turns on particular facts and individualized defenses, presenting "overwhelming problems with commonality and predominance that in themselves bar certification").  If Plaintiffs had any sort of path forward on this issue, they could have raised it with the Court or Defendants.  Their attempt, instead, to define the problem away merely underscores it.

Defendants were fully prepared to wait to challenge Plaintiffs' infirm class allegations on the schedule the Court recently set. But Plaintiffs' last-second change of course shows that there is no reason for delay. At this point, Plaintiffs' "fail-safe" class allegations are properly stricken without leave to amend. That approach is supported by multiple factors: (1) Plaintiffs failed to disclose much less meet and confer with Defendants about this amendment as ordered by the Court, which could have obviated the need for this motion; (2) we are on the fifth complaint filed in these two consolidated actions over a period of 18 months, and past the deadline to amend pleadings without leave of court; and (3) Plaintiffs recognize the insurmountable problems their proposed class presents and have tried to mask rather than address them.

As Google argued in connection with the Initial Case Management Conference, a determination of whether a class should proceed "[a]t an early practicable time" (Fed. R. Civ. P. 23(c)(1)(A)) is especially critical in this case because Plaintiffs intend to pursue boundless discovery into the generative artificial intelligence models that underlie much of what Google does today. For example, they have issued discovery requests seeking *all* training data for every generative AI product and model Google has ever developed and is currently developing and demanding "all Documents and Communications related to the 'millions of content licenses'" that would be implicated by the class they imagine. The burden of such discovery would be disproportionate even in a class action, but it is especially so in a case involving a handful of plaintiffs who stand to win only modest amounts even in a best case. Striking Plaintiffs' class allegations will no doubt curtail discovery excesses. But if the Court were to grant Plaintiffs a final chance to plead even a facially viable class, Defendants respectfully request that it mandate what it urged at the Case Management Conference: that discovery be focused on class issues at the outset and stayed as to other matters, absent good cause, pending a ruling on class certification. Such an approach would focus the parties on the first-order class question, deferring and presumably avoiding the discovery quagmire that Plaintiffs envision.

# BACKGROUND

**A.      Plaintiffs' Shifting Class Definition**

Until very recently, Plaintiffs imagined a putative class of copyright holders whose works were used by Google to train its generative AI models:

- ***Leovy* Complaints:**  Leovy's original complaint alleged a putative "Copyright Class" consisting of "[a]ll persons in the United States who own a United States copyright in any work that was used as training data for Defendants' Products."  ECF No. 1 ¶ 195(b).  This class definition remained unchanged through the first and second amended *Leovy* complaints.  *See* ECF No. 28 ¶ 398(b); ECF No. 47 ¶ 90.

- ***Zhang* Complaint:**  "All persons or entities domiciled in the United States that own a United States copyright in any work that Google used as a training image for the Google-LAION Models during the Class Period."  *Zhang v. Google LLC*, No. 3:24-cv-02531 (N.D. Cal. Apr. 26, 2024), ECF No. 1 ¶ 63.

- **Request to Appoint Interim Lead Counsel:**  Only a month before filing the consolidated Complaint, Plaintiffs continued to say that they would seek to represent a class encompassing "all persons in the United States who own a registered United States copyright in any work that was used to train a Google generative AI product, such as Gemini or Imagen."  ECF No. 80 at 1-2.

These definitions did not confine class membership to plaintiffs whose copyrights are (1) valid and (2) infringed by Google (3) without authorization.

The Court's November 7, 2024 Order Regarding Consolidation Plan required the parties to "meet and confer regarding Plaintiffs' contemplated amendments to the complaint."  ECF No. 77 at 2.  It directed Plaintiffs, by December 6, 2024, to "disclose all new parties, new claims, and new allegations not included in" their previous complaints.  *Id.*  The parties were then to meet and confer again a week later, with Google disclosing its anticipated grounds for a motion to dismiss based on the disclosed new allegations.  *Id.*  This process was plainly intended, in part, to narrow issues and avoid unnecessary motion practice.  The Court also ordered Plaintiffs to file a highlighted version of the Complaint "that identifies all new parties, claims, and allegations."  *Id.*

The parties met and conferred on December 6, 2024, and Plaintiffs disclosed to Google the changes they said they intended to make in the consolidated Complaint.  Plaintiffs did not disclose any intention to modify their proposed class definition.  To the contrary, in response to

Google's specific questions on the subject, Plaintiffs' counsel stated that Plaintiffs expected the class definition to closely mirror the definition used in the *Leovy* complaint.

At the Case Management Conference held on December 18, 2024, and in its submissions ahead of time, Google argued that individualized issues would ultimately preclude certification of any class in this case and that it was important to resolve class certification early to ensure that discovery was appropriately tailored, proportional to the proper scope of this case, and conducted efficiently. CMC Tr. 10-11, 19-21; ECF No. 83 at 2, 8; ECF No. 85 at 1-2. Counsel for Google pointed to "all of the individualized issues associated with who owns the work, is the work registered, when was the work registered, was the work licensed expressly or impliedly, what kind of injury has the plaintiff suffered, if any, what remedies are they entitled to." CMC Tr. 19:13-17. For example, Google has "millions of content licenses that authorize Google to use content for purposes of developing its products and services," which "come from all over the world, … under different laws, under different terms for different periods of time, covering different content," and the individualized legal and factual issues associated with licensing alone would be sufficient to defeat class certification under relevant precedent. *Id.* at 19:20-20:10.

Two days later, Plaintiffs filed the consolidated Complaint with a proposed class definition that was significantly different from anything they had ever mentioned to Defendants or the Court. Plaintiffs highlighted the definition in yellow (ECF No. 92 ¶ 164), per the Court's Order (ECF No. 77 at 2), making clear that it was a new claim or allegation. The new definition purports to extend class membership only to persons who own a "valid copyright" that has been "infringed upon" by Google "without license or authorization." CAC ¶ 164. It also attempts to define away individualized issues around the timing of copyright registrations by requiring members to have held registrations "prior to Google's [supposedly] unauthorized use." *Id.*

## B.    Plaintiffs' Individualized Claims

Based just on the Complaint, it is clear that the named Plaintiffs' claims for copyright infringement will require myriad individualized inquiries of the kind that are inherent in any claim that Google infringed valid, registered copyrights without authorization:

- **Plaintiff Mike Lemos:**  All three of the images asserted by Lemos appear to have been licensed to Google.  Lemos uploaded two of those images, *Caffeine Case from Outer Space* and *Shark Fink Sticker*, to Blogger, a service owned by Google, under terms authorizing Google to use such content to develop new technologies and services.[1]  Lemos also uploaded *Shark Fink Sticker* to YouTube Shorts under terms allowing Google to use it.[2]  The third image, *Butterflies and Snakes*, was created for a band to use as an album cover and may be a work for hire in which Lemos holds no rights.[3]  At minimum, the image was licensed to the band, and the band's online music distribution service, CDBaby, in turn provided that image to YouTube under license.[4]  Discovery and summary judgment briefing will show that Google's licenses bar Lemos' supposedly typical and representative claims.

- **Plaintiff Hope Larson:**  In the *Zhang* complaint, Larson claimed infringement of an image she alleged to have been registered as part of her book, *Chiggers*.  *Zhang*, ECF No. 1, Ex. B at 3.  As Google pointed out in its prior motion to dismiss, the asserted image does not appear in the deposit copy of *Chiggers* at the Library of Congress, and thus is not covered by that book's registration.  *Id.*, ECF No. 24 at 12.  Larson opposed that motion to dismiss.  *Id.*, ECF No. 26 at 10-11.  But she has now dropped that work from the consolidated Complaint, acknowledging the problems with a claim that she previously contended was typical and representative.

- **Plaintiff Steve Almond:**  When the parties met and conferred last month, Plaintiffs' counsel stated that Almond would assert infringement of the book, *God Bless America: Stories*.  Google responded that it would move to dismiss on the ground that the book's copyright registration lists someone else as owner of that work.[5]  Google also explained that the work appeared to be a compilation of previously published short stories whose registration would not extend to that previously published material.  Plaintiffs then dropped that supposedly typical and representative infringement claim from their Complaint.  But Almond still asserts another work, *Which Brings Me to You: A Novel in Confessions*, that raises multiple issues of its own.  The work's registration states some of the text was previously published and that only the new and revised text is covered.[6]  The registration also identifies a co-author, raising issues of joinder, whether Almond's contributions are

---

[1] *Compare* https://mlemos.blogspot.com/2006/02/crazed-alien-craving-caffeine.html *and* https://mlemos.blogspot.com/2006/02/monster-shark.html *with* CAC Ex. B at 10-23.  *See also* https://policies.google.com/terms?hl=en.

[2] *See* https://www.youtube.com/shorts/SMrQvUGrFP0; https://www.youtube.com/t/terms.

[3] *See* https://dribbble.com/shots/8234734-Crooked-Eye-Tommy-Butterflies-Snakes-2015-Debut-CD-Cover-Art.  *Compare id. with* CAC Ex. B at 24-30.

[4] *See* https://www.youtube.com/watch?v=QoPnOgys0Lk; https://www.youtube.com/t/terms.

[5] *See* https://publicrecords.copyright.gov/detailed-record/25680088.

[6] *See* https://publicrecords.copyright.gov/detailed-record/16545031.

independently copyrightable, and whether the co-author may have granted licenses.  All of that will need to be investigated.

● **Plaintiff Sarah Andersen:**  Google explained in both its prior and latest motion to dismiss that the five copyrighted compilations Anderson asserts in this case contain individual images that are not covered by the corresponding registrations, necessitating dismissal of those supposedly typical and representative claims.

There are a host of other individualized issues in the named Plaintiffs' claims that will need to be explored in discovery.  The same would be true of the claims of each of the supposedly "millions" of putative class members.  CAC ¶ 11.

## C.    Plaintiffs' Approach to Discovery

At the December 18 Case Management Conference, the Court set a schedule with Plaintiffs' class certification motion due on August 8, 2025, before the close of fact discovery. ECF No. 88 at 3.  The Court also urged the parties "to really focus on discovery in terms of what is needed for the class cert to begin with."  CMC Tr. 21:19-22:3.  Yet Plaintiffs have made plain their intent to pursue expansive, burdensome demands unrelated to class certification.  In their initial disclosures, for example, they listed approximately 60 current and former Google employees as discovery targets, plus some number of other "[u]nknown executives and employees."  And in their first discovery requests they seek, among many other things, *all* of the training data used to train every generative AI product and model Google has ever developed or is currently developing, including but not limited to 16 named models.  They also request "[a]ll Documents and Communications related to Google's internal technical [and] engineering documentation of" these generative AI products and models.  And they demand "[a]ll Documents and Communications related to the 'millions of content licenses'" that Google may have relating to any work that might be implicated.

## LEGAL STANDARD

"Under Rules 23(c)(1)(A) and 23(d)(1)(D), as well as pursuant to Rule 12(f), this Court has authority to strike class allegations prior to discovery."  *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010).  Rule 23 instructs courts to address the merits of

certification "[a]t an early practicable time," Fed. R. Civ. P. 23(c)(1)(A), and the Court need not wait until certification before disposing of class issues, *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939-41 (9th Cir. 2009).  Rule 23(d)(1)(D) authorizes the Court to "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."  Fed. R. Civ. P. 23(d)(1)(D).  And Rule 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," Fed. R. Civ. P. 12(f), so as "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).

The Court may "strike class allegations at the pleading stage where the class as defined in the complaint cannot be certified."  *Goodrich v. Cross River Bank*, 2022 WL 2954933, at *1 (N.D. Cal. July 26, 2022).  Courts routinely grant motions to strike where the class allegations are facially defective.  "[W]here the problem is facially evident, it makes sense to address the issue early on."  *Baton v. Ledger SAS*, ---F. Supp. 3d ----, 2024 WL 3447511, at *16 (N.D. Cal. July 16, 2024); *see also Harris v. LSP Prods. Grp., Inc.*, 2021 WL 2682045, at *14-15 (E.D. Cal. June 30, 2021) (granting motion where classwide claims were "obviously defective"); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990-91 (N.D. Cal. 2009) (where "the issues are plain enough from the pleadings," striking improper class allegations would "avoid the expenditure of time and money that must arise from litigating spurious issues").  The decision whether to strike class allegations lies within the Court's sound discretion.  *See Whittlestone*, 618 F.3d at 973.

As explained below, proposed fail-safe classes are facially defective and thus courts in this Circuit routinely strike them at the pleadings stage.  *See, e.g.*, *Tomaszewski v. Circle K Stores Inc.*, 2021 WL 2661190, at *2-3 (D. Ariz. Jan. 12, 2021) (striking class allegations where class definition included lack of consent and thus required putative members to prevail on liability to belong to class); *Van Lith v. iHeartmedia & Ent., Inc.*, 2016 WL 4000356, at *4-5 (E.D. Cal. July 25, 2016) (striking proposed class of employees whose wage statements "fail[ed] to accurately show [information] as required by [state law]"); *see also Salaiz v. eHealthIns. Servs., Inc.*, 2023 WL 2622138, at *5 (N.D. Cal. Mar. 22, 2023) (striking proposed class of

TCPA claimants who had not "consent[ed]" to defendant's calls); *Winters v. Loan Depot LLC*, 2022 WL 22865378, at \*7-8 (D. Ariz. Mar. 17, 2022) (same); *Kevari v. Scottrade, Inc.*, 2018 WL 6136822, at \*9 (C.D. Cal. Aug. 31, 2018) (striking proposed class of employees who "were discriminated against"); *Dodd-Owens v. Kyphon, Inc.*, 2007 WL 420191, at \*3 (N.D. Cal. Feb. 5, 2007) (similar); *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008) (striking proposed class of consumers who purchased computers for which defendant "falsely advertised" prices); *Cashatt v. Ford Motor Co.*, 2021 WL 1140227, at \*2-3 (W.D. Wash. Mar. 24, 2021) (striking proposed class of drivers who "were injured from carbon monoxide"); *cf. Angulo v. Providence Health & Servs. – Wash.*, 2024 WL 3744258, at \*7-8 (W.D. Wash. Aug. 9, 2024) (striking, prior to merits discovery, proposed class of patients who underwent "medically unnecessary" spinal surgeries); *Goodrich*, 2022 WL 2954933, at \*2-3 (proposed class of persons who "submitted complete [loan] applications" but were told the applications were denied for being incomplete "would appear to create ... an uncertifiable, 'fail-safe' class").

## ARGUMENT

**A.    The Court Should Strike the Class Allegations Because Plaintiffs' Proposed "Fail-Safe" Class Is Facially Uncertifiable.**

To qualify for class membership under Plaintiffs' proposed class definition, a putative claimant must prove a meritorious copyright infringement claim. This "textbook example of an impermissible fail-safe class" is uncertifiable on its face. *Lith*, 2016 WL 4000356, at \*5; *see also Olean Wholesale*, 31 F.4th at 669 n.14. The Complaint's class allegations should accordingly be stricken.

### 1.    Fail-safe classes are improper.

"[A] party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Rule 23's requirements include commonality, which turns on "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation," *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1052 (9th Cir. 2015), and predominance and superiority, i.e., that "questions of law or fact common to class members predominate over any questions affecting only individual

1    members, and that a class action is superior to other available methods for fairly and efficiently

2    adjudicating the controversy," taking into account the "difficulties in managing a class action."

3    Fed. R. Civ. P. 23(b)(3).

4          One category of classes that fails the requirements of Rule 23 is the "fail-safe" class.  A

5    fail-safe class is one whose membership turns on establishing the liability of the defendant.  *Ruiz*

6    *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 n.7 (9th Cir. 2016).  By "presuppos[ing]"

7    success on the merits," *In re Toll Roads Litig.*, 2018 WL 4952594, at *6 (C.D. Cal. July 31,

8    2018), a fail-safe class definition "determines the scope of the class only once it is decided that a

9    class member was actually wronged."  *Kamar*, 375 F. App'x at 736; *see also Messner v.*

10   *Northshore Univ. Health Sys.*, 669 F.3d 802, 825 (7th Cir. 2012) (a fail-safe class "is defined so

11   that whether a person qualifies as a member depends on whether the person has a valid claim").

12         Such a class "is improper because a class member either wins or, by virtue of losing, is

13   defined out of the class and is therefore not bound by the judgment."  *Olean Wholesale*, 31 F.4th

14   at 669 n.14 (quoting *Messner*).  That is both "palpably unfair to the defendant" and

15   "unmanageable."  *Dixon v. Monterey Fin. Servs. Inc.*, 2016 WL 3456680, at *4 (N.D. Cal. June

16   24, 2016) (quoting *Kamar*).  Fail-safe classes are unfair because they allow putative class

17   members to evade the preclusive effect of a final judgment.  *See Young v. Nationwide Mut. Ins.*

18   *Co.*, 693 F.3d 532, 538 (6th Cir. 2012) ("[A]llow[ing] putative class members to seek a remedy

19   but not be bound by an adverse judgment" precludes "the final resolution of the claims of *all*

20   class members that is envisioned in class action litigation.").  They are unmanageable because

21   class membership can be determined only through an evaluation on the merits with respect to

22   each potential member.  *Pepka v. Kohl's Dep't Stores, Inc.*, 2016 WL 8919460, at *3-4 (C.D.

23   Cal. Dec. 21, 2016) (improper fail-safe class limited to those who received calls without "prior

24   express consent" would "require the Court to engage in an improper merits evaluation to

25   determine who is in the class").  Fail-safe classes also impede the identification of persons to

26   whom class notices should be sent and the preservation of absent class members' right to opt out

27   before a final merits determination.  *Kamar*, 375 F. App'x at 736; *Toll Roads Litig.*, 2018 WL

28

1  4952594, at *7 ("The ability to opt out disappears if notice cannot be given before a final merits

2  determination.").

3        For all of these reasons, the Ninth Circuit, sitting en banc, recently instructed that courts

4  "may not … create a 'fail safe' class."  *Olean Wholesale*, 31 F.4th at 669 n.14 (citing *Ruiz Torres*

5  and *Messner*); *see also Angulo*, 2024 WL 3744258, at *8 ("*Olean* expressly admonishes courts

6  that they must not create fail safe classes.").

7        **2.    Plaintiffs allege a fail-safe class.**

8        Here, Plaintiffs have created an improper fail-safe class in multiple ways.  To begin, the

9  proposed class definition limits the class to those who "*own*" a "*valid*" copyright registration that

10  was "*infringed*" by Google.  CAC ¶ 164 (emphasis added).  By requiring putative class members

11  to demonstrate ownership, valid registration, and infringement, Plaintiffs have tied class

12  membership to the *prima facie* elements of their infringement claims.  *See Briggs v. Blomkamp*,

13  70 F. Supp. 3d 1155, 1163 (N.D. Cal. 2014) ("To prevail on a claim of copyright infringement, a

14  plaintiff must demonstrate ownership of a valid copyright, and infringement ….."), *aff'd*, 714 F.

15  App'x 712 (9th Cir. 2018).  Such a class definition is indisputably fail-safe because it

16  presupposes success on each class member's *prima facie* case.  *See, e.g.*, *Greene v. Select*

17  *Funding, LLC*, 2021 WL 4926495, at *5 (C.D. Cal. Feb. 5, 2021) (proposed definition "would

18  render the class fail-safe since [it] tracks the elements of a TCPA claim"); *Cashatt*, 2021 WL

19  1140227, at *3 (striking as fail-safe a class defined as those who "were injured from carbon

20  monoxide" because injury and causation are elements that must be established to prove liability).

21        Plaintiffs did not stop at their *prima facie* case, however.  By requiring that members'

22  copyrights have been "infringed … by Google" (CAC ¶ 164), Plaintiffs have also purported to

23  define away any fair use defense to a given claim of infringement.  "[T]he fair use of a

24  copyrighted work … is not an infringement of copyright."  17 U.S.C. § 107; *see also Sony Corp.*

25  *of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984) ("[A]nyone who … makes a fair

26  use of the work is not an infringer of the copyright with respect to such use.").  Although fair use

27  is often labeled an affirmative defense in the procedural sense of burden-shifting, it negates the

28  element of infringement.  *See Lenz v. Univ. Music Grp.*, 815 F.3d 1145, 1152 (9th Cir. 2016).

And by purporting to limit the class expressly to those whose rights were infringed "without license or authorization" (CAC ¶ 164), Plaintiffs clearly seek to define away another of Google's important (and highly individualized) defenses. *See Niantic, Inc. v. Glob.++*, 2020 WL 1548465, at *9 (N.D. Cal. Jan. 30, 2020) ("The existence of an express or implied license is an affirmative defense to a claim of copyright infringement.").[7]

This makes the class fail-safe many times over. *See Tomaszewski*, 2021 WL 2661190, at *3 (striking class definition as fail-safe because it "incorporate[d] the affirmative defense of consent"); *Dixon v. Monterey Fin. Servs.*, 2016 WL 4426908, at *1-2 (N.D. Cal. Aug. 22, 2016) (classes of persons who received calls without having "previously consented" or after "revok[ing] any prior express consent" stricken as fail-safe). Indeed, the Ninth Circuit recently observed that identical language in another proposed copyright class ("without a license or authorization") was dropped "to avoid the fail-safe problem." *Kihn v. Bill Graham Archives LLC*, 2022 WL 18935, at *2 (9th Cir. Jan. 3, 2022) (citing *Ruiz Torres*, 835 F.3d at 1138 n.7).

### 3.     Plaintiffs' class allegations should be stricken.

Plaintiffs cannot proceed with their fail-safe class definition. "Deciding who fell into Plaintiff's proposed class would 'require the Court to engage in an improper merits evaluation to determine who is in the class,'" with each potential class member "subject to a 'mini-hearing' on 'the merits of each case.'" *Pepka*, 2016 WL 8919460, at *4 (striking fail-safe class). Even assuming the parties could somehow identify those who might theoretically be members, the process of litigating actual membership would undermine any point to certification.

Consider the practical implications in this case, for example. All three of the works asserted by Plaintiff Mike Lemos were provided to various Google services under terms of service that Google will show grants it a license to use them to train generative AI models. *See supra* at 6. The facts and law around those licenses (among many other issues) will be the

---

[7] As with fair use, license is an affirmative defense only in the procedural (burden-shifting) sense. Authorized use is not infringing, another problem with Plaintiffs' definition. *See Sony Corp.*, 464 U.S. at 433 ("[A]nyone who is authorized by the copyright owner to use the copyrighted work in a way specified in the statute … is not an infringer of the copyright with respect to such use.").

1    subject of discovery and a merits determination in this case.  If the Court were to certify

2    Plaintiffs' proposed class and then subsequently rule at summary judgment that Google had a

3    "license or authorization" to train its generative AI models with Mr. Lemos' works, it would turn

4    out that he was not even a member of the class he purported to represent.  That would be a

5    problem, because to serve as a class representative Mr. Lemos would have needed to be "a

6    member of the class which he or she seeks to represent at the time the class action is certified."

7    *Sosna v. Iowa*, 419 U.S. 393, 403 (1975).  But Mr. Lemos' membership—indeed *all* Plaintiffs'

8    class membership—would be in dispute at the time of class certification because it would be

9    bound up in the as-yet undetermined merits.  This is a problem not just for the ten named

10   Plaintiffs.  It would be repeated across the allegedly "millions" of other alleged class members

11   and works that Plaintiffs seek to bring into this case.  CAC ¶ 11.  An investigation into and

12   adjudication of each putative class member's uses of each of his or her works, and a

13   determination as to whether they granted Google a license directly, indirectly through another

14   party, expressly or impliedly, and the scope of each license would be needed to resolve whether

15   the person belonged to the class.

16          As another example, if the Court were to certify the proposed class but then Google

17   prevailed at summary judgment on fair use against the named Plaintiffs, no other class members

18   would be bound because anyone as to whom Google has a fair use defense would be defined out

19   of the class:  to the extent Google's conduct constitutes fair use as to an individual, that

20   individual's copyright was not "infringed" (CAC ¶ 164).  *See* 17 U.S.C. § 107.  This exemplifies

21   how "[f]ail-safe classes … make it impossible for a defendant to prevail against the class."

22   *Boucher v. First Am. Title Ins. Co.*, 2012 WL 3023316, at *4 (W.D. Wash. July 24, 2012).

23          These are precisely the "unmanageable" and "palpably unfair" results the Ninth Circuit

24   has repeatedly warned against.  *Kamar*, 375 F. App'x at 736; *see also Olean Wholesale*, 31 F.4th

25   at 669 n.14.  The Court should accordingly strike Plaintiffs' flawed, fail-safe class allegations as

26   Courts routinely do.  *See supra* at 8-9.

27

28

1
2

**B.      Plaintiffs' Shift to a Fail-Safe Class Shows the Fundamental Problems Underlying Their Class Action.**

3          As Plaintiffs' last-minute gambit shows, predicating class membership on ownership,

4    registration, validity, infringement, and absence of a license does not mean the Court can

5    sidestep the questions of whether each purported class member's copyright is valid, owned by

6    the claimant, supported by a timely and valid registration, and infringed by or licensed to

7    Google.  The Court still must undertake an individualized analysis of these and other issues to

8    determine who forms part of the class.  Conversely, *removing* these requirements from the class

9    definition would not remove those issues from the case.  The Court will still be left having to

10    analyze and decide those same issues to determine the merits of each class member's claim.

11          The Ninth Circuit recently observed this phenomenon in *Kihn*.  There, the plaintiffs

12    initially attempted to define a copyright class as all owners of copyrights in works exploited by

13    the defendants "without a license or authorization."  2022 WL 18935, at *1.  After the

14    defendants objected that this constituted an impermissible fail-safe class, plaintiffs removed the

15    "without a license or authorization" qualifier "to avoid the fail-safe problem."  *Id.* at *2.  The

16    district court then certified the class, but the Ninth Circuit reversed.  The court noted that the

17    plaintiffs had also altered their class definition to drop another category of works as to which

18    there was evidence of consent by the putative class representative.  *Id*.  This illustrated why

19    individualized issues predominated:

20
21
22
23

> Plaintiffs may not accommodate differentiated evidence of their own consent
> while asking that every other artist's recordings be presumed unauthorized and
> included in the classes by default.  If the case were litigated to judgment,
> individual issues of license and consent would predominate for the absent class
> members, who have not yet had the opportunity Plaintiffs had to sift through their
> claims and exclude those that lack merit.

24    *Id.*; *see also Pepka*, 2016 WL 8919460, at *3-4 (striking proposed class of persons who received

25    telephone calls without consent as fail-safe, and because "individualized issues"—such as

26    "which of the class members granted consent in the first place, who among that group revoked

27    consent," "how such revocation occurred, when it occurred, etc."—"would predominate").

28

1    The same holds true here.  The named Plaintiffs have already silently dropped certain

2    asserted works that Defendants showed to have registration or ownership problems.  *See, e.g.*,

3    *supra* at 6.  And that barely scratches the surface of what will need to be investigated as

4    discovery proceeds; myriad other individualized issues (including license) will be litigated just as

5    to these Plaintiffs.  *See, e.g.*, *Football Ass'n Premier League v. YouTube, Inc.*, 297 F.R.D. 64,

6    66-67 (S.D.N.Y. 2013) (copyright claim requires a work-by-work analysis of inherently

7    individualized issues including whether each work is supported by a valid registration, is owned

8    by the claimant, and was licensed, expressly or impliedly, for the use defendant made).

9    Investigating and adjudicating such issues as to the supposedly millions of absent class members,

10   even assuming they could be identified, would be impossible (and would certainly predominate).

11        This is not a novel insight.  Courts consistently hold that copyright claims are not suitable

12   for class-action treatment because their individualized nature presents "overwhelming problems

13   with commonality and predominance that in themselves bar certification."  *Schneider*, 674 F.

14   Supp. 3d at 718 (denying certification because the central issues of copyright ownership,

15   infringement, and defenses to infringement were incapable of classwide proof, necessitating

16   "highly individualized inquiries into the merits" of each claim).  "Every copyright claim turns

17   'upon facts which are particular to that single claim of infringement,'" and "[e]very copyright

18   claim is also subject to defenses that require their own individualized inquiries."  *Id.* at 717

19   (citation omitted); *see also, e.g.*, *Kihn*, 2022 WL 18935, at *2 (reversing certification in

20   copyright class action due to predominance of "individual issues of license and consent");

21   *Football Ass'n*, 297 F.R.D. at 65-66 ("Generally speaking, copyright claims are poor candidates

22   for class-action treatment," and the "accumulation of all the copyright claims, and claimants, into

23   one action will not simplify or unify the process of their resolution, but multiply its difficulties

24   over the normal one-by-one adjudications of copyright cases."); *Palmer Kane LLC v. Scholastic

25   Corp.*, 2012 WL 2952898, at *11 (S.D.N.Y. July 16, 2012) (denying certification of copyright

26   class action based on predominance of individualized licensing issues).

27        We are now a year and a half into these cases and past the deadline to amend pleadings

28   without leave.  Plaintiffs ignored the Court's order to meet and confer about this significant

change.  Rather than allege a viable class or explain how they imagine one that might someday be certified, Plaintiffs acknowledged the predominance problem by trying to define it away in the consolidated Complaint.  At this point, allowing Plaintiffs to subject Google to overbroad and burdensome discovery based on the illusion of a class would be wasteful and unjust.  Because Plaintiffs' proposed class is facially improper and unmaintainable, the Court should strike Plaintiffs' class allegations without leave to amend.  *See Kevari*, 2018 WL 6136822, at *7-12 (striking class allegations without leave to amend where Plaintiff alleged "'fail safe' classes" and her "claims raise[d] numerous individual questions" showing absence of predominance and superiority); *Lautemann v. Bird Rides, Inc.*, 2019 WL 3037934, at *7-8 (C.D. Cal. May 31, 2019) (striking class allegations without leave to amend where "'the very nature of the claims that Plaintiff is pursuing,' which require inquiries into individual class members' circumstances," means that "class members' claims necessarily turn on individualized questions").

**C.     Alternatively, the Court Should Stay Discovery Unrelated to Class Certification.**

Even if the Court were to allow Plaintiffs to again replead their class allegations, to ensure efficient case management and avoid unnecessary, disproportionate, and indeed abusive discovery, the Court should limit discovery to those issues related to class certification until that matter is decided, absent a showing of good cause.  This would be consistent with the Court's statement at the Case Management Conference that "it makes sense to really focus on discovery in terms of what is needed for the class cert to begin with."  CMC Tr. 21:19-21.  And it would restrict Plaintiffs' ability to use the putative class action status of this case to impose undue burden on Google when there is no prospect of a viable class.

"Precertification discovery lies entirely within the Court's sound discretion," and should "be limited so that it does not place an undue burden on the opposing party."  *Valentine v. Crocs, Inc.*, 2024 WL 1636716, at *2 (N.D. Cal. Apr. 15, 2024).  "[G]enerally, discovery in a putative class action at the precertification stage is limited to certification issues, such as the number of class members, the existence of common questions, typicality of claims, and the representatives' ability to represent the class," and "discovery on the merits is usually deferred until it is certain that the case will be allowed to proceed as a class action," although the two areas can certainly

1  overlap.  *Id.*  Although discovery in *Valentine* had not been formally bifurcated or phased,

2  affording some leeway on the merits/certification distinction, the court nevertheless denied

3  discovery that was unduly burdensome and not proportionate to the needs of the case, including

4  because it was not needed to make the plaintiffs' class certification arguments.  *Id.* at *3-5.

5      These principles should help guide discovery in this case if certification remains a

6  theoretical (if not realistic) possibility.  And a formal stay of discovery unrelated to certification

7  would enforce the reasonable limitations of Rule 26(b)(1).  As Google's counsel explained at the

8  Case Management Conference, the level of discovery that Plaintiffs seek and the resulting

9  burdens on Google would be difficult to justify in a class action, but they are completely

10  unwarranted where ten individual plaintiffs are asserting copyright claims involving limited

11  stakes.  CMC Tr. 10:10-11:1.  This is not, and practically speaking will never be, a case that

12  supports the scores of custodians and the production of petabytes or exabytes of data and

13  documents that Plaintiffs' discovery requests confirm they intend to pursue.  And to be clear, the

14  approach Defendants contemplate would not be inflexible.  If either party demonstrates good

15  cause for discovery unrelated to class certification, they would be entitled to pursue it.

16                                    **CONCLUSION**

17      For the foregoing reasons, the Court should strike the class allegations in the Complaint

18  without leave to amend.  If leave to amend is granted, the Court should stay discovery unrelated

19  to class certification until that issue is decided, absent a showing of good cause.

20

21                                    Respectfully submitted,

22  Dated:  January 17, 2025          By:  */s/ Eric P. Tuttle*
                                           David H. Kramer, SBN 168452
23                                         Email: dkramer@wsgr.com
                                           Maura L. Rees, SBN 191698
24                                         Email: mrees@wsgr.com
                                           Eric P. Tuttle, SBN 248440
25                                         Email: eric.tuttle@wsgr.com

26                                         *Counsel for Defendants*
                                           GOOGLE LLC AND ALPHABET INC.
27

28