Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
**BLEICHMAR FONTI & AULD LLP**
1330 Broadway, Suite 630
Oakland, CA 94612
Tel. (415) 797-2617
lweaver@bfalaw.com
adavis@bfalaw.com
jsamra@bfalaw.com

Gregory S. Mullens (admitted *pro hac vice*)
**BLEICHMAR FONTI & AULD LLP**
75 Virginia Road, 2nd Floor
White Plains, NY 10603
Tel. (415) 445-4006
gmullens@bfalaw.com

Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Evan A. Creutz (State Bar. No. 349728)
Elissa A. Buchanan (State Bar No. 249996)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone:    (415) 500-6800
Facsimile:    (415) 395-9940
Email:    jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
eabuchanan@saverilawfirm.com
ecreutz@saverilawfirm.com

*Plaintiffs' Interim Co-Lead Counsel*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| *In re Google Generative AI Copyright Litigation* | Master File Case No. 5:23-cv-03440-EKL |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT

## TABLE OF CONTENTS

**STATEMENT OF ISSUES TO BE DECIDED** ................................................**1**

**INTRODUCTION**.................................................................................**1**

**STATEMENT OF RELEVANT FACTS** .........................................**2**

**ARGUMENT** ................................................................................**3**

   **I.**   **Plaintiffs' CAC Provides Defendants Notice of Their Claims as Required by Rule 8.** ...................................................................**4**

      **A.**   **Plaintiffs Precisely Identify Defendants' Infringement (or Vicarious Infringement) of Their Copyrighted Works.** ............................................**4**

   **II.**  **Plaintiffs Have Pled Sufficient Facts in Support of Direct Copyright Infringement Because They Detailed the Works Infringed by Defendants and Provided Copyright Registrations for Those Works.** .........................**7**

      **A.**   **Plaintiffs Adequately Allege Registration of Their Copyrights.** .................**8**

      **B.**   **Plaintiffs Sufficiently Identify Plaintiffs' Infringed Works.** ....................**12**

   **III.** **Plaintiffs State a Viable Claim for Vicarious Copyright Infringement.** .......................**15**

      **A.**   **Alphabet Failed to Exercise Its Control Over Google's Infringement.** .....................**15**

      **B.**   **Alphabet Derived a Direct Financial Benefit from Google's Infringement.** .............**17**

   **IV.** **Plaintiffs Properly Plead Their Entitlement to Injunctive Relief as Authorized by the Copyright Act.** ................................................**18**

      **A.**   **Preemptory Denial of Injunctive Relief is Unwarranted Where Copyright Infringement is Ongoing.** ................................................**20**

      **B.**   **The *eBay* Factors Weigh in Favor of an Injunction.**.....................................**22**

**CONCLUSION** ................................................................................**24**

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                            **Page(s)**

*A&M Records, Inc. v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001) ........................................................................7, 16, 17

*AJ Mgmt. Consulting, LLC v. MBC FZ-LLC*,
    2014 WL 2878891 (N.D. Cal. June 24, 2014)..............................................................9

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*,
    747 F.3d 673 (9th Cir. 2014) .................................................................................8, 9, 11

*Ambrosetti v. Oregon Catheter Press.*,
    458 F. Supp. 3d 1013 (N.D. Ind. 2020) ...............................................................9, 10

*Am. Vitagraph, Inc. v. Levy*,
    659 F.2d 1023 (9th Cir. 1981) .......................................................................................11

*Andersen v. Stability AI Ltd.*,
    700 F. Supp. 3d 853 (N.D. Cal. 2023).........................................................................2

*Andersen v. Stability AI Ltd.*,
    2024 WL 3823234 (N.D. Cal. Aug. 12, 2024) ...........................................................2

*Apple, Inc. v. Psystar Corp.*,
    673 F. Supp. 2d 943 (N.D. Cal. 2009)........................................................................24

*Archer & White Sales, Inc. v. Henry Schein, Inc.*,
    2016 WL 7157421 (E.D. Tex. Dec. 7, 2016) .......................................................19, 24

*Arista Records, LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010) .........................................................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................................4

*B.K. v. Snyder*,
    922 F.3d 957 (9th Cir. 2019) ........................................................................................20

1  *Beastie Boys v. Monster Energy Co.*,
2      87 F. Supp 3d 672 (S.D.N.Y. 2015) ...................................................21
3  *Becton, Dickinson & Co. v. Cytek Bioscis. Inc.*,
4      2020 WL 1877707 (N.D. Cal. Apr. 15, 2020) ..........................................5
5  *Bell Atl. Corp. v. Twombly*,
6      550 U.S. 544 (2007) .........................................................................4
7  *Bender v. LG Elecs., U.S.A., Inc.*,
8      2010 WL 889541 (N.D. Cal. Mar. 11, 2010) ............................................6
9  *Blain v. Liberty Mut. Fire Ins. Co.*,
10     2023 WL 2436003 (S.D. Cal. Mar. 9, 2023) ............................................22
11 *Body Jewelz, Inc. v. Valley Forge Ins. Co.*,
12     241 F. Supp. 3d 1084 (C.D. Cal. 2017) ..................................................11
13 *Brunson v. Cook*,
14     2023 WL 2668498 (M.D. Tenn. Mar. 28, 2023) ........................................10
15 *Cadence Design Sys. v. Pounce Consulting, Inc.*,
16     2019 WL 1768619 (N.D. Cal. Apr. 1, 2019) ...........................................23
17 *City of Los Angeles v. Wells Fargo & Co.*,
18     22 F. Supp. 3d 1047 (C.D. Cal. 2014) ................................................3, 4
19 *Clifton v. Houghton Mifflin Harcourt Publ'g Co.*,
20     152 F. Supp. 3d 1221 (N.D. Cal. 2015) ................................................13
21 *Cole v. John Wiley & Sons*,
22     2012 WL 3133520 (S.D.N.Y. Aug. 1, 2012) ...........................................14
23 *Cook v. Meta Platforms Inc.*,
24     2023 WL 6370891 (N.D. Cal. Jan. 4, 2023) ...........................................17
25 *Corbello v. Valli*,
26     974 F.3d 965 (9th Cir. 2020) ...............................................................8

27
28

1  *DBW Partners, LLC v. Bloomberg, L.P.*,
2      2019 WL 5892489 (D.D.C. Nov. 12, 2019) ................................................................. 13
3  *Doe v. Meta Platforms, Inc.*,
4      690 F. Supp. 3d 1064 (N.D. Cal. 2023) ....................................................................... 3
5  *Dolman v. Agee*,
6      157 F.3d 708 (9th Cir. 1998) ..................................................................................... 11
7  *E. & J. Gallo Winery v. EnCana Energy Servs.*,
8      2004 WL 7342782 (E.D. Cal. Oct. 13, 2004) .............................................................. 6
9  *eBay v. MercExchange*,
10     547 U.S. 388 (2006) ........................................................................................... 19, 22
11 *Ellison v. Robertson*,
12     357 F.3d 1072 (9th Cir. 2004) ................................................................................... 17
13 *Enter. Mgmt. Ltd., Inc. v. Construx Software Builders, Inc.*,
14     73 F.4th 1048 (9th Cir. 2023) ...................................................................................... 9
15 *Feingold v. RageOn, Inc.*,
16     472 F. Supp. 3d 94 (S.D.N.Y. 2020) .......................................................................... 11
17 *Fermata Int'l. Melodies, Inc. v. Champions Golf Club, Inc.*,
18     712 F. Supp. 1257 (S.D. Tex. 1989) ........................................................................... 19
19 *Flava Works, Inc. v. Clavio*,
20     2012 WL 2459146 (N.D. Ill. June 27, 2012) .............................................................. 13
21 *Fonovisa, Inc. v. Cherry Auction, Inc.*,
22     76 F.3d 259 (9th Cir. 1996) ....................................................................................... 15
23 *Fox Broad. Co. Inc. v. Dish Network, L.C.C.*,
24     905 F. Supp. 2d 1088 (C.D. Cal. 2012) ........................................................................ 8
25 *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
26     772 F.2d 505 (9th Cir. 1985) ..................................................................................... 17
27
28

*Frerck v. Pearson Educ., Inc.*,
   2012 WL 1280771 (N.D. Ill. Apr. 16, 2012) ............................................................... 6

*Friche v. Hyundai Motor, Am.*,
   2022 WL 1599868 (C.D. Cal. Jan. 28, 2022) ............................................................. 16

*Garrick v. Garrick*,
   2024 WL 3522205 (N.D. Cal. July 24, 2024) .............................................................. 6

*Hill v. MacMillan McGraw-Hill School Pub. Co.*,
   1994 WL 594027 (N.D. Cal. Oct. 5, 1994) .................................................................. 4

*Hodgers-Durgin v. de la Vina*,
   199 F.3d 1037 (9th Cir. 1999) ................................................................................... 19

*Howard Johnson Co., Inc. v. Khimani*,
   892 F.2d 1512 (11th Cir. 1990) ................................................................................. 16

*Howard v. City of Vallejo*,
   2013 WL 6070494 (E.D. Cal. Nov. 13, 2013) ............................................................ 19

*Hubbard v. Google LLC*,
   2024 WL 3302066 (N.D. Cal. July 1, 2024) ............................................................... 22

*In re Google RTB Consumer Priv. Litig.*,
   606 F. Supp. 3d 935 (N.D. Cal. 2022) .................................................................. 3, 20

*In re "Santa Barbara Like It Is Today" Copyright Infringement Litig.*,
   94 F.R.D. 105 (D. Nev. 1982) ..................................................................................... 5

*Int'l Med. Devices, Inc. v. Cornell*,
   2024 WL 1363690 (C.D. Cal. Mar. 28, 2024) ............................................................ 18

*ITC Textile Ltd. v. Wal-Mart Stores Inc.*,
   2015 WL 12712311 (C.D. Cal. Dec. 16, 2015) ......................................................... 7, 8

*Jerez v. Holder*,
   2011 WL 7637808 (D. Minn. Sept. 1, 2011) ............................................................. 19

*Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*,

   2017 WL 696126 (S.D.N.Y. Feb. 15, 2017) ...............................................................12

*Keck v. Alibaba.com Hong Kong Ltd.*,

   369 F. Supp. 3d 932 (N.D. Cal. 2019) ........................................................................15

*Kremer v. Alphabet Inc.*,

   2024 WL 923900 (M.D. Tenn. Mar. 4, 2024) .............................................................18

*LaDuke v. Nelson*,

   762 F.2d 1318 (9th Cir. 1985) ....................................................................................19

*Lambertini v. Fain*,

   2014 WL 4659266 (E.D.N.Y. Sept. 17, 2014) ...........................................................13

*Lancaster v. Alphabet, Inc.*,

   2016 WL 3648608 (N.D. Cal. July 8, 2016) ...............................................................18

*Livingston v. Morgan*,

   2006 WL 8459602 (N.D. Cal. July 31, 2006) .............................................................13

*Los Angeles v. Lyons*,

   461 U.S. 95 (1983) ......................................................................................................19

*Manigault-Johnson v. Google, LLC*,

   2019 WL 3006646 (D.S.C. Mar. 31, 2019) ...............................................................18

*Marya v. Warner/Chappell Music, Inc.*,

   131 F. Supp. 3d 975 (C.D. Cal. 2015) ........................................................................10

*McShannock v. J.P. Morgan Chase Bank NA*,

   976 F.3d 881 (9th Cir. 2020) ........................................................................................3

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,

   545 U.S. 913 (2005) ....................................................................................................17

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,

   518 F. Supp. 2d 1197 (C.D. Cal. 2007) ......................................................................20

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) ................................................................4

*Newborn v. Yahoo!, Inc.*,
   391 F. Supp. 2d 181 (D.D.C. 2005) ....................................................13

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) .....................................................................21, 23

*Oxygenator Water Techs., Inc. v. Tennant Co.*,
   2020 WL 4572062 (D. Minn. Aug. 7, 2020) ......................................19

*Perfect 10 v. Amazon.com*,
   498 F. App'x 341 (4th Cir. 2012) ........................................................21

*Perfect 10, Inc. v. Amazon, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ............................................................21

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
   167 F. Supp. 2d 1114 (C.D. Cal. 2001) .......................................7, 8, 12

*Perfect 10, Inc. v. Giganews, Inc*
   847 F.3d 657 (9th Cir. 2017) ..........................................................6, 17

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007) ........................................................16, 17

*Peter T. Erdelyi & Assocs. v. Optimum Seismic*,
   2021 WL 4775635 (C.D. Cal. July 1, 2021) ....................................9, 10

*Philips v. Ford Motor Co.*,
   726 F. App'x 608 (9th Cir. 2018) ........................................................22

*Plakhova v. Hood*,
   2017 WL 10592315 (C.D. Cal. June 20, 2017) ...............................7, 13

*Risby v. Hawley*,
   2024 WL 217827 (N.D. Cal. Jan. 19, 2024) ......................................24

*Ritani, LLC v. Aghjayan*,

    880 F. Supp. 2d 425 (S.D.N.Y. 2012) ...................................................................14

*Sadowski v. Package Depo, LLC*,

    2024 WL 1829701 (C.D. Cal. Jan. 22, 2024) .........................................................18

*Schneider v. Pearson Educ., Inc.*,

    2013 WL 1386968 (S.D.N.Y. April 5, 2013) ........................................................14

*Shade v. Gorman*,

    2009 WL 196400 (N.D. Cal. Jan. 28, 2009) ..........................................................20

*Signify N. Am. Corp. v. Robe Lighting, Inc.*,

    2021 WL 3419187 (S.D. Fla. Mar. 16, 2021) .......................................................19

*Silicon Valley Textiles, Inc. v. Sofari Collections Ltd.*,

    2023 WL 8242105 (N.D. Cal. Nov. 28, 2023) ......................................................23

*Silverstein v. Penguin Putnam, Inc.*,

    368 F.3d 77 (2d Cir. 2004) ....................................................................................21

*Software Research, Inc. v. Dynatrace LLC*,

    316 F. Supp. 3d 1112 (N.D. Cal. 2018)................................................................19

*Sonner v. Premier Nutrition Corp.*,

    971 F.3d 834 (9th Cir. 2020) ................................................................................22

*Sony Music Ent., Inc. v. Clark-Rainbolt*,

    2024 WL 1319735 (N.D. Tex. Mar. 27, 2024).................................................18, 21

*Soo Park v. Thompson*,

    851 F.3d 910 (9th Cir. 2017) ..................................................................................6

*Sosenko v. LG Elecs. U.S.A., Inc.*,

    2019 WL 6118355 (C.D. Cal. Aug. 29, 2019) .......................................................7

*Tattoo Art, Inc. v. TAT Int'l, LLC*,

    794 F. Supp. 2d 634 (E.D. Va. 2011) ...................................................................21

*Taylor Corp. v. Four Seasons Greetings, LLC*,

    315 F.3d 1039 (8th Cir. 2003) ...................................................................................24

*Taylor Corp. v. Four Seasons Greetings, LLC*,

    403 F.3d 958 (8th Cir. 2005) .....................................................................................21

*TD Bank N.A. v. Hill*,

    928 F.3d 259 (3d Cir. 2019) ......................................................................................20

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,

    595 U.S. 178, 181-82 (2022) .....................................................................................11

*Unicolors, Inc. v. Urban Outfitters, Inc.*,

    853 F.3d 980 (9th Cir. 2017) ......................................................................................9

*United States v. Baxter, Int'l, Inc.*,

    345 F.3d 866 (11th Cir. 2003) .....................................................................................7

*Wakefield v. Olenicoff*,

    2015 WL 1460152 (C.D. Cal. Mar. 30, 2015) .........................................................21

*William R. Warner & Co. v. Eli Lilly & Co.*,

    265 U.S. 526 (1924) ..................................................................................................20

*Y.Y.G.M. SA v. Redbubble, Inc.*,

    75 F.4th 995 (9th Cir. 2023) ...............................................................................20, 22


**Statutes**

17 U.S.C. § 101 ......................................................................................................10, 11

17 U.S.C. § 106 ............................................................................................................7

17 U.S.C. § 502 ..........................................................................................................18


**Rules**

Fed. R. Civ. P. 8 ................................................................................................... Passim

Fed. R. Civ. P. 9(b) .......................................................................................................7

PLAINTIFFS' OPPOSITION TO DEFENDANTS'    -ix-
MOTION TO DISMISS CONSLIDATED AMENDED    Case No. 5:23-cv-3440-EKL
COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATEMENT OF ISSUES TO BE DECIDED**

(1) Whether Plaintiffs, including Plaintiff Sarah Andersen, have sufficiently pled their direct and vicarious copyright infringement claims by identifying the specific works Google LLC ("Google") and Alphabet Inc. ("Alphabet") (together, "Defendants") infringed and how Defendants infringed these works.

(2) Whether Plaintiffs' request for injunctive relief is proper because Plaintiffs have sufficiently alleged irreparable harm and inadequate remedies at law, and the Copyright Act specifically authorizes that relief.

(3) Whether Plaintiffs have sufficiently pled Alphabet's vicarious liability based on Alphabet's direct and active participation in the supervision and control of Google's copyright infringement activities and substantial, direct financial benefit.

(4) Whether Plaintiffs' Consolidated Amended Complaint, which names the specific works infringed and identifies Defendants' methods of infringement, satisfies the notice pleading standard of Federal Rule of Civil Procedure 8.

**INTRODUCTION**

Plaintiffs' Consolidated Amended Complaint (ECF No. 91) ("CAC") alleges with requisite specificity how Google and its corporate parent, Alphabet, either directly or vicariously, copied Plaintiffs' and class members' copyrighted text and images, without authorization, to train Defendants' Generative AI Models (or the "Models") for their own commercial profit. In their rush to create their commercial AI Products, Defendants used datasets, including LAION-400M, LAION 5B, C4, and Infiniset, that contain vast quantities of copyrighted works registered before the filing of this suit, including those of the Plaintiffs, and all taken without consent and without any credit or compensation to the copyright holders. By using the copyrighted material in these datasets to train their Models, Defendants committed copyright infringement on a massive scale while disregarding the rights of the people who created the works. The harm is exacerbated by the fact that these trained Generative AI Models now serve as fuel for Defendants' commercial AI Products.

Defendants concede that Plaintiffs' claim for direct infringement satisfies the pleading

requirements. Indeed, other defendants facing similar claims elected not to seek Rule 12(b)(6) dismissal at all. *See, e.g.*, *Tremblay v. OpenAI*, No. 3:23-cv-03223, ECF No. 176, (N.D. Cal. Aug. 27, 2024); *Kadrey v. Meta Platforms*, No. 3:23-cv-03417, ECF No. 154 (N.D. Cal. Sept. 16, 2024); *Bartz v. Anthropic*, No. 3:24-cv-05417, ECF No. 57 (N.D. Cal. Oct. 21, 2024); *In Re Mosaic LLM Litig.*, 3:24-cv-01451, ECF No. 39 (N.D. Cal. May 2, 2024); *Nazemian v. NVIDIA Corp.*, 4:24-cv-01454, ECF No. 38 (N.D. Cal. May 24, 2024). Nonetheless, Defendants' Motion to Dismiss the CAC (ECF No. 95) (the "MTD") attacks marginal issues that will be resolved in discovery and raises arguments that courts have declined to accept. For instance, other courts in this district have already considered and rejected quibbles with Plaintiffs' registrations. *See, e.g.*, *Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853, 863-64 (N.D. Cal. 2023); *Andersen v. Stability AI Ltd.*, --- F. Supp. 3d ---, 2024 WL 3823234, at *13 (N.D. Cal. Aug. 12, 2024). None of Defendants' arguments challenging Plaintiffs' registrations or Plaintiffs' infringement allegations against Defendants' Models are new.

Defendants separately dispute Plaintiffs' vicarious infringement claim on the basis of corporate formality, but their argument lacks both factual and legal support. Unlike the cases upon which Defendants rely, Plaintiffs' CAC is replete with allegations reflecting Alphabet's control over and financial benefit from Google's copyright infringement. This satisfies Plaintiffs' pleading burden.

Defendants also challenge whether pleading injunctive relief is appropriate. Yet the Copyright Act expressly authorizes such relief when necessary to prevent ongoing irreparable harm, which the CAC details.

Finally, Defendants' Rule 8-based arguments attempt to impose burdens on Plaintiffs that are unsupported by law and require information wholly within Defendants' possession and control. Not one of Defendants' arguments present viable grounds for dismissal.

## STATEMENT OF RELEVANT FACTS

In its struggle to win the generative AI race, Defendants have infringed millions of copyrights and perpetrated one of the largest thefts of intellectual property in history. Defendants took and repeatedly copied the works of Plaintiffs' and the Class, without notice or authorization, in connection with the training of their Generative AI Products. These violations of the Copyright Act took place on

an unprecedented scale. CAC ¶¶ 4-6. Although Defendants could have licensed or paid Plaintiffs when training their Generative AI Models, they instead collected Plaintiffs' works from shadow libraries of pirated works. *Id.* ¶¶ 1, 3-7, 17-102, 121-161.

The FTC has warned companies like Defendants that "[m]achine learning is no excuse to break the law" and that "[t]he data you use to improve your algorithms must be lawfully collected." *Id.* ¶ 5. Nonetheless, Google has and continues to make unauthorized copies of Plaintiffs' copyrighted works, generating billions in ill-gotten profits. *Id.* ¶¶ 8-10. Defendants' illegal conduct is ongoing and unabated, *id.* ¶¶ 3, 131, 157, 188, 195, and likely will not stop as Google's AI Products rely on the infringement of Plaintiffs' works, *id.* ¶ 3; *cf.* MTD at 1 (falsely claiming that Defendants' models can "create original stories").

Plaintiffs advance two basic theories for Defendants' direct and vicarious copyright infringement and seek relief individually and on behalf of other authors and visual artists from whom Defendants misappropriated, and continue to misappropriate, copyrighted works in violation of federal law.

## **ARGUMENT**

Under Rule 8(a)(2), a complaint is sufficiently pled if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a) is a "liberal pleading standard" that only requires plaintiffs to put defendants on fair notice of their potential liability. *City of Los Angeles v. Wells Fargo & Co*., 22 F. Supp. 3d 1047, 1062 (C.D. Cal. 2014). Dismissal under Rule 12(b)(6) is improper where a complaint pleads "enough facts to state a claim . . . that is plausible on its face." *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 942 (N.D. Cal. 2022) (internal quotation omitted). When evaluating a motion to dismiss under Rule 12, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *McShannock v. J.P. Morgan Chase Bank NA*, 976 F.3d 881, 886-87 (9th Cir. 2020); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1075 (N.D. Cal. 2023) (explaining that the court "accepts the plaintiffs' allegations as true" and draws all reasonable inferences in [plaintiffs'] favor"). The Court must determine whether Plaintiffs have set forth "sufficient factual matter, accepted as true, to

state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

## I.    Plaintiffs' CAC Provides Defendants Notice of Their Claims as Required by Rule 8.

### A.    Plaintiffs Precisely Identify Defendants' Infringement (or Vicarious Infringement) of Their Copyrighted Works.

Defendants assert that Plaintiffs' CAC fails to comply with Rule 8. Their argument is misplaced.

Rule 8 requires only a "short and plain statement" of facts supporting a claim set forth in "simple, concise, and direct" statements. Fed. R. Civ. P. 8(a) & (d); *see also Twombly*, 550 U.S. at 569 n.14, 570. "No technical form is required." Fed. R. Civ. P. 8(d). The purpose of Rule 8 is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 554-55 (quoting Fed. R. Civ. P. 8(a)(2)). There is no heightened pleading standard for copyright cases. *See* 3 Nimmer on Copyright § 12.07 ("Though it is clearly desirable to allege the infringing acts with some specificity, the modern view disclaims any heightened pleading standard in the copyright ambit."); *Los Angeles v. Wells Fargo*, 22 F. Supp. 3d at 1062 (holding that plaintiffs only need to put defendant on fair notice of potential liability, which is "all that is required under the liberal pleading standard of Rule 8(a)."). Plaintiffs have met this standard.

The CAC clearly establishes "what claims Plaintiff alleges [i.e., direct and vicarious copyright infringement], against whom the claims are made [i.e., Google and Alphabet], and the grounds upon which the claims are based [i.e., Google and Alphabet violated Plaintiffs' exclusive rights under the Copyright Act by using their copyrighted works without authorization to train its generative AI models]." *Hill v. MacMillan McGraw-Hill School Pub. Co.*, 1994 WL 594027, at *2 (N.D. Cal. Oct. 5, 1994); *see also id.* ("This is not a case . . . where there are so many different claims alleged against multiple defendants that the substance and direction of the separate claims is undecipherable [in violation of Rule 8]."). Specifically, Plaintiffs explain how Defendants infringed on their respective, identified works in connection with training Imagen and Gemini. CAC ¶¶ 17-28 (Plaintiff Almond),

30-33 (Plaintiff Andersen), 35-46 (Plaintiff Barer), 48-52 (Plaintiff Fink), 54-65 (Plaintiff Hubbard), 67-73 (Plaintiff Larson), 75-79 (Plaintiff Lemos), 81-87 (Plaintiff Leovy), 89-96 (Plaintiff McLennan), 98-102 (Plaintiff Zhang). Plaintiffs also identify the specific locations, including hyperlinks, from which Plaintiffs' works were scraped as well as which datasets they comprise. *Id*. For example, for those works that appeared on pirated sites such as "Z Library" or "Pdfdrive," Plaintiffs allege that those sites served as sources for Infiniset and C-4, datasets used by Defendants to train Gemini. *Id*. Similarly, if the copyrighted images appeared in the LAION-400M dataset or "haveibeentrained," Plaintiffs explain that they are comprised within LAION-5B, the training dataset for Imagen. *Id*. These allegations make out the act of infringement, i.e., Google's illegal use and reproduction of Plaintiffs' specifically identified and registered copyrighted works, and are sufficiently defined for Rule 8 purposes.

Defendants complain that Plaintiffs do not allege *how many times* Google may have illegally infringed their works in the training and build process outlined in the CAC, or the exact products beyond Imagen or Gemini that depend on their copyrighted works. Neither allegation, however, is required at this stage. As the court held in *Thunder Studios, Inc. v. Kazal*, a copyright infringement action, "that the list [of instances of infringement] might not be exhaustive does not render [plaintiff's] allegations insufficient." 2018 WL 5099726, *3 (C.D. Cal. Mar. 22, 2018) (denying defendant's motion to dismiss copyright infringement claims).

Defendants' cases do not compel a different result. None stand for the proposition that Plaintiffs must specify anything more than the act of copyright infringement and the work infringed. In neither *Becton* nor *Santa Barbara* was the act of infringement or precise infringed work specified. *See Becton, Dickinson & Co. v. Cytek Biascis. Inc.*, 2020 WL 1877707, at *6 (N.D. Cal. Apr. 15, 2020) (holding that plaintiff failed to specify "what parts of any [of plaintiff's] manual(s) were copied, what portions of its software"); *In re "Santa Barbara Like It Is Today" Copyright Infringement Litig.*, 94 F.R.D. 105, 108 (D. Nev. 1982) (plaintiff's amended complaint against "well over 200 defendants" had "no specific allegations or any factual basis given as to any specific instances of infringement" making it difficult for the court to even decipher "which defendants [were] being sued under the

various claims"); *see also Frerck v. Pearson Educ., Inc.*, 2012 WL 1280771, at *3 (N.D. Ill. Apr. 16, 2012) (rejecting defendant's argument that, "in order to state a claim for copyright infringement, [plaintiff] must plead specific details as to each infringing act," as "[t]his requirement would impose a higher burden on copyright claims than is required under the federal rules").

*Bender* is also inapposite. In *Bender,* the court reviewed sufficiency of *patent* infringement claims, not copyright claims, where the *product* was the alleged infringement, and not the copying or other form of reproduction of one's work. Further, the *Bender* plaintiff did not identify *any* specific act of infringement. Therefore, the court observed that "*at a minimum*, a [complaint must contain a] brief description of what the patent at issue does, and an allegation that certain named and specifically identified products or product components also do what the patent does[.]" *Bender v. LG Elecs., U.S.A., Inc.*, 2010 WL 889541, at *6 (N.D. Cal. Mar. 11, 2010) (emphasis added). By contrast, Plaintiffs here *do* identify which copyrights were infringed, how they were infringed, and which products were infringing.

Defendants' reliance on *Perfect 10, Inc. v. Giganews, Inc.* is also misplaced because *Perfect 10* arose on summary judgment. Further, Defendants' cited quote, that an infringement suit "is a specific lawsuit by a specific plaintiff against a specific defendant about specific copyright images" was addressing *causation*, because plaintiff did not demonstrate *on summary judgment* "a causal link between the infringing activities and a financial benefit to [the defendant]." 847 F.3d 657, 673 (9th Cir. 2017); MTD at 23. Defendants in this case do not challenge causation, and Plaintiffs properly allege the financial benefit to Defendants that resulted from their infringement of the specifically identified works. CAC ¶¶ 9-10, 185-87.

Finally, Defendants overlook a bedrock legal proposition, applied not only in the Ninth Circuit but elsewhere, allowing plaintiffs even greater leniency in their pleadings where the "facts are peculiarly within the possession and control of the defendant." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017); *Garrick v. Garrick*, 2024 WL 3522205, at *3 (N.D. Cal. July 24, 2024) (same); *see also E. & J. Gallo Winery v. EnCana Energy Servs.*, 2004 WL 7342782, at *5 (E.D. Cal. Oct. 13, 2004) ("[W]here a lack of specificity in the pleading relates to facts controlled by the opponent and

not available to the pleader, greater leniency is granted."). Further, and contrary to Defendants' assertions, Plaintiffs' allegations referencing fraudulent concealment are supported by allegations pled with particularity to the extent possible. CAC ¶¶ 158-62 (Defendants were aware of the data and datasets used to train the Generative AI Models, and how Plaintiffs works were used, copied, and/or reproduced in the training process and intentionally concealed these material facts). It would be unreasonable to place a heightened burden on Plaintiffs and expect them to know which other AI Products Defendants have built using the datasets at issue or other datasets which included Plaintiffs' works, or even what internal measures they took to cloak their copyright violations. *United States v. Baxter, Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003) (Under Rule 8, "[c]ourts typically allow the pleader an extra modicum of leeway where the information supporting the complainant's case is under the exclusive control of the defendant") (superseded by statute on other grounds).

Furthermore, Defendants' suggestion that Plaintiffs have not pled the requisite scienter is mistaken. Copyright infringement claims are *strict liability* torts and no intent need be pleaded. *ITC Textile Ltd. v. Wal-Mart Stores Inc.*, 2015 WL 12712311, at *5 (C.D. Cal. Dec. 16, 2015) ("Copyright infringement is a strict liability tort. Lack of knowledge does not limit liability, but only applies to damages."). In any event, intent, even under Rule 9, need not be pled with specificity. Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged *generally*.") (emphasis added); *accord Sosenko v. LG Elecs. U.S.A., Inc.*, 2019 WL 6118355, at *6 (C.D. Cal. Aug. 29, 2019) ("[F]raudulent intent need not be pleaded with particularity[.]"); *Plakhova v. Hood*, 2017 WL 10592315, at *3 (C.D. Cal. June 20, 2017) ("If fraudulent intent is alleged, it may be alleged generally. . . ."). Plaintiffs have nonetheless done so. *See, e.g.*, CAC ¶¶ 130, 158-59.

## II. Plaintiffs Have Pled Sufficient Facts in Support of Direct Copyright Infringement Because They Detailed the Works Infringed by Defendants and Provided Copyright Registrations for Those Works.

To plead a claim for direct copyright infringement, Plaintiff must allege: (1) "ownership of the allegedly infringed material" and (2) "that the alleged infringers violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). "[C]opyright claims need not be pled with particularity." *Perfect 10, Inc.*

*v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1120 (C.D. Cal. 2001). Among other things, "[d]irect infringement does not require intent or any particular state of mind." *Fox Broad. Co. Inc. v. Dish Network, L.C.C.*, 905 F. Supp. 2d 1088, 1098 (C.D. Cal. 2012); *see also ITC Textile Ltd.*, 2015 WL 12712311, at *5 ("Copyright infringement is a strict liability tort.").

Defendants concede the sufficiency of the allegations regarding the violation of an exclusive right, but dispute Plaintiffs' ownership of the infringed material. They ignore Plaintiffs' well-pled allegations and, instead, attack Plaintiffs' registrations and attempt to circumscribe Plaintiffs' claims to the works identified in Exhibit A of the CAC. As explained more fully below, both arguments are unpersuasive.

### A.    Plaintiffs Adequately Allege Registration of Their Copyrights.

A plaintiff who alleges copyright infringement must show ownership of a valid copyright. *Corbello v. Valli*, 974 F.3d 965, 973 (9th Cir. 2020). The pleading burden is low. *Cybernet Ventures*, 167 F. Supp. 2d at 1120 ("[C]omplaints simply alleging present ownership by plaintiff, registration in compliance with the applicable statute and infringement by defendant have been held sufficient under the rules."). Here, as required, each Plaintiff has alleged that their registered works were copied and used by Defendants, without authorization, as training data for their Models. CAC ¶¶ 17-103; Exs. A & B. At this stage, no more is required.

Nonetheless, Defendants argue that the copyright registrations of Plaintiffs Andersen, Fink, and Almond are invalid. With respect to Plaintiff Andersen, Defendants challenge the validity of her registrations because they were for compilations containing previously published material and, therefore, they do not protect the individual images within them. This argument fails for several reasons.

First, Defendants' argument is wholly misplaced at the pleading stage because it is well-settled that a copyright registration certificate alone serves as prima facie evidence of validity. *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 747 F.3d 673, 683 (9th Cir. 2014). The burden, therefore, shifts to Defendants. In other words, Defendants' argument is not a pleading issue but a disputed issue of fact. Courts find that "deciding the validity of Plaintiff's copyright registration

would require the Court to make factual determinations . . . that are not appropriate on a Rule 12(b)(6) motion to dismiss." *AJ Mgmt. Consulting, LLC v. MBC FZ-LLC*, 2014 WL 2878891, at *4 (N.D. Cal. June 24, 2014); *see also Peter T. Erdelyi & Assocs. v. Optimum Seismic*, 2021 WL 4775635, at *3 (C.D. Cal. July 1, 2021) (collecting cases holding that asserting copyright registration certificates for infringed products are sufficient to satisfy pleading requirements).

Defendants also claim that Plaintiffs' registration of their derivative works, such as in the case of Plaintiff Andersen, does not protect preexisting works or components of the derivative works. Defendants' argument conflicts with settled law. The Ninth Circuit recently reaffirmed that if a copyright holder owns both the collective work and the underlying elements, the registration of the former permits an infringement action on the underlying parts. *Enter. Mgmt. Ltd., Inc. v. Construx Software Builders, Inc.*, 73 F.4th 1048, 1057 (9th Cir. 2023) (quoting 2 Nimmer on Copyright § 7.16[B][5][c]) ("[I]f the same party owns a copyright in both a derivative work . . . and the underlying work that is incorporated in the derivative work, registration of a copyright in the derivative work is sufficient to permit an infringement action on either preexisting . . . material or on any newly contributed material."); *see also Alaska Stock*, 747 F.3d at 684 (quoting 2 Nimmer on Copyright § 7.16[B][5][c]); *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 989 (9th Cir. 2017) ("An applicant does not need to list the names of the component works in a collection to register them as long as it holds the rights to the component works."). Defendants do not—and cannot—refute this binding precedent. They also do not dispute that Plaintiff Andersen, who has registered the derivative work, is the sole author of all underlying elements of the compilations or the validity of the copyright registration for each compilation. Moreover, Defendants' argument is directly contrary to the well-pled allegations in the CAC specifically asserting Plaintiff Andersen has valid registered copyrights in five compilations of works. CAC ¶ 31; *see also Alaska Stock*, 747 F.3d at 685; *Unicolors*, 853 F.3d at 989; 2 Nimmer on Copyright § 7.16[B][5][c].

To the extent Defendants rely on *Ambrosetti v. Oregon Catheter Press*, that reliance is misplaced. MTD at 7 (citing 458 F. Supp. 3d 1013 (N.D. Ind. 2020)). *Ambrosetti* specifically distinguished cases where copyright registration of a collective work extends to individual

components authored by a single creator, finding dismissal appropriate because the work at issue in *Ambrosetti* involved *multiple* authors. *Ambrosetti*, 458 F. Supp. 3d at 1017. Here, Defendants cannot dispute that the challenged works were created by a single author—Plaintiff Andersen.

Defendants' reliance on judicial filings from the Register of Copyrights in two cases are also unpersuasive. Like *Ambrosetti*, those cases did not involve plaintiffs who authored the underlying components of the compilations at issue. These filings are therefore inapplicable to Plaintiffs here. *See PalatiumCare, Inc. v. Notify LLC & Lucas Narbatovics*, No. 2:22-cv-217-JPS (E.D. Wis.), ECF No. 101 (addressing whether failure to name authors of plaintiff company's source code would have caused Register to refuse registration); *Neman Bros. & Assoc., Inc. v. Interfocus, Inc.*, No. 2:20-11181-CAS-JPR (C.D. Cal.), ECF No. 85 (addressing whether Register would have refused registration if it had known that plaintiff company "was not the sole author of all of the works included in the group application").

Defendants cite an out-of-circuit decision from an order on summary judgment in support of their argument that works posted on X purportedly grant others the right to copy the works, and thus, qualify as a publication. MTD at 15 (citing *Brunson v. Cook*, 2023 WL 2668498, at *13-14 (M.D. Tenn. Mar. 28, 2023)). This argument is also unpersuasive and premature. Even if the Court could take judicial notice of X's terms of service, the interpretation and effect of those terms – particularly whether they could render the work as "published" – remain disputed, and are inappropriate for resolution at the pleading stage. See *supra* at 8. Moreover, Defendants' interpretation would lead to the absurd result that virtually every image posted to social media automatically constitutes publication—a result that would eviscerate the Copyright Act's careful distinction between publication and display. See 17 U.S.C. § 101 (public performance of the works is insufficient). Terms of service cannot usurp this fundamental statutory text.

Defendants also claim that Plaintiff Andersen's alleged internet posts constituted prior "publication" under the Copyright Act. *See Marya v. Warner/Chappell Music, Inc*., 131 F. Supp. 3d 975, 990 (C.D. Cal. 2015) (party claiming "publication" has burden of proof). First, Defendants' argument relies on unauthenticated, disputed extrinsic documents which are improper at the pleading

stage. *See Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084, 1090 (C.D. Cal. 2017) (declining to consider disputed documents outside of the pleadings). Second, the assertion that internet posts are "publication" is not well taken. "Publication" constitutes the "distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. . . . A public performance or display of a work does not of itself constitute publication." 17 U.S.C. § 101; *see also Am. Vitagraph, Inc. v. Levy*, 659 F.2d 1023, 1029 (9th Cir. 1981) (holding a motion picture is not published when viewed publicly by an audience until it is commercially distributed to theater operators—i.e., for further public display); *Dolman v. Agee*, 157 F.3d 708, 713 (9th Cir. 1998) ("[M]ere performance or exhibition of a work does not constitute a publication of that work[.]"). Like a photograph posted on a website, the works posted on X do not qualify as publications because "publication entails more than mere display" and requires "commercial exploitation." *Feingold v. RageOn, Inc.*, 472 F. Supp. 3d 94, 99-100 (S.D.N.Y. 2020). Furthermore, the Compendium of U.S. Copyright Office Practices ("*Compendium*") maintains that "the mere fact that a work is disclosed on the Internet does not 'publish' the work" and "it is not always factually clear whether the placement of works online is intended to be an authorized distribution of those works" so as to constitute publication. *Compendium* § 1008.3(C) (3d ed. 2021), https://www.copyright.gov/comp3/docs/compendium.pdf.

As a final gambit, Defendants assert technical challenges to Plaintiff Fink and Almond's registrations, misapprehending the legal distinction between serial publication and compilation registration. Serial publication of installments of webcomics does not constitute publication of the final integrated work as a matter of law. *See Alaska Stock*, 747 F.3d at 685 (recognizing distinct protection for collective works). For compilations like Almond's short story collection, the Copyright Act explicitly protects "the collection and assembling of preexisting materials" as an original work of authorship. 17 U.S.C. §§ 101 & 103(b). The Supreme Court has expressly rejected attempts to invalidate registrations through technical arguments where the registrant owns the underlying rights. *See Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 181-82 (2022) (explaining a certificate of copyright registration may be valid even if it is inaccurate). The Copyright Office's

1    guidance is in accord, confirming that authors who own rights to both compilations and components

2    may register collections as new works, with protection extending to the underlying contents.

3    *Compendium* § 509.1. Defendants cannot transmute registration formalities into grounds for dismissal

4    where plaintiffs have properly alleged ownership and registration of the works at issue.

5        ### B.    Plaintiffs Sufficiently Identify Plaintiffs' Infringed Works.

6        In pleading their copyright infringement claims, Plaintiffs detail the following: (a) the exact

7    Plaintiffs' works used by Defendants to train their Models, CAC ¶¶ 17-18, 30, 35-36, 48-49, 54-55,

8    67-68, 75-76, 81-82, 89-90, 98-99; (b) the specific datasets where these works were included, *id.* ¶¶

9    19-26, 31, 37-44, 50, 56-63, 69-71, 77, 83-85, 91-94, 100; and (c) information about Defendants'

10   Generative AI Models and AI-Powered Products and their concealment of the fact that these datasets

11   contained unauthorized copies that were used to train their Models, *id.* ¶¶ 130-131. Conceding the

12   sufficiency of these allegations, Defendants make the remarkable claim that Plaintiffs' CAC should

13   have itemized each of the infringed works. That is not the law.[1] Given the broad, repeated, and

14   concealed nature of the infringement alleged, there is no such requirement at the pleading stage. At

15   most, this would be a matter of proof.

16       Plainly, "Plaintiffs [] need not identify every [work] allegedly infringed . . . ." *Joint Stock Co.*

17   *Channel One Russ. Worldwide v. Infomir LLC*, 2017 WL 696126, at *14 (S.D.N.Y. Feb. 15, 2017).

18   "Where a copyright claim is based on the alleged wholesale infringement of a large number of

19   copyrighted works, courts have relaxed [the rule requiring identification of each specific work] . . . ,

20   but the plaintiff must still identify, at a minimum, representative examples of the works allegedly

21   infringed[.]" *Id.*; *see also Cybernet Ventures*, 167 F. Supp. 2d at 1120 ("Requiring a statement of

22   each and every example [of infringement] would defeat the regime established by Rule 8.") This is

23   especially true where the identity of the works Defendants infringed is within the exclusive possession

24   and control of Defendants. Indeed, as Plaintiffs allege, only a small subset of the shadow libraries

25

26   _____

     [1] Considering the precise and detailed nature of Plaintiffs' allegations, it is unclear whether
     Defendants are also suggesting that Plaintiffs must identify an exhaustive list of works infringed by
27   Defendants. This would require Plaintiffs to access information within Defendants' *sole and exclusive*
     *control*. In any event, Defendants' demand far exceeds what is required at this stage.
28

Defendants downloaded or otherwise acquired is disclosed, and Defendants, in fact, conceal this information. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (holding in a copyright infringement case that the plausibility pleading standard allows factual allegations made "upon information and belief" where (1) "the facts are peculiarly within the possession and control of the defendant," or (2) "where the belief is based on factual information that makes the inference of culpability plausible").

In copyright claims, "[d]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Clifton v. Houghton Mifflin Harcourt Publ'g Co.*, 152 F. Supp. 3d 1221, 1225 (N.D. Cal. 2015) (applying *Iqbal* in a copyright infringement case and rejecting the notion that plaintiff must identify every work subject to infringement and each instance of infringement). Defendants, however, rely on cases where the plaintiffs failed to allege any specific works and, thus, failed to provide the defendants the requisite notice and made it difficult or impossible for the defendants to defend the litigation, or where plaintiffs in individual lawsuits did not allege copyrighted works or instances of infringement. All are distinguishable. *See DBW Partners, LLC v. Bloomberg, L.P.*, 2019 WL 5892489, at *3 (D.D.C. Nov. 12, 2019) (dismissing claims where plaintiffs did not identify *any* specific infringed works, or even defendant's infringing works, making it "virtually impossible to determine what materials have allegedly been infringed") (quoting *Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181, 187 (D.D.C. 2005)); *Livingston v. Morgan*, 2006 WL 8459602, at *3 (N.D. Cal. July 31, 2006) (plaintiff failed to "identify any of the specific photographs . . . purportedly used by [defendant] without [plaintiff's] authorization"); *Lambertini v. Fain*, 2014 WL 4659266, at *3 (E.D.N.Y. Sept. 17, 2014) (similar); *Plakhova*, 2017 WL 10592315, at *2 (plaintiff failed to identify *any* specific infringed works); *Flava Works, Inc. v. Clavio*, 2012 WL 2459146, at *2 (N.D. Ill. June 27, 2012) ("[B]road and conclusory allegations" that "videos were posted and distributed on other websites" do not point to a specific infringed work, and "are not enough to put [defendant] on notice"). For example, in *Premier Tracks, LLC v. Fox Broadcasting Co.*, the plaintiffs defined "Infringed Works" as the copyright applications reflected in their attached exhibit, "along with other

of [p]laintiffs' works . . . yet to be identified[,]" and of the 18 copyright applications attached, only five were filed on behalf of one plaintiff the day before the filing of the lawsuit, *with none filed on behalf of the other plaintiff.* 2012 WL 13012714, at *2, 26-27 (C.D. Cal. Dec. 18, 2012). Here, each Plaintiff identified at least one or more works that they confirmed were infringed by Defendants and used to train Defendants' Imagen and/or Gemini AI models. *See, e.g.*, *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 441 (S.D.N.Y. 2012) (plaintiff adequately "identified, claimed ownership over and offered proof of registration of representative specific works that are the subject of the copyright claim").

Defendants' reliance on *Cole v. John Wiley & Sons*, 2012 WL 3133520, *11-14 (S.D.N.Y. Aug. 1, 2012) is also misplaced. In *Cole*, the plaintiff brought a copyright infringement lawsuit, but failed to identify *how* the defendant infringed his works and, as to two of the three defendants, failed to specify which of 66 works were subject to infringement. *Id.* at *11-14. Most of the *Cole* plaintiff's allegations rested on the notion that the court should "make an inferential leap" that infringement occurred because defendants purportedly had access to the photographs and thus were "likely to have infringed his rights in at least one" of them. *Id.* at *12. The court rejected this argument and dismissed plaintiff's ambiguous and unsubstantiated allegations that defendants infringed on other "unidentified" works. *Id.*

No "inferential leap" is required here—Plaintiffs specifically allege the works Defendants infringed, the method in which they were infringed, and detailed information regarding some of the known datasets in which these works were included. Therefore, "it would be unjust and inappropriate to throw out [plaintiff's] well-pleaded allegations" supporting their copyright claims simply because "several discrete paragraphs" in the complaint referenced other unspecified works, the identity of which are within Defendants' sole knowledge and control. *Schneider v. Pearson Educ., Inc.*, 2013 WL 1386968, *3 (S.D.N.Y. April 5, 2013). As in *Schneider*, Plaintiffs have "alleged that specific works to which [they] owned the copyright were infringed upon, and by doing so, [they have] adequately pleaded this element under Rule 12(b)(6)." *Id.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.    Plaintiffs State a Viable Claim for Vicarious Copyright Infringement.

A plaintiff may state a claim for vicarious copyright infringement where the defendant (1) failed to exercise its supervisory power over the infringing conduct and (2) obtained a direct financial benefit from such infringement. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262 (9th Cir. 1996). The CAC alleges with specificity the requisite facts for this claim. In particular, Plaintiffs allege Alphabet's documented capacity to control Google's operations, CAC ¶¶ 106-10, its conscious decision not to exercise that control over Google's infringing conduct, *id.*, and its receipt of substantial financial benefits flowing directly from the infringement, *id.* ¶¶ 9-10, 108, 185-87. *See also Keck v. Alibaba.com Hong Kong Ltd.*, 369 F. Supp. 3d 932, 936 (N.D. Cal. 2019) (applying the *Fonovisa* standard).

Defendants insinuate Plaintiffs' allegations suffer from a failure to allege facts sufficient to permit some form of veil piercing. The factual allegations in the CAC, however, extend well beyond a mere parent-subsidiary relationship and detail Alphabet's substantive role in the development of Google's AI activities and, relatedly, its failure to control Google's infringing conduct. Specifically, the CAC documents Alphabet's control through its stated initiative to "expand[ ] [its] investment in AI across the entire company . . . [and] integrate AI capabilities into our products and services," combined with the substantial financial benefits that followed. CAC ¶ 107. Alphabet possessed the ability to control Google's conduct while deriving significant benefit from the infringement and, therefore, it must bear corresponding legal responsibility.

### A.    Alphabet Failed to Exercise Its Control Over Google's Infringement.

The first prong of vicarious liability requires both the legal right and practical ability to control the infringing conduct. *Fonovisa* illustrates this principle: a swap meet operator's contractual right to terminate vendors established sufficient control because this authority enabled oversight of vendor activities on the premises. 76 F.3d at 262. The operator's subsequent failure to exercise this control created vicarious liability for its vendor's infringement.

As set forth in the CAC, Alphabet maintains comprehensive operational control over Google that exceeds mere third-party oversight authority. While plaintiffs at the pleading stage "cannot be expected to know the precise relationship between members of the [Alphabet] corporate family,"

*Friche v. Hyundai Motor, Am.*, 2022 WL 1599868, at *5, n.4 (C.D. Cal. Jan. 28, 2022), the CAC plausibly asserts Alphabet's control through multiple operational channels: (1) unified and interlocking executive leadership, including a shared CEO, CFO, and CIO, CAC ¶¶ 110, 184; (2) strategic restructuring of Google's AI operations, CAC ¶¶ 106-07; (3) direct oversight of AI initiatives across Alphabet subsidiaries, CAC ¶ 107; and (4) centralized control over AI resource allocation, *id.* ¶ 108. This operational integration demonstrates Alphabet's "practical ability" to control Google's activities through executive decision-making authority. *See Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1518 (11th Cir. 1990) (finding requisite control where officers served both parent and subsidiary). The authority to allocate and direct resources also indicate Alphabet's control over Google, in particular the power to restrict funding for infringing activities.

Alphabet's possession of control authority triggers an affirmative duty to exercise that authority to prevent infringement. The Ninth Circuit has established that "to escape imposition of vicarious liability, the reserved right to police must be exercised to its fullest extent. Turning a blind eye to detectable acts of infringement for the sake of profit gives rise to liability." *Napster, Inc.*, 239 F.3d at 1023. The CAC details Alphabet's systematic failure to exercise this required oversight, specifically noting its failure to implement copyright compliance procedures or restrict resources for infringing activities. CAC ¶ 188. Moreover, Alphabet affirmatively ratified the infringing conduct by expanding the integration of Google's AI Products across its subsidiaries while increasing investment in the underlying infringing activities. *Id.* ¶ 108.

Defendants misapprehend the distinct requirements for vicarious versus contributory copyright infringement by arguing that Plaintiffs must show Alphabet's direct "involvement in Google's decisions regarding what data to use to train its AI models." MTD at 16. But Plaintiffs allege *vicarious*, not contributory, liability. The Supreme Court has established separate frameworks for each theory: contributory infringement requires that a defendant "induce[], cause[], or materially contribute[] to the infringing conduct," *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007), while vicarious infringement stems from a defendant's decision to "profit[] from direct infringement while declining to exercise a right to stop or limit it," *Metro-Goldwyn-Mayer*

*Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). Because vicarious liability arises from *inaction* despite control authority, Plaintiffs need not demonstrate Alphabet's affirmative participation in Google's infringement. Defendants rely on outdated or out-of-circuit cases to assert there is an additional element of "substantial and continuing connection . . . with respect to the infringing acts." *See, e.g.*, MTD at 16 (quoting *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 519-20 (9th Cir. 1985)). This requirement is effectively subsumed by the later "control" or "stop and limit" elements articulated by *Perfect 10* and *Grokster*. *See Perfect 10*, 494 F.3d at 806. In any event, Plaintiffs allegations of Alphabet's ongoing control over Google's infringing activity and continued benefit from integrating Google's AI products sufficiently establishes a "substantial and continuing connection . . . to the infringing acts." *Frank Music Corp.*, 772 F.2d at 520.

### B.    Alphabet Derived a Direct Financial Benefit from Google's Infringement.

The CAC sets forth sufficient facts regarding Alphabet's direct financial benefit from Google's infringing conduct under controlling Ninth Circuit precedent. A "financial benefit" arises when "the availability of infringing material acts as a draw for customers." *Cook v. Meta Platforms Inc.*, 2023 WL 6370891, at *6 (N.D. Cal. Jan. 4, 2023) (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004)). This element requires neither substantial benefit nor substantial draw for customers. *Perfect 10, Inc.*, 847 F.3d at 673. Similarly, here, Alphabet's integration of Google's Generative AI Models—made possible only through the infringement of Plaintiffs' works—into its product suite demonstrates the requisite financial benefit. The CAC alleges this integration enhanced product attractiveness and "drov[e] increased usage and revenue[.]" CAC ¶ 185 (alleging $10.9 billion growth in revenue from AI-Powered Products). Alphabet's direct benefit also subsumes more than mere subsidiary revenue, as confirmed by its CEO's attribution of increased profitability to AI integration across Alphabet products. *Id.* ¶ 108.

Defendants' contention that Plaintiffs must draw a straight line from "their particular works" to Alphabet's financial benefit is incorrect. In *Napster*, the Ninth Circuit held that a platform's broad offering of copyrighted content creates the requisite "draw" for financial benefit analysis. *Napster, Inc.*, 239 F.3d at 1023. Here, the CAC similarly alleges that Plaintiffs' works were incorporated into

1  the AI models, CAC ¶¶ 1, 4, and that these models—enhanced by the inclusion of Plaintiffs' protected

2  content—created the commercial draw driving Alphabet's revenue growth, *id.* ¶ 185.

3         Defendants' reliance on cases dismissing claims against Alphabet fails upon examination of

4  the distinguishing factual and procedural contexts. In *Lancaster v. Alphabet, Inc.*, dismissal rested on

5  the complete absence of "specific allegations against Alphabet, Inc." 2016 WL 3648608, at *7 (N.D.

6  Cal. July 8, 2016). Plaintiffs' CAC, by contrast, details Alphabet's operational control and direct

7  financial benefit from the infringing conduct. CAC ¶¶ 106-10.

8         The other cases on which Defendants rely are similarly distinguishable. *See Kremer v.*

9  *Alphabet Inc.*, 2024 WL 923900, at *1 (M.D. Tenn. Mar. 4, 2024) (dismissing on basis that plaintiff

10  alleged only that Alphabet's "brands include gmail, google.com, youtube, google ads, nest and

11  others"); *Manigault-Johnson v. Google, LLC*, 2019 WL 3006646, at *2 (D.S.C. Mar. 31, 2019)

12  (dismissing where complaint contained "only one factual allegation regarding [Alphabet], namely,

13  that it is Google's parent company"). Unlike these cases, the CAC here clearly establishes Alphabet's

14  active operational control and deliberate extraction of financial benefit from infringing conduct, and

15  thus, warrants a denial of Defendants' MTD.

16  **IV.    Plaintiffs Properly Plead Their Entitlement to Injunctive Relief as Authorized by the**
         **Copyright Act.**

17         The Copyright Act expressly authorizes injunctive relief: "[A]ny court having jurisdiction of

18  a civil action arising under this title may . . . grant temporary and final injunctions on such terms as

19  it may deem reasonable to prevent or restrain infringement." 17 U.S.C. § 502. Courts regularly award

20  injunctive relief for copyright infringement. *See, e.g.*, *Int'l Med. Devices, Inc. v. Cornell*, 2024 WL

21  1363690, at *8 (C.D. Cal. Mar. 28, 2024) (permanent injunction granted to plaintiffs who were

22  successful on copyright and trademark claims); *Sadowski v. Package Depo, LLC*, 2024 WL 1829701,

23  at *4 (C.D. Cal. Jan. 22, 2024) (awarding permanent injunction where defendant continued infringing

24  use of plaintiff's work, and monetary damages are inadequate to eliminate the problem); *Sony Music*

25  *Ent., Inc. v. Clark-Rainbolt*, 2024 WL 1319735, at *5 (N.D. Tex. Mar. 27, 2024) (granting permanent

26  injunction to prevent defendant from copying/performing or otherwise exploiting the works without

27  paying certain revenues to plaintiffs); *Fermata Int'l. Melodies, Inc. v. Champions Golf Club, Inc.*,

28

712 F. Supp. 1257, 1262 (S.D. Tex. 1989) ("[C]ourts have traditionally granted permanent injunctions, if liability is established and a continuing threat to the copyright exists.") (collecting cases).

Defendants attempt to litigate the scope of a permissible injunction on the merits, without the benefit of discovery and findings by the trier of fact. MTD at 13-15. This position is contrary to the law: "claim[s] for injunctive relief must be resolved on an evidentiary record and not at the pleading stage." *Howard v. City of Vallejo*, 2013 WL 6070494, at *6-7 (E.D. Cal. Nov. 13, 2013) (*citing Los Angeles v. Lyons*, 461 U.S. 95 (1983); *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999); and *LaDuke v. Nelson*, 762 F.2d 1318 (9th Cir. 1985)); *see also Sears Roebuck & Co. v. Williams Express, Inc.*, No. 3:10-cv-00221, ECF No. 38, at 16 (D. Alaska June 8, 2011) ("Plaintiff does not need to demonstrate that it is entitled to a permanent injunction in its pleading.").

Defendants rely on *eBay v. MercExchange,* 547 U.S. 388, 390 (2006) but their reliance is off-base. *eBay* is not a pleadings case and simply "does not, as Defendant argues, address pleading requirements at the motion to dismiss stage." *Signify N. Am. Corp. v. Robe Lighting, Inc.*, 2021 WL 3419187, at *3 (S.D. Fla. Mar. 16, 2021) (emphasis added) (declining to dismiss claim for injunctive relief for patent infringement). Instead, *eBay* merely describes the facts which must be shown in order to establish whether or not a permanent injunction should issue. Plaintiffs will meet *eBay*'s test but at the proper juncture after discovery has closed and Defendants' liability is determined. *Software Research, Inc. v. Dynatrace LLC*, 316 F. Supp. 3d 1112, 1138 (N.D. Cal. 2018) (explaining that courts "cannot find as a matter of law on a motion to dismiss that [plaintiff] cannot satisfy the *eBay* criteria"). Other courts are in accord. *See, e.g.*, *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 2016 WL 7157421, at *6 (E.D. Tex. Dec. 7, 2016) ("[T]he [*eBay* factors] are not pleading requirements—rather they are factors that are to be considered . . . before an injunction should issue*.*") (overruled on irrelevant grounds); *Oxygenator Water Techs., Inc. v. Tennant Co.*, 2020 WL 4572062, at *6 (D. Minn. Aug. 7, 2020) (holding "[a] claim for permanent injunction should not be stricken at the pleading stage when the underlying claim is not dismissed") (quoting *Jerez v. Holder*, 2011 WL 7637808, at *12 (D. Minn. Sept. 1, 2011)).

1    Defendants cite only two additional cases that dismissed injunctive relief at summary

2  judgment or applied the *eBay* factors to a motion for permanent injunction, not a Rule 12 motion. *See*

3  *TD Bank N.A. v. Hill*, 928 F.3d 259, 267 (3d Cir. 2019) (analyzing irreparable harm factor only after

4  discovery and a ruling on summary judgment from the district court); *Metro-Goldwyn-Mayer Studios,*

5  *Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1209-1214 (C.D. Cal. 2007) (applying the *eBay* factors

6  at plaintiffs' motion for a permanent injunction).

        **A.**    **Preemptory Denial of Injunctive Relief is Unwarranted Where Copyright Infringement is Ongoing.**

9    Plaintiffs are not required to "specify the precise injunctive relief they will ultimately seek at

10  the class certification stage." *B.K. v. Snyder*, 922 F.3d 957, 972 (9th Cir. 2019). This concept is

11  especially important in the copyright context, where preemptive dismissal of injunctive relief would

12  eviscerate a plaintiff's ability to prevent future infringement. Thus, preemptive dismissals of

13  injunctive relief are disfavored because a prevailing plaintiff "is entitled to effective relief; and any

14  doubt in respect of the extent thereof must be resolved in its favor as the innocent producer and against

15  the [infringer], which has shown by its conduct that it is not to be trusted." *See, e.g.*, *Y.Y.G.M. SA v.*

16  *Redbubble, Inc.*, 75 F.4th 995, 1006 (9th Cir. 2023) (quoting *William R. Warner & Co. v. Eli Lilly &*

17  *Co.*, 265 U.S. 526, 532 (1924)); *Shade v. Gorman*, 2009 WL 196400, at *2 (N.D. Cal. Jan. 28, 2009)

18  (denying attempt to dismiss plaintiff's claims for injunctive relief as premature where defendant

19  argued that plaintiff failed to support allegations of irreparable injury and lack of adequate legal

20  remedy with sufficient facts).

21    Plaintiffs have pled "enough facts" to plausibly state a claim for which they may obtain

22  injunctive relief. *Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d at 942. Specifically, Plaintiffs

23  have pled that "the unique characteristics of AI model training and deployment create distinct

24  categories of harm," Google's infringement is continuing, and that there is a threat of future

25  infringement that monetary damages would not prevent. CAC ¶ 181; *see also id.* ¶ 195 ("Unless

26  enjoined by this Court, Alphabet will continue to benefit from and facilitate Google's ongoing

27  infringement through continued operation and monetization of its AI models, causing irreparable

28  injury for which Plaintiffs have no adequate remedy at law."). Accepting these factual allegations as

true—as the Court must—without an injunction, Plaintiffs face ongoing future harm as the infringement continues even were they to recover damages for past harm. Monetary compensation alone is an insufficient remedy for future infringement and therefore an injunction is warranted, especially because "[i]n the copyright realm . . . an injunction should be granted if denial would amount to a forced license to use the creative work of another." *See Wakefield v. Olenicoff*, 2015 WL 1460152, at \*9 (C.D. Cal. Mar. 30, 2015) (quoting *Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 84 (2d Cir. 2004)); *see also Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 968 (8th Cir. 2005) ("[Plaintiff] certainly has the right to control the use of its copyrighted materials, and irreparable harm inescapably flows from the denial of that right."). For example, barring use contingent on compensation is an accepted equitable remedy. *See Sony Music Ent., Inc.*, 2024 WL 1319735, at \*5 (granting permanent injunction under an "alternative request for damages in the event of future infringement," where defendant would compensate plaintiff with a percentage of all revenues connected to the infringing work). Injunctions fashioned to prevent infringement of yet-unregistered works are also common. *See Perfect 10, Inc. v. Amazon, Inc.*, 508 F.3d 1146, 1154 n.1 (9th Cir. 2007) (rejecting the argument against including unregistered works in an injunction and affirming the district court's authority to issue such an order); *see also Tattoo Art, Inc. v. TAT Int'l, LLC*, 794 F. Supp. 2d 634, 661-63 (E.D. Va. 2011) (enjoining infringement of both registered and unregistered works in reliance on *Perfect 10 v. Amazon.com* and the fact that "the majority of the United States Courts of Appeals that have considered this issue"), aff'd, 498 F. App'x 341 (4th Cir. 2012)); *Beastie Boys v. Monster Energy Co.*, 87 F. Supp 3d 672, 681 (S.D.N.Y. 2015) (injunction which extended beyond specific acts of infringement was inappropriate because infringement was "unlikely to recur").

All of the cases on which Defendants rely are *non-copyright* cases dismissing claims for injunctive relief because either the plaintiffs' allegations contradicted their right to an injunctive relief, or they waived such right based on inapplicable procedural nuances. Neither scenario applies here. *See* MTD at 13-14; *O'Shea v. Littleton*, 414 U.S. 488, 495-96, 502 (1974) (dismissing injunctive relief in illegal bond-setting claim where future or ongoing harm was implausible because it relied

on likelihood of plaintiffs being arrested for and charged with crimes in the future); *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 842, 844 (9th Cir. 2020) (in false advertising case, dismissing *restitution* for past harm where plaintiff had adequate remedy at law, price premium, but chose not to pursue such remedy); *Philips v. Ford Motor Co.*, 726 F. App'x 608, 609 (9th Cir. 2018) (appellants "d[id] not challenge" and therefore "waived any argument that they alleged sufficient facts to plausibly establish the inadequacy of their legal remedies" in consumer protection action); *Hubbard v. Google LLC*, 2024 WL 3302066, at *4 (N.D. Cal. July 1, 2024) (dismissing request for equitable relief because plaintiffs' "allegations of harm focus on economic injuries already suffered" such that they failed to allege inadequate remedy at law); *Blain v. Liberty Mut. Fire Ins. Co.*, 2023 WL 2436003, *7 (S.D. Cal. Mar. 9, 2023) (breach of contract action, where plaintiff's injury was tied to COVID-19 stay-at-home orders that were no longer effective). Unlike in Defendants' cited cases, the Copyright Act expressly authorizes Plaintiffs' right to seek injunctive relief and there is no waiver.

### B.    The *eBay* Factors Weigh in Favor of an Injunction.

Even if the Court were to accept Defendants' invitation to apply the *eBay* test as a requirement at the pleading stage (and Plaintiffs are aware of no courts which have done so, *see supra* at 18-19), Plaintiffs sufficiently plead facts as to each of the *eBay* elements: (1) Plaintiffs suffered an irreparable injury, CAC ¶¶ 4, 181, 194-195; (2) Plaintiffs have inadequate remedies at law, CAC ¶¶ 181, 195; (3) remedy in equity is warranted, given the balance of hardships, CAC ¶¶ 155-156; and (4) public interest would not be disserved, CAC ¶¶ 1-7, 151-156. *See eBay*, 547 U.S. at 391.

***Plaintiffs Would Suffer Irreparable Harm.*** Plaintiffs allege that future harm will befall them absent a permanent injunction—an allegation which, when proved, will satisfy their entitlement to injunctive relief. *Y.Y.G.M.*, 75 F.4th at 1007 ("The district court abused its discretion by discounting the relevance of future harm."). Plaintiffs have alleged that Defendants will continue to surreptitiously feed its Generative AI Models copyrighted works without licensure. *See, e.g.*, CAC ¶ 4 ("By embedding the Plaintiff Works into its Generative AI Models, Google has irreversibly entangled the Plaintiff Works with its commercial products . . . [which] Google compounds daily through its expanding deployment of AI-Powered Products built on infringed Plaintiff Works."). Defendants'

intention is clear: it will continue to train its AI products on copyrighted works, despite being on notice that copyright holders like Plaintiffs do not consent.

**Plaintiffs Have No Adequate Remedy at Law.** Plaintiffs also sufficiently allege no adequate remedy at law: Defendants are on notice of their infringement and yet continue to infringe. CAC ¶¶ 181, 195. "[G]iven [Defendant's] knowledge of its violations and continued use of Plaintiff's [protected works], there is no adequate remedy at law to address the ongoing damage and irreparable harm." *Cadence Design Sys. v. Pounce Consulting, Inc.*, 2019 WL 1768619, at *10 (N.D. Cal. Apr. 1, 2019). *O'Shea v. Littleton* is inapposite because the court there dismissed claims for injunctive relief based on its reasoning that the injury alleged was "necessarily conjectural" and, therefore, the complaint "failed to satisfy the threshold requirement imposed by Art. III." 414 U.S. at 493, 502. Article III standing is not in dispute here.

**The Balance of Hardships & Public Interests Weigh in Plaintiffs' Favor.** Nothing in Defendants' argument compels a conclusive determination of these factors against Plaintiffs as a matter of law on the pleadings. This is a case of great public import and interest, and courts do not force non-consenting licensing on those whose works were infringed without their authorization. *See* CAC ¶¶ 1-6 (Google has willfully infringed on millions of registered copyrighted works for profit on an unprecedented scale, ignoring the FTC's warnings to cease such practices); *id.* ¶ 7 (Google has chosen to "copy data from websites under active prosecution for copyright infringement"); *id.* ¶ 151 (the infringement was willful and enacted "without securing licenses or authorization," in conscious disregard of U.S. copyright laws); *id.* ¶¶ 152-56 (Google knew that customers were concerned about its Generative AI Models and being aware of the legal risks, Google chose to infringe on millions of copyrighted works anyway); *id.* ¶¶ 29, 34, 47, 53, 66, 74, 80, 88, 97, 103 (Plaintiffs have been deprived of licensing revenues they would have received had Google properly licensed their works for AI training purposes). Any balance of hardships can also be overcome by the well-established interest in ensuring proper enforcement of already-enacted federal intellectual property laws promulgated under Congress's constitutional authority. *See, e.g.*, *Silicon Valley Textiles, Inc. v. Sofari Collections Ltd.*, 2023 WL 8242105, at *5 (N.D. Cal. Nov. 28, 2023) ("Defendants cannot 'claim any

legitimate hardships as a result of being enjoined from committing unlawful activities' whereas Plaintiff would suffer significant hardships if Defendants were permitted to continue unlawfully infringing on their Copyrighted Design.") (quoting *Apple, Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 950 (N.D. Cal. 2009)); *Taylor Corp. v. Four Seasons Greetings, LLC*, 315 F.3d 1039, 1042 (8th Cir. 2003) ("The public interest is served in protecting the holders of valid copyrights from infringing activity . . . ."). Regardless, and to reiterate, the Court does not need to make any of these determinations at this stage, as the *eBay* factors "are not pleading requirements." *Archer & White Sales, Inc.*, 2016 WL 7157421, at *6.

## <u>CONCLUSION</u>

For the aforementioned reasons, Plaintiffs request that the Court deny Defendants' Motion to Dismiss in its entirety. If the Court is inclined to grant any portion, Plaintiffs request leave to amend. *Risby v. Hawley*, 2024 WL 217827, at *1 (N.D. Cal. Jan. 19, 2024) ("[A] court should grant leave to amend unless amendment would be futile.").

Dated: February 7, 2025

By: _____/s/ Laura M. Matson_____
                    Laura M. Matson

Brian D. Clark (admitted *pro hac vice*)
Laura M. Matson (admitted *pro hac vice*)
Arielle S. Wagner (admitted *pro hac vice*)
Eura Chang (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone:    (612) 339-6900
Facsimile:    (612) 339-0981
Email:      bdclark@locklaw.com
            lmmatson@locklaw.com
            aswagner@locklaw.com
            echang@locklaw.com

Stephen J. Teti (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
265 Franklin Street, Suite 1702
Boston, MA 02110
Telephone:    (617) 456-7701
Email:      sjteti@locklaw.com

Joseph R. Saveri (State Bar No. 130064)
Cadio Zirpoli (State Bar No. 179108)
Christopher K.L. Young (State Bar No. 318371)
Elissa A. Buchanan (State Bar No. 249996)
Evan A. Creutz (State Bar. No. 349728)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone:    (415) 500-6800
Facsimile:    (415) 395-9940
Email:      jsaveri@saverilawfirm.com
            czirpoli@saverilawfirm.com
            cyoung@saverilawfirm.com
            eabuchanan@saverilawfirm.com
            ecreutz@saverilawfirm.com

Lesley E. Weaver (SBN )
Anne K. Davis (SBN )
Joshua D. Samra (SBN )
**BLEICHMAR FONTI & AULD LLP**
1330 Broadway, Suite 630
Oakland, CA 94612
Tel. (415) 797-2617
lweaver@bfalaw.com
adavis@bfalaw.com
jsamra@bfalaw.com

Gregory S. Mullens (admitted *pro hac vice*)
**BLEICHMAR FONTI & AULD LLP**
75 Virginia Road, 2nd Floor
White Plains, NY 10603
Tel. (415) 445-4006
gmullens@bfalaw.com

Matthew Butterick (State Bar No. 250953)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:      (323) 968-2632
Facsimile:       (415) 395-9940
                       mb@butericklaw.com

Ryan J. Clarkson (SBN 257074)
Yana Hart (SBN 306499)
Tiara Avans (SBN 343928)
**CLARKSON LAW FIRM, P.C.**
22525 Pacific Coast Highway
Malibu, CA 90265
Telephone:      213-788-4050
rclarkson@clarksonlawfirm.com
yhart@clarksonlawfirm.com

Tracey Cowan (SBN 250053)
**CLARKSON LAW FIRM, P.C.**
95 Third Street, Second Floor
San Francisco, CA 94103
Tel. (213) 788-4050
tcowan@clarksonlawfirm.com

*Counsel for Individual and Representative Plaintiffs
and the Proposed Class*