DAVID H. KRAMER, SBN 168452
Email: dkramer@wsgr.com
MAURA L. REES, SBN 191698
Email: mrees@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300

ERIC P. TUTTLE, SBN 248440
Email: eric.tuttle@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone: (206) 883-2500

*Counsel for Defendants*
GOOGLE LLC AND ALPHABET INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| *In re Google Generative AI Copyright Litigation* | Master File Case No.: 5:23-cv-03440-EKL<br>Consolidated with Case No.: 5:24-cv-02531-EKL<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT**<br><br>**Filed Concurrently Herewith:**<br>Reply in Support of Request for Judicial Notice and Consideration of Materials Incorporated by Reference<br><br>Date: April 23, 2025<br>Time: 10:00 a.m.<br>Courtroom: 7<br>Judge: Hon. Eumi K. Lee |

**TABLE OF CONTENTS**

**Page**

ARGUMENT ............................................................................................................................... 2

I.    Plaintiff Andersen Fails to Allege Registration of Her Allegedly Infringed Images. .......... 2

II.    Plaintiffs Fail to State a Claim Based on Unidentified Works. ............................................ 5

III.    Plaintiffs Fail to State a Claim for Injunctive Relief. ........................................................... 7

IV.    The Vicarious Infringement Claim Against Alphabet Should Be Dismissed. ..................... 9

    A.    Plaintiffs Have Not Adequately Alleged That Alphabet Has the Right and Ability to Supervise Google's Alleged Conduct. ........................................................ 9

    B.    Plaintiffs Have Not Adequately Alleged That Alphabet Derived a Direct Financial Benefit from Google's Alleged Conduct. .................................................. 11

V.    Plaintiffs' Complaint Violates Rule 8's Plain Statement Requirement. ............................ 13

CONCLUSION ........................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*A & M Recs., Inc. v. Napster, Inc.*,
   114 F. Supp. 2d 896 (N.D. Cal. 2000) .................................................................................. 12

*A & M Recs., Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ............................................................................................... 12

*Andersen v. Stability AI Ltd.*,
   2024 WL 3823234 (N.D. Cal. Aug. 12, 2024) ........................................................................ 4

*Andersen v. Stability AI Ltd.*,
   700 F. Supp. 3d 853 (N.D. Cal. 2023) .................................................................................... 4

*Banff Ltd. v. Ltd., Inc.*,
   869 F. Supp. 1103 (S.D.N.Y. 1994) ...................................................................................... 10

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*,
   149 F. Supp. 3d 1167 (N.D. Cal. 2015) ................................................................................ 14

*Brunson v. Cook*,
   2023 WL 2668498 (M.D. Tenn. Mar. 28, 2023) ................................................................. 4, 5

*Cloudera, Inc. v. Databricks, Inc.*,
   2021 WL 3856697 (N.D. Cal. Aug. 30, 2021) ...................................................................... 14

*Cody v. Ring LLC*,
   2024 WL 735667 (N.D. Cal. Feb. 22, 2024) ........................................................................... 5

*Dauman v. Hallmark Card, Inc.*,
   1998 WL 54633 (S.D.N.Y. Feb. 9, 1998) ............................................................................. 12

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) ............................................................................................................ 7, 8

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
   76 F.3d 259 (9th Cir. 1996) .................................................................................................. 11

*Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*,
   586 U.S. 296 (2019) .................................................................................................... 1, 3, 5, 6

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
   772 F.2d 505 (9th Cir. 1985) ................................................................................................ 10

*Friche v. Hyundai Motor, Am.*,
   2022 WL 1599868 (C.D. Cal. Jan. 28, 2022) ....................................................................... 10

*Hills Transp. Co. v. Sw. Forest Indus., Inc.*,
   266 Cal. App. 2d 702 (1968) ................................................................................................ 15

*Howard Johnson Co. v. Khimani*,
   892 F.2d 1512 (11th Cir. 1990) ............................................................................................ 11

*Hubbard v. Google LLC*,
    2024 WL 3302066 (N.D. Cal. July 1, 2024) ................................................................... 7

*Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*,
    2017 WL 696126 (S.D.N.Y. Feb. 15, 2017) .................................................................... 6

*Keck v. Alibaba.com Hong Kong Ltd.*,
    369 F. Supp. 3d 932 (N.D. Cal. 2019) ......................................................................... 11

*McHenry v. Renne*,
    84 F.3d 1172 (9th Cir. 1996) ....................................................................................... 13

*Menzel v. Scholastic, Inc.*,
    2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) ............................................................. 14

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) .............................................................................................. 10, 11

*MGM Studios, Inc. v. Grokster, Ltd.*,
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) ......................................................................... 8

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ................................................................................................... 7, 8

*Oxygenator Water Techs., Inc. v. Tennant Co.*,
    2020 WL 4572062 (D. Minn. Aug. 7, 2020) .................................................................. 7

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
    167 F. Supp. 2d 1114 (C.D. Cal. 2001) ......................................................................... 6

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) ....................................................................................... 12

*Perfect 10, Inc. v. Google, Inc.*,
    653 F.3d 976 (9th Cir. 2011) ......................................................................................... 8

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ....................................................................................... 10

*Prescott v. TC Heartland, LLC*,
    2024 WL 3463826 (N.D. Cal. July 18, 2024) ................................................................. 7

*Romani v. Gen. Motors LLC*,
    2024 WL 3995333 (N.D. Cal. Aug. 28, 2024) ................................................................ 7

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ......................................................................................... 7

*Soo Park v. Thompson*,
    851 F.3d 910 (9th Cir. 2017) ....................................................................................... 14

*TD Bank N.A. v. Hill*,
    928 F.3d 259 (3d Cir. 2019) ......................................................................................... 8

*Thunder Studios, Inc. v. Kazal*,
    2018 WL 5099726 (C.D. Cal. Mar. 22, 2018) ............................................................. 13

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT     iii     MASTER FILE CASE NO.: 5:23-CV-03440-EKL

*UAB "Planner 5D" v. Facebook, Inc.*,
    2020 WL 4260733 (N.D. Cal. July 24, 2020) ................................................................. 3

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ........................................................................................................ 10

*Y.Y.G.M. SA v. Redbubble, Inc.*,
    75 F.4th 995 (9th Cir. 2023) ........................................................................................ 7, 8

**STATUTES**

15 U.S.C. § 1116 ................................................................................................................. 8

17 U.S.C. § 101 ................................................................................................................... 4

17 U.S.C. § 103 ................................................................................................................... 3

17 U.S.C. § 411 ........................................................................................................... 1, 3, 5

17 U.S.C. § 502 ................................................................................................................... 7

17 U.S.C. § 503 ................................................................................................................... 7

**RULES**

Fed. R. Civ. P. 8 ............................................................................................... 2, 13, 14, 15

Fed. R. Civ. P. 9 ............................................................................................................... 15

Fed. R. Civ. P. 11 ............................................................................................................... 2

**MISCELLANEOUS**

*Brunson v. Cook*,
    3:20-cv-01056 (M.D. Tenn. Jan. 29, 2024), ECF No. 186-1 ......................................... 4

United States Copyright Office, *Compendium of U.S. Copyright Office Practices*
    (3rd ed. Jan. 28, 2021) ................................................................................................. 3, 4

# REPLY

Plaintiffs' Opposition is an exercise in obfuscation. Rather than comply with the Court's directive to make "substantial good-faith efforts to address the issues" raised by Defendants' prior motions to dismiss, ECF No. 77 at 2, Plaintiffs dug in their heels and stubbornly refused to make changes to their pleading to answer Defendants' objections. The flaws Plaintiffs discount as "marginal" "quibbles" are far from it. Opp. 2. And Plaintiffs' now-repeated failure to address, much less correct, these flaws makes plain that Plaintiffs cannot do so.

First, Plaintiff Andersen has failed to plead that her registrations cover the images that Google purportedly infringed. The law is clear that a plaintiff cannot "su[e] for infringement until 'registration [of the work] ... has been made'" with the U.S. Copyright Office. *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 302 (2019) (quoting 17 U.S.C. § 411(a)). Compilation registrations, like those Andersen asserts, do not cover previously published material, such as the webcomics Andersen published online. While Andersen could have tried to plead that the images she now asserts were not previously published or that different images were infringed, she chose not to. After clearing away her irrelevant and unsupported responses, all that remains is her argument that her online distribution and licensing of certain webcomics did not constitute publication under the Copyright Act. But "publication" encompasses Andersen's indisputable distribution of her content via social media services and licensing of that content to those services for further distribution and display. Andersen also ignores her own admissions, as three of her registrations expressly exclude comics that she previously published online, Consolidated Amended Compl. ("CAC"), Ex. A at 8-9, 11, and she does not allege that the comics at issue fall outside her own express exclusion. Andersen's claims cannot proceed.

Second, while Plaintiffs concede the general "rule requiring identification of each specific work" in their pleading, they inexplicably refuse to comply with it. Opp. 12 & n.1. Their half-hearted excuses cannot forestall dismissal of unidentified works. This is not the rare case where the number of works is too "large" to name in a complaint, Opp. 12; Plaintiffs have identified only 31 registrations and have not given any indication as to how many additional, unidentified works might be at issue, or why they would be too numerous to list. Plaintiffs' other excuse—ignorance

of what "works Defendants infringed," Opp. 12—rings equally hollow. As Plaintiffs note, in such circumstances plaintiffs may try to plead infringement upon information and belief, assuming they have a Rule 11 basis for doing so. Opp. 13. Plaintiffs have already invoked that doctrine for some works. CAC ¶¶ 129, 145. Their inability or refusal to invoke it for other works is telling. Plaintiffs cannot sue over works they do not identify and have no good-faith basis for putting at issue.

Third, Plaintiffs still do not meaningfully defend the shortcomings of their claim for injunctive relief. As Google explained, Plaintiffs do not allege facts showing the basic requisites for such relief, *i.e.*, irreparable harm and an inadequate remedy at law. Plaintiffs' Opposition does not engage with Google's authorities and those Plaintiffs cite are unhelpful to them.

Fourth, Plaintiffs cannot salvage their vicarious infringement claim against Google's parent, a claim they previously dropped but have sought to resurrect. While Plaintiffs muster a series of synonyms for the word "control," they do not discuss the governing standard for vicarious liability—requiring a parent company to have substantial and continuous connection to the allegedly infringing actions at issue and to earn a direct financial benefit from them—or show how their meager allegations meet it. Plaintiffs establish nothing more than an ordinary parent-subsidiary relationship between Alphabet and Google, which cannot render Alphabet liable for Google's alleged acts under basic corporate and copyright law principles.

Finally, like Plaintiffs' earlier complaints, this Complaint still violates Rule 8's plain statement rule. It contains incendiary and apparently irrelevant accusations of conspiracy and fraud and fails to apprise Defendants of which "products" Plaintiffs accuse of infringement, and the basis for those accusations. Rule 8 requires such basics to define the metes and bounds of the case and provide notice of what Defendants must investigate and answer. Merely pointing back to their allegations, as Plaintiffs do, does not solve the problem. Defendants therefore again ask the Court to dismiss the Complaint.

### ARGUMENT

### I.    Plaintiff Andersen Fails to Allege Registration of Her Allegedly Infringed Images.

None of Plaintiffs' arguments addresses the central registration issue raised by Google's motion: the Complaint does not adequately plead that Andersen's registrations cover the images

1  that Google purportedly infringed. Without a registration covering the images Andersen has put at
2  issue, her claims cannot proceed as to those works. This is black letter law for a copyright claim
3  and an issue Defendants previously raised. Still, Plaintiffs have made no attempt to remedy it.

4  The Complaint identifies five registrations purporting to cover the six Andersen images at
5  issue in the case. *See* CAC Ex. A at 8-12 (registrations); CAC Ex. B at 2-7 (allegedly infringed
6  images). Plaintiffs concede that the registrations are for compilations. *See* Opp. 8. And they do not
7  dispute that compilation registrations are distinct from registrations of the underlying images
8  included in the compilations. *See* Opp. 9; *cf.* 17 U.S.C. § 103. Instead, Plaintiffs mischaracterize
9  the Motion as challenging the "fact" of "validity" of their registrations. Opp. 8-9.

10  To be sure, discovery may bring to light individualized fact issues concerning the validity
11  of all of Plaintiffs' registrations, such as whether Plaintiffs' applications contained "inaccurate
12  information" that "would have caused the Register of Copyrights to refuse registration." 17 U.S.C.
13  § 411(b)(2); *see* Mot. 9 & n.2.[1] Defendants' motion, however, highlights a pleading failure:
14  Plaintiffs' failure to plausibly plead that the images Andersen alleges Google infringed were
15  registered before suit, as the law requires. 17 U.S.C. § 411(a); *Fourth Est.*, 586 U.S. at 302. And
16  Plaintiffs do not dispute that a complaint must "'plausibly plead on its face' copyright registrations
17  covering the works that the defendant allegedly infringed." *UAB "Planner 5D" v. Facebook, Inc.*,
18  2020 WL 4260733, at *2 (N.D. Cal. July 24, 2020).

19  Next, Plaintiffs argue that because Andersen is allegedly the author of both the
20  compilations and the underlying images contained therein, registrations for the compilations also
21  cover the underlying images, even preexisting ones. Opp. 9. That misses the point. Regardless of
22  whether compilation registrations *generally can* cover **preexisting** underlying material included in
23  the compilation, such registrations "do[] not cover any **previously published** material." United
24  States Copyright Office, *Compendium of U.S. Copyright Office Practices* (3rd ed. Jan. 28, 2021)
25  ("Compendium") § 508.2 (emphasis added); *see also* Mot. 7-8. That "longstanding practice of
26  precluding previously published material" from the compilation registration governs "even if the

---

[1] Defendants' motion does not seek dismissal of the works of Plaintiffs Fink and Almond based on a failure to plausibly plead pre-suit registration. *See* Mot. 1, 9 n.2; Opp. 11-12.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT     -3-     MASTER FILE CASE NO.: 5:23-CV-03440-EKL

author of the collective work ... is the author of the previously published material and owns all of the rights in that material." Compendium § 1008.2; *see also* Compendium § 618.7(B)(2) (same). The Copyright Office confirmed that governing practice just last year. *See* 89 Fed. Reg. 58991, 58995 (July 22, 2024) ("[A]ny [works] included in the collective work that were previously published … are automatically excluded from the claim"). Plaintiffs falsely intimate that another court has "already considered and rejected" Defendants' arguments. Opp. 2. In truth, Plaintiffs have cited no case where a court has considered much less allowed a plaintiff to proceed on the theory that a compilation registration covers previously published images. *Cf. Andersen v. Stability AI Ltd.*, 2024 WL 3823234, at *13 (N.D. Cal. Aug. 12, 2024) (allowing claim to proceed based on "undisputed" registered works); *Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853, 863-65 (N.D. Cal. 2023) (limiting Andersen's claims to her registered works).

Lacking any authority for the legal proposition they advance, Plaintiffs alternatively claim that three of the six images Andersen included in her compilations have not been previously published even though Andersen posted them on X (formerly known as Twitter) before she published the compilations. Opp. 10-11. That, too, is baseless. Plaintiffs cite cases holding that the mere act of publicly displaying a work is not publication under the Copyright Act, Opp. 11, but they ignore that posting on X and other social media platforms not only displays a work to the general public, but also *grants a license to the platforms to further display, distribute, and sublicense the work*, which is more than enough to constitute "publication." *See* 17 U.S.C. § 101 ("The offering to distribute copies … for purposes of further distribution, public performance, or public display, constitutes publication"); *Brunson v. Cook*, 2023 WL 2668498, at *13-14 (M.D. Tenn. Mar. 28, 2023) (making "work available on YouTube, Instagram, and Twitter" "published [the] work"). The Copyright Office agrees with the *Brunson* court that posting works to these platforms publishes them, given the licenses granted in the "terms of use and service" that authorize copying and further distribution. Response of the Register of Copyrights at 14, *Brunson v. Cook*, 3:20-cv-01056 (M.D. Tenn. Jan. 29, 2024), ECF No. 186-1 (concluding that posting work to Twitter constituted publication); *see also* Compendium § 1906.1 (publication occurs when images are offered to "websites with a license permitting further distribution or display"). Again,

Plaintiffs are wrong to contend that the issue of publication turns on "disputed" fact questions. Opp. 10. As a matter of law, by posting the three images to X, Andersen published them, both because the images could "be viewed and shared by the public" and because, under X's terms of service, her posting granted X further "permi[ssion] to copy the work." *Brunson*, 2023 WL 2668498, at *13-14. These previously published images are not covered by Andersen's compilation registrations and her claims resting upon them cannot go forward.

Lastly, Plaintiffs say nothing at all about Anderson's three other images, which come from compilations whose certificates of registration expressly exclude previously published material. *See* Mot. 8 (discussing CAC, Ex. A at 8-9, 11). Plaintiffs' silence is a concession. *See, e.g.*, *Cody v. Ring LLC*, 2024 WL 735667, at *7 n.4 (N.D. Cal. Feb. 22, 2024) (failure to address argument concedes it). Because the Complaint fails to plausibly allege that these three images fall outside the express exclusion Anderson made, claims based on those images cannot proceed. *See* Mot. 8.

## II.     Plaintiffs Fail to State a Claim Based on Unidentified Works.

Decisions requiring a complete identification of the copyrighted works in the operative pleading are legion. Mot. 10-11 (collecting cases). Indeed, Plaintiffs themselves acknowledge the general "rule requiring identification of each specific work." Opp. 12. While they pay lip service to this rule by pretending that their Complaint "detail[s]" the "exact Plaintiffs' works used by Defendants," they expressly refuse to "identify an exhaustive list of works." Opp. 12 & n.1.

The requirement to identify all the works allegedly infringed makes eminent sense. Identifying the works at issue is necessary both to plead a plausible claim and to provide fair notice of that claim to Defendants. Mot. 11-12. This case illustrates the importance of that modest pleading burden. "[Section] 411(a) bars a copyright owner from suing for infringement until 'registration [of the work] ... has been made'" with the Copyright Office. *Fourth Est.*, 586 U.S. at 302 (quoting 17 U.S.C. § 411(a)). Unless the works are named in the complaint, plaintiffs can skirt this threshold registration requirement set forth by statute and in the Supreme Court's decision in *Fourth Estate*. Indeed, it is only because Plaintiffs identified certain works in their complaint that Defendants were able to demonstrate the fatal lack of valid registrations for those works at the pleading stage. *See supra* at 2-5; Mot. 4 (describing Plaintiffs' abandonment of claim based on

1  Larson's *Chiggers* for lack of registration). Further, without an identification of the specific works at issue, Defendants cannot begin to test whether unidentified works are actually owned by the plaintiff, and thus whether the plaintiff even has standing to proceed.

Plaintiffs offer two excuses for flouting this rule: Google's alleged infringement was supposedly "broad" and "concealed." Opp. 12. Neither excuse holds water. According to Plaintiffs, in cases involving "wholesale infringement of a large number of copyrighted works, courts have relaxed" pleading requirements so long as the plaintiff identified "representative examples of the works allegedly infringed." Opp. 12 (quoting *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, 2017 WL 696126, at *14 (S.D.N.Y. Feb. 15, 2017)). Neither case Plaintiffs cite for this relaxed standard is persuasive. In *Joint Stock Co.*, the magistrate judge recommended *dismissal* of the infringement claims for failure to plead *even* a "represent[at]ive listing" of works. 2017 WL 696126, at *14. Plaintiffs' other case, *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114 (C.D. Cal. 2001), predates *Twombly* and *Iqbal*'s command that claims be plausible, as well as *Fourth Estate*'s clear directive requiring registration to state a claim, 586 U.S. at 302. Regardless, there are not a large number of Plaintiffs' works at issue here; Plaintiffs' Complaint attaches only 31 registrations, CAC, Ex. A. Plaintiffs do not show why the number of additional works potentially at issue is so large as to make it impossible or impractical for them to adhere to the rule requiring identification of the works at issue.

Plaintiffs are likewise mistaken in suggesting that "the identity of the works … is within [Defendants'] exclusive possession and control." Opp. 12; *see also* Opp. 12 n.1, 14. Plaintiffs were willing to allege, on information and belief, that certain works were infringed. *E.g.*, CAC ¶ 129. That they do not allege others were infringed strongly suggests they lack even the required information and belief to do so. If Plaintiffs lack a good faith basis for claims based on other works, then those works are not and should not be at issue in this case. Indeed, if Plaintiffs' desired approach were permissible, it would quickly become the rule in copyright cases, rather than some rare exception, allowing a plaintiff to eschew identification of works on the theory that only the defendant knows what it did. That is opposite of what the law commands. Mot. 10-11.

### III. Plaintiffs Fail to State a Claim for Injunctive Relief.

As with other defects in Plaintiffs' Complaint, Plaintiffs declined the opportunity to correct their failure to allege facts supporting their conclusory request for injunctive relief. *See* ECF No. 55 at 9-12; ECF No. 62 at 3-7. While courts "may" issue injunctions in copyright cases, 17 U.S.C. §§ 502, 503, they are far from "automatic," *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006). And at the pleading stage, such requests must be supported by allegations that establish the basic requisites for equitable relief: irreparable harm and an inadequate remedy at law. *See O'Shea v. Littleton*, 414 U.S. 488, 502 (1974); *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Plaintiffs' Opposition fails to grapple with these controlling authorities or to point to the necessary allegations in their Complaint. *See* Mot. 13-15.

Citing unpublished decisions that are either out-of-circuit or predate the Ninth Circuit's decision in *Sonner*, Plaintiffs assert that requests for injunctive relief can never be dismissed. *See* Opp. 19-20. None of those cases is still good law, if they ever were. Post-*Sonner*, courts in this Circuit regularly dismiss requests for injunctive and other equitable relief. *Romani v. Gen. Motors LLC*, 2024 WL 3995333, at *4 (N.D. Cal. Aug. 28, 2024) (dismissing injunctive relief); *Prescott v. TC Heartland, LLC*, 2024 WL 3463826, at *7 (N.D. Cal. July 18, 2024) (dismissing one form of injunctive relief); *Hubbard v. Google LLC*, 2024 WL 3302066, at *4 (N.D. Cal. July 1, 2024) (dismissing equitable and injunctive relief). Even Plaintiffs' dubious authorities acknowledge that courts may dismiss requests for injunctive relief "when a complaint does not contain factual allegations that 'raise[] any indication that ... a permanent injunction might eventually be appropriate.'" *Oxygenator Water Techs., Inc. v. Tennant Co.*, 2020 WL 4572062, at *6 (D. Minn. Aug. 7, 2020). Plaintiffs also misleadingly cite a decision concerning a permanent injunction against *trademark infringement*, which has a statutory "presumption of irreparable harm," *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1005 (9th Cir. 2023), as authority that "preemptive dismissals" of copyright injunctions are "disfavored," Opp. 20.

Attacking a strawman, Plaintiffs dispute whether *eBay*'s four-part test regarding the propriety of an injunction should be applied at the pleading stage. Opp 19, 22. Defendants have not argued for that here. Mot. 13-15. What Defendants argue for is what the law requires: that a

1  plaintiff plead facts demonstrating "the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law"—"the basic requisites of the issuance of equitable relief." *O'Shea*, 414 U.S. at 502. Plaintiffs have failed to do so. Contrary to Plaintiffs' assertion, *O'Shea*'s equitable requirements are distinct from those of "Article III standing," Opp. 23, as they must be met "[e]ven if" the case presents a "case or controversy," *O'Shea*, 414 U.S. at 499.

**Irreparable Harm.** Plaintiffs assert that an allegation that infringement will occur in the "future" establishes irreparable harm. Opp 22-23. Not so. As Defendants explained in their motion, citing authorities Plaintiffs do not address or even acknowledge, Mot. 14, it is blackletter law that even proven infringement does not give rise to a presumption of irreparable harm. *See Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 980 (9th Cir. 2011). It follows that potential future infringement does not establish irreparable harm either: "the prospect that infringement will continue merely precipitates the question whether any future infringement would irreparably injure the copyright owner." *TD Bank N.A. v. Hill*, 928 F.3d 259, 280 (3d Cir. 2019) (vacating injunction); *see also MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1214-15 (C.D. Cal. 2007) (concluding that "irreparable harm" from "future infringement ... cannot be presumed").

In any event, Plaintiffs have not even alleged that Defendants will infringe their copyrights in the future. *See* Mot. 14. Plaintiffs cite a single paragraph of their Complaint, which asserts that Google has "entangled" their works with its "AI-Powered Products." Opp. 22 (quoting CAC ¶ 4). Whatever that means, it is not a plausible allegation of future infringement. What is more, Plaintiffs' sole authority, *Y.Y.G.M.*, is far afield. First, *Y.Y.G.M.* held only that "future harm" was "relevan[t]" to whether an injunction should issue and that the district court therefore erred in failing to consider it. *See* 75 F.4th at 1007 ("We remand for the district court to reconsider ... how the existence of future harm affects irreparable harm and the other factors"). Second, *Y.Y.G.M.* involved trademark infringement for which there is a statutory "rebuttable presumption of irreparable harm." *Id.* at 1005 (citing 15 U.S.C. § 1116(a)). There is no such presumption for copyright infringement. Mot. 9; *Perfect 10*, 653 F.3d at 981 (*eBay* overruled prior precedent recognizing a "presumption of irreparable harm" in copyright cases). In short, Plaintiffs have not pleaded and have instead shown they cannot plead irreparable harm.

*Inadequate Remedy at Law.* Plaintiffs contend that they lack an adequate remedy at law because Defendants are allegedly "on notice of their infringement and yet continue to infringe." Opp. 23. The allegations Plaintiffs cite are, at best, conclusory assertions of "continuing" infringement. CAC ¶¶ 181, 195. And Plaintiffs do not even try to grapple with their Complaint's extensive attention to supposed "monetary harm[s]," CAC ¶ 176; *see also* CAC ¶¶ 29, 34, 47, 53, 66, 74, 80, 88, 97, 103, which could, if proven, be remedied at law by money damages, *see* Mot. 15. Again, Plaintiffs pleaded nothing to support this required element for injunctive relief.

Plaintiffs' failure to substantiate or bolster their allegations is all the more telling given Google's prior motion to dismiss the injunctive relief demand. *See* ECF No. 55 at 9-12; ECF No. 62 at 3-7. Plainly, Plaintiffs cannot muster the necessary allegations in good faith. Accordingly, Defendants respectfully request that the Court dismiss Plaintiffs' claim for injunctive relief.

**IV.   The Vicarious Infringement Claim Against Alphabet Should Be Dismissed.**

Plaintiffs have nothing to say about the numerous cases rejecting vicarious copyright infringement claims that, like theirs, rest entirely on a parent-subsidiary relationship. Mot. 17-20. Instead, Plaintiffs attempt to salvage their claim against Alphabet by misstating their own allegations and the law. Their failure to allege what the law requires—that Alphabet (a) had a substantial and continuous connection to Google's allegedly improper copying for training purposes; and (b) earned a direct financial benefit from that activity—dooms their claim.

### A.   Plaintiffs Have Not Adequately Alleged That Alphabet Has the Right and Ability to Supervise Google's Alleged Conduct.

Plaintiffs do not dispute that to satisfy the "control" prong, they must plausibly allege Alphabet had both the "legal right and practical ability to control" the specific "infringing conduct" underlying their claim (Opp. 15)—*i.e.*, Google's alleged use of Plaintiffs' works to train generative AI models. Relying on empty buzzwords, Plaintiffs simply reiterate the Complaint's conclusory allegations about Alphabet's supposed "capacity to control Google's operations" and "AI activities" ***generally***. Opp. 15-16 (asserting that Alphabet exercises control through "operational channels," including "interlocking executive leadership," "oversight of AI initiatives across Alphabet subsidiaries," and "centralized control over AI resource allocation"). Those allegations

do not come close to suggesting that Alphabet had the required "substantial and continuing connection" to Google's allegedly infringing use of Plaintiffs' works in the training process. *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 519-20 (9th Cir. 1985); Mot. 15-18. To the contrary, Plaintiffs' allegations are precisely the sort that courts have consistently found insufficient to show relevant "control" in the parent-subsidiary context. Mot. 17-18.[2]

Plaintiffs do not discuss any of the authority cited in Defendants' Motion, or cite **a single case** addressing a vicarious infringement claim based on a parent-subsidiary relationship. Instead, they assert without explanation that the Ninth Circuit's opinion in *Frank Music* is "outdated," and that the "substantial and continuous" standard it established was somehow "effectively subsumed" by later cases that arose in an entirely different setting. Opp. 17 (citing *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 806 (9th Cir. 2007); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)). Not so. *Frank Music* remains good law and binding authority, and the standard it articulates—which has been applied by other courts post-*Perfect 10* and *Grokster*—recognizes that a plaintiff must allege a considerably greater connection by a parent company to a subsidiary's infringing acts than Plaintiffs have alleged here against Alphabet. Mot. 16-18. That rule makes sense in a regime where a parent corporation is generally "not liable for the acts of its subsidiaries," *United States v. Bestfoods*, 524 U.S. 51, 61 (1998), even though "every parent will have the opportunity to guide the affairs of its subsidiary" by virtue of the inherent nature of the parent-subsidiary relationship, *Banff Ltd. v. Ltd., Inc.*, 869 F. Supp. 1103, 1107 (S.D.N.Y. 1994).

Not surprisingly, then, Plaintiffs cite no cases applying an "*inaction* despite control authority" standard in the parent-subsidiary context. Opp. 17. But even Plaintiffs' inapposite cases

---

[2] Plaintiffs' assertion that they "cannot be expected to know the precise relationship between members of the [Alphabet] corporate family" does not excuse their deficient allegations. Opp. 15-16 (citing *Friche v. Hyundai Motor, Am.*, 2022 WL 1599868, at *5, n.4 (C.D. Cal. Jan. 28, 2022)). Plaintiffs must plausibly allege the elements of a vicarious infringement claim, and their vague allegations about Alphabet's "comprehensive operational control over Google" (Opp. 15) fail as a matter of law to do so. In *Friche*, which was not a copyright case, the court suggested that the plaintiff "cannot be expected" to know which members of the "Hyundai corporate family" were responsible for the defect in a vehicle's battery that caused it to catch fire. 2022 WL 1599868, at *5, n.4. That irrelevant case has no bearing on this one, where Plaintiffs' own Complaint alleges that *Google*, not Alphabet, controlled "Google's training dataset" and "chose" what data to copy "when gathering training data." CAC ¶¶ 2, 7.

1  illustrate their failure to adequately allege "control." *Id.* In *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 261-63 (9th Cir. 1996), a "swap meet" operator had "control" over third-party vendors' infringing conduct where the operator organized the meet, decided which vendors could access the area, affirmatively "controlled and patrolled" the area where the vendors sold counterfeit music recordings, and could "exclude any vendor for any reason" pursuant to a "broad contract." And in *Keck v. Alibaba.com Hong Kong Ltd.*, 369 F. Supp. 3d 932, 936-38 (N.D. Cal. 2019), the plaintiff pleaded in extensive detail how Alibaba controlled the infringing conduct of third-party merchants on its platform, including by overseeing the "day-to-day operation" of the marketplace, guiding merchants regarding the layout of their stores, facilitating their unlawful transactions, and having the right to terminate the merchants and reject their unlawful content. And even then, whether the plaintiff adequately pleaded control was a "close call." *Id.* at 937.

Plaintiffs' vicarious liability claim here bears no resemblance to those in Plaintiffs' cited cases. Nor is it a close call. Plaintiffs do not allege that Alphabet exercised ***any*** right or ability to "control" Google's decisions regarding what data to use to train its AI models or to "exclude" certain works from the data, *Fonovisa*, 76 F.3d at 262, nor do they allege that Alphabet controlled the "day-to-day operation" of Google's AI models, "provide[d] guidance" regarding what training data to use, or "reserved" the "right to remove, modify, or reject unlawful content" from any dataset, *Keck*, 369 F. Supp. 3d at 937-38.[3] Plaintiffs' generalized and vague allegations about Alphabet's "authority" to "control" Google (Opp. 16) would be present in any parent-subsidiary relationship and cannot satisfy the "right and ability to supervise" prong.

### B. Plaintiffs Have Not Adequately Alleged That Alphabet Derived a Direct Financial Benefit from Google's Alleged Conduct.

Plaintiffs similarly fail on the "direct financial benefit" prong. Apparently recognizing that any financial benefit Alphabet earns from *Google's* "AI-Powered Products" (CAC ¶ 120) is

---

[3] Plaintiffs' other cases are irrelevant. *Grokster* addressed an inducement theory, and not "MGM's vicarious liability theory." 545 U.S. at 930 n.9. *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1518 (11th Cir. 1990), had nothing to do with copyright law or vicarious infringement, and the level of control the defendants exercised extended far beyond the mere existence of overlapping officers and what Plaintiffs allege here. *See* Mot. 18.

necessarily indirect, and attributable solely to its status as Google's parent, Plaintiffs attempt a sleight-of-hand by asserting that Alphabet benefited financially from "AI integration across *Alphabet* products." Opp. 17 (emphasis added). But this case is not about "Alphabet products." And Plaintiffs cannot run away from their own allegations that "*Google* is integrating its Generative AI Models into a growing set of *Google* products" "across *Google's* product suite" and that "*Google* monetizes its copyright infringements." CAC ¶¶ 3, 120, 185 (emphases added). Plaintiffs cannot allege a direct financial benefit to Alphabet merely because it "does business through [Google] and receives the benefit of [Google's] sales." *Dauman v. Hallmark Card, Inc.*, 1998 WL 54633, at *6 (S.D.N.Y. Feb. 9, 1998) (dismissing claim against parent company).

Plaintiffs also argue that Alphabet received a "direct financial benefit" because "Plaintiffs' works were incorporated" into Google's AI models, Opp. 17-18, along with "millions" of others, CAC ¶ 1, and those models are "driving Alphabet's revenue growth," Opp. 18. That is more wordplay, ignoring the reality that Alphabet's revenue, as a holding company, is merely derivative of Google's, and inherently indirect.

Further, the Ninth Circuit has expressly rejected Plaintiffs' argument that "a platform's broad offering of copyrighted content creates the 'draw'" required to satisfy the direct financial benefit requirement for a vicarious liability claim. Opp. 17. To plead a direct financial benefit based on a "draw" theory, a plaintiff must allege that "customers were drawn to [the defendant's] services" because of "the infringement of the plaintiff's copyrighted material" specifically, "rather than general infringement." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673-74 (9th Cir. 2017). Plaintiffs rely on the Ninth Circuit's earlier opinion in *Napster* (Opp. 17), but that case is consistent with *Giganews*. There, it affirmed a preliminary injunction against Napster based on "[a]mple evidence" that Napster drew users to its service and received a direct financial benefit from the specific "infringing activity" at issue, *A & M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001), *i.e.*, the unauthorized use of works that "belong[ed] to or are administered by plaintiffs," *A & M Recs., Inc. v. Napster, Inc.*, 114 F. Supp. 2d 896, 903 (N.D. Cal. 2000). Here, Plaintiffs plead no facts suggesting that Google's alleged use of *their* works to train certain AI models drew customers to any "AI-Powered Products." CAC ¶¶ 3, 185. The Opposition's

unpleaded suggestion that Plaintiffs' works somehow "enhanced" models does not plausibly suggest that they *drew* users to products based on those models. Opp. 18. And again, only *Google* could *directly* benefit from any hypothetical draw to *Google's* products, not Alphabet. Mot. 20.

The *Leovy* Plaintiffs were right to voluntarily dismiss their misguided vicarious liability claim against Alphabet. Plaintiffs do not come close to alleging what is required to bring that claim back to life. It should be dismissed with prejudice.

## V.     Plaintiffs' Complaint Violates Rule 8's Plain Statement Requirement.

Plaintiffs do not deny that their Complaint fails to identify the Google products through which their copyrights were supposedly infringed—despite being on notice of this precise problem from prior pleadings. And Plaintiffs do not suggest that the Complaint's references to "Generative AI Models" and "AI-Powered Products" provide remotely "enough detail to guide discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178, 1180-81 (9th Cir. 1996). Instead, they offer a series of arguments for why their pleading failure ought to be excused, Opp. 4-7, but none addresses the fundamental Rule 8 problem: their continued refusal to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Plaintiffs first argue that, having failed to connect the dozens of models and products invoked in the Complaint to their copyright infringement claim, the Complaint nonetheless satisfies Rule 8 because it "specif[ies] … the act of copyright infringement." Opp 4-5. As support for this assertion, Plaintiffs cite allegations concerning the training of "Imagen and Gemini," *id.*, and a single district court case concluding that a complaint need not include an "exhaustive" list of infringing acts so long as it alleges "representative acts of infringement," *Thunder Studios, Inc. v. Kazal*, 2018 WL 5099726, at *3 (C.D. Cal. Mar. 22, 2018). But Plaintiffs do not meet their own standard, as they never articulate how the allegations against Imagen and Gemini might be representative of allegations against every Google AI model or every Google product.[4] Again, the

---

[4] Indeed, even as to Imagen and Gemini, Plaintiffs' Opposition lays bare the speculation that undergirds their claims. As the Opposition confirms, Plaintiffs' theory of infringement assumes that, because Plaintiffs' works appeared on certain sites, because at least some content from those sites appeared in certain datasets, and because at least some Gemini or Imagen models trained (or "likely" trained, CAC ¶¶ 2, 148-149) on portions of those datasets, all Gemini and Imagen models necessarily trained on Plaintiffs' works.

deficiency is plain; there is no reason to believe that Google's coding assistant, Codey, *see* CAC ¶ 105, was trained on Lemos's *Shark Fink Sticker* illustration, or that any (much less "all") versions of YouTube, *id.*, use Larson's *All Summer Long* graphic novel.

Beyond that, Plaintiffs simply throw their hands up and assume clarity will come to their claims at some point. Plaintiffs admit that, not only do they not know which "other AI Products" or "other datasets," if any, are implicated by their copyright claim, they could not possibly know. *See* Opp. 6-7 ("It would be unreasonable to ... expect [Plaintiffs] to know which other AI Products Defendants have built using the datasets at issue or other datasets which included Plaintiffs' works"). To try to excuse this failing, Plaintiffs point to Ninth Circuit precedent (Opp. 6) that permits a party to plead "facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant," *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017). But that now familiar refrain should again be Plaintiffs' undoing. Plaintiffs were able to make infringement allegations regarding Gemini and Imagen based on information and belief. *See, e.g.*, CAC ¶¶ 129, 145. The fact that they have not made such allegations against any other models or products, even on information and belief, demonstrates that they cannot. The *Soo Park* case does not give plaintiffs carte blanche to assert sweeping claims that rest only on conjecture. *See Cloudera, Inc. v. Databricks, Inc.*, 2021 WL 3856697, at *6 (N.D. Cal. Aug. 30, 2021) ("Although courts may consider whether 'facts are peculiarly within the possession and control of the defendant, such latitude does not mean that conclusory allegations are permitted.'"); *Menzel v. Scholastic, Inc.*, 2018 WL 1400386, at *3 (N.D. Cal. Mar. 19, 2018) (explaining plaintiff's "protests that … how [defendant] has used his photographs is peculiarly within the possession and control of [defendant] ... does not excuse the requirement that the plaintiff allege something more than bare conclusion[s]"). Rather than focus on what they can actually allege in good faith, Plaintiffs attempt to circumvent that basic requirement with a reference to an all-encompassing, unmanageable, and unanswerable universe of "Generative AI Models" and "AI-Powered Products." That does not comport with Rule 8. *See Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*, 149 F. Supp. 3d 1167, 1175 (N.D. Cal. 2015) (dismissing claim where "sweeping allegations fail[ed] to apprise" defendant of "<u>which</u>" products infringed "<u>which</u>" works).

Finally, Plaintiffs are virtually silent on their scurrilous charges of fraud and conspiracy. CAC ¶¶ 158-162 (alleging, *e.g.*, an "intent to mislead, deceive, or defraud Plaintiffs"). They offer no explanation of how supposed fraud or conspiracy relate to their copyright claim and in fact appear to deny their relevance at all. *See* Opp. 7 (arguing that copyright infringement is a "*strict liability*" tort and "no intent need be pleaded"). That confirms that these allegations only obscure the actual issues in dispute, which is precisely the problem. And even if they were somehow relevant, fraud has not been pleaded with "particularity" as Rule 9(b) requires. This is not a mere formality: "[F]raud involve[s] a serious attack on character, and fairness to the defendant demands that he should receive the fullest possible details of the charge in order to prepare his defense." *Hills Transp. Co. v. Sw. Forest Indus., Inc.*, 266 Cal. App. 2d 702, 707 (1968). Plaintiffs' Complaint undisputedly does not identify what supposedly fraudulent "representations and omissions" are at issue or otherwise provide the particulars of some supposed fraud. CAC ¶ 162. The Federal Rules do not countenance such a pleading.

## CONCLUSION

Defendants ask that the Court dismiss Plaintiff Andersen's claims, Plaintiffs' demand for injunctive relief, and Plaintiffs' vicarious liability claim with prejudice; dismiss any claim as to any unidentified work without prejudice; and require Plaintiffs to comport with Rule 8 by dropping references to products they have no basis to accuse of infringement and extraneous allegations of supposed fraud.

Respectfully submitted,

Dated: February 21, 2025

By: */s/ Maura L. Rees*
David H. Kramer, SBN 168452
Email: dkramer@wsgr.com
Maura L. Rees, SBN 191698
Email: mrees@wsgr.com
**WILSON SONSINI GOODRICH & ROSATI
Professional Corporation**
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300

*Counsel for Defendants*
GOOGLE LLC AND ALPHABET INC.