DAVID H. KRAMER, SBN 168452
Email: dkramer@wsgr.com
MAURA L. REES, SBN 191698
Email: mrees@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300

ERIC P. TUTTLE, SBN 248440
Email: eric.tuttle@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone: (206) 883-2500

*Counsel for Defendants*
GOOGLE LLC AND ALPHABET INC.

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| *In re Google Generative AI Copyright Litigation* | Master File Case No.: 5:23-cv-03440-EKL<br>Consolidated with Case No.: 5:24-cv-02531-EKL<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE CLASS ALLEGATIONS**<br><br>Date:       April 23, 2025<br>Time:       10:00 a.m.<br>Courtroom: 7<br>Judge:      Hon. Eumi K. Lee |

**TABLE OF CONTENTS**

**Page**

ARGUMENT ...........................................................................................................................2

I.   Plaintiffs' Fail-Safe Class Definition Must Be Stricken, As Plaintiffs Concede Its Impropriety. ...........................................................................................................2

II.  Plaintiffs Should Be Denied Leave to Amend. ....................................................6

III. If Leave To Amend Is Granted, the Court Should Stay Merits Discovery Not Needed for Class Certification .............................................................................10

CONCLUSION ....................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Angulo v. Providence Health & Servs. – Wash.*,
  2024 WL 3744258 (W.D. Wash. Aug. 9, 2024) ......................................................... 3, 4, 5

*Blair v. Assurance IQ LLC*,
  2023 WL 6622415 (W.D. Wash. Oct. 11, 2023) ............................................................... 12

*Brazil v. Dell Inc.*,
  585 F. Supp. 2d 1158 (N.D. Cal. 2008) ................................................................................ 4

*Brown v. DIRECTV, LLC*,
  2014 WL 12599363 (C.D. Cal. May 27, 2014) .................................................................... 5

*Cody v. Ring LLC*,
  2024 WL 735667 (N.D. Cal. Feb. 22, 2024) ........................................................................ 2

*Costelo v. Chertoff*,
  258 F.R.D. 600 (C.D. Cal. 2009) .......................................................................................... 4

*CSE Safeguard Ins. Co. v. Hyundai Motor Am.*,
  2024 WL 1832423 (C.D. Cal. Jan. 12, 2024) ....................................................................... 9

*Dixon v. Monterey Fin. Servs.*,
  2016 WL 4426908 (N.D. Cal. Aug. 22, 2016) ..................................................................... 4

*Dixon v. Monterey Fin. Servs. Inc.*,
  2016 WL 3456680 (N.D. Cal. June 24, 2016) ..................................................................... 4

*Dodd-Owens v. Kyphon, Inc.*,
  2007 WL 420191 (N.D. Cal. Feb. 5, 2007) .......................................................................... 4

*Doe v. Kaiser Found. Health Plan*,
  2024 WL 3511627 (N.D. Cal. July 23, 2024) .................................................................... 10

*Donaca v. Metro. Life Ins. Co.*,
  2014 WL 12597152 (C.D. Cal. Jan. 22, 2014) ..................................................................... 5

*Gamez v. Toyota Motor Sales, U.S.A., Inc.*,
  2024 WL 1971880 (E.D. Cal. May 3, 2024) ............................................................... 3, 5, 6

*Goodrich v. Cross River Bank*,
  2022 WL 2954933 (N.D. Cal. July 26, 2022) ...................................................................... 4

*Greene v. Select Funding, LLC*,
  2021 WL 4926495 (C.D. Cal. Feb. 5, 2021) ........................................................................ 3

*Hughes v. Circle K Stores, Inc.*,
  740 F. Supp. 3d 721 (C.D. Ill. 2024) .................................................................................... 6

*Huynh v. Jabil Inc.*,
    2023 WL 1802417 (N.D. Cal. Feb. 7, 2023) .................................................................. 3

*In re Apple & AT & TM Antitr. Litig.*,
    2010 WL 1240295 (N.D. Cal. Mar. 26, 2010) .............................................................. 12

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,
    505 F. Supp. 2d 609 (N.D. Cal. 2007) .......................................................................... 5

*Juarez v. Citibank, N.A.*,
    2016 WL 4547914 (N.D. Cal. Sept. 1, 2016) ................................................................ 5

*Juarez v. Jani-King of Cal., Inc.*,
    2010 WL 4807086 (N.D. Cal. Nov. 19, 2010) ............................................................ 12

*Kelly v. Banner Health*,
    2024 WL 4556022 (E.D. Cal. Oct. 23, 2024) .............................................................. 11

*Kihn v. Bill Graham Archives LLC*,
    2022 WL 18935 (9th Cir. Jan. 3, 2022) .............................................................. 7, 8, 9

*King v. Nat'l Gen. Ins. Co.*,
    2021 WL 2400899 (N.D. Cal. June 11, 2021) ............................................................... 5

*Klein v. Ljubljana Inter Auto D.O.O.*,
    2023 WL 4626687 (C.D. Cal. May 25, 2023) ............................................................... 6

*Mantolete v. Bolger*,
    767 F.2d 1416 (9th Cir. 1985) ...................................................................................... 7

*Medlock v. Taco Bell Corp.*,
    2014 WL 2154437 (E.D. Cal. May 22, 2024) ............................................................. 12

*Miholich v. Senior Life Ins. Co.*,
    2022 WL 410945 (S.D. Cal. Feb. 10, 2022) .................................................................. 5

*Moser v. Health Ins. Innovations, Inc.*,
    2018 WL 325112 (S.D. Cal. Jan. 5, 2018) .................................................................... 5

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) ................................................................................. 2, 3, 5

*Pepka v. Kohl's Dep't Stores, Inc.*,
    2016 WL 8919460 (C.D. Cal. Dec. 21, 2016) ........................................................... 3, 4

*Pilgrim v. Universal Health Card, LLC*,
    660 F.3d 943 (6th Cir. 2011) ........................................................................................ 9

*Rennick v. NPAS Sols., LLC*,
    2020 WL 244170 (C.D. Cal. Jan. 16, 2020) .................................................................. 5

*Richie v. Blue Shield of Cal.*,
    2014 WL 6982943 (N.D. Cal. Dec. 9, 2014) ................................................................ 4

*Risby v. Hawley*,
    2024 WL 217827 (N.D. Cal. Jan. 19, 2024) ................................................................. 6

*Salaiz v. eHealthIns. Servs., Inc.*,
   2023 WL 2622138 (N.D. Cal. Mar. 22, 2023) .................................................................. 3, 4

*Tinnin v. Sutter Valley Med. Found.*,
   647 F. Supp. 3d 864 (E.D. Cal. 2022) ................................................................................. 5

*Tomaszewski v. Circle K Stores Inc.*,
   2021 WL 2661190 (D. Ariz. Jan. 12, 2021) ........................................................................ 4

*True Health Chiropractic, Inc. v. McKesson Corp.*,
   2015 WL 273188 (N.D. Cal. Jan. 20, 2015) ...................................................................... 12

*Vaccaro v. Altais*,
   2023 WL 7003211 (C.D. Cal. Oct. 23, 2023) ..................................................................... 5

*Van Lith v. iHeartmedia & Ent., Inc.*,
   2016 WL 4000356 (E.D. Cal. July 25, 2016) ..................................................................... 4

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .......................................................................................................... 10

*Whittaker v. Freeway Ins. Servs. Am., LLC*,
   2023 WL 167040 (D. Ariz. Jan. 12, 2023) .......................................................................... 5

*Winters v. Loan Depot LLC*,
   2022 WL 22865378 (D. Ariz. Mar. 17, 2022) .................................................................... 4

**RULES**

Fed. R. Civ. P. 12 ........................................................................................................................ 3

Fed. R. Civ. P. 15 ........................................................................................................................ 6

Fed. R. Civ. P. 16 ........................................................................................................................ 6

Fed. R. Civ. P. 23 ............................................................................................................... 3, 9, 10

Fed. R. Civ. P. 30 ...................................................................................................................... 11

# REPLY

Plaintiffs concede the fundamental premise of Defendants' (hereinafter "Google's") motion to strike. They make no attempt to defend the proposed class they pleaded in their Consolidated Amended Complaint ("Complaint"), acknowledging that it is improperly and uncertifiably fail-safe. The motion to strike should therefore be granted, marking yet another instance where Plaintiffs forced Google to litigate an issue only to then try to moot it through "capitulation." ECF No. 77 at 1; ECF No. 75 at 1 n.1. The only questions are: (1) whether Plaintiffs should be granted leave yet again to amend, for what would be their sixth complaint across these two consolidated actions; and (2) if so, under what conditions.

The answer to the first question is no. Plaintiffs incorrectly presume an entitlement to amendment, perhaps forgetting that they attempted their gambit after the Court-imposed deadline to amend. They make no effort to show good cause for a further amendment. Nor could they, given their violation of the Court's Order and their failure, even now, to explain how they can certify a class in the face of an overwhelming number of individualized issues and decisions precluding certification in similar cases. Plaintiffs essentially argue that they should be allowed to press a class forward on the mere hope that something occurs to them. There is no cause to allow Plaintiffs to further amend.

But if the Court does permit Plaintiffs to amend, their Opposition confirms that discovery, for now, should be limited to the question of class certification. Plaintiffs flatly ignored the Court's guidance at the Case Management Conference ("CMC") in this matter to focus their discovery on class issues. They instead served demands seeking anything and everything Google has ever done in the generative AI realm. Plaintiffs do not try in their Opposition to explain why that ocean of information bears on class certification, or why the burden of gathering and producing it could be justified by their modest individual claims. Because Plaintiffs have not shown that a class is viable—and have instead highlighted why it is not—the interests of efficiency and proportionality warrant restricting their discovery to the class issue in the first instance.

# ARGUMENT

## I. Plaintiffs' Fail-Safe Class Definition Must Be Stricken, As Plaintiffs Concede Its Impropriety.

Plaintiffs do not dispute that fail-safe class definitions are impermissible and cannot be certified. Nor could they. *See, e.g.*, *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022) (en banc) ("A court may not, however, create a 'fail safe' class …."). And Plaintiffs do not meaningfully dispute that the class definition proposed in their Complaint is improperly fail-safe. They halfheartedly assert that they "do not believe ... the definition will trigger the fail-safe issues." Opp. 10. But they offer no analysis to support that assertion or rebut Google's showing to the contrary. Mot. 11-12. Instead, Plaintiffs immediately retreat, asking the Court to "allow [them] to proceed given an alternative definition" that Plaintiffs offered after Google filed its motion. Opp. 12. In failing to respond to Google's arguments and defend their pleaded class definition, Plaintiffs have conceded their current definition is improper. *See Cody v. Ring LLC*, 2024 WL 735667, at *7 n.4 (N.D. Cal. Feb. 22, 2024).

Plaintiffs do try blame-shifting. This is Google's fault, they say, for failing to meet and confer before moving to strike. Opp. 2-3 & n.1. But the Court ordered a specific procedure for meeting and conferring on Plaintiffs' planned amendments to their Complaint, ECF No. 77 at 2, and it is Plaintiffs who failed to comply, not Google. Again, Plaintiffs disclosed nothing about any changes to their class allegations during the Court-ordered meet and confer, and when Google's counsel called back to ask specifically whether Plaintiffs would be amending their last class definition, Plaintiffs responded that the definition would be similar to the definition in their previous *Leovy* Complaint. Declaration of Paul Sampson in Support of Defendants' Reply ¶¶ 3-5. Plaintiffs never mentioned that they would completely revamp their proposed class, much less that they would adopt a fail-safe approach. *Id*. ¶¶ 3-8. If they had disclosed their plan as ordered, Google would have raised the obvious problems with it at the CMC. But Google could not do so, or meet and confer about objections to an amendment that Google had no idea was coming.

Plaintiffs also argue that motions to strike class allegations are disfavored at the pleading stage. Opp. 3-5. But in the context of alleged *fail-safe classes*, motions to strike are routinely

granted on the pleadings in this Circuit, and Plaintiffs fail to account for the weight of authority in that specific—and relevant—circumstance. In its motion, Google cited a dozen cases where district courts within the Ninth Circuit (including in this District) granted motions to strike fail-safe classes at the pleading stage, under both Rule 23(d)(1)(D) and Rule 12(f). *See* Mot. 8-9 (collecting cases), 11-12 (citing *Greene v. Select Funding, LLC*, 2021 WL 4926495, at *5 (C.D. Cal. Feb. 5, 2021), and *Pepka v. Kohl's Dep't Stores, Inc.*, 2016 WL 8919460, at *3-4 (C.D. Cal. Dec. 21, 2016)). Plaintiffs barely acknowledge these cases.[1] They instead argue that, unlike what they have pleaded, their new, *alternative proposal* "does not incorporate statutory provisions or affirmative defenses like consent," as in the cases Google cited. Opp. 11. But Plaintiffs do not dispute that the class definition *set out in their Complaint* is fail-safe and should be stricken under the authorities that Google advanced. Because Ninth Circuit law now makes clear that fail-safe classes are impermissible, *Olean*, 31 F.4th at 669 n.14, under "no set of circumstances"—regardless of any discovery Plaintiffs might seek—could the class the Plaintiffs have pleaded succeed. *Salaiz v. eHealthIns. Servs., Inc.*, 2023 WL 2622138, at *5 (N.D. Cal. Mar. 22, 2023); Opp. 4.

Plaintiffs contend that they should be permitted to proceed so long as *any* conceivable class definition might be certified, even if the one they pleaded cannot. Opp. 1, 9-11. As support for this standard, Plaintiffs rely on cases like *Huynh v. Jabil Inc.*, 2023 WL 1802417, at *7 (N.D. Cal. Feb. 7, 2023), where Judge Orrick "express[ed] preference to address class certification issues after the pleadings are settled and discovery finished," and other cases *outside the fail-safe context* where motions to strike class allegations are "rarely" granted. *E.g.*, *Gamez v. Toyota Motor Sales, U.S.A., Inc.*, 2024 WL 1971880, at *5-6 (E.D. Cal. May 3, 2024). Those cases do not help Plaintiffs.

As an initial matter, Plaintiffs offer no explanation for how they can certify *any* class in this case and have chosen to ignore the fatal problems Google identified in its motion. *See infra* 6-10. So even if Plaintiffs were right about facing a low bar, they have not shown they can clear it.

---

[1] Plaintiffs argue that the *Angulo* case Google cited granted a motion to strike only "*at class certification* stage," Opp. 8, presumably because there were cross-motions to certify and strike the class. But *Angulo* noted that the motions were brought "prior to discovery" (other than jurisdictional discovery), and analyzed the motion to strike under the standard applicable at the pleading stage. 2024 WL 3744258, at *6.

1  More fundamentally, Plaintiffs' articulation of the standard governing Google's motion
2  cannot be squared with the numerous cases striking *fail-safe* classes at the pleading stage on the
3  ground that the *pleaded* class is improper. It is particularly impossible to reconcile Plaintiffs'
4  argument with the cases granting motions to strike fail-safe classes at the pleading stage *with leave*
5  *to amend*. *See, e.g.*, *Salaiz*, 2023 WL 2622138, at *5 (striking fail-safe class at pleading stage with
6  leave to amend); *Winters v. Loan Depot LLC*, 2022 WL 22865378, at *7-8 (D. Ariz. Mar. 17,
7  2022) (same); *Tomaszewski v. Circle K Stores Inc.*, 2021 WL 2661190, at *2-3 (D. Ariz. Jan. 12,
8  2021) (same); *Pepka*, 2016 WL 8919460, at *3-4 (same); *Van Lith v. iHeartmedia & Ent., Inc.*,
9  2016 WL 4000356, at *4-5 (E.D. Cal. July 25, 2016) (same); *Brazil v. Dell Inc.*, 585 F. Supp. 2d
10 1158, 1167 (N.D. Cal. 2008) (same); *Dodd-Owens v. Kyphon, Inc.*, 2007 WL 420191, at *3 (N.D.
11 Cal. Feb. 5, 2007) (same); *see also Angulo v. Providence Health & Servs. – Wash.*, 2024 WL
12 3744258, at *7-8 (W.D. Wash. Aug. 9, 2024) (striking fail-safe class prior to discovery with leave
13 to amend); *cf. Dixon v. Monterey Fin. Servs. Inc.*, 2016 WL 3456680, at *4 (N.D. Cal. June 24,
14 2016) (striking fail-safe class at summary judgment stage with leave to amend); *Dixon v. Monterey*
15 *Fin. Servs.*, 2016 WL 4426908, at *1-2 (N.D. Cal. Aug. 22, 2016) (striking *amended* fail-safe class
16 with further leave to amend). None of these decisions would make sense if Plaintiffs were right
17 about the standard and could defeat a motion to strike by talking about other possible classes not
18 pleaded in their Complaint.

19  To the contrary, these cases striking fail-safe class definitions from pleadings make good
20 sense. "District courts have authority to strike class allegations at the pleading stage where the
21 *class as defined in the complaint* cannot be certified." *Goodrich v. Cross River Bank*, 2022 WL
22 2954933, at *1 (N.D. Cal. July 26, 2022) (emphasis added); *see also id.* at *3 (striking class at
23 pleading stage with leave to amend and noting that plaintiff's proposed limitation of class
24 definition "would appear to create … an uncertifiable, 'fail-safe' class"). And "[g]enerally, a
25 plaintiff may only seek to certify a class as defined in a complaint—courts will not certify classes
26 different from, or broader than, a class alleged in the complaint without plaintiff moving to amend
27 the complaint." *Richie v. Blue Shield of Cal.*, 2014 WL 6982943, at *13 (N.D. Cal. Dec. 9, 2014)
28 (rejecting class certification arguments premised on allegations not contained in the complaint,

and finding no good cause to amend); *see also Costelo v. Chertoff*, 258 F.R.D. 600, 604-05 (C.D. Cal. 2009) ("The Court is bound to class definitions provided in the complaint and, absent an amended complaint, will not consider certification beyond it.").

Finally, Plaintiffs cite cases within the Ninth Circuit denying motions to strike classes that were arguably fail-safe. Opp. 9. But in none of those cases did the plaintiffs effectively concede that their class as pleaded was impermissibly fail-safe. On the contrary, all of those cases either preceded the Ninth Circuit's en banc decision in *Olean* or failed to consider it, and in all of them it was disputed whether fail-safe classes were permissible in the Ninth Circuit and/or whether the pleaded class was fail-safe.[2] On these questions, there is no longer room for debate "because *Olean* expressly admonishes courts that they must not create fail safe classes." *Angulo*, 2024 WL 3744258, at *8. And even Plaintiffs' cited cases suggest that striking an admittedly fail-safe definition is appropriate. *See Vaccaro*, 2023 WL 7003211, at *7 (distinguishing case where fail-safe class definition was stricken because plaintiff in that case was "'fully amendable' [sic] to removing the language from the proposed definition").

Plaintiffs point to *Gamez* as "instructive" (Opp. 9), but it did not involve a proposed fail-safe class at all. The defendants' challenge to the proposed class in *Gamez* was one of

---

[2] *See Vaccaro v. Altais*, 2023 WL 7003211, at *6 (C.D. Cal. Oct. 23, 2023) (relying on outdated cases to conclude that "the Ninth Circuit … has not explicitly held that fail-safe classes are impermissible" and "[t]herefore" declining to strike class); *Tinnin v. Sutter Valley Med. Found.*, 647 F. Supp. 3d 864, 874-75 (E.D. Cal. 2022) ("[B]ecause the Ninth Circuit has not expressly forbidden fail safe classes, district courts retain discretion …."); *Whittaker v. Freeway Ins. Servs. Am., LLC*, 2023 WL 167040, at *6 (D. Ariz. Jan. 12, 2023) ("The Court cannot determine at this stage whether the proposed classes are impermissible fail-safes."); *King v. Nat'l Gen. Ins. Co.*, 2021 WL 2400899, at *14 (N.D. Cal. June 11, 2021) (denying motion after concluding class was *not* fail-safe); *Rennick v. NPAS Sols., LLC*, 2020 WL 244170, at *3 (C.D. Cal. Jan. 16, 2020) ("[E]ven if there are issues with the proposed class, it cannot be said that there are no circumstances in which the proposed class could succeed."); *Miholich v. Senior Life Ins. Co.*, 2022 WL 410945, at *6 (S.D. Cal. Feb. 10, 2022) (deferring disputed fail-safe issue); *Moser v. Health Ins. Innovations, Inc.*, 2018 WL 325112, at *11 (S.D. Cal. Jan. 5, 2018) (same); *Juarez v. Citibank, N.A.*, 2016 WL 4547914, at *5 (N.D. Cal. Sept. 1, 2016) (same); *Brown v. DIRECTV, LLC*, 2014 WL 12599363, at *2 (C.D. Cal. May 27, 2014) (same); *Donaca v. Metro. Life Ins. Co.*, 2014 WL 12597152, at *2-3 & n.21 (C.D. Cal. Jan. 22, 2014) (finding fail-safe issue "unclear" because proposed class "does not require the court to determine the merits of individual class members' claims"); *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615-16 (N.D. Cal. 2007) (proposed classes were "suspicious," but plaintiffs might with discovery be able to "make the case for certification" of proposed classes).

1  *overbreadth*—a challenge Google does not make here. *See Gamez*, 2024 WL 1971880, at *5-6.
2  The fail-safe issue came up only in defendants' arguments for why plaintiffs would be unable to
3  fix their overbreadth problem—those fixes would purportedly run into a fail-safe problem. *Id.* at
4  *6. But the proposed class in the *Gamez* complaint—all people who purchased or leased a
5  particular model of car in the State of California—had no fail-safe problem, and the court was "not
6  convinced that plaintiffs' proposed class definition [was] so defective" as to merit striking it. *Id.*
7  at *5-6 & n.7. *Gamez* is of no help to Plaintiffs.

8        Plaintiffs' out-of-circuit decisions offer no comfort either. In *Hughes*, the court simply held
9  that plaintiffs' proposed class was not necessarily fail-safe. *Hughes v. Circle K Stores, Inc.*, 740 F.
10 Supp. 3d 721, 726 (C.D. Ill. 2024) ("At this point, the Court cannot find that class definition 'fail-
11 safe.'"). Further, none of the out-of-circuit cases was governed by the Ninth Circuit's admonitions
12 against fail-safe classes and copyright classes more generally, or the standards applied by courts
13 in this Circuit to motions to strike fail-safe classes.

14       Whether the striking of class allegations may be disfavored in the abstract is irrelevant. It
15 is neither rare nor disfavored to strike an obviously, indeed *concededly fail-safe* class like the one
16 at issue here. Plaintiffs' current class definition cannot stand. The only real question is whether
17 Plaintiffs should be given leave to amend yet again.

18 **II.     Plaintiffs Should Be Denied Leave to Amend.**

19       Plaintiffs mistakenly assume they have a right to amend, invoking Rule 15's liberal
20 standard. Opp. 17 (citing *Risby v. Hawley*, 2024 WL 217827, at *1 (N.D. Cal. Jan. 19, 2024) ("[A]
21 court should grant leave to amend unless amendment would be futile.")). That standard is
22 inapplicable now that the deadline for amendment has passed under the Court's Scheduling Order.
23 *See* ECF No. 88 at 2. Now, Plaintiffs must show "good cause" under Rule 16(b) to amend their
24 Complaint yet again, in consolidated actions that have already gone on for more than 19 months.
25 Fed. R. Civ. P. 16(b); *see also Klein v. Ljubljana Inter Auto D.O.O.*, 2023 WL 4626687, at *1-2
26 (C.D. Cal. May 25, 2023) (plaintiff whose class complaint was stricken after deadline for
27 amendment must demonstrate good cause to amend).

28

1    Plaintiffs have not attempted to show good cause. They offer no explanation for why they
2  amended their complaint to allege a fail-safe class without meeting and conferring as ordered by
3  the Court. Worse, they offer no explanation for how any class could ultimately be certified, even
4  though Plaintiffs "bear[] the burden of advancing a prima facie showing that the class requirements
5  of [Rule] 23 are satisfied or that discovery is likely to produce substantiation of the class
6  allegations." *Mantolete v. Bolger*, 767 F.2d 1416, 1420, 1424 (9th Cir. 1985) (affirming district
7  court's denial of discovery into supposed nationwide class and dismissal of class allegations).

8    In its motion, Google detailed a series of exemplary individualized issues that are facially
9  apparent from just the named Plaintiffs' claims. Mot. 5-7. Google also explained why those issues
10 will predominate, citing substantial precedent. Mot. 14-16. Plaintiffs answer none of it. They do
11 not explain how each class member's particular circumstances around ownership, registration,
12 validity, license, and other issues will be addressed, or why those issues would not be
13 overwhelming for a putative class of allegedly millions of copyright holders. At this point,
14 Plaintiffs' proposal to mask these issues through a further-amended, anodyne class definition is no
15 better than attempting to define the issues away through their fail-safe approach.

16   Consider, as just one example, Plaintiff Lemos' claims and the individualized licensing
17 questions they raise. Lemos uploaded at least two of the works he has put at issue to different
18 Google services, Blogger and YouTube, under terms that granted Google a license to use those
19 images to develop its products and services. Mot. 6 & nn.1-2. A third image, which was created
20 for a band to use as an album cover (and may in fact be owned by the band, not Lemos), was
21 uploaded to YouTube by the band's distributor, thereby licensing the image for Google's use. Mot.
22 6 & n.3. Google's license defense for just these three images will require discovery and
23 adjudication of issues of ownership, authority to license the works, and the interpretation and scope
24 of multiple license agreements. These are precisely the sort of individualized licensing issues that,
25 by themselves, doomed a proposed class in *Kihn v. Bill Graham Archives LLC*, 2022 WL 18935
26 (9th Cir. Jan. 3, 2022). And despite Google raising this in its Motion, Mot. 6, 12-13, 14-15,
27 Plaintiffs' Opposition does not respond, or even mention Lemos by name.
28

1       Instead, just like the plaintiffs in *Kihn*, Plaintiffs tried to wave away the individualized license and authorization issues by "exclud[ing]" them from their class definition. 2022 WL 18935, at *2. When it was pointed out that this created an impermissible fail-safe class, Plaintiffs here and in *Kihn* sought to "remove" the exclusion from their class definition. *Id.* But just as in *Kihn*, rather than solving the problem, Plaintiffs' approach casts a spotlight on "the problems for commonality and predominance reflected by" such exclusions. *Id.*[3] As the Ninth Circuit recognized, "[i]f the case were litigated to judgment, individual issues of license and consent would predominate for the absent class members…." *Id.*; *see also id.* at *2 n.2 (observing that license agreements could "vary as to the artists, performances, and rights they purport to cover" and that determining "whether any performer or composer consented to the recording of live performances at numerous events over a period of decades will thus require individualized analysis").

      Plaintiffs imagine that discovery might somehow aid them. Opp. 8. It will not. And that is presumably why they still refuse to specify *what* discovery they need or *how* it could cure the intractable defects in a proposed class. Plaintiffs do complain that Google "ha[s] yet to produce any discovery in support of its licensing and consent agreements." Opp. 8. But putting aside that Plaintiffs only recently served their first requests, Plaintiffs are silent on how such discovery would eliminate the individualized issues inherent in the case. Mot. 13. Even just as to each named Plaintiff and each asserted work, Google will need discovery regarding, among other things, how, where and with whom Plaintiffs shared a given work, the terms under which it was shared, whether those terms grant licenses to others or authorize others to grant licenses, and whether those licenses extend or were extended by others to Google. Google will then need to determine, under wide-ranging state laws, what conduct the licenses authorize. Google will also need to explore

---

[3] In *Kihn*, the plaintiffs had also sought to further limit the class definition to exclude a category of works for which the named plaintiffs had likely granted licenses. 2022 WL 18935, at *2. This highlighted how absent class members—"who have not yet had the opportunity Plaintiffs had to sift through their claims and exclude those that lack merit"—would have similar consent issues. *Id.* Here, Plaintiffs' efforts to drop certain works and avoid dismissal of others—and their attempt to circumvent all these issues through an impermissible fail-safe proposal—likewise highlight how these individualized issues will be present in myriad ways across a purported class of millions. Mot. 6-7, 14-15.

1  arguments that a given plaintiff may raise as to why a particular license or authorization should
2  not apply. The *Kihn* case, by contrast, involved limited classes for specific types of copyrighted
3  works and specific circumstances in which plaintiffs argued licenses were less likely to have
4  arisen. Still, the Ninth Circuit held that the individualized licensing issues present in the case were
5  alone enough to defeat class certification. *Kihn*, 2022 WL 18935, at *2 n.2. The issues that would
6  need to be explored and resolved here are far more varied and complicated.

7        Google's concurrently-filed motion to dismiss offers another example of individualized
8  issues that Plaintiffs try to sweep under the rug by amending their class definition. Google showed
9  that Plaintiff Andersen's copyright registrations do not and cannot cover images she previously
10 posted on social media platforms because, under the platforms' terms, she licensed them to further
11 distribute her images and thereby published those images, taking them beyond the scope of her
12 later compilation registrations. *See* ECF No. 95 at 6-10. Plaintiffs protest, claiming the argument
13 raises fact issues about "the interpretation and effect of [the platforms'] terms" and "whether they
14 could render the work as 'published.'" ECF No. 103 at 10. But even if Plaintiffs were correct (and
15 they are not), the fact issues they elevate are plainly individualized, requiring discovery into what
16 works a given plaintiff posted where, when, and under what terms, and how, if at all, the plaintiff
17 later registered or tried to register those works.

18       Again, this is just a tiny taste of the individualized issues that will necessarily arise as the
19 case proceeds, and the volume would grow far beyond reason across a purported class of millions.
20 This motion challenged Plaintiffs to explain how they could overcome the predominance problem
21 they face, and they bear the burden of doing so to justify a further amendment. Yet they offer
22 nothing: no theory, no plan, and no precedent certifying a remotely analogous class of millions of
23 disparate and unidentified copyright holders. All Plaintiffs do is assert, without discussion, that
24 their proposed revised definition does not "raise dozens of complex factual issues for each class
25 member," Opp. 11, and that "common questions" will "predominate." Opp. 5. Those empty
26 assertions are wrong and certainly do not satisfy Plaintiffs' obligation to show good cause for
27 proceeding with some alternate class. In short, Plaintiffs' continuing failure to "explain what type
28 of discovery or what type of factual development would alter the central defect in this class claim"

confirms that "no proffered or potential factual development offers any hope of altering [the] conclusion" that they cannot satisfy the requirements of Rule 23 in this case. *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (affirming judgment striking class allegations); *see also CSE Safeguard Ins. Co. v. Hyundai Motor Am.*, 2024 WL 1832423, at *2 (C.D. Cal. Jan. 12, 2024) (requiring showing as to "whether the defect[s] seemingly defeating certification on the face of the pleadings could possibly be remedied through discovery"). Accordingly, the Court should not grant Plaintiffs leave to amend.

### III. If Leave to Amend Is Granted, the Court Should Stay Merits Discovery Not Needed for Class Certification.

If, notwithstanding the inevitable failure of certification, the Court gives Plaintiffs another chance to amend their proposed definition, Plaintiffs should not be permitted to use the mirage of a class to justify the massive discovery burdens they have already sought to impose. Instead, the Court should "permit limited and targeted non-burdensome discovery on class certification" while requiring the parties to "demonstrate[]" that the discovery they seek "is in the interests of justice and consistent with the language and spirit of Rule 23." *Doe v. Kaiser Found. Health Plan*, 2024 WL 3511627, at *2 (N.D. Cal. July 23, 2024). This approach, which is within the Court's "sound discretion," will ensure that class certification discovery is "reasonably directed so as to avoid undue burden" on Google and conserve the parties' and the Court's resources. *Id*. It also aligns with the Court's prior directive to the parties to "really focus on discovery in terms of what is needed for the class cert to begin with." ECF No. 93 at 21:19-21.

At this point, well into this litigation, Plaintiffs should be able to articulate what discovery they believe they need to support class certification. But they have not done so. Instead, they offer only that class discovery may "entail some overlap with the merits of the … underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011); Opp. 14-15. That is uncontroverted. For predominance purposes, for example, Defendants will want discovery highlighting the myriad individualized merits questions that Plaintiffs' claims present. But that discovery is relevant and proportional to class certification needs, even where it overlaps with merits issues.

What should be out of bounds is what Plaintiffs have demanded: Indiscriminate discovery into every aspect of Google's AI work that is not at all connected to a class certification theory. For example, Plaintiffs have demanded all documents and communications related to the "millions of content licenses" that Google may have relating to any copyrighted work that might be implicated in Plaintiffs' imagined class. They want all of the training data used by Google to train every generative AI model it has ever developed or is developing, along with all documents and communications regarding Google's engineering efforts on those models. They seek all documents and communications concerning the potential for Google services "to regurgitate, mimic, imitate, or otherwise copy any particular artists' and/or author's artwork, technique, voice, and/or style," including "all analyses, evaluations, and testing (in a machine-readable format), as well as any concerns, complaints, or feedback regarding potential copyright infringement, artistic replication, or unauthorized reproduction of distinctive artistic and/or expressive elements." And they have already served a purported Rule 30(b)(6) deposition notice covering nearly a dozen topics, each exhaustive and exhausting in nature, such as Google's:

> guidelines, policies, practices, procedures, rules, goals, or criteria concerning the generation, use, management, location, collection, production, storage, backup, destruction, retention, and recovery of ESI, Personal Information, Documents, Data, and Content and Information, including but not limited to, any sources where Named Plaintiffs' copyrighted material resides, as well as custodial and non-custodial sources for Google employees, such as messaging and project management platforms, changelog annotations, and other means of written electronic communications such as email, instant messaging, and/or chat platforms, direct message communications on social media network platforms, and text messages.

These requests are light years from anything that might be needed to bring a certification motion, would involve the production of petabytes or even exabytes of data, and could cost Google millions of dollars to fulfill.

Plaintiffs' Opposition offers no defense of their sweeping discovery demands or an explanation of how they bear on class certification. The discovery free-for-all they envision flouts the concepts of burden, efficiency, and proportionality. If Plaintiffs are allowed to proceed on any sort of theoretical class, an order is needed to make binding the Court's prior guidance and limit discovery in the first instance to that needed for class certification, absent a showing of good cause. *See* ECF No. 93 at 21:19-21. Such orders are hardly unusual. Rather, they are both common and

common-sense. *Kelly v. Banner Health*, 2024 WL 4556022, at *1 (E.D. Cal. Oct. 23, 2024) (focusing on class certification first "will promote efficiency and fairness because it will prevent Defendants from having to engage in costly class-wide merits-based discovery when Plaintiff's case may never get past the class-certification stage, will expedite class certification, and will promote judicial economy"); *Medlock v. Taco Bell Corp.*, 2014 WL 2154437, at *1 (E.D. Cal. May 22, 2024) (ordering "parties to initially conduct discovery limited to class certification issues"); *Juarez v. Jani-King of Cal., Inc.*, 2010 WL 4807086, at *1 (N.D. Cal. Nov. 19, 2010) ("discovery relating to class certification" to precede other discovery); *In re Apple & AT & TM Antitr. Litig.*, 2010 WL 1240295, at *2 (N.D. Cal. Mar. 26, 2010) (denying motion to compel material plaintiffs failed to show "is relevant and necessary for the class certification motion"). Plaintiffs' cited cases, involving proposals for merits discovery *before* class certification, are inapposite. *See True Health Chiropractic, Inc. v. McKesson Corp.*, 2015 WL 273188, at *1 (N.D. Cal. Jan. 20, 2015) (rejecting request to "effectively … stay class discovery" and focus on the merits of the named plaintiff's claims); *Blair v. Assurance IQ LLC*, 2023 WL 6622415 (W.D. Wash. Oct. 11, 2023) (rejecting request to prioritize merits of named class representatives' claims over class discovery).

## CONCLUSION

The Court should strike the class allegations in the Complaint without leave to amend. If leave to amend is granted, the Court should stay discovery that is not needed for class certification.

Respectfully submitted,

Dated: February 21, 2025          By: */s/ Eric P. Tuttle*
                                      David H. Kramer, SBN 168452
                                      Email: dkramer@wsgr.com
                                      Maura L. Rees, SBN 191698
                                      Email: mrees@wsgr.com
                                      Eric P. Tuttle, SBN 248440
                                      Email: eric.tuttle@wsgr.com

                                      *Counsel for Defendants*
                                      GOOGLE LLC AND ALPHABET INC.