## ATTACHMENT A

| ISSUE | PLAINTIFFS' PROPOSAL | DEFENDANTS' PROPOSAL | COURT RULING |
|---|---|---|---|
| Preservation<br>ESI Order ¶ 5 | The Parties have and shall continue to take reasonable steps to preserve relevant documents and ESI in accordance with their obligations under applicable law. | [none] | A Party's legal obligations regarding preservation exist and will be enforced regardless of whether of this language appears in the ESI Order.<br><br>Accordingly, the Court **DECLINES** to adopt the language proposed by Plaintiffs. |
| Email Threading<br>ESI Order ¶ 6(d) | The Parties may use email thread suppression to review only the most inclusive threads for responsive material. Each responsive email in a thread (along with any responsive attachments) must be produced separately.<br><br>If a Producing Party is permitted to use thread suppression for purposes of production (Defendants' Proposal), then any thread member that contains any additional or altered data that is not contained in the most-inclusive email (including, e.g., attachments or BCC recipients), is not a less | The Parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. Upon reasonable request, the producing party will produce a less inclusive copy. | The Court **MODIFIES** the ESI Order with a combination of the Parties' proposals as follows:<br><br>>The Parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies;<br><br>>EXCEPT that any thread member that contains additional or altered data not contained in the most-inclusive email (including, e.g., attachments or BCC recipients), is not a less |

| | | | |
|---|---|---|---|
| | inclusive email and must be separately produced. | | inclusive email and must be separately produced.<br><br>>Responsibility for review and identification of potential less inclusive emails rests in the first instance with the Producing Party. |
| Hyperlinks<br>ESI Order ¶ 9 | 1. Google has represented that: (1) for its employees that sent, received, or accessed a hyperlink that was contained in an email, the current version of that hyperlinked file will typically exist within Google's G Suite on that employee's Google Drive, unless that employee deleted the file from their Google Drive prior to a litigation hold being imposed in this case; (2) it cannot collect and produce point-in-time documents that are links in documents and email or chats on a scalable level without undue burden; (3) it can collect and produce the current version of hyperlinked files because those files typically | The Parties agree that given technological limitations, document(s) and/or folder(s) of documents that are hyperlinked inside a responsive document need not be produced in the first instance. If there are particular hyperlinks identified by the Requesting Party in produced documents, the Requesting Party may submit a list of up to 100 hyperlinks to the Producing Party for potentially relevant documents by identifying the Bates number and URL or link text for each requested link to the Producing Party, and the Producing Party will engage in reasonable efforts to locate the hyperlinked document at that location and either identify it by Bates number or provide any responsive, nonproduced, | Plaintiff's proposal for the *automatic* production of a *current* version of a hyperlinked file without regard for date or other context of the document in which the hyperlink appears does not meet the requirements of Fed. R. Civ. P. 1, 26 or 34 and is **REJECTED.**<br><br>The Court **ADOPTS and MODIFIES** Google's proposed handling of hyperlinks as follows:<br><br>>Document(s) and/or folder(s) of documents that are hyperlinked inside a responsive document need not be produced in the first instance. |

| | | | |
|---|---|---|---|
| | exist in employee Google Drives; and (4) it can automatically include the current version of files hyperlinked in email messages when it collects documents.<br><br>2. Based on these representations, where a Party's employees transmit files as links in documents and emails within Google's G Suite (e.g., Google Drive), such Party shall be required to: (a) export email and linked drive files in Google Vault to collect the current version of the hyperlinked files and preserve the metadata reflecting the association between the e-mail and the Drive file; (b) collect files from that employee's Google Drive and include those files in the corpus of documents to which it applies search terms for that employee; (c) de-duplicate the files pulled pursuant to subparts (a) and (b), such that the Party need only | and non-privileged documents. Nothing in this provision requires production of non-responsive documents. | >The Requesting Party may request up to 500 specifically identified hyperlinks in produced documents by identifying the Bates number and URL or link text for each requested link to the Producing Party, and the Producing Party will produce any responsive, non-privileged, point-in-time hyperlinked document.<br><br>The Court further **ORDERS** that in light of the foregoing modifications, the Court does not have enough information regarding the following proposal by Plaintiffs:<br><br>*a. Furthermore, there should be a metadata field in Appendix A that indicates either or both of, who hyperlinked a document within the Google Drive and/or who a hyperlinked document was shared with.*<br><br>Accordingly, the Parties are to meet and confer promptly regarding the proposal above to come to an agreement as to whether it will be included in |

3

| | | | |
|---|---|---|---|
| | review the latest version of the hyperlinked file once, preserving the metadata reflecting the association between the e-mail and the Drive file; versions of the hyperlinked files in the corpus of documents that the Party reviews; and (e) where an email containing a hyperlink is identified for production, the associated linked file will be produced, and vice versa, including the metadata reflecting the association.<br><br>3. The Parties agree that point-in-time, hyperlinked files need not otherwise be collected or produced in this first instance. If there are particular point-in-time hyperlinks identified by the Requesting Party in produced documents, the Requesting Party may submit a list of up to 1,000 hyperlinks to the Producing Party by identifying the Bates number and URL or text link for each requested link to the Producing Party, | | the ESI Order. If the Parties are unable to agree, they may re-submit the issue to the Court in a Joint Submission not to exceed 5 pages total **no later than April 9, 2025**. |

4

| | | | |
|---|---|---|---|
| | and the Producing Party shall engage in reasonable efforts to locate the hyperlinked document at that location and either identify it by Bates number or provide responsive, non-privileged, unproduced documents.<br>    a. Furthermore, there should be a metadata field in Appendix A that indicates either or both of, who hyperlinked a document within the Google Drive and/or who a hyperlinked document was shared with. | | |
| Privilege Logs – timing<br>ESI Order ¶ 10(b) | The Parties shall be substantially complete in their productions by no later than forty-five (45) days prior to the close of fact discovery. The Producing Party must provide a privilege log for all documents produced through the substantial completion deadline by no later than thirty (30) days prior to the close of fact discovery, to allow the | [none] | A date for substantial completion of discovery is a case management issue to be set by the presiding judge.<br><br>Setting that issue aside as not properly before it, this Court **ORDERS** as follows:<br><br>>The Producing Party must provide a privilege log for all documents produced to date no |

| | | | |
|---|---|---|---|
| | Parties adequate time to meet and confer to resolve any privilege disputes, or seek resolution within seven (7) days after the fact discovery cut-off, consistent with Local Rule 37-3. If documents are produced within 45 days prior to the close of fact discovery or later, the producing party will produce a log related to that production with the production. If, during a particular forty-five (45)-day period, the Producing Party has not identified any privileged documents that are required to be placed on a privilege log pursuant to the Stipulated Protective Order or Stipulated ESI Order in this action, then the producing party need not provide a privilege log. | | later than thirty (30) days prior to the close of fact discovery, to allow the Parties adequate time to meet and confer to resolve any privilege disputes or seek resolution within seven (7) days after the fact discovery cut-off, consistent with Local Rule 37-3. |
| Privilege Logs – objective metadata to be included ESI Order ¶ 10(d) | 1. Custodian;<br>2. File Name (unless privileged itself)<br>3. Email Subject (unless privileged itself)<br>4. Author<br>5. From<br>6. To<br>7. CC | 1. Custodian<br>2. Author<br>3. From<br>4. To<br>5. CC<br>6. BCC<br>7. Date Sent<br>8. Time Sent<br>9. Date Created | This Court's standing order regarding privilege logs requires a description of the subject matter of the document.<br><br>Accordingly, the Court **ADOPTS** Defendants' |

6

| | | | |
|---|---|---|---|
| | 8. BCC<br>9. Date Sent<br>10. Time Sent<br>11. Date Created<br>12. A unique identifying number<br>for each logged document ad seriatim starting with the number 1 (the "Privilege Log ID" or "Item No.");<br>13. A family relationship Identifier | 10. A unique identifying number<br>for each logged document ad seriatim starting with the number 1 (the "Privilege Log ID" or "Item No.")<br>11. A family relationship identifier | proposed language for the ESI Order. |
| Privilege Logs – email chains ESI Order ¶ 10(g) | If there is more than one branch of (i.e., more than one unique group of recipients of) an email thread, each branch will be individually logged; however, each individual email within the thread need not be logged if the recipients of the email chain are all identical or if a Party has elected to use threading for review and/or production of emails. A Party asserting privilege over a chain of emails may produce only a single redacted copy of such email chain to the extent some portions are only partially privileged, except that any unique branches of the email chain must also either be | For email communications, only the last-in-time privileged email in the chain will be set forth on the log. | The Court **ADOPTS** Plaintiffs' proposed language for the ESI Order. |

| | | | |
|---|---|---|---|
| | produced in redacted form or included on the metadata privilege log. | | |
| Validation of Search Terms ESI Order ¶ 11 | a.     To the extent search terms are used for a given source or set of data, the Parties will develop search terms as described above. After applying the search terms to the targeted document set(s), the Producing Party will review a statistically valid (95% ± 5), randomly generated sample set of the documents that do not hit upon any search terms ("Null Set Sample") and produce to the Requesting Party the relevant, responsive, non-privileged documents (if any exist) from that Null Set Sample. The Producing Party will develop appropriate new search term(s), if needed, to capture any such relevant documents located within the Null Set Sample. The Producing Party will then apply the original and new search terms to the targeted document set and disclose the original and new terms to the Requesting Party, along with a | Each Producing Party shall take reasonable steps to validate its review process (i.e., using quality control measures to determine whether its production is missing relevant ESI or contains substantial amounts of irrelevant ESI) and make any necessary adjustments or corrections to its process. If, after reviewing a Producing Party's production, a Requesting Party has good cause to believe additional responsive information may be missing from the production, the Requesting Party may request additional information regarding the validation method(s) used by the Producing Party. The Parties shall meet and confer in good faith to discuss the validation method(s) and resolve any disputes. | The Parties have agreed upon a process to negotiate search terms, and the terms will be known to both sides.<br><br>In implementing search terms, the Court finds that a certain amount of quality control, with input from both sides and bounded by proportionality, best meets the needs of Fed. R. Civ. P. 1, 26 and 36.<br><br>Accordingly, the Court has substantially modified Plaintiffs' proposal and reduced the parameters for "statistically valid" and **ORDERS** as follows:<br><br>>After applying search terms to targeted document set(s), the Producing Party will review a statistically valid (68% ± 5; one standard deviation), randomly generated sample set of the documents that do not hit upon any search terms ("Null Set Sample");  and |

8

| | | | |
|---|---|---|---|
| | hit report. If the Requesting Party objects to the sufficiency of the Producing Party's original and new search terms, the Parties agree to conduct one round (and if there is good cause, i.e. any justifiable reason to do so, more than one round) of the four-step process identified below:<br><br>The Requesting Party may request one additional Null Set Sample to be reviewed by the Producing Party;<br><br>The Producing Party will review the additional Null Set Sample and produce all relevant, responsive, non-privileged documents to the Requesting Party;<br><br>The Requesting Party can propose additional search terms that would capture the relevant, responsive non-privileged documents from the additional Null Set Sample; and | | >Produce to the Requesting Party responsive, non-privileged documents from that Null Set Sample.<br><br>>This production shall be clearly identified as the product of Producing Party's review of a Null Set Sample.<br><br>>Based upon the responsive documents located within the Null Set Sample, the Parties will work cooperatively to develop additional, new search terms in the same manner used to develop the initial set of search terms.<br><br>>Producing Party will apply these new terms to the targeted document set(s) (having already run the initial search terms) and produce responsive, non-privileged documents.<br><br>A one-time check of a Null Set Sample as described above provides quality control proportional to the needs of the litigation.  Either Party may apply to the Court, following |

9

| | | | |
|---|---|---|---|
| | The Producing Party will apply the search terms to evaluate their reasonableness.<br><br>b. If the search terms proposed by the Requesting Party have an unreasonably high or overbroad yield, the Producing Party may review a randomly generated 95/5 confidence level/margin of error sample set of documents to determine the overbreadth of the proposed search terms.<br><br>c.     Where appropriate, the Producing Party may develop alternative search terms that are more narrowly tailored to capture the relevant, responsive, non-privileged documents from the additional Null Set Sample, and provide a hit report on those terms.<br><br>As noted above, for good cause, the Requesting Party can request that there be more than one round of the four-step process described above. For purposes of this provision, "good cause" shall mean any | | robust meet and confer, for adjustment to this process upon a showing of good cause founded upon unforeseen circumstances. |

10

|  | kind of justifiable reason to do the four-step process again. |  |  |