May 8, 2025

<u>**Via Electronic Filing**</u>

The Honorable Susan van Keulen
United States District Court for the Northern District of California
San Jose Courthouse, Courtroom 6 – 4th Floor
280 South First Street
San Jose, CA 95113

**Re:**　　　***In re Google Generative AI Copyright Litigation***
　　　　　　**Master File Case No. 5:23-cv-03440-EKL**
　　　　　　**Consolidated Case No. 5:24-cv-02531-EKL**

Pursuant to this Court's Civil and Discovery Referral Matters Standing Order, Defendants Google LLC and Alphabet Inc. (together, "Google") and Plaintiffs respectfully submit this joint statement regarding their dispute over Plaintiffs' response to Google's Request for Production ("RFP") No. 1. RFP No. 1 seeks "[d]ocuments sufficient to identify all email addresses [Plaintiffs] have used in connection with any Google user account." Ex. A at 3; Ex. B at 3. The parties conferred in good faith and were unable to reach a compromise. Defendants move to compel pursuant to Local Civil Rule 37-2 and Fed. R. Civ. P. 37(a)(1). 162 days remain until the close of fact discovery.

### Google's Position

In this putative class action, Plaintiffs claim that, by training its generative AI services, Google infringed their copyrighted works. Unlike other defendants in generative AI copyright litigations, Google holds countless "licenses that authorize [it] to use content for purposes of developing its products and services." ECF No. 93 at 19:20-24. Some licenses come from Plaintiffs directly. For example, through its own investigation, Google determined that named Plaintiffs Lemos and McLennan personally granted Google licenses to use their images by uploading them to Google's Blogger and/or YouTube services and agreeing that Google could use them to "develop its products and services." *See* ECF No. 98 (Defendants' Motion to Strike Class Allegations) at 5-6. Other licenses may come via third parties whom Plaintiffs have authorized to grant licenses. For example, Plaintiff Lemos granted rights to another of his images to a band, whose online distribution service provided that image to YouTube under license. *Id.* Moreover, multiple Plaintiffs, including Jill Leovy and Kristen Hubbard, have agreements with book publishers who then granted licenses to Google. Additionally, Plaintiffs admit in response to other discovery requests that they have uploaded their works all over the Internet, granting broad licenses to hosting services who, in turn, may have licensed Google.

The existence of licenses is critical to the merits and, more pressingly, to class certification. No putative class member can assert a claim for copyright infringement if they or any authorized third party granted Google a license to copy a Plaintiff's work. *See, e.g.*, *Schneider v. YouTube, LLC*, 674 F. Supp. 3d 704, 722 (N.D. Cal. 2023). And the multi-step and multi-pronged analysis required to determine whether putative class members granted licenses to Google, directly or through a third party, is an individualized issue that alone should defeat class certification under Ninth Circuit and District precedent. *See, e.g.*, *Kihn v. Bill Graham Archives*, 2022 WL 18935, at *2 (9th Cir. Jan. 3, 2022) (if putative copyright class action was "litigated to judgment, individual issues of license and consent would predominate," precluding certification under Rule 23(b)(3)). The named Plaintiffs' own licensing experiences provide compelling evidence of why their individual claims fail *and* why individualized issues will predominate when multiplied across Plaintiffs' purported class of millions of rightsholders. *See* ECF No. 128 (Order Granting Motion to Strike) at 4, 7 n.4 (discovery regarding licensing is "needed to probe whether individualized issues will predominate in this case"). Notwithstanding the potentially dispositive nature of licensing, Plaintiffs are denying Google the ability to properly explore the area in discovery.

As a basic step in its license investigation, Google requested that Plaintiffs produce "[d]ocuments sufficient to identify all email addresses [Plaintiffs] have used in connection with any Google user account." Ex. A at 3. With these email addresses, Google could identify Plaintiffs' Google user accounts and assess whether Plaintiffs granted Google licenses to use their works by uploading them to Google's services, as at least Plaintiffs Lemos and McLennan did here, ECF No. 98 at 5-6, and as millions of copyright holders have done, *see Schneider v. YouTube, LLC*, 649 F. Supp. 3d 872, 885 (N.D. Cal. 2023) (granting summary judgment based on YouTube's TOS license where plaintiff and her agents "uploaded videos to YouTube that feature some of her works-in-suit"); *Bus. Casual Holdings, LLC v. YouTube, LLC*, 2022 WL 837596, at *4 (S.D.N.Y.

Mar. 21, 2022) (similar). To effectively investigate the licenses that Plaintiffs directly granted Google, Plaintiffs must identify any email addresses they used to access Google's services.

Plaintiffs have refused to provide their email addresses, claiming that RFP No. 1 is overbroad and demanding that Defendants first identify "all" Google services that have "specific terms" related to licensing. *Infra* at 6-7. Plaintiffs have it backwards. Google provides over *one hundred* services to its millions of users that are subject to Google's terms of service—which contains a license provision—and in some cases additional service-specific terms.[1] And many of those services allow users to upload content and entail some grant of use rights in that content to Google. Examples include YouTube, Blogger, Google Photos and PhotoScan, Shopping, Ads, Google Play Books, Google Maps (through which users can upload photos for their business), NotebookLM, and many others. *See id.* n.1. In the first instance, Google needs to know Plaintiffs' email addresses so it can identify their accounts, determine which services they uploaded content to, assess which versions of Google's terms Plaintiffs agreed to and when, and then evaluate what licenses may apply. Plaintiffs may not even recall their upload activities, and certainly have not provided an accounting of it in this litigation. Without their email addresses, Google cannot fully investigate for itself.

Plaintiffs write that their use of unidentified Google services may be "untethered to the action," and suggest that they now dispute the merits of Google's license defense. *Infra* at 5. But Plaintiffs' conclusory assertions only underscore the need for the requested information, so that Google can investigate what Plaintiffs uploaded to its services and demonstrate why licenses defeat both Plaintiffs' claims and class certification.

---

[1] *See*, *e.g.*, https://policies.google.com/terms?hl=en-US ("Google Terms of Service"); https://policies.google.com/terms/service-specific?hl=en-US (listing over 100 services subject to Google Terms of Service and also identifying service-specific terms).

Plaintiffs' nebulous "privacy objections" are misdirection. *Infra* at 5. They fail to articulate how their privacy is at all affected by their identification of email addresses that they already voluntarily disclosed to Google when creating and using their accounts, and which they affirmatively agreed Google could use to enforce its rights and the parties' agreements. As confirmation that Plaintiffs' privacy objection is makeweight, they have produced emails that reveal at least some of the Gmail addresses they used to access Google's services, and did so without raising concerns about "privacy" or "intrusion." *Infra* at 6. There is no basis for Plaintiffs to refuse to identify other email addresses they already supplied to Google when signing up for its services. Google has also made "the scope" of its intended investigation clear (*infra* at 6); it will investigate what services Plaintiffs used and whether Plaintiffs uploaded their copyrighted works to the services. This too raises no "privacy" concerns; any works Plaintiffs upload to Google's services have also already been voluntarily provided (and licensed) to Google. And this is anything but a "one-sided investigation." *Infra* at 5. At this point, only Plaintiffs have the information needed to assess the licenses they granted to Google. RFP No. 1 seeks to level the playing field.

Plaintiffs' "burden" and "proportionality" objections are especially meritless. *Infra* at 5. It should take only minutes for Plaintiffs to produce a document "sufficient to identify" the email addresses they used with Google. Plaintiffs also object that the request is not temporally limited, but no such limitation makes sense. The Works in Suit were published years ago, and Google does not know when Plaintiffs may have begun uploading their works to its services.

Plaintiffs sued a company whose services they used, whose governing agreements they accepted, and to whom they licensed many of the works at issue. They cannot obstruct discovery into those licenses. Plaintiffs' refusal to comply with RFP No. 1 is impeding Defendants' ability to show, for class certification, the byzantine, individualized nature of the licensing inquiry for

each putative class member. Google respectfully requests that the Court order Plaintiffs to timely produce all documents responsive to RFP No. 1.

**Plaintiffs' Position:**

Plaintiffs' overbreadth and privacy objections to RFP No. 1 are not "nebulous," as Defendants claim. They stem from the boundless nature of the request (all email addresses for any Google product ever used) and Defendants' admission that they will use any email addresses disclosed to conduct a one-sided investigation into Plaintiffs' entire lifetime of interactions with Google services. Plaintiffs' objections are therefore specific to Defendants' demand for production of information untethered to the action, and intent to conduct an unfettered investigation into Plaintiffs' communications with and use of all Google services. This request is nothing more than a harassing fishing expedition.

Defendants bear the burden of establishing their requests satisfy the relevancy and proportionality requirements of Rule 26(b)(1); they fail to do so here. *See La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012); *see also Dropbox, Inc. v. Motion Offense, LLC*, No. 22-mc-80083-SVK, 2022 U.S. Dist. LEXIS 185490, at *5 (N.D. Cal. Apr. 20, 2022) ("If the sought after documents are not relevant nor calculated to lead to the discovery of admissible evidence, then any burden whatsoever imposed would be by definition undue.") (cleaned up). "Requests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information, and appear to be a broad 'fishing expedition' for irrelevant information." *In re Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016) (cleaned up). Defendants' position—that they cannot possibly know which licensing terms granted Google the right to train on copyrighted content until Plaintiffs identify every email address associated with any Defendants product they have ever used and Google then conducts its own investigation of all its services and Plaintiffs use—is implausible. Google claims it ***may*** have a

license defense, based on an individual's use of some Google product at some point in time, but to find this purported defense, Defendants demand that Plaintiffs first produce documents reflecting *every* email address *ever* associated with *any* Google product used by Plaintiffs—without limitation to time-period or relevance to this litigation, and further refuses to identify with any specificity which products could have granted Google the use right to copyrighted works for purposes of training its generative AI products, much less the specific terms of those services that grant such a right. Plaintiffs maintain that if this defense had a reasonable basis in law or fact, Defendants should presumably already know whether and through what product or service they had a 'license' to use copyrighted works to train its generative AI products and what terms granted such licenses, before doing so, and thus have no need for Plaintiffs' email addresses.

Still, in a good faith effort to reach compromise, Plaintiffs have offered to consider Defendants' request after Defendants identify the products and terms of service relevant to Google's defense, which appropriately seeks to balance Plaintiffs' privacy interests against Defendants' professed need for relevant information. *See, e.g.*, *Nevarez v. Forty Niners Football Co., LLC*, No. 16-cv-07013-LHK (SVK), 2018 U.S. Dist. LEXIS 2415, at *4 (N.D. Cal. Jan. 5, 2018) ("When a party makes a privacy objection to requested discovery on behalf of those whose information will be disclosed, a court must balance the party's need for the information against the individual's privacy right.") (cleaned up). Plaintiffs have repeatedly asked Defendants why they need every Plaintiffs' email address used in connection with any Google product ever, regardless of the nature of the product and service used, and to provide more detail regarding the scope of the Defendants intend to conduct based on such information, so that Plaintiffs can evaluate the scope of Defendants' proposed intrusion. Google flatly rejected this proposal and maintains they are entitled to *every* email address for *every* product to conduct their investigation, regardless of whether the product and its use would have any bearing on the case. Google's position is not

reasonable.

Ironically, Defendants now partially implement what Plaintiffs suggested by identifying certain Google services in their briefing—YouTube, Google Photos, PhotoScan, Shopping, Ads, Google Play Books, Google Maps, and NotebookLM—but deliberately maintains ambiguity through vague references to "many more Google services" that allow content uploads. This calculated incompleteness undermines Defendants' own argument. Defendants can certainly identify all defense-relevant services without demanding all Plaintiffs' email addresses; they simply refuse to do so.

Defendants' accusation that Plaintiffs are obstructing discovery by declining to identify ***all*** email addresses associated with ***all*** Google products used by Plaintiffs is belied by its refusal to appropriately tailor its discovery and refusal to compromise. While Google may provide "hundreds of services to millions of users," those services are not infinite, nor is the scope of this litigation. Google's finite list of products and services are readily identifiable via its website.[2] As to the overbreadth of Defendants' request, it is difficult to comprehend how Plaintiffs' use of services that capture personal and private activities, such as Google Home (which Google conspicuously ignores in its portion of the joint statement), would bear on any issue or defense in this litigation or could lead to admissible evidence, and Defendants have offered no clarifying explanation. Plaintiffs do not consent to Defendants' attempt to circumvent the guardrails provided by the normal discovery process to conduct their own, unchecked "investigation" into Plaintiffs' entire lifetime of interactions with Google services.

Defendants have not shown why collecting documents reflecting all email addresses that Plaintiffs used across Google's entire suite of products is necessary and proportionate to the needs

---

[2] *See* About Google Products, GOOGLE, https://about.google/products/ (last visited May 6, 2025).

of the case, especially when weighed against Plaintiffs' reasonable proposed compromise and legitimate privacy interests. The Court should therefore sustain Plaintiffs' objections to RFP No.1.

Respectfully submitted,

Dated:  May 8, 2025              By:  */s/ David H. Kramer*
                                     David H. Kramer, SBN 168452
                                     Email: dkramer@wsgr.com
                                     Maura L. Rees, SBN 191698
                                     Email: mrees@wsgr.com
                                     **WILSON SONSINI GOODRICH & ROSATI**
                                     **Professional Corporation**
                                     650 Page Mill Road
                                     Palo Alto, CA 94304-1050
                                     Telephone:  (650) 493-9300

                                     Eric P. Tuttle, SBN 248440
                                     Email: eric.tuttle@wsgr.com
                                     **WILSON SONSINI GOODRICH & ROSATI**
                                     **Professional Corporation**
                                     701 Fifth Avenue, Suite 5100
                                     Seattle, WA 98104-7036
                                     Telephone:  (206) 883-2500

                                     Paul J. Sampson (admitted *pro hac vice*)
                                     Email: psampson@wsgr.com
                                     **WILSON SONSINI GOODRICH & ROSATI**
                                     **Professional Corporation**
                                     95 S State Street, Suite 1000
                                     Salt Lake City, UT 84111
                                     Telephone:  (801) 401-8541

                                     *Counsel for Defendants*
                                     GOOGLE LLC AND ALPHABET INC.

Dated:  May 8, 2025              By:  */s/ Lesley E. Weaver*
                                     LESLEY E. WEAVER, SBN 191305
                                     Email: lweaver@bfalaw.com
                                     JOSHUA A. SAMRA, SBN 313050
                                     Email: jsamra@bfalaw.com
                                     ANNE K. DAVIS, SBN 267909
                                     Email: adavis@bfalaw.com
                                     **BLEICHMAR FONTI & AULD LLP**
                                     1130 Broadway, Suite 630

Oakland, CA 94612
Telephone:  (415) 445-4003

GREGORY MULLENS (admitted *pro hac vice*)
Email: gmullens@bfalaw.com
**BLEICHMAR FONTI & AULD LLP**
75 Virginia Road, 2nd Floor
White Plains, NY 10603
Telephone:  (415) 445-4003

JOSEPH R. SAVERI, SBN 130064
Email: jsaveri@saverilawfirm.com
CADIO ZIRPOLI, SBN 179108
Email: czirpoli@saverilawfirm.com
CHRISTOPHER K.L. YOUNG, SBN 318371
Email: cyoung@saverilawfirm.com
ELISSA A. BUCHANAN, SBN 249996
Email: eabuchanan@saverilawfirm.com
EVAN A. CREUTZ, SBN 349728
Email: ecreutz@saverilawfirm.com
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone:  (415) 500-6800

*Interim Co-Lead Counsel for Plaintiffs and the
Proposed Class*

MATTHEW BUTTERICK, SBN 250953
Email: mb@butericklaw.com
**BUTTERICK LAW**
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:  (323) 968-2632

STEPHEN J. TETI (admitted *pro hac vice*)
Email: sjteti@locklaw.com
**LOCKRIDGE GRINDAL NAUEN PLLP**
265 Franklin St., Suite 1702
Boston, MA 02110
Telephone: (617) 456-7701

BRIAN D. CLARK (admitted *pro hac vice*)
Email: bdclark@locklaw.com
LAURA M. MATSON (admitted *pro hac vice*)
Email: lmmatson@locklaw.com
ARIELLE S. WAGNER (admitted *pro hac vice*)
Email: aswagner@locklaw.com

**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900

RYAN J. CLARKSON, SBN 257074
Email: rclarkson@clarksonlawfirm.com
YANA HART, SBN 306499
Email: yhart@clarksonlawfirm.com
TIARA AVANESS, SBN 343928
Email: tavaness@clarksonlawfirm.com
MARK I. RICHARDS, SBN 321252
Email: mrichards@clarksonlawfirm.com
**CLARKSON LAW FIRM, P.C.**
95 Third Street, Second Floor
San Francisco, CA 94103
Telephone: (213) 788-4050

*Additional Counsel for Plaintiffs and
the Proposed Class*

## SIGNATURE ATTESTATION

I, David H. Kramer, am the ECF User whose ID and password are being used to file this document. In compliance with N.D. Cal. Civil L.R. 5-1(i)(3), I hereby attest that the concurrence in the filing of this document has been obtained from the other signatory.

By:  */s/ David H. Kramer*
            David H. Kramer