DAVID H. KRAMER, SBN 168452
Email: dkramer@wsgr.com
MAURA L. REES, SBN 191698
Email: mrees@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300

ERIC P. TUTTLE, SBN 248440
Email: eric.tuttle@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone:  (206) 883-2500

*Counsel for Defendants*
GOOGLE LLC AND ALPHABET INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| *In re Google Generative AI Copyright Litigation* | Master File Case No.: 5:23-cv-03440-EKL<br>Consolidated with Case No.: 5:24-cv-02531-EKL<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO AMEND CASE SCHEDULE**<br><br>Judge:      Hon. Eumi K. Lee |

# TABLE OF CONTENTS

**Page**

I. The Court Ordered Plaintiffs to Focus Discovery on Class Certification. .......................... 1

II. Plaintiffs' Discovery Has Been Overbroad, Unfocused, and Disproportionate ................. 2

III. Google Has Diligently Pursued Class Certification Discovery. ........................................ 8

IV. Google Offered a Limited Extension of the Class Certification Deadlines. ...................... 9

Conclusion ................................................................................................................................. 10

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Football Ass'n Premier League v. YouTube, Inc.*,

5

   297 F.R.D. 64 (S.D.N.Y. 2013)...................................................................................................... 8

6

*Kihn v. Bill Graham Archives LLC*,

7

   2022 WL 18935 (9th Cir. Jan. 3, 2022) ............................................................................... 2, 8

8

*Schneider v. YouTube, LLC*,

   674 F. Supp. 3d 704 (N.D. Cal. 2023) .................................................................................... 1

9

*Vinole v. Countrywide Home Loans, Inc.*,

10

   571 F.3d 935 (9th Cir. 2009)................................................................................................... 9

11

**Other Authorities**

12

Fed. R. Civ. P. 23 ................................................................................................................. 5, 8, 10

13

Fed. R. Civ. P. 30 ...................................................................................................................... 2, 7

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs seek to upend the Court's case schedule with lengthy extensions after ignoring for months this Court's repeated instruction to focus on discovery needed for class certification. At enormous burden and expense, Google has met its obligations in good faith—responding promptly to vastly overbroad demands, producing thousands of technical and custodial documents, and building a custom environment for Plaintiffs' review of massive volumes of training data.

Less than a month before their class certification motion is due to be filed, Plaintiffs seek to blow up the existing schedule. No good cause exists for doing so. Plaintiffs even now have failed to articulate what discovery they imagine will assist them in their misguided efforts to certify a class in this case. And even if they had identified such discovery, Plaintiffs have not come close to demonstrating that they diligently and reasonably sought it, but were obstructed in their efforts. Google has nonetheless offered to stipulate to a limited schedule modification to address Plaintiffs' supposed concerns without derailing the case. Plaintiffs rejected that compromise, proposing instead nearly three extra ***months*** to file their class certification motion, with a hearing on that motion in February 2026. Declaration of Paul J. Sampson ("Sampson Decl.") ¶ 24. The Court should deny Plaintiffs' motion outright. But if it believes a modest schedule extension is necessary, it should adopt Google's proposal.

## I.      The Court Ordered Plaintiffs to Focus Discovery on Class Certification.

"Every copyright claim turns upon facts which are particular to that single claim of infringement" and is "subject to defenses that require their own individualized inquiries," making them particularly ill-suited to class action treatment. *Schneider v. YouTube, LLC*, 674 F. Supp. 3d 704, 717 (N.D. Cal. 2023). That is especially true in this case.

As Google explained at the Case Management Conference, unlike most other defendants in generative AI cases, Google holds many licenses authorizing it to obtain and use copyrighted works in a broad array of contexts, including in the manner Plaintiffs complain of. Discovery has only strengthened Google's license defenses as to the named Plaintiffs, demonstrating all sorts of express and implied permissions to use the works at issue. And while Plaintiffs may seek to contest the existence and scope of particular licenses, doing so only underscores the individualized and multi-layered nature of the inquiry for each Plaintiff, each work, and each license. The Ninth Circuit has

found the individualized nature of far fewer and less complicated licensing issues, by itself, forecloses class certification in the copyright context. *Kihn v. Bill Graham Archives LLC*, 2022 WL 18935, at *2 (9th Cir. Jan. 3, 2022).

But licenses are only the beginning of Plaintiffs' problems. Discovery has also revealed that the named Plaintiffs have serious issues with their claims to own and to have properly registered the copyrighted Works in Suit. Still more individualized issues regarding statutes of limitations, fair use, damages, and the failure to mitigate, among others, are present in spades, and would be multiplied to an impossible degree under the class Plaintiffs propose.[1]

In light of these and other fundamental bars to class treatment, Google urged the Court to address certification well before the close of fact discovery, to streamline the case and mitigate unwarranted burdens. The Court agreed, adopting in December 2024, a schedule requiring Plaintiffs to file their class certification motion by August 8, 2025. ECF 88 at 3. The Court also explicitly directed the parties to prioritize discovery relevant to class certification. ECF 93 at 21:19-21 ("focus on discovery in terms of what is needed for the class cert to begin with").

The Court reiterated its guidance on April 21, 2025, discouraging "overbroad and aimless discovery" and warning that it "will not find good cause for an extension if the record reflects Plaintiffs' failure to prioritize and diligently advance discovery on issues relevant to class certification." ECF 128 at 7-8. On May 8, 2025, Magistrate Judge van Keulen reemphasized the Court's instruction, criticizing Plaintiffs for failing to "conform to Judge Lee's directive regarding discovery focused on class certification." ECF 135 at 2.

## II.    Plaintiffs' Discovery Has Been Overbroad, Unfocused, and Disproportionate.

Plaintiffs have honored the Courts' admonitions only in the breach:

*"Unreasonable" 30(b)(6) Notice.* Plaintiffs' first motion to compel concerned a Rule 30(b)(6) notice served on January 28, 2025, seeking testimony on virtually every issue in the case—far beyond anything relevant to class certification. *See* ECF 120, 120-2. Plaintiffs later proposed a "compromise" narrowing the list to 10 topics, but the revised topics remained vague, overbroad,

---

[1] The recent *Bartz v. Anthropic* decision certifying a narrow class specific to the unique allegations in that case employed a flawed analysis that did not discuss relevant precedents, and in any event has no bearing on the very different class and issues presented here. *See* ECF 180-1.

and untethered to class issues. ECF 127-1 at 3. As but one example, Plaintiffs insisted on corporate testimony on "Google's doctrinal positions on fair use"—an abstract subject with no connection to class certification. *Id.* Judge van Keulen rejected the original notice and the revised proposal as "unreasonable in length and scope" and found that it "fail[ed] to conform to Judge Lee's directive regarding discovery focused on class certification." ECF 135 at 2.

Plaintiffs subsequently narrowed their notice to two topics: Google's training data, and Google's "recitation checker," a technology that seeks to avoid repetition of training data in the output of Google's services. The deposition on recitation checker proceeded as scheduled on July 2, 2025. But two days before the training data deposition on July 17, Plaintiffs cancelled it (citing illness of the attorney who had planned to take it) even though Google's witness had traveled from London and Plaintiffs are represented by many attorneys and firms. Sampson Decl. ¶ 6. To the extent Plaintiffs do not yet have the corporate testimony they claim to need, the fault lies entirely with them.[2]

***Source Code.*** Plaintiffs next demanded and moved to compel production of an extraordinarily broad swath of Google's source code: all code for more than a dozen generative AI models, as well as code related to web scrapers and crawlers, pretraining, fine-tuning, benchmarking, leakage detection, synthetic data generation, and more. *See* ECF 140 at 8. Judge van Keulen denied the motion, finding that Plaintiffs had not served document requests covering source code until around the time they filed their motion, and that Plaintiffs had provided no convincing explanation for why any code was needed for class certification. ECF 161 at 21:21-22:5, 63:10-24. Judge van Keulen correctly noted that Plaintiffs' access to exemplary training datasets "should address most if not all of Plaintiffs' needs for the purposes of class certification." ECF 155 at 2.

***Overreaching and Burdensome Discovery Requests.*** Plaintiffs' discovery requests have likewise been unfocused and burdensome. After waiting until January 17 to serve any, Plaintiffs demanded ***all*** training data for at least 16 different generative AI models, plus ***all*** related technical and engineering documentation. On March 31, 2025, they served interrogatories seeking detailed

---

[2] After filing this motion, and on the same day the training data deposition was supposed to have taken place, Plaintiffs demanded new corporate testimony on vast (and in some cases overlapping) topics like "Google's end-to-end process for developing and deploying its Generative AI models." Sampson Decl. ¶ 6.

1　explanations of every training dataset Google has ***ever considered*** using. Sampson Decl. ¶¶ 2-3.[3]

2　Plaintiffs have never articulated how this volume of discovery or any of its substance is needed to

3　support their class certification theory.

4　　　Plaintiffs have refused Google's efforts to focus discovery. Heeding the Court's suggestion

5　to "stipulat[e] to certain facts for purposes of" class certification to "streamline" discovery, ECF 93

6　at 21:22-25, Google offered to stipulate that if Plaintiffs would agree to narrowed discovery, Google

7　would not dispute for purposes of class certification that at least some portion of each named

8　Plaintiff's works was part of the training data for at least one version of the AI models at issue.

9　Plaintiffs instead directed hundreds of RFAs to that issue. Sampson Decl. ¶ 5.

10　　　Plaintiffs' approach required extensive meet-and-confer discussions, after which Google

11　produced thousands of non-custodial "high priority" documents at Plaintiffs' request, including

12　core technical specifications, architecture documentation, and internal presentations. *Id.* ¶ 10. After

13　the parties negotiated search terms for custodial review, Google also promptly began producing

14　custodial documents. *Id.*

15　　　***Custodians.*** Plaintiffs took *months* to come to a reasonable position on custodians, so that

16　custodial document review and production could be completed. In March, Google proposed 12

17　custodians. Plaintiffs responded by demanding 62. During the meet-and-confer process—marked

18　by Plaintiffs' repeated and lengthy periods of silence—Google added another custodian. It also

19　offered to consider three more of Plaintiffs' choosing (for a total of 16), if Plaintiffs could explain

20　their relevance to class certification. Plaintiffs refused the offer and continued to insist on no fewer

21　than 58 custodians. Sampson Decl. ¶ 7. On June 9—just two months before their class certification

22　deadline—Plaintiffs moved to compel. *See* ECF 144.

23　　　Judge van Keulen ordered production from an additional 12 custodians, for a total of 25—

24　nine more than Google had offered, but 33 fewer than Plaintiffs had demanded. She also set a July

25　29, 2025 deadline for Google to complete production from those additional custodians—a

26

---

27　　　[3] Plaintiffs also sought all documents concerning the potential for Google services to mimic

28　"artists' and/or author's artwork, technique, voice, and/or style," including "all analyses, evaluations, and testing (in a machine-readable format), as well as any concerns, complaints, or feedback regarding potential copyright infringement, artistic replication, or unauthorized reproduction of distinctive artistic and/or expressive elements." Sampson Decl. ¶ 2.

compressed six-week schedule. *See* ECF 155 at 1-2. In response, Google expanded its review team significantly and authorized overtime to meet the timeline. Sampson Decl. ¶ 10.

Plaintiffs attempt to shift blame to Google for what they call "slow" custodial production. Mot. 7. But the timeline was caused by Plaintiffs' unreasonable and overbroad insistence on 50 additional custodians and their extended delay in filing a motion. On top of that, Plaintiffs have never explained why custodial documents are necessary for their class certification motion. *See id.* (vaguely asserting that custodians have "responsibilities germane to class certification issues" without identifying what those responsibilities are or how they bear on Rule 23's requirements). Relatedly, Plaintiffs' claims of production deficiencies are unfounded. To date, Google has produced over 19,000 documents (totaling more than 375,000 pages), including responsive documents from all 25 custodians—and has also made available enormous volumes of training data. *Id.* ¶ 11. Any delays were the foreseeable consequence of Plaintiffs' overreaching demands, which required significant effort to avoid mammoth undue burdens.

Google will be substantially complete with production of custodial documents by the July 29 deadline. While Plaintiffs have still not explained why this material is relevant to class certification, they have or shortly will have access to it in order to support whatever arguments they might put forward.

Still, Plaintiffs filed another misguided discovery motion just last week. Google had made clear in September 2024 (and repeatedly thereafter) that it would collect custodial documents dating back to July 2020 (tied to copyright law's three-year statute of limitations and Google's product development starting in 2021 and 2022). *Id.* ¶ 8. More than nine months after the fact and with Google's collection nearly complete, Plaintiffs moved to compel a brand-new collection and production dating back three years earlier, to 2017. ECF 179. Again, Plaintiffs made no effort to tie their demand to any specific class certification need. Rather, it appears Plaintiffs seek simply to invent an excuse for delay and burden.

**Training Data.** Plaintiffs have employed similar tactics with respect to the production of training data. Their original demand for *all* training data ever used in *any* Google generative AI model covered an extraordinary volume of information, measured in exabytes, far beyond what

they could feasibly review or justify. Sampson Decl. ¶¶ 2, 4. Unsurprisingly, Plaintiffs never explained how such a sweeping request supported any theory of class certification.

To restore proportionality, Google asked Plaintiffs in January to review exemplary datasets, and offered to negotiate stipulations about named Plaintiffs' works in training data. Google also offered to host representative datasets in a secure, Google-managed environment at Google's expense. Plaintiffs initially insisted the data be produced to their own vendor (until they came to appreciate its size and the cost they would bear), and spent months negotiating a protocol for the review. Google eventually decided to build an environment consistent with its own proposal, to move the process forward.[4] On May 20 and 21, Plaintiffs finally sent a list of training datasets they wanted to review, and even then, reserved the right to expand their list. *Id.* ¶ 13.

The priority datasets alone comprise petabytes of material. Google promptly began assembling the data, and a majority of it was present on June 27, when Plaintiffs were given access to the environment. All of the requested data for the agreed-upon models was present by July 10. *Id.*

Plaintiffs complain of "technical and software issues in Google's environment (that still persist)." Mot. 2. But as Judge van Keulen observed, discovery platforms of this kind inevitably involve some "wrinkles" (ECF 161 at 63:10-12), particularly given the tremendous volume of data Plaintiffs have requested. Had Plaintiffs timely taken Google up on its multiple offers to streamline the process, they would have had months with the data. Even now, Google has gone to extraordinary lengths to support Plaintiffs—building a secure, custom interface with dozens of tools Plaintiffs demanded; dedicating engineering resources to troubleshoot and optimize functionality; and agreeing to a training session between Google IT staff and Plaintiffs' experts.[5] Sampson Decl. ¶ 14.

---

[4] Google reserved the right to recover a portion of its costs if Plaintiffs made excessive use of Google's servers, but did not hold up making the environment available at its expense. Plaintiffs brought a motion to declare that they could make unlimited use of Google's resources. ECF 159. Judge van Keulen ruled that Plaintiffs would not for now be ordered to share in costs, but without prejudice to Google seeking such cost sharing if Plaintiffs' use proved excessive. ECF 172 at 2.

[5] Plaintiffs falsely assert that Judge van Keulen "ordered" Google "to make its technical personnel available to troubleshoot with Plaintiffs' experts." Mot. 5. Plaintiffs first requested a "technical conversation" between their experts and Google on July 8. Google promptly agreed on July 9 and asked Plaintiffs to provide "specific questions and topics." Sampson Decl. ¶ 14. At the hearing the next day, Plaintiffs' counsel (Lesley Weaver) told the Court that Google had "refused
(continued...)

Plaintiffs concede that, as of "a few days" prior to filing the present Motion on July 11, they had "beg[u]n meaningful review of the training data." Mot. 2. Whatever Plaintiffs imagine the data will show that bears on class certification, they will have had plenty of time to discern it under the current schedule.

**Depositions.** In December 2024, Plaintiffs told the Court they "anticipate that expanding the discovery limits outlined in the Federal Rules of Civil Procedure will be necessary." ECF 83 at 8. The Court rejected that approach, affirming that "[t]he presumptive limits on discovery set forth in the Federal Rules of Civil Procedure shall apply to this case unless otherwise ordered." ECF 88 at 1. Plaintiffs have never sought leave to increase those limits.

Nonetheless, on May 31, 2025 (having failed to notice a single individual deposition), Plaintiffs presented a "deposition protocol" under which they would take 30 depositions of each defendant, insisting that total would exclude all 30(b)(6), non-party, expert, and former employee depositions. Google reminded Plaintiffs of the presumptive limit of 10 total. Sampson Decl. ¶ 9. On June 25—just six weeks before the due date for the class certification motion (and with Plaintiffs having taken only a single deposition)—Plaintiffs made a new demand of 20 depositions "for now," while insisting "Google agree[] that Plaintiffs are entitled to more depositions post-class certification." Google reiterated that Plaintiffs' proposal was excessive and lacked justification. *Id.* Plaintiffs' latest position, communicated to Google two weeks before the deadline for their opening class certification brief, is that they intend to notice the depositions of nine Google witnesses— including several who are obvious apex witnesses. *Id.*

Google has repeatedly asked Plaintiffs to prioritize within the presumptive limit and identify which deponents are relevant to class issues. Plaintiffs refuse to do so, and have provided only perfunctory explanations that the deponents will provide information on "common" issues. Now, they attempt to leverage that refusal—and their own previous failure to notice a single 30(b)(1) deposition—as a basis to extend the entire case schedule.

* * *

**In sum**, Plaintiffs have employed the very strategy the Court warned them against. Instead

---

until recently to let us have access" to its engineers. ECF 178 at 45:6-8. Google had never refused but had agreed to the meeting the day after it was requested. Judge van Keulen affirmed that Google's request for advance topics was "fair." *Id.* at 47:1-5. Plaintiffs provided those topics today.

1  of pursuing discovery targeted to some theoretical class certification motion, they have made

2  unfocused, disproportionate, and abusive discovery demands, never meaningfully tying them to the

3  central issue the Court set for early adjudication. Plaintiffs' goal from the start appears to have been

4  to manufacture a pretext for delaying the schedule. At the same time, intentionally or not, Plaintiffs

5  have generated massive burdens for Google that no litigant could reasonably satisfy. *See, e.g.*, ECF

6  159 at 6 (insisting "Google has virtually unlimited resources" for discovery).

7  Plaintiffs' request for a lengthy extension is not driven by external constraints or lack of

8  cooperation—it is the foreseeable result of their own strategic choices. They have failed to show

9  good cause to upend the case schedule and delay consideration of class certification, which is meant

10  to be determined "at an early practicable time." Fed. R. Civ. P. 23(c)(1)(A).

11  **III.    Google Has Diligently Pursued Class Certification Discovery.**

12  In contrast to Plaintiffs, Google has focused on securing information directly relevant to

13  class certification—and, in particular, to the individualized issues that defeat it. It has served

14  targeted requests for information regarding copyright ownership, registration, and licensing—

15  issues that courts routinely recognize as precluding classwide treatment. *See Kihn*, 2022 WL 18935,

16  at *2 (reversing certification of copyright class due to predominance of "individual issues of license

17  and consent"); *Football Ass'n Premier League v. YouTube, Inc.*, 297 F.R.D. 64, 66-67 (S.D.N.Y.

18  2013) (individualized issues include whether each work is supported by valid registration, owned

19  by the claimant, and subject to express or implied licenses). And when Plaintiffs refused to produce

20  basic information voluntarily, Google brought two successful motions to compel. *See* ECF 139 at

21  1-2 (requiring Plaintiffs to identify their Google accounts "presents an efficient way to investigate

22  whether the Plaintiffs licensed the Works in Suit to Google, a potentially significant issue for class

23  certification"); ECF 172 at 2-3 (requiring Plaintiffs to produce documents from their licensing and

24  literary agents).

25  Google has also deposed three named Plaintiffs to date. These depositions have highlighted

26  myriad individualized issues that preclude a finding of predominance under Rule 23.[6] For example,

27

28  [6] On June 13, Google requested the depositions of two additional Plaintiffs, Steve Almond and Connie McLennan. Google has not yet been able to take these depositions. McLennan was scheduled for July 22, but last week counsel for Plaintiffs informed Google that McLennan was ill
(continued...)

Plaintiffs Mike Lemos and Hope Larson both provided testimony casting serious doubt on whether they even own the works they are suing over. Both also confirmed licensing of their works to Google—directly and through authorized third parties. Sampson Decl. ¶ 16. Meanwhile, Plaintiff Sarah Andersen:

- Admitted she published works online on Twitter and elsewhere before registering them as part of a compilation, establishing that those works were excluded from the registrations—but registration is a prerequisite for bringing a copyright claim, and must be analyzed on an individualized, work-by-work basis. *Id.* ¶ 17.
- Acknowledged that her agents and publisher were authorized to license her works, and she had not reviewed licenses before asserting claims—raising fact-specific questions about express or implied licenses that cannot be resolved on a classwide basis. *Id.*
- Could not identify any actual harm or economic injury, undermining any argument that damages can be determined using a classwide methodology. *Id.*

As if to underscore the impossibility of exploring these issues with a supposed class of millions, each Plaintiff deponent revealed gross deficiencies in their document collection process, omitting countless documents of import, and suggesting that it would take them months to conduct an adequate collection and production. *Id.* ¶¶ 18, 20.[7]

Google has pursued class certification discovery with discipline and has already found much of what it expected. The sooner the class issue is presented (whether on Plaintiffs' scheduled motion or on a motion to preclude certification, *see Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 948 (9th Cir. 2009)), the sooner the parties can dispense with the mirage of a class action and the massive discovery burdens Plaintiffs have tried to justify by reference to it.

**IV.    Google Offered a Limited Extension of the Class Certification Deadlines.**

The Court already said that, at most, "a short extension of the case schedule is necessary to adequately address class certification"—assuming "Plaintiffs have accurately reported the status of

---

and subsequently requested that the deposition be rescheduled for a date in August. Plaintiffs initially stated that Almond could not be available until mid-August, but recently have not responded to repeated requests to set a date. Sampson Decl. ¶ 15. Google nevertheless believes the class certification motion can proceed on schedule, because of Google's diligence in pursuing the information it needs.

[7] Plaintiff Mike Lemos, for example, posted the three illustrations he is suing over on services all over the Internet, including repeatedly on Google services, thereby granting licenses (directly and indirectly) to use them under terms of service agreements. But Lemos did not conduct anything like a reasonable search for or production of documents showing where he posted his works or the license agreements governing their use. At his deposition, Lemos admitted that he failed to even search numerous of these platforms, and he recalled virtually nothing about what he and his counsel supposedly did (or did not do) to respond to Google's discovery requests. Sampson Decl. ¶ 19.

discovery." ECF 177 at 1. As detailed above, that assumption does not hold. Plaintiffs have tried to hide the excesses and leisurely pace of their discovery and misrepresented Google's extensive efforts at cooperation. Their request to delay their class certification motion by months is neither supported by the record nor proportional to the needs of what should be a very modest case.

Still, Google has attempted to resolve this dispute through compromise. Specifically, Google offered to stipulate to:

- Extending the substantial completion deadline for custodial, class-related document production from July 29 to August 8, 2025;
- Moving all class-related deadlines forward four weeks, including pushing Plaintiffs' motion for class certification from August 8 to September 5, 2025;
- Extending the hearing date for the class certification motion from December 10 to December 17, 2025; and
- Extending merits-related deadlines by about four months to give the parties time to focus first on class certification briefing, expert disclosures, and depositions.

Google's offer balances flexibility and efficiency. It provides Plaintiffs additional time to complete their review of custodial productions and training data—addressing the concerns they have raised—while preserving a clear and workable path toward class certification. Under Google's proposed schedule, Plaintiffs will have had at least seven weeks to analyze the datasets from when they admit they "beg[a]n meaningful review" of that data (Mot. 2)—ample time to complete their review for purposes of class certification. The proposal maintains momentum, avoids unnecessary delay, and ensures that the class certification motion can be fully briefed and heard on a realistic timeline. A side-by-side comparison of the current deadlines, Google's proposal for class certification-related deadlines in the mid-discovery case management statement, and Google's offer is attached hereto as Exhibit 1.

Plaintiffs have yet to articulate a viable class theory, years into the case, and long after discovery opened. Plaintiffs should not be permitted to prolong costly and burdensome discovery indefinitely without first showing that class certification is viable. A fixed, near-term deadline for a motion, as contemplated by Rule 23, is the proper and efficient way forward.

**Conclusion:** For the foregoing reasons, Google respectfully requests that the Court deny Plaintiffs' motion. But if any schedule adjustment is appropriate, Google asks that the Court adopt its proposal.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated:  July 21, 2025

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: _____*/s/ David H. Kramer*_____
David H. Kramer

*Counsel for Defendants*
GOOGLE LLC AND ALPHABET INC.