Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
**BLEICHMAR FONTI & AULD LLP**
1330 Broadway, Suite 630
Oakland, CA 94612
Tel. (415) 445-4003
lweaver@bfalaw.com
adavis@bfalaw.com
jsamra@bfalaw.com

Gregory S. Mullens (admitted *pro hac vice*)
**BLEICHMAR FONTI & AULD LLP**
75 Virginia Road, 2nd Floor
White Plains, NY 10603
Tel. (415) 445-4006
gmullens@bfalaw.com

Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Elissa A. Buchanan (SBN 249996)
Evan A. Creutz (SBN 349728)
Aaron Cera (SBN 351163)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
eabuchanan@saverilawfirm.com
ecreutz@saverilawfirm.com
acera@saverilawfirm.com

*Plaintiffs' Interim Co-Lead Counsel*

*[Additional Counsel on Signature Page]*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

*In re Google Generative AI Copyright Litigation*

Master File Case No. 5:23-cv-03440-EKL-SVK
Consolidated Case No. 5:24-cv-02531-EKL-SVK

**PLAINTIFFS' MOTION TO ENFORCE DISCOVERY ORDER AND TO APPOINT A SPECIAL MASTER PURSUANT TO RULE 53**

Judge: Susan van Keulen, U.S.M.J.
Date: October 14, 2025
Time 10:00 A.M.
Courtroom: 6, Fourth Floor

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. RELEVANT BACKGROUND ..... 3

A. Google Fails to Timely Produce Complete Training Data and Alters Training Data in the Review Environment Without Informing Plaintiffs ..... 3

B. Google Has Failed to Adequately Provision and Maintain a Stable Environment ..... 5

III. ARGUMENT ..... 6

A. The Court Should Enforce Its Order and Require Google to Immediately Provide Inspection of Training Data. ..... 6

B. The Court Should Appoint a Special Master to Oversee the Production of Training Data and the Review Environment ..... 7

IV. CONCLUSION ..... 9

**NOTICE OF MOTION AND MOTION**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 14, 2025 at 10:00 a.m. in Courtroom 6, Fourth Floor, of this Court, located at 280 South First Street, San Jose, California, Plaintiffs will and hereby do move the Court for an Order to enforce this Court's June 18, 2025 Discovery Order and to appoint a special master. This Motion is made pursuant to Fed. R. Civ. P. 37 and 53, and this Court's inherent authority to manage its cases.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Analyzing data used to train Google's at-issue generative AI models is the most efficient way for Plaintiffs to prove Google's systematic and unlicensed use of Plaintiffs' copyrighted works. On June 18, 2025, this Court ordered Google to provide Plaintiffs with training data by June 23, 2025. ECF No. 155 at 2:13–17 ("Google identified a protocol it has established of creating data cards that allows the Plaintiffs to identify and select datasets of interest for inspection, which Plaintiffs have done. Google represents that these datasets include the content of training data and the content's associated metadata. Plaintiffs' remote access to these datasets will be available starting next week, June 23, 2025."). However, over two months later (this past Labor Day weekend) Google revealed to Plaintiffs for the first time that [REDACTED] [REDACTED]—were produced incomplete and missing critical metadata. The metadata that is missing is key to determining, among other issues, whether the training datasets contain pirated and other copyrighted material. This means that Plaintiffs' data analysis is compromised and they must now conduct new analysis and methodological testing of the data modified by Google.

Google's lack of transparency—an ongoing and chronic issue—compounds the problem. Google has now admitted that it became aware of the missing data since at least August 19, 2025, but did not tell the Plaintiffs until Labor Day weekend (August 30, 2025). Further, Google apparently unilaterally entered the review environment prior to August 30 without telling Plaintiffs or their experts, who were in the midst of confidential analysis. This of course gives Google an unfair advantage in not just observing Plaintiffs' work, but controlling the ability of Plaintiffs' experts to perform the analysis required. Had Google

informed Plaintiffs, at a minimum the parties could have prevented wasting Plaintiffs' experts' resources during that time. But none of that can make up for the significant lost time and the resources spent by Plaintiffs analyzing datasets missing the most critical information.

In addition to the missing critical data, the environment Google insisted Plaintiffs use has been plagued with issues. The issues are extreme. Experts' access to databases freezes multiple times a week for hours at a time, requiring them to wait for Google to fix the freeze and a subsequent restart of any work initiated. New issues crop up often.

Plaintiffs have worked diligently to overcome these obstacles. This has included countless conferences, workarounds by Plaintiffs' experts, and asking Google to provide written assurances that it would conclusively remedy the issues plaguing its environment. Google has not fixed the problems and has refused the assurance. Declaration of Stephen J. Teti ("Teti Decl."), ¶ 12; Ex. 1 to the Teti Decl., the Declaration of Meredith "Merry" McCarron ("McCarron Decl."), ¶¶ 5–17. But the issues are getting worse, not better.

Plaintiffs thus respectfully request that the Court order Google to comply with its order, and that the Court authorize a Special Master to ensure Google's compliance. Google successfully opposed source code production by promising that it would make training data sets available in a remote environment that would contain both the "content" and the "metadata about the content," including ███ showing the provenance of the copyrighted works. June 18 Hr'g Tr. at 29:17–30:18. Based on these representations, the Court found that review of training data would "get us a significant way down along the lines of [Plaintiffs'] request" and ordered Google to make training datasets available for inspection by the week of ***June 23, 2025***. *Id.* at 34:14–18; ECF No. 155.

Google has flouted the Court's order in at least four ways: (i) Google failed to provide timely and functional access to the remote environment that it selected and controls; (ii) the majority of the training sets Google did provide was missing key ███ metadata necessary to identify pirated and copyrighted material; (iii) Google unilaterally altered the contents of the training data in the environment without prior notice and in the midst of Plaintiffs' experts' confidential review; and (iv) Google has failed to comply with the training data review protocol, by not timely making available to Plaintiffs' experts the results of their analysis. *See* Teti Decl. ¶¶ 2–12; McCarron Decl. ¶¶ 5–17. Each of these failures has been highly

prejudicial to Plaintiffs' work; taken together, they have systemically deprived Plaintiffs of discovery necessary to engage in the expert analysis, costing hundreds of thousands of dollars in wasted expert and attorney time. In the short term, Plaintiffs simply seek an immediate cure to the broken process Google has proffered to date: oversight and compliance with what Google told the Court it would deliver.[1]

## II. RELEVANT BACKGROUND

The proposed class is defined as: "All persons or entities domiciled in the United States who owned a United States copyright in any work used by Google to train Google's Generative AI Models during the Class Period." ECF No. 107 at 3:17–18. Training data is (1) key evidence demonstrating Google's systematic use of copyrighted works to train its AI models across the entire class, and (2) direct evidence of which copyrighted works Google used—making Plaintiffs' timely access to accurate and complete training data indispensable for Plaintiffs' class certification motion. Nearly three months ago, at the June 18 hearing, Plaintiffs informed the Court of persistent issues concerning access to the training data necessary for Plaintiffs' class certification motion that Google had unilaterally chosen to produce in a remote access environment that it controlled and hosted. At that time, the Court ordered that the training datasets be made available by the week of June 23, 2025, based on Google's explicit representations at the hearing that (1) the data would be accessible via a remote environment within one week of the hearing (June 18, 2025 Hr'g Tr. at 32:11–12: "I'm not aware of a reason" why access couldn't begin next week), and (2) the datasets would contain ***complete content and metadata*** (*id.* at 29:22–25). Google has failed to abide by the Court's order and now admitted to accessing the review environment without Plaintiffs' knowledge to alter training data that Plaintiffs' experts were in the midst of confidentially analyzing.

### A. Google Fails to Timely Produce Complete Training Data and Alters Training Data in the Review Environment Without Informing Plaintiffs.

Despite Google's promises and the Court's Order, Plaintiffs did not gain access to the complete training data on June 23, 2025. Google failed to timely provision user credentials or provide adequate instruction to set up the Google-provided Chromebooks, which Google required to access the remote

---

[1] It is September 8, 2025. Plaintiffs' motion for class certification is due on September 22, 2025. By separate motion to be filed tomorrow, on September 9, 2025, Plaintiffs have no choice but to seek an extension of the class certification deadline. Once the issues are fixed and the scope of harm is defined, Plaintiffs also reserve all rights to seek curative sanctions.

environment where the training data was purportedly hosted, and which Plaintiffs and their experts had no ability to troubleshoot. Plaintiffs and their experts did not gain access to the training data until July 3, 2025. ECF No. 174-1 ¶¶ 7–10. Even then, Plaintiffs' and their experts' ability to analyze training data was limited due to the slow and under-provisioned environment setup by Google, and because it failed to provide access to commonly-used and standard analytical tools, such as BigQuery database access, on its remote environment. ECF Nos. 174-1 ¶¶ 11–14; 186-2 ¶¶ 4–12. To address these and other issues, the Court ordered that Google to provide access to their engineers and technical personnel. July 10, 2025 Hr'g Tr. at 45:9–19.

Google did not make its technical personnel available for conferral with Plaintiffs' experts until July 29, 2025. Teti Decl. ¶ 3; McCarron Decl. ¶ 7. On that call, Google's engineers revealed for the first time that because Google did not use BigQuery database tables, Plaintiffs instead must access training data via TensorFlow, and that Google would convert relevant tables to TFRecord format. Teti Decl. ¶ 3; McCarron Decl., ¶ 7. As a result, Plaintiffs' experts did not have the tools to analyze even the available training data until August 9, about a month after the Court's originally ordered compliance date. Teti Decl. ¶ 4; McCarron Decl., ¶ 7. But even after Google converted the data to a form that could be analyzed by the tools Google provided and Plaintiffs were able to make progress on their analyses, Plaintiffs were still unable to gain access to the complete training data. Teti Decl. ¶ 5; McCarron Decl., ¶ 8.

On August 13, Plaintiffs' experts identified [REDACTED] datasets that were either corrupted or inaccessible. McCarron Decl., ¶ 8. Plaintiffs notified Google the same day that these datasets were inaccessible. Teti Decl. ¶ 5. It was not until August 21—eight days later—that Google responded substantively and, Plaintiffs thought, resolved the issue, but only to later learn that the training data Google had provided lacked critical content and metadata. Teti Decl. ¶¶ 5–6; McCarron Decl., ¶¶ 12–14.

Indeed, on Saturday, August 30, 2025, Google revealed to Plaintiffs that a critical metadata field, referred to by Google as the "[REDACTED]" field, including [REDACTED], was not provided. Teti Decl. ¶ 6; McCarron Decl. ¶ 12. Plaintiffs followed up with Google that same day to try to determine the scope of the issue, but Google did not respond until Tuesday, September 2, that the error affected a total of [REDACTED] datasets, including the [REDACTED] datasets Plaintiffs had earlier identified. Teti Decl. ¶ 7; *see also* McCarron Decl. ¶ 13. In sum, Google failed for over two months to include the [REDACTED] field in

datasets central to Plaintiffs' case that included many of the training data sets that originated from Google's [REDACTED]. Sep. 2 K. Knoll Email to S. Teti. Google indicated that it expected that its upload of the missing data would not be complete until the next day. *Id.* Plaintiffs' experts gained access on September 3. McCarron Decl. ¶ 15.

The Parties again met and conferred regarding the incomplete training data on September 3, 2025. Teti Decl. ¶ 8–10. On that call, Plaintiffs learned that Google identified other missing data from TFRecord conversions the week of August 19, but opted to withhold that information for two weeks while it conducted its own analysis of the data available to Plaintiffs, during which time it identified additional missing elements. Teti Decl. ¶ 8; McCarron Decl. ¶ 12. Worse still, Plaintiffs were informed that Google had begun to alter the data in the training data review environment before it told Plaintiffs that there was any issue whatsoever. Google was aware that Plaintiffs' experts continued to work to analyze incomplete training data. Teti Decl. ¶ 9; McCarron Decl. ¶ 12. When pressed about what other metadata may have been affected for which models, Google was unable to answer definitively. Teti. Decl. ¶ 10. In other words, Plaintiffs are still left in the dark about the full impact of the problem and whether any other elements remain missing.

**B. Google Has Failed to Adequately Provision and Maintain a Stable Environment**

The issues with data being provided in a format incompatible with Google's training data environment and incomplete data take place against the backdrop of an inadequately provisioned and unstable environment that Google upon and controls. McCarron Decl. ¶¶ 5–9. Plaintiffs access to the training data environment has been plagued by issues of instability since inception, significantly impacting the actual time Plaintiffs have had to analyze training data. McCarron Decl. ¶ 9. Over the last two months, Plaintiffs' experts have been frozen out of the training data environment on seventeen separate occasions, costing them approximately 112 hours of lost time working in the training data environment. *Id*. The code Plaintiffs' experts run to analyze the training data must be restarted each time they are locked out of the remote environment. *Id.* Code that should have been run in approximately 23 hours has needed two and a half days due to the environment reboot issues introduced by Google's set-up configuration. *Id.* The reboots and outages persist without no end in sight. *Id.*

Each system outage triggers a cumbersome chain of communication from Plaintiffs' experts to Plaintiffs' counsel to Google's counsel to Google's technical team so that the environment can be rebooted,

resulting in days of lost access that compound the disruption caused by Google's unstable infrastructure. Ex. 2 to the Teti Decl., the Declaration of Ayyub Ibrahim ("Ibrahim Decl."), ¶¶ 4–5; McCarron Decl.¶ 9. Most recently when Plaintiffs asked Google to restore their experts' access to the environment, Google responded that "[r]esets to the system can only be performed during work hours, and for security reasons require two Google personnel to be available." Teti Decl. ¶ 11. Of course, no such limitations prohibited Google from conducting its own investigation into the training data or altering the training data in the environment for its own purposes. Nor has Google explained what the issues are; confirmed that they have run them fully to ground; or assured Plaintiffs that these problems will not recur. *Id.* ¶ 12.

## III. ARGUMENT

### A. The Court Should Enforce Its Order and Require Google to Immediately Provide Inspection of Training Data.

The Court's Order directs Google to have made its training data accessible by the week of June 23, 2025. ECF No. 155, § II.1; *see also* June 18, 2025 Hr'g Tr. at 63:18-20 (THE COURT: … "It looks like the objective is for it to be complete, in that the datasets—the actual content is provided and the metadata for that content."). Google has failed to do so. Plaintiffs have been patient and diligent, working with Google to troubleshoot each incremental issue. But it is now two-and-a-half months after the Court's original deadline for Google to provide access to training data. Google refuses to certify that it has provided all of the metadata associated with the training data, and worse, has manipulated training data in the environment without Plaintiffs' knowledge merely weeks before their September 22 deadline to file their class certification motion.

Google's failure to comply with the Court's Order has severely prejudiced Plaintiffs. Rather than focusing on analyzing training data in support of Plaintiffs' class certification motion, Plaintiffs' experts have spent cumulative days locked out of the remote environment, necessitating repeated communications between Plaintiffs' counsel, Google's counsel, and Google's technical personnel to restore access multiple times weekly, with 17 such incidents to date, which Plaintiffs' experts have estimated have cost them approximately 112 hours to date, with more to come. McCarron Decl. ¶ 9. To make matters worse, Google is now revealing that ██ critical datasets, comprised of over half-a-million records, were incomplete and without critical metadata—an issue it had apparently known about for over a week—and that it unilaterally

altered the data in the environment while Plaintiffs' experts were actively working, without notifying Plaintiffs until after the changes were complete. Teti Decl. ¶¶ 8–9. These undisclosed modifications have now forced Plaintiffs' experts to divert all of their efforts and resources to assessing the scope and impact of Google's changes. These changes may require Plaintiffs and their experts to have to completely redo their analysis, and all while continuing to face persistent lockouts from Google's controlled environment.[2] McCarron Decl. ¶¶ 16–17.

To assess the full extent of Google's late disclosure, Plaintiffs and their experts are now forced to spend valuable time assessing (for each dataset) what information was previously unavailable, to what extent it may implicate their developed methodology, and to what extent the results of their analysis have been affected. All while navigating outages (which Plaintiffs and their experts have no ability to self-diagnose), including now while Plaintiffs are assessing what needs to be redone. The costs incurred due to Google's non-compliance are substantial and mounting.[3]

Accordingly, the Court should grant Plaintiffs' order enforcement motion and require Google to certify that the training data in Google's environment is complete and has been provided in a format that is compatible with the tools Google makes available in its environment. Further, Google must commit to ensuring that Plaintiffs no longer lose access to the environment on a regular basis by either providing Plaintiffs with the tools to re-start the environment, or making available the technical staff necessary to timely restore access. *See* McCarron Decl. ¶ 10.

### B. The Court Should Appoint a Special Master to Oversee the Production of Training Data and the Review Environment

---

[2] Plaintiffs' experts are working with haste to assess the extent of the problem and timeline for remediation, and will promptly report to the Court when their investigation is complete.

[3] Plaintiffs have expended significant attorney time troubleshooting access issues, documenting deficiencies, conferring with Google's counsel regarding remediation, and engaging in motion practice. Additionally, Plaintiffs and the putative class have incurred costs having their experts attempt to work within Google's deficient system, develop workarounds for technical failures, and now reassess their analyses following Google's undisclosed data modifications. Needless expenditure of time and money will continue as Plaintiffs' experts must now re-examine their methodologies and potentially re-run analyses to account for the newly disclosed metadata and modifications to the datasets. Plaintiffs are therefore reserving all rights to seek Rule 37 relief pending the resolution of the training data issue and full understanding of costs related thereto.

Given Google's failure to comply with the Court's order to provide Plaintiffs' access to training data including metadata by June 23 and because of the persistent instability of Google's training data review environment, Plaintiffs seek the appointment of a special master pursuant to Federal Rule of Civil Procedure 53(a)(1)(c). While special masters are reserved for "exceptional circumstances," courts have found such circumstances exist based on "the complexity of the litigation" and "problems associated with compliance with the district court order." *Shenzhenshi Haitiecheng Sci. & Tech. Co. v. Rearden LLC*, No. 15-cv-00797-JST, 2019 WL 1560449, at *6 (N.D. Cal. Apr. 10, 2019) (citing *United States v. Suquamish Indian Tribe*, 901 F.2d 772, 775 (9th Cir. 1990)). Furthermore, appointment of a special master is warranted where a court "lacks the resources to constantly monitor compliance" with its orders, particularly when combined with "difficulties inherent in monitoring compliance with the court's orders" or a demonstrated "record of resistance to prior state and federal court orders." *Id.* (citing *Loc. 28 of Sheet Metal Workers' Int'l Ass'n v. E.E.O.C.*, 478 U.S. 421, 482 (1986)). However, courts need not find "intentional disregard of court orders before a special master may be appointed." *Id.* (citing *Nat'l Org. For the Reform of Marijuana Laws v. Mullen*, 828 F.2d 536, 543 (9th Cir. 1987)). Rule 53(g)(3) requires courts appointing a special master to allocate costs based on the controversy's nature, the parties' financial means, and which party bears greater responsibility for requiring the appointment.

Here, Google's significant delay in providing access to complete training datasets in a format compatible with Google's environment and its inadequate provisioning of the training data review environment overwhelmingly weigh in favor of appointing a special master. The delays in access to properly formatted training data and ongoing disruptions in Plaintiffs access to the environment are solely due to Google's decisions on the design and support of the training data review environment. That these decisions by Google have led to the significant loss of time for expert analysis, in addition to the loss of time assessing the scope of the problems created by Google and its review environment, would be reason enough to appoint a special master to oversee the review of training data. But worse still, Google has, by its own admission, identified issues and failed to timely inform plaintiffs, and begun to alter and change the training data without notice to Plaintiffs—requiring Plaintiffs and their experts to divert resources from work critical to their class certification motion, which is due on September 22, 2025.

The complexities of resolving the technical problems with the training data environment and assessing the completeness of Google's production of the training data are matters which would require undue resources from this Court to resolve. Issues pertaining to training data and Google's environment are highly technical in nature and are of critical importance to Plaintiffs' class certification motion. A special master with technical expertise could resolve these persistent issues through independent and neutral oversight, including but not limited to: 1) mandating or recommending to the Court technical fixes to eliminate the frequent lockouts and reboots in the training data environment; 2) implementing or recommending to the Court a protocol requiring advance notice before Google's modification of training data modifications; 3) implementing or recommending to the Court a protocol to override the artificial procedural barriers that have prevented Plaintiffs from regaining access to the training data environment—such as limiting Plaintiffs' access to reboot Google's environment to when there are "two Google personnel during work hours"; and 4) mandating or recommending to the Court certain steps that Google take to audit the datasets and certify the completeness of the training data, including its metadata, currently in the environment.

## IV. CONCLUSION

Plaintiffs respectfully request that the Court: (1) enforce its order of June 18 and require that Google certify that the training data in Google's environment is complete and has been provided in a format that is compatible with the tools Google makes available in its environment. Further, Google must commit to ensuring that Plaintiffs no longer lose access to the environment on a regular basis by either providing Plaintiffs with the tools to re-start the environment, or making available the technical staff necessary to timely restore access; and (2) appoint a special master to oversee the training data environment and provision of access to training data, or, in the alternative, issue findings and a recommendation for the Parties to nominate candidates to serve as special master overseeing the training data environment.[4]

---

[4] While the central relief Plaintiffs seek is the appointment of a special master, it should be noted that Google's responsibility for the non-compliance with the Court order, including its decision to unilaterally implement a restrictive and issue-stricken virtual environment of its own design and its relative financial resources, weigh strongly in favor of imposing the financial cost of a special master on Google. Plaintiffs reserve all rights on this front.

Dated: September 8, 2025

Respectfully submitted,

By: /s/ Lesley E. Weaver
Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
**BLEICHMAR FONTI & AULD LLP**
1330 Broadway, Suite 630
Oakland, CA 94612
Telephone: (415) 445-4003
lweaver@bfalaw.com
adavis@bfalaw.com
jsamra@bfalaw.com

Gregory S. Mullens (admitted *pro hac vice*)
**BLEICHMAR FONTI & AULD LLP**
75 Virginia Road, 2nd Floor
White Plains, NY 10603
Telephone: (415) 445-4006
gmullens@bfalaw.com

By: /s/ Joseph R. Saveri
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Elissa A. Buchanan (SBN 249996)
Evan A. Creutz (SBN 349728)
Aaron Cera (SBN 351163)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
eabuchanan@saverilawfirm.com
ecreutz@saverilawfirm.com
acera@saverilawfirm.com

*Plaintiffs' Interim Co-Lead Counsel*

Brian D. Clark (admitted *pro hac vice*)
Laura M. Matson (admitted *pro hac vice*)
Arielle S. Wagner (admitted *pro hac vice*)
Consuela Abotsi-Kowu (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
bdclark@locklaw.com
lmmatson@locklaw.com
aswagner@locklaw.com
cmabotsi-kowo@locklaw.com

Stephen J. Teti (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
265 Franklin Street, Suite 1702
Boston, MA 02110
Telephone: (617) 456-7701
sjteti@locklaw.com

Ryan J. Clarkson (SBN 257074)
Yana Hart (SBN 306499)
Mark I. Richards (SBN 321252)
**CLARKSON LAW FIRM, P.C.**
22525 Pacific Coast Highway
Malibu, CA 90265
Telephone: 213-788-4050
rclarkson@clarksonlawfirm.com
yhart@clarksonlawfirm.com
mrichards@clarksonlawfirm.com

Tracey Cowan (SBN 250053)
**CLARKSON LAW FIRM, P.C.**
95 Third Street, Second Floor
San Francisco, CA 94103
Telephone: (213) 788-4050
tcowan@clarksonlawfirm.com

Matthew Butterick (SBN 250953)
**BUTTERICK LAW**
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
mb@buttericklaw.com

*Additional Counsel for Individual and Representative Plaintiffs and the Proposed Class*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Lesley E. Weaver, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 8th day of September, 2025, at Oakland, California.

*/s/ Lesley E. Weaver*
Lesley E. Weaver