1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7  IN RE GOOGLE GENERATIVE AI            Master File Case No.  23-cv-03440-EKL
   COPYRIGHT LITIGATION

8
                                          **ORDER GRANTING MOTION TO
9                                          DISMISS IN PART**

10                                         Re: Dkt. No. 95

11

12

13          In this putative class action, Plaintiffs claim that Defendants Google LLC and Alphabet

14  Inc. "infringed millions of registered copyrighted works" to "build and train [Google's] generative

15  artificial intelligence models."  Consol. Am. Compl. ¶ 1, ECF No. 91 ("Compl.").  Defendants

16  move to dismiss.  Mot. Dismiss, ECF No. 95 ("Mot.").  The Court carefully reviewed the parties'

17  briefs, sent the parties a tentative ruling, and heard argument on April 23, 2025.  For the following

18  reasons, the Court GRANTS the motion in part, without leave to amend.

19  **I.       BACKGROUND**

20          **A.       Factual Allegations**

21          This action is brought by ten visual artists and authors who claim that Google trained its

22  generative artificial intelligence ("AI") models on their copyrighted works.[1]  Compl. ¶ 1.

23  Plaintiffs seek to represent a class of other copyright owners whose works were used to train

24  Google's generative AI models.  *See id.* ¶¶ 164-165.  Defendant Google is a leading technology

25  company that offers a range of products and services, including the Google Search engine, the

26  Chrome internet browser, and the online video platform YouTube.  *See id.* ¶ 105.  Defendant

27  ──────────────

28  [1] Plaintiffs are:  Steve Almond, Sarah Andersen, Burl Barer, Jessica Fink, Kirsten Hubbard, Hope
    Larson, Mike Lemos, Jill Leovy, Connie McLennan, and Jingna Zhang.  Compl. at 1.

United States District Court
Northern District of California

1  Alphabet is Google's parent company.  *Id.* ¶ 104.  Alphabet's relevance to this case is discussed in
2  greater detail below.  *See infra* Section IV.C.

3      The technology at the center of this case, generative AI, refers to "systems or models
4  capable of producing output that simulates human expression, often in response to user inputs
5  called 'prompts.'"  Compl. ¶ 113.  There are three types of generative AI models at issue here, and
6  they are defined according to the types of content they can produce.  Large language models
7  "accept user text prompts as input text and generate responsive text as output."  *Id.* ¶ 116.  Text-to-
8  image diffusion models "use text prompts to create image outputs through a machine-learning
9  technique called diffusion."  *Id.* ¶ 118.  Finally, multimodal large language models "accept input
10  and generate output in multiple formats."  *Id.* ¶ 119.

11      Generative AI models are developed by using a training dataset – that is, a massive amount
12  of data that may include "a variety of text, image, audio, and video" depending on the type of
13  model being trained.  *Id.*  This training data is sourced from materials like books, websites, news
14  articles, source code, Wikipedia, internet forum posts, and social media conversations.  *Id.* ¶ 123.
15  Training a generative AI model requires creating multiple copies:  "first a copy is made during
16  data collection, then a series of copies are made during model training, and finally a copy is
17  permanently incorporated into the parameters" of the generative AI model.  *Id.* ¶¶ 120, 174.
18  Here, Plaintiffs allege that their copyrighted works were included, without authorization, in
19  various datasets that Google used to train certain of its generative AI models.

20      First, Google developed a series of large language models and multimodal large language
21  models known as PaLM, GLaM, LaMDA, Bard, and Gemini.  *Id.* ¶¶ 122-128, 131 n.34.  Google
22  allegedly trained these models on overlapping datasets, including Google's Infiniset dataset, which
23  incorporates the C4 dataset.  *Id.* ¶ 123.  The C4 dataset includes materials collected from Z-
24  Library and oceanofpdf.org – digital libraries of pirated books – and Scribd.com, "a subscription-
25  based digital library with 60 million e-books and audio books."  *Id.* ¶¶ 126-127.  According to the
26  complaint, the Infiniset and C4 datasets include the copyrighted works of Plaintiffs Almond,
27  Barer, Hubbard, Larson, Leovy, and McLennan.  *Id.* ¶ 129; *see also id.* ¶¶ 19-20, 27, 37-38, 45,
28  56-57, 64, 69-70, 72, 83-84, 86, 91-92, 95.

Second, Google developed a family of text-to-image diffusion models known as Imagen. *Id*. ¶¶ 118, 132.  Google allegedly trained the first version of Imagen on the LAION-400M dataset, a dataset of 400 million text-image pairs named after the organization that compiled it:  the Large-Scale Artificial Intelligence Open Network.  *Id*. ¶¶ 132, 138.  Plaintiffs allege that Google "likely" trained later versions of Imagen on the LAION-5B dataset, which includes the LAION-400M dataset and about five billion additional images.  *Id*. ¶¶ 144, 146, 148-149.  According to the complaint, the LAION-400M and LAION-5B datasets include the copyrighted works of Plaintiffs Zhang, Andersen, Fink, McLellan, and Lemos.  *Id*. ¶¶ 143, 150; *see also id*. ¶¶ 31-32, 50-51, 56-57, 60, 64, 77-78, 91-92, 95, 100-101.

Each Plaintiff identifies specific works and traces them to specific datasets that Google allegedly used to train certain generative AI models.  For example, Plaintiff Andersen – a cartoonist and illustrator – identifies six of her copyrighted works that were included in the LAION-400M and LAION-5B datasets.  *Id.* ¶¶ 30-32.  The complaint provides the copyright registration information for each of Andersen's asserted works, Compl. Ex. A at 8-12, ECF No. 91-1, and alleges that the works are included in the datasets, Compl. Ex. B at 2-7.  Each named Plaintiff alleges similar information.  Based on these allegations, Plaintiffs allege Google "directly infringed upon Plaintiffs' exclusive rights through multiple distinct acts of unauthorized reproduction and use" of their works during the model training process.  Compl. ¶ 174.  Unlike some other generative AI copyright infringement cases, Plaintiffs do not allege that the models produce infringing output.  *Cf. Concord Music Grp., Inc. v. Anthropic PBC*, 772 F. Supp. 3d 1131, 1134-36 (N.D. Cal. 2025).

## B.    Procedural History

This consolidated action originated as two separate putative class actions:  *Leovy v. Google LLC*, No. 23-cv-03440, and *Zhang v. Google LLC*, No. 24-cv-02531.  The *Leovy* action was filed on July 11, 2023, and asserted copyright infringement and many other claims against Google, Alphabet, and DeepMind.  ECF No. 1.  The claims against Alphabet and DeepMind were voluntarily dismissed without prejudice early in the case.  Notice of Voluntary Dismissal, ECF No. 13.  Thereafter, Google moved to dismiss the complaint, but rather than opposing, the *Leovy*

1    Plaintiffs amended the complaint as a matter of course pursuant to Federal Rule of Civil Procedure

2    15(a)(1).  Notice, ECF No. 15; *see also* First Am. Compl., ECF No. 28.  Google then moved to

3    dismiss the first amended complaint, ECF No. 33, and Judge Martínez-Olguín granted the motion

4    because the complaint failed to comply with Rule 8, *see* Order, ECF No. 46.  On June 27, 2024,

5    the second amended complaint was filed.  ECF No. 47.  Google moved to dismiss again, ECF

6    No. 55, and that motion was pending when the *Leovy* case was reassigned to this Court on August

7    21, 2024.

8          The *Zhang* action was filed on April 26, 2024, on behalf of visual artists – including

9    photographers, cartoonists, and illustrators.  *Zhang* Compl. ¶¶ 11-14, No. 24-cv-02531, ECF

10   No. 1.  The *Zhang* Plaintiffs asserted a claim for direct copyright infringement against Google, and

11   a claim for vicarious copyright infringement against Alphabet.  On June 20, 2024, Google moved

12   to dismiss the complaint.  Mot. to Dismiss, *Zhang*, No. 24-cv-02531, ECF No. 24.  This motion

13   was also pending when the *Zhang* case was reassigned to this Court on August 21, 2024.

14         After the *Leovy* and *Zhang* cases were reassigned to this Court, the Court granted the

15   parties' stipulation to consolidate the cases for all trial and pretrial proceedings.  Joint Stip. &

16   Order Consolidating Cases, ECF No. 73.  The parties presented competing proposals with respect

17   to the pending motions to dismiss.  Defendants asked the Court to decide the pending motions.

18   Defs.' Status Report, ECF No. 75.  Plaintiffs asked the Court to deny the motions as moot, and to

19   grant leave to file a consolidated amended complaint.  Pls.' Status Report at 2, ECF No. 76.  Over

20   Defendants' objections, the Court terminated the motions to dismiss and granted Plaintiffs leave to

21   file a consolidated amended complaint.  However, the Court ordered the parties to first meet and

22   confer regarding Plaintiffs' anticipated amendments.  *See* Order Re: Consolidation Plan at 2, ECF

23   No. 77 ("Plaintiffs shall disclose all new parties, new claims, and new allegations not included in

24   either the *Leovy* second amended complaint or the *Zhang* complaint.").  The purpose of the meet-

25   and-confer process was to streamline further motion practice on the pleadings, and to account for

26   issues that Google raised in its motions to dismiss prior to consolidation.  *See id*. ("In finalizing

27   the consolidated amended complaint, Plaintiffs shall make substantial good-faith efforts to address

28   the issues Google raised at the conference and in prior motions to dismiss.").

1      On December 20, 2024, Plaintiffs filed the consolidated amended complaint.  The

2  operative complaint asserts two causes of action:  direct copyright infringement against Google,

3  Compl. ¶¶ 171-181, and vicarious copyright infringement against Alphabet, *id.* ¶¶ 182-195.

4  Defendants move to dismiss on various grounds discussed below.  Defendants also filed a motion

5  to strike class allegations, which the Court addressed in a separate order.  *See* Order Granting Mot.

6  to Strike Class Allegations, ECF No. 128.

7  **II.    LEGAL STANDARD**

8      Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails

9  to state a claim upon which relief can be granted.  To avoid dismissal, the plaintiff must allege

10  "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

11  550 U.S. 544, 570 (2007).  A claim is facially plausible when the pleaded facts allow the court

12  "to draw the reasonable inference that the defendant is liable for the misconduct alleged."

13  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When there are "two possible explanations, only one

14  of which can be true and only one of which results in liability, plaintiffs cannot offer allegations

15  that are 'merely consistent with' [its] favored explanation but are also consistent with the

16  alternative explanation."  *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th

17  Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).  "Something more is needed, such as facts tending to

18  exclude the possibility that the alternative explanation is true, in order to render plaintiffs'

19  allegations plausible within the meaning of *Iqbal* and *Twombly*."  *Id.* (citing *Twombly*, 550 U.S.

20  at 554).

21      For purposes of a Rule 12(b)(6) motion, the court generally "accept[s] factual allegations

22  in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

23  party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.

24  2008).  However, the court need not "assume the truth of legal conclusions merely because they

25  are cast in the form of factual allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011)

26  (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

27

28

United States District Court
Northern District of California

III.    **REQUEST FOR JUDICIAL NOTICE**

In ruling on a Rule 12(b)(6) motion, courts generally do not consider material outside the pleadings. *United States v. Corinthian Colls.*, 655 F.3d 984, 998 (9th Cir. 2011). However, courts may consider "documents incorporated in the complaint by reference[.]" *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Incorporation by reference "treats certain documents as though they are part of the complaint itself. The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken – or doom – their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). "[A] defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)).

Courts may also consider facts that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). But even under those circumstances, courts may not take judicial notice of materials for the purpose of creating a defense against the well-pleaded allegations in the complaint. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

Google asks the Court to consider seven exhibits in connection with its motion to dismiss. *See* Req. for Judicial Notice, ECF No. 96. Google's request is GRANTED as to Exhibits 1 through 3, GRANTED in part as to Exhibit 7, and DENIED as to Exhibits 4 through 6.

Plaintiffs do not dispute that Exhibits 1 through 3 are incorporated by reference in the complaint. These exhibits are copyright registrations for the works asserted by Plaintiff Andersen. Because a valid copyright registration is required for Andersen's copyright infringement claims, the complaint necessarily relies on these registrations. *See infra* Section IV.A.1. Additionally, Plaintiffs quote extensively from the registrations. *See* Compl. Ex. A at 8-12. Accordingly, the Court will consider Exhibits 1 through 3.

Exhibit 7 is an Alphabet 10-K form filed with the Securities and Exchange Commission. The Court may take judicial notice of this SEC filing because it is a publicly available document

whose accuracy cannot reasonably be questioned. *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1066-67 (N.D. Cal. 2010) ("The court is . . . permitted to take judicial notice of the content of relevant public disclosure documents required to be filed with the SEC."). However, the Court considers SEC filings "only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents." *Troy Grp., Inc. v. Tilson*, 364 F. Supp. 2d 1149, 1152 (C.D. Cal. 2005).  The Court will not consider Exhibit 7 for the purpose of disputing Plaintiffs' allegations regarding Alphabet's purported control of Google.

Exhibits 4 through 6 purport to be posts by Plaintiff Andersen on the social media platform X (formerly Twitter).  The Court may not take judicial notice of these posts because their accuracy can "reasonably be questioned," Fed. R. Evid. 201(b), and Plaintiffs dispute their authenticity, Opp. at 10, ECF No. 103.  Additionally, Google asks the Court to consider these posts for an improper purpose.  Specifically, Google argues that these exhibits show that Andersen published three of her asserted works on X before she registered them, meaning that her copyright registrations are invalid.  The Court may not consider these materials to create a defense to the well-pleaded allegations in the complaint.  *Khoja*, 899 F.3d at 1002.

## IV.    DISCUSSION

Defendants move to dismiss Plaintiffs' direct infringement claims on three grounds.  First, Defendants argue that Plaintiff Andersen fails to plausibly allege that each of her asserted works is covered by a valid copyright registration.  Second, Defendants argue that Plaintiffs improperly assert infringement of other unspecified works.  Third, Defendants argue that Plaintiffs fail to plausibly allege infringement as to certain generative AI models and products.  Defendants also move to dismiss Plaintiffs' claims for injunctive relief and Plaintiffs' vicarious copyright infringement claims against Alphabet.  The Court discusses these issues in turn.

### A.    Direct Copyright Infringement

#### 1.    Plaintiff Andersen's Works

Google's motion to dismiss challenges the direct infringement claims of just one named Plaintiff, Sarah Andersen.  Andersen asserts that six of her copyrighted works were used to train certain Google generative AI models.  Compl. ¶¶ 30-34.  Google argues that Andersen fails to

United States District Court
Northern District of California

plausibly allege that any of the asserted works is covered by a valid copyright registration.

"A threshold requirement of bringing a copyright suit is . . . that a plaintiff has registered the works at issue with the U.S. Copyright Office." *Logan v. Meta Platforms, Inc*., 636 F. Supp. 3d 1052, 1059 (N.D. Cal. 2022) (citing 17 U.S.C. § 411(a)). A copyright registration "is prima facie evidence of the validity of the copyright." *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co*., 747 F.3d 673, 683 (9th Cir. 2014). Once the fact of copyright registration is alleged, courts typically do not resolve the scope of a copyright registration's coverage at the pleading stage. *See, e.g.*, *AJ Mgmt. Consulting, LLC v. MBC FZ-LLC*, No. 13-cv-03213-BLF, 2014 WL 2878891, at *4 (N.D. Cal. June 24, 2014) ("[D]eciding the validity of Plaintiff's copyright registration would require the Court to make factual determinations . . . that are not appropriate on a Rule 12(b)(6) motion to dismiss.").

Here, Andersen plausibly alleges that each of her asserted works is covered by a valid registration, and she provides the copyright registration information for each asserted work. Compl. Ex. A at 8-12. This is sufficient at the pleading stage. *See Alaska Stock*, 747 F.3d at 684. In arguing that these allegations are insufficient, Google asks the Court to make inferences against well-pleaded allegations in the complaint and premature factual determinations based on material that is not subject to judicial notice.

Here, all of Andersen's copyright registrations are for compilations – that is, collections of preexisting materials. Mot. at 7. A compilation registration covers material contributed by the author that was not previously published. *Compendium of U.S. Copyright Office Practices* § 618.6 (3d ed. Jan. 28, 2021) ("Compendium"). Google argues that three of the registrations expressly state that the compilations include previously published materials that are excluded from coverage. Mot. at 8. But the registrations do not state that the works asserted *in this case* are among the previously published materials excluded from the copyright registration. The Court has no basis to infer that, because *some* materials in the compilation were previously published, the works asserted here were previously published. *See Manzarek*, 519 F.3d at 1031 (construing allegations in light most favorable to the plaintiff).

United States District Court
Northern District of California

1    Google also claims that Andersen previously published some of the asserted works on the

2    social media platform X, and therefore these works are not covered by the compilation

3    registrations either.  Mot. at 9-10.  This argument would require the Court to take judicial notice of

4    posts on X and X's terms of use to determine whether Andersen authorized other X users to make

5    copies of her works.  *See* Compendium § 1008.3(C) (explaining that publication requires "the

6    copyright owner [to] expressly or impliedly authorize users to make retainable copies," and

7    observing that "it is not always factually clear whether the placement of works online is intended

8    to be an authorized distribution").  This inquiry is too fact-bound at this stage.  As discussed

9    above, it is improper to take judicial notice of posts on X, especially for purposes of creating a

10   defense to the well-pleaded allegations of copyright registration in the complaint.  Google relies

11   on *Brunson v. Cook*, but that case observed in dicta – at the *summary judgment* stage – that the

12   plaintiff's work "was published when it was made available on YouTube, Instagram, and Twitter,

13   where it could be viewed and shared by the public."  No. 20-cv-011056, 2023 WL 2668498, at *8,

14   *13-14 (M.D. Tenn. Mar. 28, 2023).  The details of Andersen's posts, and whether the posts

15   constitute publication, may be revisited on a more complete record.  Accordingly, the Court

16   declines to dismiss Plaintiff Andersen's direct infringement claims.

17                **2.      Alleged Infringement of Unspecified Other Works**

18   Next, Defendants argue that Plaintiffs improperly assert infringement of "other works" not

19   expressly identified in the complaint.  Defendants acknowledge that each named Plaintiff

20   identifies specific works and traces these works to training datasets that Google allegedly used to

21   train specific generative AI models.  Mot. at 12; Compl. ¶¶ 17-113.  However, Defendants take

22   issue with Plaintiff's allegations that Google infringed "at least" these specified works, which

23   implies that Plaintiffs may assert other works too.  *See, e.g.*, Compl. ¶¶ 18, 31, 49, 68, 76, 90, 99.

24   At the pleading stage, particularly when the scope of the alleged infringement is wide-

25   ranging and not precisely known, it is permissible to plead infringement of representative works.

26   *Becton, Dickinson & Co. v. Cytek Bioscis. Inc.*, No. 18-cv-00933-MMC, 2020 WL 1877707, at *6

27   (N.D. Cal. Apr. 15, 2020); *see also Thunder Studios, Inc. v. Kazal*, No. 17-cv-00871-AB (SSx),

28   2018 WL 5099726, *3 (C.D. Cal. Mar. 22, 2018) (holding that allegations gave "fair notice of the

9

United States District Court
Northern District of California

1  works at issue" even though the list of works "might not be exhaustive"); *Joint Stock Co. Channel*

2  *One Russ. Worldwide v. Infomir LLC*, No. 16-cv-1318 (GBD) (BCM), 2017 WL 696126, at *14

3  (S.D.N.Y. Feb. 15, 2017) (holding that representative works are sufficient where claims are "based

4  on the alleged wholesale infringement of a large number of copyrighted works"), *R. & R. adopted*,

5  2017 WL 2988249 (S.D.N.Y. Mar. 26, 2017).  Here, Plaintiffs trace specific copyrighted works to

6  specific training datasets.[2]  These allegations put Google on notice of Plaintiffs' claims.

7  Accordingly, the Court will not dismiss Plaintiffs' claims as to other unspecified works.

### 3.     Insufficient Allegations as to Certain Models and Products

9  Defendants argue that Plaintiffs fail to plausibly allege copyright infringement with respect

10  to many of the generative AI models and Google products referenced in the complaint.  As to the

11  scope of the models and products at issue, Plaintiffs allege the following:

> The Generative AI Models include all versions, iterations, and relatives of Bard,
> Gemini, Imagen, PaLM, GLaM, LaMDA, Codey, Chirp, Veo, MedLM, LearnLM,
> SecLM, Gemma, CodeGemma, RecurrentGemma, PaliGemma.  The AI-Powered
> Products include all versions and iterations of Google Search, Google Cloud, Gmail,
> Google Docs, Google Ads, Google Slides, Chrome, YouTube, Google Photos,
> Google Sheets, Google Meet, Google Pixel, Google Maps, Google AI Studio, Google
> Vids, Google Workspace, and Vertex AI.

17  Compl. ¶ 105.  In Google's view, Plaintiffs' allegations "that a particular training dataset contains

18  Plaintiffs' works cannot open the door to discovery into any and all of Google's generative AI

19  models or products, where Plaintiffs have failed to make any allegations connecting those models

20  or products to Plaintiffs' works."  Mot. at 23.

21  The Court concludes that Plaintiffs plausibly allege copyright infringement as to the

22  following models:  PaLM, GLaM, LaMDA, Bard, Gemini, and Imagen.  Plaintiffs have identified

---

[2] Google relies on inapposite cases where the plaintiff failed to allege infringement of *a single* specific work.  *See* Mot. at 11-12.  Those cases are different because the plaintiffs did not provide defendants any notice of the specific copyrights asserted.  *DBW Partners, LLC v. Bloomberg, L.P.,* No. 19-311 (RBW), 2019 WL 5892489, at *3 (D.D.C. Nov. 12, 2019) (rejecting conclusory allegation that defendant infringed plaintiff's unspecified copyrighted work); *Livingston v. Morgan*, No. C-06-2389-MMC, 2006 WL 8459602, at *3 (N.D. Cal. July 31, 2006) (rejecting allegation that defendant infringed "at least one" of plaintiff's copyrights, without specifying a particular work).  Here, by contrast, every named Plaintiff meets the threshold requirement of plausibly alleging at least one instance of infringement as to specific copyrighted works.

United States District Court
Northern District of California

specific copyrighted works that were allegedly included in datasets used to train these models.

Compl. ¶¶ 19-20, 27, 31-32, 37-38, 45, 50-51, 56-57, 60, 64, 69-70, 72, 77-78, 83-84, 86, 91-92,

95, 122-128, 131 n.34, 132, 138, 144, 146, 148-150.  However, the Court concludes that Plaintiffs

fail to plausibly allege copyright infringement as to the other AI models referenced in the

complaint:  Codey, Chirp, Veo, MedLM, LearnLM, SecLM, Gemma, CodeGemma,

RecurrentGemma, and PaliGemma.  Plaintiffs do not allege any facts regarding these models at

all.  These models are referenced only one time in the complaint, in a long list of what appears to

be every generative AI model that Google has ever developed.  Because Plaintiffs do not allege

that any of their works were included in training datasets used to develop these models, Plaintiffs

do not plausibly allege copyright infringement.  *See Iqbal*, 556 U.S. at 678-79.  Accordingly, the

Court dismisses Plaintiffs' claims with respect to these models.[3]

### B.    Claim for Injunctive Relief

Google argues that Plaintiffs fail to plausibly allege two requirements for injunctive relief:

irreparable harm and the inadequacy of legal remedies.  Mot. at 13-15.  The Court disagrees.

Here, Plaintiffs allege that "Google's mass appropriation of literary works has depressed

the overall market" for fiction and nonfiction writers, illustrators, and cartoonists, thereby

"causing substantial harm to the commercial value of [Plaintiffs'] portfolio of works."  Compl.

¶¶ 29, 34, 47, 53, 66, 74, 80, 88, 97, 103; *see also id.* ¶ 157 (alleging that Google's copying

"diminished the value of [Plaintiff's] copyrights").  Plaintiffs claim that Google's infringement

creates "distinct categories of harm that resist traditional monetary remediation" and "monetary

damages cannot prevent the threat of future infringement."  Compl. ¶ 181.  Plaintiffs also allege

---

[3] By contrast, Plaintiffs' allegations regarding Google products do not create the same problematic ambiguity as to the scope of Plaintiffs' claims.  Here, the copyright infringement allegedly occurs when training the generative AI models.  Plaintiffs do not allege that Google's *products* infringe their copyrights – for example, by reproducing the works in response to user prompts.  Likewise, the proposed class is defined in terms of the models at issue, not in terms of Google products.  *See* Opp. to Mot. to Strike Class Allegations at 3, ECF No. 105 (defining the proposed class in terms of persons "who owned a United States copyright in any work used by Google to train Google's Generative AI Models").  The Court also declines to strike these allegations because they are not necessarily impertinent.  *See* Fed. R. Civ. P. 12(f).  Google's alleged use of its generative AI models in certain products may be relevant to the commercial nature of Google's use, which may inform the fair use analysis at a later stage of the case.

that they "have no adequate remedy at law." Compl. ¶ 195. These allegations are sufficient at this stage. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 865-66 (9th Cir. 2017) (finding evidence of irreparable harm where infringement "undermine[d] the value" of copyrighted works). "[T]he propriety of injunctive relief in cases arising under the Copyright Act must be evaluated on a case-by-case basis[.]" *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 980-81 (9th Cir. 2011). Because Plaintiffs plausibly allege the risk of future copyright infringement, and because the alleged market harms and diminution in value may be difficult to quantify, it would be premature to preclude Plaintiffs from seeking injunctive relief.

Google relies on inapposite cases to support early dismissal. In *Sonner v. Premier Nutrition Corp.*, the operative complaint did not allege that the plaintiff lacked an adequate legal remedy at all – and, "[m]ore importantly," the plaintiff conceded that she sought "the same sum in equitable restitution . . . as she requested in damages to compensate her for the same past harm." 971 F.3d 834, 844 (9th Cir. 2020). Here, there is no indication that Plaintiffs' requested injunctive relief is identical to their damages claim. Likewise, in *Philips v. Ford Motor Co.*, the Ninth Circuit held only that the plaintiffs "were required to plead the inadequacy of their legal remedies to state a claim for injunctive relief." 726 F. App'x 608, 609 (9th Cir. 2018); *see also Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869, 875 (N.D. Cal. 2021) (collecting cases). But that is precisely what Plaintiffs have done here. Because Plaintiffs plausibly allege potential entitlement to injunctive relief, the Court declines to dismiss on this basis.

### C.    Vicarious Copyright Infringement

Plaintiffs claim that Alphabet is vicariously liable for Google's alleged direct copyright infringement. Generally, to state a claim for vicarious copyright infringement, "a plaintiff must allege that the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Perfect 10 v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007) (citing *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004)). The first element requires that the defendant "has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007).

United States District Court
Northern District of California

United States District Court
Northern District of California

In this section, the Court initially holds that Plaintiffs fail to plausibly allege the first element of vicarious liability – that Alphabet had the practical ability to limit Google's direct infringement.  Next, the Court addresses Plaintiffs' argument that Alphabet is vicariously liable because it had "control authority" over the infringing conduct as Google's parent company.  *See* Opp. at 15-17.  The Court concludes that vicarious copyright infringement claims are subject to the bedrock principle of corporate law that a parent company is not liable for a subsidiary's acts based solely on the parent-subsidiary relationship.  Here, Plaintiffs allege nothing more than a typical parent-subsidiary relationship, thus Plaintiffs' vicarious copyright infringement claims fail for this additional reason.  Because Plaintiffs' failure to allege the first element is dispositive, the Court does not reach the second element – Alphabet's direct financial interest in infringement.

### 1.    Legal Right and Practical Ability to Control Direct Infringement

The standard for vicarious copyright infringement emerged from cases where the defendant exerted control over the physical space where direct infringement occurred.  *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 261-62 (9th Cir. 1996).  For example, in *Fonovisa*, the plaintiff sued "the operators of a swap meet . . . where third-party vendors routinely [sold] counterfeit recordings that infringe on the plaintiff's copyrights."  *Id*. at 260.  The Ninth Circuit held that the swap meet operator could be held vicariously liable because it wielded sufficient control over the direct infringers by renting out booth space and retaining the right "to exclude any vendor for any reason, at any time."  *Id*. at 261, 263.  Additionally, the operator patrolled the premises of the swap meet, and even shared information about the vendors with local law enforcement, which conducted a raid and "seized more than 38,000 counterfeit recordings."  *Id.* at 261-62.  Thus, in *Fonovisa*, vicarious liability was established by the defendant's control over the physical space where the infringement occurred, and its practical ability to police that space.  *Id.*

In more recent cases, the Ninth Circuit has applied this standard – the right to control the space and the ability to police and stop conduct in that space – to operators of online platforms, services, and websites.  These cases are conceptually similar to *Fonovisa*, but they raised new questions regarding a defendant's legal right and practical ability to control direct infringement in digital environments.  The defendant's vicarious liability often turned on the technological

1   feasibility of detecting and stopping direct infringement by third-party users of the operator's

2   platform or service.

3        For example, in *Napster*, the plaintiffs sued the operator of a peer-to-peer file sharing

4   service for facilitating "the transmission of MP3 files between and among its users."  *A&M*

5   *Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1013 (9th Cir. 2001).  The Ninth Circuit held that

6   "Napster had the right and ability to police its system and failed to exercise that right to prevent

7   the exchange of copyrighted material."  *Id*. at 1023-24.  Specifically, Napster had "both the ability

8   to use its search function to identify infringing musical recordings and the right to bar participation

9   of users who engage in the transmission of infringing files."  *Id*. at 1027.  However, the Ninth

10  Circuit recognized that Napster's practical ability to control direct infringement was limited by

11  "the limits of [its] system."  *Id*.  That is, Napster's ability to search for infringing works was

12  limited by the fact that users named the MP3 files and Napster could not access the files to

13  determine their true content.  *Id*. at 1012, 1027.  Accordingly, the Ninth Circuit instructed the

14  district court to modify its preliminary injunction to account for Napster's limited ability to detect

15  infringement.  *Id*. at 1027.

16       The Ninth Circuit has applied similar reasoning in other digital copyright infringement

17  cases.  For example, in *Perfect 10, Inc. v. Amazon.com, Inc.*, third-party websites published

18  plaintiff's copyrighted images, and Google indexed and stored those images in a database that

19  powered its search engine.  508 F.3d at 1155-57.  The Ninth Circuit held that Google did not have

20  a legal right "to stop direct infringement by third-party websites," and without image-recognition

21  technology, Google also lacked "the practical ability to police the infringing activities."  *Id*. at

22  1173-74.  Similarly, in *VHT, Inc. v. Zillow Group, Inc.*, the plaintiff asserted a vicarious

23  infringement claim against Zillow, an online real estate marketplace, based on "photos that users

24  saved or uploaded" to one of Zillow's websites.  918 F.3d 723, 730-31, 746 (9th Cir. 2019).  The

25  vicarious infringement claim failed because the plaintiff produced insufficient evidence that

26  "Zillow had the technical ability to screen out or identify" plaintiff's infringed works.  *Id*. at 746.

27  "Once [plaintiff's] photos were uploaded . . . ferreting out claimed infringement . . . was beyond

28  hunting for a needle in a haystack."  *Id*.

United States District Court
Northern District of California

1    Applying these principles here, Plaintiffs do not plausibly allege that Alphabet had the

2    practical ability to stop or limit Google's alleged direct infringement.  Here, the direct

3    infringement is Google's use of training datasets that allegedly included copyrighted works.  But

4    Plaintiffs do not allege *any* facts regarding Alphabet's involvement in the training process.[4]  For

5    example, Plaintiffs do not allege that Alphabet instructed Google how to select a training dataset

6    or which training datasets to use.  Plaintiffs also do not allege that Alphabet oversaw any part of

7    the training process or required Google to obtain its approval during the training process.

8    Plaintiffs offer the conclusory allegation that Alphabet had the "authority to implement

9    copyright compliance measures."  Compl. ¶¶ 184, 188.  But, at most, this allegation about

10   "authority" speaks to Alphabet's alleged right to control Google generally.[5]  Plaintiffs fail to

11   address the separate requirement that Alphabet had the *practical ability* to stop or limit

12   infringement during the model training process.  *See Amazon.com*, 508 F.3d at 1173-74.  Plaintiffs

13   do not allege any "copyright compliance measures" that Alphabet could have implemented, or

14   how they would function.  *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir.

15   2013) (affirming dismissal where plaintiff "failed to allege facts that plausibly show that the

16   [defendants] could implement an effective system" to police infringement).  Plaintiffs do not

17   allege any facts regarding Alphabet's technological ability to search for or recognize Plaintiffs'

18   works during Google's selection or use of these massive training datasets that were compiled by

19   *third parties*.[6]  *See Amazon.com*, 508 F.3d at 1173-74 (defendant lacked image-recognition

20   technology to identify infringing works); *Zillow*, 918 F.3d at 746 (defendant lacked "the technical

21

---

22   [4] The Court does not suggest that direct participation is required for vicarious infringement.
23   Rather, the lack of allegations regarding Alphabet's involvement in the training process further
     undermines Plaintiffs' assertion that Alphabet had the practical ability to control Google's alleged
     infringement.

24   [5] Plaintiffs also conflate the control that any parent company may exercise over its subsidiary with
25   the right and practical ability to supervise infringing conduct.  None of the Ninth Circuit cases
     discussed above addressed or endorsed this expansive view of vicarious liability.  As discussed in
26   the next section, Plaintiffs' theory risks creating unprecedented automatic vicarious liability
     whenever a parent company fails to stop a subsidiary's independent wrongful acts.

27   [6] The C4 dataset (which is included in the Infiniset dataset) is a "filtered version of the Common
     Crawl dataset," which is a "freely available collection of web crawl data" created by a third party.
28   Compl. ¶¶ 123-124.  Likewise, the LAION datasets were created by another third party, the Large-
     Scale Artificial Intelligence Open Network.  *Id*. ¶¶ 138, 144.

1    ability to screen out or identify" plaintiffs' infringed works); *cf. Napster*, 239 F.3d at 1027

2    (defendant had "the ability to use its search function to identify infringing" materials).  Plaintiffs

3    therefore fail to plausibly allege that Alphabet had the practical ability to police Google's alleged

4    direct infringement.  Accordingly, Plaintiffs' claims against Alphabet must be dismissed.

**2.    Limitations on Parent-Subsidiary Liability**

6    Plaintiffs also argue that Alphabet is vicariously liable by virtue of its "*inaction* despite

7    [the] control authority" that it possesses as Google's parent company.  Opp. at 17.  In other words,

8    Plaintiffs argue that Alphabet should be held liable not for its own misconduct, but for its mere

9    failure to stop its subsidiary's misconduct.  This expansive view of copyright infringement

10   liability is irreconcilable with the bedrock principle of corporate law "that a parent corporation

11   (so-called because of control through ownership of another corporation's stock) is not liable for

12   the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).  If adopted,

13   Plaintiffs' theory risks creating automatic vicarious liability "solely because of the parent-

14   subsidiary relationship." *Banff Ltd. v. Limited, Inc.*, 869 F. Supp. 1103, 1107 (S.D.N.Y. 1994);

15   *see also Dauman v. Hallmark Card, Inc.*, No. 96 Civ. 3608 (JFK), 1998 WL 54633, *7 (S.D.N.Y.

16   Feb. 9, 1998).

17   The Court finds no basis in the Copyright Act or case law to hold a parent company

18   vicariously liable solely due to the parent-subsidiary relationship.  Nothing in the Copyright Act

19   suggests that Congress sought to expand liability in copyright cases beyond the normal bounds of

20   corporate law.  *Cf. Bestfoods*, 524 U.S. at 61 (holding that "congressional silence" against the

21   "venerable common-law backdrop" of corporate liability counsels against an expansive

22   interpretation of statutory liability).  Indeed, the Copyright Act itself "does not expressly impose

23   liability on anyone other than direct infringers[.]" *Fonovisa*, 76 F.3d at 261; *see also Sony Corp.*

24   *v. Universal City Studios, Inc.*, 464 U.S. 417, 435 (1984).  Rather, vicarious liability for copyright

25   infringement has developed in the case law as an outgrowth of "the agency principles of

26   respondeat superior." *Fonovisa*, 76 F.3d at 261-62; *see also Napster*, 239 F.3d at 1022.

27   Therefore, the Court holds that liability for vicarious copyright infringement is subject to general

28   limitations on parent-subsidiary liability.

16

*United States District Court*
*Northern District of California*

1    Relevant here, a parent company may not be held vicariously liable for direct infringement

2    by its subsidiary solely by virtue of the ordinary control that any parent company may exercise

3    over its subsidiary.  *See Bestfoods*, 524 U.S. at 61; *see also Katzir's Floor & Home Design, Inc. v.*

4    *M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) ("The mere fact of sole ownership and control

5    does not eviscerate the separate corporate identity that is the foundation of corporate law.").[7]  The

6    ordinary control that a parent company may exercise over its subsidiary includes electing the

7    subsidiary's directors, making its by-laws, and establishing the subsidiary's general policies and

8    procedures.  *Bestfoods*, 524 U.S. at 61-62, 72; *Ranza*, 793 F.3d at 1073-74.

9    Here, Plaintiffs' allegations do not establish that Alphabet exercised greater control over

10    Google than any parent company may exercise over its subsidiary.  Plaintiffs' allegations fall into

11    two categories:  (1) facts regarding the corporate relationship between Alphabet and Google, and

12    (2) facts suggesting that Alphabet exercised "strategic oversight" regarding AI development

13    generally.  These allegations do not plausibly allege that Alphabet is vicariously liable for

14    Google's alleged infringement by training its AI models using datasets that contained Plaintiffs'

15    works.

16    With respect to the first category of allegations – Alphabet's relationship to Google –

17    Plaintiffs fail to allege any facts that support parent company liability.  Plaintiffs allege that

18    Alphabet and Google have "intertwined executive leadership."  Compl. ¶ 110.  Specifically,

19    "Sundar Pichai serves as both CEO of Alphabet and CEO of Google LLC," *id*. ¶ 107, and the two

20    companies share "executive officers, including the Chief Financial Officer and Chief Investment

21    Officer," *id*. ¶ 184.  But "it is entirely appropriate for directors of a parent corporation to serve as

22

23    ――――――――――――――

24    [7] Of course, a parent company may be directly liable under an "alter ego" theory when the
subsidiary is a mere instrumentality of the parent company, rather than a separate corporate
personality.  *Ranza v. Nike*, 793 F.3d 1059, 1073-74 (9th Cir. 2015).  Alter ego liability applies

25    where the parent company exercises "pervasive control" and "dictates every facet of the
subsidiary's business – from broad policy decisions to routine matters of day-to-day operation."

26    *Id*. (quotation omitted).  A parent company also may be directly liable when "the alleged wrong
can seemingly be traced to the parent through the conduit of its own personnel and management'

27    and 'the parent is directly a participant in the wrong complained of.'"  *Bestfoods*, 524 U.S. at 64
(quotation omitted).  Plaintiffs do not expressly invoke or plausibly allege facts to support either

28    theory.  Instead, Plaintiffs allege an ordinary parent-subsidiary relationship, and they fail to allege
that Alphabet had any direct or indirect involvement in Google's training of generative AI models.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to

2    liability for its subsidiary's acts." *Bestfoods*, 524 U.S. at 69 (quoting *Am. Protein Corp. v. AB*

3    *Volvo*, 844 F.2d 56, 57 (2d Cir. 1988)).  Plaintiffs also allege that Alphabet and Google "share[]

4    financial incentives," *id.* ¶ 110, but that, too, is true of any parent company and its wholly owned

5    subsidiary, *see Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 777 (1984) ("A parent and

6    its wholly owned subsidiary have a complete unity of interest.").  These allegations are insufficient

7    as a matter of law to establish vicarious liability as to Alphabet.

8            With respect to the second category of allegations, Plaintiffs allege that Alphabet

9    "exercises direct oversight and control over Google's AI business and development activities."

10   Compl. ¶ 104.  But, to be clear, Plaintiffs do not allege that Alphabet had any direct or indirect

11   role in Google's training of the generative AI models at issue in this case.  *Cf. id.* ¶¶ 17-103, 113-

12   162 (alleging that Google selected the relevant datasets and trained the generative AI models).

13   Instead, Plaintiffs allege that Alphabet was responsible for "strategic" direction and oversight on

14   AI issues generally.  *Id.* ¶¶ 106, 108, 184, 188-189, 191.  Plaintiffs allege that Alphabet

15   "orchestrat[ed] the merger" of Google Brain with DeepMind.  *Id.* ¶¶ 107-108, 184.  Plaintiffs also

16   allege that Alphabet has shaped "its subsidiaries' operations to accelerate AI research and

17   development" and to integrate AI into core Google products.  Compl. ¶¶ 106-108, 184.  These

18   allegations describe the type of high-level control that a parent company commonly exerts over a

19   subsidiary's corporate structure and general policies.[8]  *See Bestfoods*, 524 U.S. at 72.

20   Accordingly, these allegations are also insufficient for vicarious copyright infringement.

21           Because Plaintiffs allege nothing more than a typical parent-subsidiary relationship, the

22   Court does not take up Defendants' request to apply the standard set forth in *Frank Music Corp. v.*

23

24   ───────────────

25   [8] Plaintiffs also improperly attribute control over Google's "strategic operations" to Alphabet
     based on actions by Mr. Pichai, who leads both companies.  *See, e.g.*, Compl. ¶¶ 106-108, 110,
     184.  Generally, when a corporate officer holds positions at both a parent company and a

26   subsidiary, courts presume that the officer acts on behalf of the subsidiary when acting *for* the
     subsidiary.  *Bestfoods*, 524 U.S. at 69-70.  In light of this presumption, Plaintiffs needed to allege

27   "facts tending to exclude the possibility" that Pichai and other joint officers were acting on
     Google's behalf.  *In re Century Aluminum*, 729 F.3d at 1108.  Absent these allegations, the Court

28   cannot infer that Alphabet is liable merely because Pichai and other dual officers allegedly made
     policy decisions for Google.  *See Bestfoods*, 524 U.S. at 69-70.

United States District Court
Northern District of California

*Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505 (9th Cir. 1985) ("*Frank I*").  In that case, the MGM Grand Hotel was found liable for direct copyright infringement of five songs that it used in a musical revue.  *Id*. at 509.  In a section of the opinion titled "Liability for Joint Infringers," the Ninth Circuit held that the parent company, MGM Inc., may also be held liable if there was a "substantial and continuing connection" between the two companies "with respect to the infringing acts."  *Id*. at 519-20; *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1553-55 (9th Cir. 1989) ("*Frank II*") (noting that MGM Inc. knew whether the works could be used, provided clearance to use the infringing works, and "actively consulted with" and "assisted" the subsidiary).  However, *Frank* did not expressly involve a claim of vicarious infringement, but rather an unspecified theory of liability for "joint infringers."  *Frank I*, 772 F.2d at 519-20.  Because MGM Inc. was actively involved in the infringing conduct itself, *Frank* is closer to a contributory infringement case.  *See Frank II*, 886 F.2d at 1553-55; *see also Visa*, 494 F.3d at 795 (discussing requirements for contributory infringement liability).  The Nimmer treatise – relied upon by the Ninth Circuit in articulating the standard in *Frank I* – cautions courts not to blur these distinct theories of indirect liability.  3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.04[A] (2025).  Heeding that guidance, the Court does not resolve whether the *Frank* standard applies here.[9]

***

In sum, the Court holds that Plaintiffs fail to plausibly allege that Alphabet had the practical ability to stop or limit Google's alleged direct infringement.  Therefore, Plaintiffs fail to state a claim against Alphabet for vicarious liability.  The Court also holds that a parent company cannot be held vicariously liable merely based on the ordinary control that a parent company exercises over its subsidiary.  Here, Plaintiffs fail to allege more than a typical parent-subsidiary relationship.  Accordingly, Plaintiffs' claims for vicarious infringement are dismissed.

---

[9] To the extent that the *Frank* standard applies, Plaintiffs have not met it.  Plaintiffs fail to allege any involvement by Alphabet in Google's training of the generative AI models at issue, let alone a substantial and continuing connection between Alphabet and Google with respect to the alleged infringement.

**D.**      **Dismissal is Without Leave to Amend**

The Court finds that Plaintiffs' direct infringement claims as to certain models, and Plaintiffs' vicarious infringement claims, should be dismissed with prejudice and without leave to amend.  In making this determination, the Court considers factors such as "undue delay, bad faith or dilatory motive on the part of the [Plaintiffs], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The Court also considers "the number of times the plaintiff has already been allowed to amend." *Schwartz v. Miller*, --- F.4th ---, No. 23-1343, 2025 WL 2473008, at *9 (9th Cir. Aug. 28, 2025). Although the Court does not find bad faith or dilatory motive, all other factors weigh in favor of denying leave to amend.

First, Plaintiffs have failed to cure pleading deficiencies despite several previous opportunities to amend.  Before the cases were reassigned to this Court, Judge Martínez-Olguín dismissed the *Leovy* complaint and granted leave to amend to cure pleading deficiencies.  ECF No. 46.  After the cases were consolidated, this Court granted leave to amend once again – over Defendants' objections.  ECF No. 77.  In doing so, the Court required the parties to engage in a substantial, multi-stage meet and confer process so that Plaintiffs could address Defendants' prior motion-to-dismiss arguments in crafting their consolidated amended complaint.  Despite these opportunities to amend, Plaintiffs failed to cure pleading deficiencies for the reasons discussed above.

Second, the Court finds that further leave to amend would be futile in light of the previous opportunities to amend and Plaintiffs' failure to cure pleading deficiencies.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009), *as amended* (Feb. 10, 2009) (holding that failure to correct pleading deficiencies after dismissal is a "strong indication" that further amendment would be futile); *see also Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) ("A district court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended." (quoting *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996))).

1    Moreover, Plaintiffs failed to identify any facts that could save the dismissed claims, which

2    further demonstrates that amendment would be futile.  *See* Opp. at 24 (requesting leave to amend

3    without identifying any potential amendments).  In advance of the motion hearing, the Court sent a

4    tentative ruling to the parties, indicating that it was inclined to deny leave to amend.  The Court

5    invited Plaintiffs to explain why leave to amend should be granted.  At the hearing, Plaintiffs first

6    argued that paragraphs 115 to 119 of the complaint allege that Google "employs consistent

7    training methodologies across its models."  4/23/25 Hr'g Tr. 21:11-13, ECF No. 132.  But these

8    allegations only refer to Gemini and Bard – they do not state that any other model was trained on

9    the same or similar datasets that include copyrighted works.  Plaintiffs also cited paragraph 128,

10    but that allegation states only that "Google's Infiniset (which encompassed C4) was a foundational

11    dataset used to train Bard, Gemini's predecessor."  Compl. ¶ 128.  Again, this allegation does not

12    permit any inference that other generative AI models were trained on copyrighted works.

13    Finally, as a last resort, Plaintiffs cited their conclusory allegations that Defendants

14    "engaged in a knowing and active fraudulent concealment" that prevented Plaintiffs from knowing

15    which models were trained on which datasets.  *Id.* ¶¶ 158-162.  However, Plaintiffs do not allege

16    any acts of fraudulent concealment, and the complaint is replete with citations to academic

17    articles, white papers, and other public sources in which Google explains in detail how it trained

18    various generative AI models.  Plaintiffs' conclusory allegations are insufficient to permit wide-

19    ranging claims of copyright infringement.[10]  It bears repeating that Plaintiffs' infringement claims

20    as to many of the models are not supported by a *single* factual allegation.  Accordingly, given the

21    complete lack of supporting factual allegations, Plaintiffs' direct copyright infringement claims are

22    dismissed with prejudice as to the following models:  Codey, Chirp, Veo, MedLM, LearnLM,

23    SecLM, Gemma, CodeGemma, RecurrentGemma, PaliGemma.

24    _____

25    [10] Plaintiffs cite *Soo Park v. Thompson* for the proposition that a complaint is entitled to leniency "where the facts are peculiarly within the possession and control of the defendant."  851 F.3d 910,

26    928 (9th Cir. 2017).  But *Soo Park* held that, in such circumstances, a plaintiff may plead facts on "information and belief."  *Id.*  It did not hold that a claim may be sustained absent any supporting

27    factual allegations.  Here, Plaintiffs do not allege infringement as to Codey, Chirp, or any of the other extraneous models based on information and belief.  *Cf.* Compl. ¶¶ 128-131 (alleging, based

28    on "information and belief," that Google trained Gemini using copyrighted works).  Accordingly, the Court cannot infer that any factual basis exists for these claims.  *See* Fed. R. Civ. P. 11(b)(3).

United States District Court
Northern District of California

Finally, the Court finds that granting further leave to amend would unduly prejudice Defendants.  This case has been pending for more than two years.  The parties have engaged in extensive motion practice at the pleading stage – including three motions to dismiss in the *Leovy* action, one motion to dismiss in the *Zhang* action, and the present motion to dismiss.  Substantial judicial and party resources have been spent on discovery.  *See* Order Amending Case Schedule, ECF No. 197.  The pleadings must be settled *now* to focus the parties' efforts in this massive and complex case.  Permitting Plaintiffs to amend once more would be unduly burdensome on Defendants and would further delay resolution of this important matter.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs' direct infringement claims relating to the following generative AI models are DISMISSED with prejudice:  Codey, Chirp, Veo, MedLM, LearnLM, SecLM, Gemma, CodeGemma, RecurrentGemma, and PaliGemma.  Compl. ¶ 105.  Plaintiffs' claims for vicarious copyright infringement against Alphabet are also DISMISSED with prejudice.

Within 14 days of this Order, Plaintiffs shall file a second amended consolidated complaint to amend the class definition, and to make any necessary and related conforming edits, consistent with the Court's Order on Google's motion to strike class allegations.  *See* ECF No. 128.  Plaintiffs may not add any new claims, parties, or other allegations in the amended complaint.  Plaintiffs shall also file a redline comparing the new complaint to the previously-filed one.

Within 21 days after Plaintiffs file the second amended consolidated complaint, Google shall file its answer.

**IT IS SO ORDERED.**

Dated: September 11, 2025

_____
Eumi K. Lee
United States District Judge