Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
**BLEICHMAR FONTI & AULD LLP**
1330 Broadway, Suite 630
Oakland, CA 94612
Tel. (415) 445-4003
lweaver@bfalaw.com
adavis@bfalaw.com
jsamra@bfalaw.com

Gregory S. Mullens (admitted *pro hac vice*)
**BLEICHMAR FONTI & AULD LLP**
75 Virginia Road, 2nd Floor
White Plains, NY 10603
Tel. (415) 445-4006
gmullens@bfalaw.com

Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Elissa A. Buchanan (SBN 249996)
Evan A. Creutz (SBN 349728)
Aaron Cera (SBN 351163)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone:    (415) 500-6800
Facsimile:    (415) 395-9940
Email:        jsaveri@saverilawfirm.com
              czirpoli@saverilawfirm.com
              cyoung@saverilawfirm.com
              eabuchanan@saverilawfirm.com
              ecreutz@saverilawfirm.com
              acera@saverilawfirm.com

*Plaintiffs' Interim Co-Lead Counsel*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| *In re Google Generative AI Copyright Litigation* | Master File Case No. 5:23-cv-03440-EKL-SVK<br>Consolidated Case No. 5:24-cv-02531-EKL-SVK<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO AMEND CASE SCHEDULE**<br><br>Judge:      Hon. Eumi K. Lee<br>Date:       November 5, 2025<br>Time        10:00 A.M.<br>Courtroom:  7, Fourth Floor |

**REDACTED VERSION OF DOCUMENT
SOUGHT TO BE SEALED**

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................................3

I.      INTRODUCTION ..............................................................................................................3

II.     RELEVANT BACKGROUND .........................................................................................3

       A.     Google Fails to Timely Produce Complete Training Data and Alters Training Data in the Review Environment Without Informing Plaintiffs.........................................................4

       B.     Google's Unstable Environment Has Cost Plaintiffs Approximately 200 Hours of Access Time and Significant Lost Work ...............................................................................6

III.    GOOD CAUSE EXISTS TO AMEND THE CASE SCHEDULE ...................................7

       A.     Notwithstanding Plaintiffs' Diligence, the Case Schedule Cannot Reasonably Be Met.....8

       B.     Google Will Not Be Prejudiced by a Modification of the Case Schedule.........................10

IV.    CONCLUSION..................................................................................................................10

# NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on November 5, 2025 at 10:00 a.m. in Courtroom 7, Fourth Floor, of this Court, located at 280 South First Street, San Jose, California, Plaintiffs will and hereby do move the Court for an Order extending the pretrial schedule and trial date by six weeks to enable the completion of necessary discovery and expert analysis required for class certification. This Motion is made pursuant to Fed. R. Civ. P. 16, Civil Local Rule 16-10, and this Court's inherent authority to manage its cases.

Good cause exists for the requested extension. *See also* ECF No. 208 (Motion to Enforce Discovery Order and to Appoint a Special Master Pursuant to Rule 53). Plaintiffs have diligently pursued the training data discovery that necessitates this request. Despite these efforts, Defendant Google LLC and Defendant Alphabet, Inc. (together, "Google") have: (i) failed to provide timely and functional access to the training data remote environment that it selected and controls; (ii) failed to provide ▒▒▒▒▒▒▒▒▒▒ necessary to identify pirated and copyrighted material; (iii) unilaterally altered the contents of the training data in the environment without prior notice and in the midst of Plaintiffs' experts' confidential review; and (iv) failed to comply with the training data review protocol, by not timely making available to Plaintiffs' experts the results of their analyses and raising new technical limitations to the takeout process. Taken together, these complications have locked Plaintiffs experts out of the training set, preventing them from analyzing the data, for approximately 200 hours. Compounding the locked-out problem, the changes to the dataset requires Plaintiffs' experts to re-do work the work they have been engaged in for the past two months. Plaintiffs' experts estimate that they need six weeks to complete their analysis. In this context, Plaintiffs' request is extremely aggressive, and assumes there will be no more lockouts or withheld data.

In an effort to address these issues, Plaintiffs filed a motion before Magistrate Judge van Keulen on September 8, 2025, seeking enforcement of the June 18, 2025 discovery order requiring production of training data by June 23, 2025. On September 11, 2025, the Court held a remote hearing with the Parties during which the Court heard argument on Plaintiffs' Motion to Enforce. Plaintiffs appreciate the practical solutions ordered September 11, 2025, including (1) shortening the takeout process (to 3 days from 5); the (2) that a technical call between Google and Plaintiffs' experts take place within 2-business days, and (3) ordering Google to investigate and solve the system freeze-out problem. These solutions, once

implemented, should remove the obstacles that have hampered Plaintiffs to-date; however the issue remains that Plaintiffs have been prejudiced by the delays to expert analyses caused by Google's initial production of training data in a format incompatible with the tools Google made available, the subsequent delayed production of training data and the ongoing lockout issues. To remedy that prejudice, Plaintiffs seek an Order extending the pretrial schedule and trial date by six-weeks to enable the completion of expert analysis before Plaintiffs' class certification motion is due.

Plaintiffs have met and conferred with Google in an effort to reach an agreement on an amended case schedule. Google opposes an extension of the schedule beyond three weeks (and only for class certification-related deadlines). Plaintiffs respectfully submit that a six-week extension to the full case schedule is proper.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Pursuant to Fed. R. Civ. P. 16, Civil Local Rule 16-10, and this Court's inherent authority, and for the reasons set forth below and in the accompanying Declaration of Stephen J. Teti ("Teti Decl."), Plaintiffs seek to extend the case schedule by six weeks. Plaintiffs' diligent pursuit of training data discovery, including working through the host of issues with Google's review environment, the present case schedule is unworkable because, as set forth herein and in Plaintiffs' Motion to Enforce Discovery Order and to Appoint a Special Master Pursuant to Rule 53 (ECF No. 208), Google has (i) failed to provide timely and functional access to the training data remote environment that it selected and controls; (ii) failed to provide ▮▮▮▮▮▮▮▮▮▮ necessary to identify pirated and copyrighted material; (iii) unilaterally altered the contents of the training data in the environment without prior notice and in the midst of Plaintiffs' experts' confidential review; and (iv) failed to comply with the training data review protocol, by not timely making available to Plaintiffs' experts the results of their analysis, and imposing new limitations on the ability of Plaintiffs' experts to remove and review their work product from the review environment. While Magistrate Judge van Keulen's intervention on September 11, 2025 and ruling earlier today may eliminate future exigencies, Plaintiffs must still bring this motion to remedy the issues caused by the earlier issues considering the present case schedule deadlines and urgency of the matter.

**II.    RELEVANT BACKGROUND**

The proposed class is defined as: "All persons or entities domiciled in the United States who owned a United States copyright in any work used by Google to train Google's Generative AI Models during the Class Period." ECF No. 107 at 3:17–18. Training data is (1) key evidence demonstrating Google's systematic use of copyrighted works to train its AI models across the entire class, and (2) direct evidence of which copyrighted works Google used—making Plaintiffs' timely access to accurate and complete training data indispensable for Plaintiffs' class certification motion. Nearly three months ago, at the June 18 hearing, Plaintiffs informed the Court of persistent issues concerning access to the training data necessary for Plaintiffs' class certification motion that Google had unilaterally chosen to produce in a remote access environment that it controlled and hosted. At that time, the Court ordered that the training datasets be made available by the week of June 23, 2025, based on Google's explicit representations at the

hearing that (1) the data would be accessible via a remote environment within one week of the hearing (June 18, 2025 Hr'g Tr. at 32:11–12: "I'm not aware of a reason" why access couldn't begin next week), and (2) the datasets would contain **complete content and metadata** (*id.* at 29:22–25). These dates were not honored. In fact, critical data was withheld until September 3, 2025. Only on September 12, 2025, did Google conclusively confirm that all agreed upon information was produced in a manner actually accessible and readable to Plaintiffs' experts. For the reasons set forth herein, because Google's actions have excluded Plaintiffs' experts from the datasets necessary to trace how Google trained its AI on copyrighted and pirated material, Plaintiffs seek a case extension of six weeks, based on extensive record and the sworn declarations of those experts as to what has occurred.

        **A.**      **Google Fails to Timely Produce Complete Training Data and Alters Training Data in the Review Environment Without Informing Plaintiffs.**

Despite Google's promises and the Court's Order, Plaintiffs did not gain access to complete training data on June 23, 2025. Initial access was not provided until July 3, because Google failed to timely provision user credentials or provide adequate instruction to set up the Google-provided Chromebooks. ECF No. 174-1 ¶¶ 7–10, Google required to access the remote training data review environment through those Chromebooks, and Plaintiffs and their experts had no ability to troubleshoot, as Google was and is the sole source of technical support. Even then, Plaintiffs and their experts were unable to analyze the training data. This is because the environment Google provided would not allow Plaintiffs' experts to employ commonly-used and standard analytical tools such as Google's BigQuery. ECF Nos. 174-1 ¶¶ 11–14; 186-2 ¶¶ 4–12. Plaintiffs promptly raised this issue with the Magistrate Judge. To address these and other issues, on July 10, 2025, the Court ordered that Google provide access to their engineers and technical personnel. July 10, 2025 Hr'g Tr. at 45:9–19.

Despite the Order, Google did not make its technical personnel available to confer with Plaintiffs' experts until July 29, 2025. Teti Decl. ¶ 3; McCarron Decl. ¶ 9. Thus, during those two weeks, Plaintiffs' experts could not analyze the data. On that call, Google's engineers declined to provide access to BigQuery, despite that this is the tool the Parties had discussed for weeks during training data protocol negotiations. Instead, Google insisted that Plaintiffs access the training data using TensorFlow. But Google had loaded the training data in a format (SSTable) incompatible with TensforFlow. Google promised to convert the

1  relevant tables to the TensorFlow-compatible TFRecord format but would not provide a timeline.
2  McCarron Decl. ¶ 9. During this time, Plaintiffs' experts did not have access to the tools to analyze the
3  available training data until Google completed the TFRecord conversion, which though it started in early
4  August, did not conclude until August 9. Teti Decl. ¶ 5; McCarron Decl. ¶ 9.

5  On August 13, finally armed with the necessary tools, Plaintiffs' experts identified ▇ datasets that
6  were either corrupted or inaccessible in Google's environment. McCarron Decl. ¶ 10. Plaintiffs notified
7  Google the same day that these datasets were inaccessible. Teti Decl. ¶ 6. Google did not respond
8  substantively until August 21—eight days later, identifying source code that could be used to access the
9  data. Plaintiffs again hoped the issues were resolved, and their experts dug into their analyses. Teti Decl.
10 ¶¶ 5–6; McCarron Decl. ¶¶ 10.

11 Nine days later, on Saturday, August 30, 2025, Google revealed to Plaintiffs that a critical metadata
12 field, referred to by Google as the "▇▇▇" field, including ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
13 ▇▇▇▇▇▇, was not included with certain training data when Google converted the files to TFRecord. Teti
14 Decl. ¶ 7; McCarron Decl. ¶ 19. Plaintiffs followed up with Google that same day to try to determine the
15 scope of the issue. Google did not respond until Tuesday, September 2, that the error affected a total of ▇
16 datasets (amounting to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇), including the ▇ datasets
17 Plaintiffs had earlier identified. Teti Decl. ¶ 8; *see also* McCarron Decl. ¶ 20–21. Google failed for over
18 two months to include the ▇▇▇ field in datasets central to Plaintiffs' case that included many of the training
19 data sets that originated from Google's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Sep. 2 K. Knoll Email to S. Teti.
20 Google indicated that it expected that its upload of the missing data would not be completed until the next
21 day. *Id.* Plaintiffs' experts gained access on September 3. McCarron Decl. ¶ 22.

22 The Parties again met and conferred regarding the incomplete training data on September 3, 2025.
23 Teti Decl. ¶¶ 9–11. On that call, Plaintiffs learned that Google first identified that data (▇▇▇▇▇▇▇▇) was
24 missing from TFRecord conversions the week of August 19, but withheld that information for two weeks
25 while it conducted its own analysis of the data available to Plaintiffs. Google identified the ▇▇▇▇▇▇▇▇
26 ▇▇▇▇▇▇▇ field as another missing element. Teti Decl. ¶ 11; McCarron Decl. ¶ 19. Worse, Plaintiffs were
27 informed that Google had begun to alter the data in the training data review environment by starting to
28 upload the missing data before it told Plaintiffs that there was any issue whatsoever. Google was aware

that Plaintiffs' experts continued to work to analyze incomplete training data during this time. Teti Decl. ¶ 10; McCarron Decl. ¶ 19. Yet Google did not earlier disclose the issues, consult with Plaintiffs. Rather, Plaintiffs' experts worked in incomplete dataset, attempting to trouble shoot obvious problems. When pressed about what other metadata may have been affected for which models, Google would not definitively answer. Teti Decl. ¶ 11. Plaintiffs were left in the dark about the full impact of the problem; whether any other elements remain missing; and whether this issue may recur. It was not until the hearing before Judge van Keulen on September 11, 2025 that Google's counsel confirmed that all data has been produced.

Plaintiffs' experts have also lost critical time due to Google's failure to abide by the parties agreed-upon protocol, and timely produce to Plaintiffs their experts' work product. Under the protocol, Plaintiffs' experts can request to "take out"—or remove from the review environment—their work product for further confidential analysis. Teti Decl. ¶ 14. Google waited seven business days to produce two small takeout files (2 GB and 9 GB), costing Plaintiffs two days of expert work. Teti Decl. ¶ 14; McCarron Decl. ¶ 13. Google lodged objections to a third take out file based upon its "excessive" size (600 GB) and because time was needed for its review by Google's attorneys—even though 600 GB represents .002% of the training data present in the review environment and there was no legal basis to object to producing Plaintiffs' experts' work product. Teti Decl. ¶¶ 15–16; McCarron Decl. ¶ 14. Google withdrew its objections and produced this takeout file on September 12, 2025, but that delay cost Plaintiffs 3 days with that file. Teti Decl. ¶ 18. Since the hearing, Google improved its communications, informing Plaintiffs of another undisclosed system-limitation that restricts the number of takeouts that can be requested at a time. *Id.* ¶ 19. Google represented on September 12, 2025 that the take-out limit would be increased, but has not yet provided a timeline.

### B. Google's Unstable Environment Has Cost Plaintiffs Approximately 200 Hours of Access Time and Significant Lost Work

The issues with training data access and incomplete data discussed above take place in an inadequately provisioned and unstable environment that Google required and controls. McCarron Decl. ¶¶ 6–7, 9–10, 11. Plaintiffs' access to the training data environment has been plagued by issues of instability since inception, significantly impacting the actual time Plaintiffs have had to analyze training data.

McCarron Decl. ¶ 11. Over the last two months, Plaintiffs' experts have been frozen out of the training data environment on 27 separate occasions, costing them approximately 200 hours of lost time working in the training data environment (as of this filing). *Id*. This estimate does not account for the time necessary to restart workflows once the experts can reengage. The code Plaintiffs' experts run to analyze the training data must be restarted each time they are locked out of the remote environment. *Id.* Code that should have been run in approximately 23 hours has needed two and a half days due to the environment reboot issues introduced by Google's set-up configuration. *Id.*

Each system outage triggers a cumbersome chain of communication from Plaintiffs' experts to Plaintiffs' counsel to Google's counsel to Google's technical team so that the environment can be rebooted, resulting in days of lost access that compound the disruption caused by Google's unstable infrastructure. Ex. 2 to the Teti Decl., the Declaration of Ayyub Ibrahim ¶¶ 4–5; McCarron Decl.¶ 11. Plaintiffs asked Google to restore their experts' access to the environment, Google responded that "[r]esets to the system can only be performed during work hours, and for security reasons require two Google personnel to be available." Teti Decl. ¶ 13. Of course, no such limitations prohibited Google from conducting its own investigation into the training data or altering the training data in the environment for its own purposes. Nor has Google explained what the issues are; confirmed that they have run them fully to ground; or assured Plaintiffs that these problems will not recur.

On September 11, 2025, at the discovery hearing before Judge van Keulen, Google's counsel informed the Court that all data has been produced and that it will address ongoing problems more efficiently. After the hearing, Google's counsel informed that its fix to the review environment to address freezing and reboot functionality was forthcoming, but with no date certain. Plaintiffs' requested extension relies on Google's promise to fix the access and stability issues, incorporates the most aggressive estimates from their experts and shortens the time the Court had previously allowed for this work to occur.

### III.   GOOD CAUSE EXISTS TO AMEND THE CASE SCHEDULE

Once a scheduling order has been filed pursuant to Federal Rule of Civil Procedure 16, the "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of

the party seeking the extension.'" *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (citing Fed. R. Civ. P. 16 advisory committees notes to 1983 amendment).

  A.  **Notwithstanding Plaintiffs' Diligence, the Case Schedule Cannot Reasonably Be Met**

The Court's Order directed Google to have made its training data accessible by the week of June 23, 2025. ECF No. 155, § II.1; *see also* June 18, 2025 Hr'g Tr. at 63:18-20 (THE COURT: … "It looks like the objective is for it to be complete, in that the datasets—the actual content is provided and the metadata for that content."). Google has failed to do so. Plaintiffs have been patient and diligent, working with Google to troubleshoot each incremental issue to meet the September 22, 2025 deadline to move for class certification. But Google's failure to provide access to training data until three weeks before Plaintiffs' class certification deadline has prevented Plaintiffs' experts from executing the analysts that will definitively show that Google's unfair infringement.

Google's failure to comply with the Court's Order has severely prejudiced Plaintiffs. Rather than focusing on analyzing training data in support of Plaintiffs' class certification motion, Plaintiffs' experts have spent cumulative weeks locked out of the remote environment, necessitating repeated communications between Plaintiffs' counsel, Google's counsel, and Google's technical personnel to restore access multiple times weekly, with 27 such incidents to date, which Plaintiffs' experts have estimated have cost them approximately 200 hours to date, with more to come. McCarron Decl. ¶ 11; Ibrahim Decl. ¶ 4. To make matters worse, Google is now revealing that ▆ critical datasets, comprised of over ▆▆▆▆▆ records, were incomplete and without critical metadata—an issue it had apparently known about for over a week—and that it unilaterally altered the data in the environment while Plaintiffs' experts were actively working, without notifying Plaintiffs until after the changes were complete. Teti Decl. ¶¶ 10–11. These undisclosed modifications have forced Plaintiffs' experts, until the date of this filing, to divert their efforts and resources to assessing the scope and impact of Google's changes all while continuing to face persistent lockouts from Google's controlled environment. McCarron Decl. ¶ 24.

To assess the full extent of Google's late disclosure, Plaintiffs were forced to spend valuable time assessing (for each dataset) what information was previously unavailable, to what extent it may implicate their developed methodology, and to what extent the results of their analysis have been affected. All while

navigating outages (which Plaintiffs and their experts have no ability to self-diagnose), including now while Plaintiffs are assessing what needs to be redone.[1] The costs incurred due to Google's non-compliance are substantial and mounting.[2]

Assuming the issues recited above are resolved (and do not persist), accounting for the time lost (as set forth above), and based upon their experiences, Plaintiffs' experts aggressively estimate that it will take at least six weeks from the current class certification deadline of September 22, 2025 to: (1) complete their re-analysis of data that was conducted before and during modifications of that data by Google; (2) complete their analysis of data that was put on hold pending their re-analysis of modified data; (3) continue and complete testing of their takeout material; and (4) prepare and author expert reports. McCarron Decl. ¶ 25.

Critically, Google acknowledges that an extension is fair and necessary. However, the three weeks that Google has agreed to prejudices Plaintiffs, because it simply will not allow Plaintiffs sufficient time to conduct the work necessary to make the record for class certification. The requested case schedule extension is fair and reasonable under the circumstances, and will allow for the orderly and efficient prosecution of the litigation. Importantly, the proposed case schedule will provide Plaintiffs and their experts with the time they need to evaluate and analyze the just-recently-produced training data and the forthcoming take-out productions, account for the delays that have plagued and continue to plague the review environment, and prepare and submit expert class certification reports in support of their class

---

[1] On September 12, 2025, Plaintiffs' experts spoke with technical personnel for Google regarding the recent changes to data that required re-analysis over the last twelve days (at the expense of conducting other expert analysis). McCarron Decl. ¶ 23; Ibrahim Decl. ¶ 4. Based upon what was told to Plaintiffs' experts regarding the scope of the change, they are now able to move forward with their expert analysis of the impacted data. McCarron Decl. ¶ 23; Ibrahim Decl. ¶ 4. The information provided by Google on today's call was not available to Plaintiffs' experts before the call, nor could they have ascertained the information independently. McCarron Decl. ¶ 23.

[2] Plaintiffs have expended significant attorney time troubleshooting access issues, documenting deficiencies, conferring with Google's counsel regarding remediation, and engaging in motion practice. Additionally, Plaintiffs and the putative class have incurred costs having their experts attempt to work within Google's deficient system, develop workarounds for technical failures, and now reassess their analyses following Google's undisclosed data modifications. Needless expenditure of time and money will continue as Plaintiffs' experts must now re-examine their methodologies and potentially re-run analyses to account for the newly disclosed metadata and modifications to the datasets. Plaintiffs are therefore reserving all rights to seek Rule 37 relief pending the resolution of the training data issue and full understanding of costs related thereto.

certification motion. Whether considered under Rule 16, Civil Local Rule 16-10, or this Court's inherent authority to manage these proceedings, there is good cause for a modification of the case schedule. Accordingly, the Court should grant Plaintiffs' motion to amend the case schedule.

### B. Google Will Not Be Prejudiced by a Modification of the Case Schedule

Although in this Circuit, the primary consideration is the diligence of the party seeking the modification, and not the prejudice caused to the party opposing modification (*see Johnson*, 975 F.2d at 609), this factor too weighs in favor of Plaintiffs. There is no prejudice to Google if the case schedule were modified. The close of fact discovery is not on the horizon. Plaintiffs have upheld their end of the bargain by providing the discovery Google requires for its opposition to class certification. Plaintiffs have also made themselves available for deposition; four have already been deposed, and three more are scheduled for this month (September).

### IV. CONCLUSION

For the foregoing reasons, and for good cause shown, Plaintiffs respectfully request that the Court grant this motion, enter the proposed order submitted herewith, and amend the case schedule as set forth below.

| EVENT | CURRENT DEADLINES | PLAINTIFFS' PROPOSED NEW DEADLINES |
|---|---|---|
| File class certification motion and disclose supporting expert report(s) | September 22, 2025 | **November 3, 2025** |
| Further case management conference | October 15, 2025 | N/A (same) |
| Last day to depose experts offered in support of class certification motion | October 22, 2025 | **December 3, 2025** |
| File opposition to class certification motion, disclose opposing expert report(s), and file *Daubert* motion(s) | October 29, 2025 | **December 10, 2025** |
| Last day to depose experts offered in opposition to class certification motion | November 25, 2025 | **January 6, 2026** |
| File reply in support of class certification motion, opposition(s) to Google's *Daubert* motion(s), and *Daubert* motion(s) as to Google's experts | December 3, 2025 | **January 14, 2026** |
| File opposition to Plaintiffs' *Daubert* motions | December 10, 2025 | **January 21, 2026** |

| EVENT | CURRENT DEADLINES | PLAINTIFFS' PROPOSED NEW DEADLINES |
|---|---|---|
| Complete initial ADR sessions | December 17, 2025 | N/A (same) |
| Hearing on class certification motion | January 7, 2026 | **February 18, 2026** |
| Close of fact discovery | February 13, 2026 | **March 27, 2026** |
| Disclosure of opening expert report(s) on which respective parties have burden of proof (merits issues) | March 11, 2026 | **April 22, 2026** |
| Disclosure of responsive expert report(s) (merits issues) | April 22, 2026 | **June 3, 2026** |
| Disclosure of reply expert report(s) (merits issues) | May 27, 2026 | **July 8, 2026** |
| Close of expert discovery | June 24, 2026 | **August 5, 2026** |
| Last day to file summary judgment and *Daubert* motions | July 8, 2026 | **August 19, 2026** |
| Filing of opposition to summary judgment and *Daubert* motions | 21 days after filing of summary judgment or *Daubert* motion(s), respectively | N/A (same) |
| Filing of reply in support of summary judgment and *Daubert* motions | 14 days after filing of opposition to summary judgment or *Daubert* motion(s), respectively | N/A (same) |
| Last to hear summary judgment and *Daubert* motions | September 11, 2026 at 1:30 pm | **October 23, 2026 at 1:30 p.m.** |
| Final pretrial conference | December 16, 2026 | **January 27, 2027** |
| Jury trial (est. 10 to 14 days) | January 19, 2027 | **March 2, 2027** |

Dated: September 12, 2025

Respectfully submitted,

By: _____/s/ Lesley E. Weaver_____
Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
**BLEICHMAR FONTI & AULD LLP**
1330 Broadway, Suite 630
Oakland, CA 94612
Telephone: (415) 445-4003
lweaver@bfalaw.com

By: _____/s/ Joseph R. Saveri_____
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Elissa A. Buchanan (SBN 249996)
Evan A. Creutz (SBN 349728)
Aaron Cera (SBN 351163)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505

| | | |
|---|---|---|
| 1 | adavis@bfalaw.com | San Francisco, CA 94108 |
| 2 | jsamra@bfalaw.com | Telephone: (415) 500-6800 |
| | | Facsimile: (415) 395-9940 |
| 3 | Gregory S. Mullens (admitted *pro hac vice*) | jsaveri@saverilawfirm.com |
| | **BLEICHMAR FONTI & AULD LLP** | czirpoli@saverilawfirm.com |
| 4 | 75 Virginia Road, 2nd Floor | cyoung@saverilawfirm.com |
| | White Plains, NY 10603 | eabuchanan@saverilawfirm.com |
| 5 | Telephone: (415) 445-4006 | ecreutz@saverilawfirm.com |
| 6 | gmullens@bfalaw.com | acera@saverilawfirm.com |

*Plaintiffs' Interim Co-Lead Counsel*

| | | |
|---|---|---|
| 8 | Brian D. Clark (admitted *pro hac vice*) | Ryan J. Clarkson (SBN 257074) |
| 9 | Laura M. Matson (admitted *pro hac vice*) | Yana Hart (SBN 306499) |
| | Arielle S. Wagner (admitted *pro hac vice*) | Mark I. Richards (SBN 321252) |
| 10 | Consuela Abotsi-Kowu (admitted *pro hac vice*) | **CLARKSON LAW FIRM, P.C.** |
| | **LOCKRIDGE GRINDAL NAUEN PLLP** | 22525 Pacific Coast Highway |
| 11 | 100 Washington Avenue South, Suite 2200 | Malibu, CA 90265 |
| | Minneapolis, MN 55401 | Telephone:   213-788-4050 |
| 12 | Telephone: (612) 339-6900 | rclarkson@clarksonlawfirm.com |
| 13 | Facsimile: (612) 339-0981 | yhart@clarksonlawfirm.com |
| | bdclark@locklaw.com | mrichards@clarksonlawfirm.com |
| 14 | lmmatson@locklaw.com | |
| | aswagner@locklaw.com | Tracey Cowan (SBN 250053) |
| 15 | cmabotsi-kowo@locklaw.com | **CLARKSON LAW FIRM, P.C.** |
| | | 95 Third Street, Second Floor |
| 16 | Stephen J. Teti (admitted *pro hac vice*) | San Francisco, CA 94103 |
| | **LOCKRIDGE GRINDAL NAUEN PLLP** | Telephone: (213) 788-4050 |
| 17 | 265 Franklin Street, Suite 1702 | tcowan@clarksonlawfirm.com |
| 18 | Boston, MA 02110 | |
| | Telephone: (617) 456-7701 | Matthew Butterick (SBN 250953) |
| 19 | sjteti@locklaw.com | **BUTTERICK LAW** |
| | | 1920 Hillhurst Avenue, #406 |
| 20 | | Los Angeles, CA 90027 |
| 21 | | Telephone: (323) 968-2632 |
| | | Facsimile: (415) 395-9940 |
| 22 | | mb@butaricklaw.com |

*Additional Counsel for Individual and Representative Plaintiffs and the Proposed Class*

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Lesley E. Weaver, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of September, 2025, at Oakland, California.

                                              */s/ Lesley E. Weaver*
                                                Lesley E. Weaver