Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
**BLEICHMAR FONTI & AULD LLP**
1330 Broadway, Suite 630
Oakland, CA 94612
Tel. (415) 445-4003
lweaver@bfalaw.com
adavis@bfalaw.com
jsamra@bfalaw.com

Gregory S. Mullens (admitted *pro hac vice*)
**BLEICHMAR FONTI & AULD LLP**
75 Virginia Road, 2nd Floor
White Plains, NY 10603
Tel. (415) 445-4006
gmullens@bfalaw.com

Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Elissa A. Buchanan (SBN 249996)
Evan A. Creutz (SBN 349728)
Aaron Cera (SBN 351163)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone:      (415) 500-6800
Email:          jsaveri@saverilawfirm.com
                czirpoli@saverilawfirm.com
                cyoung@saverilawfirm.com
                eabuchanan@saverilawfirm.com
                ecreutz@saverilawfirm.com
                acera@saverilawfirm.com

*Plaintiffs' Interim Co-Lead Counsel*
*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| *In re Google Generative AI Copyright Litigation* | Master File Case No. 5:23-cv-03440-EKL-SVK<br>Consolidated Case No. 5:24-cv-02531-EKL-SVK<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**<br><br>Judge:      Hon. Eumi K. Lee<br>Date:       February 4, 2026<br>Time        10:00 A.M.<br>Courtroom:  7, Fourth Floor |

<u>**REDACTED**</u>

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...........................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................3

I.     INTRODUCTION ................................................................................................................3

II.    COMMON EVIDENCE OF GOOGLE'S COPYRIGHT INFRINGEMENT ..............................5

    A.    The Named Plaintiffs Hold Valid Copyrights and Assert Common Claims Under the Copyright Act...........................................................................................................5

    B.    High Quality AI Models Trained on Copyrighted Material Are Critical to Google's Business. ..........................................................................................................6

    C.    Google Systematically Copies Plaintiffs' Copyrighted Works in Ingesting, Training, and Testing the Models At-Issue. ....................................................................6

    D.    Importance of High-Quality Data to Model Development and Performance....................7

    E.    Google's Base Datasets Contain ████████████████████████ ████████████.........................................................................................................8

    F.    Google Trained ████████████████████████..............................10

    G.    Google Trained ██████████████████████████. .......10

    H.    Google Deliberately ████████████████████.............................11

    I.    Google ████████████████████████████████. .........................12

    J.    Google ████████████████████ Use of Copyrighted Materials. ..................................................................................................................13

    K.    Common Evidence of Harm to Potential Markets for Class Works..................................14

III.    LEGAL STANDARD..........................................................................................................14

IV.    ARGUMENT .......................................................................................................................15

    A.    The Proposed Classes Satisfy 23(a).................................................................................15

        1.    The Proposed Classes Are Sufficiently Numerous.................................................15

        2.    Plaintiffs' Claims Involve Common Issues of Fact and Law. ...............................15

3. Plaintiffs' Claims Are Typical of the Classes' Claims. ...........................................16

4. Plaintiffs Fairly and Adequately Represent the Classes. ....................................17

B. The Proposed Classes Satisfy Rule 23(b)(2). .................................................................17

C. The Proposed Classes Satisfy Rule 23(b)(3). .................................................................18

1. Common Issues of Law and Fact Predominate.......................................................18

2. Damages Are Susceptible to Classwide Measurement. ..........................................23

D. A Class Action Is Superior to Tens of Thousands of Individual Actions.........................23

1. The Proposed Classes Are Objectively Defined. ...................................................24

V. APPOINTMENT OF CLASS COUNSEL ....................................................................................24

VI. CONCLUSION...................................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A&M Recs., Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001), *as amended* (Apr. 3, 2001),
*aff'd*, 284 F.3d 1091 (9th Cir. 2002)...........................................................................19, 21, 22, 23

*Am. Geophysical Union v. Texaco, Inc.*,
60 F.3d 913 (2d Cir. 1994)......................................................................................................21, 22

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997).............................................................................................................17, 18, 23

*Aquarian Found., Inc. v. Lowndes*,
127 F.4th 814 (9th Cir. 2025) ........................................................................................................19

*Atari Games Corp. v. Nintendo of Am. Inc.*,
975 F.2d 832 (Fed. Cir. 1992)........................................................................................................22

*Authors Guild v. Google, Inc.*,
282 F.R.D. 384 (S.D.N.Y. 2012),
*vacated in part on other grounds*, 721 F.3d 132 (2d Cir. 2013)..............................................20, 24

*Bartz v. Anthropic PBC*,
2025 WL 1993577 (N.D. Cal. July 17, 2025)...........................................................14, 20, 21, 24

*BMG Music v. Gonzalez*,
430 F.3d 888 (7th Cir. 2005) .........................................................................................................21

*Boston Retirement Sys. v. Uber Techs., Inc.*,
2022 WL 2954937 (N.D. Cal. July 26, 2022)...............................................................................17

*Columbia Pictures Indus., Inc. v. Fung*,
710 F.3d 1020 (9th Cir. 2013) .......................................................................................................19

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)..........................................................................................................................23

*Danjaq LLC v. Sony Corp.*,
263 F.3d 942 (9th Cir. 2001) .........................................................................................................23

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991)........................................................................................................................19

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
2015 WL 4776932 (C.D. Cal. May 27, 2015) ......................................................................14, 24

*Glacier Films (USA), Inc. v. Turchin*,
  896 F.3d 1033 (9th Cir. 2018) ...................................................................................21

*Google LLC v. Oracle Am., Inc.*,
  593 U.S. 1 (2021) ......................................................................................................21

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .............................................................................16, 18

*Harper & Row Publ'rs, Inc. v. Nation Enters.*,
  471 U.S. 539 (1985) ..................................................................................................22

*Hustler Mag. Inc. v. Moral Majority Inc.*,
  796 F.2d 1148 (9th Cir. 1986) ..................................................................................22

*In re College Athlete NIL Litig.*,
  2023 WL 7106483 (N.D. Cal. Sept. 22, 2023) .........................................................18

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*,
  609 F. Supp. 3d 942 (N.D. Cal. 2022) ......................................................................15

*In re Napster, Inc. Copyright Litig.*,
  2005 WL 1287611 (N.D. Cal. June 1, 2005) ..................................................... *passim*

*In re Telescopes Antitrust Litig.*,
  348 F.R.D. 455 (N.D. Cal. 2025) ..............................................................................15

*Leyva v. Medline Indus. Inc.*,
  716 F.3d 510 (9th Cir. 2013) ....................................................................................23

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F. 4th 651 (9th Cir. 2022) ........................................................................14, 18, 19

*Owino v. CoreCivic, Inc.*,
  60 F.4th 437 (9th Cir. 2022) .....................................................................................16

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ...............................................................................15, 18

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984) ..................................................................................................23

*True Health Chiropractic, Inc. v. McKesson Corp.*,
  896 F.3d 923 (9th Cir. 2018) ....................................................................................24

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) .............................................................................................18, 20

*UMG Recordings, Inc. v. Disco Azteca Distributors, Inc.*,
  446 F. Supp. 2d 1164 (E.D. Cal. 2006) ....................................................................19

*UMG Recordings, Inc. v. MP3.Com, Inc.*,
    2000 WL 710056 (S.D.N.Y. June 1, 2000) ...............................................22

*United States v. Wilson*,
    900 F.2d 1350 (9th Cir. 1990) ...................................................................14

*Walker v. Univ. Books*,
    602 F.2d 859 (9th Cir. 1979) .....................................................................21

*Wal-Mart Stores, Inc v. Dukes*,
    564 U.S. 338 (2011)............................................................................14, 15

*Wang v. Chinese Daily News, Inc.*,
    737 F.3d 538 (9th Cir. 2013) .....................................................................15

*West v. Cal. Servs. Bureau, Inc.*,
    323 F.R.D. 295 (N.D. Cal. Dec. 11, 2017) ...............................................15

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ...................................................................16

**STATUTES**

17 U.S.C. § 107.................................................................................................4, 21

17 U.S.C. § 410.................................................................................................5, 19

17 U.S.C. § 501........................................................................................................3

17 U.S.C. § 504....................................................................................................3, 23

**RULES**

Fed. R. Civ. P. 23(a) ...............................................................................................15

Fed. R. Civ. P. 23(b)(2)...........................................................................................18

Fed. R. Civ. P. 23(b)(3)...........................................................................................18

Fed. R. Civ. P. 23(g) .........................................................................................17, 24

**OTHER AUTHORITIES**

4 Nimmer on Copyright § 13D.02 ...........................................................................19

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on February 4, 2026 at 10:00 a.m. in Courtroom 7, Fourth Floor, of this Court, located at 280 South First Street, San Jose, California, Plaintiffs will respectfully move this Court for certification of the following Classes pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), 23(c)(4), and 23(g) of the Federal Rules of Civil Procedure.

### A.    Books Class

**Books Class:** All legal or beneficial owners of registered copyrights for any work possessing an International Standard Book Number (ISBN) which Google downloaded and/or ingested to develop its GLaM, LaMDA, PaLM, ULM/PaLM 2, Imagen, or Gemini base models ("At-Issue Models") or their descendants. For purposes of this definition, copyrighted works are limited to those registered with the United States Copyright Office within five years of the work's publication before being trained on by Google, or within three months of publication.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **Subclass:** All legal or beneficial owners of a registered copyright for any work possessing an ISBN, which Google acquired via the ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ and was used by Google to develop its At-Issue Models or their descendants. For purposes of this definition, copyrighted works are limited to those registered with the United States Copyright Office within five years of the work's publication before being trained on by Google, or within three months of publication.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **Subclass:** All legal or beneficial owners of a registered copyright for any work possessing an ISBN, which Google acquired via the ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ and was used by Google to develop its At-Issue Models or their descendants. For purposes of this definition, these copyrighted works are limited to those registered with the United States Copyright Office within five years of the work's publication before being trained on by Google, or within three months of publication.

**Pirated Books Subclass:** All legal or beneficial owners of a registered copyright for any work possessing an ISBN, that reflect URL provenance from Shadow Libraries, used by Google to develop its At-Issue Models or their descendants. For purposes of this definition, these copyrighted works are limited to those registered with the United States Copyright Office within five years of the work's publication before being trained on by Google, or within three months of publication.

### B.    Images Class

**Images Class:** All legal or beneficial owners of a registered copyright for any two-dimensional image, drawing, painting, photograph, whether analog or digital, used by Google to develop its Imagen and Gemini base models or their descendants. For purposes of this definition, these copyrighted works are limited to those registered with the United States Copyright Office within five years of the work's publication before being trained on by Google, or within three months of publication.

In the alternative, Plaintiffs seek to certify a class pursuant to 23(c)(4). The issues Plaintiffs seek to certify include the elements of the copyright claim. Excluded from the Class and Subclasses are the works of any legal or beneficial owners of registered copyrighted works that are the subject of express and restricted license agreements with Google permitting it to use those works with respect to Google's "artificial intelligence and machine learning technologies" products and services. Also excluded are Defendant Google LLC; any of Google's co-conspirators; any of Google's parent companies, subsidiaries, and affiliates, including but not limited to Alphabet; any of Google's and its parents' officers, directors, management, employees, subsidiaries, affiliates, or agents; and the judges and chambers staff in this case, as well as members of their immediate families.

The Named Plaintiffs request that the Court appoint them as Class representatives; Joseph R. Saveri of Joseph Saveri Law Firm, LLP and Lesley E. Weaver of Bleichmar Fonti & Auld LLP as Co-Lead Counsel, with Brian Clark of Lockridge Grindal Nauen PLLP, and Ryan Clarkson of the Clarkson Law Firm, P.C. as Class Counsel.

The Motion is based on this Notice of Motion and supporting Memorandum of Points and Authorities; the Joint Declaration of Proposed Co-Lead Counsel Lesley E. Weaver and Joseph R. Saveri ("Counsel Decl.") in Support of Class Certification; the Declaration of Gregory S. Mullens ("Mullens Decl.") in Support of Class Certification and exhibits attached thereto;[1] the Expert Reports of Meredith McCarron (Ex. 1 to the Mullens Decl.) ("McCarron Rep."); David Doermann (Ex. 2 to the Mullens Decl.) ("Doermann Rep."); Victoria Furniss (Ex. 3 to the Mullens Decl.) ("Furniss Rep."); and Michael Smith (Ex. 4 to the Mullens Decl.) ("Smith Rep."); the reply briefing in further support of this Motion; the arguments of counsel; and any such other matters as the Court may consider.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Should the Court certify the Classes and subclasses under Rule 23 of the Federal Rules of Civil Procedure given that Google copied Plaintiffs' and Class Members copyrighted works to train Google's LLM models in a uniform manner and without license?

2.      Should the Court appoint Plaintiffs Almond, Andersen, Barer, Fink, Larson, Leovy,

---

[1] All exhibits referenced herein and cited in the McCarron Rep., Doermann Rep., Furniss Rep., and Smith Rep. are attached to the Mullens Decl. ("Mullens Ex. __").

McLennan, and Zhang as representatives of the Classes?

3.    Should the Court appoint Joseph R. Saveri of Joseph Saveri Law Firm, LLP, Lesley E. Weaver of Bleichmar Fonti & Auld LLP, Brian Clark of Lockridge Grindal Nauen PLLP, and Ryan Clarkson of the Clarkson Law Firm, P.C. as Class Counsel, with Joseph R. Saveri and Lesley E. Weaver as Co-Lead Counsel?

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs' copyright claim is well-suited for class certification pursuant to Rule 23. Each requirement of Rule 23(a) is satisfied, and there is an overwhelming predominance of common questions of law and fact under Rule 23(b).

At the heart of this case is a single claim of violation of copyright law. Without license, Google systematically and repeatedly copied Plaintiffs' and the classes' copyrighted works. Google used the Class Works without permission to develop, build and bring to market Google's generative artificial intelligence ("AI") products, including for its LaMDA, PaLM, ULM/PaLM 2, GLaM, Imagen, and Gemini models.[2] From the CEO on down, Google violated copyright law knowingly and intentionally. Google did so because it required vast quantities of high-quality works to build and develop these models, in a race with other AI companies, including OpenAI, Meta Platforms, and Anthropic. Google could have licensed those materials, or excluded copyrighted materials from its training sets. Google did neither. Instead, Google willfully copied and used them, violating 17 U.S.C. § 501.

At trial, Plaintiffs and all class members will rely on the same common body of evidence to prove their copyright claim. Each element—ownership of a valid copyright and that Google copied plaintiff's original expression—will be proven by common evidence. *See* 17 U.S.C. § 501(a)-(b). Each element turns on *Google's* conduct, not the conduct of any individual class member. Likewise, the factors required to assess statutory damages involve common evidence of Google's conduct, including the circumstances of the infringement, willfulness, and the need to punish the infringer. *See* 17 U.S.C. § 504(c). And evidence of fair use will also rely on common evidence. While it is settled that affirmative defenses cannot be relied

---

[2] A glossary of terms is attached as Appendix C to the Doermann Rep. For purposes of this Motion, "Class Works" refers to the works covered by these classes and subclasses.

on to defeat class certification, each fair use factor focuses on Google's conduct, its generative AI products, and the generalized effects of that conduct on the market at large. *See* 17 U.S.C. § 107.

Common proof will show Google's deliberate ingestion and improper use of copyrighted material in immense datasets, ███████████████████████████████████████████. To build, train, and evaluate the models, Google ████████████████████████████████████████ ███. This makes sense. As Plaintiffs' expert Dr. Doermann explains, ███████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████. Ex. 22, Dai Tr. 246:8-247:7; Ex. 62 at -889; Ex. 13, Carver Tr. 68:20-69:4; Ex. 53 at -536 ("████████████████████████████████████████████████ ███████████████████████████████████"); Doermann Rep. ¶ 186. Google's internal teams can and do ████████████████████████████████████████████████████ ███████████████████████████████████████████████. *See* Doermann Rep. Part VI; Ex. 22, Dai Tr. 245:18-247:7, 313:10-317:19; Ex. 41 at -651 ("███████████ ██████████████████████████████████████████████."). So too can Google here.

Google has invested significant resources to disguise its unlawful acts. In █████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████. Ex. 13, Carver Tr. 89:14-18; 113:13-114:8; Ex.18, Vinyals Tr. 120:8-121:1. This ██████████ was only necessary because Google trained its models on protected works in the first instance. Ex. 73 at -375 (████████████████████████████████████████); Ex. 104 at -225-26 ("██████████████████████████████████████████████████████████ ██████████████████████████████."). When asked why █████████████████████████████, Google's witnesses invoke privilege. Ex. 20, Ayoub Tr. 263:19-264:3; Ex. 22, Dai Tr. 135:10-136:4. But ████████████████████████████████████████████████████████████████ ██████████████████████. ████████████████████████████████████████████████████ ██████████████████████████████████████████████. Ex. 99 at -764; Ex. 18, Vinyals Tr. 121:10-122:15; Ex. 55 at -454. Plaintiffs' expert team led by Meredith McCarron has therefore

examined sample training sets provided by Google. Each proposed Named Plaintiff holds copyrights of text or image content Plaintiffs' experts ███████████████. That use was not licensed.

Commonality (and predominance) are further called upon by Google's expected defenses—most notably, that "fair use" bars relief for all rightsholders. The nature and extent of Google's use of Class Works, and the market harm it has caused, are subject to common proof, including from Plaintiffs' expert Michael Smith, the nation's leading economist on these questions. Dr. Smith presents compelling evidence of market harm, relying on Google's own internal analyses, such as: ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Smith Rep. ¶¶ 10-12, 34-38, 40-50. ███████████████████████████████████████████████████████████████████████████████████████████████████████████ Plaintiffs' expert Victoria Furniss points to common industry practice to support this argument. ████████████████████████.

## II.    COMMON EVIDENCE OF GOOGLE'S COPYRIGHT INFRINGEMENT

### A.    The Named Plaintiffs Hold Valid Copyrights and Assert Common Claims Under the Copyright Act.

Plaintiffs are authors and artists. Each owns copyrights registered with the U.S. Copyright Office, and each book authored by Named Plaintiffs has an ISBN. *See* Exs. 156-181 (registrations); McCarron Rep. Appx. G (ISBNs). Each Plaintiff asserts claims under the Copyright Act for Google's unauthorized copying of their works to train its Generative AI Models. All asserted works were registered within five years of publication, prima facie evidence of copyright validity. *See* Exs. 156-181 (registrations); 17 U.S.C. § 410(c). Plaintiffs' experts demonstrate a reliable methodology to identify Plaintiffs' and Class Works in Google's training data. The exemplar training datasets contain ██████████████████████████████ ███████████████. *See* McCarron Rep. at §VIII.

B.     **High Quality AI Models Trained on Copyrighted Material Are Critical to Google's Business.**

The fight for dominance in generative AI technologies by Google, OpenAI and others has been compared to the nuclear arms race.[3] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Doermann Rep. ¶¶ 34; 107-61; Ex. 66 at -199 ("████████████████████████"); Ex. 71 at -584-585; Ex. 18, Vinyals Tr. 165:11-166:16. Google needs high-quality data suitable to develop the LLM and image-diffusion models at-issue here. ████████████████████████. Ex. 60 at -399 ("████████████████████████████"). Books provide vast, structured, and diverse datasets for training, allowing the models to replicate grammar, knowledge, and complex reasoning skills. Doermann Rep. Part IV.C.3 & D; Ex. 127 at -676. ("█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.") Ex. 17, Xiao Tr. 153:22-154:8 ("████████████████████████████████████████████████.") Similarly, copyrighted images and associated metadata are ████████████████████████████████████████████████. Doermann Rep. ¶¶ 118-26.

Google's At-Issue Models were released beginning in 2021 after years of development and ████████████████████████████. *See* Doermann Rep. Part IV.B (describing evolution of each model). By using Plaintiffs' works without permission or license, Google attempted to avoid paying Plaintiffs a license or other compensation for the use of their copyrighted works.

C.     **Google Systematically Copies Plaintiffs' Copyrighted Works in Ingesting, Training, and Testing the Models At-Issue.**

Google's teams ingest, copy, store, and use copyrighted works, including pirated material, at massive scale, to create, train, and refine their AI Models. *See* Glossary at p. 3, 4, 5. To do so, Google employed and adhered to a formulaic, uniform, and systematic process. *See* Doermann Rep. Parts III-V. This process subjects every piece of training data, including the Class Works, to an identical series of

---

[3] Who's ahead in the AI arms race — Microsoft? Google? Meta?

copying and processing steps. *Infra* § II.J. Relying on Google's internal documents, Dr. Doermann describes this process generally. Doermann Rep. Parts III-V. The uniform iterative process involves evaluation, pre-training, and post-training (also referred to as tuning). Doermann Rep. Part III. A & B.

Generally, the "training" occurs in discrete phases (collectively known as the "training pipeline"). These phases include, in order: (1) the ingestion or acquisition of data; (2) processing of data; (3) pretraining; (4) model evaluation; and (5) finetuning (or "post-training"). Doermann Rep. ¶¶ 42, 44-47; *See* Ex. 65 at -375; *see* Glossary at 3-5. Pretraining occurs when the model is first fed pretraining data, which may be comprised of several datasets. In order to calculate statistical probabilities fundamental to neural networks, the model is exposed to the datasets multiple times, with each full pass referred to as an "epoch." Doermann Rep. ¶44; Ex. 82 (███████████████████████████████); Ex. 17, Xiao Tr. 345:2-18; *see* Glossary at 2. Each of these uses is a copyright violation subject to common proof. For example, Google ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████. After a model is pre-trained, resulting in a base or foundational model, it proceeds to fine-tuning or post-training, further refining its abilities. *See* Glossary at 2. At every step of this process, Google used copyrighted material to facilitate these actions, without permission. *See* Doermann Rep. Parts III, V.

### D.    Importance of High-Quality Data to Model Development and Performance.

Google executives and engineers well understand that model performance, and the statistical methodologies that undergird them, depends on getting the right mix of data inputs for the desired output. Ex. 53 at -536 (██████████████████████████████████). Key indicators of accuracy, speed and performance are measured, compared, and closely watched. Google █████████████ ██████████████████████████████████████████████████████████████. Specifically, "████████████████████████████████████████████ ████████████" Ex. 22, Dai Tr. 189:7-190:7; Ex. 78 at -823. ████████████████████ ████████████████████. Ex. 59 at -991. "High-quality" training data produced better models and performance. *See* Doermann Rep. ¶¶ 87-94, 118-26; [KPIs for gen AI: Measuring your AI success | Google Cloud Blog](#); Ex. 127 at -678 ("██████████████████████████████ ██████████████████."); Ex. 80 (███████████████████ ██████████████████); Ex. 60 at -399 ████████████████████████; Ex.

71 ( ████████████████████████████████████████████████████

████████████████████ ).

**E.    Google's Base Datasets Contain** ████████████████████████
████████████████ .

Google turned to three primary sources to obtain high-quality content: ████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████ . By the time it began developing its LLMs in earnest, Google

had access to ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████ . Doermann Rep. Part III.C; Ex. 58 at -988; Ex. 102 at -953-

955.

████████████████████████████████████████████████████
████████████████████████████████████████████████████ .

Ex. 15, Jaskiewicz Tr. 32:17-34:4; Ex. 23, ¶ 2. ████████████████████████████████

████████████████████████████████████████ . Ex. 15, Jaskiewicz Tr. 24:8-18;

Ex. 19, Price 30(b)(6) Tr. 33:13-34:19; Ex. 21, Barker Tr. 33:20-34:16.

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████ . Ex. 23, ¶ 6; Ex. 15, Jaskiewicz Tr. 24:8-18, 34:5-36:21; Ex. 19, Price 30(b)(6)

Tr. 33:13-34:19. Again, there is no license for AI use; the record shows that ████████████

████████████████████████████████████ . *See* Ex. 19, Price 30(b)(6) Tr. 59:5-60:17

( ████████████████████████████████████████████████████

████████████████████ ); Ex. 22, Dai Tr. 391:10-16 ( ████████████████████████

████████████████ ). Google knew that ████████████████████████████

████████████████████████████████████ . Ex. 63 at -967; Ex. 90 at -597; Ex. 19,

Price 30(b)(6) Tr. 33:13-34:19, 39:4-17. Google did not ████████████████████████████

. Ex. 15, Jaskiewicz Tr. 20:20-21:11, 24:19-25:6; Ex. 57 at -985-986; Ex. 107 at -330. Without this lawsuit, they may be in the dark about whether it is happening at all. Plaintiffs' experts' limited testing of the highly curated datasets Google would agree to produce thus far, and documents produced to-date, confirms that

. Ex. 79 at -423 ("

"); Ex. 86 at -160-164; Ex. 32 at -258-259, -263; Ex. 31 at -223, -225, -229; Ex. 199 at -533, -537; Ex. 22, Dai Tr. 150:18-153:6; Ex. 14, Liechty Tr. 80:10-22; 82:14-83:4; 168:12-18; *see also generally* McCarron Rep. (

). Common evidence shows that

. Doermann Rep. Parts III, V.

1.    **Common Evidence Shows Google** ████████ **Websites** ██████.

Google has ████████

. *See* Doermann Rep. Part IV.C.1. Google's own search efforts included

. Ex. 17, Xiao Tr. 55:21-57:7. The exemplar training data made available for inspection to-date confirms that

. *See* Ex. 6, Am. R&O to Pls' RFA No. 264. Shadow libraries, like Libgen, Z-Library, and others, obtain information through a variety of methods, including user uploads, scanning print books, and stealing content from publisher databases using compromised credentials. *See* Glossary at 5; Ex. 5.

. McCarron Rep. ¶¶ 16(e); 143; 170; *see also* § VIII; Ex. 27.

The early generative AI models—GLaM, LaMDA, PaLM, ULM/PaLM 2—███████████████

█████████████████████████████████. Ex. 78 at -823; Ex. 103 at -098, -100. ███████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

█████████████████████████. *See generally* Doermann Rep. Part III.B-C; *See, e.g.*, Ex. 105; Ex.

86; Ex. 30; Ex. 95; Ex. 38; Ex. 124; Ex. 122; Ex. 97; Ex. 32; Ex. 31; Ex. 34; Ex. 116; Ex. 31; Ex. 94 (data

cards and data approvals for models).

### F.    Google Trained ████████████████████████████████████.

Similarly, Plaintiffs' experts have proven that ██████████████████████████████

████████████████████. McCarron Rep. ¶¶ 127-130, 165-168. Like copyrighted books, Google

████████████████████████████████████████████████████████████████████████████████

██████████████████████████████. Ex. 69 at -272, -278. Google

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████. Doermann Rep. ¶¶ 118-26; *See*

Ex. 115 at -445, -452 (██████████████████████████████████████████████████████████

█████████████████).

### G.    Google Trained ████████████████████████████████████.

Fearing it would be left behind in its race against competitors, Google cut corners. As Geoffrey

Hinton, Google's early AI developer, warned: ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████. Ex. 22, Dai Tr. 299:8-21; Ex. 198 at -240, -241. He was right. In

November 2022, OpenAI introduced its chatbot, ChatGPT, to the public. Google's response, confirmed by

Alphabet CEO Sundar Pichai, was a moon shot "AI-first strategy" pivot to develop Gemini, as well as its

Gemini app chatbot and the Gemini multimodal model. Nonetheless, Gemini's performance continued to

lag, while its competitors accelerated. Internal recognition of ████████████████████████

████████████████████████████████████████. Ex. 61 at -854, -862, -867, -871, -887; Ex.

89 at -491, -502, -506, -508, -512; Ex. 91 at -976; Ex. 93 at -043. ████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████, Google was falling further and further back. Ex. 87 at -855-857; Ex.

200 at -986 ("███████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████. Doermann Rep. Part IV.C.4. In furtherance of its goals, Google sought out and

identified █████████████████████████████████████████████████

██████████████████████. Doermann Rep. Part IV.C.2; Ex. 36 at -740-742; Ex. 115 at -559

(██████████████████████████); Ex. 84 (██████████████████████

████████████████). The exemplar training data shows, Google ████████████████

█████████████████████████████████████. *See* Ex. 27.

**H.     Google Deliberately ████████████████████████████.**

Google officers, executives and engineers know ██████████████████████

██████████████████████████████. *See, e.g.*, Ex. 88 at -929; Ex. 91 at

-970, -980; Ex. 54 at -862; Ex. 78 at -823; Ex. 113 at -412; Ex. 74 at -279; Ex. 67 at -621 (████

█████████████████████████████). Google elected to ████████

██████████████████████ Ex. 57 at -985.

█████████████████████████████████████████████████████

██████████████████████. Ex. 93 at -040; Ex. 52 at -515. Google knew ████████

██████████████████████████████████. Ex. 15, Jaskiewicz Tr. 278:19-

279:19, 341:5-342:8, 343:3-16; Ex. 70 at -420 ("███████████████████

███████████████████); Ex. 91 at -976 (████████████████████

████████████."); Ex. 93 at -035; Ex. 89 at -502, -508, -512, -529. But it proceeded anyway—

1  confident it could afford the costs of litigation that would follow. Ex. 52 at -533 (█████

2  ████████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████);

4  Ex. 200 at -985 ("██████████████████████████████████████████

5  ████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████

7  ██████████████████████████████.")

8      The public release of generative AI models in 2022 brought increased attention to their

9  development. At the end of 2022, Google had begun developing its ███████████████████

10 ████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████

12 ██████████████████████. Google has refused to disclose the details of this tool.[4] Regardless, in

13 addition to constituting proof of knowledge and intent, the existence of the tool shows that Google has

14 ████████████████████████████████████████████████████████████

15 █████████████████████████████████████████. Doermann Rep. ¶¶ 74-85; Ex. 125 at

16 -043.C ("███████████████████████████████████████████████████

17 ████████████████████████████████████").

18 **I.    Google** ██████████████████████████████████████████████

19 ████████████████████████████████████.

20     In July, 2023, █████████████████████████████████████████████

21 ████████████████████. Ex. 57 at 985. Google teams ██████████████

22 ████████████████████████████████████████████████████████████

23 ██████████████████████. Ex. 77 at -332, -374; Smith Rep. ¶ 34. Google ultimately decided that

24 ████████████████████████████████████████████████████████████.

25 Smith Rep. ¶ 29; Ex. 195 at -494; Ex. 93 at -033, -035-038, -049-050. However, ██████████

26 ████████████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████████████

28 ─────────────────────
[4] Plaintiffs dispute Google's improper assertions of privilege and arbitrary limitations of scope and have pending and future motions before the Magistrate Judge to obtain such materials.



[REDACTED] Ex. 118 at -952; Furniss Rep. ¶¶ 46-50. Notably,

[REDACTED]

[REDACTED] . *See, e.g.*, Ex. 119 at -977, -978 ([REDACTED]

[REDACTED]"); *accord* Ex. 40 at -474

([REDACTED]); Ex. 50 at -355 ([REDACTED]); Ex. 117 at -938 ([REDACTED]). For this reason,

Plaintiffs' proposed classes exclude works covered by these express licenses. For purposes of this Motion,

this proves that [REDACTED]. Google has simply chosen

not to pay Class members because it is too expensive. *See* Smith Rep. ¶ 38 ("[REDACTED]

[REDACTED]").

**J.    Google** [REDACTED] **Use of Copyrighted Materials.**

Google also [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] . *See* Ex. 17, Xiao Tr. 116:4-20; *see also* 250:21-251:11.

Google also [REDACTED]

[REDACTED] . *E.g.*, Ex. 98 at -398 ("[REDACTED]

[REDACTED]

[REDACTED]"). Google even [REDACTED]

[REDACTED]

[REDACTED] . Gemini lead engineer Andrew Dai [REDACTED]

[REDACTED]

[REDACTED] Ex. 22, Dai Tr. 360:14-361:3. Google [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] . *See* Ex. 17, Xiao Tr. 116:4-20; *see also* 250:21-251:11. As Plaintiffs' expert Dr.

Doermann notes, this makes sense: [REDACTED]

1    ███████? Doermann Rep. ¶¶ 43, 163-186; e.g., Ex. 59 at -993-994; Ex. 127 (████████████

2    ████████████████████████████████████).

3        **K.**     **Common Evidence of Harm to Potential Markets for Class Works.**

4        There is a market for the Class Works, and Google's conduct adversely impacted it. Google's

5    ████████████████████████████████████████████████████████████████████

6    ████████████████████████████████. Smith Rep. ¶¶ 34-37; Ex. 21, Barker Tr. 27:4-8, 29:1-5

7    Ex. 192 at -929-930. Companies have recognized the commercial value of copyrighted content for AI

8    training by ████████████████████████████████████████████. Furniss

9    Rep. ¶¶ 46-55; Smith Rep. ¶ 37 (████████████████████████████████

10   ████████████████). Google's deliberate avoidance of legitimate licensing channels creates widespread

11   harm to this marketplace. Smith Rep. ¶¶ 35-50. Google evaded legitimate market participation through

12   legal strategy, ████████████████████████████████████████

13   ████████████████ Ex. 108 at -433; *see also* Ex. 109 at -445, -446; Ex. 190 at -843.

14   By doing so, Google artificially depressed the potential marketplace for the Class Works, ██████████

15   ████████████████████████████████████████████████████████████

16   ██████████. Smith Rep. ¶¶ 10-12, 40-43; Ex. 91 at -976. *See United States v. Wilson*, 900 F.2d 1350, 1356

17   (9th Cir. 1990) (recognizing that "stolen information always commands less than legitimate information"

18   and thus the actual "market value [of the stolen information] has got to be many times higher").

19   **III.**    **LEGAL STANDARD**

20       To certify a class action, a district court must be satisfied that the requirements of Rule 23 have

21   been met by a preponderance of the evidence. S*ee Olean Wholesale Grocery Coop., Inc. v. Bumble Bee*

22   *Foods LLC*, 31 F. 4th 651, 664-65 (9th Cir. 2022) (en banc). Courts conduct a "rigorous analysis" of the

23   class allegations to ensure that the requirements of Rule 23(a) and one of the requirements of Rule 23(b)

24   have been met*. Wal-Mart Stores, Inc v. Dukes*, 564 U.S. 338, 345, 351 (2011). Courts in the Ninth Circuit

25   have certified cases just like this one. *See, e.g.*, *Bartz v. Anthropic PBC*, 2025 WL 1993577 (N.D. Cal. July

26   17, 2025); *In re Napster, Inc. Copyright Litig.*, 2005 WL 1287611 (N.D. Cal. June 1, 2005); *Flo & Eddie,*

27   *Inc. v. Sirius XM Radio, Inc.*, 2015 WL 4776932 (C.D. Cal. May 27, 2015).

28

IV.    **ARGUMENT**

    **A.    The Proposed Classes Satisfy 23(a).**

       Under Federal Rule of Civil Procedure 23(a), "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). All prerequisites are met here.

    **1.    The Proposed Classes Are Sufficiently Numerous.**

       The proposed classes satisfy Rule 23(a)'s numerosity requirement. Before a class can be certified, the court must determine that it is "so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1). In the Ninth Circuit, numerosity is generally satisfied if the class includes forty or more members. *See In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 959 (N.D. Cal. 2022); *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295, 303 (N.D. Cal. Dec. 11, 2017) ("A class or subclass with more than 40 members 'raises a presumption of impracticability [of joinder] based on numbers alone.'") (citation omitted). Plaintiffs' experts have already identified ██████████████████ ██████████████████████. *See* McCarron Rep. § VIII; *see also* Doermann Rep. Part V (tracing data sets across Google models). Thus, joinder is impracticable.

    **2.    Plaintiffs' Claims Involve Common Issues of Fact and Law.**

       The proposed classes also satisfy Rule 23(a)(2). Commonality under Rule 23(a)(2) requires only a at least one significant question be "'capable of classwide resolution,' meaning that answering the question 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *In re Telescopes Antitrust Litig.*, 348 F.R.D. 455, 467 (N.D. Cal. 2025) (quoting *Wal-Mart*, 564 U.S. at 350). It is a modest threshold that Plaintiffs satisfy. *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (quoting *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013)).

       Here, numerous questions of law and a fact are common to the class. They include: (1) whether Google copied copyrighted works; (2) how Google copied—and used—Plaintiffs' copyrighted work in connection with the generative AI models at-issue in this case; (3) whether Google obtained permission to

do so; (4) the number of copyright violations; and (5) whether Google's conduct was willful, along with the other factors to be considered under Rule 702. Common questions of fact or law with respect to Google's fair use defense include (1) the purposes and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used; and (4) the effect on the potential market. Finally, the remedies to which Plaintiffs and the Classes are entitled also involve common questions of law and fact. "In other words, the question is appropriate for class-wide resolution because either [Google's] company-wide policies and practices violated the law and the rights of the class members, or they didn't." *Owino v. CoreCivic, Inc.*, 60 F.4th 437, 445 (9th Cir. 2022).

Google's copying and use of the copyrighted works occurred through uniform systems and pipelines, using the same processes for all creators' works. Systematic and uniform copying and training is necessary to manage the massive scale of data needed to train an effective Generative AI Model. Doermann Rep. Parts III.A-B; IV, V. Common evidence—Google's internal records, data acquisition records (e.g., ██████████████████████████████████████████████████████), source code, experts' analysis of the training datasets, and other common evidence will resolve issues classwide. This common treatment satisfies Rule 23(a)(2).

### 3. Plaintiffs' Claims Are Typical of the Classes' Claims.

Rule 23(a)(3)'s typicality requirement is satisfied here. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (under Rule 23's permissive standard, class representatives' claims are typical if they are "reasonably co-extensive with those of absent class members."). In other words, "[t]he test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted). Plaintiffs' claims and those of the class all arise from Google's common course of conduct, namely Google's unauthorized copying of Plaintiffs' copyrighted works. *See supra* § II.C. Plaintiffs' claims all rely on the same common facts and do not differ from class member to class member. Issues regarding beneficial ownership do not make Plaintiffs' claims atypical. Every potential class member has allegedly been injured by Google's unauthorized copying of works for which the class members own copyright interests. *See In re Napster*, 2005 WL 1287611, at *4. Each Plaintiff owns the

copyright to a work (books: Almond, Barer, Larson, Leovy; images: Anderson, Fink, Larson, McLennan, Zhang) subjected to Google's common approach to collecting data for training and building its commercial Generative AI Models. *Id.*; *see supra* § II.A.

### 4.  Plaintiffs Fairly and Adequately Represent the Classes.

Plaintiffs also satisfy Rule 23(a)(4)'s adequacy requirements. "The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). To determine whether plaintiffs will fairly and adequately represent a class, courts consider whether the named plaintiffs: (i) have any conflicts of interest with other class members; and (ii) will prosecute the action vigorously on behalf of the class. *See Boston Retirement Sys. v. Uber Techs., Inc.*, 2022 WL 2954937, at *4 (N.D. Cal. July 26, 2022).

Plaintiffs' interests are fully aligned with the Classes. All were injured by Google's common course of conduct and share the same objective: to stop the infringement and secure just compensation. As in *Napster*, "plaintiffs' interests in prosecuting this action include protecting the royalties that they earn from the reproduction and distribution of their copyrighted works and obtaining compensation for the unauthorized use . . . ." *In re Napster*, 2005 WL 1287611, at *5. This interest is widely shared by other copyright owners. *Id.* Plaintiffs are committed to this litigation. They have actively participated, produced extensive written discovery, given testimony, and stand ready to proceed through trial and any appeals. Counsel Decl. ¶¶ 4-14; Ex. 7, Almond Tr. 8:6-11; 20:18-22:5; 33:8-34:1; 340:17-341:16; 344:15-21; 345:21-25; 346:1-19; 346:20-23; 346:25-347:4; 347:16-19; Ex. 8, Andersen Tr. 295:22-296:6; Ex. 9, Barer Tr. 13:5-25, 24:25-25:22, 26:12-18; Ex. 10, Larson Tr. 295:1-18; Ex. 11, Leovy Tr. 41:23-42:23, 44:9-15, 115:3-18; Ex. 12, McLennan Tr. 45:25-46:14, 49:6-161. There is no conflict of interest between Plaintiffs and class members. Plaintiffs' chosen counsel are equally committed to pursuing this action, highly qualified, and have already substantially advanced this case. *See generally*, Counsel Decl.; *see* Fed. R. Civ. P. 23(g). They have extensive experience in class action litigation, including challenging generative-AI products and have vigorously pursued the interests of the proposed class. *See* Counsel Decl., Exs. A-D. Adequacy is therefore satisfied.

### B.  The Proposed Classes Satisfy Rule 23(b)(2).

Certification of a claim for injunctive relief under Rule 23(b)(2) is proper when "the party opposing

the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The requirements for certification under this provision focus on the defendant's conduct rather than individual class member circumstances. Rule 23(b)(2) is "unquestionably" satisfied when class members seek uniform injunctive or declaratory relief to prohibit or remedy policies or practices affecting the entire class. *In re College Athlete NIL Litig.*, 2023 WL 7106483, at *6 (N.D. Cal. Sept. 22, 2023) (quoting *Parsons*, 754 F.3d at 688). Certifying a Rule 23(b)(2) class does not require a finding of predominance. *Id.* Google ████████████████████████████████████████ ████████████████████████████████████████████. Doermann Rep. Part V. Harm is thus ongoing. An injunction prohibiting Google from copying or using Class Works for Generative AI Model training, absent a proper license, would benefit every member of the Class equally. Google's uniform action has applied to all Class Members throughout the relevant period, and the requested injunctive relief would prohibit continuation of the challenged conduct, thereby delivering consistent remedial benefits across the entire proposed class. *In re College Athlete NIL Litig.*, 2023 WL 7106483, at *6. If Plaintiffs prevail, injunctive relief precluding Google from copying Class Works to train its AI models without a license would inure to the benefit of the entire class. Rule 23(b)(2) is thus satisfied.

### C. The Proposed Classes Satisfy Rule 23(b)(3).

Rule 23(b)(3) requires that (1) common questions predominate over individual questions and (2) a class action be superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3). Plaintiffs bring just one claim to this Court for certification. Common evidence satisfies both requirements.

### 1. Common Issues of Law and Fact Predominate.

Rule 23(b)(3)'s predominance requirement "tests whether [the] proposed class[] [is] sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623; "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Olean*, 31 F.4th at 668 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). The rule is satisfied when "a common nucleus of facts and potential legal remedies dominates [the] litigation." *Hanlon*, 150 F.3d at

1022. Plaintiffs must show that a predominating common question or questions are "*capable* of class-wide resolution." *Olean*, 31 F.4th at 667. Here, the heart of this litigation centers on Google's conduct.

### a)    Infringement Will be Resolved Through Common Proof.

The predominance analysis naturally "begins … with the elements of the underlying cause of action." *Olean*, 31 F.4th at 665. Copyright infringement is a strict liability offense with two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of works that are original. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *UMG Recordings, Inc. v. Disco Azteca Distributors, Inc.*, 446 F. Supp. 2d 1164, 1171 (E.D. Cal. 2006). Questions of intent or reliance are necessarily common. Google committed copyright infringement by taking "for free something [it] would ordinarily have to buy." *See A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001), *as amended* (Apr. 3, 2001), *aff'd*, 284 F.3d 1091 (9th Cir. 2002).

### (1)    An Objective, Common Methodology Will Identify the Class.

Each member of the proposed class owns a copyright to a class work registered within five years of publication. Registration can be shown by reference through registration records from the Copyright Office. 17 U.S.C. § 410(c); *Aquarian Found., Inc. v. Lowndes*, 127 F.4th 814, 819 (9th Cir. 2025). Even where "proof of ownership, registration, and actual damages" may require "a work-by-work inquiry," courts have not hesitated to certify copyright class actions. *In re Napster*, 2005 WL 1287611, at *7.

### (2)    Proof of Google's Conduct Establishes Copying.

Google's unauthorized copying of unlicensed copyrighted material in connection with its training data pipeline directly infringes a copyright holder's exclusive right of reproduction. *See A&M Recs. v. Napster*, 239 F.3d at 1014; *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013) ("[D]ownloading copyrighted material ... violates the copyright holder's ... right to reproduction."); *see also* 4 Nimmer on Copyright § 13D.02 ("For instance, photocopying the entirety of a novel is plainly actionable."). The question of whether the use of Plaintiffs' copyrighted works to develop Google's generative AI models will be shown by common service. *See supra* § II.

Judge Alsup put particular emphasis on Judge Patel's analysis of predominance in the *Napster* case.

> [Although] ownership, registration, and actual damages ultimately require[] a work-by-work inquiry, viewing these determinations as purely "individual issues" ignores the fact that the claims of every member of the class are uniformly premised upon the uploading or

downloading of a copyrighted work by Napster users. . . . There can be no serious dispute that these issues are sufficiently "significant" to warrant adjudication of the parties' dispute on a representative rather than individual basis, nor is there any question that considerations of judicial economy heavily favor litigating these common issues once, as part of a single class action, rather than rehashing the same questions of law and fact in each of what could likely amount to thousands of individual lawsuits.

*Bartz*, 2025 WL 1993577, at *15 (quoting *In re Napster*, 2005 WL 1287611, at *7 (citations omitted)); *see also Tyson Foods*, 577 U.S. at 453. Here, as in *Bartz*, there is ███████████████████████ ███████████████████████████████████████████. *Bartz*, 2025 WL 1993511, at *9. Proof of Google's ██████████████████████████████████████████, is common evidence. *See supra* § II.E-J. The training data itself ███████████████████████████████████ ███████████████████████████. Ex. 201 at -901. As described above, ████████████████████ ████████████████████████████████████████. And Plaintiffs' experts have shown a methodology to █████████████████████████████████████████. *See generally* McCarron Rep. The Copyright Register and ISBN numbers provide additional means to identify copyrighted works. *Id.* ¶¶ 104-119.

As the *Bartz* court recently explained, unauthorized copying of works for AI training data is "the classic case for certification." 2025 WL 1993577, at *9. Infringement of this nature "can and should be proven on a classwide basis." *Id.*; *see also Authors Guild v. Google, Inc.*, 282 F.R.D. 384, 395 (S.D.N.Y. 2012) ("Every potential class member's claim arises out of Google's uniform, widespread practice of copying entire books without permission of the copyright holder. . . . Whether this practice constitutes copyright infringement does not depend on any individualized considerations."), *vacated in part on other grounds*, 721 F.3d 132 (2d Cir. 2013); *In re Napster*, 2005 WL 1287611 at *7 (finding predominance even though "proof of ownership, registration, and actual damages" may require "a work-by-work inquiry"). In addition to the granular record of copyrighted material contained in Google's LLM training data, this evidence distinguishes this case from *Bartz* where Judge Alsup denied class certification of a Books3 class because of the paucity of the evidence of reliable useful metadata. *See* 2025 WL 1993577, at *6, 12-13. Here, in contrast, Google ████████████████████████████████████████████ ████████████████████████████. *See* Ex. 22, Dai Tr. 242:9-247:7. Trial of these claims will be straightforward. *See* Pltfs.' Proposed Trial Plan.

### b) Fair Use Will Be Resolved through Common Proof.

Common issues predominate with respect to fair use. As in *Bartz*, "there is no reason to believe it would not be susceptible to treatment by common evidence and common methods." 2025 WL 1993577, at *15. The fair use analysis requires evaluation of four nonexclusive factors: 1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit education purposes; 2) the nature of the copyrighted work; 3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and 4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107. Fair use is a "mixed question of law and fact." *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 24 (2021) (citation omitted).

Whether fair use is an available defense is a common question. Courts have routinely rejected fair use for acquiring unauthorized copies to avoid payment obligations. *See, e.g.*, *BMG Music v. Gonzalez*, 430 F.3d 888, 890-91 (7th Cir. 2005) (finding no fair use where defendant's downloading, playing, and retaining a song for future use was "a direct substitute for a purchased copy"). The Court should do the same here, and in any case, "there is no reason to believe [fair use] would not be susceptible to treatment by common evidence and common methods." *Bartz*, 2025 WL 1993577, at *15.

Common evidence demonstrates Google's use of the Class Works through ███████████ ████████████████████████████████████████. *See* McCarron Rep. Sec. VIII; Doermann Rep. Part III & V.a; *see supra* § II. And "the fact that an allegedly infringing copy of a protected work may itself be only an inchoate representation of some final product to be marketed commercially does not in itself negate the possibility of infringement." *Walker v. Univ. Books*, 602 F.2d 859, 864 (9th Cir. 1979). *See, e.g.*, *A&M Recs. v. Napster*, 239 F.3d at 1015 ("exploitative unauthorized cop[ying] of copyrighted works" in order "to save the expense of purchasing authorized copies" is not fair use); *BMG Music*, 430 F.3d at 891 ("[D]ownloading full copies of copyrighted material [via P2P network] without compensation to authors cannot be deemed 'fair use'" as "copiers such as [defendant] cannot ask courts (and juries) to second-guess the market and call wholesale copying "fair use.'"); *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1043 (9th Cir. 2018) (rejecting "baseless" argument that file-sharing via a P2P network "was permitted by the doctrine of fair use"); *Am. Geophysical Union v. Texaco, Inc.*, 60 F.3d 913, 918-22 (2d Cir. 1994) ("Conceptualized in this way, it is not obvious why it is fair for Texaco to avoid having to pay at least some

price to copyright holders for the right to photocopy the original articles."). Google's deliberate circumvention of licensing channels evidences bad faith that undermines any fair use claim. *See Harper & Row Publ'rs, Inc. v. Nation Enters.*, 471 U.S. 539, 540 (1985) ("The fair use doctrine is not a license for corporate theft, empowering a court to ignore a copyright . . . ."); *Atari Games Corp. v. Nintendo of Am. Inc.*, 975 F.2d 832, 843 (Fed. Cir. 1992).

To the extent Google asserts copying Class Works for AI training is transformative, this question is answered by common proof. Unauthorized copying of copyrighted works even to avoid paying for personal, noncommercial use is non-transformative. *See UMG Recordings, Inc. v. MP3.Com, Inc.*, 2000 WL 710056, at *1 (S.D.N.Y. June 1, 2000) (The "mere fact" that copyright infringement is "clothed in the exotic webbing of [a new technology] does not disguise its illegality."). Here, as in copyright cases addressing the then-new technology of file-sharing of copyrighted works, the Court should find that unauthorized copying of works is not transformative. *See*, *e.g.*, *A&M Recs. v. Napster*, 239 F.3d at 1015.

The works at-issue include books and images, all squarely within the confines of copyright subject matter under § 101. 17 U.S.C. § 101. Google's ▮▮▮▮ provide uniform evidence of the scope of acquisition and use of the works. Proof of the amount and substantiality of the portion used will also be proved by common evidence. Google ▮▮▮▮ ▮▮▮▮. *Hustler Mag. Inc. v. Moral Majority Inc.*, 796 F.2d 1148, 1155 (9th Cir. 1986) (finding that wholesale copying "militates against a finding of fair use").

Finally, Plaintiffs will offer common proof with respect to market effects. Google's ▮▮▮▮ ▮▮▮▮. Smith Rep. ¶¶ 32-38. ▮▮▮▮ ▮▮▮▮. Smith Rep. ¶¶ 34 -37; Ex. 194 at -494. (▮▮▮▮ ▮▮▮▮); Ex. 93 at -041 (▮▮▮▮ ▮▮▮▮); Ex. 64 at -262; Ex. 85 at -524-525. *Am. Geophysical Union*, 60 F.3d at

1   931 (finding it "appropriate to consider the loss of licensing revenues in evaluating 'the effect of the use

2   upon the potential market for or value of'" infringed work). By acquiring free versions rather than

3   purchasing the Class Works (or paying a fee to license the works to train its AI Models), Google avoided

4   market transactions. *See A&M Recs. v. Napster*, 239 F.3d at 1015 (finding no fair use where copying

5   avoided purchasing costs). Indeed, Google's copying, use, and retention is conduct that, if it became

6   widespread, "would adversely affect the potential market for the copyrighted work." *Sony Corp. of Am. v.*

7   *Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984).

8              c)      **Google's State of Mind Will Be Shown Through Common Proof.**

9          Willful copyright infringement is established when it occurs "with knowledge that the defendant's

10  conduct constitutes copying infringement." *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 957 (9th Cir. 2001).

11  Willful infringement expands the statutory damages range up to $150,000 per infringed work. 17 U.S.C.

12  § 504(c)(2). For a class involving millions of copyrighted works, the difference is measured in the billions.

13  Google's state of mind is a matter of common proof. *See In re Napster*, 2005 WL 1287611, at *4.

14             2.      **Damages Are Susceptible to Classwide Measurement.**

15         To satisfy predominance, damages must be "susceptible of measurement across the entire class."

16  *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). The Ninth Circuit has held that "the presence of

17  individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Leyva v. Medline*

18  *Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). Plaintiffs seek statutory damages, the calculation for which

19  is straightforward: the number of infringed works multiplied by the statutory penalty is Google's liability.

20  *See* 17 U.S.C. § 504(c). *See, e.g.*, *In re Napster*, 2005 WL 1287611, at *10 (certifying class before right

21  holders selected between statutory and actual damages). In the alternative, Plaintiffs could seek

22  disgorgement their actual losses and disgorgement of Google's profits from copyright infringement. *See*

23  17 U.S.C. § 504(b).

24     **D.**    **A Class Action Is Superior to Tens of Thousands of Individual Actions.**

25         Rule 23(b)(3)'s superiority prong is satisfied. Class treatment, including a single trial,[5] will achieve

26  "economies of time, effort, and expense" and promote "uniformity of decisions as to persons similarly

27  situated." *Windsor*, 521 U.S. at 615 (citation omitted). This is especially true here, where damages available

28

---

[5] Plaintiffs' proposed trial plan is filed concurrently.

to individual copyright holders do not come close to compensating for the resources necessary to litigate this technically complex case against Google. *Id*. at 617. Plaintiffs' trial will efficiently adjudicate common issues available for thousands of class members. *See* Pltfs.' Proposed Trial Plan. As Judge Alsup recently recognized, "if not brought as a class action, there will likely be no action at all. . . . For good reason: Defendant is formidable. Few if any . . . could muster comparable resources [and] find counsel willing to work pro bono or on a contingency basis..." *Bartz*, 2025 WL 1993577, at *16 (citation omitted).

### 1.     The Proposed Classes Are Objectively Defined.

There is no ascertainability requirement in the Ninth Circuit. *See True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 929 (9th Cir. 2018). "Adequately demonstrating that class members can be identified is sufficient for ascertainability because, 'in the Ninth Circuit, there is no requirement that the identity of the class members . . . be known at the time of certification.'" *Flo & Eddie*, 2015 WL 4776932, at *7 (cleaned up). Regardless, the classes and subclasses are defined based on objective criteria. All class members can be identified through (1) official copyright registrations, demonstrating that each class member has a valid copyright registration with the United State Copyright Office for the works-in-suit (and the registration date), and (2) ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████ ████████████████████████. Exs. 156-181 (registrations); McCarron Rep. ¶¶ 16; 131-164; 169-170; Doermann Rep. Part V. *See, e.g.*, *Authors Guild*, 282 F.R.D. at 391 ("[G]iven the sweeping and undiscriminating nature of Google's unauthorized copying, it would be unjust to require that each affected [author] litigate his claim individually.").

## V.     APPOINTMENT OF CLASS COUNSEL

Plaintiffs request that the Court appoint Joseph R. Saveri of Joseph Saveri Law Firm, LLP and Lesley E. Weaver of Bleichmar Fonti & Auld LLP as Co-Lead Class Counsel, together with Brian Clark of Lockridge Grindal Nauen PLLP, and Ryan Clarkson of the Clarkson Law Firm, P.C. as Class Counsel. *See generally*, Counsel Decl. Fed. R. Civ. P. 23(g)(1) provides that "a court that certifies a class must appoint class counsel." Courts consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation,

and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Proposed Class Counsel satisfy Rule 23(g)'s requirements. They possess the necessary experience, resources, and demonstrated commitment to prosecute these complex claims against Google. Counsel Decl. ¶¶ 21-42, Exs. A-D. Class counsel conducted thorough pre-filing investigations into Google's training practices, pursued extensive written discovery, and supervised technical training data inspection. *Id*. ¶ 29. They have litigated key motions on case sequencing and discovery, defended Class Representatives at deposition, and secured 30(b)(6) and 30(b)(1) testimony establishing the core common proof that will drive resolution of this important matter on a classwide basis. ¶¶ 4-13. Additionally, they have invested substantial time and resources to understand Google's system, analyze its uniform training pipeline, and translate complex technical processes into cognizable legal claims. *Id*. They possess the technical knowledge to challenge Google's defenses and the financial resources to fund this litigation through trial and any appeal. ¶ 38. For these reasons, the Court should appoint Class Counsel.

## VI.    CONCLUSION

For the foregoing reasons, the Court should certify the Class under Rules 23(b)(2) and 23(b)(3); appoint Plaintiffs as Class Representatives; and appoint Plaintiffs' counsel as Class Counsel.

Dated: October 14, 2025                                        Respectfully submitted,

By:    */s/ Lesley E. Weaver*                              By:    */s/ Joseph R. Saveri*
Lesley E. Weaver (SBN 191305)                    Joseph R. Saveri (SBN 130064)
Anne K. Davis (SBN 267909)                        Cadio Zirpoli (SBN 179108)
Joshua D. Samra (SBN 313050)                    Christopher K.L. Young (SBN 318371)
**BLEICHMAR FONTI & AULD LLP**              Elissa A. Buchanan (SBN 249996)
1330 Broadway, Suite 630                           Evan A. Creutz (SBN 349728)
Oakland, CA 94612                                      Aaron Cera (SBN 351163)
Telephone: (415) 445-4003                          **JOSEPH SAVERI LAW FIRM, LLP**
lweaver@bfalaw.com                                  601 California Street, Suite 1505
adavis@bfalaw.com                                    San Francisco, CA 94108
jsamra@bfalaw.com                                   Telephone: (415) 500-6800
                                                              jsaveri@saverilawfirm.com
Gregory S. Mullens (admitted *pro hac vice*)   czirpoli@saverilawfirm.com
**BLEICHMAR FONTI & AULD LLP**              cyoung@saverilawfirm.com
75 Virginia Road, 2nd Floor                          eabuchanan@saverilawfirm.com
White Plains, NY 10603                               ecreutz@saverilawfirm.com
Telephone: (415) 445-4006                          acera@saverilawfirm.com
gmullens@bfalaw.com

*Plaintiffs' Interim Co-Lead Counsel*

Brian D. Clark (admitted *pro hac vice*)
Laura M. Matson (admitted *pro hac vice*)
Arielle S. Wagner (admitted *pro hac vice*)
Consuela Abotsi-Kowu (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
bdclark@locklaw.com
lmmatson@locklaw.com
aswagner@locklaw.com
cmabotsi-kowu@locklaw.com

Stephen J. Teti (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
265 Franklin Street, Suite 1702
Boston, MA 02110
Telephone: (617) 456-7701
sjteti@locklaw.com

Ryan J. Clarkson (SBN 257074)
Yana Hart (SBN 306499)
Mark I. Richards (SBN 321252)
**CLARKSON LAW FIRM, P.C.**
22525 Pacific Coast Highway
Malibu, CA 90265
Telephone: 213-788-4050
rclarkson@clarksonlawfirm.com
yhart@clarksonlawfirm.com
mrichards@clarksonlawfirm.com

Matthew Butterick (SBN 250953)
**BUTTERICK LAW**
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
mb@butloawcklaw.com

*Additional Counsel for Individual and Representative Plaintiffs and the Proposed Class*

1

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

2      I, Lesley E. Weaver, attest that concurrence in the filing of this document has been obtained from

3  the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

4      Executed this 14th day of October, 2025, at Oakland, California.

5                                                              */s/ Lesley E. Weaver*
                                                              Lesley E. Weaver
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28