DAVID H. KRAMER, SBN 168452
Email: dkramer@wsgr.com
MAURA L. REES, SBN 191698
Email: mrees@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300

ERIC P. TUTTLE, SBN 248440
Email: eric.tuttle@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone: (206) 883-2500

PAUL J. SAMPSON (admitted *pro hac vice*)
Email: psampson@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
95 S. State Street, Suite 1000
Salt Lake City, Utah 84111
Telephone: (801) 401-8510

*Counsel for Defendant*
GOOGLE LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| *In re Google Generative AI Copyright Litigation* | Master File Case No.: 5:23-cv-03440-EKL<br>Consolidated with Case No.: 5:24-cv-02531-EKL<br><br>**DEFENDANT GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO EXCLUDE TESTIMONY FROM PLAINTIFFS' PROPOSED EXPERTS DAVID S. DOERMANN, MICHAEL D. SMITH, AND VICTORIA FURNISS**<br><br>Date:        February 4, 2026<br>Time:       10:00 a.m.<br>Courtroom: 7<br>Judge:      Hon. Eumi K. Lee<br><br>**PUBLIC VERSION – REDACTED** |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................... 1

STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED ............................. 1

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 1

    I.    DOERMANN'S AND SMITH'S IMPROPER OPINIONS SHOULD BE EXCLUDED. ............................................................................................................. 1

        1.    Experts Cannot Be Used as Vehicles for Improper and Biased Factual Narratives. ............................................................................................ 1

        2.    Experts Cannot Opine on Google's State of Mind. ....................................... 4

        3.    Smith's Report Contains Improper Legal Conclusions ................................. 5

    II.    THE FURNISS REPORT SHOULD BE EXCLUDED. ......................................... 6

CONCLUSION .......................................................................................................................... 7

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Actuate Corp. v. Aon Corp.*,
  2012 WL 2285187 (N.D. Cal. June 18, 2012) ................................................................. 6

*Berman v. Freedom Fin. Network, LLC*,
  400 F. Supp. 3d 964 (N.D. Cal. 2019) ............................................................................ 5

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
  2019 WL 1369007 (S.D. Cal. Mar. 26, 2019) ................................................................. 7

*Brown v. Google, LLC*,
  2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ............................................................... 5

*Concord Music Grp., Inc. v. Anthropic PBC*,
  772 F. Supp. 3d 1131 (N.D. Cal. 2025) (Lee, J.) ............................................................ 6

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ........................................................................................................ 1

*Dep't of Toxic Substances Control v. Technichem, Inc.*,
  2016 WL 1029463 (N.D. Cal. Mar. 15, 2016) ............................................................ 2, 3

*DZ Rsrv. v. Meta Platforms, Inc.*,
  2022 WL 912890 (N.D. Cal. Mar. 29, 2022) .............................................................. 2, 3

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) ........................................................................................................ 5

*Gold v. Lumber Liquidators, Inc.*,
  323 F.R.D. 280 (N.D. Cal. 2017) .................................................................................... 4

*Holley v. Gilead Scis., Inc.*,
  2023 WL 2469632 (N.D. Cal. Feb. 27, 2023) ............................................................. 4, 5

*In re Ford Tailgate Litig.*,
  2015 WL 7571772 (N.D. Cal. Nov. 25, 2015) ................................................................ 7

*In re Google RTB Consumer Priv. Litig.*,
  2024 WL 2242690 (N.D. Cal. Apr. 4, 2024) ................................................................... 4

*In re Twitter, Inc. Secs. Litig.*,
  2020 WL 9073168 (N.D. Cal. Apr. 20, 2020) ................................................................. 5

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ........................................................................................................ 7

*LinkCo, Inc. v. Fujitsu Ltd.*,
  2002 WL 1585551 (S.D.N.Y. July 16, 2002) .................................................................. 3

*Lord Abbett Mun. Income Fund, Inc. v. Asami*,
  2014 WL 3417941 (N.D. Cal. July 11, 2014) ................................................................. 2

*McHugh v. United Serv. Auto. Ass'n*,
  164 F.3d 451 (9th Cir. 1999) ................................................................................................ 7

*Nationwide Transp. Fin. v. Cass Info. Sys.*,
  523 F.3d 1051 (9th Cir. 2008) .............................................................................................. 5

*Roblox Corp. v. WowWee Grp. Ltd.*,
  2024 WL 4057418 (N.D. Cal. Sept. 3, 2024) ....................................................................... 5

*Siqueiros v. GM LLC*,
  2022 WL 74182 (N.D. Cal. Jan. 7, 2022) ............................................................................. 2

*Stathakos v. Columbia Sportswear Co.*,
  2017 WL 1957063 (N.D. Cal. May 11, 2017) ..................................................................... 4

*Synopsys, Inc. v. Mentor Graphics Corp.*,
  2014 WL 6735460 (N.D. Cal. Nov. 26, 2014) ..................................................................... 2

*Terra Partners v. Rabo Agrifin., Inc.*,
  2010 WL 11566226 (N.D. Tex. July 28, 2010) ................................................................... 7

*Waymo LLC v. Uber Techs., Inc.*,
  2017 WL 5148390 (N.D. Cal. Nov. 2, 2017) ....................................................................... 2

**RULES**

Fed. R. Evid. 702 ............................................................................................................................ 1

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on February 4, 2026, at 10:00 a.m., Defendant Google LLC will move for an order excluding testimony of Plaintiffs' experts, as set forth in the accompanying Proposed Order. Pursuant to Section VIII(a) of the Court's Standing Order, Google certifies compliance with the Court's meet and confer requirement which took place on November 17, 2025 within a few days of the conclusion of the depositions of the proposed experts in question.

**STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED**

Whether testimony of Plaintiffs' proposed experts David S. Doermann, Michael D. Smith, and Victoria Furniss should be excluded as improper under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

**INTRODUCTION**

David S. Doermann, Michael D. Smith, and Victoria Furniss offer reports and opinions on behalf of Plaintiffs that exceed the bounds of permissible expert testimony. Doermann and Smith primarily offer lengthy factual narratives summarizing the evidentiary record as Plaintiffs wish to see it. Their slant on supposed "facts" is attorney advocacy in expert garb and is improper. In addition, Doermann and Smith purport to opine on Google's state of mind, and offer legal conclusions. Those too should be excluded.

The Furniss report is extremely thin and barely referenced in Plaintiffs' certification motion. What little substance it contains consists of legal conclusions. While those are inadmissible, they are particularly improper because Furniss—an English media and entertainment lawyer—is not licensed to practice law in the United States and has no expertise in the generative AI industry. Her testimony should be excluded in full.

**ARGUMENT**

**I.   DOERMANN'S AND SMITH'S IMPROPER OPINIONS SHOULD BE EXCLUDED.**

**1.   Experts Cannot Be Used as Vehicles for Improper and Biased Factual Narratives.**

The majority of Doermann's and Smith's reports are merely their own narrative summaries and interpretations of the evidence spun as Plaintiffs would like. Courts have repeatedly held it is

inappropriate for an expert to "merely summarize[] the record evidence and gratuitously interpret[] it." *Lord Abbett Mun. Income Fund, Inc. v. Asami*, 2014 WL 3417941, at *13, n.8 (N.D. Cal. July 11, 2014); *see also Synopsys, Inc. v. Mentor Graphics Corp.*, 2014 WL 6735460, at *1 (N.D. Cal. Nov. 26, 2014) (same); *DZ Rsrv. v. Meta Platforms, Inc.*, 2022 WL 912890, at *9 (N.D. Cal. Mar. 29, 2022). Exclusion is required where "the evidence [the proffered expert] relied on can speak for itself, and his only contribution would be to pile on a misleading facade of expertise." *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 5148390, at *5 (N.D. Cal. Nov. 2, 2017).

Doermann, whose report addresses Google's generative AI training processes, spends considerable time discussing supposed evidence of Google's models supposedly "memorizing" certain training data. ECF Nos. 252-2, 253-5 ("Doermann Rpt.") ¶¶ 73-74, 76-85. It is not clear why that issue is relevant for this motion or case. But if it were, it would be up to Plaintiffs' counsel, not Doermann, to faithfully describe the evidence. Doermann's passages quoting and paraphrasing deposition testimony and documents are mere advocacy divorced from his supposed expertise. *See*, *e.g.*, Doermann Rpt. ¶¶ 74, 75, 78, 80-82 (summarizing and quoting deposition testimony); Declaration of Kelly M. Knoll Ex. A ("Doermann Tr.") 126:17-128:1 ("What I'm doing is I'm summarizing …"). Doermann also provides lengthy narratives about data that Google used to train its models that are simply snippets from documents seasoned with Plaintiffs' advocacy but devoid of expert analysis. *See*, *e.g.*, Doermann Rpt. ¶¶ 90-153, 161-187; *see also id.* ¶¶ 107–10, 115–16, 121, 123, 129, 145, 147 (summarizing and quoting deposition testimony); ¶¶ 115, 144, 163, 172-187 (quoting extensively from documents and attaching screenshots of same); *see also Dep't of Toxic Substances Control v. Technichem, Inc.*, 2016 WL 1029463, at *1 (N.D. Cal. Mar. 15, 2016) (excluding expert's testimony because he "[did] not analyze his source materials so much as repeat their contents"); *Siqueiros v. GM LLC*, 2022 WL 74182, at *10 (N.D. Cal. Jan. 7, 2022) (excluding expert's opinions "to the extent that they consist of unadorned restatements or summaries of evidence already in the record"). The same is true for much of the report, which is "nothing more than [Doermann's] personal interpretation of documents and

1  evidence." All of that is properly excluded. *DZ Rsrv.*, 2022 WL 912890, at *9.[1]

2    Smith's report is no better on this front. Nearly half of it is devoted to a lengthy factual
3  narrative selectively quoting and paraphrasing Google documents and testimony in a manner
4  biased to Plaintiffs' theories. *See* ECF Nos. 252-4, 253-7 ("Smith Rpt.") ¶¶ 13-31, 34-35, 45, 48-
5  49. The narrative purports to ▮▮▮▮▮
6  ▮▮▮▮▮
7  ▮▮▮▮▮. As with Doermann, the narrative merely reflects
8  Smith's "personal interpretation of documents and evidence." *DZ Rsrv.*, 2022 WL 912890, at *9;
9  *see also* Smith Rpt. ¶¶ 20-21, 25, 29, 31, 41, 48-49 (quoting from documents and inserting
10 screenshots). "[T]estimony by fact witnesses familiar with those documents would 'be far more
11 appropriate. . . and render[] [Smith's] secondhand knowledge unnecessary.'" *LinkCo, Inc. v.*
12 *Fujitsu Ltd.*, 2002 WL 1585551, at *2 (S.D.N.Y. July 16, 2002).

13   Smith's narrative is also an echo chamber for Plaintiffs' counsel's case theories. It "does
14 no more than counsel for plaintiff will do in argument, *i.e.*, propound a particular interpretation of
15 defendant's conduct." *Id.* (cleaned up). For example, Smith asserts that "▮▮▮▮▮
16 ▮▮▮▮▮
17 ▮▮▮▮▮"
18 Smith Rpt. ¶ 14. But Smith did not review any such agreements (Knoll Decl. Ex. C ("Smith Tr.")
19 79:11–22, 95:10–13). His testimony rests on unsupportable spins of deposition testimony. In other
20 words, it is just grist for a misguided position Plaintiffs' counsel wants to advance about the legal
21 interpretation of the agreements. It involves no expert analysis, nor could it since Smith has no

---

[1] Many of Doermann's factual summations are simply wrong. For example, he insists that ▮▮▮▮▮ ECF Nos. 289-35, Expert Report of Konstantinos Psounis ("Psounis Rep."), ¶¶ 76-80. He also alleges that Google "knew it did not have authorization to use" certain datasets, when the very testimony he cited points to the contrary. *Id.* ¶ 71. These testimonials should be excluded. *See Dep't of Toxic Substances Control*, 2016 WL 1029463, at *1 (excluding expert's opinions for, among other reasons, presenting "[k]ey factual errors [that] . . . undermine [the opinions'] reliability"). To the extent the Court accepts them, Google has offered a rebuttal to set the record straight. *See generally* Psounis Rep. ¶¶ 67-84. But this should not be a proper battleground for experts.

expertise in contract interpretation.

### 2. Experts Cannot Opine on Google's State of Mind.

Having assumed the role of Plaintiffs' narrators, Doermann and Smith freely opine on Google's state of mind. As case after case makes clear, inferences regarding Google's knowledge, intent, or motive "lie outside the bounds of expert testimony." *Holley v. Gilead Scis., Inc.*, 2023 WL 2469632, at *2 (N.D. Cal. Feb. 27, 2023) (internal quotation marks and citation omitted); *see also Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 294 (N.D. Cal. 2017) ("Courts routinely exclude expert testimony as to intent, motive, or state of mind").

Both Doermann and Smith repeatedly describe Google's supposed "understanding," "awareness," and "knowledge" of certain issues. *See* Doermann Rpt. ¶¶ 120 (Google was "well aware"), 123 ("Google had an understanding" and "Google also knew"), 124 ("Google believed" and "Google understood"), 158 (Google was "well aware"); Smith Rpt. ¶¶ 38 (Google had a "clear understanding"), 45 (Google "recogniz[ed]"), 49 (same), 50 ("despite apparent awareness"). Such advocacy, if supported by the evidence, must come through attorney argument, not expert opinion. *See*, *e.g.*, *In re Google RTB Consumer Priv. Litig.*, 2024 WL 2242690, at *4 (N.D. Cal. Apr. 4, 2024) (excluding statements that "Google 'understands' its disclosures do not comport with societal norms and it knowingly gives account holders a 'false' expectation of control over their information"); *Stathakos v. Columbia Sportswear Co.*, 2017 WL 1957063, *5–6 (N.D. Cal. May 11, 2017) (excluding statements that the defendant must have been "fully aware of" its allegedly unfair and deceptive acts).

Relatedly, Doermann and Smith speculate often about Google's intent underlying certain decisions, including repeated references to Google's supposed "concerns." *See* Doermann Rpt. ¶¶ 25 (Google "needed" certain data), 73 (Google was "concerned"), 92 (certain data was "important to Google"), 105 ("need" for certain data), 114 ("DeepMind's hunger"), 129 (datasets created "with little regard for respecting copyright"), 148 ("concern"), 149 ("pressure to license data"), 151 ("sanguine" about loss of data), 152 ("needed to seek"); Smith Rpt. ¶¶ 22 ("Google made a calculated decision"), 23 ("raised concerns"), 26 (litigation against other companies "likely accelerated Google's evaluation"), 38 ("Google's concerns"), 41 ("concerns"). This too is

improper. *See*, *e.g.*, *Holley*, 2023 WL 2469632, at *8–9 (excluding statements regarding what "dr[ove]" Gilead's decisions, what "Gilead's decision making was driven by," and how "Gilead was laser focused" or "singularly focused" on something); *Brown v. Google, LLC*, 2022 WL 17961497, at *12 (N.D. Cal. Dec. 12, 2022) (excluding statements that "Google counts on most people" to use its products and "Google is motivated" to behave a certain way); *In re Twitter, Inc. Secs. Litig.*, 2020 WL 9073168, at *11 (N.D. Cal. Apr. 20, 2020) (excluding testimony regarding whether Twitter's processes were "designed for a certain purpose or intent").[2]

### 3. Smith's Report Contains Improper Legal Conclusions.

"[A]n expert cannot give an opinion as to her *legal conclusion*, *i.e.*, an opinion on an ultimate issue of law." *Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1058 (9th Cir. 2008). Such matters are the exclusive province of the trial judge. *See id.*; *see also Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 971 (N.D. Cal. 2019) (experts may not "opine on questions which are matters of law for the court") (internal citations omitted). Courts routinely exclude improper legal conclusions masquerading as expert testimony. *See, e.g.*, *Roblox Corp. v. WowWee Grp. Ltd.*, 2024 WL 4057418, at *7 (N.D. Cal. Sept. 3, 2024) (in copyright infringement case, excluding opinion that certain works were not derivative works).

Smith repeatedly opines that Google's acquisition and use of certain training data was "unauthorized" and requires a license to be "legitimate." Smith Rpt. ¶¶ 10 ( ███████████████████████████████████████ ); 12 ("unauthorized usage"), 41 ("unauthorized use of copyrighted works"), 43-44 ("unauthorized access" and "unauthorized use"), 46 ("retroactive legitimization of existing unauthorized use"). Again, that is improper. Smith's opinions/conclusions involve legal

---

[2] Doermann ostensibly provides his factual narrative for purposes of opining on whether Google's conduct comports with common industry practices. *See*, *e.g.*, Doermann Rpt. ¶¶ 22-23, 30-72. But whether Google follows "common industry practices to build, develop and train" its Generative AI models, Doermann Rpt. ¶ 22, has no bearing on Plaintiffs' copyright claim, specifically whether (1) any Plaintiff is an owner of a validly registered copyright; and (2) Google copied original expression from the Plaintiffs' works in violation of copyright law. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (listing elements of a copyright infringement claim).

determinations concerning, *inter alia*, the scope of licenses or the applicability of fair use. Those determinations are not for Smith to make.[3]

## II. THE FURNISS REPORT SHOULD BE EXCLUDED.

The Furniss report serves no clear purpose. Half of it describes her qualifications, and the remainder boils down to three puzzling opinions.

Furniss first says that she has been asked to consider "whether the scope of" certain content agreements that Google executed in 2023 and 2024 are "consistent with industry practices in creating protections for emerging uses of content protected by copyright." ECF Nos. 252-3, 253-6 ("Furniss Rpt.") ¶ 31. Assuming that specific question matters, Furniss' report leaves it unanswered. The closest she comes is to say that "it was possible, and industry best practice, for Google to draft agreements that specifically provided for AI training and negotiate at arm's-length permission to use copyrighted material for this purpose." *Id.* ¶ 32. Again, it is not clear why that matters. To the extent there is a relevant question lurking nearby, it is not what is "possible" or what Furniss considers "industry best practice," but what specific agreements say and how that language should be interpreted. Neither of those is a proper subject of expert testimony. *See Actuate Corp. v. Aon Corp.*, 2012 WL 2285187, at *1 (N.D. Cal. June 18, 2012) (while an expert may "explain custom and practice" to "aid in the interpretation of an ambiguous term in the contract," she cannot testify "about the particular contracts and conduct at issue"). Either Furniss' opinion is irrelevant or it is improper.

Relatedly, Furniss testified that her "industry" expertise lies in "media and entertainment." Knoll Decl. Ex. B ("Furniss Tr.") at 70:13-21. She admits that she has never worked for any company that has developed a generative AI model (*id.* at 36:8-10); has never advised on the development of a generative AI model (*id.* at 36:17-20); and has never negotiated license

---

[3] Smith's report also includes irrelevant opinions about a purported "risk of market-wide price suppression" and "risk of bargaining power distortion." Smith Rpt. ¶¶ 41-50. Putting aside that "price suppression" and "bargaining power distortion" have no bearing on any issue related to copyright infringement or class certification, a hypothetical and speculative opinion that there is merely a "risk" that these phenomena *might* occur is irrelevant. *Cf. Concord Music Grp., Inc. v. Anthropic PBC*, 772 F. Supp. 3d 1131, 1140 (N.D. Cal. 2025) (Lee, J.) (rejecting Smith's testimony on purported market harm as "both conclusory and speculative").

agreements related to generative AI model training (*id.* at 65:16–20). Thus, if Furniss' opinion about "industry best practice" (Furniss Rpt. ¶ 32) purports to describe best licensing practices in the generative AI industry, Furniss is unqualified to offer it. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (opinion must have a "reliable basis in the knowledge and experience of [the relevant] discipline"); *In re Ford Tailgate Litig.*, 2015 WL 7571772, at *6 (N.D. Cal. Nov. 25, 2015) (excluding expert from testifying as to topics outside of his expertise).

Furniss' two remaining opinions are that certain "Partner Content Agreements" between Google and third parties, and various agreements produced by other generative AI companies, are license agreements, notwithstanding how they are titled. Furniss Rpt. ¶¶ 46-50, 51-55. Again, it is not clear why those opinions make any difference to Plaintiffs' class certification motion or to the case.[4] But to the extent they do, they again are improper. The "law is clear" that expert testimony "cannot be used to provide legal meaning or interpret [a contract] as written." *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2019 WL 1369007, at *13 (S.D. Cal. Mar. 26, 2019) (quoting *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999)). Such interpretations are for the Court to render. And even if it were permissible for an expert to offer opinions about the legal significance of these agreements, it would still be improper for Furniss to do so because she is not qualified as an expert in U.S. law. She did not attend law school here and has never been licensed to practice law in this country. Furniss Tr. at 32:14-23, 32:25–33:5; *Terra Partners v. Rabo Agrifin., Inc.*, 2010 WL 11566226, at *1 (N.D. Tex. July 28, 2010) (excluding opinions of unlicensed law school graduate).

## CONCLUSION

Significant portions of the Doermann and Smith reports and the Furniss report in its entirety are not proper expert testimony. Google respectfully requests that the Court bar those

---

[4] At one point, Furniss does describe the licensing agreements as "common evidence." Furniss Rpt. ¶ 50 ("in my opinion, these licenses granted to Google … are common evidence"). But that phrase was plainly written and inserted for her because she did not understand it and was not using it in any way relevant to a Rule 23 inquiry. Furniss Tr. at 243:4-17 ("Q. [W]hat are [Google's Partner Content Agreements] common evidence of? A. I don't understand the question. Q. Well, you say they're common evidence … are they common evidence of some proposition? A. They're common evidence of what I reviewed.").

materials from its consideration of Plaintiffs' class certification motion, as set forth in the accompanying proposed order.

Respectfully submitted,

Dated: November 20, 2025

By: */s/ Maura L. Rees*
David H. Kramer, SBN 168452
Email: dkramer@wsgr.com
Maura L. Rees, SBN 191698
Email: mrees@wsgr.com
Eric P. Tuttle, SBN 248440
Email: eric.tuttle@wsgr.com
Paul J. Sampson (admitted *pro hac vice*)
Email: psampson@wsgr.com

*Counsel for Defendant* GOOGLE LLC