Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
**BLEICHMAR FONTI & AULD LLP**
1330 Broadway, Suite 630
Oakland, CA 94612
Tel. (415) 445-4003
lweaver@bfalaw.com
adavis@bfalaw.com
jsamra@bfalaw.com

Gregory S. Mullens (admitted *pro hac vice*)
**BLEICHMAR FONTI & AULD LLP**
75 Virginia Road, 2nd Floor
White Plains, NY 10603
Tel. (415) 445-4006
gmullens@bfalaw.com

Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Elissa A. Buchanan (SBN 249996)
Evan A. Creutz (SBN 349728)
Aaron Cera (SBN 351163)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone:    (415) 500-6800
Email:          jsaveri@saverilawfirm.com
                czirpoli@saverilawfirm.com
                cyoung@saverilawfirm.com
                eabuchanan@saverilawfirm.com
                ecreutz@saverilawfirm.com
                acera@saverilawfirm.com

*Plaintiffs' Interim Co-Lead Counsel*
*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| *In re Google Generative AI Copyright Litigation* | Master File Case No. 5:23-cv-03440-EKL-SVK<br>Consolidated Case No. 5:24-cv-02531-EKL-SVK<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Judge:        Hon. Eumi K. Lee<br>Date:         February 4, 2026<br>Time          10:00 A.M.<br>Courtroom:    7, Fourth Floor |

## **REDACTED**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................................1

II.   ARGUMENT ..........................................................................................................2

  A.   Plaintiffs Have Satisfied the Requirements of Rule 23(a) ..............................2

  B.   Common Issues Predominate as Required by Rule 23(b)(3)............................2

  C.   Google's Argument that Plaintiffs Cannot Identify the Class Works Is Contrary to *Briseno* and Will Turn on Common Evidence....................................................3

  D.   Google's Fair Use Defense Depends on Common Proof ..................................7

  E.   Questions Regarding Google's Licenses Are Subject to Common Proof ..........9

    1.   Plaintiffs' Statutory Damages Claims Are Subject to Common Proof.................10

  F.   Class Resolution Is Superior to Individual Actions ........................................11

  G.   Injunctive Relief and Issues Certification Pursuant to Rule 23(c)(4) ............11

III.  THE PROPOSED CLASSES ARE TARGETED AND MANAGEABLE ................12

  A.   Plaintiffs' Proposed Narrowed Class Definitions Conform to Proof...............12

  B.   The Class Definitions Are Not Fail-Safe ......................................................13

  C.   Each Named Plaintiff Satisfies the Rule 23 Requirements..............................13

IV.   CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)...................................................................................................2

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
598 U.S. 508 (2023)...................................................................................................8

*Associated Press v. Meltwater U.S. Holdings, Inc.*,
931 F.Supp.2d 537 (S.D.N.Y. 2013).......................................................................10

*Authors Guild v. Google, Inc.*,
282 F.R.D. 384 (S.D.N.Y. 2012),
*vacated in part*, 721 F.3d 132 (2d Cir. 2013) ...........................................................3

*Bartz v. Anthropic PBC*,
787 F.Supp.3d 1007 (N.D. Cal. 2025) ..................................................................7, 8

*Bartz v. Anthropic PBC*,
791 F.Supp.3d 1038 (N.D. Cal. 2025) ............................................................ *passim*

*Baystate Techs., Inc. v. Bentley Sys., Inc.*,
946 F. Supp. 1079 (D. Mass. 1996) ......................................................................2, 4

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2019) ........................................................................ *passim*

*Calhoun v. Google LLC*,
349 F.R.D. 588 (N.D. Cal. 2025)............................................................................12

*Carnegie v. Household Int'l, Inc.*,
376 F.3d 656 (7th Cir. 2004) ..................................................................................11

*Castillo v. Bank of Am. NA*,
980 F.3d 723 (9th Cir. 2020) ....................................................................................2

*Chess v. Volkswagen Grp. of Am., Inc.*,
2021 WL 5507177 (N.D. Cal. Nov. 24, 2021) .........................................................5

*Desire, LLC v. Manna Textiles, Inc.*,
986 F.3d 1253 (9th Cir. 2021) ................................................................................10

*Disney Enters., Inc. v. VidAngel, Inc.*,
2020 WL 2738233 (C.D. Cal. Mar. 31, 2020).........................................................10

*Doe v. Mindgeek USA Inc.*,
702 F.Supp.3d 937 (C.D. Cal. 2023) .............................................................5, 10, 11

*Dream Games of Ariz., Inc. v. PC Onsite*,
    561 F.3d 983 (9th Cir. 2009) ................................................................................................14

*Hargis v. Pacifica Senior Living Mgmt., LLC*,
    2024 WL 2967536 (C.D. Cal. May 7, 2024) ........................................................................10

*Herrera v. LCS Fin. Servs. Corp.*,
    274 F.R.D. 666 (N.D. Cal. 2011) .........................................................................................11

*Hilao v. Estate of Marcos*,
    103 F.3d 767 (9th Cir. 1996) ..................................................................................................6

*In re HIV Antitrust Litig.*,
    2022 WL 22609107 (N.D. Cal. Sep. 27, 2022) ......................................................................6

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*,
    609 F.Supp.3d 942 (N.D. Cal. 2022) .....................................................................................2

*Kadrey v. Meta Platforms, Inc.*,
    788 F.Supp.3d 1026 (N.D. Cal. 2025) ....................................................................................7

*Kihn v. Bill Graham Archives, LLC*,
    2022 WL 18935 (9th Cir. Jan. 3, 2022) ..................................................................................6

*Le v. Zuffa, LLC*,
    2023 WL 5085064 (D. Nev. 2023) ...............................................................................10, 15

*Leyva v. Medline Indus. Inc.*,
    716 F.3d 510 (9th Cir. 2013) ................................................................................................10

*McCurley v. Royal Seas Cruises, Inc.*,
    331 F.R.D. 142 (S.D. Cal. 2019) ............................................................................................9

*McMillion v. Rash Curtis & Assocs.*,
    2017 WL 3895764 (N.D. Cal. Sep. 6, 2017) .......................................................................13

*Mejdrech v. Met-Coil Systems Corp.*,
    319 F.3d 910 (7th Cir. 2003) ................................................................................................12

*In re Napster, Inc. Copyright Litig.*,
    2005 WL 1287611 (N.D. Cal. June 1, 2005).................................................................2, 3, 10

*Nevarez v. Forty Niners Football Co., LLC*,
    326 F.R.D. 562 (N.D. Cal. 2018)............................................................................................5

*Parko v. Shell Oil Co.*,
    739 F.3d 1083 (7th Cir. 2014) ..............................................................................................11

*Phillips Petrol. Co. v. Shutts*,
    472 U.S. 797 (1985)..............................................................................................................11

*Schneider v. YouTube, LLC*,
    674 F.Supp.3d 704 (N.D. Cal. 2023) .................................................................6

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ......................................................................6

*Tinnin v. Sutter Valley Med. Found.*,
    647 F.Supp.3d 864 (E.D. Cal. 2022).............................................................13

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016).........................................................................................6

*Unicolors, Inc. v. Urb. Outfitters, Inc.*,
    853 F.3d 980 (9th Cir. 2017) ......................................................................4

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ....................................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)........................................................................................2

*Williams v. Apple, Inc.*,
    338 F.R.D. 629 (N.D. Cal. 2021)...............................................................3, 5

*Wilson v. LSB Indus., Inc.*,
    2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018) .............................................4

*Woodland v. Hill*,
    136 F.4th 1199 (9th Cir. 2025) ....................................................................2

**STATUTES**

17 U.S.C. § 107...................................................................................................7

17 U.S.C. § 501........................................................................................2, 14, 15

17 U.S.C. § 504................................................................................................10

**RULES**

Fed. R. Civ. P. 23(a) ..........................................................................................2

Fed. R. Civ. P. 23(b) ...............................................................................2, 3, 11

Fed. R. Civ. P. 23(c) ........................................................................................12

**OTHER AUTHORITIES**

*Bartz v. Anthropic PBC*,
    No. 3:24-cv-05417 (N.D. Cal. Apr. 17, 2025), ECF No. 148
    (Def's Opp. to Mot. for Class Cert.) ...........................................................13

*Bartz v. Anthropic PBC*,
    No. 3:24-cv-05417 (N.D. Cal. Aug. 15, 2015), ECF No. 317
    (Mot. to Approve Class Notice)......................................................................................................4

Ninth Circuit Manual of Model Civ. Jury Instrs. § 17.35 (2017) ............................................................10

## I.    INTRODUCTION

Because the evidence of common conduct overwhelms administrative questions about established copyrighted works, this case should be certified under Rule 23(b)(2) and (3). To develop its AI models, Google engaged in a uniform and systematic course of mass infringement of the copyrights on millions of books and images, copying them without authorization. Google's conduct, including where and how it copied copyrighted works in developing the models at issue, is consistent across the works. Whether Google's conduct constitutes fair use is the overarching issue in the case, turning on common issues of fact and law involving expert testimony. All is capable of common proof. Were each Plaintiff to try this case on their own, these same legal and factual issues would be repeated in each case. Class Members will establish class membership and prima facie evidence of their claim by providing a copyright registration, as Named Plaintiffs already have. Plaintiffs, including the Named Plaintiffs, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████. This can be cross-checked with Google's own internal indexes and records of the training data.

Google's primary attack is to the manageability of this class action. But the Ninth Circuit does not credit administrative feasibility arguments, recognizing that practical issues can be addressed in a number of ways, including by subclasses or through a properly designed claims administration process. Decades of class action practice involving bundled property and ownership rights confirm that such issues are not a basis to deny certification, as the Ninth Circuit's ruling in *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2019) confirms. Plaintiffs' rebuttal expert, Professor Lynn Baker, shows how courts properly and practically manage such administrative questions.[1] Questions concerning shared or transferred copyright ownership are routine administration matters, properly handled after trial or settlement. Allowing this action to proceed on a class basis is plainly superior to individualized trials, or to the more likely alternative, which is no redress at all for thousands of authors and creators whose works have been taken and used,

---

[1] Plaintiffs submit rebuttal expert reports, attached hereto as Exhibits to the Supplemental Declaration of Gregory S. Mullens ("Suppl. Mullens Decl."), in support of their Reply for the limited purpose of responding to arguments or issues raised by Google in its Opposition Brief and supporting papers.

without consent and without compensation.

## II.   ARGUMENT

### A.   Plaintiffs Have Satisfied the Requirements of Rule 23(a)

Plaintiffs satisfy all requirements of Rule 23(a). First, class members are so numerous that joinder would be impracticable. Fed. R. Civ. P. 23(a)(1). Google admits that it copied a "vast universe" of books and images for use as AI training data. Plaintiffs reasonably estimate class members to number in the hundreds of thousands and have already identified ███████████████████████. *See In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F.Supp.3d 942, 959 (N.D. Cal. 2022). Second, Rule 23(a)(2)'s commonality requires only a single significant question of law or fact "capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011); *see In re Napster, Inc. Copyright Litig.*, 2005 WL 1287611, at *7 (N.D. Cal. June 1, 2005) ("[C]laims of every member of the class are uniformly premised upon the uploading or downloading of a copyrighted work[.]"). Third, Named Plaintiffs' claims are typical of the class as they arise out of the same facts. *See* Fed. R. Civ. P. 23(a)(3); *Castillo v. Bank of Am. NA*, 980 F.3d 723, 729-30 (9th Cir. 2020). Fourth, Plaintiffs have shown that each of the Named Plaintiffs is an engaged and adequate class representative. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

### B.   Common Issues Predominate as Required by Rule 23(b)(3)

Google disputes that Plaintiffs have satisfied predominance and superiority under Rule 23(b)(3), but this is a clear case of common evidence. Plaintiffs assert a single claim for direct infringement under the Copyright Act, 17 U.S.C. § 501, *et seq*. The claim requires proof of two elements: (1) that plaintiffs own a valid copyright, and (2) that the defendant infringed it. *Woodland v. Hill*, 136 F.4th 1199, 1206 (9th Cir. 2025). Ownership is shown by proof of a registered copyright. Copyright registration records maintained by the U.S. Copyright Office ("USCO") establish "a *rebuttable presumption of validity and ownership*." *Baystate Techs., Inc. v. Bentley Sys., Inc.*, 946 F. Supp. 1079, 1086 (D. Mass. 1996) (emphasis added). Infringement is shown by common proof of Google's infringing conduct. Google systematically made numerous unauthorized copies of Class Members' works to train its AI models. Finally, Google's affirmative defense that its mass unauthorized copying constitutes fair use presents overarching predominating common questions of law and fact. *See Authors Guild v. Google, Inc.*, 282 F.R.D. 384, 395

(S.D.N.Y. 2012), *vacated in part*, 721 F.3d 132 (2d Cir. 2013) (finding common issues predominated where "[e]very potential class member's claim arises out of Google's uniform, widespread practice of copying entire books without permission of the copyright holder" and because "the question of 'fair use' may be evaluated on a sub-class-wide basis"). Rule 23(b)(3)'s predominance requirement is satisfied. *See Bartz v. Anthropic PBC*, 791 F.Supp.3d 1038, 1054-62 (N.D. Cal. 2025); *Napster*, 2005 WL 1287611, at *7.

### C.    Google's Argument that Plaintiffs Cannot Identify the Class Works Is Contrary to *Briseno* and Will Turn on Common Evidence

Ignoring the common questions around Google's conduct, Google contends that (1) Plaintiffs must identify the works in its own possession; and (2) ownership and validity of copyright registrations cannot be established by common proof or methods. It claims that proof of ownership is an individual question, rendering a class action administratively unfeasible and overcoming predominance. Opp. at 13. Given that the Named Plaintiffs have established standing, both are administrative questions and fail under the law of Ninth Circuit, which expressly rejects any administrative feasibility requirement under Rule 23. *Briseno*, 844 F.3d at 1126. Joining the Sixth, Seventh, and Eighth Circuits, the Ninth Circuit in *Briseno* agreed that district courts possess ample tools to address manageability concerns. *Id.* at 1123. "For example, Rule 23(c) enables district courts to divide classes into subclasses or certify a class as to only particular issues[.]" *Id.* at 1128. The Ninth Circuit also recognized that "[a]t the claims administration stage, parties have long relied on 'claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court' to validate claims." *Id.* at 1131 (citation omitted); *see Williams v. Apple, Inc*., 338 F.R.D. 629, 645-46 (N.D. Cal. 2021) ("[T]he asserted difficulty of identifying 'who paid for a subscription to iCloud' is no bar to predominance" because it is a claims administration issue.).

First, Google insists that Plaintiffs must search through the small sample of datasets that Google provided to identify class members' works. Plaintiffs dispute that this is the most efficient form of proof, but have still shown that there is a reliable methodology to do so. By matching reliable authoritative lists of copyrighted works to the ███████████████ Google provided, Plaintiffs' expert McCarron has identified more than ████████████████████████████████████████████████████████████████████

████████████████████████████████████████████. Ex. 203 ("McCarron Reb. Rpt.") ¶41 & n.6.

McCarron's scientific methodology is a repeatable matching exercise, relying on a simple search for text and images in training datasets for reliable identifiers of U.S. copyright registrations, including USCO records and ISBNs. For books, McCarron searched for ISBNs and text strings from copyrighted works. For images, McCarron matched ███████████████████████████ to presumptively valid USCO registrations. McCarron Rpt. ¶¶111-30. In copyright cases, the finder of fact may determine validity and ownership based on common evidence from the USCO database of copyright registrations. *See Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 988 (9th Cir. 2017). Thus, there is a reliable methodology for objectively identifying class members. *See Bartz*, 791 F.Supp.3d at 1054-58.

Google offers the opinion of Mr. Patry to advance the extraordinary argument that USCO records or ISBNs are unreliable. Patry Rpt. ¶¶8-10. This is wrong and ignores the many steps the USCO takes to validate claims. Ex. 207 ("Seeley Reb. Rpt.") ¶¶2, 11-29; *see Baystate Techs.*, 946 F.Supp. at 1086. Patry's opinion would undermine all copyright claims relying on USCO records. Google also quarrels with McCarron's use of data from Bowker, the official source of ISBNs in the United States and the same information plaintiffs in *Bartz* used to verify membership *after* the class was certified. *See* Mot. to Approve Class Notice at 7-8, *Bartz v. Anthropic PBC*, No. 24-cv-05417 (N.D. Cal. Aug. 15, 2015), ECF No. 317.

Google also possesses a host of information—which it refused to produce—to be used to cross-check and validate this matching methodology. Google (1) ████████████████████████ ████████████████ (*e.g.*, Ex. 17 at 58:15-22, 116:4-20, 149:20-150:3), and (2) ██████████ ████████████████████████████████████████ (*e.g.*, Ex. 22 at 313:10-317:19). As Plaintiffs' expert Doermann testified, Google maintains this information because these ████████████ ████████████████████████████████. Doermann Rpt. ¶¶31-37 & §IV.A & C; Ex. 204 ("Doermann Reb. Rpt.") ¶¶25-28; *see Wilson v. LSB Indus., Inc.*, 2018 WL 3913115, at *7 (S.D.N.Y. Aug. 13, 2018) (certifying class where members "can be identified from the books and records maintained by [defendant] and its agents"). Google has copied and acquired voluminous material from a variety of sources. ████████████████████████████████████████████████ ████████████████████████████████████. Doermann Rpt. ¶¶32-37; Doermann Reb. Rpt. ¶¶22-27. The record evidence shows Google did just that. *E.g.*, Exs. 125, 200 (████████████ ████████████████). It is clear that Google already employs tools to identify copyrighted materials.

Auster Ex. 179 (█████████████████████████████████████████████

████████████████████████████████████████); Psounis Rpt. ¶24 (citing Auster Ex. 179); Doermann

Reb. Rpt. ¶¶15-22.[2] Google just refuses to make them available to Plaintiffs.

Second, Google asserts that at the class certification stage, Plaintiffs must show proof of a valid copyright for each work *and* conclusively establish who owns those rights. Google says this can only be done by deposing every single class member, rendering this case unmanageable or administratively unfeasible as a class action. But Google has no say in allocation. Its speculation about the economic interests of certain class members is not a basis to refuse to certify a meritorious class action and to permit Google to benefit from its conduct or retain its ill-gotten gains. Allocation of judgment proceeds for each registered work "does not implicate . . . due process interest at all [because] the addition or subtraction of individual class members affects neither defendant's liability nor the total amount of damages it owes the class." *Briseno*, 844 F.3d at 1132 (citation omitted). Unlike cases like *Briseno* where no reliable purchase records or other prima facie evidence exists, reliable and authoritative external records exist here: the USCO copyright registration database and the Bowker database. *See, e.g.*, *Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562, 577 (N.D. Cal. 2018) (identification with stadium ticket records and self-identifications); *Chess v. Volkswagen Grp. of Am., Inc.*, 2021 WL 5507177, at *9 (N.D. Cal. Nov. 24, 2021) (reference to external databases to identify class); *Williams*, 338 F.R.D. at 645-46. Each class member can submit proof of copyright within the required time period and submit affidavits attesting to issues that Google's experts identify. *See, e.g.*, *Bartz*, 791 F.Supp.3d at 1053 ("If the author controls the loan-out, she can bring the suit in its name, or effect a transfer from one hand to the other hand by at anytime simply memorializing that intent in writing." (citation omitted)). Disputes about entitlement to class action proceeds are routine and can be adjudicated or resolved within the claims process, or failing that, by submission to the Court. *Briseno*, 844 F.3d at 1131; *Doe v. Mindgeek USA Inc.*, 702 F.Supp.3d 937, 950 (C.D. Cal. 2023) ("[C]lass members may self-identify, and defendants may challenge the claims of absent class members during the claims administration process."). Similarly, it has long been settled that

---

[2] Plaintiffs sought evidence related to Google's records of the copyrighted materials Google used to train the at-issue models, including lists it maintains by author, title, and publisher. The Court denied it as "not proportional to the needs of the case." ECF No. 311. It is unfair to permit Google to resist this discovery while relying on its absence to defeat class certification.

individual issues regarding damages are not an impediment to class certification when the requirements of Rule 23(a) are established and common questions predominate as to liability and causation. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016); *see, e.g.*, *In re Lidoderm Antitrust Litig.*, 2017 WL 679367, at *11 (N.D. Cal. Feb. 21, 2017) ("differences in damages will rarely suffice to defeat class certification"); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) ("Where the only question is how to distribute the damages, the interests affected are not the defendant's but rather those of the silent class members."); *Hilao v. Estate of Marcos*, 103 F.3d 767, 786 (9th Cir. 1996) (noting that defendant's interest is "only in the total amount of damages for which it will be liable," not "the identities of those receiving damage awards"); *In re HIV Antitrust Litig.*, 2022 WL 22609107, at *19 (N.D. Cal. Sep. 27, 2022) (questioning whether "injury status of specific class members is of any real significance" to the extent it was "simply a matter of damages allocation"). As Prof. Baker explains, these are questions commonly addressed in administering class claims. Ex. 206 ("Baker Reb. Rpt.") ¶¶6, 25-30. The same objective inquiries Google has raised to test the Named Plaintiffs' copyrights can be handled post-trial or post-settlement, as in *Bartz*. *See* Opp. at 13-16; Auster Decl. ¶¶3, 30-35, 53-6, 70-71, 87-93, 109-111, 118-121.

Google's reliance on *Kihn v. Bill Graham Archives*, *LLC*, 2022 WL 18935 (9th Cir. Jan. 3, 2022), *Schneider v. YouTube, LLC*, 674 F.Supp.3d 704 (N.D. Cal. 2023), and *Football Ass'n Premier League Ltd. v. YouTube, Inc.*, 297 F.R.D. 64 (S.D.N.Y. 2013), is misplaced. Opp. at 1-2, 12, 17. In *Kihn*, defendants offered proof of differing agreements which may or may not have provided permission to use the copyrighted work. 2022 WL 18935, at *2 n.2. In *Schneider*, the jury would have been asked to resolve "a multiplicity of disputes of fact about Schneider's contractual arrangements and licenses, and related issues;" Google has offered no proof and Google's witnesses can identify no occasion when Google obtained such permission. 674 F.Supp.3d at 713. And *Premier League* was a contributory infringement action, turning on records of what potentially-infringing materials individual users uploaded and what YouTube and Google actually knew about *each* upload. 297 F.R.D. at 65; Seeley Reb. Rpt. ¶52. As Plaintiffs' expert Baker explains, as long as objective criteria can be applied, money judgments from class actions can be administered fairly and objectively. Baker Reb. Rpt. ¶¶7, 32-36. There is a "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability." *Briseno*,

844 F.3d at 1128.

### D.    Google's Fair Use Defense Depends on Common Proof

Google's fair use defense is the overarching and predominant legal and factual issue in this case. The fair use inquiry requires consideration of four factors: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount used; and (4) the effect on the potential market. 17 U.S.C. § 107. Google's proof as to each would be identical for each Plaintiff and class member.

As to the first factor, Google's purpose in using the copyrighted material is common and does not involve individualized issues. *See* Doermann Rpt. ¶¶51-53, 105-58; Ex. 68; Doermann Reb. Rpt. §III.E.2; Ex. 127 at -676 (███████████████████████████████████████████

███████████████████); Ex. 59 (███████████████████████████████████████████

███████). Dr. Doermann explains Google's ███████████████████████████████████

███████. Doermann Rpt. §III.B; Doermann Reb. Rpt. §III.E.2. He further opines that ██████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████. Doermann Rpt. §III.C; Doermann Reb. Rpt. §III.C.

Google misplaces its reliance on aspects of *Kadrey v. Meta Platforms, Inc.*, 788 F.Supp.3d 1026 (N.D. Cal. 2025), and *Bartz*. Opp. at 20. In *Bartz*, the litigation class was certified, followed by settlement class certification. In chief respects, *Bartz* is on point here. The *Bartz* court found fair use to be a common question, as *how* Anthropic obtained books for training AI models (copying pirated data sets) "concern[s] a common course of conduct that can be established with common evidence and methods," certifying a class after summary judgment on fair use. *Bartz*, 791 F.Supp.3d at 1061. Here, Google's ███████████████

███████████████████████████████████████████████████████████████████████████

███████████████ *Compare Bartz v. Anthropic PBC*, 787 F.Supp.3d 1007, 1015 (N.D. Cal. 2025) ████████

██████████████████████████████████████████████████████████████, *with* ████████████████

████ As to *Kadrey*, the court has not yet considered class certification.

Google claims that no Named Plaintiff has identified a copyrighted work in pirated data sets. That is false. For example, Plaintiffs identified their works in pirated data sets in the operative complaint. *E.g.*, SACC ¶¶18-26, 35-44, 81-85, 90-91. Further, many of their works can be found in *The Atlantic's* searchable compilation of pirated data sets used by AI companies for training, including Z-Library and

LibGen. *See The Atlantic*, AI Watchdog, https://www.theatlantic.com/category/ai-watchdog/. Plaintiffs have shown that ███████████████████████████████████. McCarron Rpt. ¶¶16(a)(ii), 16(e) & §VIII. This is sufficient at this juncture. However, ████████████████████████████████

███████████████████████████████████████████████████████████████████████

█████████████████████████████████████████.

As with pirated works, Google knew it had no license to copy works it had obtained for other purposes and train the models on them: the ███████████████ (subclass one) and the █████

████████ (subclass two). Google ████████████████████████████████████████████

████████████████████████████. Seeley Reb. Rpt. ¶¶47-51. This shows "a common course of conduct that can be established with common evidence and methods." *Bartz*, 791 F.Supp.3d at 1061. Such use, regardless of prior permissible uses, must be evaluated separately. *Bartz*, 787 F.Supp.3d at 1026 ("Each use of a work must be analyzed objectively.") (citing *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 544-45 (2023)). Evidence that Google ███████████████████████████ and copied the material for its commercial purposes is common to the class and defeats fair use.

Proof that the second and third factors weigh against fair use is also common. Google's argument that the "nature of each work and the amount of any work used will require individualized evidence" is unsupported. Opp. at 20. Google copied books and images, which contain "expressive elements." *See Bartz*, 787 F.Supp.3d at 1029. Books and images are considered high-quality data uniformly coveted by developers of AI (including Google) because of their expressive content. Doermann Rpt. §IV.D; Doermann Reb. Rpt. §III.B. Google has not identified a single work that does not contain expressive elements. In addition, the evidence ██████████████████████████████████████████████████████████

████████████████████████████████████████. McCarron Rpt. §VIII; McCarron Reb. Rpt. ¶3 & §VI (███████████████████████████████████████████████████████████████████████

██████); *see* Declaration of Gregory S. Mullens, ECF No. 252, ¶8 (collecting authority). This evidence is common to the class and further supports class certification.

Proof of the fourth factor, market effects, is also common. Proof of the existence and nature of the market for Plaintiffs' works or for training data does not depend on any particular class member but instead on proof of market players and market conduct. The evidence here shows such markets are well-developed.

Smith Rpt. ¶¶32-39; Ex. 205 ("Smith Reb. Rpt.") ¶¶21-31. As to market effects, Smith shows how Google systematically subverted and handicapped the ████████████████████████████ ████████████████████████████████████. Smith Rpt. ¶¶41-50; Smith Reb. Rpt. ¶¶33-46. Google's own documents confirm ███████████████████████████████████████. In particular, Google refused to ████████████████████████████████████████████████████████ ██████████████████████████████████████████████" *See* Smith Rpt. ¶41; Smith Reb. Rpt. ¶34. Google knew that were ████████████████████████████████ █████████████████████████████████. Google ████████████████████████████ █████████████████████████ Smith Rpt. ¶29; and ██████████████████████████ ██████████████████████████████████████, *id.* ¶¶34-35. Most significantly, Google developed ██████████████████████████████████████████████████████████. *Id.* ¶29; Smith Reb. Rpt. ¶21, 23. Google's own ████████████████████████. Smith Rpt. ¶¶29, 34. Google does not dispute that this evidence is common, instead challenging it as "speculative." Whether the evidence is speculative and whether Google's internal records are to be believed are entirely common questions. Its own economist, Sullivan, offers no opinion or evidence of his own that Google's conduct caused no market harm. *See McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 173-74 (S.D. Cal. 2019) ("Where a party has not submitted any evidence of [affirmative defenses], courts will not presume that resolving such issues requires individualized inquiries." (quotation omitted)) (collecting cases).

### E.    Questions Regarding Google's Licenses Are Subject to Common Proof

Google claims resolving license issues demands an inquiry into "thousands" of individual licenses. Not so. The class definition excludes any copyrighted material Google obtained by an express license. Google points to form contracts, including ██████████████████████, Google's Terms of Service, and YouTube's Terms of Service, and to robots.txt protocols through which Google contends it obtained licenses.[3] Opp. at 3, 4, 19. Whether robots.txt protocols or form contracts contain licenses is disputed by Plaintiffs. *See, e.g.*, *Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F.Supp.2d 537,

---

[3] The subclasses only vary based on whether source-dependent licenses, if any, are applicable to the works Google copied and used to develop the at-issue models. Even these issues will be determined based on common questions as to each subclass: do the applicable standardized license terms particular to each source, if any, permit Google to use registered copyrighted works for AI training?

563-64 (S.D.N.Y. 2013) (explaining why robots.txt is not appropriate to enforce the Copyright Act). Courts routinely conclude the meaning and interpretation of form contracts are common issues. *See Le v. Zuffa, LLC*, 2023 WL 5085064, at *14, 22-24, 27 (D. Nev. 2023) (certifying class where at-issue agreements contained common terms and clauses). For example, Google claims it possesses a license to train on Plaintiffs Almond's, Andersen's, Barer's, Larson's, and McLennan's works based on their use of Google platforms such as YouTube, Blogger, or Photos. As to these contracts, Google offers no evidence connecting these documents to works contained in Google's sample training sets. *See* Auster Decl. ¶¶42-44, 62-64, 77-80, 97-99, 126. And Google has never contended that it actually obtained the Works in Suit from those platforms for training. Regardless, Plaintiffs dispute Google's assertions that by posting content to a Google property, users license Google to train AI. Resolution of that issue is another common question.

### 1. Plaintiffs' Statutory Damages Claims Are Subject to Common Proof

Calculation of individualized damages is not an impediment to class certification. *See, e.g.*, *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). Even if they were, Plaintiffs avoid individualized questions by pursuing statutory damages, as authorized by statute. 17 U.S.C. § 504(c). This also favors class certification. *See, e.g.*, *Napster*, 2005 WL 1287611, at *10; *Mindgeek*, 702 F.Supp.3d at 950 ("Plaintiff seeks considerable statutory damages, which supports a finding of predominance."). The case upon which Google relies, *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253 (9th Cir. 2021), merely stands for the proposition that statutory damages are a ready substitute for actual damages such that plaintiffs are entitled to only one award from a group of jointly liable defendants. Where mass infringement is at issue, the jury instructions and verdict form will ask for a "per work" amount to be multiplied by the total number of works. *See, e.g.*, *Hargis v. Pacifica Senior Living Mgmt., LLC*, 2024 WL 2967536, at *4 (C.D. Cal. May 7, 2024); *Disney Enters., Inc. v. VidAngel, Inc.*, 2020 WL 2738233, at *2 (C.D. Cal. Mar. 31, 2020). The amount of statutory damages is to be assessed by the jury based on factors including Google's conduct, willfulness, and knowledge. *See* Ninth Circuit Manual of Model Civ. Jury Instrs. § 17.35 (2017); 17 U.S.C. § 504(c). The "circumstances of infringement" likewise turn on Google's conduct. And the evidence showing that Google's conduct was directed and managed by ████████████ ████████████████████████████████████████, highlights the commonality of the proof. *See* Ex. 53 at -536 (████████████████████████████████); Ex. 91 at -970

1  ("████████████████████████████████████"); Ex. 213 at 191:19-24

2  ("████████████████████████████████████.").

### F.    Class Resolution Is Superior to Individual Actions

Google misses the point when it claims that there should be no class actions under the Copyright Act because the statutory damages and attorneys' fees it allows provide sufficient incentives for those injured to seek redress. The real question is whether the class action is a viable alternative to the thousands of actions Google advocates. *See Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions may permit the plaintiffs to pool claims which would be uneconomical to litigate individually."); *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) ("Predominance of issues common to all class members, like the other requirements for certification of a suit as a class action, goes to the efficiency of a class action as an alternative to individual suits."). Google's real goal is avoiding liability, not judicial efficiency. The more likely alternative to a class action is that many viable claims will never be vindicated at all. Baker Reb. Rpt. ¶41; *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The *realistic* alternative to a class action is not 17 million individual suits, but *zero* individual suits.") (second emphasis added); *Mindgeek*, 702 F.Supp.3d at 952-53.

Google relies on *Premier League*, but that decision preceded *Briseno*, is not controlling, and contrasts with Judge Alsup's recent finding in *Bartz* that "there is no serious prospect that [plaintiffs' copyright] claims can be addressed through individual actions." *Bartz*, 791 F.Supp.3d at 1064. Here, every class member's work was copied by one company, Google, to develop its AI models. Class litigation is the superior method for adjudicating these claims. *See Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 681-82 (N.D. Cal. 2011).

### G.    Injunctive Relief and Issues Certification Pursuant to Rule 23(c)(4)

Plaintiffs seek certification of an injunctive relief class pursuant to Rule 23(b)(2). The injunction would provide forward-looking protection for creators of copyrighted texts and images: transparency and choice. First, Plaintiffs would require Google to disclose, based on its own internal records, the works have been or are being used to train the at-issue models. *See* Doermann Rpt. §VI; Doermann Reb. Rpt. §III.A. Second, Plaintiffs should have the opportunity to choose to opt in or out of such training, achieving the purposes of the Copyright Act, which is to give creators control. Google's two sentence opposition to

1  injunctive relief rests entirely on the same failed administrative feasibility and ascertainability as shown
2  above. "[A] Rule 23(b)(2) class does not require predominance." *Calhoun v. Google LLC*, 349 F.R.D. 588,
3  598 (N.D. Cal. 2025).

4  Under Rule 23(c)(4), even if the common issues do not predominate as a whole, the district court
5  is authorized "to isolate the common issues under Rule 23(c)(4)[] and proceed with class treatment of these
6  particular issues." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996); s*ee Mejdrech v.*
7  *Met-Coil Systems Corp.*, 319 F.3d 910, 911-12 (7th Cir. 2003) (efficiency and fairness can be achieved by
8  "carving at the joints" of the dispute and resolving any common issues on a class-wide basis). Rule 23(c)(4)
9  is to be interpreted broadly to accomplish the purpose of the class action Rule. Here, Plaintiffs have
10  identified a number of common issues suitable for class treatment, including the nature and scope of
11  Google's copying of copyrighted works, and whether Google had obtained permission. As shown above,
12  proof of fair use, and Plaintiffs' opposition to it, relies on evidence common to the class.

13  ## III.    THE PROPOSED CLASSES ARE TARGETED AND MANAGEABLE

14  ### A.    Plaintiffs' Proposed Narrowed Class Definitions Conform to Proof

15  Google challenges Plaintiffs' proposed subclasses on two fronts: (1) it claims Plaintiffs should have
16  conferred about them prior to bringing the instant motion, and seeks sanctions on that basis; and (2) it
17  claims the definitions are "fail safe" for carving out works covered by license agreements executed by
18  Google that contain express language referring to AI uses. This is a reprise of Google's sanctions motion
19  and Plaintiffs oppose on the same grounds. ECF Nos. 298, 308-1; Suppl. Mullens Decl. ¶¶3-9. Plaintiffs'
20  proposed subclasses are defined by objective criteria, based on the sources from which common proof
21  shows Google made unauthorized copies: (1) the ████████████████████████
22  ██████████████████████████████████████████████████████████
23  ████████████████████████ ; (2) the █████████████████████████████
24  ████████████████████████████████████ , not to be repurposed as fuel
25  for unrelated AI models; and (3) web-crawled shadow libraries, including vast repositories of known
26  pirated books and images that Google copied without authorization and used to develop the at-issue models.

27  Google notes that the amended classes are not limited to persons "domiciled in the United States."
28  This is an improvement. The classes are to beneficial or legal owners of registered U.S. copyrights, which

will be determined through more objective, simpler criteria than requiring proof of domicile. This refinement does not add any new claim or defense and can be handled through administration. *Bartz*, 791 F.Supp.3d at 1065 (certifying a class of owners of registered U.S. copyrights over defendant's foreign law objection) (*see* Def's Opp. to Mot. for Class Cert. at 16-17, No. 3:24-cv-05417 (N.D. Cal. Apr. 17, 2025), ECF No. 148). Google has also not been prejudiced. Google has unequivocally stated that there is no class definition it would agree with. It has not identified specific discovery it would have sought, or arguments it would have developed, had Plaintiffs disclosed the narrowed definitions earlier. Nor has Google sought any additional discovery on these points since Plaintiffs' motion was filed. Suppl. Mullens Decl. ¶11.

### B.    The Class Definitions Are Not Fail-Safe

Google again claims that the proposed class definitions run counter the prohibition of so-called fail-safe class definitions. Google challenges Plaintiffs' exclusion of those who have provided consent to Google's conduct. The language of the exclusion comes from agreements produced by Google which Google claims provides license, referring to Google's "████████████████████████████████ ████████." *E.g.*, Exs. 42–50. Whether that language is used is objectively determinable and parties to such an agreement should not be bound by any judgment in this case. Courts have approved such limitations on numerous occasions. *See McMillion v. Rash Curtis & Assocs.*, 2017 WL 3895764, at *1 (N.D. Cal. Sep. 6, 2017) (class is not fail-safe where "[t]he exclusion of which defendant complains only eliminates categorically any person who may have consented by virtue of their provision of their phone number to a creditor"). Even if there were a problem, the solution would be to eliminate the provision, not deny certification. *Tinnin v. Sutter Valley Med. Found.*, 647 F.Supp.3d 864, 874 (E.D. Cal. 2022).

### C.    Each Named Plaintiff Satisfies the Rule 23 Requirements

Google raises issues with the validity of the registrations and ownership of rights with respect to certain Works in Suit. As explained below, each of these attacks is peripheral, and should not impede certification. Nonetheless, even accepting Google's arguments as true (and they are not), certain Named Plaintiffs have uncontested valid registrations and are owners under the law to bring suit. Google has not raised issues with the validity of the registration or ownership of rights as to the Works in Suit of Plaintiffs Fink and Zhang. Plaintiff Almond has four Works in Suit (*All the Secrets of the World*, *Candyfreak*, *Rock and Roll Will Save Your Life*, and *Truth Is the Arrow, Mercy Is the Bow*) for which Google concedes the

validity of registration, but argues that his publishers may have coterminous rights and are not parties to this litigation. With respect to Plaintiff Larson, Google merely challenges that her wholly-owned loan-out, Girlcomix, is the proper owner—they do not challenge her registration's validity. But these issues are, at bottom, allocation issues. Plaintiffs Almond and Larson are, *at minimum*, beneficial owners with standing to bring suit. 17 U.S.C. § 501(b); *see also Bartz*, 791 F.Supp.3d at 1054 ("But this situation nevertheless shows why ambiguities between authors and loan-outs will not metastasize.").

Thus, the Named Plaintiffs satisfy the requirements of Rule 23 and can represent each subclass. None have interests antagonistic to the class. Each has a copyright registration that is presumptively valid. Exs. 156–181 (registrations); Suppl. Mullens Decl. ¶¶24-47. Plaintiffs' expert McCarron has confirmed that the following ██████████████████████████████████████████. McCarron Rpt. ¶¶136 (██████), 140 (████████████████), 154 (██████████), 165 (████████████████) & App'x G (████████████████████). This includes works included in ████████████████████████████ Google produced. *See* McCarron Rpt. ¶16(a)-(b); McCarron Reb. Rpt. ¶3 & §VI. This is all that is necessary at this stage to demonstrate Plaintiffs' copyright ownership and Google's copying of such works. *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 987 n.2 (9th Cir. 2009); Seeley Reb. Rpt. ¶¶14-19. That their works are in Google's ████████ ██████████████████████████████████████████████████ ████████████████████████████████████. McCarron Rpt. ¶¶25, 41.

Notably, Google's challenges still turn on objective factors that can be administratively resolved when the time comes to determine class membership. For example, Google does not contest Steve Almond's registered copyrights but claims, with no proof, that his publishers may have coterminous rights, or that two of Almond's at-issue works may include previously published content. Speculation is insufficient and rights can be determined according to objective tests. *E.g.*, Baker Reb. Rpt. ¶¶25-31.

Google also argues that Almond's, Leovy's, Barer's, and McLennan's publishers—Zando, LLC, Spiegel & Grau, WildBlue Press, and Arbordale, respectively—████████████████████ ████████████████████████████████ Opp. at 17-18 (citing Price Decl. ¶13); Auster Decl. ¶¶81, 102, 116, 125. Specifically, Google contends (and Plaintiffs challenge) that because ████████████ ██████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████.
See Price Decl. ¶¶13-14; *see also* Seeley Reb. Rpt. ¶¶50-51. That determination is a common question.
*Zuffa*, 2023 WL 508064, at *22-24.

Similarly, Google claims Plaintiff Andersen's collective work registrations "exclude material previously published." Opp. at 7. This ignores the registrations' presumptive validity. And Google's claims ████████████████████████████ can be administratively resolved by allowing publishers to assert coterminous rights. Opp. at 18. Whether Andersen's works were ███████████ ███████████ can also be resolved through form inquiries about the timing of first publication; registration dates; and allowing ████████████████████. Objective determinations can then be used to make the call as to whether a claim is included or not.

Google argues that Plaintiff Larson has no ownership right in her at-issue work because the rights are assigned to Girlcomix, her wholly-owned loan-out. Opp. at 6. But as Judge Alsup recognized, "this problem is readily resolved." *Bartz*, 791 F.Supp.3d at 1053. It is undisputed that she is sole owner of her loan-out. Auster Ex. 25 at 79:21-25, 81:21-23. Whether she or an entity she wholly owns possesses the claim does not defeat standing or undercut her suitability as a class representative, and plainly, there is no "disagreement as between the two." *Bartz*, 791 F.Supp.3d at 1052-53 (distinction between legal and beneficial owner in copyright law is no impediment to standing); 17 U.S.C. § 501(b). For similar reasons, Google's claim that Plaintiff Larson may not bring claims because *All Summer Long* is a work-for-hire fails. *See, e.g.*, *Bartz*, 791 F.Supp.3d at 1052-53 (whether a claim is owned by author or work-for-hire employer is a claims administration issue). In any event, Plaintiffs are moving to intervene Girlcomix. ECF No. 321. Google's assertion that her (and others') claims are barred by a YouTube one-year statute of limitations also is a common question and/or can be administratively addressed. Baker Reb. Rpt. ¶31.

Finally, Google challenges inconsistencies between Leovy's valid registration and her interrogatory responses, where she identified her publishers as beneficial owners. Opp. at 14-15. The existence of additional beneficial owners does not undercut her adequacy or typicality. *See Bartz*, 791 F.Supp.3d at 1053. Again that is a simple issue that can be administratively addressed.

## IV.    CONCLUSION

For the foregoing reasons, the Court should certify the proposed Class and Subclasses.

Dated: December 30, 2025

By: _/s/ Lesley E. Weaver_
Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
**BLEICHMAR FONTI & AULD LLP**
1330 Broadway, Suite 630
Oakland, CA 94612
Telephone: (415) 445-4003
lweaver@bfalaw.com
adavis@bfalaw.com
jsamra@bfalaw.com

Gregory S. Mullens (admitted _pro hac vice_)
**BLEICHMAR FONTI & AULD LLP**
75 Virginia Road, 2nd Floor
White Plains, NY 10603
Telephone: (415) 445-4006
gmullens@bfalaw.com

Respectfully submitted,

By: _/s/ Joseph R. Saveri_
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Elissa A. Buchanan (SBN 249996)
Evan A. Creutz (SBN 349728)
Aaron Cera (SBN 351163)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
eabuchanan@saverilawfirm.com
ecreutz@saverilawfirm.com
acera@saverilawfirm.com

_Plaintiffs' Interim Co-Lead Counsel_

By: _/s/ Brian D. Clark_
Brian D. Clark (admitted _pro hac vice_)
Laura M. Matson (admitted _pro hac vice_)
Arielle S. Wagner (admitted _pro hac vice_)
Consuela Abotsi-Kowu (admitted _pro hac vice_)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
bdclark@locklaw.com
lmmatson@locklaw.com
aswagner@locklaw.com
cmabotsi-kowo@locklaw.com

Stephen J. Teti (admitted _pro hac vice_)
**LOCKRIDGE GRINDAL NAUEN PLLP**
265 Franklin Street, Suite 1702
Boston, MA 02110
Telephone: (617) 456-7701
sjteti@locklaw.com

By: _/s/ Ryan J. Clarkson_
Ryan J. Clarkson (SBN 257074)
Yana Hart (SBN 306499)
Mark I. Richards (SBN 321252)
**CLARKSON LAW FIRM, P.C.**
22525 Pacific Coast Highway
Malibu, CA 90265
Telephone: 213-788-4050
rclarkson@clarksonlawfirm.com
yhart@clarksonlawfirm.com
mrichards@clarksonlawfirm.com

Matthew Butterick (SBN 250953)
**BUTTERICK LAW**
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
mb@butaricklaw.com

_Additional Counsel for Individual and Representative Plaintiffs and the Proposed Class_

1

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

2     I, Lesley E. Weaver, attest that concurrence in the filing of this document has been obtained from

3 the other signatories. Executed this 30th day of December, 2025.

4                                          */s/ Lesley E. Weaver*
                                          Lesley E. Weaver
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28