Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
**BLEICHMAR FONTI & AULD LLP**
1330 Broadway, Suite 630
Oakland, CA 94612
Tel. (415) 445-4003
lweaver@bfalaw.com
adavis@bfalaw.com
jsamra@bfalaw.com

Gregory S. Mullens (admitted *pro hac vice*)
**BLEICHMAR FONTI & AULD LLP**
75 Virginia Road, 2nd Floor
White Plains, NY 10603
Tel. (415) 445-4006
gmullens@bfalaw.com

Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Elissa A. Buchanan (SBN 249996)
Evan A. Creutz (SBN 349728)
Aaron Cera (SBN 351163)
Louis Kessler (SBN 243703)
Alexander Y. Zeng (SBN 360220)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
eabuchanan@saverilawfirm.com
ecreutz@saverilawfirm.com
acera@saverilawfirm.com
lkessler@saverilawfirm.com
azeng@saverilawfirm.com

*Plaintiffs' Interim Co-Lead Counsel*

*[Additional Counsel on Signature Page]*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| *In re Google Generative AI Copyright Litigation* | Master File Case No. 5:23-cv-03440-EKL-SVK<br>Consolidated Case No. 5:24-cv-02531-EKL-SVK<br><br>**PLAINTIFFS' MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE (ECF 311) PURSUANT TO CIVIL L.R. 72-2**<br><br>Judge:   Hon. Eumi K. Lee |

Plaintiffs move pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and N.D. Cal. L.R. 72-2 for relief from the Court's December 19, 2025 Discovery Order. ECF 311 (the "Order"). The Order denied the requested relief based on two inconsistent bases. First, it ruled that the discovery sought is beyond the permissible scope based on the operative complaint. Second, it ruled that it was duplicative of discovery the Court had already permitted. Both are clearly erroneous. Either would be sufficient for relief. This Motion is based on the prior submitted briefing (ECF 302), the pleadings and papers herein, and any oral argument the Court may hear. Discovery orders are generally considered nondispositive. *See Burt v. AVCO Corp.*, 2015 WL 12912366, at *2 (C.D. Cal. Nov. 17, 2015). For nondispositive orders, a magistrate judge's "factual determinations are reviewed for clear error," while the magistrate judge's legal conclusions are reviewed de novo to determine whether they are contrary to law. *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. 2010).

On September 11, 2025, the Court denied Google's motion to dismiss. ECF 216. That order upheld Plaintiffs' claim for copyright infringement, which has two elements: (1) copyrighted ownership, and (2) that defendant violated at least one exclusive right. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017) (citation omitted). Google's initial copying and processing of the works to develop the at-issue models is a copyright violation. *See Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1025-29 (N.D. Cal. 2025) (finding no fair use for the copying of pirated works for AI training).

The training process depends on copying from the beginning. Generative AI technology requires repeated subsequent copying, including multiple training runs, testing, and post-training. The training process for any generative AI model necessarily includes **multiple repeated copying including the first acquisition of data,** as recognized in the Court's MTD Order. ECF 216 at 2 ("Training a generative AI model requires creating multiple copies: 'first a copy is made during data collection, then a series of copies are made during model training, and finally a copy is permanently incorporated into the parameters' of the generative AI model."). Google has expressly put facts regarding the entirety of its training at issue, including in its fair use defense. ECF 262 at 17-20. Google also argues some sort of permission or authorization to use these works based on license agreements or terms of service. *Id.* The methods proposed to obtain the requested information would demonstrate when and how Google acquired these works and how Google used the works throughout the training pipeline, from acquisition to model

1 | release. It would also confirm whether Google in fact had authorization to do so.

2 |     Plaintiffs began seeking the disputed document discovery, along with interrogatories, when the
3 | Court permitted discovery in January 2025. *See* Pls' First Requests for Production seeking "internal tools
4 | used to . . . catalog Training Data" (RFP 5); documents concerning the "inclusion of . . . copyrighted
5 | works in datasets (RFP 11); "methodologies" for "organizing, curating . . . or annotating Training Data"
6 | (RFP 13); and documents that "identify any of the Plaintiffs, including . . . references to their copyrighted
7 | works" (RFP 27); ECF 302, at 2. Google resisted the discovery ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
8 | ▮▮▮▮▮▮▮▮ Google's Resp. & Objs. to RFPs 11, 13 and 27. The Parties have conferred
9 | exhaustively. In a good faith compromise, Plaintiffs agreed to focus in the first instance on limited sample
10 | training datasets that Google represented would provide the information sought for class certification.

11 |     With that investigation under way, Plaintiffs took limited depositions of percipient witnesses who
12 | appeared to have personal knowledge of these datasets and related facts. Unsurprisingly, the discovery
13 | revealed that Google has developed and maintained records for its own business purposes, including
14 | identifying, organizing, and tracking these works. Google has never denied it. A key aspect of data science
15 | is testing and evaluating combinations of datasets to maximize model performance, and record keeping
16 | is integral to this. *See* ECF 216 at 2. Google is no different.

17 |     On the basis of admissions under oath and other information contained in Google's business
18 | records, Plaintiffs timely moved to compel "evidence sufficient to identify, or simply identify: (1) all
19 | Named Plaintiffs' copyrighted works in the datasets … used by Google to train the Models, and (2) all
20 | class member copyrighted works used for that purpose." Order at 1. Plaintiffs submitted evidence
21 | including testimony from several Google witnesses and internal Google documents reflecting that Google
22 | maintains and relies on such information but has not produced it here. Plaintiffs expressly indicated that
23 | they would confer on proportionality to identify nonduplicative means of production but noted that
24 | Google stonewalled on any production at all. In opposing, Google did not articulate its purported burden
25 | with any specificity. Google based its argument entirely on the *ipse dixit* claim that the only way to
26 | identify any Named Plaintiff or Class Work was by searching the training data itself. This is clearly not
27 | accurate. The Court took up the motion to compel, and on December 19, 2025, denied it without a hearing
28 | as redundant and "not proportional to the needs of the case." Order at 2.

The Orders error was twofold: first, by relying solely on Google's controverted statement that excavating the training data is the only method of identifying copyrighted works despite the evidence to the contrary; and second, by abridging Plaintiffs' discovery into how Google copies copyrighted works throughout the training process. Order at 1–2.

The information sought is germane and discoverable on multiple fronts, and its production would show authoritatively when and what copyrighted material Google copied. The Order is at odds with the operative complaint and the Court's order upholding the sufficiency of it. ECF 216; *see also* ECF 234 (SACC), ¶¶ 1–2, 6–7, 11, 116–119, 150–151, 169, 174–175, 178–179. It goes squarely to facts relevant to the defenses that Google raises, including fair use. These records will show that Google knew certain materials were protected and copied them anyway. They are related to Google's willfulness in using higher value copyrighted materials to improve its models. They are also directly relevant to issues regarding class certification, including the Parties' ability to ascertain class works in the training data, which Google has disputed and thereby are at issue.

Google has capitalized on the Court's refusal to order this discovery by taking a position on class certification that Plaintiffs cannot test. Google argues that class certification must be denied precisely because Plaintiffs cannot reliably identify class works, and because certain Named Plaintiffs' works are not present in the exemplar training data sets such that there is no adequate class representative. ECF 289 at 23-24. The discovery sought goes to Plaintiffs' proof that the class action numerosity and manageability requirements are satisfied, and that Plaintiffs provided a workable methodology for identifying the works based on the limited sample of the datasets Google maintains. The records sought may perhaps reveal others. Google should not be permitted to dispute the methodology and withhold the information necessary to resolve the dispute. And these internal lists will identify at the least subsets of the proposed subclasses.

By denying discovery as to how, what, where, and when Google copied Plaintiffs' copyrighted works, the Order denied discovery directly relevant—fundamental—to Plaintiffs' claims. The Order appears to have erroneously concluded that discovery in this case is limited to "final training datasets." Order at 2. The source of this error is unclear and appears to have been fabricated out of whole cloth. The Complaint never uses the word "final," and the Order never defines what a "final" training set might be. The Order compounded the error, stating "none of this information 'reveal[s] what survived the steps of

1  preprocessing, filtering, deduplication, and construction of final training datasets[.]" *See id*. In fact, the
2  at-issue models are under constant refinement, repeatedly copying and using the copyrighted works. The
3  selection of training data is a result of testing of model composition involving trial-and-error
4  experimentation, each involving more copies. And this Court's MTD Order recognized that each step is
5  part of "training." ECF 216 at 2. By disallowing discovery here, the Court committed clear error by
6  denying discovery into factual matters plainly put at issue by the Complaint and the MTD Order. *Id.* This
7  discovery is also not redundant because it is directed at other aspects of the training pipeline beyond the
8  "final training set."

Moreover, the Order appears to have accepted without reservation "Google's representations that it was the training datasets, not the source code, that would enable such identification[.]" Order at 1. ***Plaintiffs were never provided complete training data***. Instead, Plaintiffs were forced to work with small samples in Google's controlled and throttled setting. Plaintiffs do not know whether the sample is representative and what is missing from the full corpus. The Order also denies Plaintiffs' discovery directly relevant to class certification. By denying even a list of titles and publishers or an even more circumscribed list of only Named Plaintiffs, the Order prevents Plaintiffs from validating their methodology, responding to *Daubert* challenges, or conclusively identifying part of the class.

In denying this core discovery, the Court also disregarded evidence showing that Google has unsurprisingly developed and maintained the tools and ability, at significant internal cost, to identify the at-issue works. Instead, the Court credited Google's representation that "[t]he only record and the only means of determining what materials Google used to train its AI models is the training data itself," and erroneously concluded that because none of this information "'reveal[s] what survived the steps of preprocessing, filtering, deduplication, and construction of final training datasets, which are significantly different from what was included in [a] source corpus,'" none of it is discoverable. Order at 1, 2. The Court has not permitted any review of source code, testing, or other discovery to test this unsupported claim. The Court based the ruling on the Parties' agreement that Google would make available exemplar training data, entered into before discovery had meaningfully progressed. *Id.*, at 1–2. But that earlier agreement does not foreclose additional discovery, especially from undisclosed sources only revealed upon subsequent discovery. There is no such thing as a "final training set." *See* ECF 216 at 2 . The Court did not define this

1  term. ████████████████████████████████████████
2  ████████████████████████████████████████████
3  ████ *E.g.*, GOOG-AIC-000387189; Xiao Dep., 29:20-31:8; 116:4-20; 135:12-137:11; 138:20-140:14.
4  The ruling prejudices Plaintiffs by dramatically limiting the discovery related to many significant topics,
5  including Google's knowledge and intent regarding the scope and use of the licenses to originally acquire
6  the data, and Google's knowledge and intent based on repeated and continued copying and use in training,
7  which impacts both fair use and damages.
8      Google's burden and proportionality arguments are weak. The argument that it is not proportional
9  because Plaintiffs will never be able to prove their claims or will be unable to satisfy their burdens under
10 Rule 23 is circular: Plaintiffs seek the evidence necessary to meet those burdens. They are misplaced
11 because the motions are to be resolved based on evidence, not without it. As to proportionality, Plaintiffs
12 have met and conferred repeatedly to address burden issues and have reiterated the interest to receive the
13 information in a nonduplicative, efficient manner. Plaintiffs do not ask "to create a document where none
14 exists" *See, e.g.*, ECF 302, at 3–5; *Finjan, Inc. v. Juniper Network, Inc.*, 2019 WL 2865942, at *1 (N.D.
15 Cal. July 3, 2019). To the contrary, Plaintiffs seek the information that Google witnesses have admitted
16 Google possesses and maintains and on which it relies in the ordinary course of its business. The record
17 is replete with such evidence contradicting Google's claims to the contrary. *Compare, e.g.*, ECF 302 at
18 1-5 (citing, for example, GOOG-AIC-000481984 at -987; GOOG-AIC-000388450 at -458; GOOG-AIC-
19 0008162990.C at -291.C; GOOG-AIC-000387189 at -201; Dai Tr. 105:8; 360:22-361:3; Carver Tr.
20 75:19-23; Xiao Tr. 29:20-31:8; 135:12-137:11; 138:20-140:1) *with, e.g.*, ECF 240 at 9.
21     *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899 (N.D. Cal. 2023),
22 is instructive. There, defendants possessed disaggregated data and resisted producing after years of
23 litigation. *Id.* at 914–915, 928-29. The court stated "even if that's true [that the data is duplicative or
24 insignificant], it was bad faith to argue that any additional discovery was not proportional to the needs of
25 the case." *Id.* at 930. The court continued, "[i]t was not for Facebook and [its counsel] to unilaterally
26 decide the scope and extent of discovery." *Id.* Google and its counsel have acted equally unreasonably
27 here.
28

| | |
|---|---|
| Dated: January 2, 2026 | Respectfully submitted, |
| By: _/s/ Lesley E. Weaver_ | By: _/s/ Joseph R. Saveri_ |
| Lesley E. Weaver (SBN 191305)<br>Anne K. Davis (SBN 267909)<br>Joshua D. Samra (SBN 313050)<br>**BLEICHMAR FONTI & AULD LLP**<br>1330 Broadway, Suite 630<br>Oakland, CA 94612<br>Telephone: (415) 445-4003<br>lweaver@bfalaw.com<br>adavis@bfalaw.com<br>jsamra@bfalaw.com<br><br>Gregory S. Mullens (admitted _pro hac vice_)<br>**BLEICHMAR FONTI & AULD LLP**<br>75 Virginia Road, 2nd Floor<br>White Plains, NY 10603<br>Telephone: (415) 445-4006<br>gmullens@bfalaw.com | Joseph R. Saveri (SBN 130064)<br>Cadio Zirpoli (SBN 179108)<br>Christopher K.L. Young (SBN 318371)<br>Elissa A. Buchanan (SBN 249996)<br>Evan A. Creutz (SBN 349728)<br>Aaron Cera (SBN 351163)<br>Louis Kessler (SBN 243703)<br>Alexander Y. Zeng (SBN 360220)<br>**JOSEPH SAVERI LAW FIRM, LLP**<br>601 California Street, Suite 1505<br>San Francisco, California 94108<br>Telephone: (415) 500-6800<br>Facsimile: (415) 395-9940<br>jsaveri@saverilawfirm.com<br>czirpoli@saverilawfirm.com<br>cyoung@saverilawfirm.com<br>eabuchanan@saverilawfirm.com<br>ecreutz@saverilawfirm.com<br>acera@saverilawfirm.com<br>lkessler@saverilawfirm.com<br>azeng@saverilawfirm.com |

*Plaintiffs' Interim Co-Lead Counsel*

| | |
|---|---|
| Brian D. Clark (admitted _pro hac vice_)<br>Laura M. Matson (admitted _pro hac vice_)<br>Arielle S. Wagner (admitted _pro hac vice_)<br>Consuela Abotsi-Kowu (admitted _pro hac vice_)<br>**LOCKRIDGE GRINDAL NAUEN PLLP**<br>100 Washington Avenue South, Suite 2200<br>Minneapolis, MN 55401<br>Telephone: (612) 339-6900<br>Facsimile: (612) 339-0981<br>bdclark@locklaw.com<br>lmmatson@locklaw.com<br>aswagner@locklaw.com<br>cmabotsi-kowo@locklaw.com<br><br>Stephen J. Teti (admitted _pro hac vice_)<br>**LOCKRIDGE GRINDAL NAUEN PLLP**<br>265 Franklin Street, Suite 1702<br>Boston, MA 02110<br>Telephone: (617) 456-7701<br>sjteti@locklaw.com | Ryan J. Clarkson (SBN 257074)<br>Yana Hart (SBN 306499)<br>Mark I. Richards (SBN 321252)<br>**CLARKSON LAW FIRM, P.C.**<br>22525 Pacific Coast Highway<br>Malibu, CA 90265<br>Telephone:   213-788-4050<br>rclarkson@clarksonlawfirm.com<br>yhart@clarksonlawfirm.com<br>mrichards@clarksonlawfirm.com<br><br>Tracey Cowan (SBN 250053)<br>**CLARKSON LAW FIRM, P.C.**<br>95 Third Street, Second Floor<br>San Francisco, CA 94103<br>Telephone: (213) 788-4050<br>tcowan@clarksonlawfirm.com |

1
2   Matthew Butterick (SBN 250953)
    **BUTTERICK LAW**
3   1920 Hillhurst Avenue, #406
    Los Angeles, CA 90027
4   Telephone: (323) 968-2632
    Facsimile: (415) 395-9940
5   mb@butiricklaw.com

6

*Additional Counsel for Individual and Representative Plaintiffs and the Proposed Class*

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Joseph R. Saveri, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 2, 2025

/s/ *Joseph R. Saveri*
Joseph R. Saveri