DAVID H. KRAMER, SBN 168452
Email: dkramer@wsgr.com
MAURA L. REES, SBN 191698
Email: mrees@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300

PAUL J. SAMPSON (admitted *pro hac vice*)
Email: psampson@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
95 S. State Street
Suite 1000
Salt Lake City, Utah 84111
Telephone: (801) 401-8510

ERIC P. TUTTLE, SBN 248440
Email: eric.tuttle@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone: (206) 883-2500

*Counsel for Defendant*
GOOGLE LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| *In re Google Generative AI Copyright Litigation* | Master File Case No.: 5:23-cv-03440-EKL<br>Consolidated with Case No.: 5:24-cv-02531-EKL<br><br>**DEFENDANT GOOGLE LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE THE TESTIMONY OF WILLIAM PATRY AND RYAN SULLIVAN**<br><br>Date:         February 4, 2026<br>Time:         10:00 A.M.<br>Courtroom:  7, Fourth Floor<br>Judge:        Hon. Eumi K. Lee |

Plaintiffs fail to demonstrate any basis on which the testimony of Mr. William Patry and Dr. Ryan Sullivan, Ph.D. is inadmissible. Their motion should be denied.

**Mr. Patry:** Plaintiffs' effort to exclude the report of William Patry is misguided from start to finish. According to Plaintiffs, Mr. Patry offers improper legal conclusions, an invalid methodology and is not sufficiently qualified. The arguments are meritless.

Mr. Patry draws on a remarkable 40+ year career as a copyright authority—with the United States Copyright Office, working for Congress, serving as a law professor, authoring a leading copyright treatise for decades, and as a practitioner—to identify myriad work-specific factual and legal issues that often arise in assessing the ownership of a copyrighted work and the validity and scope of a copyright registration. That testimony is properly offered to aid the Court in assessing Plaintiffs' ability to carry their burden to show that common issues predominate over those requiring individualized consideration. *See In re Lithium Ion Batteries Antitr. Litig.*, 2017 WL 1391491, at *6 (N.D. Cal. Apr. 12, 2017) (at the class certification stage, "the court considers only whether the expert evidence is 'useful in evaluating whether class certification requirements have been met.'") (citation omitted).

Plaintiffs' own cases belie their claim that Mr. Patry offers improper legal opinions. At most, those cases recognize that it is improper for an expert to give an opinion as to "*legal conclusions*, i.e., an opinion on an ultimate issue of law." *Utne v. Home Depot U.S.A., Inc.*, 2022 WL 1443338, at *3 (N.D. Cal. May 6, 2022) (excluding opinions that individualized issues in the case "cannot be managed," and "all other opinions about the appropriateness of class-wide determination of liability or damages"); *LD v. United Behav. Health*, 2023 WL 2806323, at *3 (N.D. Cal. Mar. 31, 2023) (excluding opinion that "an ERISA 23(b)(1)(B) and/or 23(b)(2) class should be certified as well as a RICO 23(b)(2) and 23(b)(3) class"); *Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*, 2018 WL 10472794, at *3 (N.D. Cal. Sept. 25, 2018) (excluding opinion that individual inquiries required to assess damages mean "that the class cannot be certified"). That is not what Mr. Patry does. While he identifies a host of issues that, by their nature, are specific to individual copyrighted works and claims, he does not purport to advise or instruct the Court on how to resolve them or opine that they ultimately defeat class classification. He merely describes

the wide variation of factual circumstances that can arise in assessing copyright claims based on what he has handled, seen, heard, and read.

Plaintiffs cite no case suggesting that such testimony is improper. Nor could they. It is precisely the sort of testimony on which expert guidance is welcomed by courts. *See, e.g.*, *In re Hydrogen Peroxide Antitr. Litig.*, 552 F.3d 305, 322-26 (3d Cir. 2008) (seminal case reversing certification based on erroneous exclusion of expert testimony on the individualized issues that would arise in antitrust/price-fixing case); *In re Rail Freight Fuel Surcharge Antitr. Litig.* 292 F. Supp. 3d 14, 67 (D.D.C. 2017) (rejecting challenge to expert's opinions regarding the importance of putative class-member-specific permissions and absence of injury). Indeed, Plaintiffs here have offered "expert" testimony in the hopes of showing their proposed classes have issues that can be litigated in common. *See, e.g.,* McCarron Rpt. (ECF No. 266-1) (purporting to show class members can be identified through a common method); Smith Rpt. (ECF No. 253-7) ¶ 11 ("[c]ommon evidence shows functional licensing markets operate"). They can hardly be heard to complain when testimony is offered to establish the contrary.

Regardless, it is not an impermissible legal opinion for Mr. Patry to highlight the many ownership disputes that he has seen arise with respect to copyrighted works—whether a work is jointly owned; who between two claimants is the rightful owner; whether a work is one made for hire; whether a work has been assigned and whether that assignment is valid; whether ownership of a work has reverted to its original author; whether the work has lapsed into the public domain; whether ownership has transferred by law through marriage or to descendants after death—or to note the vast universe of "orphan works" for which no owner can be identified. ECF No. 288-27, Expert Report of William Patry ("Patry Rpt.") ¶¶ 10-20.[1]

---

[1] It is likewise not a legal opinion for Mr. Patry to describe the U.S. Copyright Office's standard operating procedure of accepting, without scrutiny, the representations made in copyright applications and declining to resolve disputes they generate, instead leaving those disputes for interested parties to resolve through court actions. Patry Rpt. ¶¶ 8-13; *see The Meds. Co. v. Mylan Inc.*, 2014 WL 1758135, at *5 (N.D. Ill. May 2, 2014) ("Dr. Linck may offer opinions regarding the Patent Office's practices and procedures based on her prior experience in the Patent Office and her extensive experience in patent law and procedure.").

GOOGLE'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF PATRY AND SULLIVAN     -2-     MASTER FILE CASE NO.: 5:23-CV-03440-EKL

Many of these and other issues regarding copyright ownership are presented by the claims of the named plaintiffs in this case, and countless others would be presented by unidentified members of the putative classes Plaintiffs propose. The Court specifically invited Plaintiffs to explain how these individualized issues could be resolved on a class-wide basis, ECF No. 128 at 7 n.4, but Plaintiffs failed to accept the Court's invitation. Now they want to pretend that the issues do not exist by trying to exclude evidence showing how complicated and individualized it would be to investigate and adjudicate them. But given that Mr. Patry is not offering legal conclusions, there is no basis for exclusion.[2]

Mr. Patry's testimony regarding the multiple, complex issues that pervade the copyright registration process is also properly before the Court. This includes his recognition of the need to assess ownership and first publication dates for each work in registrations for collective or group works; whether the original and pre-existing aspects of a derivative work have been properly identified; whether a work is truly original; and whether the registration form contains material misrepresentations. Patry Rpt. ¶¶ 21-25. Again, some of these issues are starkly presented by the named plaintiffs' claims in this case. By identifying them, Mr. Patry is not presuming to tell the Court how they should be resolved. Rather, he is explaining that these individualized issues arise frequently, and that they are often complicated and require discovery and judicial resolution. This testimony will be of assistance to the Court because it provides further foundation for an important point in Google's opposition to the class certification motion: that the flaws in named Plaintiffs' claims will equally arise in an untold number of claims of absent class members, rendering class treatment untenable and improper.

---

[2] More than 25 years ago, in *Music Sales Corp. v. Morris*, a court concluded Mr. Patry was giving an expert view on "the correct interpretation of the 1976 [Copyright] Act," and deemed it an impermissible legal conclusion. 73 F. Supp. 2d 364, 381 (S.D.N.Y. 1999). Plaintiffs invoke *Music Sales* as if it were relevant here, but the case actually shows why their motion is misguided. Here, Mr. Patry offers no interpretation of the law. Instead, he offers what the *Music Sales* court expressly recognized as proper when it held: "[t]he testimony of a legal expert is admissible as to the ordinary practices of those engaged in the business of law, legal studies, or law-related fields, or as to trade customs and usages of those so employed." *Id.* at 381.

Citing *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124-25 n.4, 1128 (9th Cir. 2017), Plaintiffs also argue that Mr. Patry's opinion does not speak to "an issue in dispute in the case" because he supposedly addresses "administrative feasibility" and "the Ninth Circuit expressly rejected" any such requirement. Mot. 5. Plaintiffs are mistaken multiple times over. In *Briseno*, the Ninth Circuit did not rule that administrative feasibility was irrelevant to class certification, but rather that it should be addressed "through analysis of Rule 23's enumerated requirements" and not as an additional or separate requirement. *Briseno*, 844 F.3d at 1124-25 & n.4. As further explained in *Norton v. LVNV Funding*, LLC, 2020 WL 5910077, at *5 (N.D. Cal. Oct. 6, 2020), also cited by Plaintiffs, *Briseno* "determined that there is no need for a separate feasibility requirement because the other Rule 23 factors, including the superiority analysis of Rule 23(b)(3), adequately account for that concern." In any event, Mr. Patry does not purport to opine on "administrative feasibility." Rather, he is offering building blocks for the Court's predominance and superiority analyses, issues very much before the Court on Plaintiffs' motion.

Plaintiffs' criticism of Mr. Patry's methodology similarly makes little sense. He is not engaged in any sort of experiment or sampling exercise where flaws in his process cast doubt on his conclusions. He is simply reporting on what he has observed, first-hand, over the course of decades immersed in the field. To criticize his "methodology" is akin to criticizing a physician's general observations of patients. Plaintiffs were welcome to depose Mr. Patry but elected not to, presumably recognizing that his straightforward testimony is beyond reproach.[3]

Finally, Plaintiffs claim that Mr. Patry is unqualified because his years working at the Copyright Office were at the beginning of his long career and he later practiced at various technology companies including Google. Somehow Plaintiffs overlook that Mr. Patry literally wrote the book on copyright: *Patry on Copyright*, a leading treatise on copyright regulatory and case developments which he has been revising and updating annually for decades. Mr. Patry's

---

[3] Plaintiffs purport to quote from cases critical of expert methodologies. Although the cases involve *other* experts and have nothing to do with Mr. Patry, Plaintiffs misleadingly insert his name ("[Patry]") to suggest that the courts were criticizing him. Mot. 9. That flirts with violating the duty of candor.

extensive knowledge of copyright and his influence in the field are reflected in the more than 500 federal court decisions, including 12 U.S. Supreme Court decisions, that cite to and rely on his treatise and other copyright scholarship. The notion that this long-time Copyright Office staffer and venerated chronicler and practitioner is unqualified to give his testimony is frivolous.[4]

Far from improper, Mr. Patry's report is some of the best evidence before the Court regarding the individualized nature of copyright claims because it comes from his direct observation. While the Court can certainly draw conclusions from the evidence Google has adduced about the individualized claims of the named plaintiffs and from the case law, Mr. Patry amply bolsters those conclusions with his real-world expertise.

**Dr. Sullivan:** Dr. Ryan Sullivan, Ph.D. is a highly accomplished economist with extensive experience, including testifying at trial in more than 25 cases and providing expert reports in over 100 cases. ECF No. 289-36, Expert Rebuttal Report of Dr. Ryan Sullivan ("Sullivan Rebuttal Rpt.") ¶¶ 3, 6 & Attachment A-1. His economic testimony has been widely accepted and relied upon by courts across the nation in a broad variety of cases. Plaintiffs do not suggest that Dr. Sullivan is unqualified, that he lacks expertise, or that he fails to apply a reliable methodology. Instead, Plaintiffs argue (1) that Dr. Sullivan's testimony "fail[s] to assist the Court" and (2) that he allegedly "offers legal conclusions." Mot. 4, 6. Plaintiffs are wrong, and the Court should deny their motion to exclude Dr. Sullivan's testimony.

Plaintiffs start with a baffling argument: Dr. Sullivan's testimony "fail[s] to assist the Court" as he "offers no opinion that Google's conduct caused no market harm, nor any affirmative economic analysis of his own." Mot. 6. Plaintiffs either fail to recognize (or for some reason are choosing to ignore) that Dr. Sullivan's report is offered as a rebuttal to the report of Plaintiffs'

---

[4] Plaintiffs attempt to make hay of an obvious math error in Mr. Patry's report. They make the absurd claim that it renders his testimony "entirely speculative" (Mot. 7). His point remains valid even after correcting for an extraneous zero. The number of applications each copyright examiner must review per year (over 4,500) still dwarfs the number to be reviewed by patent examiners (approximately 90 per year), and that is before accounting for applications to register many different works at once. Mr. Patry's testimony—that resource limitations preclude a robust application examination in the Copyright Office–is beyond dispute, and is confirmed by the Office. *See* U.S. Copyright Office, Compendium of U.S. Copyright Office Practices, § 602.4(C) (3d ed. 2017).

1 proposed expert Michael D. Smith. As plainly stated in the Sullivan Rebuttal Report, his
2 assignment was to "evaluate and analyze the economic arguments contained in the Smith Report,"
3 not to develop affirmative opinions on other issues. Sullivan Rebuttal Rpt. ¶ 8. Accordingly, the
4 Sullivan Rebuttal Report addresses the incorrect, poorly reasoned, speculative, conclusory, and
5 baseless opinions in the Smith Report, and explains how Prof. Smith's conclusions are shown to
6 be wrong when analyzed using a proper economic analysis and methodology. Dr. Sullivan's
7 testimony will certainly "assist the Court" by explaining why it should reject Prof. Smith's
8 opinions.

9 Plaintiffs' further criticism that Dr. Sullivan's opinions are excludable because they "do
10 not themselves establish that individualized inquiries would predominate" (Mot. 6) is
11 incomprehensible, because that sort of opinion on an ultimate legal issue is precisely what
12 Plaintiffs argue is improper elsewhere in the very same *Daubert* motion. (*e.g.*, *id.* at 3). Further,
13 Plaintiffs are incorrect in asserting that the Sullivan Rebuttal Report does not explain "how factor
14 four evidence used for Google's fair use defense would differ for any one plaintiff versus another."
15 *Id.* at 6. Dr. Sullivan sets forth multiple ways in which Prof. Smith's opinions about a "common
16 licensing market" or "common evidence" are erroneous, as Prof. Smith's testimony actually
17 describes individualized transactions with differing outcomes depending on the specific
18 copyrighted works at issue. *E.g.*, Sullivan Rebuttal Rpt. ¶¶ 15, 31-32. Dr. Sullivan's rebuttal
19 testimony is fully admissible to support Google's class certification opposition.

20 Even more puzzlingly, Plaintiffs argue that the Sullivan Rebuttal Report submitted in
21 opposition to class certification should be excluded because it is "entirely devoid of any affirmative
22 theory as to why Google's conduct caused no market harm despite bearing the burden on that
23 issue." Mot. 6. Apparently still referring to the fourth factor of fair use, Plaintiffs confuse expert
24 reports on the merits—which are not due until March 11, 2026—with expert reports on class
25 certification issues. Google bears no burden on class certification; the burden of demonstrating
26 certifiability rests entirely on Plaintiffs. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee*
27 *Foods LLC,* 31 F.4th 651, 664 (9th Cir. 2022).

28

1    Plaintiffs also wrongly argue that Dr. Sullivan's report "offers legal conclusions" because it allegedly "depends on the assumption that Google's use of copyrighted works for AI training constitutes fair use under the Copyright Act." Mot. 4. That is not at all what Dr. Sullivan does. To the contrary, the Sullivan report clearly states that it relies on the accurate factual premise that "issues of fair use . . . are disputed in this case," Sullivan Rebuttal Rpt. ¶ 24, which is what matters at this class certification stage. Plaintiffs selectively excerpt sentence fragments from Dr. Sullivan's report referencing fair use in an attempt to portray it as a legal conclusion. *See* Mot. 4 ("Sullivan opines that '[n]ot entering a license to undertake a fair use is an expected outcome that would not cause harm, because no license fee would be owed.'"). But that is hamfisted deception. In the cited portion of his report, Dr. Sullivan is actually explaining that Prof. Smith's opinion is erroneous as an economic matter because Prof. Smith "***ignores the potential applicability of fair use***, as not entering a license to undertake a fair use is an expected outcome that would not cause harm, because no license fee would be owed." Sullivan Rebuttal Rpt. ¶ 34 (emphasis added). In other words, Prof. Smith's opinion improperly rests on the legal conclusion that fair use does not apply to AI training, whereas Dr. Sullivan correctly recognizes that fair use has "potential applicability" that Prof. Smith wrongly ignores. By referring to "potential applicability"—a key phrase that Plaintiffs omit—Dr. Sullivan does *exactly the opposite* of making an "assumption that Google's use of copyrighted works for AI training constitutes fair use," as Plaintiffs falsely assert. Mot. 4.

Plaintiffs use another misleadingly excerpted quote to argue that Dr. Sullivan's report is "accepting Google's position 'that its access to and use of AI training materials has been legitimate, both as fair use and licensed as applicable.'" *Id.* at 4-5. In fact, Dr. Sullivan's report does not "accept" anything and simply states what is unquestionably Google's position: "I understand that ***this point is disputed and that Google contends*** that its access to and use of AI training materials has been legitimate, both as fair use and licensed as applicable." Sullivan Rebuttal Rpt. ¶ 43 (emphasis added). Plaintiffs' characterization of this as "accepting" Google's position is not in good faith; it is the ***opposite*** of "accepting" a point to acknowledge that it is disputed and unresolved. By contrast, Plaintiffs' expert Prof. Smith chose not to take into account the existence

of any dispute in forming his opinions, instead unquestioningly relying on a legal conclusion that Google's use of copyrighted materials is in all cases "unauthorized" and "illegitimate," rendering his opinions at this class certification stage (when the merits of fair use have not been decided) unfounded and unreliable. *See* ECF No. 301-1.[5]

Plaintiffs seek to deflect attention from Prof. Smith's improper testimony based on legal conclusions by trying to turn the argument against Dr. Sullivan. Dr. Sullivan identified this glaring flaw in Prof. Smith's report and explained how it undermines the reliability of Prof. Smith's opinions. Dr. Sullivan avoided making the same mistake, and faithfully based his opinions on the actual circumstances of this case, rather than legal conclusions.

## Conclusion

There are no legitimate grounds for challenging the insightful testimony from Mr. Patry and Dr. Sullivan. Accordingly, Plaintiffs' motion to exclude that testimony should be denied.

Respectfully submitted,

Dated: January 6, 2026

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Eric P. Tuttle*
Eric P. Tuttle

*Counsel for Defendant*
GOOGLE LLC

---

[5] Google would detail Prof. Smith's continued failings in this regard, but the Court's Scheduling Order does not authorize reply briefing on *Daubert* motions filed in connection with class proceedings (in contrast to *Daubert* motions filed on the merits). *See* ECF. No. 231.