Brandt Silverkorn, SBN 323530
bsilverkorn@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Matthew J. Oppenheim*
matt@oandzlaw.com
Jeffrey M. Gould*
jeff@oandzlaw.com
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave, NW, 5th Floor
Washington, DC 20016
Tel: 202.480.2999

*Counsel for Proposed Intervenors*

*Application for pro hac vice forthcoming

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| *In re Google Generative AI Copyright Litigation* | Master File Case No.: 5:23-cv-03440-EKL<br>Consolidated with Case No.: 5:24-cv-02531-EKL<br><br>**NOTICE OF MOTION AND MOTION TO INTERVENE**<br><br>Hearing Date: May 6, 2026<br>Hearing Time: 10:00 a.m.<br>Courtroom: 7<br><br>Judge: Hon. Eumi K. Lee<br>Magistrate Judge: Susan van Keulen |

**NOTICE OF MOTION AND MOTION**

**PLEASE TAKE NOTICE** that on May 6, 2026 at 10:00 a.m., in Courtroom 7, Fourth Floor, of this Court, located at 280 South First Street, San Jose, California, Cengage Learning, Inc. and Hachette Book Group, Inc. will move pursuant to Federal Rule of Civil Procedure 24 to intervene to seek appointment as an additional class representative or, in the alternative as subclass representative. Pursuant to Section VIII(A) of the Court's Standing Order, they certify compliance with the Court's meet and confer requirement which took place on January 8, 2026. Plaintiffs agree to the relief requested in the Motion. Defendants oppose.

This Motion is based upon this Notice, the Memorandum of Points and Authorities filed herewith, the exhibits attached thereto, and the record in this matter, along with any oral argument that may be presented to the Court and evidence submitted in connection therewith.

**STATEMENT OF THE ISSUES TO BE DECIDED**

**1.**   Should the Court allow the intervention of Cengage and Hachette to seek appointment as class or subclass representatives to represent the interests of publishers in this action and to seek to have their counsel, Edelson PC and Oppenheim + Zebrak, LLP, appointed as either class counsel or as subclass counsel?

This case will address a fundamental question of the AI era: what responsibility do AI companies have to copyright owners whose works they've stolen to build their trillion-dollar businesses? Here, several authors seek to certify classes of copyright owners across the publishing industry that will put that question to Google. The answer has industry-shaping implications not just for the named plaintiff authors, but for publishers—like the proposed intervenors—as well.

From what's not redacted, it is apparent the proposed class definitions acknowledge that reality, seeking to certify both "legal" (typically, publishers) and "beneficial" (typically, authors) copyright owners. But publishers are not among the proposed representatives. The Court should allow Cengage Learning ("Cengage") and Hachette Book Group ("Hachette") (together, "Proposed Intervenors") to intervene pursuant to Rule 24 to remedy that deficiency. Proposed Intervenors support certification of the issues and claims raised in this case. They wish to stand alongside their authors in vindicating copyright owners' rights. Publishers are significant stakeholders in this case, with a parallel but distinct set of interests and arguments to make at a historic trial.

In *Bartz v. Anthropic*, authors and publishers came together to prepare the class's claims for trial and secure a record-breaking settlement. No. 3:2024-cv-05417, Dkt. 533 (N.D. Cal. Jan. 5, 2026). The publishers had their own evidence and arguments to present at trial, including their efforts to fight the use of illegal shadow libraries, the pernicious impact of piracy, their efforts to deal with AI companies through licensing agreements, the harmful impact AI has on educational works, and the increasing displacement of published works by AI-generated content. And in the settlement, the publishers had distinct interests from authors in the allocation process and determining the division of ownership. When Judge Alsup certified the *Bartz* class, he predicted publishers and authors would work these issues out. *Bartz v. Anthropic PBC*, 791 F. Supp. 3d 1038, 1052–53 (N.D. Cal. 2025). He was correct: those issues were addressed collaboratively, but only because the publishers participated in the action alongside the authors. Here, publishers are absent.

The Court should accordingly permit Cengage and Hachette to intervene and represent publishers across the industry. Cengage is one of the five largest educational publishers in the United States, publishing textbooks and other materials for K-12 schools, higher education institutions, libraries, and vocational training institutions. Hachette is one of the five largest trade publishers,

publishing thousands of fiction and non-fiction books every year. Proposed Intervenors each have claims against Defendants for direct copyright infringement for the conduct in this litigation. And Proposed Intervenors are supported in their request to intervene by the Association of American Publishers, the national trade association and principal public policy advocate for publishing houses in the U.S., whose membership includes more than 120 large, small, nonprofit, and commercial houses in the education, scholarly, and consumer publishing sectors.

Publishers currently lack visibility into the particulars of the proposed class. The "what" and "why" of class certification will remain redacted until just before (or even potentially through) the February 4, 2025, hearing on class certification. Publishers should not have to wait to understand what impact the proposed class may have on their rights before intervening. *All* affected class members—including the entire publishing industry—should be represented, and publishers should have a say *before* they are lumped into a class without notice or an opportunity to evaluate that class. Once permitted to intervene, and to the extent requested by the Court, Proposed Intervenors can file supplemental papers seeking appointment as class representatives of a class or subclass, and appointing their counsel as class counsel to represent publishers' distinct interests.

Finally, publishers' intervention will not delay this litigation. Indeed, Class Counsel have recently filed an intervention motion to ensure the proposed classes are adequately represented. (Dkt. 321.) And publishers (and Hachette specifically) are already participants via subpoena. By becoming present rather than absent class members, they can streamline information production and move the case more quickly to trial, obviating Google's arguments that hinge on the formal absence of publishers in this litigation. (Dkt. 282 at 14 (arguing that need to subpoena information from publishers counsels against certification); *see also* Dkt. 324 at 13-15 (addressing Google's arguments about rights determinations).) Intervention should accordingly be granted.

### I. Cengage and Hachette Should Be Permitted to Intervene as of Right.

The Court should permit Cengage and Hachette to intervene as of right under Rule 24(a)(2). An applicant may intervene as of right when "(1) it has a 'significant protectable interest' relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is

timely; and (4) the existing parties may not adequately represent the applicant's interest." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). Determining if such intervention is appropriate is a "practical and equitable" inquiry where courts "interpret the requirements broadly in favor of intervention." *Id.* Proposed Intervenors are currently absent class members with the same claims for copyright infringement as named plaintiffs ("Author Plaintiffs"). The Court's ruling on class treatment may impair Proposed Intervenors' ability to assert those claims on a class basis. Proposed Intervenors are intervening now—despite the lack of complete information—to ensure their distinct interests in the litigation are represented. This intervention also has the benefit of resolving intra-class tensions that Google relies on in an effort to defeat certification. Moreover, Proposed Intervenors have unique industry knowledge and resources necessary for success at trial.

### A. Cengage and Hachette Have a Significant Protectable Interest in This Litigation.

An applicant for intervention as of right must have a significant protectable interest in litigation, meaning an interest that is "protectable under some law" and that "there is a relationship between the legally protected interest and the claims at issue." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). Legal or beneficial ownership of a right under copyright confers standing to sue for infringement. *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 884 (9th Cir. 2005). Proposed Intervenors are some of the largest book publishers in the United States, and they are legal owners, in whole or in part, of copyrights to books that Google copied to source content for and to train the Generative AI Models referred to in the Second Amended Consolidated Class Action Complaint ("SAC"), Dkt. 234, as Gemini and Imagen. (SAC ¶ 1.) (*See* Proposed Complaint, Exhibit 1.)  As legal owners of copyright interests, they are enormous stakeholders in this litigation—and their rights are front and center. Indeed, for works created as "works for hire" by the publisher that would otherwise meet the class definition, the *only* owner of impacted rights is the publisher. This case involves allegations that Defendant directly infringed those rights. Proposed Intervenors therefore have a significant protectable interest in this litigation.

### B. The Disposition of this Action May Impair Cengage and Hachette's Interests.

When applicants who are absent class members seek to intervene and "would be substantially affected in a practical sense by the determination made in an action," intervention should generally

be permitted. *Citizens for Balanced Use*, 647 F.3d at 898 (quoting Fed. R. Civ. P. 24 advisory committee's note). The disposition of this action, including whether class certification is granted, will impact an entire industry's rights against AI companies. As such, being able to opt out of a proposed class action is not enough to avoid the impairment or impeding of publishers' interests. *See* 3 Newberg and Rubenstein on Class Actions § 9:34 (6th ed.) (explaining that opt-out rights in a class action are insufficient to avoid impairment of rights, because that "would mean a class member could never intervene in a (b)(3) class action (since she can always opt out), yet both Rule 23 and the history of Rule 24 explicitly envision intervention as a means of securing adequacy of representation"). Proposed Intervenors agree that the underlying claims at issue are susceptible to class treatment. In requesting to intervene, Proposed Intervenors seek to avoid a situation where a class is certified but their interests are not adequately represented in the proposed class. They also seek to remedy the current status quo where no publisher even knows what the proposed classes are or the complete arguments for certification before the Court rules on them.

   **C.**  **Cengage and Hachette's Intervention is Timely.**

As to timeliness, courts look at "when the intervenor became aware that its interest would no longer be protected adequately by the parties." *Legal Aid Soc'y. of Alameda Cty. v. Dunlop*, 618 F.2d 48, 50 (9th Cir. 1980) (per curiam); *see also U.S. v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) ("[A] party's interest in a specific phase of a proceeding may support intervention at that particular stage of the lawsuit."). Despite heavy redactions, Author Plaintiffs' class certification motion made apparent Proposed Intervenors' interests would not be adequately represented. To assess timeliness, courts consider (1) stage of the proceedings; (2) whether the parties would be prejudiced; and (3) reason for any delay in moving to intervene. *U.S. v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990). If there is "change of circumstance, which suggests that the litigation is entering a new stage, [that] indicates that [the first and third factors,] the stage of the proceeding and reason for delay[,] are factors which militate in favor of granting the application." *U.S. v. Oregon,* 745 F.2d 550, 552 (9th Cir. 1984). All three factors heavily favor a timeliness finding here.

First, factors 1 and 3 are met. Author Plaintiffs moved for Class Certification on October 15, 2025. (Dkt. 251.) The motion proposed a class that almost certainly includes Proposed Intervenors,

who are "legal" owners of tens of thousands of copyrights, but the proposed class lacks a representative for perhaps its largest constituency: publishers. Despite heavy redactions to the facts supporting class certification, there can be no doubt that publisher interests are squarely at issue.

Google opposed class certification on November 20, 2025, pointing in part to intra-class tensions posed by addressing ownership of the works at issue. (*See* Dkt. 282 at 22 (suggesting Author Plaintiffs' claims raise individualized questions because of disagreements over copyright ownership).) Google also objected concerning the ability to identify class members, an issue publishers are well-suited to address. (*Id.* at 23–24.) Publishers' participation in this litigation could resolve those issues, as Judge Alsup noted would occur when he certified a class of copyright owners. *Bartz*, 791 F. Supp. 3d at 1052–53 (explaining that "authors and publishers are in business together and will work out the best way to recover"). Publishers' absence at least appears to be presently at issue—though Proposed Intervenors can only see so much in the public briefing—and Proposed Intervenors are timely moving to resolve it.

Now is an appropriate time to consider Proposed Intervenors' request. Courts and parties commonly adjust class definitions, even after class certification, to fit the evolving facts of a case. *See Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1139 (9th Cir. 2016) (holding, with respect to an already certified class, that "[a]s the case progresses, the district court may . . . separate the class into subclasses, or adjust the scope of the class definition"). It is also appropriate for potential class members to evaluate the progress of class certification before deciding to intervene. *See In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1177–78 (N.D. Cal. 2017) (holding permissive intervention timely when filed "only three weeks before the hearing on class certification"); *Kamakahi v. Am. Soc'y for Reproductive Med.*, No. 11–cv–01781, 2015 WL 1926312, at *1 (N.D. Cal. Apr. 27, 2015) (holding that permissive intervention "to seek injunctive relief on behalf of an anticipated subclass" was timely even where an already certified class was being appealed, but the class plaintiffs had not certified the subclass intervenors intended to propose).

As absent proposed class members, Proposed Intervenors currently cannot fully engage with the class certification process. Because proposed class definitions and related briefing are heavily redacted, Proposed Intervenors cannot presently take a position on the class definitions Author

Plaintiffs propose aside from asserting they support class certification generally. Briefing regarding sealing won't conclude until January 22, 2026. (Order Authorizing Omnibus Sealing Mot. at 3, Dkt. 265.) Proposed Intervenors have acted now to ensure publisher interests are protected in any class certification order. Moreover, from what they can parse from the briefing, publisher participation is necessary for their adequate representation. That is why Proposed Intervenors are stepping up before class certification has been decided. The first and third timeliness factors are met.

The second factor also favors granting Proposed Intervenors' request to intervene because intervention would not prejudice other parties. It will not "complicate the issues and prolong the litigation." *U.S. v. Washington*, 86 F.3d 1499, 1504 (9th Cir. 1996). Proposed Intervenors' involvement will simplify the issues—taking arguments about supposed conflicts between publishers and authors off the table—and advance the case to trial. This intervention will ensure that issues are adequately litigated. *See Day v. Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007). Publishers are already involved here. For instance, Hachette received subpoenas for information in the case, and Google complains that the need for third-party subpoenas to publishers should defeat class certification. (Dkt. 282 at 5 (arguing against class treatment based in part on the need to subpoena publishers).) Proposed Intervenors can provide evidence and witnesses without additional subpoenas that will assist the class at trial. This includes providing witnesses to explain how the publishing industry works, their investments in authors, the costs and risks of publishing given the uncertainty of commercial success for any given work, the need to deter piracy (including from shadow libraries) as technologies evolve, and the massive impact book piracy has on their businesses, ability to invest in authors, and the continued advancement of arts and sciences. Hachette and Cengage's participation resolves these issues and advances the litigation. There will therefore be "little potential prejudice" to any party, because "the relevant factual and legal issues will be substantially similar" once Proposed Intervenors are permitted to intervene. *James R. Moder Crystal Chandelier Inc. v. Maxim Lighting Int'l Inc.*, No. 2:20-cv-03762, 2020 WL 8457481, at *1 (C.D. Cal. Dec. 23, 2020).

Proposed Intervenors are self-evidently adequate representatives of publishers, representing two of the largest trade and educational publishers who have demonstrated infringement of their copyrights in their Proposed Complaint. (*See* Proposed Complaint, Exhibit 1.) If discovery is

necessary to demonstrate adequacy, Proposed Intervenors stand ready to perform it promptly. The timeliness factors are met.

### D. Authors May Not Adequately Represent Publishers' Interests.

While the interests of publishers and authors in this litigation are highly aligned, publishers have unique interests as the legal owners of the works and suffer unique harms from Defendant's monumental-scale copyright infringement. That favors permitting intervention as of right.

The burden of demonstrating this factor is "minimal" and is met if representation "may be inadequate." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (internal quotations omitted). When a party and an intervenor have the same "ultimate objective," there is "a presumption of adequacy of representation" that can be rebutted by a "compelling showing" to the contrary. *Citizens for Balanced Use*, 647 F.3d at 898. Such a showing requires examining three factors to determine if representation *may be* inadequate: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki*, 324 F.3d at 1086. Proposed Intervenors have the same "ultimate objective" as Author Plaintiffs: holding Defendant accountable by achieving the maximum recovery per work and securing injunctive relief. Because publishers have distinct interests and arguments, however, this factor favors allowing intervention.

As to the first and second factors, it is doubtful Author Plaintiffs will make all Proposed Intervenors' arguments. Despite identifying publishers in their class definition ("legal" owners), no named plaintiff represents this half of the industry. With publishers' participation, the class can make necessary arguments at summary judgment or trial. For instance, publishers are uniquely positioned to demonstrate market harm given their position in the marketplace. *See* 17 U.S.C. § 107(4) (fourth fair use factor considers "the effect of the use upon the potential market for or value of the copyrighted work"). Because this factor "focuses on actual or potential market substitution," *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 536 n.12 (2023), it is "undoubtedly the single most important element of fair use," *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 566 (1985), and publishers are best suited to address it. Moreover,

MOTION TO INTERVENE                                    7
MASTER FILE CASE NO.: 5:23-CV-03440-EKL

the Copyright Act provides for a single statutory damages award per-work infringed, which strongly favors participation of all rightsholders in a class action. *See KTS Karaoke, Inc. v. Sony/ATV Music Publ'g LLC*, No. CV-12-00014, 2014 WL 12567169, at *4-5 (C.D. Cal. Jan. 14, 2014) (stating that "the Copyright Act prevents recovery of multiple statutory damages awards with respect to the same infringement"). In *Bartz*, authors and publishers collaboratively designed an allocation process for settlement. But publishers may differ with authors on the ownership of at-issue rights and the ultimate division of litigation proceeds. With publishers' interests represented in *Bartz*, the parties resolved those issues and adopted a claimant-friendly claims process and default splits for most works in suit. That would have been impossible without publisher representation.

As to the third factor, Proposed Intervenors offer elements necessary to the proceeding other parties will neglect. They are major publishers with access to information, resources, and bargaining power that will be crucial at every stage of this case: discovery, dispositive motion practice, settlement talks, and trial. Publishers can marshal proof concerning ownership, scope of infringement, and market harm at scale, including centralized ownership records, databases, portfolio-level sales and revenue data, and testimony from executives who understand the publishing industry and how infringement affects entire publishing catalogs. *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1050 (N.D. Cal. 2025) (noting evidence of market harm is relevant to fair use analysis). As demonstrated in *Bartz*, publishers have been critical, including by preparing for trial, increasing the class works list by more than 20 percent, and providing to the settlement administrator contact information for more than 750,000 authors or potential rightsholders for works in the settlement, ensuring that the notice had the broadest possible reach. Only publishers can make available at trial executive-level witnesses to speak to the systemic harms caused by piracy of copyrighted works and the impact of Google's misconduct more broadly. Author representatives will not be focused on these arguments and lack these resources. Intervention should be granted.

## II.  Alternatively, Permissive Intervention Should be Granted.

Proposed Intervenors should be permitted to intervene, if the Court determines they may not do so as of right. Fed. R. Civ. P. 24(b)(1)(B). Courts may grant permissive intervention when there are "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim

or defense, and the main action, have a question of law or a question of fact in common." *N.W. Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996). Those criteria are met. The first factor does not apply here, because this case arises under federal copyright law and Proposed Intervenors do not raise new claims. *See Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011). To assess the second factor, timeliness, courts apply the same three factors as in the timeliness analysis for intervention as of right. *See League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997). While that analysis for permissive intervention is less lenient than for intervention as of right, that does not change the outcome here. *Oregon*, 745 F.2d at 552. As set forth above, the need for publisher representatives only recently materialized. This factor is therefore met. So is the third factor. Proposed Intervenors will assert direct copyright infringement claims based on the same conduct alleged in Author Plaintiffs' operative complaint. They also have significant interests in this case, standing to assert copyright claims, and unique and significant arguments to offer. Their interests are not adequately represented, intervention will not prolong or delay this litigation, and their intervention will aid in the "equitable adjudication" of the case. *See Spangler v. Pasadena Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977) (setting out permissive intervention factors). Therefore, permissive intervention should be permitted.

### III.   The Court Should Name Cengage and Hachette as Class or Subclass Representatives.

Adding class representatives is common in class actions. *See e.g.*, *McConnell v. Red Robin Int'l, Inc.*, No. C 11-03026 WHA, 2012 WL 1357616, at *2 (N.D. Cal. Apr. 17, 2012) (stating the proper way to add a class representative is through intervention). Courts can also "divide classes into subclasses." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017). Proposed Intervenors ask the Court to either: (1) add them as additional class representatives to proposed class structure; or (2) certify a publisher subclass or subclasses with them as subclass representatives. The Court should also appoint Edelson PC and Oppenheim + Zebrak, LLP ("O+Z"), as class or subclass counsel. As core stakeholders who support certification to enforce copyright, publishers should not be left out, unable to view core parts of the arguments related to class certification. Once permitted to intervene and review unredacted briefing related to class certification, Proposed Intervenors can submit supplemental briefing (as requested by the Court) on their proposed role as class

representatives or the appropriate handling of a subclass.

As set forth above, Author Plaintiffs will be unable to "vigorously" litigate on behalf of publishers because of their differing interests and industry roles. *See Kim v. Allison*, 87 F.4th 994, 1002 (9th Cir. 2023). When adequacy or typicality of named Plaintiffs is uncertain, courts need not disturb the class; they add representatives whose participation ensures compliance with Rule 23. *See Kirkpatrick v. Ironwood Commc'ns, Inc.*, No. C05-1428JLR, 2006 WL 2381797, at *5-6 (W.D. Wash. Aug. 16, 2006) (certifying a class after the addition of a proposed class representative to promote adequacy); *Fishon v. Premier Nutrition Corp.*, No. 16-cv-06980, 2022 WL 958378, at *2 (N.D. Cal. Mar. 30, 2022) (collecting cases where class representatives were substituted due to adequacy issues, even after class certification). Proposed Intervenors may serve as class representatives when their inclusion "enhance[s] administration of [the] action and protection of the interests" of class members. *League of United Latin Am. Citizens*, 88 F.R.D. at 543; *see also Kamakahi*, 2015 WL 1926312, at *1 (same). Proposed Intervenors satisfy that standard: as major publishers, Cengage and Hachette possess information, resources, and institutional knowledge essential to prosecuting the case, managing discovery, and ultimately structuring any resolution. Adding Proposed Intervenors ensures that all rightsholders' interests are fully and adequately represented. To represent and advocate for those interests, Proposed Intervenors also request that the Court appoint their attorneys in a class counsel role to work alongside Author Plaintiffs' counsel.[1]

Alternatively, the Court could certify a publisher-specific subclass or subclasses and appoint Proposed Intervenors as its representatives. Courts may divide classes into subclasses to resolve intra-class tensions or manage administrative burdens. *Brooks v. Thomson Reuters Corp.*, No. 21-CV-01418-EMC, 2023 WL 9316647, at *15 (N.D. Cal. Aug. 10, 2023). Subclasses are appropriate where the broader class is appropriate but intra-class differences in interests require separate representation. *See Rollins v. Dignity Health*, 336 F.R.D. 456, 464–65 (N.D. Cal. 2020).

## CONCLUSION

Intervention as of right or permissive intervention should be granted.

---

[1] O+Z is a national leader in plaintiffs' copyright litigation and Edelson PC is one of the country's leading class action firms. Both firms served in the *Bartz* case to represent publishers' interests.

|   |   |   |
|---|---|---|
| 1 |   | Respectfully submitted, |
| 2 | Dated: January 15, 2026 | /s/ Brandt Silverkorn |
|   |   | Brandt Silverkorn (SBN 323530) |
|   |   | bsilverkorn@edelson.com |
|   |   | EDELSON PC |
|   |   | 150 California Street, 18th Floor |
|   |   | San Francisco, California 94111 |
|   |   | Tel: 415.907.6645 |
|   |   | Fax: 415.373.9435 |
|   |   |   |
|   |   | Matthew J. Oppenheim* |
|   |   | matt@oandzlaw.com |
|   |   | Jeffrey M. Gould* |
|   |   | jeff@oandzlaw.com |
|   |   | OPPENHEIM + ZEBRAK, LLP |
|   |   | 4530 Wisconsin Ave, NW, 5th Floor |
|   |   | Washington, DC 20016 |
|   |   | Tel: 202.480.2999 |
|   |   |   |
|   |   | *Counsel for Proposed Intervenors* |
|   |   |   |
|   |   | *Application for *pro hac vice* forthcoming |