<u>REDACTED</u>

January 23, 2026

<u>**Via Electronic Filing**</u>

The Honorable Susan van Keulen
United States District Court for the Northern District of California
San Jose Courthouse, Courtroom 6 – 4th Floor
280 South First Street
San Jose, CA 95113

**Re:**    ***In re Google Generative AI Copyright Litigation***
       **Master File Case No. 5:23-cv-03440-EKL-SVK**
       **Consolidated Case No. 5:24-cv-02531-EKL-SVK**

Pursuant to Section 7(b) of the Court's Civil and Discovery Referral Matters Standing Order, Plaintiffs and Defendant Google LLC ("Google") respectfully submit this joint statement regarding Plaintiffs' request for leave to conduct additional depositions, including of four (4) Google executives. Counsel have met and conferred but remain at impasse. Fact discovery closes in 21 days, on February 13, 2026.

**Plaintiffs have taken nine depositions.** Eight Rule 30(b)(1) depositions and one Rule 30(b)(6) deposition, and retain one deposition as of right under Rule 30(a)'s 10 deposition limit. Google contends that because Plaintiffs took 25 minutes of 30(b)(6) testimony beyond the 22-hour limit, that 25 minutes counts as a second deposition. This is wrong. *Saevik v. Swedish Med. Ctr.*, 2021 WL 5014087, at \*1 (W.D. Wa. Oct. 28, 2021) ("[A]ll Rule 30(b)(6) depositions are considered a single deposition for *purposes of the numeric limit.*"). Plaintiffs should, at a minimum, be permitted to exhaust their tenth deposition.[1]

**This Court has authority to grant Plaintiffs additional depositions.** The Scheduling Order confirmed that the presumptive ten-deposition limit applies; it did not bar Plaintiffs from seeking leave from this Court under Rule 30(a)(2), remove this Court's authority to grant such relief, or require Plaintiffs to move for a schedule modification to do so. Google reads these restrictions into the Order merely to stall Plaintiffs' discovery efforts. Google's suggestion that Plaintiffs are framing this dispute as discovery-related to avoid Judge Lee's recent order is absurd. Google knows Plaintiffs initiated briefing on this dispute before Judge Lee's recent order.

**Plaintiffs satisfy the standard for additional depositions.** Courts consider whether discovery is cumulative or duplicative, whether adequate opportunity existed, and whether the burden outweighs the benefit. Fed. R. Civ. P. 26(b)(1). "Importantly, Rule 30 lists no other standard—apart from those principles enumerated in Rule 26—governing requests for additional depositions." *Pitkin v. Corizon Health, Inc.*, 2018 WL 1336047, at \*1 (D. Or., Mar. 13, 2018). The only guiding principle is Rule 26(b)(1) and (2)—"[t]he plain language of the Rules and the Advisory Committee Notes do not require a particularized showing" when applying Rule 30(a)(2). *Id.* (citation omitted). In *Kadrey v. Meta Platforms, Inc*, the Court explained "the issues at stake in the action are important" and "many more than 10 depositions are proportional to the needs of the case." 2024 WL 4502099, at \*1 (N.D. Cal. Oct. 15, 2024) (permitting 25 fact depositions). Other courts are in accord. *See Andersen v. Stability AI Ltd.*, 2025 WL 870358, at \*10 (N.D. Cal. Mar.

---

[1] Discovery disputes have been referred to Judge van Keulen. *See* Aug. 21, 2024 Clerical Entry; ECF 88.

19, 2025) (granting plaintiffs 30 fact depositions in AI copyright case, finding "complexity of the case" warranted exceeding the ten-deposition limit).  So too here.

**The testimony sought is neither cumulative nor duplicative.** Plaintiffs seek to depose six witnesses: Tom Turvey, Rebecca Santamaria-Fernandez, Sundar Pichai, Jeff Dean, Demis Hassabis, and Koray Kavukcuoglu. Evidence obtained to-date confirms that these witnesses possess unique, non-duplicative, personal knowledge bearing on Plaintiffs' claims. Google resists producing *any* of the six witnesses because it claims Plaintiffs have taken the ten depositions allowed, and further resists producing Pichai, Dean, Hassabis and Kavukcuoglu on the basis of the so-called "apex" doctrine, however, as set forth below, each witness possesses key knowledge regarding Google's acquisition and licensing strategy, publisher negotiations and pricing model, risk assessments, business, and budgeting decisions with regard to the Models. Their testimony goes to fair use factor four and the willfulness of Google's conduct.

Turvey, played a central role in developing the acquisition model for publisher-provided books at Google. PX-0838 - Direct Testimony of Thomas Turvey (Google), *United States v. Apple, Inc.*, Case No. 12-cv-2826 (available at https://www.justice.gov/sites/default/files/atr/legacy/2013/09/16/px-0838.pdf). Turvey was "███████████████████" at Google for AI training and led the Books Partnership team's negotiations with publishers for over a decade, including ████████████ ████. GOOG-AIC-000410007 at -14. He has unique knowledge of Google's licensing efforts.

Santamaria-Fernandez, handled front-line publisher outreach and developed Google's ████████████████████████████████████████ ("Models"). GOOG-AIC-000118693 at -94 (████████████████████). She communicated directly with skeptical publishers, GOOG-AIC-000409978 at -980, and communicated internally that ████████████ ██████ GOOG-AIC-000472033 at -038. Google's 30(b)(6) designee on financial expenditures ████████████████████████████████████████████████████████ ████████████████████████████████████████████████. Barker Dep. at 63:12-64:12, 79:3-80:21. She possesses unique knowledge about Google's putative efforts to license copyrighted works for use as AI training.

Pichai, Google's CEO, directed commercialization, training-data selection, and risk-mitigation strategies for the Models. Pichai greenlit the plan to launch external generative AI APIs for the Models (GOOG-AIC-000312132 at -135), issued his now famous "code red" following the release of OpenAI's ChatGPT (GOOG-AIC-000288589 at -705); provided ███████ as to ███████████████████████████████████████████████████████ ████████ (GOOG-AIC-000388471 at -502); had final authority on the selection and use of training corpora (GOOG-AIC-000118123; GOOG-AIC-000117854 at -862); approved the ████ ███████████████████████████████ (Barker Dep. Tr. at 62:2-7); and personally reviewed "██████████████████" for training data licenses (GOOG-AIC-000409943 at -973). Moreover, Pichai had direct involvement responsible in a key strategy shift in Google's policies concerning its acquisition and use of copyrighted content as training data, supporting the importance of his testimony. *See, e.g.*, *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, 2006 WL 2578277, at *3 (N.D. Cal. Sept. 6, 2006) (granting deposition of Larry Page after close of fact discovery where deponent disclosed a pertinent policy change was directed by Page). Plainly, the record shows that Pichai is the "chief decision maker and policy setter for [Google's] Generative AI branch and the development of … models at issue in this action," including "evidence of [Pichai's] direct supervision of [Google's] AI products"—this is adequate to show "that this deposition is worth taking." *Kadrey v. Meta Platforms, Inc.*, 2024 WL 4293910, at *1-2 (N.D. Cal. 2024); *see generally id.* (ordering deposition of Mark Zuckerberg in AI copyright case).

Dean, a leader of Google's AI efforts since 2018 and Google's Chief Scientist since 2023, had direct oversight of the design and development of Google's LLM systems, including compartmentalization and controls over use and regurgitation of copyrighted works within training datasets, opined on what training data to exclude from the Models' corpora, e.g., stating "████ ███████████████████████████████████████████████," (*Id.* at -863), and acknowledged ████████████████████████████████████████████ ████████. *Id.* at -864. Dean's testimony is essential to evaluating (1) whether Google's conduct was transformative and commercial under fair use factor one (*Andy Warhol Found. For Visual*

3

*Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023)); (2) whether Google acted in good faith (*Harper & Row Publ'rs, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985)); and (3) Google's willfulness for enhanced statutory damages (17 U.S.C. §504(c)(2)).

Kavukcuoglu, Chief Technical Officer and "Chief AI Architect," has direct operational oversight of the teams responsible for training and evaluating Google's LLMs, including approval authority over training data selection and risk mitigation decisions. *See, e.g.*, GOOG-AIC-000365221 at -222 ("███████████████████████████████████████████████ ███████████████████████"). Kavukcuoglu was part of the executive team, "████ ███████████████████████████████████████" GOOG-AIC-000596764 at -774.

Hassabis, Co-Founder and CEO of Google DeepMind, had personal responsibility for establishing governance protocols for the At Issue Models, directed Gemini training data decisions (GOOG-AIC-000117854 at -872), and had authority to approve Model launches. *See* GOOG-AIC-000215019.

**The apex doctrine does not shield Google's executives**. Google cites the "apex doctrine" to not produce these witnesses. "[I]t is very unusual for a court to prohibit the taking of a deposition all together absent extraordinary circumstances," even under the so-called "apex" doctrine. *Powertech Tech., Inc. v. Tessera, Inc.*, 2013 WL 3884254, at *1 (N.D. Cal. July 26, 2013) (internal cites omitted). "Apex" status is an improper basis to deny depositions where, as here, the record shows each "apex" deponent has unique, first-hand knowledge (and direct personal involvement in critical decisions) central to Plaintiffs' claims or Google's fair use defense, unobtainable through less intrusive methods. *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 263 (N.D. Cal. 2012). And subordinates lack personal knowledge of executives' rationales and intent. *See, e.g.*, Jaskiewicz Dep. Tr. 336:2-7 (Jaskiewicz testifying that he "█████████████████ ████████████' regarding Google's ████████████████). Plaintiffs have sought discovery through less burdensome means, however Google's other witnesses will not be able to testify with personal knowledge to information that only comes from the highest levels. *See, e.g.*,

*Texas v. Google LLC*, 347 F.R.D. 490, 501 (E.D. Tex. 2024) (deposition of Pichai ordered because he possessed unique, personal knowledge relevant to the case). Because these witnesses "may have [] first-hand knowledge of relevant facts, the deposition[s] should be allowed." *In re Apple Iphone Antitrust Litig.*, 2021 WL 485709, *5 (N.D. Cal. Jan. 26, 2021). Google bears the burden as the party resisting discovery. "The fact that a witness with personal knowledge of facts relevant to a lawsuit happens to be a top corporate executive is not, standing alone, sufficient to preclude a deposition."*10th Gear v. PACCAR Inc.*, 2025 WL 2637683, at *1 (W.D. Wash. Sept. 12, 2025).

**Plaintiffs have not had ample opportunity to obtain this information**. The Court directed the parties to prioritize class certification issues in discovery, and Plaintiffs complied. Plaintiffs took depositions without a complete record to meet the class certification deadline and noticed depositions without the benefit of evidence that later revealed who possessed knowledge of critical merits issues. Because of the importance of the witnesses identified herein and the timing of their identification, Plaintiffs should now be permitted to pursue testimony that bears on Google's fair use defense and willfulness—key merits issues.

**Google's Burden Does Not Outweigh the Benefit.** This case involves legal questions that will shape copyright law in the AI era, impacting millions of creators and with significant damages at stake. Given this importance, the six witnesses proposed are proportionate. Market harm is "the most important" element of the fair use analysis. *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 566 (1985). Courts in this district have recognized that licensing negotiations may demonstrate that a market for AI training rights is "normal," "reasonable, or likely to be developed." *In re Mosaic LLM Litig.*, 2025 WL 2294910, at *4 (N.D. Cal. Aug. 8, 2025). These witnesses negotiated and developed Google's pricing models, and decided which publishers to engage with. Their testimony is directly probative of factor four and critical to willfulness. Google's leadship ████████████████████████ ██████████████████████████ GOOG-AIC-000115985. Executives made these decisions and can testify to Google's risk assessment and rationale. Without them, Plaintiffs cannot obtain testimony central to Google's liability and its defenses. Plaintiffs' request should be granted.

**Google's Position:** Plaintiffs' motion for six additional depositions—including four apex deponents—is foreclosed by Judge Lee's Scheduling Order. From the outset, Plaintiffs insisted that "expanding the discovery limits" in the Federal Rules "will be necessary" and that "impos[ing] any limitations" would be improper. ECF 83 at 8. Google opposed, explaining that the Rules' default limits should apply and that Plaintiffs' request to be free from discovery limits was "unworkable." *Id.* at 9.

Judge Lee rejected Plaintiffs' position. In December 2024, the Court ordered that "[t]he presumptive limits on discovery set forth in the Federal Rules of Civil Procedure shall apply to this case unless otherwise ordered by the Court." ECF 88 at 1. Rule 30(a)(2)(A)(i) caps each side at ten depositions. The Court has not otherwise ordered.

For months, Plaintiffs threatened to seek additional depositions—at various points claiming they needed 60 depositions, then 30, then 20 pre-class certification (with more thereafter), then 30 (again); but they never moved for relief from the Scheduling Order. Several times, Google reminded Plaintiffs that any expansion of the deposition limit required a motion to Judge Lee under Rule 16(b)(4), which permits modification of a scheduling order "only for good cause and with the judge's consent." Until recently, Plaintiffs agreed that a request to modify the Scheduling Order limits had to be directed to Judge Lee. But Plaintiffs have no alternative given that they have run out of time to file a formal motion with Judge Lee and with Judge Lee having just ordered that no further motions be filed before her (ECF 360). With just three weeks left in a 14-month discovery period they are filing their fourteenth discovery motion, asking this Court to override Judge Lee's Scheduling Order and allow them six additional depositions, including four apex executives.

The motion is procedurally and substantively improper. Procedurally, only Judge Lee may modify her Scheduling Order's discovery limits. Substantively, Plaintiffs fail to acknowledge—much less satisfy—the Rule 16 "good cause" standard that must be met to justify changes. By itself, Plaintiffs' delay shows there is no good cause. And Plaintiffs do not justify any additional depositions, much less show the extraordinary circumstances required to justify apex depositions.

*1. Plaintiffs' Motion Is an Improper Attempt to Modify the Scheduling Order.* Once

Judge Lee entered the Scheduling Order adopting the Federal Rules' presumptive limits—including the ten-deposition cap—any request to modify those limits had to be directed to her. The Scheduling Order may be modified only if "ordered by the Court." ECF 88 at 1. Rule 16(b)(4) likewise requires the consent of the "judge" who entered the scheduling order. *See also* Fed. R. Civ. P. 16(b)(4) advisory comm. notes ("The use of the term 'judge' in [Rule 16(b)] reflects the Advisory Committee's judgment that it is preferable that this task should be handled by a district judge rather than a magistrate … ."). Judge Lee entered the ten-deposition limit after considering and rejecting Plaintiffs' request for more. Any request for reconsideration of that determination—that is, a request to modify the Scheduling Order—must go to her. *UMG Recordings, Inc. v. Disco Azteca Distribs., Inc.*, 2006 WL 2034689, at *3 (E.D. Cal. July 18, 2006) ("Of course, the magistrate judge is not empowered to modify the district judge's scheduling order."); *Quiksilver, Inc. v. Quick Sports Int'l B.v.*, 2005 WL 2339148, at *1 (C.D. Cal. Sept. 14, 2025) ("Magistrate judges do not have the authority to overrule or ignore orders issued by Article III judges."). Plaintiffs do not have an answer for these authorities, or any of their own.[2]

The Court can stop there, but it is notable that, as a practical matter, Plaintiffs are not merely seeking six more depositions at the eleventh hour. They are effectively asking this Court to derail Judge Lee's case schedule, under which discovery closes on February 13. Plaintiffs have not asked Judge Lee to extend that deadline—for good reason, since they already asked Judge Lee for an extension of the discovery cutoff, which she denied. ECF 231 at 2.

No further extension would be justified in any event. The fact that Plaintiffs can seemingly make limitless work for Google and the Court does not mean their discovery appetite is reasonable or proportionate to the needs of the case. At present, Plaintiffs have presented: a motion for class certification (ECF 251/253-1); a motion to add new parties (ECF 321/322-1); a motion challenging this Court's ruling on identifying putative works used in training (ECF 328); another discovery

---

[2] When addressing Plaintiffs' request for additional Rule 30(b)(6) deposition time, this Court notably avoided altering Judge Lee's Scheduling Order, adjusting only how Rule 30(b)(6) hours would be counted, not the number of depositions permitted. *See* Sept. 11, 2025 Hr'g Tr. at 61:13-22.

motion demanding Google start the custodial document production process anew (to be filed early next week); a motion to quash subpoenas Google served on Plaintiffs' agents to get documents the named Plaintiffs failed to produce (*Almond v. Google LLC*, No. 1:26-mc-00029 (S.D.N.Y. Jan. 20, 2026)); and brand new challenges filled with mischaracterizations to Google's careful sealing requests (ECF 372). They also are pressing too many other discovery demands to count. It simply would not be feasible for Google to also prepare and present six more witnesses for deposition in the limited time remaining for discovery. Again, if Plaintiffs want to seek a schedule extension, they can seek one from Judge Lee. *Uniloc 2017 LLC v. Apple, Inc.*, 2020 WL 978678, at \*7 (N.D. Cal. Feb. 28, 2020) ("[A] request to modify the deadlines set in a scheduling order is properly directed to the presiding judge who issued the order, not the undersigned magistrate judge."). They cannot effectuate that through the backdoor of a last-minute demand for more depositions.

*2. Plaintiffs Fail to Show Good Cause Under Rule 16, Let Alone the Circumstances Needed for Apex Depositions.* If this Court were authorized to modify the Scheduling Order, the motion would fail on the merits. The standard that must be met to warrant a change to the Scheduling Order is "good cause" under Rule 16. That is "more restrictive" than ordinary discovery disputes and "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). If the party was not diligent, "the inquiry should end." *Id.*

Plaintiffs do not even acknowledge this standard. For good reason. They cannot meet it. They have known since December 2024 that they were limited to ten depositions unless they timely sought relief. They repeatedly claimed they would need more depositions—but never sought them. Instead, they proceeded as if the limit did not exist, made strategic choices about whom to depose, and waited until the eve of discovery cutoff to seek extraordinary relief: six additional depositions, a 60% increase over the Court-ordered cap. Rule 16 does not reward strategic delay. It prevents it. Plaintiffs could have raised this issue months ago, when any claimed need could have been addressed without disrupting the case schedule. Their failure to do so is dispositive.

Even setting aside their delay, Plaintiffs do not show good cause for revisiting Judge Lee's

ruling that ten depositions should suffice, or for taking any of these six additional depositions. Indeed, they have not even made the requisite showing that the requested depositions are "relevant or proportional to the needs of the case or necessary to decide any issues" at this late stage. *Jones v. Sunbelt Rentals, Inc.*, 2023 WL 10691302 (N.D. Cal. Nov. 16, 2023).

Non-Apex Witnesses. Plaintiffs claim that Rebecca Santamaría-Fernandez and Tom Turvey would testify about negotiations with book publishers over content acquisition agreements. But Plaintiffs already obtained extensive discovery on that topic from witnesses with overlapping responsibility. Google produced documents from multiple custodians involved in book publisher negotiations, including Stephane Jaskiewicz, Leo Vacher, and Kareem Ayoub. And Plaintiffs deposed Messrs. Jaskiewicz and Ayoub, as well as a 30(b)(6) witness on this topic, David Price.

The documents Plaintiffs cite do not suggest these witnesses are necessary to the case. They show team-based collaboration involving other witnesses from whom Plaintiffs have already taken discovery. *See, e.g.*, GOOG-AIC-0004100007, at -14; GOOG-AIC-000118693, at -94. Evidence that employees worked "hand in hand" or communicated "on behalf of" one another confirms duplication, *id.*; it does not justify more depositions. Plaintiffs have not shown good cause to take what at best would be cumulative depositions.

Apex Witnesses. Plaintiffs' request to depose Sundar Pichai, Jeff Dean, Demis Hassabis, and Koray Kavukcuoglu independently fails under the heightened apex doctrine, which exists to prevent "abuse or harassment" of discovery against senior executives. *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012). To justify an apex deposition, Plaintiffs must show unique, non-duplicative, first-hand knowledge of material facts that cannot be obtained through less intrusive means. *Id.*; *see also Davis v. Pinterest, Inc.*, 2021 WL 1117688, at *1 (N.D. Cal. May 27, 2021) ("the apex doctrine is designed to prevent … dragging in high-level executives" who "aren't going to know anything more than what many people within the company can undoubtedly testify to"). Plaintiffs make no such showing.

- ● ***Sundar Pichai.*** This Court already denied Plaintiffs' request to add Google's CEO as a custodian on apex grounds (ECF 148 at 3), and months of discovery have not changed the analysis. Plaintiffs identify no evidence that Mr. Pichai has unique, first-hand knowledge relevant to copyright liability. Their documents show only high-level oversight. *See, e.g.*,

GOOG-AIC-000388471, at -502 (stating that unspecified policies "may be informed by … Sundar guidance"). Plaintiffs' implied argument—that only Mr. Pichai can explain his strategic or budgetary decisions—was already rejected and does not justify an apex deposition. *See Apple*, 282 F.R.D. at 266 (denying apex deposition where evidence showed only "the statements of a business executive voicing [the company's] need to remain competitive").

- *Jeff Dean.* Plaintiffs offer a single email in which Dr. Dean expressed general views about adhering to web-crawling protocols and using large models in Google products. *See* GOOG-AIC-000220863. That is not showing unique, first-hand knowledge of facts critical to Plaintiffs' copyright infringement claims.

- *Demis Hassabis.* The Court previously denied Plaintiffs' request to add Dr. Hassabis, CEO of Google DeepMind, as a custodian on apex grounds, and nothing has changed. Plaintiffs' evidence reflects only high-level oversight: one document offers general views on data use, not dataset-specific facts, *see* GOOG-AIC-000117854, at -872, and another merely asks whether his "launch approval" was required, *see* GOOG-AIC-000214992, at -5019. That does not justify an apex deposition.

- *Koray Kavukcuoglu.* Plaintiffs cite documents showing that Dr. Kavukcuoglu was part of a team providing high-level approval on strategy. GOOG-AIC-000596764, at -774. Shared executive oversight is not unique, first-hand knowledge.

In each instance, Plaintiffs mistake seniority for discoverability, and their individual claims for those of an imaginary class of millions. The apex doctrine forecloses that approach.

*3. At Most, the Court Should Adopt Google's Reasonable Compromise.* Plaintiffs have exhausted the ten-deposition limit. They took eight Rule 30(b)(1) depositions. With respect to Rule 30(b)(6), this Court authorized up to 22 hours of testimony to accommodate Plaintiffs' expansive topics. ECF 221. That accommodation allowed those hours to count as one deposition—not unlimited testimony. Plaintiffs knowingly exceeded the 22-hour cap by approximately 25 minutes, thereby commencing their tenth deposition.

But Google offered to excuse that excess through a reasonable compromise: treat all Rule 30(b)(6) testimony taken to date as a single deposition and allow one additional non-apex fact deposition (without the need for any further custodial document collection or production). Plaintiffs rejected that offer and maintained their demand for six more.

*Conclusion.* Plaintiffs seek to undo a contested Scheduling Order through an untimely, procedurally improper motion filed just three weeks before discovery closes. They were not diligent, cannot show good cause, and fail to justify any additional depositions—apex or otherwise. Google offered a reasonable compromise but Plaintiffs overreached. The motion should be denied.

Respectfully submitted,


Dated:  January 23, 2026                          By:  */s/ Lesley E. Weaver*

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
**STRANCH, JENNINGS & GARVELY,**
**PLLC** 1111 Broadway, Suite 300
Oakland, CA 94607
Telephone: (341) 217-0550
lweaver@stranchlaw.com
adavis@stranchlaw.com
jsamra@stranchlaw.com

Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Evan A. Creutz (SBN 349728)
Elissa A. Buchanan (SBN 249996)
Aaron Cera (SBN 351163)
Louis Kessler (SBN 243703)
Alexander Zeng (SBN 360220)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
ecreutz@saverilawfirm.com
eabuchanan@saverilawfirm.com
acera@saverilawfirm.com
lkessler@saverilawfirm.com
azeng@saverilawfirm.com

Ryan J. Clarkson (SBN 257074)
Yana Hart (SBN 306499)
Mark I. Richards (SBN 321252)
**CLARKSON LAW FIRM, P.C.**
22525 Pacific Coast Highway
Malibu, CA 90265
Telephone: 213-788-4050
rclarkson@clarksonlawfirm.com
yhart@clarksonlawfirm.com
mrichards@clarksonlawfirm.com

11

Brian D. Clark (admitted *pro hac vice*)
Laura M. Matson (admitted *pro hac vice*)
Arielle S. Wagner (admitted *pro hac vice*)
Consuela Abotsi-Kowu (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
bdclark@locklaw.com
lmmatson@locklaw.com
aswagner@locklaw.com
cmabotsi-kowo@locklaw.com

Stephen J. Teti (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
265 Franklin Street, Suite 1702
Boston, MA 02110
Telephone: (617) 456-7701
sjteti@locklaw.com

*Counsel for Individual and Representative
Plaintiffs and the Proposed Class*

Dated:  January 23, 2026                    By: */s/ Paul J. Sampson*

Paul J. Sampson
**WILSON SONSINI GOODRICH &
ROSATI, P.C.**
95 S State Street, Suite 1000
Salt Lake City, UT 84111
Telephone: (801) 401-8510
Email: psampson@wsgr.com

David H. Kramer
Maura L. Rees
Qifan Huan
Kelly M. Knoll
**WILSON SONSINI GOODRICH &
ROSATI, P.C.**
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Fax: (650) 565-5100
Email: dkramer@wsgr.com

12

Email: mrees@wsgr.com
Email: qhuan@wsgr.com
Email: kknoll@wsgr.com

Eric P. Tuttle
Madison Welsh
**WILSON SONSINI GOODRICH &
ROSATI, P.C.**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone: (206) 883-2500
Fax: (206) 883-2699
Email: eric.tuttle@wsgr.com
Email: mjwelsh@wsgr.com

Jeremy Paul Auster
**WILSON SONSINI GOODRICH &
ROSATI, P.C.**
1301 6th Avenue
New York, NY 10019
212-453-2862
Email: jauster@wsgr.com

*Counsel for Defendant Google LLC*

**<u>SIGNATURE ATTESTATION</u>**

I, Lesley E. Weaver, am the ECF User whose ID and password are being used to file this document. In compliance with N.D. Cal. Civil L.R. 5-1(i)(3), I hereby attest that the concurrence in the filing of this document has been obtained from the other signatory.

Dated: January 23, 2026

By:  */s/ Lesley E. Weaver*
Lesley E. Weaver

14