<u>REDACTED</u>

January 26, 2026

<u>**Via Electronic Filing**</u>

The Honorable Susan van Keulen
United States District Court for the Northern District of California
San Jose Courthouse, Courtroom 6 – 4th Floor
280 South First Street
San Jose, CA 95113

**Re:**     ***In re Google Generative AI Copyright Litigation***
          **Master File Case No. 5:23-cv-03440-EKL-SVK**
          **Consolidated Case No. 5:24-cv-02531-EKL-SVK**


       Pursuant to Section 7(b) of the Court's Civil and Discovery Referral Matters Standing Order, Plaintiffs and Defendant Google LLC ("Google") respectfully submit this joint statement regarding the dispute over the addition of six Google custodians. Fact discovery closes in 18 days, on February 13, 2026. Counsel have met and conferred but remain at impasse.

**Plaintiffs' Position:** Plaintiffs move to compel the addition of six document custodians: Rebecca Santamaria-Fernandez; Megha Goel; Katie Millican; Tom Turvey, Sundar Pichai; and Demis Hassabis (together, "Proposed Custodians"). The Proposed Custodians possess unique information relevant to the claims and defenses in this case that have not been produced or is otherwise unavailable. *See, e.g.*, *In re Facebook Inc. Consumer Priv. User Profile Litig.*, 2021 WL 10282213, at *1 (N.D. Cal. Nov. 14, 2021) (compelling "the designation of additional custodians requires a showing that the disputed custodians possess uniquely relevant information that is not available from the sources already designated.").

Google's opposition rests on a fundamental contradiction. Seven months ago, Google accused Plaintiffs of "flouting guidance from Judge Lee" by pursuing discovery beyond class certification and demanded that Plaintiffs justify their proposed custodian's information "is needed for class certification"—the Court agreed, ordering that "[i]n choosing their Google custodians, each Party must prioritize those that are most likely to impact class certification. ECF 144 at 6-7; ECF 155 at 2. Now Google reverses course. Google now claims discovery "was never limited to class certification." Plaintiffs were supposedly "free to take merits discovery throughout the entire case," and should have sought these custodians long ago. Google cannot have it both ways, especially as it continued to object to discovery because it was not focused on class certification even as class certification was being briefed. *See*, *e.g.*, Google's R&Os to Plaintiffs' 5th Set of RFPs, dated November 3, 2025 (objecting to all RFPs because they seek information "Plaintiffs do not need for the purpose of their motion for class certification"). Having wielded Judge Lee's class certification directive as a sword to oppose Plaintiffs' prior custodians request (and case discovery more broadly), Google cannot now use it as a shield to block merits-focused discovery.

Google also mischaracterizes the Court's prior discovery orders. The Court never barred the addition of custodians later in the case. *See* ECF 155. Nor did it "reject" Plaintiffs' ask for apex custodians—it found the request premature. ECF 148 at 3. Class certification briefing is now complete. Plaintiffs seek merits-focused discovery, including custodians with unique discoverable documents regarding merits issues, and obtaining documents from apex custodians that go to core

merits issues, including questions of knowledge and willfulness. Indeed, with respect to the latter, the apex custodians have "a unique leadership role relative to other custodians" and "may well have unique information regarding 'strategic level LLM development commercialization, including communications with [the] board and investors." *In Re Mosaic LLM Litig.*, 2025 WL 1768001, at *2 (N.D. Cal. June 26, 2025) (citation omitted).

**Rebecca Santamaria-Fernandez** is a Senior Director of Business & Corporate Development at Google DeepMind ("GDM"). During at least the 2023-2024 period, she was responsible for ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████. Google did not disclose her initially and Plaintiffs only learned of her role through discovery. Google's 30(b)(6) testimony taken on October 3, 2025, confirmed that Santamaria-Fernandez is likely to possess critical information regarding ████████████████████████████████████████████ ████████████████████████. Google's designee testified that to prepare on the topic of licensing, he spoke with Santamaria-Fernandez only about budget estimates in general, but not specifically regarding any other financial information; and he testified that he did not ask her for any documents, such as financial spreadsheets, models, or calculations, despite acknowledging she would be the right person to ask. Barker Dep. Tr. at 63:12-64:12; 79:3-80:21; 81:2-16. Notably, Google does not contest that she has these documents and they have not been produced.

Santamaria-Fernandez was also a point-person for publisher outreach at GDM and is likely to possess direct communications with non-party publishers (if not other non-custodians) related to ████████████████████████████████████████████████. *See, e.g.*, Barker Dep., Ex. 172 (GOOG-AIC-000409978 at -980 (████████████████████████████████ ████████████████████████████████). These communications will likely show that ████████ ████████████████████████████████████████████████████████. *See, e.g.*, Barker Dep., Ex. 172 (GOOG-AIC-000409978 at -979 (Updating CEO of Google DeepMind ████████████████████████████████████████████████████████████████████████████ ████████████); Ayoub Dep., Ex. 158 (GOOG-AIC-000472033 at -038 (Maria-Fernandez and

another non-custodian updating team on ██████████████████████████
██████████████████). These communications reflect █████████████████
█████████████████████████████████████████████████████████████████
███████████████████████████████████████. While Google says
other custodians were generally involved in these negotiations, it does not confirm that its
communications with publishers were ever produced. *Shenwick v. Twitter*, 2018 WL 833085, at
*1 (N.D. Cal. Feb. 8, 2018) ("The idea that responsive documents will necessarily be found in
other custodians' records is not sufficient to defeat a search of [a custodian's] files.").

**Megha Goel** was a Product Lead for Google DeepMind and Product Manager for Gemini
during the relevant time-period who was responsible for "translating legal guidance into practical
technical requirements" including ablations and data mix decisions." Price Ex. 137: GOOG-AIC-
000115387 at -390; GOOG-AIC-000649478 at -499 (identified as the person who █████████████
████████████████████████████████). She was not identified to Plaintiffs in
Google's initial disclosures and only became known to Plaintiffs through discovery. Goel played
a central role in developing and implementing Gemini training policies, including communicating
with non-custodians regarding training practices and directing Gemini team members' conduct.
*See, e.g.,* GOOG-AIC-000115985 at -986 (Directing team members ██████████████████
██████████████████); GOOG-AIC-000524704 at -797 ██████████████████
██████████████); GOOG-AIC-000035658 at -661 (Non-custodian asking Goel's ████████
█████████████████████████████████████████████████████); GOOG-AIC-
000348727 at -729 (Goel: ██████████████████████████████). Goel's
custodial file will provide a complete record of these training decisions and directives. This
evidence is relevant to proving Google's knowledge of its infringing conduct and willfulness.

**Katie Millican** is a Gemini data lead who is "most familiar" with Gemini data sources.
Xiao Dep., Ex. 94 (GOOG-AIC-000372909 at -909). Millican was not identified to Plaintiffs in
Google's initial disclosures. Plaintiffs uncovered that Millican is the person who "knows the
answer best" on how Google "quantif[ies] the benefit of the new tokens" and has "the final say"

on the quality of data sources. Xiao Dep. Tr., Ex. 94 (GOOG-AIC-000372909 at -909). Millican was the person at GDM who ███████████████████████████████████████ ██████████████. Dai Dep. Tr. 189:22-190:7; 333:9-15; 334:13-335:8. Her custodial files are therefore likely to contain the results of all her tests and her "final say" on the quality and approval of data sources for training purposes based on her performance testing – documents that Plaintiffs do not have, because Google has refused to produce any "Launch" or "Arianne" tickets that would otherwise reflect approvals related to data sources and usage. This evidence is relevant because it will reveal Google's decision-making related to the usage of books in training its model and demonstrate its willful, bad faith approach toward unauthorized training on books. Google does not contest that Millican has unique and relevant documents in her custodial file.

**Tom Turvey** was at Google for 20 years, including as Managing Director, Global Partnerships, for News and Publishing (2009-2021), Managing Director, News Product Planning and GTM (2021-2024), and former head of partnerships for Google's book-scanning project. Turvey is currently at Anthropic. Documents show Turvey led the effort for ████████████ ██████████████████████████████████████████████████████. E.g., GOOG-AIC-000410007 at -14 (email explaining to Demis Hassabis, CEO of Google DeepMind, that ████████████████████████████████████████████████████████████). Turvey's custodial file is likely to contain ████████████████████████████████ ████████████████████████████████, and due to his seniority and leadership role, communications with executives such as Sundar Pichai and Demis Hassabis on the same topic, which will reflect Google's executive-level decision-making surrounding ████████████████ ██████████████████. *In Re Mosaic*, 2025 WL 1768001, at *2. This evidence is highly relevant to showing a licensing market for purposes of fair use Factor four and Google's bad faith, willful suppression of that market through ████████████████████. Google does not contest that Tom Turvey would have these relevant communications that have not been produced.

**Sundar Pichai** is Google's CEO. Unlike earlier in the case, Plaintiffs now have documents that confirm Pichai personally directed the commercialization, training-data selection, and risk-

mitigation strategies for the at-issue models that form the foundation of Plaintiffs' direct infringement claim. In November 2022, Pichai greenlit the plan to launch external APIs for the Models and issued his infamous "code red" following ChatGPT's release, personally messaging the Gemini team on December 15, 2022. *See* GOOG-AIC-000312132 at -135; GOOG-AIC-000288589 at -705. By April 2023, training data decisions required Pichai's signature before the Gemini launch, indicating his final authority over training data selection for the Models. GOOG-AIC-000388471 at -502. In late 2023, Pichai personally reviewed "the status of active negotiations" for training data licenses as part of Google's ███████████████ budget approved through "C-level executives and [the] board." GOOG-AIC-000409943 at -973; Jaskiewicz Dep. Tr. 336: 2-7. Pichai's subordinates lack personal knowledge of Pichai's rationale and cannot testify to his intent, making Pichai the sole source for documents concerning his decision to accelerate Model development to compete with the likes of OpenAI, Anthropic, and others. "[Pichai's] role as a 'principal decision-maker' supports Plaintiffs' position that he has relevant information" and supports his designation as a custodian. *In Re Mosaic*, 2025 WL 176001, at 1 (granting designation of CEO as custodian in generative AI case).

**Demis Hassabis**, Co-Founder and CEO of Google DeepMind, personally oversaw training data decisions with direct copyright implications. He directed DeepMind VP Kareem Ayoub to

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Vinyals Ex. 121. As "an important voice" on the Gemini steering committee, Hassabis urged that

████████████████████████████████████████████████████████████

████████████████████████████████. Vinyals Dep. Tr. 125:19-25; Vinyals Ex. 118 at -887. Hassabis custodial documents will be reflective of his unique, firsthand knowledge of Google's decision to

████████████████████████████████████████████████, and his knowledge of data quality standards and the guidance he provided to the Gemini team on training data decisions for the at-issue models. *See, e.g.*, GOOG-AIC-000117854 at -872.

**Google's Position:** Plaintiffs' fifteenth discovery motion should meet the same fate as the vast majority before it: straight denial. Fact discovery ends on February 13, 2026, yet only now are Plaintiffs demanding Google collect, review, and produce documents from six more custodians they have known about for at least seven months, and in some cases, more than two years. There is no time for Google to start the document production process anew. Beyond that, Plaintiffs ignore the import of the Court's Order back in June 2025, resolving a dispute over the proper number of custodians by granting Plaintiffs 25 Google custodians substantially of Plaintiffs' choosing—roughly double the number Google proposed yet far fewer than what Plaintiffs demanded—while simultaneously rejecting some of the same apex custodians Plaintiffs again seek here. The parties have proceeded under that Order and Plaintiffs are not entitled to a do-over now. Finally, Plaintiffs have repeatedly claimed discovery to date has been limited to class certification. That is frivolous. Plaintiffs successfully opposed bifurcating class and merits discovery. The Court's Orders made clear that class issues were to be prioritized, but that the discovery period was to cover both class and merits issues. Plaintiffs cannot show good cause to upend the discovery schedule to add six custodians at this late date.

*1. Plaintiffs' Demand for More Custodians Is Untimely and Would Disrupt the Case Schedule.* Plaintiffs' motion is untimely. Courts in this district deny late requests for more custodians because "[i]dentifying document custodians is supposed to be one of the first things litigants do in discovery, not one of the last," and adding new custodians "is a big change, not a small change, to the scope" of discovery. *See, e.g.*, *Kadrey v. Meta Platforms, Inc.*, No. 2024 WL 4362744, at *1 (N.D. Cal. Oct. 1, 2024) (denying motion by Plaintiffs' counsel at Saveri Law Firm to add five new custodians shortly before close of fact discovery).

Here, Plaintiffs have known about the custodians they now propose for many months, if not years. *See, e.g.*, Dkt. 1 at 30, 32 (discussing Mr. Pichai in original complaint in July 2023); Dkt. 28 at 48 (discussing Mr. Hassabis in amended complaint in January 2024). Yet Plaintiffs inexplicably waited *until the very end of the discovery process to seek to add them*. All of the documents that Plaintiffs cite were produced by Google before the end of July 2025, and the

depositions took place between September 12 and October 6, 2025. There is no reason for the Court or Google to be hearing about this less than three weeks before the discovery deadline. Indeed, the parties conferred in October, and Plaintiffs declared an impasse over a demand that Google add Goel, Millican, and Santamaria-Fernandez as custodians. But Plaintiffs dropped the ball, inexplicably waiting until January 16, 2026 to send Google a motion about them and others. Plaintiffs' dilatory conduct cannot be reconciled with their claim that their newly-proposed custodians possess important information that Plaintiffs do not otherwise have.

Regardless, it is not feasible, at this late stage, for Google to collect, review, and produce the documents Plaintiffs demand. The Court previously ordered Google to collect and produce documents from 12 additional custodians, giving Google six weeks to do it.  Dkt. 155 at 1-2. That expedited production was a mammoth task in its own right and possible only because Google already had in place a 50-plus member document review team (later expanded to 80-plus) trained and working around the clock. Here, Google has not collected the files of Plaintiffs' newly-proposed custodians and—with productions substantially complete months ago—no longer has a staffed and trained review team on standby.

**2. The Court Already Limited Plaintiffs to 25 Custodians for the Case.** Plaintiffs have not shown good cause to revisit the Court's prior ruling on the appropriate number of custodians for this case. *See In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 2021 WL 10282213, at *14 (N.D. Cal. Nov. 14, 2021) (party seeking discovery must show good cause to "upset a carefully crafted, court-approved process"). "Good cause to compel designation of additional [] custodians generally requires a showing that the disputed custodians possess uniquely relevant information that is not available from the sources already designated." *Id.* at *14.

Last June, Plaintiffs demanded that Google provide discovery from a total of 59 custodians, Dkt. 144, and eventually dropped their demand to 35. June 18, 2025 Hr'g Tr. 6:6-20. This Court rejected Plaintiffs' proposal as excessive, and allowed a total of 25 custodians for fact discovery (doubling the number Google had already offered), giving Plaintiffs the right to select most of the new ones. Dkt. 155 at 1. The Court reasoned that "a couple of custodians as to each"

of the products at issue was appropriate but that "there was certainly a lot of overlap" in Plaintiffs' demand. June 18, 2025 Hr'g Tr. 13:1-14:20. Plaintiffs were to tell Google whom to prioritize for class certification, but the Court ordered Google to substantially complete *all* custodial productions by the end of July, which Google did. *See id.* at 18:15-25.

Plaintiffs cannot establish good cause to upset the Court's prior compromise Order fixing the number of custodians. Plaintiffs argue that Google does not contest that the additional proposed custodians have relevant documents. But Google does not know what they have, because they have not been custodians. Regardless, that is not the relevant standard. Rather, *Plaintiffs* must show good cause for adding new custodians at this point.  They have not done so.

<u>Rebeca Santamaria-Fernandez and Tom Turvey</u>: Plaintiffs assert that Ms. Santamaria-Fernandez and Mr. Turvey are likely to possess documents relating to ███████████████. But Google has already gathered, reviewed, and produced documents from the custodial files of other employees with similar responsibilities ███████████████, including Kareem Ayoub (VP of AI Tech. Strategy); Stephane Jackiewicz (Engineering Dir. for Google Books); and Leo Vacher (Head of Partnerships). Indeed, the three documents Plaintiffs point to in support of adding Ms. Santamaria-Fernandez and/or Mr. Turvey reflect that Mr. Ayoub was involved in the same licensing efforts. *See* GOOG-AIC-000409978 (Ayoub as co-member of ██████████); GOOG-AIC-000472033 (Ayoub as co-author); GOOG-AIC-000410007 (Ayoub as participant in email thread). Plaintiffs mischaracterize the document they cite in support of Mr. Turvey, which does not show that he had "communications with executives such as Sundar Pichai and Demis Hassabis" (let alone conversations of import).  Plaintiffs have not shown that Ms. Santamaria-Fernandez or Mr. Turvey possesses uniquely relevant information that was not covered by existing custodians.  The Court can stop there.

<u>Megha Goel and Katie Millican</u>: Plaintiffs claim that Ms. Goel's and Ms. Millican's files bear on the selection of sources of data used to train Gemini. But, again, Plaintiffs have such documents from other custodians including Mr. Ayoub; Tyler Liechty (Technical Program

Manager for the Gemini team); Oriol Vinyals (VP of Research at Google DeepMind ("GDM"));

Jeff Dean (Chief Scientist at GDM); Koray Kavukcuoglu (CTO at GDM); and Tulsee Doshi

(Senior Dir. and Head of Product for Generative AI Models). And, as the Court is well aware,

the best source of information regarding the data used to train Gemini is the data itself. *See, e.g.*,

Dkt. 311. The documents Plaintiffs cite make clear that Google has already produced mountains

of information concerning these issues, including many involving Goel and Millican. But again,

Plaintiffs have failed to explain why either proposed custodian would have information that is

not already reflected in the files of existing custodians.

Sundar Pichai: The Court previously denied Plaintiffs' request to add Mr. Pichai,

Google's CEO, as a custodian because Plaintiffs had not shown why such an apex custodian was

appropriate. Dkt. 148 at 3. Months of discovery since have not made Plaintiffs' argument

stronger. Plaintiffs argue that only Mr. Pichai can explain his personal "rationale[s]" and "intent"

for approving certain AI products for public launch and making various budget decisions relating

to data acquisition. That is the argument Plaintiffs advanced in June, when they asserted that Mr.

Pichai "has personally directed the development and launch of Defendants' AI business." Dkt.

146-7 at 24. Then as now, Plaintiffs do not show why Mr. Pichai's personal rationales for

approving launches or budgets are material to their claims for Google's alleged copyright

infringement. *See, e.g.*, *Handloser v. HCL Am., Inc.*, 2020 WL 7405686, at *2 (N.D. Cal. Dec.

17, 2020) (denying executive custodians where plaintiffs failed to explain how "information

from these custodians [] differs from discovery they have already obtained from the others").

Demis Hassabis: Like Mr. Pichai, the Court previously rejected on apex grounds

Plaintiffs' request to add Dr. Hassabis, the CEO of Google DeepMind, as a custodian. Still,

Plaintiffs offer only the conclusory arguments that Dr. Hassabis delegated certain tasks to other

employees and was one member (among several others, including existing custodians) of a

steering committee. That is just a rehash of the same argument that Plaintiffs made and lost in

June, Dkt. 146-7 at 24-25, and still does not show that Dr. Hassabis has unique information.

Plaintiffs notably do not claim that they lack information on "using books data for AI training"

or "copyright compliance." To the contrary, many of the custodians already selected would have documents related to those topics, including Mr. Ayoub; Mr. Carver; Mr. Jaskiewicz; Mr. Leichty; Mr. Manyika; Mr. Dean; Mr. Vinyals; Mr. Kavukcuoglu; Ms. Doshi; Jack Krawczyk (Director of Product Mgmt. at GDM); and Trevor Strohman (Engineering Mgr. at GDM).

   **3. *Merits Discovery Has Not Been Bifurcated or Stayed.*** Plaintiffs have asserted that they are now starting to focus on merits discovery after more than a year of active discovery. That is not defensible. Long ago, Google requested a stay of merits discovery, which Plaintiffs opposed, asserting "there is no basis at this juncture to bifurcate discovery." Dkts. 98 at 16-17 & 1-5 at 14-17. Plaintiffs argued that a merits discovery stay would "inevitably [] lead to delays, evidentiary gaps, and the waste of the parties' and the court's resources" and "prejudice" Plaintiffs. Dkt. 105 at 16-17. Judge Lee rejected a stay of merits discovery. She directed that class certification issues be *prioritized,* but that all discovery take place in one phase closing on February 13. Dkt. 128 at 7-8. Having convinced Judge Lee to reject a merits discovery stay and proceeding with it themselves, Plaintiffs are judicially estopped from claiming that they have been foreclosed from seeking merits discovery. *See, e.g.*, *Forcellati v. Hyland's, Inc.*, 2016 WL 11756800, at *2 (C.D. Cal. Feb. 17, 2016) (precluding "a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase").

   Plaintiffs have been free to take merits discovery throughout the case, and have done so in spades, serving 114 requests for production, 25 multi-part interrogatories, 590 RFAs, and over 1000 "authenticity requests," much of which was unrelated to class certification (*e.g.*, "studies regarding recitation or regurgitation of images" and "access logs" and "security protocols" for AI development). They've also obtained extensive corporate testimony on topics such as licensing, acquisition of training data, market effects, and Google's revenues, all bearing on merits not class issues.  The notion that it is suddenly now time for a restart (with under three weeks left) because discovery thus far has not borne out Plaintiffs' misguided theories is risible.

Respectfully submitted,


Dated: January 26, 2026               By: */s/ Lesley E. Weaver*　　　　　　　　

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
**STRANCH, JENNINGS & GARVEY, PLLC**
1111 Broadway, Suite 300
Oakland, CA 94607
Telephone: (341) 217-0550
lweaver@stranchlaw.com
adavis@stranchlaw.com
jsamra@stranchlaw.com

Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Evan A. Creutz (SBN 349728)
Elissa A. Buchanan (SBN 249996)
Aaron Cera (SBN 351163)
Louis Kessler (SBN 243703)
Alexander Zeng (SBN 360220)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
ecreutz@saverilawfirm.com
eabuchanan@saverilawfirm.com
acera@saverilawfirm.com
lkessler@saverilawfirm.com
azeng@saverilawfirm.com

Ryan J. Clarkson (SBN 257074)
Yana Hart (SBN 306499)
Mark I. Richards (SBN 321252)
**CLARKSON LAW FIRM, P.C.**
22525 Pacific Coast Highway
Malibu, CA 90265
Telephone: 213-788-4050
rclarkson@clarksonlawfirm.com

11

yhart@clarksonlawfirm.com
mrichards@clarksonlawfirm.com

Brian D. Clark (admitted *pro hac vice*)
Laura M. Matson (admitted *pro hac vice*)
Arielle S. Wagner (admitted *pro hac vice*)
Consuela Abotsi-Kowu (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
bdclark@locklaw.com
lmmatson@locklaw.com
aswagner@locklaw.com
cmabotsi-kowo@locklaw.com

Stephen J. Teti (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
265 Franklin Street, Suite 1702
Boston, MA 02110
Telephone: (617) 456-7701
sjteti@locklaw.com

*Counsel for Individual and Representative Plaintiffs
and the Proposed Class*

Dated:  January 26, 2026          Respectfully submitted,

By:  */s/ Paul J. Sampson*

Paul J. Sampson
**WILSON SONSINI GOODRICH & ROSATI,
P.C.**
95 S State Street**,** Suite 1000
Salt Lake City, UT 84111
Telephone: (801) 401-8510
Email: psampson@wsgr.com

David H. Kramer
Maura L. Rees
Qifan Huan
Kelly M. Knoll
**WILSON SONSINI GOODRICH & ROSATI,
P.C.**
650 Page Mill Road
Palo Alto, CA 94304-1050

12

Telephone: (650) 493-9300
Fax: (650) 565-1100
Email: dkramer@wsgr.com
Email: mrees@wsgr.com
Email: qhuan@wsgr.com
Email: kknoll@wsgr.com

Eric P. Tuttle
Madison Welsh
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone: (206) 883-2500
Fax: (206) 883-2699
Email: eric.tuttle@wsgr.com
Email: mjwelsh@wsgr.com

Jeremy Paul Auster
**WILSON SONSINI GOODRICH ROSATI, P.C.**
1301 6th Avenue
New York, NY 10019
212-453-2862
Email: jauster@wsgr.com

*Counsel for Defendant Google LLC*

## <u>SIGNATURE ATTESTATION</u>

I, Lesley E. Weaver, am the ECF User whose ID and password are being used to file this document. In compliance with N.D. Cal. Civil L.R. 5-1(i)(3), I hereby attest that the concurrence in the filing of this document has been obtained from the other signatory.

Dated: January 26, 2026

By:  */s/ Lesley E. Weaver*
Lesley E. Weaver