DAVID H. KRAMER, SBN 168452
Email: dkramer@wsgr.com
MAURA L. REES, SBN 191698
Email: mrees@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300

PAUL J. SAMPSON (admitted *pro hac vice*)
Email: psampson@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
95 S. State Street, Suite 1000
Salt Lake City, Utah 84111
Telephone: (801) 401-8510

ERIC P. TUTTLE, SBN 248440
Email: eric.tuttle@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone: (206) 883-2500

*Counsel for Defendant* GOOGLE LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

*In re Google Generative AI Copyright Litigation*

Master File Case No.: 5:23-cv-03440-EKL
Consolidated with Case No.: 5:24-cv-02531-EKL

**DEFENDANT GOOGLE LLC'S OPPOSITION TO CENGAGE LEARNING, INC. AND HACHETTE BOOK GROUP, INC.'S MOTION TO INTERVENE**

Date: February 20, 2026
Time: 1:00 p.m.
Courtroom: 7, Fourth Floor
Judge: Hon. Eumi K. Lee

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 4

I. Proposed Intervenors' Attempt to Intervene Is Untimely. ........ 4

II. Proposed Intervenors Are Not Entitled to Intervene as of Right. ........ 7

III. The Court Should Deny Permissive Intervention. ........ 9

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Allen v. Hyland's Inc.*,
2012 WL 12887827 (C.D. Cal. Aug. 28, 2012) .... 5, 8

*Arakaki v. Cayetano*,
324 F.3d 1078 (9th Cir. 2003) .... 8

*Arellano v. T-Mobile USA, Inc.*,
2012 WL 1496181 (N.D. Cal. Apr. 27, 2012) .... 4

*Bartz v. Anthropic PBC*,
791 F. Supp. 3d 1038 (N.D. Cal. 2025) .... 8, 10

*Bartz v. Anthropic PBC*,
No. 3:24-cv-05417-AMO (N.D. Cal. Dec. 23, 2025) .... 9

*Brown v. Accellion, Inc.*,
2023 WL 1928210 (N.D. Cal. Feb. 10, 2023) .... 8

*Calderon v. Clearview AI, Inc.*,
2020 WL 2792979 (S.D.N.Y. May 29, 2020) .... 7

*California ex rel. Lockyer v. United States*,
450 F.3d 436 (9th Cir. 2006) .... 8

*Callahan v. Brookdale Senior Living Cmtys., Inc.*,
42 F.4th 1013 (9th Cir. 2022) .... 9

*Concord Music Grp., Inc. v. Anthropic PBC*,
No. 5:24-cv-03811 (N.D. Cal.) .... 2

*Donnelly v. Glickman*,
159 F.3d 405 (9th Cir. 1998) .... 7, 10

*EEOC v. Activision Blizzard, Inc.*,
2023 WL 8908774 (9th Cir. Dec. 27, 2023) .... 4

*Guthrie v. Mazda Motor of Am., Inc.*,
2024 WL 5265549 (C.D. Cal. May 23, 2024) .... 8

*Harris v. Vector Mktg. Corp.*,
2010 WL 3743532 (N.D. Cal. Sept. 17, 2010) .... 4, 7

*In re Flash Memory Antitr. Litig.*,
2010 WL 2332081 (N.D. Cal. June 9, 2010) .... 10

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) .... 10

*In re LendingClub Secs. Litig.*
282 F. Supp. 3d 1171 (N.D. Cal. 2017) .... 6, 7

*Kamakahi v. Am. Soc'y for Reprod. Med.*, 2015 WL 1926312 (N.D. Cal. Apr. 27, 2015) .... 7

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992) .... 4

*Lee v. Pep Boys-Manny Moe & Jack of Cal.*, 2016 WL 324015 (N.D. Cal. Jan. 27, 2016) .... 5

*Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603 (9th Cir. 2020) .... 8, 9

*Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947 (9th Cir. 2009) .... 8, 9

*SEC v. Beasley*, 2024 WL 1133587 (9th Cir. Mar. 15, 2024) .... 7

*Valentine v. Crocs, Inc.*, 2024 WL 5340074 (N.D. Cal. Sept. 19, 2024) .... 5

*Zepeda v. PayPal, Inc.*, 2014 WL 1653246 (N.D. Cal. Apr. 23, 2014) .... 8

*Zhang v. Google LLC*, No. 5:24-cv-02531-EKL (N.D. Cal. Apr. 26, 2024) .... 3

**RULES**

Civ. L.R. 3-15 .... 3

Fed. R. Civ. P. 16 .... 4, 5

Fed. R. Civ. P. 23 .... 8

Fed. R. Civ. P. 24 .... 1, 3, 4, 7, 8, 9

**INTRODUCTION**

If book publishers Cengage and Hachette ("Proposed Intervenors") want to present "their own evidence and arguments" about how Google supposedly infringed their copyrights, Mot. 1, they can file their own case. But they do not have the right to hijack this one—two and a half years in, at the close of fact discovery, and on the eve of the class certification hearing—and dramatically alter it as they see fit. Their motion to intervene is untimely, legally baseless, and further highlights individualized issues that preclude certification.

Proposed Intervenors have been absent from this case despite being part of the putative class from the case's outset in July 2023. They do not say when they learned of this widely reported suit, but even if it was not at the start, they have known of it since at least March 2025, when Google subpoenaed Hachette. They offer nothing about why they did not come forward until now.

Regardless, their unexplained (and inexplicable) delay dooms their motion. Allowing their intervention at this point would massively disrupt the proceedings and prejudice Google, injecting into the case new plaintiffs, new works, new theories of infringement and harm, and new class definitions, all just as class certification is teed up for decision. Proposed Intervenors would require months of new pleading challenges, new discovery, new expert reports, and yet another postponement in resolving the class question. Rule 24 is not a vehicle for dilatory intervenors to restart a case because they dislike how it is going.

Delay aside, Proposed Intervenors have not made the showings Rule 24 requires. They identify no stake in the claims currently at issue in the case that would justify intervention. They may be absent class members, but no class has been certified. If one were certified, they could protect their interests by opting out and litigating separately, which, as some of the world's largest book publishers, they plainly have the resources to do. Mot. 1. The lynchpin of their motion is their claim that Plaintiffs are inadequate to represent publisher interests. Yet they do not offer actual evidence of inadequacy, only breezy claims about what arguments Plaintiffs might not make and what alternative arguments or evidence they might offer. Regardless, intervention would not cure the fundamental flaws in Plaintiffs' class bid. In short, Proposed Intervenors have not remotely carried their burden. Intervention should be denied.

## BACKGROUND

**Procedural History.** This case was first filed in July 2023 as a putative copyright class action alleging a class of "[a]ll persons in the United States who own a United States copyright in any work that was used as training data for Defendants' Products." ECF 1 ¶ 195. The case received significant publicity at the start that has continued throughout. *See* ECF 384 ("Harold Decl.") ¶ 2. In subsequent complaints, the proposed class definition has always included all copyright holders whether book authors (such as Plaintiff Jill Leovy) or book publishers. *See* ECF 28 ¶ 398; ECF 47 ¶ 90; ECF 91 ¶ 164; ECF 234 ¶ 163; ECF 253-1 at 1.

Under the Scheduling Order, the deadline to amend the pleadings or add parties was December 20, 2024. ECF 88 at 2. Long after that, in granting Google's motion to dismiss portions of the complaint back on September 11, 2025, the Court observed that the case has been "pending for more than two years," that the parties have engaged in "extensive" motion practice and discovery, and that "[t]he pleadings must be settled *now* to focus the parties' efforts in this massive and complex case." ECF 216 at 22. After the pleadings were locked, Plaintiffs moved for class certification on October 15, Google opposed on November 20, and briefing completed on December 30, 2025. The class hearing has been reset to February 20, and fact discovery for the case closes on February 13. ECF 199, 231, 360.

**The Proposed Intervenors.** Only after briefing on class certification closed did Cengage and Hachette announce a desire to intervene. Their counsel, including counsel in *CMG v. Anthropic*, another long-running generative AI case pending before this Court, conferred with Google on January 8. Proposed Intervenors refused to disclose when they first learned of this lawsuit, its class certification proceedings, or the supposed potential for these proceedings to affect their interests;[1] would not reveal whether they were asked to intervene by Plaintiffs' counsel or the timing or substance of any communications with them, including as to the basis for their infringement claims; and refused to provide Google with the proposed complaint Rule 24 requires

[1] Amicus briefs filed in *CMG v. Anthropic* in January 2024 and again in August 2024, reference this lawsuit as one involving copyright infringement based on training generative AI models. *Concord Music Grp., Inc. v. Anthropic PBC*, No. 5:24-cv-03811 (N.D. Cal.), ECF 75-1, 219-1.

or even to identify the copyrighted works they proposed to assert or their bases for asserting them (other than to say, falsely, that their allegations would closely mirror the existing complaint and would not allege anything materially different). Harold Decl. ¶¶ 4-6. After that unilluminating conference, Proposed Intervenors filed their motion on January 15. As best Google can discern:

- Cengage publishes textbooks. ECF 342-1 ¶ 21. It claims no interest in any of the works the named Plaintiffs have asserted in the case. It proposes asserting copyrights in five textbooks and an unknown number of additional, unidentified works. *Id.* ¶¶ 64, 111 & Ex. A. Cengage is not registered as the owner of the copyright in at least one of the five works it purports to assert. *See* Harold Ex. 2 (listing "N. Gregory Mankiw" as Claimant for *Principles of Economics, 8e*).

- Hachette publishes fiction and non-fiction books. *See* ECF 342-1 ¶ 22. It could not or would not say during the meet and confer whether it claims an ownership interest in any works the Named Plaintiffs have asserted in this case. But it did publish some of Plaintiff Almond's works-in-suit. Accordingly, Google subpoenaed Hachette on March 27, 2025. Hachette disclaimed seeking intervention to protect any interests in Plaintiffs' works during the pre-motion meet and confer. Harold Decl. ¶ 5. Instead, Hachette proposes asserting copyrights in five different books authored by third parties and an unknown number of additional, unidentified works.[2] ECF 342-1 ¶¶ 65, 11 & Ex. A. For each of the five books, the registration lists a third party, not Hachette, as the copyright owner. *See* Harold Exs. 6-10.

Proposed Intervenors want to radically change the scope of the case. They allege infringement by the mere "downloading" and "sourcing" of works, even if those works were never used for AI training. *See* ECF 342-1 ¶ 109. As Judge van Keulen already recognized, claims about works "acquired by Google but not used to train the models" are not part of the case. *See* ECF 280-1 at 3. Plaintiffs did not challenge that ruling. Proposed Intervenors also claim infringement via output from Google's AI models. *See* ECF 342-1 ¶¶ 7-11, 70-90. Again, that has never been a claim in this case, as the Court long ago recognized: "Plaintiffs do not allege that the models

[2] Hachette also may have ownership interests in works asserted by former Plaintiff Hubbard, who mysteriously dismissed her claims without explanation on the eve of Plaintiffs' class certification filing. ECF 246. Hachette does not say whether or how it was involved in this tactic. Notably, neither Almond nor Hubbard (nor any other Plaintiff) disclosed any publishers who have ownership interests in the works-in-suit in their Certificates of Interested Entities, which clearly required such disclosure at the outset of the case. *See* ECF 82 (certifying "there are no interested parties to report"); *Zhang v. Google LLC*, No. 5:24-cv-02531-EKL (N.D. Cal. Apr. 26, 2024), ECF 5 (same); Civ. L.R. 3-15(b)(2).

produce infringing output." ECF 216 at 3; *see also* ECF 93 at 31:24 (The Court in December 2024: "I noticed that" Google is not being sued over AI output).

## ARGUMENT

### I. Proposed Intervenors' Attempt to Intervene Is Untimely.

Proposed Intervenors' motion should be denied because they have failed to show good cause to amend the Scheduling Order under Rule 16 or timeliness under Rule 24. The deadline to amend the pleadings or add parties passed over a year ago. ECF 88 at 2. Under Rule 16(b), which applies to intervention motions, "[a] schedule may be modified only for good cause." Fed. R. Civ. P. 16(b)(4); *Harris v. Vector Mktg. Corp.*, 2010 WL 3743532, at *1 (N.D. Cal. Sept. 17, 2010). Good cause requires "diligence." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Further, "the existence or degree of prejudice" to the parties may provide "additional reasons to deny" the motion. *Id*. Courts consider similar factors when evaluating whether a motion to intervene is "timely" under Rule 24, including "(1) the stage of the proceeding …; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *EEOC v. Activision Blizzard, Inc.*, 2023 WL 8908774, at *1 (9th Cir. Dec. 27, 2023).

Proposed Intervenors have made no effort to show their diligence. Their motion does not even acknowledge Rule 16, the Court's Scheduling Order, or the Court's prior Order closing the pleadings. Proposed Intervenors fail to provide any declaration attesting to their diligence. And their silence over their knowledge of the case, its status, their interests, and their consultations with Plaintiffs' counsel is damning. Harold Decl. ¶¶ 4-5. By itself, Proposed Intervenors' failure to request and justify a modification of the Scheduling Order compels denial of the motion. *See Harris*, 2010 WL 3743532, at *2 (denying intervention based on Rule 16 where supporting declaration "sa[id] nothing at all about [the proposed intervenor's] diligence"); *Arellano v. T-Mobile USA, Inc.*, 2012 WL 1496181, at *2 (N.D. Cal. Apr. 27, 2012) (denying leave to amend complaint where plaintiff did "not address[] Rule 16").

This case is in its advanced stages, having proceeded through six separate complaints, multiple motions to dismiss, and a plethora of discovery disputes. Fact discovery closes on February 13. ECF 199. Class certification briefing is complete, and the hearing is imminent. Yet

at nearly the stroke of midnight, Proposed Intervenors demand the opportunity to "review" the class certification record and "supplement[]" it as they desire, Mot. 9, and stated during the meet and confer that they wished to participate in discovery and reserved the right to seek to extend the fact discovery cutoff and even reopen depositions that had already been taken, Harold Decl. ¶ 5. If Proposed Intervenors wanted to participate in discovery and the class certification briefing process, the time to intervene was long ago. *See, e.g.*, *Valentine v. Crocs, Inc.*, 2024 WL 5340074, at *3 (N.D. Cal. Sept. 19, 2024) (denying intervention motion filed one week after defendant's opposition to class certification); *Lee v. Pep Boys-Manny Moe & Jack of Cal.*, 2016 WL 324015, at *5 (N.D. Cal. Jan. 27, 2016) (denying intervention motion filed after motion to certify and before defendant's opposition).

The prejudice to Google is plain. Injecting two new plaintiffs into the case now—with their own troves of documents, witnesses, interests, and pet problems—would either deprive Google of the discovery it needs into their claims or force a lengthy extension of the case to Google's detriment. Among other things, Google would have to investigate Proposed Intervenors' copyright ownership, registration, licensing, and allegations about Google's use of a host of new works. That would mean new document collections and productions, percipient and corporate depositions, and third-party discovery from the authors and/or copyright owners of the works. Class certification would need to be delayed yet again, to Google's obvious prejudice. *See Allen v. Hyland's Inc.*, 2012 WL 12887827, at *2 (C.D. Cal. Aug. 28, 2012) (intervention after motion to certify was "fully briefed" would cause "additional delay"); *Lee*, 2016 WL 324015, at *7 (finding prejudice where "an ultimate decision on class certification … would be delayed"); *Valentine*, 2024 WL 5340074, at *4-5 (rejecting as prejudicial and dilatory proposed intervention prompted by concerns arising from defendant's class certification opposition).

Proposed Intervenors also have made clear they would seek to completely redraw the boundaries of the case, asserting very different infringement claims based on the mere "downloading" and "sourcing" of works, and challenging the output of Google's AI models. *See* ECF 342-1 ¶¶ 70-90, 109. This would be a new case altogether, requiring Google to start from scratch on its investigation, identification of witnesses and documents, exploration of defenses,

and more. And the new discovery demands from Proposed Intervenors could rival the exhaustive (and exhausting) process that Plaintiffs in this case have already required. This would come five months after the Court recognized that adding new claims here would be "unduly burdensome on Defendants and would further delay resolution of this important matter." ECF 216 at 22 (denying Plaintiffs further leave to amend).

Proposed Intervenors do not offer any serious justification for trying to commandeer and overhaul the case at this point. That is no surprise given their choice to sit on their hands for years as the case unfolded. It is far too late and far too prejudicial to restart this case just to suit some putative class members' belated expression of interest. They claim they need to intervene now because "[t]he motion [to certify] proposed a class that almost certainly includes" them as "owners" of "copyrights" but has no publisher as a class representative. Mot. 4-5. But the putative class in this case has *always* included owners of copyrights like the Proposed Intervenors and has *never* had a publisher as a proposed class representative. *See, e.g.*, ECF 1 ¶ 195 (including U.S. "persons" who "own" a U.S. "copyright"). If the absence of a publisher was somehow meaningful, Proposed Intervenors should have taken action when the case started, and certainly when Hachette was subpoenaed in *March 2025* to provide information about its publishing, licensing, and alleged ownership of copyrights in works at issue in the case. *See* Harold Decl. ¶ 3. Even Plaintiffs' motion to certify that supposedly prompted Proposed Intervenors to act was filed months ago. ECF 251 (motion to certify filed October 14). Proposed Intervenors assert a willingness to participate "promptly." Mot. 7. But their conduct to date shows the opposite.

None of the Proposed Intervenors' authorities approves of their tactically timed attempt to intervene. *See* Mot. 5. In *In re LendingClub Securities Litigation*, class representative plaintiffs in a long-running and parallel state court class action intervened in a federal case "for the limited purpose of *opposing* [a rival bid for] class certification" on the "date oppositions to class certification were due" and without objection from the defendants. 282 F. Supp. 3d 1171, 1177 (N.D. Cal. 2017) (emphasis added). Here, Proposed Intervenors seek to fully participate in the case over Google's objection, to support class certification (and force a re-do), having moved to intervene after the close of class briefing. In *Kamakahi v. American Society for Reproductive*

*Medicine*, the court had denied certification of a subclass on adequacy grounds and shortly afterwards allowed new proposed representatives to intervene because the intervenors would not delay the case or require significant additional discovery. 2015 WL 1926312, at *4-5 (N.D. Cal. Apr. 27, 2015). Neither case is at all close to this one.

Here, Proposed Intervenors chose not to participate for months or years while clearly aware of the case. Their intervention is not narrowly targeted to correcting an adequacy problem, and allowing their belated intervention would upend the case schedule and cause extensive delay. Good cause and timeliness are threshold requirements for intervention. Proposed Intervenors' failure to make those showings requires their motion be denied. *Harris*, 2010 WL 3743532, at *5; *SEC v. Beasley*, 2024 WL 1133587, at *2 (9th Cir. Mar. 15, 2024).

**II. Proposed Intervenors Are Not Entitled to Intervene as of Right.**

Proposed Intervenors' motion fails to establish other requirements to intervene as of right, namely that they have "a 'significant protectable interest' relating to the property or transaction that is the subject of the action," that "the disposition of the action may, as a practical matter, impair or impede [their] ability to protect [their] interest," and that "the existing parties may not adequately represent [their] interest." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).

At this stage, Proposed Intervenors cannot demonstrate an "interest relating to the property or transaction that is the subject of the action" justifying intervention. Fed. R. Civ. P. 24(a)(2). Cengage does not claim any interest in the existing Plaintiffs' works-in-suit; it is only a putative member of a proposed class that has not been certified. *See Calderon v. Clearview AI, Inc.*, 2020 WL 2792979, at *5 (S.D.N.Y. May 29, 2020) ("[p]rior to the certification of a class," the proposed intervenor's "interest … [wa]s too attenuated to justify intervention as of right"). Hachette may have an interest in Plaintiff Almond's works, but has disclaimed intervening to protect it, much less shown Almond cannot do so. And if there were some reason why Almond could not pursue claims on those works without joining his publisher, it would merely underscore why Google must individually evaluate issues of copyright ownership, transfer, registration and license for each individual work, and the impossibility of dealing with those issues at scale.

Even assuming a class were certified and Proposed Intervenors were absent class members,

this case would not impair their interests. It is "well-established law in this circuit that class members' interests are not impaired 'if they have 'other means' to protect them.'" *Brown v. Accellion, Inc.*, 2023 WL 1928210, at *3 (N.D. Cal. Feb. 10, 2023) (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006)). Proposed Intervenors plainly do: they can "opt out of the class and litigate the claims separately." *Guthrie v. Mazda Motor of Am., Inc.*, 2024 WL 5265549, at *3 (C.D. Cal. May 23, 2024); *accord Zepeda v. PayPal, Inc.*, 2014 WL 1653246, at *6 (N.D. Cal. Apr. 23, 2014); *cf. Bartz v. Anthropic PBC*, 791 F. Supp. 3d 1038, 1052 (N.D. Cal. 2025) (explaining that class members who disagree with the case "can opt out"). Indeed, they boast of their "resources" and ability to "prosecut[e] the case," Mot. 10; they can surely protect their interests in their own separate suit. "Rule 23 is specifically designed to avoid this kind of intervention by a class member." *Allen*, 2012 WL 12887827, at *3 (denying intervention to putative class member who argued rival plaintiffs' counsel would not protect her interests).

Proposed Intervenors also have failed to show the named Plaintiffs "will not adequately represent [their] interests in the litigation" within the meaning of Rule 24. *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009). Because Proposed Intervenors and Plaintiffs share "the same 'ultimate objective,'" Mot. 7, there is a "presumption of adequate representation" that can be rebutted only "with a 'compelling showing' to the contrary." *Perry*, 587 F.3d at 952 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)). Proposed Intervenors have not made any such showing. They say, without evidence or elaboration, that they can make arguments and offer evidence that Plaintiffs will not. But their mere say-so does not suffice. *See Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 620 (9th Cir. 2020) (affirming denial of intervention where proposed intervenor "failed to offer persuasive evidence [of inadequacy], at the time of their motion to intervene"). Any disagreement they may have with the current Plaintiffs "over litigation strategy or tactics" does not make the Plaintiffs inadequate. *Perry*, 587 F.3d at 954; *accord Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1021 (9th Cir. 2022). And their claim, again without evidence, that they possess information and expertise Plaintiffs lack, does not advance their cause. *See* Mot. 8. There is no reason Plaintiffs cannot hire experts or associate counsel to present their case. *Oakland Bulk*, 960 F.3d at 621.

Indeed, Proposed Intervenors may already be engaged directly with Plaintiffs.

Finally, Proposed Intervenors observe that the Copyright Act provides for a single statutory damages award per work infringed and claim that fact "strongly favors participation of all rightsholders in a class action." Mot. 8. To be sure, the problem of apportionment of damages among co-owners or those claiming to be co-owners adds to the dizzying array of individualized issues weighing heavily against certification in this case. *See* ECF 282 at 21-22. The participation of two Proposed Intervenors will not remotely solve those issues across some theoretical class. Proposed Intervenors say *Bartz*'s post-settlement proceedings illustrate how publishers can aid in divvying up a settlement fund. Mot. 8. That, of course, is a completely different procedural context. More relevant here is that the parties and the *Bartz* court managed to conduct that litigation without any publisher plaintiff or intervention. *See* 791 F. Supp. 3d at 1048.[3]

**III. The Court Should Deny Permissive Intervention.**

Under Rule 24, permissive intervention requires the applicant to "prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly*, 159 F.3d at 412. "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Id.* On top of being untimely, Proposed Intervenors provide no good reason for the Court to exercise its discretion in their favor.

---

[3] The post-settlement proceedings in *Bartz* provide additional reason for caution. There, Judge Alsup criticized Proposed Intervenors' counsel for "insinuat[ing]" themselves into the case, signing the class settlement agreement, potentially performing unnecessary "makework" for the class, and then seeking a fee award, all without ever having been appointed by the court as class counsel. *See Bartz v. Anthropic PBC*, No. 3:24-cv-05417-AMO (N.D. Cal. Dec. 23, 2025), ECF 515 at 2, 7-9. Judge Alsup also expressed concern that Proposed Intervenors' counsel were cut into the fee "bonanza" to give publishers a "premium" recovery and an incentive not to opt out of the settlement. *Id.* at 8. Judge Martínez-Olguín is now giving "serious thought" about whether to appoint a Special Master to investigate counsel's conduct. *Bartz*, ECF 581 at 6:14-17. This motion seems to be cut from similar cloth. Further, it is filled with dubious assertions such as claims that "intervention will not prolong or delay this litigation," and that "the need for publisher representatives only recently materialized," as well as groundless fears that Proposed Intervenors will be "lumped into a class without notice." Mot. 2, 9. Those should give the Court pause about accepting other representations at face value.

Intervention would not cure the fundamental defects with the proposed classes, such as the predominance of individualized issues around licensing, ownership, registration, statutes of limitation, fair use, and damages. To the contrary, still more individualized issues are apparent even before Google has had the opportunity to take discovery into Proposed Intervenors' claims. Of the 10 works they name in their complaint, they are the registered owners, supposedly by assignment, of only four. *See* Harold Exs. 1, 3-5. They say they acquired the other six by assignment as well. *See* Harold Exs. 2, 6-10. And they claim ownership of other unidentified works written by third parties as "works for hire." Mot. 3. All this underscores that establishing ownership will require an individualized review of written agreements, chains of title, and employment relationships for any work at issue. Proposed Intervenors assert that their participation could streamline ownership disputes, *see* Mot. 5, 8, but their arguments relate to assistance in settlement administration as in the *Bartz* case—not in facilitating record development for and conducting a hypothetical trial over millions of contested copyright infringement claims, which is the relevant issue here. *Cf. In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556-57 (9th Cir. 2019) ("In deciding whether to certify a litigation class, a district court must be concerned with manageability at trial," which is not a concern in "a settlement class where, by definition, there will be no trial."); *In re Flash Memory Antitr. Litig.*, 2010 WL 2332081, at *18 (N.D. Cal. June 9, 2010) (denying motion to substitute because "new class representatives will not cure the deficiencies discussed above which militate against class certification").

**CONCLUSION**

This Court has made clear that this "massive and complex" case must move forward. ECF 216 at 22. Intervention now would wreak procedural havoc and visit further delay. And there is no reason for it, as Proposed Intervenors are free at any time to file their own action or to opt out of this one if any class including them is ever certified. Intervention should be denied.

Respectfully submitted,

Dated: January 29, 2026

By: */s/ Eric P. Tuttle*

Eric P. Tuttle, SBN 248440
Email: eric.tuttle@wsgr.com
**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**

701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone: (206) 883-2500

David H. Kramer, SBN 168452
Email: dkramer@wsgr.com
Maura L. Rees, SBN 191698
Email: mrees@wsgr.com
**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300

Paul J. Sampson (admitted *pro hac vice*)
Email: psampson@wsgr.com
**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
95 S State Street, Suite 1000
Salt Lake City, UT 84111
Telephone: (801) 401-8510

*Counsel for Defendant* GOOGLE LLC