Brandt Silverkorn (SBN 323530)
bsilverkorn@edelson.com
J. Aaron Lawson (SBN 319306)
alawson@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Ryan D. Andrews*
randrews@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6374

Matthew J. Oppenheim*
matt@oandzlaw.com
Jeffrey M. Gould*
jeff@oandzlaw.com
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave, NW, 5th Floor
Washington, DC 20016
Tel: 202.480.2999

Counsel for Proposed Intervenors

*Admitted *pro hac vice*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| *In re Google Generative AI Copyright Litigation* | Master File Case No.: 5:23-cv-03440-EKL<br>Consolidated with Case No.: 5:24-cv-02531-EKL<br><br>**REPLY IN SUPPORT OF MOTION TO INTERVENE**<br><br>Hearing Date: February 20, 2026<br>Hearing Time: 1:00 p.m.<br>Courtroom: 7<br><br>Judge: Hon. Eumi K. Lee<br>Magistrate Judge: Susan van Keulen |

Intervention by Cengage Learning, Inc. ("Cengage") and Hachette Book Group, Inc. ("Hachette") (together, "Proposed Intervenors") would be beneficial to the Class, as the Author Plaintiffs recognize. (Dkt. 382.) That is also, no doubt, why Google so vociferously opposes. (Google's Opp. to Mot. to Intervene, Dkt. 383 ("Opp."); Dkt. 384.) Google's over-the-top rhetoric aside, its primary objection to intervention is that Proposed Intervenors should have intervened at some prior point. While publishers are aware of a wave of author-driven copyright class actions, it was only when this case reached class certification that impairment of Proposed Intervenors' interests clearly manifested. (Indeed, there was a pending motion to dismiss until September 2025.) Next, Google asserts Proposed Intervenors have no interest in the case because they don't own Author Plaintiffs' works (or, strangely, even the works cited in the Proposed Complaint (Dkt. 342-1)). But Google is wrong on the law: Proposed Intervenors' interests are implicated whether or not they own one of Author Plaintiffs' works at the class certification stage. And Proposed Intervenors own certain rights to the works asserted in their Proposed Complaint and scores of others that will be impacted by this litigation. Google's professed misunderstanding of ownership exemplifies exactly the kind of value that Proposed Intervenors bring to the case. Third, Google claims Proposed Intervenors are changing the scope of the litigation—they aren't, and none of the Proposed Intervenors' claims go beyond Author Plaintiffs' core allegations. The Court should grant intervention.

**I.    The Proposed Intervention Is Timely.**

Google argues intervention is untimely under Rule 24, because Proposed Intervenors should have intervened at the start of the case or when Hachette received a subpoena. (Opp. at 6.) Google also cites Rule 16, claiming Proposed Intervenors were not diligent. (*Id.* at 4–5.) Google wrongly advocates a standard that would demand premature interventions in class actions. This lawsuit is one of several brought by authors against companies developing LLMs, which were often presented as author-focused. *See, e.g., Kadrey v. Meta Platforms, Inc.*, 3:2023-cv-03417 (N.D. Cal.) Dkt. 407, at 2 ("Plaintiffs and Class members are authors of books[.]"). Here, like *Bartz*, the need for publishers to be involved to adequately represent their interests did not crystallize until the class certification process. *Bartz v. Anthropic PBC*, 3:2024-cv-05417 (N.D. Cal.), Dkt. 198 at 16–25 (the *Bartz* court raising questions about the need for publisher involvement given the per-work rule for statutory

damages and proposing providing class notice to publishers).[1] That is the point from which to measure timeliness.

"Mere lapse of time alone is not determinative" of timeliness. *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984). The "crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999). Here, the crucial date is the briefing for class certification, which transforms a case and brings in absent class members' interests. *See Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090 (9th Cir. 2011) ("[U]pon certification the class acquires a legal status separate from the interest asserted by the class representative, so that an Article III controversy now exists between a named defendant and a member of the certified class[.]" (citation modified)). Class certification briefing commonly revises initial class definitions to conform to the evidence, which could have altered, added or excluded different types of works or publishers or even added a proposed class representative. Indeed, Author Plaintiffs narrowed the class definition when seeking class certification, Dkt. 306, and filed a motion to intervene to add an additional author as named plaintiff, Dkt. 321. Publishers were reasonable to wait until briefing concluded—but before any hearing or decision—to assess how their interests were implicated by the proposed classes (as best publishers can tell given redactions). *Conant v. McCaffrey*, 172 F.R.D. 681, 693 (N.D. Cal. 1997) (allowing revisions to class definition in reply brief for class certification motion). This motion differs from those in cases Google cites to assert untimeliness. *Valentine v. Crocs, Inc.*, 2024 WL 5340074 (N.D. Cal. Sep. 19, 2024) (intervention would have delayed discovery and justifications offered for delayed intervention didn't fit case facts); *Lee v. Pep Boys-Manny Moe & Jack of Cal.*, 2016 WL 324015 (N.D. Cal. Jan. 27, 2016) (class certification denied before motion to intervene was heard and dispositive motions would have to be brought again due to intervention).

Google also asserts that subpoenaing information from Hachette about an author's claim made Proposed Intervenors aware of how the class certification process would impact their interests. (Opp.

---

[1] Publishers' participation in *Bartz* was crucial to prepare for trial and settle that case. Google's attempt to oppose intervention with baseless arguments about that value doesn't merit the Court's attention (and in any event, will be considered at final approval of that $1.5 billion settlement).

REPLY ISO MOTION TO INTERVENE  
MASTER FILE CASE NO.: 5:23-CV-03440-EKL

2

at 6.) But a subpoena does not establish the contours of class certification or whether Proposed Intervenors' interests would be adequately represented in that process. Only recently were the proposed class definitions even available.

Google argues Rule 16 applies here, ignoring the discretionary and flexible nature of the timeliness inquiry, which does not require applying the "good cause" standard. *Constr. Laborers Tr. Funds for S. Cal. Admin. Co. v. Morrow-Meadows Corp.*, 2017 WL 11631998, at *4 (C.D. Cal. Aug. 1, 2017) ("[T]he scheduling order is not the end-all-and-be-all with respect to motions to intervene."). Google's cited authority for applying Rule 16 to intervention, unlike here, involved intervenors whose counsel was already involved in the litigation. *Harris v. Vector Mktg. Corp.*, 2010 WL 3743532, at *1 (N.D. Cal. Sep. 17, 2010). That makes sense: tests to assess diligence are an awkward fit when third parties with separate counsel move to intervene. Insofar as the Court chooses to amend the schedule to facilitate the requested intervention, there would be "good cause," given how class certification briefing proceeded. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

## II.     Establishing Copyright Ownership Does Not Create Prejudice or Individualized Issues.

Google advances a breathless series of presumptions: not only do Proposed Intervenors not own rights in the works in the Proposed Complaint, but intervention requires discovery about ownership of those works, leading to prejudice, delay, and individualized issues that undermine class treatment. (Opp. at 5–6, 10.) Not so. Proposed Intervenors are in the business of owning, licensing, and commercializing copyrights. Decl. of Jessica Stitt ("Cengage Decl.") ¶ 4; Decl. of Linda Janet Saines-Cardozo ("Hachette Decl.") ¶ 5. As a matter of corporate practice, they contract with authors for exclusive rights to their works in exchange for royalties. Cengage Decl. ¶ 4; Hachette Decl. ¶ 11. The Ninth Circuit refers to this exchange as the "classic example" of transferring rights from author to legal owner (here, a publisher). *See DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 988 (9th Cir. 2017). Unsurprisingly, establishing the "classic example" is routine in any copyright litigation, *see Sony Music Ent. v. Cox Commc'ns, Inc.*, 426 F. Supp. 3d 217, 229 (E.D. Va. 2019) (granting summary judgment on ownership of 10,022 works), and an insufficient basis to defeat class certification, *see Bartz v. Anthropic PBC*, 791 F. Supp. 3d 1038, 1051 (N.D. Cal. 2025) (granting class certification over same predominance objection and explaining "[i]f disputes arise over

ownership, which will be unlikely, the district court or as needed a jury will resolve them"). As Author Plaintiffs correctly argue, these are administrative issues routinely dealt with post-trial or settlement. (Dkt. 324 at 6.)

Of the works Google identifies, Hachette obtained exclusive rights in this classic manner from five authors, and Cengage from one. *See* Hachette Decl. ¶¶ 7–11; Cengage Decl. ¶ 5, 7. These six authors consented to Proposed Intervenors filing suit over their works. *See* Cengage Decl. ¶ 7; Hachette Decl. ¶ 12. They would not have done so if they disputed Proposed Intervenors' rights. *See Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1428–29 (9th Cir. 1996) (where "the copyright holder appears to have little dispute with its licensee on this matter, it would be anomalous to permit a third party infringer" to challenge the transfer) (quotation omitted). Google gripes that production and review of a few contracts might cause delay. But Proposed Intervenors produced them to Google on February 5, 2026. Its argument has no practical basis—typical grants of rights are straightforward, Hachette Decl. ¶ 6—and would preclude class treatment of virtually any copyright case. That would encourage infringement like Google's. Luckily, that is not the law, as the *Bartz* class demonstrates.

**III.   Intervention Would Not Expand the Scope of the Lawsuit.**

Citing one paragraph from the Proposed Complaint, Google argues that intervention would mean trying "a new case altogether," prejudicing it and creating timeliness issues and delay. (Opp. at 5–6.) Google misreads the allegations. The at-issue paragraph says Google "unlawfully reproduced . . . copyrighted works through its unauthorized downloading of their works *in connection with sourcing content for training* Gemini Models and additional copying *as part of its AI training process*." (Dkt. 342-1 ¶ 109 (emphasis added).) Proposed Intervenors also discuss Google's outputs to demonstrate market harm, not to assert infringement based on outputs, as Google claims. (*See, e.g., id.* ¶ 83 ("Gemini output crowds the market and competes with legitimate travel guides[.]").) Intervention wouldn't change the existing case's scope, and Google's arguments about prejudice fail.

**IV.   Proposed Intervenors' Interests as Publishers Should Be Adequately Represented.**

Google argues Proposed Intervenors—book publishers who own numerous copyrights—have no protactable interest in a class that puts those rights squarely at issue. (Opp. at 7.) In support, it cites a case with competing class actions raising claims under different state laws, where the court found an

intervenor's claims of plaintiff-defendant collusion did not establish inadequate representation. *Calderon v. Clearview AI, Inc.*, 2020 WL 2792979, at *4, *7 (S.D.N.Y. May 29, 2020). Proposed Intervenors have an interest now in how certification goes. It's true intervention is often denied "in the class action *settlement* context," where opting out or objecting is sufficient to protect class members, but this is not a settlement context. *Zepeda v. Paypal, Inc.*, 2014 WL 1653246, at *4 (N.D. Cal. Apr. 23, 2014) (emphasis added). Intervention in class actions is permissible during and after class certification. (*See* Mot. to Intervene at 5, Dkt. 342.) Google says *Kamakahi* differs from this case, because that intervention caused no delay or need for "significant additional discovery." (Opp. at 7.) But Proposed Intervenors explained their request won't lead to delay or significant further discovery.

Here, Proposed Intervenors focus on adequacy to ensure that the publishing industry's discrete interests are fairly treated in class litigation where both authors and publishers' rights are at stake. Google disagrees. But a class without publisher representatives risks arguments unmade and necessary evidence missing. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003); Dkt. 342 at 8 (discussing publisher evidence). A proposed intervenor's "expertise" and "materially" different perspective from existing parties supports intervention. *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983). As publishers, Proposed Intervenors' broad portfolio of copyrights gives them a distinct perspective on market harms impacting the fair use analysis. *See* 17 U.S.C. § 107(4). They (and other publishers) also have agreements with Google for specific uses by Google Books. (Dkt. 380 (discovery dispute related to Google Books).) Proposed Intervenors have only the redacted record, but copying and use beyond the scope of those agreements (including for training) would be infringement, and establishes their important interest in litigating on publishers' behalf. Cengage Decl. ¶ 8; Hachette Decl. ¶ 13. Further, intervention is justified if a statute provides a single award per work and there are allocation issues to be decided where one set of parties is absent. *See Fed. Agric. Mortg. Corp. v. Assemi Bros., LLC*, 783 F. Supp. 3d 1250, 1257 (E.D. Cal. May 16, 2025) (finding risk of inadequate representation given divergence of interests on recovery). Google's attempt to reduce publishers and authors' different economic roles to litigation strategy fails. (Opp. at 8.)

## CONCLUSION

Intervention as of right or permissive intervention should be granted.

|   |   |   |
|---|---|---|
| 1 |   | Respectfully submitted, |
| 2 | Dated: February 5, 2026 | /s/ *Ryan D. Andrews* |
| 3 |   | Brandt Silverkorn (SBN 323530) |
|   |   | bsilverkorn@edelson.com |

Dated: February 5, 2026

Respectfully submitted,

/s/ *Ryan D. Andrews*
Brandt Silverkorn (SBN 323530)
bsilverkorn@edelson.com
J. Aaron Lawson (SBN 319306)
alawson@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.907.6645
Fax: 415.373.9435

Ryan D. Andrews*
randrews@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6374

Matthew J. Oppenheim*
matt@oandzlaw.com
Jeffrey M. Gould*
jeff@oandzlaw.com
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Ave, NW, 5th Floor
Washington, DC 20016
Tel: 202.480.2999

*Counsel for Proposed Intervenors*

*Admitted *pro hac vice*