# EXHIBIT A

## [Proposed]
## MOTION TO
## AMEND CASE SCHEDULE

## UPDATED REDACTED VERSION

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
**STRANCH, JENNINGS & GARVEY, PLLC**
1111 Broadway, Suite 300
Oakland, CA 94607
Telephone: (341) 217-0550
lweaver@stranchlaw.com
adavis@stranchlaw.com
jsamra@stranchlaw.com

Gregory S. Mullens (admitted *pro hac vice*)
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
gmullens@stranchlaw.com

Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Elissa A. Buchanan (SBN 249996)
Evan A. Creutz (SBN 349728)
Aaron Cera (SBN 351163)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone:    (415) 500-6800
Facsimile:    (415) 395-9940
Email:        jsaveri@saverilawfirm.com
              czirpoli@saverilawfirm.com
              cyoung@saverilawfirm.com
              eabuchanan@saverilawfirm.com
              ecreutz@saverilawfirm.com
              acera@saverilawfirm.com

*Proposed Plaintiffs' Interim Co-Lead Counsel*

*[Additional Counsel on Signature Page]*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| *In re Google Generative AI Copyright Litigation* | Master File Case No. 5:23-cv-03440-EKL-SVK<br>Consolidated Case No. 5:24-cv-02531-EKL-SVK<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO AMEND CASE SCHEDULE**<br><br>Judge:       Hon. Eumi K. Lee<br>Date:        May 27, 2026<br>Time         10:00 A.M.<br>Courtroom:   7, Fourth Floor |

**FILED UNDER SEAL**

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ....................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 2

I.      INTRODUCTION ............................................................................................................ 2

II.     RELEVANT BACKGROUND ........................................................................................ 4

        A.      The Court Prioritized Class Certification Discovery ............................................. 4

        B.      Google's Decision to Deny Merits Discovery ....................................................... 5

III.    ARGUMENT .................................................................................................................... 6

        A.      Plaintiffs Diligently Pursued Merits Discovery .................................................... 6

        B.      Google's Failure to Produce Key Merits Discovery Is Extremely Prejudicial ..................... 8

        C.      The Complexity, Novelty and Importance of This Case Warrants Granting a
                Reasonable Amount of Time to Conduct Discovery ............................................. 9

        D.      Pending Intervention Motions Require Additional Time ..................................... 10

        E.      Google Will Not Be Prejudiced by an Extension of the Fact Discovery Close .................. 10

IV.     CONCLUSION ............................................................................................................... 10

**NOTICE OF MOTION AND MOTION**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:** PLEASE TAKE NOTICE that on May 27, 2026 at 10:00 a.m. in Courtroom 7, Fourth Floor, of this Court, located at 280 South First Street, San Jose, California, Plaintiffs will and hereby do move the Court for an Order extending the case deadlines by 180 days or 90 days after the Court's ruling on class certification, whichever is sooner. Plaintiffs have been denied an opportunity to meaningfully take merits discovery, even though they propounded many of their merits-based discovery requests in January 2025. At the Court's direction, Plaintiffs prioritized class certification discovery until class certification briefing closed. Immediately thereafter, Plaintiffs renewed and brought motions to compel merits evidence, including discovery previously denied as premature. Currently, there are four motions pending with the court, including Plaintiffs' motion for class certification, one Rule 72 objection and one forthcoming, and two motions to intervene. Google refuses to support an extension, despite seeking discovery beyond the deadline for itself.[1]

Plaintiffs bring this motion pursuant to Fed. R. Civ. P. 16, Civil Local Rule 16-10 and this Court's inherent authority. Good cause exists for two reasons. ***First***, Google's effective bifurcation of discovery allowed Plaintiffs just six weeks for merits discovery, which is not what the Court intended or what is required in a case of this import and scope. There are holes in the evidentiary record necessary for the Court to rule on summary judgment, such as Google's refusal to produce training datasets and failure to produce many of its licensing agreements. Were a Court to grant summary judgment against Plaintiffs without allowing that discovery, it would be reversible error. ***Second***, the request is practical and fair. Closing merits discovery in a case of this complexity and scope just six weeks from December 30 is not equitable. The record is clear. Plaintiffs have been diligent. Extending the case schedule is practical and cures the prejudice Google has caused. It will allow time to address issues relating to the publisher intervention motion.

For the reasons set forth above and herein, Plaintiffs respectfully seek an Order extending the case schedule by 180 days, or 90 days following the issuance of an order on class certification is proper, subject to the discretion of the Court.

---

[1] In addition to continuing to demand further discovery from Plaintiffs in this action, Google is pursuing third party discovery in other jurisdictions, without advising of the discovery cut off here. *See generally, e.g.*, *Google LLC v. Sobel, Weber Assocs., Inc*., No. 26-mc-00056 (S.D.N.Y.) (motions to compel subpoenas); *Almond v. Google LLC*, No. 26-mc-00029 (S.D.N.Y.) (Plaintiffs' motion to quash subpoenas).

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Pursuant to Fed. R. Civ. P. 16, Civil Local Rule 16-10, and this Court's inherent authority, and for the reasons set forth below and in the accompanying Declaration of Joseph R. Saveri and Lesley E. Weaver ("Joint Decl."), Plaintiffs request the Court to extend the case schedule by 180 days, or 90 days after the Court's ruling on class certification, whichever is sooner, subject to the discretion of the Court. Fundamentally, Plaintiffs' ask is simple—Plaintiffs want an opportunity to meaningfully take discovery on the merits of their claim, including to defeat Google's fair use defense. Heeding this Court's guidance, Plaintiffs narrowed this case to a single cause of action and have been extremely judicious in seeking discovery. Although the Court's scheduling order did not bifurcate discovery, Plaintiffs worked with Google and the Court to focus on class certification. Google's decision to limit discovery to class certification issues, foreclosing merits discovery is highly prejudicial and unfair.

***First,*** Google has refused to produce merits discovery throughout the litigation. Until December 30, 2025, Google argued that key merits discovery was improper because it was too early. Now, just six weeks later, Google argues it is too late. The conduct is sanctionable. *See In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F.Supp.3d 899, 935 (N.D. Cal. 2023) (sanctioning defendant for trying to improve its position by "resist[ing] discovery as long as possible [and] mak[ing] things increasingly difficult and expensive and frustrating for the opposition"). Google followed the same playbook here. Plaintiffs sought much of the disputed discovery from the outset. Plaintiffs' motions to compel production of merits discovery before December 30 were denied pending the ruling on class certification. *See, e.g.*, Sept. 11, 2025 Hr'g Tr. at 60:19 (instructing Plaintiffs to "[g]et through class cert" and denying merits discovery). On numerous occasions over the past year, Plaintiffs timely filed motions to compel merits discovery, but they were denied as premature. *See, e.g.*, ECF 148 (denying as premature designation of apex custodians); ECF 155 (ordering parties to "prioritize" custodians likely to impact class certification and denying source code discovery in favor of training data sampling as addressing ". . . most if not all of Plaintiffs' needs' for the purposes of class certification"). Plaintiffs heeded the Court's guidance and prioritized class certification evidence, while reserving rights to merits discovery.

In early January, after the completion of class certification briefing, Plaintiffs conferred more than ten times over several weeks extensively to obtain merits discovery. Google's refusal resulted in Plaintiffs bringing three motions the third week in January. On February 2, 2026, each discovery motion was denied. ECF 387 (holding that "the request for additional discovery is actually a request to adjust the case schedule" and that the discovery sought was not "feasible on the current schedule."). *Id*. at 2-4. This motion followed.

The most critical discovery that Google is withholding relates to training datasets and source code. Google refuses to provide Plaintiffs with any more training data beyond the samples it produced for class certification purposes; even though plaintiffs in every other generative-AI case have been permitted to take such discovery on training data copied for use in the models at-issue. Here, following the analysis of the sample training datasets for class certification purposes, Plaintiffs have demonstrated a methodology for identifying class members. At summary judgment, Plaintiffs need the datasets to apply that methodology and prove the fact of infringement on a class wide basis. Apart from this classwide proof of infringement, that evidence is also highly probative of willfulness, the number of infringing acts, the purpose of the infringement, and other key elements of the claim and the absence of a fair use defense. This is why other courts managing other cases raising analogous claims have ordered the production of all of the datasets.

Google has refused to produce other probative discovery too. ***Google simply did not produce even half of the licensing agreements*** it has entered into—a fact Plaintiffs learned for the first time yesterday in a deposition Google opposed as irrelevant. Plaintiffs' motions have addressed Google's refusal to search custodial files of key witnesses, or to produce for deposition decision makers who charted Google's refusal to pay authors and publishers to license their copyrighted works, limiting depositions to just ten.

Plaintiffs have been diligent in pursuing this discovery. Google objected to merits discovery it claims Plaintiffs did not need for the purpose of class certification.

***Second,*** the request is practical. The case schedule originally contemplated just ten weeks between the submission of class certification briefing and the close of fact discovery, and just five weeks between the class certification hearing and the close of discovery. This aggressive schedule was rendered unfeasible by Google's intransigence, in particular, its refusal to produce key merits evidence before December 30, or at all. Other changes compound the unfairness. The hearing on Plaintiffs' class certification motion was scheduled for January 7, 2026, with the close of fact discovery on February 13, 2026, which would have

provided an opportunity for the Court's guidance to be implemented in the remaining weeks, or for the fact discovery period to be extended. *See, e.g.*, ECF 199 & 231. Instead, the fact discovery period now closes before the Court hears argument on class certification. Should an extension not be granted, the lack of meaningful merits discovery will inevitably lead to Plaintiffs seeking relief under Rule 56(d) in the likely event Google moves for summary judgment on its fair use defense, leading to further delay as to the resolution of this case. *Beyers v. Consol. Ins. Co.*, 2020 WL 13881701, at *5 (S.D. Ind. July 28, 2020) ("Rule 56(d) requires Plaintiffs to specify matters on which discovery is needed, … and to provide an adequate explanation why the extension is necessary.") (internal citations omitted).

An extension is warranted for a separate reason—the procedural posture of the case has also changed. Two intervention motions have been filed. All parties assert that *some* additional discovery will be required if intervention is granted. An extended case schedule would leave time for discovery needed by Google and the intervening parties. The interests of justice and judicial economy would be served by permitting Plaintiffs to take merits discovery concurrently.

Plaintiffs' need for time to obtain and analyze merits evidence, taken together with the truncated schedule and pending motions to intervene, establish good cause exists to extend the fact discovery period.

## II.    RELEVANT BACKGROUND

### A.    The Court Prioritized Class Certification Discovery

At the December 18, 2024 case management conference, the Court instructed Plaintiffs to direct their discovery efforts toward class certification. Dec. 18, 2024 Hr'g Tr. at 21:19-21. Two days later, the Court entered a schedule with setting a class certification motion deadline of August 8, 2025 and the close of fact discovery on October 17, 2025. ECF 88 at 3. Notably, that order did not bifurcate discovery.

On July 11, 2025, Plaintiffs sought and obtained a case schedule extension based on Google's failure to make prompt production of court-ordered sample sets of training data. ECF 173 at 2, 15-16; ECF 197 (granting motion). In order to advance the case, Plaintiffs sought certain outstanding related discovery. Plaintiffs were criticized for pursing merits discovery and "failing to prioritize issues relevant to class certification." The Court noted that "if the record reflects Plaintiffs' failure to prioritize and diligently advance discovery on issues relevant to class certification," then that deadline would not be extended. *Id.* at 2 (quoting ECF 128 at 8). Shortly thereafter, at a September 11, 2025 hearing, Plaintiffs' motion to compel

responses for requests for admission were also denied by the Court without prejudice, as Plaintiffs were instructed to "[g]et through class cert." Sept. 11, 2025 Hr'g Tr. at 60:19.

### B.    Google's Decision to Deny Merits Discovery

Google distorted the Court's emphasis on class certification as permission to foreclose key merits discovery while running out the clock. Plaintiffs timely propounded discovery beginning in January 2025, encompassing key merits discovery, but at the Court's behest prioritized class certification discovery. Throughout 2025, Google objected and refused to honor requests that sought "materials that are not needed to determine whether a class can be certified in this action." *See, e.g.*, ECF 179-2 at 10-11, 20, 22, 29-30, 32, 34. Google demanded that Plaintiffs demonstrate each proposed custodian "possess[ed] non-duplicative information relevant to class certification." ECF 144-1 at 1. In May, Google told Plaintiffs to identify "what they think they actually need for class certification so that we can focus and prioritize our efforts there." Joint Decl., Ex. 3. In June, Google told the Court Plaintiffs' request for training data should be denied because "Plaintiffs have never explained how such a broad request is necessary to support any plausible class theory." ECF 159 at 7. In July, Google demanded that Plaintiffs "describe with specificity the discovery [Plaintiffs] need for class certification." Joint Decl., Ex. 5. In August, Google argued that Plaintiffs' Rule 30(b)(6) deposition topics were "at best tangentially related to class certification" and so should be denied or significantly narrowed. *Id.*, Ex. 6. In September, Google conceded it had "focused on the class cert issues because we have been instructed multiple times by Judge Lee to focus our efforts at this." Sept. 11, 2025 Hr'g Tr. at 534:4-6. In October, Google told the Court that Plaintiffs' discovery requests were "far afield from the issues that matter" because discovery must be tethered "to issues of class certification." ECF 235 at 2-3. And as late as November, Google objected that Plaintiffs' discovery requests sought "information that Plaintiffs do not need for the purpose of their motion for class certification." Joint Decl., Ex. 8. In summary, Google objected to 78 Requests for Production of Documents, 8 Interrogatories, and 88 Requests for Admission on the grounds that they did not relate to class certification. *Id.* ¶ 10. But this case will not end with this Court's order on class certification.

Based on the above, one would reasonably conclude that once class certification briefing was complete, the parties would address merits discovery including the multiple prior instances where the

discovery had been denied as premature. Plaintiffs timely attempted to do so, to no avail. Google immediately took the position that all merits discovery was too late.

## III.   ARGUMENT

This Court may extend a case schedule upon a showing of good cause. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). Fundamental fairness requires the schedule to be revisited to permit Plaintiffs time to pursue merits evidence they have timely sought in good faith. *See id.* at 609 ("The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" (quoting Fed. R. Civ. P. 16 advisory committees notes to 1983 amendment)); *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999) ("Central to this required showing of diligence [to show good cause to amend a case schedule] is whether the movant discharged her obligation under Rule 16 to collaborate with the district court in managing the case."); *see also In re Outlaw Lab'ys, LP Litig.*, 2020 WL 2111920, at *3 (S.D. Cal. May 4, 2020) (granting extension after filing of class certification motion, where court had not provided any indication that merits discovery should wait and parties requested extension weeks after close of discovery). The absence of merits discovery prejudices Plaintiffs and class members by denying them basic information to prove their claims.

### A.   Plaintiffs Diligently Pursued Merits Discovery

Plaintiffs propounded discovery requests shortly after filing their Consolidated Complaint, on January 17, 2025. The Court did not issue its order adjudicating Defendants' motion to dismiss until September 2025. *See Beyers*, 2020 WL 13881701, at *6 (finding extension warranted where "Plaintiff has been active and engaged in the class certification discovery process, . . . and was prompt in alerting the Court and opposing parties to his need for specific merits discovery"). Since then, Plaintiffs conferred extensively, engaging in more than one hundred meet and confer sessions on a myriad of issues. First and foremost, Plaintiffs sought production of Google's training data sets. As a compromise, to address Google's burden arguments, and to prioritize class certification, Plaintiffs accepted certain sample training data sets to develop a methodology for identifying copyrighted materials sufficient to satisfy the requirements of Rule 23. *See* June 18, 2025 Order Re Discovery Disputes, ECF 155 at 2 ("[T]his [training data] protocol

should address most if not all of Plaintiffs' needs for the purposes of class certification."). That is, from the outset, Plaintiffs' requests for complete training sets were deprioritized, but not abandoned.

Plaintiffs sought high level custodians in early June 2025, but the request was deemed "premature." ECF 148 at 3. At the June 18, 2025 hearing where additional custodians were ordered, the Parties were ordered to "prioritize those that are most likely to impact class certification" in making their selections. ECF 155 at 2. Google's counsel endorsed the resulting framework, acknowledging that certain custodians would be "more important for the merits" and that "the discovery period will continue thereafter." June 18, 2025 Hr'g Tr. at 15:14-19. In response, Plaintiffs ranked their proposed custodians by class certification priority. *Id.* at 15:21-24; Joint Decl., Ex. 4. But when Plaintiffs later pursued the entire list of those custodians, those requests were denied by Google and the Court as too late. ECF 387. Likewise, Plaintiffs' efforts to obtain source code reflecting Google's uniform handling of copyrighted works and the models' actual technical copies of works (going towards Fair Use Factor 1) was denied in light of Google making available exemplar training data. *See* ECF 155 (denying Plaintiffs' request for source code since the training data "should address most if not all of Plaintiffs' needs' for the purposes of class certification"). Nearly all denials of Plaintiffs' motions to compel involved grounds related to timeliness. *See, e.g.*, ECF 148 (denying apex custodians as premature); ECF 155 (denying source code as not yet needed); ECF 221 (denying RFAs to be renewed if needed after class certification); ECF 272 (denying certain dataset requests as untimely); ECF 387 (denying requests for additional depositions, custodians, apex discovery, and non-custodial searches as untimely). Following the close of class certification briefing on December 30, 2025, Plaintiffs promptly engaged in meet and confers, and when Google agreed to produce nothing, filed joint letter briefs on January 23, January 26, and January 27, 2026. These motions pursued narrowly focused core discovery: apex depositions, custodians, non-custodial sources relating to willfulness damages and technical issues relating to how the models actually function and copy (i.e., infringe) Plaintiffs' copyrighted works. *See* ECF 375, 377, and 380. On February 2, 2026, these discovery motions were all denied, holding in part that they were too late under the current schedule. ECF 387. Plaintiffs immediately began negotiating with Google to extend the schedule and, again when Google agreed to nothing, timely brought this Motion.

**B.    Google's Failure to Produce Key Merits Discovery Is Extremely Prejudicial**

The merits discovery Google refuses to produce is relevant to and probative of central issues in this case., It bears directly on the critical questions of fair use (including factors one (nature and purpose of use, including whether the use was transformative) and four (market harm)), and willfulness that Google's existing custodians and productions do not cover.

A critical part of this merits discovery is the training data sets. It also covers class wide discovery, including parts relating to publishers and authors. As also discussed in Plaintiffs' pending Rule 72 motion challenging the December 19, 2025 Order which improperly limited merits discovery to what the Court deemed to be "final" training sets, is critical. ECF 328. As yesterday's deponent confirmed, "training" is comprised of "pre-training" and post-training," all of which is adjusts the mixture of data. Ex. 11 ("Santamaria-Fernandez Rough Tr.") 21:3-23:7; 208:4-212:12; 218:9-219:11. In addition, discovery into how Google valued copyrighted material, testing its impact on training the models at issue, goes directly toward willfulness, market impact and other factors.

Google withheld other key discovery. For example, Plaintiffs propounded discovery seeking Google's documents relating to the Named Plaintiffs' Works in Suit, of datasets including Named Plaintiffs' works in suit. Google simply did not produce these materials. Google objected to producing these materials on relevancy and burden grounds. Google then used the material it objected to producing in examining Plaintiffs. *See, e.g.*, Ex. 10 ("Zhang Rough Tr.") 246:2-247:13. Similarly, Google apparently picked and chose which license agreements it would produce, without informing Plaintiffs that it was withholding any of them, as is it required to do. Yesterday, a deponent confirmed that more than 50 license agreements exist. Santamaria-Fernandez Rough Tr. 71:13-72:3; 73:3-7; 178:22-15; 181:4-11. Google has now refused even to confer about why it withheld them.

Notably, Plaintiffs were forced to depose yesterday's witness without the full benefit of relevant documents from her custodial file. As soon as class certification briefing closed, Plaintiffs moved to compel production of those documents. The motion was denied as untimely. ECF 387. Her testimony nonetheless confirmed that additional key discovery has been withheld, including: internal lists of all ▮▮▮▮ books, by title, author, publisher, ISBN, and other metadata that Gemini XL was trained on; analyses of the dollar value placed on books for which Google has negotiated deals specifically for the purpose of developing AI

products; and information about the Knowledge and Information team, including numerous deals it has executed related to copyrighted material. Santamaria-Fernandez Rough Tr. 229:15-19; 233:8-17; 303:5-18; 306:3-6; 372:1-13; 346:4-347:21; 78:4-11. Further, numerous key players never identified by Google at all were named in her deposition. *Id.* 65:6-22; 75:18-76:12.

There are other significant gaps in the merits record. Google's leadership possesses information relevant to the willfulness of Google's conduct, including that executives made the conscious decision to accept the risk of "potential fines" in the tens to hundreds of billions of dollars to remain competitive. ECF 376-1 at 5 (citing GOOG-AIC-000115985). Depositions confirmed that training data decisions for the Gemini models required the personal involvement of C-level executives including Google CEO Sundar Pichai (*id.* at 3 (citing GOOG-AIC-000388471 at -502; GOOG-AIC-000409943 at -973; Barker Dep. at 62:2-7; Jaskiewicz Dep. at 336:2-7). Google's existing witnesses confirmed they lacked personal knowledge of the rationale behind these decisions. *Id.* at 4 (citing Jaskiewicz Dep. at 336:2-7). Plaintiffs first sought apex discovery in June 2025, which was denied as premature. Plaintiffs' efforts to obtain this material within the court-ordered discovery period were again denied as untimely. ECF 387.

### C.    The Complexity, Novelty and Importance of This Case Warrants Granting a Reasonable Amount of Time to Conduct Discovery

This case involves untested technology, complex legal and factual issues of broad legal and societal importance. However, this litigation has imposed a truncated discovery schedule at odds with other generative AI copyright cases. In this case, Plaintiffs have been afforded 392 days since Plaintiffs served their first set of requests for production of documents. Compared to other generative AI cases, the fact discovery period is between 179 and 445 days ***shorter*** than in other actions, including *In re Mosaic LLM Litigation*, (597 days), *Nazemian v. NVIDIA*, (685 days), *Andersen v. Stability AI*, (580 days), and *In re OpenAI ChatGPT Litigation*, (837 days, including 571 days of pre-centralization discovery and 266 additional days after centralization). Joint Decl., Ex. 9. Those cases also challenge fewer models and only models reflecting singular modalities unlike here which challenges multimodal models—they either challenge LLMs raising claims for copyrighted books (e.g., *Mosaic*, *Nazemian*, *OpenAI*) or diffusion models for copyrighted images (*Andersen*). This case also has the greatest limitations on discovery scope, including custodians, documents, and depositions. In cases with fewer models and sources of training data,

dozens of witnesses have been deposed and the scope of document production exceeds that permitted here. *Id*. This case is also arguably more complex than the other AI copyright actions, given Google's generative AI training data acquisition practices and its scope, size and complexity.

### D.     Pending Intervention Motions Require Additional Time

There are two pending motions to intervene, one brought by the authors of the Jack Reacher novels and Plaintiff Larson to include her business, submitted in response to arguments opposing class certification as to standing (ECF 321); and one brought by publishers (ECF 342). Google contends that intervention "would require months of new pleading challenges [and] new discovery." ECF 383 at 1. With respect to the Grants, Google also argues that it would need additional discovery, despite knowing that the Grants have begun data collection. *See* ECF 337 at 1. The timing of the hearing on intervention and class certification—after the current fact discovery close—supports the requested discovery extension.

### E.     Google Will Not Be Prejudiced by an Extension of the Fact Discovery Close

In this Circuit, the primary consideration is the diligence of the party seeking the modification (*see Johnson*, 975 F.2d at 609). This and the prejudice factor weigh in favor of Plaintiffs. Plaintiffs have proactively sought this discovery, and so there is no real prejudice to Google. *Oppenheimer v. eXp Realty LLC*, 2023 WL 1805568, at *2 (W.D. Wash. Jan. 17, 2023) (granting request to extend discovery schedule and explaining that "a need for additional discovery" by itself "is not sufficient to establish prejudice"); *Finjan, Inc. v. Check Point Software Techs., Inc.*, 2019 WL 1455333, at *4 (N.D. Cal. Apr. 2, 2019) ("To the extent that some additional discovery may be required, that alone is not enough to constitute prejudice."). There is no prejudice to Google.

### IV.     CONCLUSION

For good cause shown, Plaintiffs respectfully request that the Court amend the case schedule by extending the deadline for fact discovery from February 13, 2026 to August 12, 2026, or by 90 days following issuance of an order on class certification, and extending all subsequent deadlines proportionately, at the Court's discretion. Plaintiffs' proposed schedule is attached as Exhibit 1 to Plaintiffs' proposed Motion to Amend Case Schedule.

Dated: February 13, 2026

Respectfully submitted,

By:        */s/ Lesley E. Weaver*
Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
**STRANCH, JENNINGS & GARVEY, PLLC**
1111 Broadway, Suite 300
Oakland, CA 94607
Telephone: (341) 217-0550
lweaver@stranchlaw.com
adavis@stranchlaw.com
jsamra@stranchlaw.com

Gregory S. Mullens (admitted pro hac vice)
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
gmullens@stranchlaw.com

By:        */s/ Joseph R. Saveri*
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Elissa A. Buchanan (SBN 249996)
Evan A. Creutz (SBN 349728)
Aaron Cera (SBN 351163)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
cyoung@saverilawfirm.com
eabuchanan@saverilawfirm.com
ecreutz@saverilawfirm.com
acera@saverilawfirm.com

*Plaintiffs' Interim Co-Lead Counsel*

Brian D. Clark (admitted *pro hac vice*)
Laura M. Matson (admitted *pro hac vice*)
Arielle S. Wagner (admitted *pro hac vice*)
Consuela Abotsi-Kowu (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
bdclark@locklaw.com
lmmatson@locklaw.com
aswagner@locklaw.com
cmabotsi-kowo@locklaw.com

Stephen J. Teti (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN PLLP**
265 Franklin Street, Suite 1702
Boston, MA 02110
Telephone: (617) 456-7701
sjteti@locklaw.com

Ryan J. Clarkson (SBN 257074)
Yana Hart (SBN 306499)
Mark I. Richards (SBN 321252)
**CLARKSON LAW FIRM, P.C.**
22525 Pacific Coast Highway
Malibu, CA 90265
Telephone:    213-788-4050
rclarkson@clarksonlawfirm.com
yhart@clarksonlawfirm.com
mrichards@clarksonlawfirm.com

Matthew Butterick (SBN 250953)
**BUTTERICK LAW**
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone: (323) 968-2632
Facsimile: (415) 395-9940
mb@buttericklaw.com

*Additional Counsel for Individual and Representative Plaintiffs and the Proposed Class*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Lesley E. Weaver, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of February, 2026, at Oakland, California.

/s/ *Lesley E. Weaver*
Lesley E. Weaver

Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Joshua D. Samra (SBN 313050)
**STRANCH, JENNINGS & GARVEY, PLLC**
1111 Broadway, Suite 300
Oakland, CA 94607
Telephone: (341) 217-0550
lweaver@stranchlaw.com
adavis@stranchlaw.com
jsamra@stranchlaw.com

Gregory S. Mullens (admitted *pro hac vice*)
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
gmullens@stranchlaw.com

Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Christopher K.L. Young (SBN 318371)
Elissa A. Buchanan (SBN 249996)
Evan A. Creutz (SBN 349728)
Aaron Cera (SBN 351163)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone:     (415) 500-6800
Facsimile:     (415) 395-9940
Email:          jsaveri@saverilawfirm.com
                czirpoli@saverilawfirm.com
                cyoung@saverilawfirm.com
                eabuchanan@saverilawfirm.com
                ecreutz@saverilawfirm.com
                acera@saverilawfirm.com

*Plaintiffs' Interim Co-Lead Counsel*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| *In re Google Generative AI Copyright Litigation* | Master File Case No. 5:23-cv-03440-EKL-SVK<br>Consolidated Case No. 5:24-cv-02531-EKL-SVK<br><br>**DECLARATION OF JOSEPH R. SAVERI AND LESLEY E. WEAVER IN SUPPORT OF PLAINTIFFS' MOTION TO AMEND CASE SCHEDULE** |

Master File Case No. 5:23-cv-3440-EKL-SVK

I, Joseph R. Saveri, and I, Lesley E. Weaver, declare and state as follows:

1.      Joseph R. Saveri is a partner at the law firm of Joseph Saveri Law Firm, LLP ("JSLF") and Lesley E. Weaver is a partner at the law firm of Stranch, Jennings & Garvey, PLLC ("SJG"). We are Co-Lead Counsel for Plaintiffs in the above-captioned matter. We have personal knowledge of the facts stated herein and, if called upon to do so, could and would testify competently thereto. We submit this Declaration in support of Plaintiffs' Motion under Fed. R. Civ. P. 16, Civil Local Rule 16-10, and this Court's inherent authority, to Amend the Case Schedule.

2.      Attached as **Exhibit 1** hereto is Plaintiffs' proposed case schedule.

3.      Attached as **Exhibit 2** hereto are Google's Responses and Objections to Plaintiffs' First Set of Requests for Productions, served on February 18, 2025.

4.      Attached as **Exhibit 3** hereto is a true and correct copy of a May 15, 2025 letter from Google to Plaintiffs.

5.      Attached as **Exhibit 4** hereto is a true and correct copy of a June 19, 2025 email from Plaintiffs to Google.

6.      Attached as **Exhibit 5** hereto is a true and correct copy of a July 18, 2025 email from Google to Plaintiffs.

7.      Attached as **Exhibit 6** hereto is a true and correct copy of an August 22, 2025 email from Google to Plaintiffs.

8.      Attached as **Exhibit 7** hereto is a true and correct copy of an email thread between Plaintiffs and Google from between October 15, 2025 and October 27, 2025.

9.      Attached as **Exhibit 8** are Google's Responses and Objections to Plaintiffs' Fifth Set of Requests for Productions, served on November 3, 2025.

10.     The following is a list of discovery propounded by Plaintiffs to which Google objected on grounds that it did not retaliate to class certification. In summary, Google objected to 78 Requests for Production of Documents, 8 Interrogatories, and 88 Requests for Admission on the grounds that they did not relate to class certification, and stood on those objections. They include:

SAVERI AND WEAVER DECL. ISO PLS' MOT. TO AMEND CASE SCHEDULE

a. Google's Responses and Objections to Plaintiffs' First Requests for Production ("Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.");

b. Google's Amended Responses and Objections to Plaintiffs' First Requests for Production (same as above);

c. Google's Responses and Objections to Plaintiffs' Second Requests for Production ("Google also objects to this Request on the grounds that it seeks information that Plaintiffs do not need for the purpose of their planned motion for class certification.");

d. Google's Responses and Objections to Plaintiffs' Third Set of Requests for Production ("Finally, Google objects to this Request on the grounds that it seeks information that Plaintiffs do not need for the purpose of their planned motion for class certification.");

e. Google's Responses and Objections to Plaintiffs' Fourth Set of Requests for Production ("Google also objects to this Request on the grounds that it seeks information that Plaintiffs do not need for the purpose of their planned motion for class certification.");

f. Google's Responses and Objections to Plaintiffs' Fifth Set of Requests for Production (Nos. 76-79) ("Google also objects to this Reque   on the grounds that it seeks information that Plaintiffs do not need for the purpose of their motion for class certification.");

g. Google's Responses and Objections to Plaintiffs' Second Set of Requests for Admissions (Nos. 261-586) ("Google objects to this Request on the grounds that it is unduly burdensome, vague, ambiguous, and overbroad, especially in its use of the terms 'content' and 'Shadow Libraries.' Google lacks knowledge or information as to which domains belong to 'Shadow Libraries.' The burden on Google is especially great in light of the Request's minimal relevance, if any, to either Plaintiffs' motion for class certification, the claims in the Consolidated Amended Complaint, or any party's defenses.");

h. Google's Amended Responses and Objections to Plaintiffs' Second Set of Requests for Admissions (Nos. 261-586) (same as above);

i. Google's Responses and Objections to Plaintiffs' Third Set of Requests for Admissions ("Google objects to this Request on the grounds that it is unduly burdensome, vague,

ambiguous, and overbroad, especially in its use of the phrases 'Bowker ISBN data,' 'identify copyrighted works,' and 'used . . . in the building, training, and development of the Models.' The burden on Google is especially great in light of the Request's irrelevance to Plaintiffs' motion for class certification, the claims in the Complaint, or any party's defenses.");

j. Google's Responses and Objections to Plaintiff Sarah Andersen's First Set of Interrogatories ("Google objects to this Interrogatory, which imposes undue burden on Google that is disproportionate to the needs of the case. As it stands, Plaintiffs' case focuses on two generative AI models/products (Gemini and Imagen), ten authors and artists, and roughly 30 total works. While Plaintiffs purport to assert claims on behalf of a putative class, that class has not been certified by the Court and, for the reasons Defendants have explained in their pending motion to strike the class allegations in Plaintiffs' operative Complaint (ECF No. 98) and elsewhere, there is no prospect of a viable class here. The fact that no class is likely to be certified strongly affects the proper scope of discovery and the degree of burden that may be imposed on Defendants. The parties accordingly should be focused on discovery to determine whether a class can be certified in this action. As the Court counseled at the Case Management Conference, 'it makes sense to really focus on discovery in terms of what is needed for the class cert to begin with.' CMC Tr. 21:19-21. Defendants' pending motion seeks to hold discovery beyond that in abeyance pending a class certification decision. This Interrogatory ignores the limited scope of the present action—and the Court's clear guidance—in seeking vast quantities of information about agreements that have no discernable relevance to Plaintiffs' claims and for which Plaintiffs have not explained a need to support certification of their proposed class. The burden this Interrogatory imposes on Google is vastly disproportionate to the actual needs of this case and must be narrowed to a reasonable scope.");

k. Google's Responses and Objections to Plaintiff Sarah Andersen's Second Set of Interrogatories ("As it stands, Plaintiffs' case focuses on three generative AI models/products (Bard, Gemini, and Imagen), ten authors and artists, and roughly 30 total works. While Plaintiffs purport to assert claims on behalf of a putative class, that class has

not been certified by the Court and, for the reasons Defendants explained in their motion to strike the class allegations in Plaintiffs' operative Complaint (ECF No. 98) and elsewhere, there is no prospect of a viable class here. The fact that no class is likely to be certified strongly affects the proper scope of discovery and the degree of burden that may be imposed on Defendants. The parties accordingly should be focused on discovery to determine whether a class can be certified in this action. As the Court counseled at the Case Management Conference, and reiterated in its order granting Defendants' motion to strike, 'it makes sense to really focus on discovery in terms of what is needed for the class cert to begin with.' CMC Tr. 21:19-21; *see also* ECF No. 128 at 8 ('[T]he Court instructed Plaintiffs to focus their initial discovery efforts on information that is necessary for class certification.'). This Interrogatory ignores the limited scope of the present action—and the Court's clear guidance—in seeking vast quantities of information about documents and datasets that have no discernable relevance to Plaintiffs' claims and for which Plaintiffs have not explained a need to support certification of their proposed class. The burden this Interrogatory imposes on Google is vastly disproportionate to the actual needs of this case and must be narrowed to a reasonable scope."); and

l.  Google's Responses and Objections to Plaintiff Sarah Andersen's Fourth Set of Interrogatories ("While Plaintiffs purport to assert claims on behalf of a putative class, that class has not been certified by the Court and, for the reasons Google has repeatedly explained (*see, e.g.*, ECF No. 98), there is no prospect of a viable class here. The fact that no class is likely to be certified strongly affects the proper scope of discovery and the degree of burden that may be imposed on Google. This Interrogatory ignores the limited scope of the present action—and the Court's clear guidance—in seeking vast quantities of information about "metadata fields" for data that was not actually used to train the models at issue, that have no discernable relevance to Plaintiffs' claims, and for which Plaintiffs have not explained a need to support certification of their proposed class.").

11.  Attached as **Exhibit 9** is a demonstrative exhibit setting forth the details of discovery in other generative AI copyright cases, including the length of the discovery period, whether discovery was

ordered bifurcated, the number of custodians ordered, parameters for depositions, volume of document production, and orders regarding case schedules, including docket citations.

12.    Attached as **Exhibit 10** is a true and correct copy of excerpts from the rough transcript of the deposition of Jingna Zhang, conducted on February 12, 2026.

13.    Attached as **Exhibit 11** is a true and correct copy of excerpts from the rough transcript of the deposition of Rebecca Santamaria-Fernandez, conducted on February 12, 2026.

14.    Despite Plaintiffs' prompt request on October 15, 2025, Google refused to produce Rebecca Santamaria-Fernandez's custodial files, nor would Google produce her pricing model, financial analyses, or direct communications with publishers.

15.    Plaintiffs met and conferred with counsel for Google about the subject matter of this Motion on February 6, 2026. Google indicated that it would oppose any such extension.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of our knowledge.

Executed this 13th day of February, 2026, at San Francisco, California.

/s/ *Joseph R. Saveri*
Joseph R. Saveri

Executed this 13th day of February, 2026, at Oakland, California.

/s/ *Lesley E. Weaver*
Lesley E. Weaver

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Lesley E. Weaver, attest that concurrence in the filing of this document has been obtained from the other signatories. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of February, 2026, at Oakland, California.

_/s/ Lesley E. Weaver_
Lesley E. Weaver

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| *In re Google Generative AI Copyright Litigation* | Master File Case No. 5:23-cv-03440-EKL-SVK<br>Consolidated Case No. 5:24-cv-02531-EKL-SVK<br><br>**PLAINTIFFS' [PROPOSED] CASE SCHEDULE** |

| EVENT | CURRENT DEADLINES | PLAINTIFFS' PROPOSED NEW DEADLINES |
|---|---|---|
| Hearing on class certification motion | February 20, 2026 | **No Change** |
| Close of fact discovery | February 13, 2026 | **August 12, 2026, or 90 days following issuance of an order on class certification, whichever is sooner** |
| Disclosure of opening expert report(s) on which respective parties have burden of proof (merits issues) | March 11, 2026 | **September 11, 2026 or 30 days from the close of fact discovery, whichever is sooner** |
| Disclosure of responsive expert report(s) (merits issues) | April 22, 2026 | **October 19, 2026, or 90 days following issuance of an order on class certification, whichever is sooner** |
| Disclosure of reply expert report(s) (merits issues) | May 27, 2026 | **November 23, 2026, or 90 days following issuance of an order on class certification, whichever is sooner** |
| Close of expert discovery | June 24, 2026 | **December 21, 2026, or 90 days following issuance of an order on class certification, whichever is sooner** |
| Last day to file summary judgment and *Daubert* motions | July 8, 2026 | **January 4, 2027, or 90 days following issuance of an order on class certification, whichever is sooner** |
| Filing of opposition to summary judgment and *Daubert* motions | 21 days after filing of summary judgment or *Daubert* motion(s), respectively | **N/A (same)** |
| Filing of reply in support of summary judgment and *Daubert* motions | 14 days after filing of opposition to summary judgment or *Daubert* motion(s), respectively | **N/A (same)** |
| Last to hear summary judgment and *Daubert* motions | September 11, 2026 at 1:30 p.m. | **March 10, 2027 at 10:00 a.m., or 90 days following issuance of an order on class certification, whichever is sooner** |
| Final pretrial conference | December 16, 2026 | **June 14, 2027, or 90 days following issuance of an order on class certification, whichever is sooner** |
| Jury trial (est. 10 to 14 days) | January 19, 2027 | **July 18, 2027, or 90 days following issuance of an order on class certification, whichever is sooner** |

# EXHIBIT 2

DAVID H. KRAMER, SBN 168452
Email: dkramer@wsgr.com
MAURA L. REES, SBN 191698
Email: mrees@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300

ERIC P. TUTTLE, SBN 248440
Email: eric.tuttle@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone: (206) 883-2500

PAUL J. SAMPSON, admitted *pro hac vice*
Email: psampson@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
15 West South Temple Gateway Tower West
Suite 1700
Salt Lake City, Utah 84101-1560
Telephone: (801) 401-8510

*Counsel for Defendants*
GOOGLE LLC AND ALPHABET INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| *In re Google Generative AI Copyright Litigation* | Master File Case No.: 5:23-cv-03440-EKL<br>Consolidated with Case No.: 5:24-cv-02531-EKL<br><br>**GOOGLE LLC'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION**<br><br>Judge:   Hon. Eumi K. Lee |

Pursuant to Federal Rules of Civil Procedure 26 and 34 and the Local Rules of the United States District Court for the Northern District of California, Defendant Google LLC ("Google") hereby responds to Plaintiffs Steve Almond, Sarah Andersen, Burl Barer, Jessica Fink, Kirsten Hubbard, Hope Larson, Mike Lemos, Jill Leovy, Connie McLennan, and Jingna Zhang's ("Plaintiffs") First Set of Requests for Production to Defendant Google LLC ("Requests") as follows:

## PRELIMINARY STATEMENT

The following responses are provided subject to all appropriate objections (including, without limitation, objections concerning competency, relevancy, materiality, and propriety) that would require the exclusion of any statement contained herein if the statement were made by a witness present and testifying in court.

In addition, all responses to the Requests are based upon the information presently known to Google. In light of ongoing briefing in this matter, Google requested a modest, mutual two-week extension of time for the parties to prepare their responses to the initial discovery requests served in this action. Plaintiffs refused. Accordingly, the responses are not necessarily as robust as they might have been had Plaintiffs given Google the modest extension. Google expressly reserves the right to revise and supplement its responses to the Requests. A response to a Request shall not be deemed a waiver of any applicable objection or an admission of relevancy.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1. As a threshold matter, the prolixity, nested structure, vagueness, overlap, and overbreadth of the Definitions render interpreting the Requests themselves (let alone drafting responses) an unduly burdensome effort that is disproportionate to the needs of this case.

2. Google objects to Plaintiffs' definition of "Agent" on the grounds that the definition is overbroad, vague and ambiguous, and unduly burdensome. Google further objects to the definition on the grounds that it includes Google's attorneys and requires Google to provide a legal conclusion or to produce information that is protected by any privilege, including the attorney-client privilege, work product immunity doctrine, common interest privilege, or any other applicable privilege, immunity, or restriction on discovery. For purposes of responding to the

Requests, "Agent" will be defined as those authorized agents and employees acting on Google's behalf and within the scope of their agency or employment.

3.     Google objects to Plaintiffs' definition of "AI-Powered Products" as vague and ambiguous. In particular, Plaintiffs' definition is vague and ambiguous in its use of the terms "products," "integrate," "powered by," and "Generative AI Models." Google further objects to this definition as overly broad and unduly burdensome to the extent it encompasses information not relevant to the parties' claims or defenses and would require Google to collect information that is disproportionate to the needs of this case.

4.     Google objects to Plaintiffs' definition of "Alphabet" as overly broad, vague and ambiguous, and unduly burdensome. In particular, Plaintiffs' definition is overly broad because it encompasses not only Alphabet Inc., but also "its corporations, businesses, subsidiaries, divisions, subdivisions, predecessors, successors, parents, and affiliates," as well as "their respective officers, directors, employees, partners, representatives, Agents, attorneys, accountants, or other persons occupying similar positions or performing similar functions." Google further objects to Plaintiffs' definition on the grounds that it includes Google's attorneys and requires Google to provide a legal conclusion or to produce information that is protected by any privilege, including the attorney-client privilege, work product immunity doctrine, common interest privilege, or any other applicable privilege, immunity, or restriction on discovery. For purposes of responding to the Requests, "Alphabet" will be defined as Alphabet Inc. and those authorized agents and employees acting on its behalf and within the scope of their agency or employment.

5.     Google objects to Plaintiffs' definition of the terms "Artificial Intelligence" and "AI" as vague and ambiguous. Google further objects to this definition as overly broad and unduly burdensome to the extent it encompasses information not relevant to the parties' claims or defenses and would require Google to collect information that is disproportionate to the needs of this case.

6.     Google objects to Plaintiffs' definition of "Bard" as vague and ambiguous. In particular, this definition is rendered uncertain by Plaintiff's description of Bard as a "large language model," rather than a chatbot (i.e., a tool that allows users to interface with large language models). Google further objects to this definition, as well as to the definitions of "Gemini" and

"Imagen" (addressed further below), as overly broad and unduly burdensome to the extent it encompasses information not relevant to the parties' claims or defenses and would require Google to collect information that is disproportionate to the needs of this case.

7.      Google objects to Plaintiffs' definition of "Communication" to the extent it exceeds the scope contemplated by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, or other applicable law. Google further objects to Plaintiffs' definition as overly broad and unduly burdensome to the extent it encompasses information not relevant to the parties' claims or defenses and would require Google to collect information that is disproportionate to the needs of this case.

8.      Google objects to Plaintiffs' definition of "Google" as overly broad, vague and ambiguous, and unduly burdensome. In particular, Plaintiffs' definition is overly broad because it encompasses not only Google LLC, but also "its corporations, businesses, subsidiaries, divisions, subdivisions, predecessors, successors, parents, and affiliates," as well as "their respective officers, directors, employees, partners, representatives, Agents, attorneys, accountants, or other persons occupying similar positions or performing similar functions." Google further objects to Plaintiffs' definition on the grounds that it includes Google's attorneys and requires Google to provide a legal conclusion or to produce information that is protected by any privilege, including the attorney-client privilege, work product immunity doctrine, common interest privilege, or any other applicable privilege, immunity, or restriction on discovery. For purposes of responding to the Requests, "Google" will be defined as Google LLC and those authorized agents and employees acting on its behalf and within the scope of their agency or employment.

9.      Google objects to Plaintiffs' page-long, multi-part definition of "Document" to the extent it exceeds the scope contemplated by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, or other applicable law. Google further objects to Plaintiffs' definition as overly broad and unduly burdensome to the extent it encompasses information not relevant to the parties' claims or defenses and would require Google to collect information that is disproportionate to the needs of this case.

10. Google objects to Plaintiffs' definition of "Gemini" as overly broad, vague and ambiguous, and unduly burdensome. Plaintiffs' definition is unduly burdensome and overly broad insofar as it includes "all versions, iterations, and/or model family members" of the Gemini model, regardless of whether Plaintiffs claim that Google infringed their copyrights in training those versions or iterations.

11. Google objects to Plaintiffs' definition of "Identify" as overly broad. As Plaintiffs define it, "Identify" goes far beyond what the normal English language meaning of the word can bear, using multiple subparts to require Google to provide numerous categories of information for each document, entity, or natural person Google identifies. Google further objects to Plaintiffs' definition of "Identify" "with respect to a Document" as duplicative insofar as it seeks information (such as "the Bates number of the Document") that will be provided in the event that Google produces that document. In addition, Google objects to Plaintiffs' definition of "Identify" "with respect to a natural Person" insofar as that definition requires Google to collect information (such as their last known address) that is not relevant to the parties' claims or defenses in this action and is not proportional to the needs of the case. Google further objects to the extent Plaintiffs' definition seeks confidential information relating to third parties or subject to privacy obligations, such as physical addresses. Google further objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

12. Google objects to Plaintiffs' definition of "Imagen" as overly broad, vague and ambiguous, and unduly burdensome. Plaintiffs' definition is unduly burdensome and overly broad insofar as it includes "all versions, iterations, and/or model family members" of the Imagen model, regardless of whether Plaintiffs claim that Google infringed their copyrights in training those versions or iterations.

13. Google objects to the definition of "Image-Text Pair" as vague and ambiguous. In particular, the definition is vague and ambiguous in its use of the terms "dataset element," "corresponding textual description," and "AI models." Google further objects to this definition as overly broad and unduly burdensome to the extent it encompasses information not relevant to the

parties' claims or defenses and would require Google to collect information that is disproportionate to the needs of this case.

14.    Google objects to the definition of "LAION" as overly broad, vague and ambiguous, and unduly burdensome. Google further objects to this definition as overly broad and unduly burdensome to the extent it encompasses information not relevant to the parties' claims or defenses and would require Google to collect information that is disproportionate to the needs of this case.

15.    Google objects to the definition of "LAION Datasets" as overly broad, vague and ambiguous, and unduly burdensome. In particular, the definition is overly broad and unduly burdensome to the extent it encompasses "all" datasets publicly released by LAION and "all" datasets "privately developed" by LAION, regardless of whether they are known to Google or alleged to contain any of the works in suit identified in the Complaint ("Works in Suit"). Google objects to the extent this definition encompasses information not relevant to the parties' claims or defenses and would require Google to collect information that is disproportionate to the needs of this case. Google further objects to this definition to the extent information sought should already be in the possession of Plaintiffs, or is otherwise equally accessible and available to Plaintiffs from other sources (including themselves, the public record, and non-parties).

16.    Google objects to the definition of "LLM" and "large language model" as vague and ambiguous. In particular, the definition is vague and ambiguous in its use of the terms "AI system," "large amounts," and "human-like language." Google further objects to this definition as overly broad and unduly burdensome to the extent it encompasses information not relevant to the parties' claims or defenses and would require Google to collect information that is disproportionate to the needs of this case.

17.    Google objects to the definition of the terms "MLLM" and "multimodal large language model" as vague and ambiguous. Google further objects to this definition as overly broad and unduly burdensome to the extent it encompasses information not relevant to the parties' claims or defenses and would require Google to collect information that is disproportionate to the needs of this case.

18.    Google objects to the definition of "Other Generative AI Models" as overly broad, vague and ambiguous, and unduly burdensome. In particular, the definition is vague, ambiguous, overly broad, and unduly burdensome to the extent it encompasses "all" generative AI models ever "created, maintained, distributed, and/or sold by Google LLC other than Imagen, Bard, and Gemini," including but not limited to "all versions, iterations, and/or model family members" of more than a dozen models, despite the absence of any pleaded connection between those models and Plaintiffs' works. Google further objects to the extent this definition encompasses information not relevant to the parties' claims or defenses and would require Google to collect information that is grossly disproportionate to the needs of this case.

19.    Google objects to the definition of "Person" as vague and ambiguous. In particular, the definition is overly broad, vague and ambiguous, and unduly burdensome insofar as it encompasses "proprietorships, legal or governmental entities, corporations, partnerships, trusts, joint ventures, groups, associations, or organizations," as well as "all affiliates, divisions, controlled companies, subsidiaries, or otherwise related entities and all of his, her, or its current and former officers, directors, employees, agents, representatives, attorneys, and accountants." Google further objects to this definition as overly broad and unduly burdensome to the extent it encompasses information not relevant to the parties' claims or defenses and would require Google to collect information that is disproportionate to the needs of this case. For purposes of responding to the Requests, "Person" will be defined as any natural person.

20.    Google objects to the definition of "Training Data" as vague and ambiguous. In particular, the definition is vague and ambiguous in its use of the terms and phrases "develop," "modify," "AI, machine learning, or deep learning model," "metadata related thereto," "structured and unstructured data," "textual descriptions," and "variation, transformation, and iteration of such data." The definition is also overly broad and unduly burdensome, especially insofar as it encompasses "any" data used to train or test any "AI, machine learning, or deep learning model," regardless of whether that model was developed by Google or by a third party, and regardless of whether Plaintiffs claim that Google infringed their copyrights in the training or testing of that model. The overbreadth of this definition is further exacerbated by Plaintiffs' inclusion of not only

datasets, but also "All datasets, structured and unstructured data, images, audio-visual works, textual descriptions, and metadata" and "each separate variation, transformation, and iteration of such data," in the definition of Training Data. As defined, "Training Data" encompasses information not relevant to the parties' claims or defenses and would require Google to collect information that is grossly disproportionate to the needs of this case.

21.     Google objects to the definition of the terms "You" and "Your" on the grounds that the definition is overbroad, vague and ambiguous, and unduly burdensome. Google further objects to the definition to the extent it seeks information not currently in the possession, custody, or control of Google. Google will respond solely on behalf of itself (Google LLC), and not any other person or entity. Google further objects to the definition on the grounds that it includes Google's attorneys and requires Google to provide a legal conclusion or to produce information that is protected by any privilege, including the attorney-client privilege, work product immunity doctrine, common interest privilege, or any other applicable privilege, immunity, or restriction on discovery. For purposes of responding to the Requests, "You" and "Your" will be defined as Google LLC and those authorized agents and employees acting on its behalf and within the scope of their agency or employment.

22.     Google objects to the Instructions accompanying Plaintiffs' Requests to the extent that such Instructions purport to impose obligations on Google in excess of the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, or any other applicable law, or to the extent that the Instructions purport to require Google to take actions or provide information not required by or which exceed the scope of the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, or any other applicable law.

23.     Google objects to the Instructions insofar as they purport to impose requirements on Google's production of electronically stored information (ESI) before the Parties have agreed to, and before the Court has entered, a protocol governing the production of ESI in this action.

24.     Google objects to the Instruction defining the "Relevant Period" for the Interrogatories as "January 1, 2017 until the Present" to the extent it calls for information that is

beyond the scope of the three-year statute of limitations applicable to Plaintiffs' claims, to the extent it calls for information that post-dates the filing of Plaintiffs' Consolidated Amended Complaint, and/or to the extent it encompasses information not relevant to the parties' claims or defenses. For purposes of responding to the Requests, "Relevant Period" will be defined as July 11, 2020 to December 20, 2024.

## RESPONSES AND OBJECTIONS TO FIRST SET OF REQUESTS FOR PRODUCTION

## DOCUMENT REQUEST NO. 1:

Documents sufficient to identify All persons by department and job description who have participated or are participating in the planning, conception, construction, engineering, design, programming, development, testing, evaluation, benchmarking, testing, pretraining, training, post-training, fine tuning, licensing, marketing, monetization, and/or distribution of Imagen, Bard, and Gemini during the relevant period, Including but not limited to organizational charts.

## RESPONSE TO DOCUMENT REQUEST NO. 1:

Google objects to this Request on the grounds that it is unduly burdensome, overly broad (especially insofar as it demands that Google produce documents sufficient to identify "[a]ll" persons), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms "department," "job description," "have participated or are participating in," "department," "conception," "construction," "design," "post-training," "distribution," "relevant period," "Imagen," "Bard," and "Gemini." Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request on the grounds that it requires Google to create records where it does not do so in the normal course of business. Google also objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Without limiting or waiving the foregoing objections, Google will produce reasonably accessible non-privileged documents located through an inquiry proportionate to the needs of the case, if any, that are sufficient to show the general organization of relevant aspects of Google DeepMind teams and key personnel involved in relevant functionality during a reasonable period of time. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 2:**

The Training Data for Imagen, Bard, and Gemini.

**RESPONSE TO DOCUMENT REQUEST NO. 2:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad, vague and ambiguous, and not proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms "Training Data," "Imagen," "Bard," and "Gemini." Google also objects to this Request because it seeks detailed technical information the aggregation and/or production of which would be highly burdensome in ways that are disproportionate to the legitimate needs of the case. Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. To the extent this Request seeks materials relating to third parties, Google objects on the grounds that the Request calls for information that is not relevant to Plaintiffs' claims, that is not in Google's possession or control, or that is subject to confidentiality agreements with third parties. Google further objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Without limiting or waiving the foregoing objections, Google responds as follows: Google proposed that Plaintiffs direct their attention to one exemplary text model and one exemplary image model, and remains open to discussing that reasonable compromise. Plaintiffs responded with a counter-proposal that Google "prioritize" the production of training data for every iteration of the Imagen, Gemini, and Bard models. While that approach is extremely costly and unworkable, Google remains willing to meet and confer with opposing counsel regarding a reasonable way to make accessible to Plaintiffs a reasonable scope of training data for a representative set of relevant models. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 3:**

The Training Data for any Imagen, Bard, and Gemini model(s) currently in development or developed during the pendency of this litigation.

**RESPONSE TO DOCUMENT REQUEST NO. 3:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad, vague and ambiguous, and not proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms "Training Data," "Imagen, Bard, and Gemini model(s)," "in development," "developed," and "this litigation." Google also objects to this Request as overly broad, unduly burdensome, and premature to the extent this Request seeks training data for models that have not yet been developed. Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

Google further objects to this Request because it seeks detailed technical information the aggregation and/or production of which would be highly burdensome in ways that are disproportionate to the legitimate needs of the case. Google also objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

In addition, Google objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. To the extent this Request seeks materials relating to third parties, Google objects on the grounds that the Request calls for information that is not relevant to Plaintiffs' claims, that is not in Google's possession or control, or that is subject to confidentiality agreements with third parties. Google further objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Google also objects to this Request on the grounds that the information sought by this Request is duplicative of Request No. 2.

Without limiting or waiving the foregoing objections, Google responds as follows: Google proposed that Plaintiffs direct their attention to one exemplary text model and one exemplary image model, and remains open to discussing that reasonable compromise. Plaintiffs responded with a counter-proposal that Google "prioritize" the production of training data for every iteration of the Imagen, Gemini, and Bard models. While that approach is extremely costly and unworkable, Google remains willing to meet and confer with opposing counsel regarding a reasonable way to make accessible to Plaintiffs a reasonable scope of training data for a representative set of relevant models. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 4:**

All Documents and Communications related to Google's internal technical & engineering documentation of Imagen, Bard, and Gemini, including system design, training, deployment, and operations.

**RESPONSE TO DOCUMENT REQUEST NO. 4:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications),

vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms "related to," "technical & engineering documentation of Imagen, Bard, and Gemini," "deployment," and "operations." Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request because it seeks detailed technical information the aggregation and/or production of which would be highly burdensome in ways that are disproportionate to the legitimate needs of the case. Google further objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google also objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. Google further objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Google also objects to this Request on the grounds that the information sought by this Request is duplicative of Request No. 3.

Without limiting or waiving the foregoing objections, Google is willing to meet and confer with Plaintiffs on what of this information is needed to address class certification and a reasonable way to identify and produce that information.

**DOCUMENT REQUEST NO. 5:**

All Documents and Communications related to Google's internal tools used to store, analyze, catalog, and retrieve Training Data.

**RESPONSE TO DOCUMENT REQUEST NO. 5:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or

proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms "related to," "catalog," "retrieve," and "Training Data." Google further objects that seeking discovery into these onerous details imposes burdens on Google that are not proportional to the needs of this case. Google also objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google also objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. Google further objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

**DOCUMENT REQUEST NO. 6:**

All Documents and Communications related to Google's internal data dictionaries, database field descriptions, database field mappings, and developer manuals, including all drafts, concerning Imagen, Bard, and Gemini.

**RESPONSE TO DOCUMENT REQUEST NO. 6:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications and "all" drafts), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms "related to," "data dictionaries, database field descriptions, database field mappings, and developer manuals," "concerning," "Imagen," "Bard," and "Gemini." Google also objects that seeking discovery into these technical and onerous details imposes burdens on Google that are not proportional to the needs of this case. Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. Google also objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Without limiting or waiving the foregoing objections, Google is willing to meet and confer with Plaintiffs on what of this information is needed to address class certification and a reasonable way to identify and produce that information.

**DOCUMENT REQUEST NO. 7:**

Any Documents or Communications related to any research papers published announcing, promoting, or describing Imagen, Bard, and Gemini, including any drafts.

**RESPONSE TO DOCUMENT REQUEST NO. 7:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad (especially insofar as it demands that Google produce "[a]ny" documents or communications, "any" research papers, and "any" drafts), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms and phrases "related to," "research papers published," "Imagen," "Bard," and "Gemini." Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs'

legitimate needs. Google also objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Without limiting or waiving the foregoing objections, Google will produce published research papers that were authored by one or more Google employees during the period of their employment and that expressly discuss Imagen, Bard, or Gemini, to the extent those documents are accessible and can be located through a reasonable inquiry proportionate to the needs of the case. To the extent Plaintiffs believe any further response to this Request is necessary, Google will meet and confer with opposing counsel regarding the extent to which this information is relevant to class certification and an appropriate scope of information to be produced in response to this Request.

**DOCUMENT REQUEST NO. 8:**

All Documents and Communications regarding potential or executed agreements, licenses, partnerships, or collaborations related to the acquisition or sourcing of content or data as Training Data for Imagen, Bard, and Gemini. This Includes negotiations, draft agreements, term sheets, and discussions with third-party data providers, dataset curators, or any other entities involved in providing or facilitating access to such content or data.

**RESPONSE TO DOCUMENT REQUEST NO. 8:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad (especially insofar as it demands that Google produce "all" documents and communications and "any" other entities), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms "regarding," "potential or executed agreements," "partnerships," "collaborations," "related to," "involved in," "Training Data," "Imagen," "Bard," "Gemini," "third-party data providers," "dataset curators," and "entities involved in providing or facilitating access to such content or data." Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. To the extent this Request seeks materials relating to third parties, Google objects on the grounds that the Request calls for information that is not relevant to Plaintiffs' claims, that is not in Google's possession or control, or that is subject to confidentiality agreements with third parties. Google also objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Without limiting or waiving the foregoing objections, once Plaintiffs provide discovery concerning all the ways in which their Works in Suit have been published, distributed, displayed, disseminated, licensed, or otherwise used, Google will produce any license agreements or other authorizations in its possession, custody, or control that it is reasonably able to identify that pertain to Google's ability to use those Works in Suit. To the extent Plaintiffs believe any further response to this Request is necessary, Google will meet and confer with opposing counsel regarding an appropriate scope of information to be produced in response to this Request.

**DOCUMENT REQUEST NO. 9:**

All Documents and Communications related to the "millions of content licenses that authorize Google to use content for purposes of developing its products and services" – or Documents sufficient to establish as much – that Google's counsel mentioned during the Action's Case Management Conference on December 18, 2024.

**RESPONSE TO DOCUMENT REQUEST NO. 9:**

Google objects to this Request, which is vexatious and appears to be designed to harass Google. Google also objects to this Request on the grounds that it is unduly burdensome, overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague and

ambiguous in its use of the terms "related to" and "sufficient to establish." Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action. Google also objects that this Request seeks documents concerning works that have not been identified as Works in Suit.

In addition, Google objects that seeking discovery into these onerous details imposes burdens on Google that are not proportional to the needs of this case. Google further objects to the Request to the extent information sought is already in the possession of the requesting party, or is otherwise equally accessible and available to the requesting party from other sources (including themselves, the public record and non-parties).

Google also objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. To the extent this Request seeks materials relating to third parties, Google objects on the grounds that the Request calls for information that is not relevant to Plaintiffs' claims, that is not in Google's possession or control, or that is subject to confidentiality agreements with third parties. Google further objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

In addition, Google objects to this Request as overbroad to the extent that its expansive scope seeks personal identifying information concerning numerous Google users and may implicate the privacy rights of users who are entitled to protection under various consumer privacy laws in the U.S. and internationally. Affected users should also be afforded an opportunity to object to disclosure of their personal identifying information, and such an opportunity may be required as a matter of law.

Google further objects to this Request on the grounds that the information sought by this Request is duplicative of Request No. 8.

Without limiting or waiving the foregoing objections, once Plaintiffs provide discovery concerning all the ways in which their Works in Suit have been published, distributed, displayed, disseminated, licensed, or otherwise used, Google will produce any license agreements or other authorizations in its possession, custody, or control that it is reasonably able to identify that pertain to Google's ability to use those Works in Suit. To the extent Plaintiffs believe any further response to this Request is necessary, Google will meet and confer with opposing counsel regarding an appropriate scope of information to be produced in response to this Request.

**DOCUMENT REQUEST NO. 10:**

All Documents and Communications concerning the terms of service, user agreement, acceptable use policies, and any other agreements that Google claims is a source of license rights in customer data.

**RESPONSE TO DOCUMENT REQUEST NO. 10:**

Google objects to this Request on the grounds that it is overly broad (especially insofar as it demands that Google produce "all" documents and communications and "any" other agreements), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms and phrases "concerning" and "source of license rights in customer data." Google objects that seeking discovery into these onerous details imposes burdens on Google that are not proportional to the needs of this case. Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action. Google also objects that this Request seeks documents concerning works that have not been identified as Works in Suit.

Google further objects to the Request to the extent information sought is already in the possession of the requesting party, or is otherwise equally accessible and available to the requesting party from other sources (including themselves, the public record and non-parties). Google also objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

In addition, Google objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. To the extent this Request seeks materials relating to third parties, Google objects on the grounds that the Request calls for information that is not relevant to Plaintiffs' claims, that is not in Google's possession or control, or that is subject to confidentiality agreements with third parties. Google further objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Google further objects to this Request as overbroad to the extent that its expansive scope seeks personal identifying information concerning numerous Google users and may implicate the privacy rights of users who are entitled to protection under various consumer privacy laws in the U.S. and internationally. Affected users should also be afforded an opportunity to object to disclosure of their personal identifying information, and such an opportunity may be required as a matter of law.

Google also objects to this Request on the grounds that the information sought by this Request is duplicative of Request Nos. 8 and 9.

Without limiting or waiving the foregoing objections, Google will produce current and historical terms of service for consumer Google services that authorize Google to use customer-provided content, for the period from July 11, 2020 to December 20, 2024, to the extent those documents are reasonably accessible and can be located through an inquiry proportionate to the needs of the case.

**DOCUMENT REQUEST NO. 11:**

All Documents and Communications concerning the inclusion of copyrighted or potentially copyrighted works in datasets used for the development, testing, training, evaluation, benchmarking, or operation of Imagen, Bard, and Gemini. This Includes any discussions or agreements regarding data licensing, as well as any correspondence, contracts, or negotiations related to securing licenses or permissions for the use of such works.

**RESPONSE TO DOCUMENT REQUEST NO. 11:**

Google objects to this Request on the grounds that it is overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications, "any" discussions or agreements, and "any" correspondence), vague, and ambiguous. The Request is vague and ambiguous especially in its use of the terms and phrases "concerning," "inclusion," "potentially copyrighted works," "Imagen," "Bard," "Gemini," "regarding," "related to," and "use of such works." Google also objects that seeking discovery into these onerous details imposes burdens on Google that are not proportional to the needs of this case. Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.  Google objects that this Request seeks documents concerning works that have not been identified as Works in Suit.

In addition, Google objects to the Request to the extent information sought is already in the possession of the requesting party, or is otherwise equally accessible and available to the requesting party from other sources (including themselves, the public record and non-parties). Google also objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. To the extent this Request seeks materials relating to third parties, Google objects on the grounds that the Request calls for information that is not relevant to Plaintiffs' claims, that is not in Google's possession or control, or that is subject to confidentiality agreements with third parties. Google further objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

In addition, Google objects to this Request as overbroad to the extent that its expansive scope seeks personal identifying information concerning numerous Google users and may implicate the privacy rights of users who are entitled to protection under various consumer privacy laws in the U.S. and internationally. Affected users should also be afforded an opportunity to object

to disclosure of their personal identifying information, and such an opportunity may be required as a matter of law.

Google also objects to this Request on the grounds that the information sought by this Request is duplicative of Request Nos. 8, 9, and 10.

Without limiting or waiving the foregoing objections, Google responds as follows: Google proposed that Plaintiffs direct their attention to one exemplary text model and one exemplary image model, and remains open to discussing that reasonable compromise. Plaintiffs responded with a counter-proposal that Google "prioritize" the production of training data for every iteration of the Imagen, Gemini, and Bard models. While that approach is extremely costly and unworkable, Google remains willing to meet and confer with opposing counsel regarding a reasonable way to make accessible to Plaintiffs a reasonable scope of non-privileged information for a representative set of relevant models. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 12:**

All Documents and Communications, Including but not limited to meeting minutes or notes, discussing or reflecting the processes concerning the gathering, collection, scraping of Training Data for the development, training, testing, benchmarking, evaluation, or operation of Imagen, Bard, and Gemini. This Includes any discussions or communications about the legality, ethics, or risks of gathering, collecting, or scraping copyrighted or potentially copyrighted materials.

**RESPONSE TO DOCUMENT REQUEST NO. 12:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications), vague and ambiguous, and not proportional to the needs of the case. The Request is vague and ambiguous especially in its use of the terms "concerning," "Training Data," "Imagen," "Bard," "Gemini," and "potentially copyrighted materials." Google further objects that seeking discovery into these onerous details imposes burdens on Google that are not proportional to the needs of this case. Google also objects to this Request because it calls for the production of materials that are

not needed to determine whether a class can be certified in this action.

Google further objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google also objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. Google further objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Without limiting or waiving the foregoing objections, Google responds as follows: Google proposed that Plaintiffs direct their attention to one exemplary text model and one exemplary image model, and remains open to discussing that reasonable compromise. Plaintiffs responded with a counter-proposal that Google "prioritize" the production of training data for every iteration of the Imagen, Gemini, and Bard models. While that approach is extremely costly and unworkable, Google remains willing to meet and confer with opposing counsel regarding a reasonable way to make accessible to Plaintiffs a reasonable scope of non-privileged information for a representative set of relevant models. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 13:**

All Documents and Communications concerning the processes, methodologies, or procedures for collecting, organizing, curating, preprocessing, or annotating the Training Data used or considered for use in Imagen, Bard, and Gemini. This Includes records regarding decisions on data selection, filtering, usage of classifiers (for detection of copyrighted material), exclusion, augmentation, labeling; change-logs and programming notes (in a machine-readable format) reflecting the implementation of such decisions; and any involvement of third-party services, tools, or contractors in these processes.

**RESPONSE TO DOCUMENT REQUEST NO. 13:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad

(especially insofar as it demands that Google produce "[a]ll" documents and communications), vague and ambiguous, and not proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms "concerning," "regarding," "Training Data used or considered for use in Imagen, Bard, and Gemini," "change-logs and programming notes (in a machine-readable format)," "reflecting the implementation of such decisions," and "involvement." Google also objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. To the extent this Request seeks materials relating to third parties, Google objects on the grounds that the Request calls for information that is not relevant to Plaintiffs' claims, that is not in Google's possession or control, or that is subject to confidentiality agreements with third parties. Google also objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Google further objects to this Request on the grounds that the information sought by this Request is duplicative of Request No. 12.

Without limiting or waiving the foregoing objections, Google responds as follows: Google proposed that Plaintiffs direct their attention to one exemplary text model and one exemplary image model, and remains open to discussing that reasonable compromise. Plaintiffs responded with a counter-proposal that Google "prioritize" the production of training data for every iteration of the Imagen, Gemini, and Bard models. While that approach is extremely costly and unworkable, Google remains willing to meet and confer with opposing counsel regarding a reasonable way to make accessible to Plaintiffs a reasonable scope of non-privileged information for a representative set of relevant models. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information,

including as to class certification.

**DOCUMENT REQUEST NO. 14:**

All Documents and Communications concerning or with LAION, Including any Documents and Communications regarding its operations, data practices, collaborations, or funding. This Includes any internal or external discussions, agreements, or analyses related to LAION's sources of funding, financial backers, sponsorships, or support, and any involvement or influence by You or third parties in LAION's activities.

**RESPONSE TO DOCUMENT REQUEST NO. 14:**

Google objects to this Request on the grounds that it is overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications and documents concerning "any" discussions and involvement), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms "concerning," "LAION," "regarding," "data practices," "collaborations," "analyses," "related to," "support," "involvement," "influence," and "activities." Google also objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

Google further objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

To the extent this Request seeks materials relating to third parties, Google objects on the grounds that the Request calls for information that is not relevant to Plaintiffs' claims, that is not in Google's possession or control, or that is subject to confidentiality agreements with third parties. Google further objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Without limiting or waiving the foregoing objections, Google will produce non-privileged communications with LAION that directly discuss the use of LAION datasets for training by Google, if any, insofar as those communications can be located through a reasonable inquiry proportionate to the needs of the case, and are with any of six persons Plaintiffs identify by name as associated with the organization they call LAION. To the extent Plaintiffs believe any further

response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 15:**

All Documents and Communications concerning the LAION-400M dataset, Including any research, due diligence, or investigation conducted regarding its contents, quality, sources, or legality. This Includes any assessments, analyses, or discussions about the dataset's inclusion of copyrighted or sensitive material, and any internal or external reports, reviews, or evaluations performed prior to, during, or after its use in training Imagen and/or Gemini.

**RESPONSE TO DOCUMENT REQUEST NO. 15:**

Google objects to this Request on the grounds that it is overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications and "any" research, assessments, and reports), vague and ambiguous, and not proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms "concerning," "regarding," "analyses," "inclusion," "sensitive material," and "reviews." Google also objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

Google further objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

In addition, Google objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. Google further objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Without limiting or waiving the foregoing objections, Google will produce non-privileged documents and communications that directly discuss use of the LAION-400M dataset for training by Google, if any, insofar as those documents and communications can be located through a reasonable inquiry proportionate to the needs of the case and insofar as those documents and

communications concern Imagen, Bard, or Gemini. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 16:**

All Documents and Communications concerning Your storage, handling, or any reproduction You made of any of the Image-Text Pairs linked in the LAION-5B dataset, whether in physical or digital form. This Includes any reproductions, copies, or downloads made using LAION's image2dataset tool or any other tool, as well as any logs, records, or databases tracking such reproductions or the locations where they were stored.

**RESPONSE TO DOCUMENT REQUEST NO. 16:**

Google objects to this Request on the grounds that it is overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications concerning "any" reproductions, copies, or downloads), vague, and ambiguous. In particular, the Request is vague and ambiguous in its use of the terms and phrases "concerning," "handling," "tracking," and "any of the Image-Text Pairs linked in the LAION-5B dataset." Google objects that this Request is unduly burdensome, overly broad, and grossly disproportionate to the needs of this case insofar as it seeks any document or communication concerning the storage, handling, or reproduction of any of the billions of "Image-Text Pairs" in the LAION-5B dataset. Google also objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request because it seeks detailed technical information the aggregation and/or production of which would be highly burdensome in ways that are disproportionate to the legitimate needs of the case. Google further objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google also objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs'

legitimate needs. Google further objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Without limiting or waiving the foregoing objections, Google will produce reasonably accessible non-privileged documents and communications that directly discuss use of the LAION-5B dataset for training by Google, if any, insofar as those documents and communications can be located through an inquiry proportionate to the needs of the case and insofar as those documents and communications concern Imagen, Bard, or Gemini. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 17:**

All Documents and Communications concerning any other dataset used to train Imagen, Bard, and Gemini, Including any research, due diligence, or investigation conducted regarding its creation, contents, quality, sources, or legality. This Includes any assessments, analyses, or discussions about the dataset's inclusion of copyrighted or sensitive material, and any internal or external reports, reviews, or evaluations performed prior to, during, or after its use in training Imagen, Bard, and Gemini.

**RESPONSE TO DOCUMENT REQUEST NO. 17:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications and "any" other dataset, research, assessments, and reports), vague and ambiguous, and not proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms "concerning," "regarding," "any other dataset," "inclusion," "sensitive material," "Imagen," "Bard," and "Gemini." Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Without limiting or waiving the foregoing objections, Google responds as follows:

Google proposed that Plaintiffs direct their attention to one exemplary text model and one exemplary image model, and remains open to discussing that reasonable compromise. Plaintiffs responded with a counter-proposal that Google "prioritize" the production of training data for every iteration of the Imagen, Gemini, and Bard models. While that approach is extremely costly and unworkable, Google remains willing to meet and confer with opposing counsel regarding a reasonable way to make accessible to Plaintiffs a reasonable scope of non-privileged information for a representative set of relevant models. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 18:**

All Documents and Communications concerning any discussions, analyses, assessments, or evaluations regarding whether any Training Data used in training Imagen, Bard, and Gemini might violate the laws of any jurisdiction. This Includes internal or external risk assessments, compliance reviews, audits, and any other documents addressing potential violations of copyright, privacy, or data protection laws.

**RESPONSE TO DOCUMENT REQUEST NO. 18:**

Google objects to this Request on the grounds that it is overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms "concerning," "regarding," "Training Data" "addressing," "potential violations of copyright, privacy, or data protection laws," "Imagen," "Bard," and "Gemini." Google also objects that this Request is significantly overbroad insofar as it seeks documents concerning "the laws of any jurisdiction" and "potential violations of copyright, privacy, or data protection laws." Plaintiffs solely assert copyright claims under U.S. law and, insofar as this Request seeks documents that concern non-U.S. law, privacy laws, and/or data protection laws, Google objects that it is not relevant to the claims in the Complaint or any party's defenses. Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be

certified in this action.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Without limiting or waiving the foregoing objections, Google responds as follows: Google proposed that Plaintiffs direct their attention to one exemplary text model and one exemplary image model, and remains open to discussing that reasonable compromise. Plaintiffs responded with a counter-proposal that Google "prioritize" the production of training data for every iteration of the Imagen, Gemini, and Bard models. While that approach is extremely costly and unworkable, Google remains willing to meet and confer with opposing counsel regarding a reasonable way to make accessible to Plaintiffs a reasonable scope of non-privileged information for a representative set of relevant models. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 19:**

All Documents and Communications concerning any licensing, accreditation, attribution mechanism, or similar tool for crediting or compensating owners of images used in the Training Data for Imagen, Bard, and Gemini. This Includes any efforts, discussions, or initiatives regarding obtaining permission, consent, or legal authorization from copyright holders (Including publishers or collective licensing organizations) to include their works in Training Data, and any analyses, evaluations, or implementation plans related to compensating or recognizing those copyright holders.

**RESPONSE TO DOCUMENT REQUEST NO. 19:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms and phrases "concerning," "licensing, accreditation, attribution mechanism, or similar tool," "images used in the Training Data," "regarding," "include their works in Training

Data," "related to," "compensating," "recognizing," "Imagen," "Bard," and "Gemini." Google also objects that this Request is significantly overbroad insofar as it is not limited to mechanisms or tools created, considered, or used by Google. Google also objects that seeking discovery into these onerous details imposes burdens on Google that are not proportional to the needs of this case. Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action. In addition, Google objects that this Request seeks documents concerning works that have not been identified as Works in Suit.

Google further objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google also objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. To the extent this Request seeks materials relating to third parties, Google objects on the grounds that the Request calls for information that is not relevant to Plaintiffs' claims, that is not in Google's possession or control, or that is subject to confidentiality agreements with third parties. Google further objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Google also objects to this Request on the grounds that the information sought by this Request is duplicative of Request Nos. 8, 9, 10, and 11.

**DOCUMENT REQUEST NO. 20:**

All Documents and Communications, Including Slack messages, internal chat logs, change-logs, meeting notes, reports, or any other records, concerning the potential or actual use of copyrighted or potentially copyrighted materials without authorization as Training Data in the development, training, testing, evaluation, benchmarking, or operation of Imagen, Bard, and Gemini. This Includes discussions regarding the sourcing, acquisition, scraping, or use of data containing copyrighted materials and the decision-making processes related to whether such use

was authorized or required authorization.

**RESPONSE TO DOCUMENT REQUEST NO. 20:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications), vague and ambiguous, and not proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms "chat logs," "concerning," "potential or actual use of copyrighted or potentially copyrighted materials," "Training Data," "regarding," "Imagen," "Bard," "Gemini," "related to," and "use of data." Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both. Google also objects to the extent that this Request calls for a legal conclusion as to any "actual use" that was made "without authorization," which is not a proper subject of fact discovery.

Google further objects to this Request on the grounds that the information sought by this Request is duplicative of Request Nos. 11, 12, 15, and 17.

Without limiting or waiving the foregoing objections, Google will produce public statements by Google concerning copyright issues and generative AI that appear: on Google's official blog, in transcripts of testimony before the U.S. Congress, and in public comments submitted to the U.S. Copyright Office, if any. To the extent Plaintiffs believe any further response to this Request is necessary, Google will meet and confer with opposing counsel regarding relevance to class certification and an appropriate scope of information to be produced in response to this Request.

**DOCUMENT REQUEST NO. 21:**

All Documents and Communications concerning the creation, development, or modification of policies, procedures, or guidelines intended to ensure compliance with copyright laws in the use of data for training Imagen, Bard, and Gemini. This Includes training manuals, internal policy documents, or communications about how Google's copyright compliance

framework evolved over time.

**RESPONSE TO DOCUMENT REQUEST NO. 21:**

Google objects to this Request on the grounds that it is overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications), vague, and ambiguous. In particular, the Request is vague and ambiguous in its use of the terms "concerning," "intended to ensure compliance," "copyright laws," and "copyright compliance framework." Google also objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

Google further objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Without limiting or waiving the foregoing objections, Google responds as follows: Google proposed that Plaintiffs direct their attention to one exemplary text model and one exemplary image model, and remains open to discussing that reasonable compromise. Plaintiffs responded with a counter-proposal that Google "prioritize" the production of training data for every iteration of the Imagen, Gemini, and Bard models. While that approach is extremely costly and unworkable, Google remains willing to meet and confer with opposing counsel regarding a reasonable way to make accessible to Plaintiffs a reasonable scope of non-privileged information for a representative set of relevant models. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 22:**

All Documents and Communications reflecting Your evaluation, analysis, and decision-making process regarding the open source status of its AI models Imagen, Bard, and Gemini, including: (1) internal discussions and analyses concerning which components or versions of these models to make open source; and (2) documents relating to the development and release of Gemma.

**RESPONSE TO DOCUMENT REQUEST NO. 22:**

Google objects to this Request on the grounds that it is overly broad (especially insofar as

it demands that Google produce "[a]ll" documents and communications), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms "decision-making process," "open source status," "regarding," "components," "versions," "Gemma," "Imagen," "Bard," and "Gemini." Google further objects that this Request is compound to the extent that it contains multiple sub-parts. Google also objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. Google also objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Without limiting or waiving the foregoing objections, Google is willing to meet and confer with Plaintiffs on the relevance of this information, including as to class certification.

**DOCUMENT REQUEST NO. 23:**

All Documents and Communications sufficient to show the commercialization and/or monetization of Imagen, Bard, and Gemini, Including but not limited to any discussions of strategy to derive profit or revenue from Imagen, Bard, and Gemini.

**RESPONSE TO DOCUMENT REQUEST NO. 23:**

Google objects to this Request on the grounds that it is overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications and documents concerning "any" discussions), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses. In particular, the Request is vague and ambiguous in its use of the terms "commercialization," "Imagen," "Bard," and "Gemini." Google also objects to this Request because it calls for the production of materials that are not needed to determine whether a class

can be certified in this action.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. Google also objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

**DOCUMENT REQUEST NO. 24:**

All Documents and Communications concerning Imagen's, Bard's, and Gemini's ability to regurgitate, mimic, imitate, or otherwise copy any particular artists' and/or author's artwork, technique, voice, and/or style. This Includes any analyses, evaluations, and testing (in a machine-readable format), and discussions about Imagen's, Bard's, and/or Gemini's capability to generate outputs resembling specific artists' and/or author's works, as well as any concerns, complaints, or feedback regarding potential copyright infringement, artistic replication, or unauthorized reproduction of distinctive artistic and/or expressive elements.

**RESPONSE TO DOCUMENT REQUEST NO. 24:**

Google objects to this Request on the grounds that it is overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications and "any" analyses and concerns), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms and phrases "concerning," "technique," "voice," "style," "regarding," "potential copyright infringement," and "artistic replication," "Imagen," "Bard," and "Gemini." Google objects to this Request because it calls for information, especially related to "output[]" that is not relevant to the claims in the Complaint or any party's defenses. Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action. Google also objects that this Request seeks documents concerning works that have not been identified as Works in Suit.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both. Google further objects to the extent that this Request calls for a legal conclusion as to "unauthorized reproduction of distinctive artistic and/or expressive elements," which is not a proper subject of fact discovery.

Google further objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. Google also objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

In addition, Google objects to this Request as overbroad to the extent that its expansive scope seeks personal identifying information concerning numerous Google users and may implicate the privacy rights of users who are entitled to protection under various consumer privacy laws in the U.S. and internationally. Affected users should also be afforded an opportunity to object to disclosure of their personal identifying information, and such an opportunity may be required as a matter of law.

Without limiting or waiving the foregoing objections, Google will produce accessible non-privileged documents located through a reasonable inquiry proportionate to the needs of the case, if any, that are sufficient to show the operation of Google's technological measures that are intended to limit the appearance of training data in the output of Gemini, Bard, and Imagen. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 25:**

All Documents and Communications concerning any post-launch monitoring, review, or analysis of Imagen, Bard, and Gemini output for unauthorized use of copyrighted or potentially copyrighted material, Including but not limited to any detection of any regurgitation or outputting of identical or near-identical images or text to any copyrighted image or text contained in the Training Data of Imagen.

**RESPONSE TO DOCUMENT REQUEST NO. 25:**

Google objects to this Request on the grounds that it is overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications and documents concerning "any" monitoring), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses. In particular, the Request is vague and ambiguous in its use of the terms "concerning," "potentially copyrighted material," "near-identical images or text," "Training Data," "Imagen," "Bard," and "Gemini." Google also objects to this Request because it calls for information, especially related to "output" that is not relevant to the claims in the Complaint or any party's defenses. Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action. Google also objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both. Google further objects to the extent that this Request calls for a legal conclusion as to "unauthorized use," which is not a proper subject of fact discovery.

Google also objects that this Request assumes a factual predicate for which there is no record support at this time, namely that all "Imagen, Bard, and Gemini" models launched.

Without limiting or waiving the foregoing objections, Google will produce accessible non-privileged documents located through a reasonable inquiry proportionate to the needs of the case, if any, that are sufficient to show the operation of Google's technological measures that are intended to limit the appearance of training data in the output of Gemini, Bard, and Imagen. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 26:**

Documents sufficient to identify Imagen's, Bard's, and Gemini's anticipated revenue, actual revenue, profit generation and/or financial projection from their distribution, sale, and/or

licensing.

**RESPONSE TO DOCUMENT REQUEST NO. 26:**

Google objects to this Request on the grounds that it is overly broad, vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses. In particular, the Request is vague and ambiguous in its use of the terms "Imagen's," "Bard's," and "Gemini's." Google also objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

Google further objects to this Request on the grounds that it requires Google to create records where it does not do so in the normal course of business. Google also objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to this Request on the grounds that the information sought by this Request is duplicative of Request No. 23.

Without limiting or waiving the foregoing objections, Google will produce Alphabet Inc.'s Form 10-Q reports, Form 10-K reports, earnings releases, and transcripts of earnings calls for the period from July 11, 2020 to December 20, 2024. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 27:**

All Documents and Communications that mention, name, discuss, reference, or otherwise identify any of the Plaintiffs, Including but not limited to references to their copyrighted works, images, or any content associated with them.

**RESPONSE TO DOCUMENT REQUEST NO. 27:**

Google objects to this Request on the grounds that it is overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs

of the case. In particular, the Request is vague and ambiguous in its use of the terms "otherwise identify" and "any content associated with them." Google further objects that this Request is compound to the extent that it contains multiple sub-parts (especially in its use of "Including" to expand the scope of the Request). Google also objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

Google further objects to the Request to the extent information sought is already in the possession of the requesting party, or is otherwise equally accessible and available to the requesting party from other sources (including themselves, the public record, and non-parties).

Google also objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to this Request as overbroad to the extent that its expansive scope seeks personal identifying information concerning numerous Google users and may implicate the privacy rights of users who are entitled to protection under various consumer privacy laws in the U.S. and internationally. Affected users should also be afforded an opportunity to object to disclosure of their personal identifying information, and such an opportunity may be required as a matter of law.

Without limiting or waiving the foregoing objections, to the extent the named Plaintiffs have used or uploaded content to Google services, Google will produce accessible non-privileged documents located through a reasonable inquiry proportionate to the needs of the case that show the named Plaintiffs' use of Google services, once Plaintiffs have provided identifying information for their Google accounts.

**DOCUMENT REQUEST NO. 28:**

All Documents and Communications, Including training logs, version histories, changelogs, or other records, showing updates, modifications, or changes made to Imagen, Bard, and Gemini such as but not limited to git repository commit messages, pull requests, code base, and magnet links. This Includes records of any changes implemented to address, mitigate, or avoid potential copyright infringement, as well as documentation of decisions made based on those concerns.

**RESPONSE TO DOCUMENT REQUEST NO. 28:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague in its use of the terms "updates, modifications, or changes made to Imagen, Bard, and Gemini." Google also objects to this Request because it seeks detailed technical information the aggregation and/or production of which would be highly burdensome in ways that are disproportionate to the legitimate needs of the case. Google also objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action. Google objects to this Request to the extent that it seeks information concerning alleged infringements that Plaintiffs have failed to identify.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. Google also objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Without limiting or waiving the foregoing objections, Google responds as follows: Google proposed that Plaintiffs direct their attention to one exemplary text model and one exemplary image model, and remains open to discussing that reasonable compromise. Plaintiffs responded with a counter-proposal that Google "prioritize" the production of training data for every iteration of the Imagen, Gemini, and Bard models. While that approach is extremely costly and unworkable, Google remains willing to meet and confer with opposing counsel regarding a reasonable way to make accessible to Plaintiffs a reasonable scope of non-privileged information for a representative set of relevant models. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information,

including as to class certification.

**DOCUMENT REQUEST NO. 29:**

All Documents and Communications sufficient to show the development, evaluation, testing, or integration of content management or filtering systems (e.g., YouTube Content ID) for Imagen, Bard, and Gemini.

**RESPONSE TO DOCUMENT REQUEST NO. 29:**

Google objects to this Request on the grounds that it is overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague in its use of the phrase "content management or filtering systems" and the terms "Imagen," "Bard," and "Gemini." Google also objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. Google also objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Without limiting or waiving the foregoing objections, Google is willing to produce accessible non-privileged documents located through a reasonable inquiry proportionate to the needs of the case, if any, that are sufficient to show the operation of Google's technological measures that are intended to limit the appearance of training data in the output of Gemini, Bard, and Imagen. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 30:**

All Documents and Communications concerning the Infiniset dataset, Including any research, due diligence, or investigation conducted regarding its creation, contents, quality, sources, or legality. This Includes any assessments, analyses, or discussions about the dataset's inclusion of copyrighted or sensitive material, and any internal or external reports, reviews, or evaluations performed prior to, during, or after its use in training Imagen, Bard, and Gemini.

**RESPONSE TO DOCUMENT REQUEST NO. 30:**

Google objects to this Request on the grounds that it is overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications and "any" assessments and reports), vague, and ambiguous. In particular, the Request is vague and ambiguous in its use of the terms "concerning," "regarding," "inclusion," "sensitive material," "Imagen," "Bard," and "Gemini." Google objects to this Request because it calls for information concerning "Infiniset" that is not relevant to the claims in the Complaint or any party's defenses. Google also objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects that this Request assumes a factual predicate for which there is no record support at this time, namely that the Infiniset dataset was "use[d] in training Imagen, Bard, and Gemini."

Without limiting or waiving the foregoing objections, Google will produce accessible non-privileged documents and communications that directly discuss use of the Infiniset dataset for training by Google, if any, insofar as those documents and communications can be located through a reasonable inquiry proportionate to the needs of the case and insofar as those documents and communications concern use in Imagen, Bard, or Gemini. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 31:**

All Documents and Communications concerning the C4 dataset, Including any research, due diligence, or investigation conducted regarding its creation, contents, quality, sources, or legality. This Includes any assessments, analyses, or discussions about the dataset's inclusion of copyrighted or sensitive material, and any internal or external reports, reviews, or evaluations performed prior to, during, or after its use in training Imagen, Bard, and Gemini.

**RESPONSE TO DOCUMENT REQUEST NO. 31:**

Google objects to this Request on the grounds that it is overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications, and "any" research, assessments, and reports), vague, and ambiguous. In particular, the Request is vague and ambiguous in its use of the terms "concerning," "regarding," "inclusion," "sensitive material," "Imagen," "Bard," and "Gemini." Google also objects to this Request because it calls for information concerning "C4" that is not relevant to the claims in the Complaint or any party's defenses. Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects that this Request assumes a factual predicate for which there is no record support at this time, namely that the C4 dataset was "use[d] in training Image, Bard, and Gemini."

Without limiting or waiving the foregoing objections, Google will produce accessible non-privileged documents and communications that directly discuss use of the C4 dataset for training by Google, if any, insofar as those documents and communications can be located through a reasonable inquiry proportionate to the needs of the case and insofar as those documents and communications concern use in Imagen, Bard, or Gemini. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 32:**

All Documents and Communications concerning any dataset created by Common Crawl, Including any research, due diligence, or investigation conducted regarding its contents, quality, sources, or legality. This Includes any assessments, analyses, or discussions about the dataset's inclusion of copyrighted or sensitive material, and any internal or external reports, reviews, or evaluations performed prior to, during, or after its use in training Imagen, Bard, and Gemini.

**RESPONSE TO DOCUMENT REQUEST NO. 32:**

Google objects to this Request on the grounds that it is overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications), vague, and ambiguous. In particular, the Request is vague and ambiguous in its use of the terms "concerning," "regarding," "inclusion," "sensitive material," "Imagen," "Bard," and "Gemini." Google also objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

To the extent this Request seeks materials relating to third parties, Google objects on the grounds that the Request calls for information that is not relevant to Plaintiffs' claims, that is not in Google's possession or control, or that is subject to confidentiality agreements with third parties. Google further objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Google also objects that this Request assumes a factual predicate for which there is no record support at this time, namely that a "dataset created by Common Crawl" was "use[d] in training Image, Bard, and Gemini."

Without limiting or waiving the foregoing objections, Google is willing to meet and confer with Plaintiffs on what of this information is needed to address class certification and a reasonable way to identify and produce that information.

**_Requests for production related to the Other Generative AI Models_**

**DOCUMENT REQUEST NO. 33:**

The Training Data for the Other Generative AI Models.

**RESPONSE TO DOCUMENT REQUEST NO. 33:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad, vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms "Training Data" and "Other Generative AI Models." Google also objects to this Request because it seeks detailed technical information the aggregation and/or production of which would be highly burdensome in ways that are disproportionate to the legitimate needs of the case. Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. To the extent this Request seeks materials relating to third parties, Google objects on the grounds that the Request calls for information that is not relevant to Plaintiffs' claims, that is not in Google's possession or control, or that is subject to confidentiality agreements with third parties. Google further objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Google also objects to this Request on the grounds that the information sought by this Request is duplicative of Request Nos. 2 and 3.

Without limiting or waiving the foregoing objections, Google responds as follows: Google proposed that Plaintiffs direct their attention to one exemplary text model and one exemplary image model, and remains open to discussing that reasonable compromise. Plaintiffs responded with a counter-proposal that Google "prioritize" the production of training data for every iteration

of the Imagen, Gemini, and Bard models. While that approach is extremely costly and unworkable, Google remains willing to meet and confer with opposing counsel regarding a reasonable way to make accessible to Plaintiffs a reasonable scope of training data for a representative set of relevant models. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 34:**

The Training Data for any Other Generative AI Models currently in-development or developed during the pendency of this litigation.

**RESPONSE TO DOCUMENT REQUEST NO. 34:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad, vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms "Training Data," "Other Generative AI Models," "in development," "developed," and "this litigation." Google also objects to this Request as overly broad, unduly burdensome, and premature to the extent this Request seeks training data for models that have not yet been developed. Google also objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

Google further objects to this Request because it seeks detailed technical information the aggregation and/or production of which would be highly burdensome in ways that are disproportionate to the legitimate needs of the case. Google further objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google also objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. To the extent this Request seeks materials relating to third parties, Google objects on the grounds that the Request calls for information that is not relevant to Plaintiffs' claims, that

is not in Google's possession or control, or that is subject to confidentiality agreements with third parties. Google further objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Google also objects to this Request on the grounds that the information sought by this Request is duplicative of Request Nos. 2, 3, and 33.

Without limiting or waiving the foregoing objections, Google responds as follows: Google proposed that Plaintiffs direct their attention to one exemplary text model and one exemplary image model, and remains open to discussing that reasonable compromise. Plaintiffs responded with a counter-proposal that Google "prioritize" the production of training data for every iteration of the Imagen, Gemini, and Bard models. While that approach is extremely costly and unworkable, Google remains willing to meet and confer with opposing counsel regarding a reasonable way to make accessible to Plaintiffs a reasonable scope of training data for a representative set of relevant models. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 35:**

All Documents and Communications related to Google's internal technical & engineering documentation of the Other Generative AI Models, including system design, training, deployment, and operations.

**RESPONSE TO DOCUMENT REQUEST NO. 35:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms and phrases "related to," "technical & engineering documentation of the Other Generative AI Models," "deployment," and "operations." Google also objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request because it seeks detailed technical information the aggregation and/or production of which would be highly burdensome in ways that are disproportionate to the legitimate needs of the case. Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. Google also objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Google further objects to this Request on the grounds that the information sought by this Request is duplicative of Request Nos. 3 and 4.

Without limiting or waiving the foregoing objections, Google is willing to meet and confer with Plaintiffs on what of this information is needed to address class certification and a reasonable way to identify and produce that information.

**DOCUMENT REQUEST NO. 36:**

All Documents and Communications related to Google's internal data dictionaries, database field descriptions, database field mappings, and developer manuals, including all drafts, concerning the Other Generative AI Models.

**RESPONSE TO DOCUMENT REQUEST NO. 36:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications and "all" drafts), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms and phrases "related to," "data dictionaries, database field descriptions, database field mappings, and developer manuals," "concerning," and "Other Generative AI Models." Google also objects that seeking discovery into these technical and onerous details imposes burdens on Google that are not proportional to the needs of this case. Google objects to

this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. Google also objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Google further objects to this Request on the grounds that the information sought by this Request is duplicative of Request No. 6.

Without limiting or waiving the foregoing objections, Google is willing to meet and confer with Plaintiffs on what of this information is needed to address class certification and a reasonable way to identify and produce that information.

**DOCUMENT REQUEST NO. 37:**

Any Documents or Communications related to any research papers published announcing, promoting, or describing the Other Generative AI Models, including any drafts.

**RESPONSE TO DOCUMENT REQUEST NO. 37:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad (especially insofar as it demands that Google produce "[a]ny" documents or communications, "any" research papers, and "any" drafts), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms and phrases "related to," "Other Generative AI Models," and "research papers published." Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google also objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. Google further objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

In addition, Google objects to this Request on the grounds that the information sought by this Request is duplicative of Request No. 7.

Without limiting or waiving the foregoing objections, Google will produce published research papers that were authored by one or more Google employees during the period of their employment and that expressly discuss Imagen, Bard, or Gemini, to the extent those documents are accessible and can be located through a reasonable inquiry proportionate to the needs of the case. To the extent Plaintiffs believe any further response to this Request is necessary, Google will meet and confer with opposing counsel regarding the extent to which this information is relevant to class certification and an appropriate scope of information to be produced in response to this Request.

**DOCUMENT REQUEST NO. 38:**

All Documents and Communications regarding potential or executed agreements, licenses, partnerships, or collaborations related to the acquisition or sourcing of content or data as Training Data for the Other Generative AI Models. This Includes negotiations, draft agreements, term sheets, and discussions with third-party data providers, dataset curators, or any other entities involved in providing or facilitating access to such content or data.

**RESPONSE TO DOCUMENT REQUEST NO. 38:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad (especially insofar as it demands that Google produce "all" documents and communications and "any" other entities), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms and phrases "regarding," "potential or executed agreements," "partnerships," "collaborations," "related to," "involved in," "Training Data," "third-party data

providers," "dataset curators," "entities involved in providing or facilitating access to such content or data," and "Other Generative AI Models." Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. To the extent this Request seeks materials relating to third parties, Google objects on the grounds that the Request calls for information that is not relevant to Plaintiffs' claims, that is not in Google's possession or control, or that is subject to confidentiality agreements with third parties. Google also objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Google further objects to this Request on the grounds that the information sought by this Request is duplicative of Request No. 8.

Without limiting or waiving the foregoing objections, once Plaintiffs provide discovery concerning all the ways in which their Works in Suit have been published, distributed, displayed, disseminated, licensed, or otherwise used, Google will produce any license agreements or other authorizations in its possession, custody, or control that it is reasonably able to identify that pertain to Google's ability to use those Works in Suit. To the extent Plaintiffs believe any further response to this Request is necessary, Google will meet and confer with opposing counsel regarding an appropriate scope of information to be produced in response to this Request.

**DOCUMENT REQUEST NO. 39:**

All Documents and Communications regarding potential or executed agreements, licenses, partnerships, or collaborations related to the acquisition or sourcing of content or data as Training Data for the Other Generative AI Models. This Includes negotiations, draft agreements, term

sheets, and discussions with third-party data providers, dataset curators, or any other entities involved in providing or facilitating access to such content or data.

**RESPONSE TO DOCUMENT REQUEST NO. 39:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad (especially insofar as it demands that Google produce "all" documents and communications and "any" other entities), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms and phrases "regarding," "potential or executed agreements," "partnerships," "collaborations," "related to," "involved in," "Training Data," "third-party data providers," "dataset curators," "entities involved in providing or facilitating access to such content or data," and "Other Generative AI Models." Google also objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. To the extent this Request seeks materials relating to third parties, Google objects on the grounds that the Request calls for information that is not relevant to Plaintiffs' claims, that is not in Google's possession or control, or that is subject to confidentiality agreements with third parties. Google further objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

In addition, Google objects to this Request on the grounds that the information sought by this Request is duplicative of Request Nos. 8 and 38.

Without limiting or waiving the foregoing objections, once Plaintiffs provide discovery concerning all the ways in which their Works in Suit have been published, distributed, displayed, disseminated, licensed, or otherwise used, Google will produce any license agreements or other

authorizations in its possession, custody, or control that it is reasonably able to identify that pertain to Google's ability to use those Works in Suit. To the extent Plaintiffs believe any further response to this Request is necessary, Google will meet and confer with opposing counsel regarding an appropriate scope of information to be produced in response to this Request.

**DOCUMENT REQUEST NO. 40:**

All Documents and Communications concerning the inclusion of copyrighted or potentially copyrighted works in datasets used for the development, testing, evaluation, benchmarking, training, or operation of the Other Generative AI Models. This Includes any discussions or agreements regarding data licensing, as well as any correspondence, contracts, or negotiations related to securing licenses or permissions for the use of such works.

**RESPONSE TO DOCUMENT REQUEST NO. 40:**

Google objects to this Request on the grounds that it is overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications, "any" discussions or agreements, and "any" correspondence), vague, and ambiguous. In particular, the Request is vague and ambiguous in its use of the terms "concerning," "inclusion," "potentially copyrighted works," "regarding," "related to," "use of such works," and "Other Generative AI Models." Google also objects that seeking discovery into these onerous details imposes burdens on Google that are not proportional to the needs of this case. Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action. Google also objects that this Request seeks documents concerning works that have not been identified as Works in Suit.

In addition, Google objects to the Request to the extent information sought is already in the possession of the requesting party, or is otherwise equally accessible and available to the requesting party from other sources (including themselves, the public record and non-parties). Google also objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google also objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. To the extent this Request seeks materials relating to third parties, Google objects on the grounds that the Request calls for information that is not relevant to Plaintiffs' claims, that is not in Google's possession or control, or that is subject to confidentiality agreements with third parties. Google further objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

In addition, Google objects to this Request as overbroad to the extent that its expansive scope seeks personal identifying information concerning numerous Google users and may implicate the privacy rights of users who are entitled to protection under various consumer privacy laws in the U.S. and internationally. Affected users should also be afforded an opportunity to object to disclosure of their personal identifying information, and such an opportunity may be required as a matter of law.

Google further objects to this Request on the grounds that the information sought by this Request is duplicative of Request Nos. 8, 9, 10, 11, 38, and 39.

Without limiting or waiving the foregoing objections, Google responds as follows: Google proposed that Plaintiffs direct their attention to one exemplary text model and one exemplary image model, and remains open to discussing that reasonable compromise. Plaintiffs responded with a counter-proposal that Google "prioritize" the production of training data for every iteration of the Imagen, Gemini, and Bard models. While that approach is extremely costly and unworkable, Google remains willing to meet and confer with opposing counsel regarding a reasonable way to make accessible to Plaintiffs a reasonable scope of non-privileged information for a representative set of relevant models. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 41:**

All Documents and Communications, Including but not limited to meeting minutes or notes, discussing or reflecting the processes concerning the gathering, collection, scraping of Training Data for the development, training, benchmarking, testing, evaluation, or operation of Other Generative AI Models. This Includes any discussions or communications about the legality, ethics, or risks of gathering, collecting or scraping copyrighted or potentially copyrighted materials.

**RESPONSE TO DOCUMENT REQUEST NO. 41:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications), vague and ambiguous, and not proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms "concerning," "Training Data," "potentially copyrighted materials," and "Other Generative AI Models." Google further objects that seeking discovery into these onerous details imposes burdens on Google that are not proportional to the needs of this case. Google also objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

Google further objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

In addition, Google objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. Google also objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Google further objects to this Request on the grounds that the information sought by this Request is duplicative of Request No. 12.

Without limiting or waiving the foregoing objections, Google responds as follows: Google proposed that Plaintiffs direct their attention to one exemplary text model and one exemplary image model, and remains open to discussing that reasonable compromise. Plaintiffs responded with a counter-proposal that Google "prioritize" the production of training data for every iteration

of the Imagen, Gemini, and Bard models. While that approach is extremely costly and unworkable, Google remains willing to meet and confer with opposing counsel regarding a reasonable way to make accessible to Plaintiffs a reasonable scope of non-privileged information for a representative set of relevant models. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 42:**

All Documents and Communications concerning the processes, methodologies, or procedures for collecting, organizing, curating, preprocessing, or annotating the Training Data used or considered for use in the Other Generative AI Models. This Includes records regarding decisions on data selection, filtering, exclusion, augmentation, labeling; change-logs and programming notes (in a machine-readable format) reflecting the implementation of such decisions; and any involvement of third-party services, tools, or contractors in these processes.

**RESPONSE TO DOCUMENT REQUEST NO. 42:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications), vague and ambiguous, and not proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms and phrases "concerning," "regarding," "Training Data used or considered for use in the Other Generative AI Models," "change-logs and programming notes (in a machine-readable format)," "reflecting the implementation of such decisions," "involvement," and "Other Generative AI Models." Google also objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs'

legitimate needs. To the extent this Request seeks materials relating to third parties, Google objects on the grounds that the Request calls for information that is not relevant to Plaintiffs' claims, that is not in Google's possession or control, or that is subject to confidentiality agreements with third parties. Google further objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Google also objects to this Request on the grounds that the information sought by this Request is duplicative of Request Nos. 12, 13, and 41.

Without limiting or waiving the foregoing objections, Google responds as follows: Google proposed that Plaintiffs direct their attention to one exemplary text model and one exemplary image model, and remains open to discussing that reasonable compromise. Plaintiffs responded with a counter-proposal that Google "prioritize" the production of training data for every iteration of the Imagen, Gemini, and Bard models. While that approach is extremely costly and unworkable, Google remains willing to meet and confer with opposing counsel regarding a reasonable way to make accessible to Plaintiffs a reasonable scope of non-privileged information for a representative set of relevant models. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 43:**

All Documents and Communications concerning any discussions, analyses, assessments, or evaluations regarding whether any Training Data used in the training of Other Generative AI Models might violate the laws of any jurisdiction. This Includes internal or external risk assessments, compliance reviews, audits, and any other documents addressing potential violations of copyright, privacy, or data protection laws.

**RESPONSE TO DOCUMENT REQUEST NO. 43:**

Google objects to this Request on the grounds that it is overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms and phrases

"concerning," "regarding," "Training Data" "addressing," "potential violations of copyright, privacy, or data protection laws," and "Other Generative AI Models." Google also objects that this Request is significantly overbroad insofar as it seeks documents concerning "the laws of any jurisdiction" and "potential violations of copyright, privacy, or data protection laws." Plaintiffs solely assert copyright claims under U.S. law and, insofar as this Request seeks documents that concern non-U.S. law, privacy laws, and/or data protection laws, Google objects that it is not relevant to the claims in the Complaint or any party's defenses. Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to this Request on the grounds that the information sought by this Request is duplicative of Request No. 18.

Without limiting or waiving the foregoing objections, Google responds as follows: Google proposed that Plaintiffs direct their attention to one exemplary text model and one exemplary image model, and remains open to discussing that reasonable compromise. Plaintiffs responded with a counter-proposal that Google "prioritize" the production of training data for every iteration of the Imagen, Gemini, and Bard models. While that approach is extremely costly and unworkable, Google remains willing to meet and confer with opposing counsel regarding a reasonable way to make accessible to Plaintiffs a reasonable scope of non-privileged information for a representative set of relevant models. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 44:**

All Documents and Communications concerning any licensing, accreditation, attribution mechanism, or similar tool for crediting or compensating owners of works used in the Training Data for Other Generative AI Models. This Includes any efforts, discussions, or initiatives regarding obtaining permission, consent, or legal authorization from copyright holders (Including

GOOGLE LLC'S RESPONSES AND OBJECTIONS TO          -57-          MASTER FILE CASE NO.: 5:23-CV-03440-EKL
PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

publishers or collective licensing organizations) to include their works in Training Data, and any analyses, evaluations, or implementation plans related to compensating or recognizing those copyright holders.

**RESPONSE TO DOCUMENT REQUEST NO. 44:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms "concerning," "licensing, accreditation, attribution mechanism, or similar tool," "images used in the Training Data," "regarding," "include their works in Training Data," "related to," "compensating," "recognizing," and "Other Generative AI Models." Google also objects that this Request is significantly overbroad insofar as it is not limited to mechanisms or tools created, considered, or used by Google. Google further objects that seeking discovery into these onerous details imposes burdens on Google that are not proportional to the needs of this case. In addition, Google objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action. Google further objects that this Request seeks documents concerning works that have not been identified as Works in Suit.

Google further objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google also objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. To the extent this Request seeks materials relating to third parties, Google objects on the grounds that the Request calls for information that is not relevant to Plaintiffs' claims, that is not in Google's possession or control, or that is subject to confidentiality agreements with third parties. Google further objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Google also objects to this Request on the grounds that the information sought by this Request is duplicative of Request Nos. 8, 9, 10, 11, 19, 38, and 40.

**DOCUMENT REQUEST NO. 45:**

All Documents and Communications, Including Slack messages, internal chat logs, meeting notes, change-logs, reports, or any other records, concerning the potential or actual use of copyrighted or potentially copyrighted materials without authorization as Training Data in the development, training, benchmarking, evaluation, testing, or operation of Other Generative AI Models. This Includes discussions regarding the sourcing, acquisition, scraping, or use of data containing copyrighted materials and the decision-making processes related to whether such use was authorized or required authorization.

**RESPONSE TO DOCUMENT REQUEST NO. 45:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications), vague and ambiguous, and not proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms and phrases "chat logs," "concerning," "potential or actual use of copyrighted or potentially copyrighted materials," "Training Data," "regarding," "related to," "use of data," and "Other Generative AI Models." Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both. Google further objects to the extent that this Request calls for a legal conclusion as to any "actual use" that was made "without authorization," which is not a proper subject of fact discovery.

Google further objects to this Request on the grounds that the information sought by this Request is duplicative of Request Nos. 11, 12, 15, 17, 20, 40, and 41.

Without limiting or waiving the foregoing objections, Google will produce public statements by Google concerning copyright issues and generative AI that appear: on Google's official blog, in transcripts of testimony before the U.S. Congress, and in public comments

submitted to the U.S. Copyright Office, if any. To the extent Plaintiffs believe any further response to this Request is necessary, Google will meet and confer with opposing counsel regarding relevance to class certification and an appropriate scope of information to be produced in response to this Request.

**DOCUMENT REQUEST NO. 46:**

All Documents and Communications concerning the creation, development, or modification of policies, procedures, or guidelines intended to ensure compliance with copyright laws in the use of data for training the Other Generative AI Models. This Includes training manuals, internal policy documents, or communications about how the company's copyright compliance framework evolved over time.

**RESPONSE TO DOCUMENT REQUEST NO. 46:**

Google objects to this Request on the grounds that it is overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications), vague, and ambiguous. In particular, the Request is vague and ambiguous in its use of the terms "concerning," "intended to ensure compliance," "copyright laws," "copyright compliance framework," and "Other Generative AI Models." Google also objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

Google further objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google also objects to this Request on the grounds that the information sought by this Request is duplicative of Request No. 21.

Without limiting or waiving the foregoing objections, Google responds as follows: Google proposed that Plaintiffs direct their attention to one exemplary text model and one exemplary image model, and remains open to discussing that reasonable compromise. Plaintiffs responded with a counter-proposal that Google "prioritize" the production of training data for every iteration of the Imagen, Gemini, and Bard models. While that approach is extremely costly and unworkable, Google remains willing to meet and confer with opposing counsel regarding a reasonable way to make accessible to Plaintiffs a reasonable scope of non-privileged information for a representative

set of relevant models. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 47:**

All Documents and Communications sufficient to show discussions and the decision-making process with respect to making Other Generative AI Models open source.

**RESPONSE TO DOCUMENT REQUEST NO. 47:**

Google objects to this Request on the grounds that it is overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms "decision-making process," "with respect to," and "Other Generative AI Models." Google also objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. Google also objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Without limiting or waiving the foregoing objections, Google is willing to meet and confer with Plaintiffs on the relevance of this information, including as to class certification.

**DOCUMENT REQUEST NO. 48:**

All Documents and Communications sufficient to show the commercialization or monetization of Other Generative AI Models, Including but not limited to any discussions of strategy to derive profit or revenue from Generative AI Models.

**RESPONSE TO DOCUMENT REQUEST NO. 48:**

Google objects to this Request on the grounds that it is overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications and documents concerning "any" discussions), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses. In particular, the Request is vague and ambiguous in its use of the terms "commercialization" and "Other Generative AI Models." Google also objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. Google also objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Google further objects to this Request on the grounds that the information sought by this Request is duplicative of Request No. 23.

**DOCUMENT REQUEST NO. 49:**

All Documents and Communications concerning the Other Generative AI Models' ability to regurgitate, mimic, imitate, or otherwise copy any particular artists' or author's work or style. This Includes any analyses, evaluations, and testing (in a machine-readable format), and discussions about the Other Generative AI Models' capabilities to generate outputs resembling specific artists' or author's works, as well as any concerns, complaints, or feedback regarding potential copyright infringement, literary replication, or unauthorized reproduction of distinctive literary or artistic elements.

**RESPONSE TO DOCUMENT REQUEST NO. 49:**

Google objects to this Request on the grounds that it is overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications and "any" analyses and

concerns), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms and phrases "concerning," "style," "regarding," "potential copyright infringement," "literary replication," and "Other Generative AI Models." Google objects to this Request because it calls for information, especially related to "output" that is not relevant to the claims in the Complaint or any party's defenses. Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action. Google also objects that this Request seeks documents concerning works that have not been identified as Works in Suit.

Google also objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. Google further objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Google further objects to this Request as overbroad to the extent that its expansive scope seeks personal identifying information concerning numerous Google users and may implicate the privacy rights of users who are entitled to protection under various consumer privacy laws in the U.S. and internationally. Affected users should also be afforded an opportunity to object to disclosure of their personal identifying information, and such an opportunity may be required as a matter of law.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both. Google further objects to the extent that this Request calls for a legal conclusion as to "unauthorized reproduction of distinctive literary or artistic elements," which is not a proper subject of fact discovery.

Google further objects to this Request on the grounds that the information sought by this Request is duplicative of Request No. 24.

Without limiting or waiving the foregoing objections, Google will produce accessible non-privileged documents located through a reasonable inquiry proportionate to the needs of the case,

if any, that are sufficient to show the operation of Google's technological measures that are intended to limit the appearance of training data in the output of Gemini, Bard, and Imagen. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 50:**

All Documents and Communications concerning any post-launch monitoring, review, or analysis of any of the Other Generative AI Models' outputs for unauthorized use of copyrighted or potentially copyrighted material, Including but not limited to any detection of any regurgitation or outputting of identical or near-identical images or content to any copyrighted image or work contained in the Training Data of Gemini.

**RESPONSE TO DOCUMENT REQUEST NO. 50:**

Google objects to this Request on the grounds that it is overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications and documents concerning "any" monitoring), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses. In particular, the Request is vague and ambiguous in its use of the terms "concerning," "potentially copyrighted material," "near-identical images or content," "Training Data," and "Other Generative AI Models' outputs." Google also objects to this Request because it calls for information, especially related to "output[]," that is not relevant to the claims in the Complaint or any party's defenses. Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action. Google also objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both. Google further objects to the extent that this Request calls for a legal conclusion as to "unauthorized use," which is not a proper subject of fact discovery.

Google objects that this Request assumes a factual predicate for which there is no record support at this time, namely that all "Other Generative AI Models" launched.

Google further objects to this Request on the grounds that the information sought by this Request is duplicative of Request No. 25.

Without limiting or waiving the foregoing objections, Google will produce accessible non-privileged documents located through a reasonable inquiry proportionate to the needs of the case, if any, that are sufficient to show the operation of Google's technological measures that are intended to limit the appearance of training data in the output of Gemini, Bard, and Imagen. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 51:**

Documents sufficient to identify the anticipated revenue, actual revenue, profit generation and/or financial projection from the distribution, sale, and/or licensing of each of the Other Generative AI Models.

**RESPONSE TO DOCUMENT REQUEST NO. 51:**

Google objects to this Request on the grounds that it is overly broad, vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses. In particular, the Request is vague and ambiguous in its use of the term "Other Generative AI Models." Google also objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

Google further objects to this Request on the grounds that it requires Google to create records where it does not do so in the normal course of business. Google also objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to this Request on the grounds that the information sought by this Request is duplicative of Request No. 23, 26, and 48.

Without limiting or waiving the foregoing objections, Google will produce Alphabet Inc.'s Form 10-Q reports, Form 10-K reports, earnings releases, and transcripts of earnings calls for the period from July 11, 2020 to December 20, 2024. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 52:**

All Documents and Communications that mention, name, discuss, reference, or otherwise identify any of the Plaintiffs, Including but not limited to references to their copyrighted works or any content associated with them used as Training Data for the Other Generative AI Models.

**RESPONSE TO DOCUMENT REQUEST NO. 52:**

Google objects to this Request on the grounds that it is overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms "otherwise identify," "any content associated with them," and "Other Generative AI Models." Google further objects that this Request is compound to the extent that it contains multiple sub-parts (especially in its use of "Including" to expand the scope of the Request). Google also objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

Google further objects to the Request to the extent information sought is already in the possession of the requesting party, or is otherwise equally accessible and available to the requesting party from other sources (including themselves, the public record, and non-parties).

Google further objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google also objects to this Request as overbroad to the extent that its expansive scope seeks personal identifying information concerning numerous Google users and may implicate the

privacy rights of users who are entitled to protection under various consumer privacy laws in the U.S. and internationally. Affected users should also be afforded an opportunity to object to disclosure of their personal identifying information, and such an opportunity may be required as a matter of law.

Google further objects to this Request on the grounds that the information sought by this Request is duplicative of Request No. 27.

Without limiting or waiving the foregoing objections, to the extent the named Plaintiffs have used or uploaded content to Google services, Google will produce accessible non-privileged documents located through a reasonable inquiry proportionate to the needs of the case that show the named Plaintiffs' use of Google services, once Plaintiffs have provided identifying information for their Google accounts.

**DOCUMENT REQUEST NO. 53:**

All Documents and Communications, Including training logs, version histories, changelogs, or other records, showing updates, modifications, or changes made to the Other Generative AI Models such as but not limited to git repository commit messages, pull requests, code base, and magnet links. This Includes records of any changes implemented to address, mitigate, or avoid potential copyright infringement, as well as documentation of decisions made based on those concerns.

**RESPONSE TO DOCUMENT REQUEST NO. 53:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications), vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague in its use of the phrases "updates, modifications, or changes made to the Other Generative AI Models." Google also objects to this Request because it seeks detailed technical information the aggregation and/or production of which would be highly burdensome in ways that are disproportionate to the legitimate needs of the case. Google also objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action. Google objects to this

Request to the extent that it seeks information concerning alleged infringements that Plaintiffs have failed to identify.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. Google also objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Google further objects to this Request on the grounds that the information sought by this Request is duplicative of Request No. 28.

Without limiting or waiving the foregoing objections, Google responds as follows: Google proposed that Plaintiffs direct their attention to one exemplary text model and one exemplary image model, and remains open to discussing that reasonable compromise. Plaintiffs responded with a counter-proposal that Google "prioritize" the production of training data for every iteration of the Imagen, Gemini, and Bard models. While that approach is extremely costly and unworkable, Google remains willing to meet and confer with opposing counsel regarding a reasonable way to make accessible to Plaintiffs a reasonable scope of non-privileged information for a representative set of relevant models. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 54:**

All Documents and Communications sufficient to show the development, testing, evaluation, or integration of content management or filtering systems (e.g., YouTube Content ID) for the Other Generative AI Models.

**RESPONSE TO DOCUMENT REQUEST NO. 54:**

Google objects to this Request on the grounds that it is overly broad (especially insofar as it demands that Google produce "[a]ll" documents and communications), vague and ambiguous,

and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague in its use of the terms and phrases "content management or filtering systems" and "Other Generative AI Models." Google also objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. Google further objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

In addition, Google objects to this Request on the grounds that the information sought by this Request is duplicative of Request No. 29.

Without limiting or waiving the foregoing objections, Google is willing to produce accessible non-privileged documents located through a reasonable inquiry proportionate to the needs of the case, if any, that are sufficient to show the operation of Google's technological measures that are intended to limit the appearance of training data in the output of Gemini, Bard, and Imagen. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

### ***Requests for production related to the AI-Powered Products***

**DOCUMENT REQUEST NO. 55:**

Documents sufficient to identify All AI-Powered Products.

**RESPONSE TO DOCUMENT REQUEST NO. 55:**

Google objects to this Request on the grounds that it is overly broad, vague and ambiguous. Google also objects to this Request because it calls for information that is not relevant to the claims in the Complaint or any party's defenses. Google further objects to this Request because it calls

for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to this Request on the grounds that it requires Google to create records where it does not do so in the normal course of business. Google further objects to the Request to the extent information sought is in the possession of the requesting party, or is otherwise equally accessible and available to the requesting party from other sources (including themselves, the public record and non-parties).

In addition, Google objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. Google further objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Without limiting or waiving the foregoing objections, Google will produce public statements on product features powered by artificial intelligence: on Google's official blog or in materials for Google's annual "Google I/O" developer conference. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 56:**

Documents sufficient to identify the anticipated revenue, actual revenue, profit generation and/or financial projection from the distribution, sale, and/or licensing of each of the AI-Powered Products.

**RESPONSE TO DOCUMENT REQUEST NO. 56:**

Google objects to this Request on the grounds that it is overly broad, vague, and ambiguous, and not relevant to the claims in the Complaint or any party's defenses. Google further

objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

Google further objects to this Request on the grounds that it requires Google to create records where it does not do so in the normal course of business. Google also objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to this Request on the grounds that the information sought by this Request is duplicative of Request No. 23, 26, 48, and 51.

Without limiting or waiving the foregoing objections, Google will produce Alphabet Inc.'s Form 10-Q reports, Form 10-K reports, earnings releases, and transcripts of earnings calls for the period from July 11, 2020 to December 20, 2024. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

### ***Requests for production related to supervision and/or control by Alphabet***

**DOCUMENT REQUEST NO. 57:**

Documents sufficient to identify All persons with the right and/or ability to supervise and/or control Google LLC's AI-related business(es), including the planning, conception, construction, engineering, design, programming, development, testing, evaluation, benchmarking, pretraining, training, post-training, fine tuning, licensing, marketing, monetization, and/or distribution of Imagen, Bard, Gemini, the Other Generative AI Models, and/or the AI-Powered Products.

**RESPONSE TO DOCUMENT REQUEST NO. 57:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad, vague and ambiguous, and not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is vague and ambiguous in its use of the terms "AI-related business(es)," "conception," "construction," "design," "post-training," "distribution," "Imagen," "Bard," "Gemini," "Other Generative AI Models," and "AI-Powered

Products." Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to the extent that this Request calls for a legal conclusion as to the "right and/or ability to supervise and/or control Google LLC's AI-related business(es)," which is not a proper subject of fact discovery. Google further objects to this Request on the grounds that it is vague and ambiguous in its use of the phrase "right and/or ability to supervise and/or control Google LLC's AI-related business(es)."

Without limiting or waiving the foregoing objections, Google is willing to meet and confer with Plaintiffs regarding the extent to which this information is relevant to class certification and the extent to which this information is irrelevant if Defendants' Motion to Dismiss is granted as to Alphabet.

**DOCUMENT REQUEST NO. 58:**

Documents sufficient to establish Alphabet's right and/or ability to supervise and/or control Your AI-related business(es) planning, conception, construction, engineering, design, programming, development, evaluation, benchmarking, testing, pretraining, training, post-training, fine tuning, licensing, marketing, monetization, and/or distribution of Imagen, Bard, Gemini, the Other Generative AI Models, and/or the AI-Powered Products.

**RESPONSE TO DOCUMENT REQUEST NO. 58:**

Google objects to this Request on the grounds that it is overbroad, vague, and ambiguous. In particular, the Request is vague and ambiguous in its use of the terms "Your AI-related business(es)," "conception," "construction," "design," "post-training," "distribution," "Imagen," "Bard," "Gemini," "Other Generative AI Models," and "AI-Powered Products." Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action.

Google objects that the burden this Request imposes on Google is disproportionate to the needs of this case, particularly given Alphabet's improper inclusion in this action. The sole claim

Plaintiffs assert against Alphabet—i.e., that Alphabet is vicariously liable for the allegedly infringing activity of its corporate subsidiary, Google—is derivative of Plaintiffs' copyright claim against, and based on allegations concerning the conduct of, Google. The *Leovy* plaintiffs abandoned the claim they originally asserted against Alphabet, *see* ECF No. 13, and the vicarious liability claim Plaintiffs now assert against Alphabet is the subject of Defendants' pending motion to dismiss, *see* ECF No. 95. As Google explained in that motion, parent-subsidiary relationships alone cannot establish vicarious liability under bedrock legal principles.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google further objects to the extent that this Request calls for a legal conclusion as to the "right and/or ability to supervise and/or control Your AI-related business(es)," which is not a proper subject of fact discovery. Google further objects to this Request on the grounds that it is vague and ambiguous in its use of the phrase "right and/or ability to supervise and/or control Your AI-related business(es)." For purposes of responding this to Request, Google will interpret "right and/or ability to supervise and/or control" as those terms have been interpreted by the courts in assessing secondary liability claims for copyright infringement, which in the parent-subsidiary context requires substantial and continuing involvement of the parent corporation with respect to the infringing acts.

Without limiting or waiving the foregoing objections, Google responds that Alphabet is a holding company, which as explained in Defendants' pending motion to dismiss, did not have the right and ability to control (i.e. substantial and continuous involvement in), Google's decisions concerning the training of Google's generative AI models. Accordingly, Google does not have documents responsive to this Request.

**DOCUMENT REQUEST NO. 59:**

All Documents referenced or relied upon in responding to any Interrogatory served by any party in this Action.

**RESPONSE TO DOCUMENT REQUEST NO. 59:**

Google objects to this Request on the grounds that it is overly broad, vague, and ambiguous. In particular, the Request is vague and ambiguous in its use of the phrase "relied upon." Google further objects to this Request because it calls for the production of materials that are not needed to determine whether a class can be certified in this action. To the extent this Request encompasses interrogatories that have not yet been served, Google also objects to this Request because it is premature.

In addition, Google objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Google objects to the Request to the extent information sought is already in the possession of the requesting party, or is otherwise equally accessible and available to the requesting party from other sources (including themselves, the public record and non-parties). To the extent this Request seeks communications between Google and Plaintiffs, Google objects to it on the grounds that it seeks information that should be in Plaintiffs' possession.

Google further objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. To the extent this Request seeks materials relating to third parties, Google objects on the grounds that the Request calls for information that is not relevant to Plaintiffs' claims, that is not in Google's possession or control, or that is subject to confidentiality agreements with third parties. Google further objects to the Request insofar as it calls for the production of proprietary, confidential, or trade secret documents prior to the entry of a protective order.

Because this Request references "any Interrogatory served by any party in this Action," Google hereby incorporates its objections to all such Interrogatories.

Without limiting or waiving the foregoing objections, Google will produce non-privileged documents identified or referenced in Google's answers to Plaintiffs Sarah Andersen's First Set of Interrogatories to Defendant Google LLC.

Dated: February 18, 2025

By: */s/ Paul J. Sampson*

Eric P. Tuttle, SBN 248440
Email: eric.tuttle@wsgr.com
**WILSON SONSINI GOODRICH & ROSATI
Professional Corporation**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone: (206) 883-2500

David H. Kramer, SBN 168452
Email: dkramer@wsgr.com
Maura L. Rees, SBN 191698
Email: mrees@wsgr.com
**WILSON SONSINI GOODRICH & ROSATI
Professional Corporation**
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300

Paul J. Sampson, admitted *pro hac vice*
Email: psampson@wsgr.com
**WILSON SONSINI GOODRICH & ROSATI
Professional Corporation**
15 West South Temple Gateway Tower West,
Suite 1700
Salt Lake City, Utah 84101-1560
Telephone: (801) 360-4314

*Counsel for Defendants*
GOOGLE LLC AND ALPHABET INC.

## <u>CERTIFICATE OF SERVICE</u>

I, Deborah Grubbs, declare:

I am employed in Santa Clara County, State of California. I am over the age of 18 years and not a party to the within action. My business address is Wilson Sonsini Goodrich & Rosati, 650 Page Mill Road, Palo Alto, California 94304-1050.

On this date, I served:

**1.    GOOGLE LLC'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION**

☒    By forwarding the document(s) by electronic transmission on this date to the Internet email address(es) listed below:

**JOSEPH SAVERI LAW FIRM, LLP**

| | |
|---|---|
| Joseph R. Saveri | Email: jsaveri@saverilawfirm.com |
| Christopher K.L. Young | Email: cyoung@saverilawfirm.com |
| Elissa A. Buchanan | Email: eabuchanan@saverilawfirm.com |
| Evan Creutz | Email: ecreutz@saverilawfirm.com |
| Margaux Poueymirou | Email: mpoueymirou@saverilawfirm.com |
| Cadio R. Zirpoli | Email: czirpoli@saverilawfirm.com |
| | |
| Matthew Butterick | Email: mb@buttericklaw.com |

**LOCKRIDGE GRINDAL NAUEN PLLP**

| | |
|---|---|
| Brian D. Clark | Email: bdclark@locklaw.com |
| Laura M. Matson | Email: lmmatson@locklaw.com |
| Arielle Wagner | Email: aswagner@locklaw.com |
| Eura Chang | Email: echang@locklaw.com |

**BLEICHMAR FONTI & AULD LLP**

| | |
|---|---|
| Lesley E. Weaver | Email: lweaver@bfalaw.com |
| Anne K. Davis | Email: adavis@bfalaw.com |
| Joshua D. Samra | Email: jsamra@bfalaw.com |
| Gregory S. Mullens | Email: gmullens@bfalaw.com |

**CLARKSON LAW FIRM, P.C.**

| | |
|---|---|
| Ryan J. Clarkson | Email: rclarkson@clarksonlawfirm.com |
| Yana Hart | Email: yhart@clarksonlawfirm.com |
| Mark I. Richards | Email: mrichards@clarksonlawfirm.com |
| Tiara Avaness | Email: tavaness@clarksonlawfirm.com |
| Tracey Cowan | Email: tcowan@clarksonlawfirm.com |

*Counsel for Plaintiffs*

STEVE ALMOND, SARAH ANDERSEN, BURL BARER, JESSICA FINK,

KIRSTEN HUBBARD, HOPE LARSON, MIKE LEMOS, JILL LEOVY, CONNIE MCLENNAN, AND JINGNA ZHANG, AND THE PROPOSED CLASS

I am readily familiar with Wilson Sonsini Goodrich & Rosati's practice for collection and processing of documents for delivery according to instructions indicated above. In the ordinary course of business, documents would be handled accordingly.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct. Executed on February 18, 2025.

_____
Deborah Grubbs

# EXHIBIT 3

# WILSON SONSINI

Wilson Sonsini Goodrich & Rosati
Professional Corporation

95 S State Street
Suite 1000
Salt Lake City, UT 84111

O: 801.401.8510
F: 866.974.7329

PAUL J. SAMPSON
Internet : PSAMPSON@wsgr.com
Direct dial: +1.801.401.8541

May 15, 2025

Gregory S. Mullens
Bleichmar Fonti & Auld LLP
300 Park Avenue, Suite 1301
New York, New York 10022
gmullens@bfalaw.com

**Re:** **In re Google Generative AI Copyright Litigation, Master File Case No. 5:23-cv-0344-EKL (N.D. Cal.)**

Counsel:

We write in response to Plaintiffs' letter dated May 7, 2025, which asserts various purported deficiencies with Google's discovery responses and seeks to impose multiple unreasonable short deadlines on Google. The accusations in your letter are inaccurate, unsupported by the record, and fundamentally mischaracterize Google's discovery conduct.

From the outset, the Court has been clear that discovery at this stage must be focused on class certification, not broad merits-based discovery. Judge Lee has emphasized that "[t]he presumptive limits on discovery set forth in the Federal Rules of Civil Procedure shall apply," ECF No. 88 at 1, and at the December 18, 2024 Case Management Conference directed the parties "to really focus on discovery in terms of what is needed for the class cert to begin with," CMC Tr. 21:19-22:3. She reiterated that directive in her April 21, 2025 order granting Google's motion to strike Plaintiffs' fail-safe class allegations, where she cautioned that the Court "will not find good cause [to modify the schedule] if the record reflects Plaintiffs' failure to prioritize and diligently advance discovery on issues relevant to class certification." ECF No. 128 at 8. Most recently, after Plaintiffs sent their May 7 letter, Judge van Keulen on May 8, 2025, denied Plaintiffs' motion to compel a Rule 30(b)(6) deposition regarding training data, reaffirming that Plaintiffs' discovery must be "link[ed] … to issues of class certification in a[] meaningful way." ECF No. 135 at 2.

Despite these clear instructions, Plaintiffs have repeatedly pursued an overly broad and burdensome discovery strategy more suited to merits litigation than the current class certification phase. As we have explained, even in a class action, the discovery Plaintiffs demand would be unreasonable. Where, as here, no class can be certified, Plaintiffs' all-encompassing discovery demands are grossly disproportionate.

Plaintiffs' scattershot complaints in their May 7 letter regarding Google's discovery responses are unfortunately more of the same. This approach has forced dozens of meet and confers to narrow Plaintiffs' facially unworkable demands into a set of "priority" requests allegedly

**WILSON SONSINI**

Gregory S. Mullens
May 15, 2025
Page 2

necessary for class certification. Google has worked diligently and has already produced thousands of substantive documents in response to those requests. Characterizing these efforts as a "failure to meaningfully advance discovery" is a fiction that Plaintiffs are now seizing upon to try to delay resolution of the class issue.

Below we respond to the key points raised in your May 7 letter.

**A.      Disputes Identified as "Impasses"**

**(i) & (ii) – RFP Nos. 2 & 3 (Training Data)**

These issues are not at impasse. During the May 12, 2025 meet and confer, as we have repeatedly for months, we again explained that making all training data available is technically infeasible, cost prohibitive, and unnecessary for class certification. We repeated, as we have said for months, Google's willingness to enter stipulations for purposes of class certification to address reasons that Plaintiffs articulate for needing access to all training data (*e.g.*, as to whether the named Plaintiffs' works are included in the training data). We asked Plaintiffs to identify subsets of data of interest so we can investigate the feasibility and estimated cost of making those subsets available. Plaintiffs stated they would do so. We await that input. As Plaintiffs are aware, Google has already produced dozens of model and data cards and other documents providing extensive information about training datasets and has provided other information during our meetings. We have also invited questions from Plaintiffs and offered to try to answer those questions. Between the information already provided and Google's willingness to provide additional information if Plaintiffs make specific requests, Plaintiffs can make informed choices about subsets of the training data to select for review. It appears Plaintiffs prefer to feign impasse rather than make a choice and move discovery along. Further progress on the inspection protocol and selection of datasets to be made available to Plaintiffs will depend on Plaintiffs' engagement.

**(iii) – Interrogatory No. 2 (Training Data Description)**

This issue is moot. We previously identified responsive Bates numbers by email and will amend this interrogatory response to include those citations pursuant to Rule 33(d).

**(iv) – Interrogatory No. 1 (Agreements)**

Google will supplement its response to Interrogatory No. 1 with Bates numbers as responsive documents are produced.

**(v) – Source Code Inspection**

This topic is being addressed in separate correspondence and will not be repeated here.

**WILSON SONSINI**

Gregory S. Mullens
May 15, 2025
Page 3

**B.    Other Discovery Deficiency Allegations**

**(i) – Production Format & Metadata Issues**

We are investigating the issues identified in your separate letter and will endeavor to remedy technical errors where possible and reasonable to do so. We have identified similar deficiencies in Plaintiffs' productions and will be providing a separate letter requesting prompt corrections.

**(vi) – General Objections**

We believe our objections are proper and consistent with the Court's orders and Rule 26(b). Nonetheless, if there are specific objections you believe merit further discussion, we remain open to meeting and conferring. We reiterate, however, that a shotgun, undifferentiated approach listing generalized grievances is not productive. We invite you to focus on specific complaints about specific discovery that matters to class certification and for which Plaintiffs truly believe further discussion is merited.

_(b)(d) – Relevant Time Period:_ Google first objected to Plaintiffs' proposed timeframe months ago. During many of the dozens of meet and confers, Plaintiffs appeared to acquiesce to Google's proposed timeframe. Your renewed objection at this stage is plainly strategic rather than substantive. And it is irrelevant for class certification purposes.

_(b)(e) – Datasets Beyond Bard, Imagen, and Gemini:_ As you are aware, Judge Lee is considering Google's pending motion to dismiss portions of the Amended Complaint that refer to non-Bard/Imagen/Gemini models. Until that motion is resolved, Google's objections to discovery targeting those models are appropriate.

_(b)(f) – Class Certification Scope:_ Plaintiffs argue that Google is improperly limiting discovery to class certification issues. We are not, though the Court has repeatedly directed Plaintiffs to prioritize that. Most recently (after Plaintiffs sent their May 7 letter), in denying Plaintiffs' motion to compel a Rule 30(b)(6) deposition, Judge van Keulen reiterated that Plaintiffs' discovery must be tied in a "meaningful way" to class certification. (ECF No. 135 at 2.) Google's objections are grounded squarely in Judge Lee's and now Judge van Keulen's directives. Plaintiffs have not even indulged the pretense of honoring those directions. We again suggest, as we have for nearly two years, that Plaintiffs tell us what they think they actually need for class certification so that we can focus and prioritize our efforts there. It is troubling that Plaintiffs seem incapable of answering that basic question even now.

**(iii) – Laundry List of Alleged RFP Response Deficiencies**

Google has already conferred extensively with Plaintiffs regarding its responses and objections, so we are somewhat perplexed by Plaintiffs' new 16-page list of grievances relating to particular RFP responses. If there are RFPs Plaintiffs wish to revisit for specific reasons related to

**WILSON
SONSINI**

Gregory S. Mullens
May 15, 2025
Page 4

class certification, we are open to further meet and confers. However, many of Plaintiffs' complaints are vague, duplicative, and appear aimed more at manufacturing disputes than resolving them. Notably, in numerous instances Plaintiffs now state—after nearly three months of silence since Google served its responses—that they "wish to meet and confer." Plaintiffs' delay undercuts their assertion of diligence and stands in stark contrast to Judge Lee's clear directive that Plaintiffs "prioritize and diligently advance discovery on issues relevant to class certification." ECF No. 128 at 8.

### (iv) – ESI Source and Custodian Disclosures

Your letter incorrectly claims that Google has not disclosed the custodial and non-custodial sources it intends to search for responsive ESI. We refer you to our March 26, 2025 letter in which we disclosed this very information. In addition to those sources, we intend to search, as disclosed during a meet and confer on May 13, 2025, the custodial documents of Google employee Tulsee Doshi.

Google is still evaluating whether it will use TAR, CAL, or other machine learning tools to filter out nonresponsive documents and will inform Plaintiffs in accordance with the ESI Agreement. Please confirm whether Plaintiffs have used or intend to use such tools.

### C.    Substantial Completion Deadline

Google does not believe that a "substantial completion" deadline is practical or necessary, particularly in an environment where Plaintiffs continually seek to reopen and revisit what they are seeking. When Plaintiffs proposed such deadlines, the Court rejected them. We are reviewing and producing documents on a rolling basis, in good faith and consistent with our discovery obligations. Imposing an arbitrary and inflexible deadline is unlikely to facilitate the parties' cooperation or assist the Court in managing discovery, and may be counterproductive given the evolving nature of the discovery process.

*    *    *    *    *

Please let us know if you wish to meet and confer regarding any specific issues. But blanket accusations of non-cooperation or delay are unsupported by the record and ignore the parties' extensive and ongoing discovery efforts to date.

Sincerely,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Paul J. Sampson

# EXHIBIT 4

**From:** Gregory Mullens via Google Gen AI Plaintiffs <googlegenai-plaintiffs@lists.locklaw.com>
**Sent:** Thursday, June 19, 2025 11:30 AM
**To:** Sampson, Paul; googlegenai-plaintiffs@lists.locklaw.com
**Cc:** WSGR - In Re Google AI Copyright
**Subject:** Google Gen AI Plaintiffs - Re: In re Google GenAI Copyright — Additional Custodians

Paul, below are the nine custodians Plaintiffs select:

1. Nicholas Carlini
2. Jeff Dean
3. Orhan Firat
4. Koray Kavukcuoglu
5. Quoc Le
6. James Manyika
7. Amar Subramanya
8. Oriol Vinyals
9. Li Xiao

We maintain our objection to Google's refusal to select its 3 custodians first despite being in the best position to do so and stating as much yesterday on the record. We reserve all rights, including but not limited to if Google selects custodians that are duplicative of others.

Best,

Greg

**From:** Gregory Mullens <gmullens@bfalaw.com>
**Sent:** Thursday, June 19, 2025 8:17 AM
**To:** Sampson, Paul <psampson@wsgr.com>; googlegenai-plaintiffs@lists.locklaw.com
**Cc:** WSGR - In Re Google AI Copyright <InReGoogleAICopyright@wsgr.com>
**Subject:** Re: In re Google GenAI Copyright — Additional Custodians

Paul, it is, which now raises our concern that Google, who according to you yesterday was in the best position to select custodians, is needlessly dragging this out. If Google does not provide its custodians by COB today, we'll seek guidance from the Court.

Best,

Greg

Get Outlook for iOS

**From:** Sampson, Paul <psampson@wsgr.com>
**Sent:** Thursday, June 19, 2025 7:57:42 AM
**To:** Gregory Mullens <gmullens@bfalaw.com>; googlegenai-plaintiffs@lists.locklaw.com <googlegenai-

plaintiffs@lists.locklaw.com>

**Cc:** WSGR - In Re Google AI Copyright <InReGoogleAICopyright@wsgr.com>

**Subject:** RE: In re Google GenAI Copyright — Additional Custodians

Greg,

The clock is ticking. Judge van Keulen's order says that, of the 12 additional custodians, "the Plaintiffs may identify 9 (including, optionally, the declarants) and Google shall identify the **remaining** 3." Please send Plaintiffs' selections immediately.

Paul

**From:** Gregory Mullens <gmullens@bfalaw.com>
**Sent:** Wednesday, June 18, 2025 5:04 PM
**To:** Sampson, Paul <psampson@wsgr.com>; googlegenai-plaintiffs@lists.locklaw.com
**Cc:** WSGR - In Re Google AI Copyright <InReGoogleAICopyright@wsgr.com>
**Subject:** Re: In re Google GenAI Copyright — Additional Custodians

EXT - gmullens@bfalaw.com

Paul, Judge van Keulen said that in the context of considering whether Google should be able to make any custodian selections whatsoever. As Google stated today, they are in the best position to select the most appropriate custodians so please do so as soon as possible. Plaintiffs will then promptly inform of its selections.

Greg

Get Outlook for iOS

**From:** Sampson, Paul <psampson@wsgr.com>
**Sent:** Wednesday, June 18, 2025 3:55:00 PM
**To:** Gregory Mullens <gmullens@bfalaw.com>; googlegenai-plaintiffs@lists.locklaw.com <googlegenai-plaintiffs@lists.locklaw.com>
**Cc:** WSGR - In Re Google AI Copyright <InReGoogleAICopyright@wsgr.com>
**Subject:** RE: In re Google GenAI Copyright — Additional Custodians

Greg:

Judge van Keulen said Plaintiffs have "the laboring oar" on custodians selection. We interpreted that to mean Plaintiffs make their selections first. Please do so as soon as possible.

Thanks,
Paul

**From:** Gregory Mullens <gmullens@bfalaw.com>
**Sent:** Wednesday, June 18, 2025 3:57 PM
**To:** Sampson, Paul <psampson@wsgr.com>; googlegenai-plaintiffs@lists.locklaw.com
**Cc:** WSGR - In Re Google AI Copyright <InReGoogleAICopyright@wsgr.com>
**Subject:** Re: In re Google GenAI Copyright — Additional Custodians

EXT - gmullens@bfalaw.com

---

Paul, please send Google's selections first, and we will then promptly provide our custodians.

Best,

Greg

Get Outlook for iOS

---

**From:** Sampson, Paul via Google Gen AI Plaintiffs <googlegenai-plaintiffs@lists.locklaw.com>
**Sent:** Wednesday, June 18, 2025 1:58:08 PM
**To:** googlegenai-plaintiffs@lists.locklaw.com <googlegenai-plaintiffs@lists.locklaw.com>
**Cc:** WSGR - In Re Google AI Copyright <InReGoogleAICopyright@wsgr.com>
**Subject:** Google Gen AI Plaintiffs - In re Google GenAI Copyright — Additional Custodians

Counsel,

Please send your selection of additional custodians as soon as you can—no later than tomorrow.

Thank you,
Paul

Get Outlook for iOS

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

This e-mail is confidential and may be privileged. Use or disclosure of it by anyone other than a designated addressee is unauthorized. If you are not an intended recipient, please delete this e-mail. If you have received this communication in error, please notify us immediately by return email and destroy this communication and all copies thereof, including all attachments.

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

This email and any attachments thereto may contain private, confidential, and privileged material for the

sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

# EXHIBIT 5

| | |
|---|---|
| **From:** | Sampson, Paul <psampson@wsgr.com> |
| **Sent:** | Friday, July 18, 2025 10:04 AM |
| **To:** | Teti, Stephen J.; Gregory Mullens; Mark Richards; WSGR - In Re Google AI Copyright |
| **Cc:** | googlegenai-plaintiffs@lists.locklaw.com |
| **Subject:** | Re: Meet and confer on case schedule |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Steve,

Plaintiffs' proposal for a three-and-a-half month delay in the class certification motion deadline is excessive under the circumstances, where Plaintiffs have repeatedly pursued overbroad and burdensome discovery, consumed time with endless meet and confers required to limit Plaintiffs' overreaching demands to an appropriate scope, yet have not diligently advanced their own case.

On depositions, we've consistently said we will agree to those that Plaintiffs can show are relevant to class certification. And, as the Court has already decided, the presumptive deposition limits apply.

Regarding document production, we won't estimate numbers now, but we remain committed to substantially completing custodial productions by July 29, though we appreciate Plaintiffs' willingness to extend that to August 8.

We're happy to discuss further at 2:00 p.m. PT this afternoon. Please confirm your availability. We ask you yet again to describe with specificity the discovery you need for class certification, including what you imagine these depositions will supply that bears on class certification.

Best,
Paul

Get Outlook for iOS

---

**From:** Teti, Stephen J. <sjteti@locklaw.com>
**Sent:** Thursday, July 17, 2025 11:10 AM
**To:** Gregory Mullens <gmullens@bfalaw.com>; Sampson, Paul <psampson@wsgr.com>; Mark Richards <mrichards@clarksonlawfirm.com>; WSGR - In Re Google AI Copyright <InReGoogleAICopyright@wsgr.com>
**Cc:** googlegenai-plaintiffs@lists.locklaw.com <googlegenai-plaintiffs@lists.locklaw.com>
**Subject:** RE: Meet and confer on case schedule

**EXT - sjteti@locklaw.com**

---

Paul,

We write to follow up on our meet and confer on Tuesday. On that call, Google proposed the following schedule for class certification: (1) extend the substantial completion from July 29 to August 8; (2) extend the class certification filing

1

deadline from August 8 to August 29; and (3) extend the class certification hearing deadline from December 10 to December 17. With respect to depositions, Google has stood on its position that only 10 depositions are permitted (with no distinction between class and merits) and suggested that Plaintiffs need to take only 2 or 3 depositions before class certification.

Plaintiffs ask Google to provide an estimate of how many documents it anticipates producing by the substantial completion deadline (currently July 29). This information is critical for Plaintiffs. We need to know the approximate amount of documents that will be incoming. Moreover, the lack of documents produced by Google to date makes it impossible for Plaintiffs to identify the witnesses we would want to depose before class certification, let alone agree to take only a small handful of depositions at this stage.

Plaintiffs need sufficient time to review Google's productions before we can conduct depositions. Google's request that Plaintiffs identify deponents now, without the benefit of Google's productions to inform those decisions, has discovery backwards. Furthermore, Plaintiffs require sufficient time to analyze Google's productions—and critically, Google's training data, which we and our experts are just now starting to be able to meaningfully analyze and remains subject to technical and other issues—before being able to prepare our class certification motion. The three additional weeks Google proposes for Plaintiffs' class certification motion deadline, particularly when paired with a 10-day extension of the substantial completion deadline, does not afford Plaintiffs the time required to prepare a proper Rule 23 motion.

**With respect to the schedule**, Plaintiffs propose: (1) we will agree to Google's request to postpone substantial completion from July 29 to August 8; (2) extend the class certification filing deadline from August 8 to November 24; and (3) extend the class certification hearing deadline from December 10 to March 17, 2026 (or at the Court's convenience). Plaintiffs also propose a schedule for the rest of the case commensurate with these extensions, which would have a trial date in January 2027, about four months later than the current start. We ask that Google please respond to this proposal by tomorrow morning at 10:00 am PT, and in advance, please let us know when you are available to further discuss tomorrow after that time.

**With respect to depositions,** Plaintiffs have served their amended 30(b)(6) deposition notice. We understand that it is Google's position that its 30(b)(6) deposition must be limited to seven hours. Please advise how many deponents Google anticipates designating and whether Google maintains its objection that the total collective hours are limited to seven.

For fact witness depositions, Plaintiffs intend to notice the depositions of the 9 individuals below. We do not agree with Google's position that there will only be 10 defendant 30(b)(1) depositions in this matter, and expressly reserve all rights in that regard. In addition, as noted above, we reserve the right to revise this list of deponents, as we have little or no custodial documents for them. The number of documents Google has produced to date for each of these individuals also is detailed in the chart below.

| 30(b)(1) Deponent | Documents Produced |
| --- | --- |
| Kareem Ayoub | 1,276 |
| Tris Warkentin | 1,026 |
| Jason Baldridge | 912 |
| Orhan Firat | 150 |
| Oriol Vinyals | 121 |
| Li Xiao | 114 |

| Stephane Jaskiewicz | 110 |
|---|---|
| Jeff Dean | 0 |
| Koray Kavukcuoglu | 0 |

To facilitate Plaintiffs' orderly and expeditious document review and prioritization of deposition scheduling, please provide us with the following information:

(1) the approximate number of additional documents Google anticipates producing for each individual identified in the chart above (setting aside the parties' pending Relevant Time Period dispute);
(2) when Google anticipates substantially completing document production for each individual; and
(3) whether any of these individuals have scheduling conflicts or are unavailable for deposition through year-end, including general dates of unavailability and any requested accommodations such as deposition location that Google would like Plaintiffs to consider.

*       *       *

Again, we ask that Google please respond to Plaintiffs' proposal on the schedule by tomorrow morning by 10:00 am PT. We will then make ourselves available to discuss tomorrow at a mutually convenience time after we receive Google's response, so please let us know when is best for you.

Best,

Steve

**Stephen J. Teti | Partner | He/Him**
**Lockridge Grindal Nauen PLLP**
265 Franklin Street | Suite 1702 | Boston MA 02110
P: 617-456-7701 | www.locklaw.com

---

**From:** Gregory Mullens via Google Gen AI Plaintiffs <googlegenai-plaintiffs@lists.locklaw.com>
**Sent:** Monday, July 14, 2025 8:06 PM
**To:** Sampson, Paul <psampson@wsgr.com>; Mark Richards <mrichards@clarksonlawfirm.com>; WSGR - In Re Google AI Copyright <InReGoogleAICopyright@wsgr.com>
**Cc:** googlegenai-plaintiffs@lists.locklaw.com
**Subject:** Google Gen AI Plaintiffs - Re: Meet and confer on case schedule

Thank you. 2pm PT works for tomorrow – I'll send an invite.

Greg

---

**From:** Sampson, Paul <psampson@wsgr.com>
**Sent:** Monday, July 14, 2025 6:22 PM
**To:** Gregory Mullens <gmullens@bfalaw.com>; Mark Richards <mrichards@clarksonlawfirm.com>; WSGR - In Re Google AI Copyright <InReGoogleAICopyright@wsgr.com>
**Cc:** googlegenai-plaintiffs@lists.locklaw.com
**Subject:** RE: Meet and confer on case schedule

3

Thanks, Greg. We can't meet tomorrow until the afternoon. We could do any time after 2pm PT. I'll send the PO addendum draft today/tonight.

---

**From:** Gregory Mullens <gmullens@bfalaw.com>
**Sent:** Monday, July 14, 2025 1:34 PM
**To:** Sampson, Paul <psampson@wsgr.com>; Mark Richards <mrichards@clarksonlawfirm.com>; WSGR - In Re Google AI Copyright <InReGoogleAICopyright@wsgr.com>
**Cc:** googlegenai-plaintiffs@lists.locklaw.com
**Subject:** Meet and confer on case schedule

EXT - gmullens@bfalaw.com

---

Counsel, Plaintiffs are available to meet and confer on the case schedule tomorrow at 9am PT. Please confirm that time works, and we'll send an invite. Please also send your redline (if any) to Plaintiffs' proposed addendum to the protective order before tomorrow's meet and confer, so we can move that issue forward.

Best,

Greg

---

**From:** Sampson, Paul via Google Gen AI Plaintiffs <googlegenai-plaintiffs@lists.locklaw.com>
**Sent:** Thursday, July 3, 2025 5:09 PM
**To:** Mark Richards <mrichards@clarksonlawfirm.com>; WSGR - In Re Google AI Copyright <InReGoogleAICopyright@wsgr.com>
**Cc:** googlegenai-plaintiffs@lists.locklaw.com
**Subject:** Google Gen AI Plaintiffs - Re: Google Gen AI – Draft Addendum to PO

Mark –

We will send a proposed revised version early next week.

Thanks,
Paul

---

**From:** Mark Richards <mrichards@clarksonlawfirm.com>
**Sent:** Wednesday, July 2, 2025 12:52 PM
**To:** Sampson, Paul <psampson@wsgr.com>; WSGR - In Re Google AI Copyright <InReGoogleAICopyright@wsgr.com>
**Cc:** googlegenai-plaintiffs@lists.locklaw.com
**Subject:** Re: Google Gen AI – Draft Addendum to PO

EXT - mrichards@clarksonlawfirm.com

---

Paul,

I'm writing to follow up on my previous email and our discussion last Wednesday regarding Plaintiffs' draft addendum to the PO. Please let us know Google's position by the end of the day tomorrow. Thanks.

**Mark I. Richards** (he/him)
Senior Associate
mrichards@clarksonlawfirm.com

# Clarkson

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265
Main: (213) 788-4050
Direct: (213) 430-2458
clarksonlawfirm.com

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments

---

**From:** Mark Richards <mrichards@clarksonlawfirm.com>
**Sent:** Tuesday, June 24, 2025 8:02 PM
**To:** Sampson, Paul <psampson@wsgr.com>; WSGR - In Re Google AI Copyright <inregoogleaicopyright@wsgr.com>
**Cc:** googlegenai-plaintiffs@lists.locklaw.com <googlegenai-plaintiffs@lists.locklaw.com>
**Subject:** Google Gen AI – Draft Addendum to PO

Paul,

Please find attached the draft addendum to the PO to establish an "Outside Counsel Eye's Only" designation. Please let us know whether Google is amenable to the proposed addendum or some version of it.  Thanks.

**Mark I. Richards** (he/him)
Senior Associate
mrichards@clarksonlawfirm.com

# Clarkson

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265
Main: (213) 788-4050
Direct: (213) 430-2458
clarksonlawfirm.com

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

This e-mail is confidential and may be privileged. Use or disclosure of it by anyone other than a designated addressee is unauthorized. If you are not an intended recipient, please delete this e-mail. If you have received this communication in error, please notify us immediately by return email and destroy this communication and all copies thereof, including all attachments.

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

# EXHIBIT 6

| | |
|---|---|
| **From:** | Huang, Qifan <qhuang@wsgr.com> |
| **Sent:** | Friday, August 22, 2025 5:56 PM |
| **To:** | Alex Zeng; Sampson, Paul; Gregory Mullens; Grubbs, Deborah; Anne Davis; Wagner, Arielle S.; Clark, Brian D.; czirpoli; Christopher Young; Elissa A. Buchanan; Evan Creutz; Joseph Saveri; Josh Samra; Matson, Laura M.; Lesley Weaver; Mark Richards; mb; Ryan J. Clarkson; Tiara Avaness; tcowan; Yana Hart; Teti, Stephen J.; Raak, Amber M.; Loeding, Greg A.; Nicole Alioto; Aaron Cera |
| **Cc:** | WSGR - In Re Google AI Copyright; googlegenai-plaintiffs@lists.locklaw.com |
| **Subject:** | RE: In re Google Generative AI Copyright Litigation; Case No.: 5:23-cv-03440-EKL |

Alex,

Below please find Google's positions in response to your email.

**Rule 30(b)(6) Hours.** Based on relevant precedent and practices in this District, every seven hours of Rule 30(b)(6) testimony counts as one deposition. *See, e.g.*, *Calhoun, et al. v. Google LLC*, No, 4:20-cv-05146, Dkt. 288-3 at 45 (N.D. Cal. August 25, 2021) (ordering that "as to 30(b)(6) depositions, ... each seven hours [counts] as one deposition"). Between Messrs. Carver and Liechty, Plaintiffs have already taken 10 hours of 30(b)(6) testimony, which counts as two of the ten depositions allowed under Judge Lee's order (*see* ECF No 88).

Google designated Mr. Liechty appropriately and he was well prepared for the topics assigned to him. We will not agree to discount the 6.75 hours of his testimony for deposition-counting purposes.

With respect to depositions of individuals noticed in both their 30(b)(1) and 30(b)(6) capacities, we will not object to these depositions being subject to separate limits, provided that: (1) the 30(b)(6) portion of the testimony counts toward the deposition limits as described above; (2) the 30(b)(1) portion counts as an additional deposition; and (3) we endeavor to complete the entire deposition in a single day and Plaintiffs do not waste their time or ours.  If Plaintiffs complete the entire deposition of a witness noticed in both capacities within a combined 7 hours, we will agree to count that as a single deposition.

**Rule 30(b)(6) Topics.**

General Objections / Topics 1 & 2. The Parties' positions have long been clear, and with the class certification deadline approaching, Plaintiffs cannot indefinitely delay raising any issues they may have.  If Plaintiffs intend to challenge the adequacy of 30(b)(6) testimony on these topics or the propriety of Google's objections, they should do so promptly.

Use of the Word "Generally." We dispute your characterization that Google's use of "generally" was improper. That phrasing is necessary given the impermissibly broad and far-reaching "individual topics," which include subtopics that are at best tangentially related to class certification. For example, Topic 4 sweeps in nearly every aspect of generative AI model development and deployment.  No witness or group of witnesses could reasonably address every question within the ambit of such an overbroad topic. That said, we do not disagree with the principle that designees should be prepared to testify about the "important or primary" issues within a noticed topic, as narrowed by Google's designations. Both Mr. Carver and Mr. Liechty easily satisfied that standard.

1

Topic 3. This Topic is overbroad and includes subparts unrelated to class certification. For example, subtopic (a)—Google's processes and criteria for identifying data to license from rightsholders—does not appear as you claim tied to the fourth (or any) fair-use factor. Nevertheless, Google already offered to designate a witness to speak generally to agreements and authorizations under which Google may have the right to obtain and/or reproduce data in connection with, inter alia, training its Bard, Imagen, Gemini, GLaM, or PaLM models. In the spirit of compromise, and without waiving its objections, Google will explicitly clarify that such agreements and authorizations include Google's terms of service, and that the designated topic includes the overall process for entering into such agreements and authorizations, as well as the particular terms and scope of representative agreements and authorizations.

Topic 4. Plaintiffs noticed this extremely broad Topic only days before Mr. Liechty's deposition, and it overlaps significantly with Topic 1 (*compare* Topic 4(a)-(b) *with* Topic 1). Google properly objected and produced a witness well prepared on the designated subtopics. Any failure to follow up during Mr. Liechty's testimony rests with Plaintiffs. Nonetheless, Google has already offered to further designate a witness to speak generally to the process of determining what content acquisition agreements Google will seek to enter with third-party companies, under which Google may have the right to obtain and/or reproduce data in connection with, inter alia, training its Bard, Imagen, Gemini, GLaM, or PaLM models. In the spirit of compromise, Google is willing to further designate a witness to testify generally about financial expenditures related to such agreements.

Topic 5. Plaintiffs have absurdly misrepresented Mr. Sampson: he did not offer to stipulate that damages are a common issue for class certification and they certainly are not. He stated Google may consider a stipulation about damages if Plaintiffs clarify what testimony is sought. Despite Google's objections (overbreadth, multiple subtopics, unnecessary verbosity, etc.), Google is willing to designate a witness to testify generally about revenue and/or profit for its Bard, Imagen, Gemini, GLaM, or PaLM models, and the extent to which such revenue or profit can be attributed to individual copyrighted works used in training.

Topic 6. Plaintiffs cannot notice a topic on "***potential*** Market Displacement Effects" and then demand testimony on ***actual*** effects. Moreover, as explained on the call, the fourth fair-use factor concerns "the effect of the use upon the ***potential*** market for or value of ***the copyrighted work***," 17 U.S.C. § 107 (emphasis added), not on "Creative Professionals." These distinctions matter, and Google stands on its original designations and objections.

Topic 7. This Topic assumes facts not in evidence—namely, that Google marketed its models as "tools or Substitutes for Commercially Available Creative Works." The document you cited does not support that premise, and we are not aware of any such marketing. The basis and scope of the Topic remain unclear. As with Topic 5, Google may consider a stipulation regarding commerciality, but Plaintiffs must provide precise language for the stipulation they seek.

Very truly yours,
Qifan



**Qifan Huang (he/him) | Associate | Wilson Sonsini Goodrich & Rosati**
650 Page Mill Road | Palo Alto, CA 94304-1050 | direct: 650.849.3456 | qhuang@wsgr.com

**From:** Huang, Qifan <qhuang@wsgr.com>
**Sent:** Tuesday, August 19, 2025 19:41
**To:** Alex Zeng <azeng@saverilawfirm.com>; Sampson, Paul <psampson@wsgr.com>; Gregory Mullens <gmullens@bfalaw.com>; Grubbs, Deborah <DGrubbs@wsgr.com>; Anne Davis <adavis@bfalaw.com>; Arielle Wagner <aswagner@locklaw.com>; Brian D. Clark <bdclark@locklaw.com>; Cadio Zirpoli <czirpoli@saverilawfirm.com>; Christopher Young <cyoung@saverilawfirm.com>; Elissa A. Buchanan <eabuchanan@saverilawfirm.com>; Evan Creutz <ecreutz@saverilawfirm.com>; Joseph Saveri <jsaveri@saverilawfirm.com>; Josh Samra <jsamra@bfalaw.com>; Laura M. Matson <lmmatson@locklaw.com>; Lesley Weaver <lweaver@bfalaw.com>; Mark I. Richards <mrichards@clarksonlawfirm.com>; Matthew Butterick <mb@butericklaw.com>; Ryan J. Clarkson <rclarkson@clarksonlawfirm.com>; Tiara Avaness <tavaness@clarksonlawfirm.com>; Tracey Cowan <tcowan@clarksonlawfirm.com>; Yana Hart <yhart@clarksonlawfirm.com>; Teti, Stephen J. <sjteti@locklaw.com>; Raak, Amber M. <amraak@locklaw.com>; Loeding, Greg A. <galoeding@locklaw.com>; Nicole Alioto <nalioto@saverilawfirm.com>; Aaron Cera <acera@saverilawfirm.com>
**Cc:** WSGR - In Re Google AI Copyright <InReGoogleAICopyright@wsgr.com>; googlegenai-plaintiffs@lists.locklaw.com
**Subject:** RE: In re Google Generative AI Copyright Litigation; Case No.: 5:23-cv-03440-EKL

Alex,

We are in receipt of your email and are considering a response. Sending an email 2 minutes before midnight on a Friday night and asking for a response within just over 1 business day is not reasonable. We will respond later this week.

Very truly yours,
Qifan

 **Qifan Huang (he/him) | Associate | Wilson Sonsini Goodrich & Rosati**
650 Page Mill Road | Palo Alto, CA 94304-1050 | direct: 650.849.3456 | qhuang@wsgr.com

---

**From:** Alex Zeng <azeng@saverilawfirm.com>
**Sent:** Friday, August 15, 2025 23:58
**To:** Sampson, Paul <psampson@wsgr.com>; Gregory Mullens <gmullens@bfalaw.com>; Grubbs, Deborah <DGrubbs@wsgr.com>; Anne Davis <adavis@bfalaw.com>; Arielle Wagner <aswagner@locklaw.com>; Brian D. Clark <bdclark@locklaw.com>; Cadio Zirpoli <czirpoli@saverilawfirm.com>; Christopher Young <cyoung@saverilawfirm.com>; Elissa A. Buchanan <eabuchanan@saverilawfirm.com>; Evan Creutz <ecreutz@saverilawfirm.com>; Joseph Saveri <jsaveri@saverilawfirm.com>; Josh Samra <jsamra@bfalaw.com>; Laura M. Matson <lmmatson@locklaw.com>; Lesley Weaver <lweaver@bfalaw.com>; Mark I. Richards <mrichards@clarksonlawfirm.com>; Matthew Butterick <mb@butericklaw.com>; Ryan J. Clarkson <rclarkson@clarksonlawfirm.com>; Tiara Avaness <tavaness@clarksonlawfirm.com>; Tracey Cowan <tcowan@clarksonlawfirm.com>; Yana Hart <yhart@clarksonlawfirm.com>; Teti, Stephen J. <sjteti@locklaw.com>; Raak, Amber M. <amraak@locklaw.com>; Loeding, Greg A. <galoeding@locklaw.com>; Nicole Alioto <nalioto@saverilawfirm.com>; Aaron Cera <acera@saverilawfirm.com>
**Cc:** WSGR - In Re Google AI Copyright <InReGoogleAICopyright@wsgr.com>; googlegenai-plaintiffs@lists.locklaw.com
**Subject:** Re: In re Google Generative AI Copyright Litigation; Case No.: 5:23-cv-03440-EKL

EXT - azeng@saverilawfirm.com

Counsel,

Thank you for meeting and conferring with us earlier today. We write to memorialize our positions.

**Deponents**

Thank you for letting us know potential alternative dates and locations for Mr. Ayoub's deposition (either August 22, 2025, in New York City or September 15, 2025, in London). We are conferring internally and will confirm whether either date or location may work for his deposition as soon as practicable.

**Rule 30(b)(6) Hours**

As Plaintiffs explained on the call, given the nature and complexity of generative AI cases, we believe it would be to the benefit of the Parties to have certainty as to deposition limits, particularly with respect to Rule 30(b)(6) testimony. We note that parties in nearly every other generative AI copyright case have agreed to Rule 30(b)(6) limits. Given the scope of this case, Plaintiffs believe 30 hours of Rule 30(b)(6) testimony for class certification purposes is appropriate. Separately, as explained by Mr. Mullens on August 12, Plaintiffs will agree that 6.5 hours have been used thus far (i.e., 3 hours for Brian Carver and 3.5 hours for Tyler Liechty's Rule 30(b)(6) deposition in light of the ongoing dispute regarding Mr. Liechty's preparedness and the propriety of Google's designation of him on a partial topic).

We understand that Google is standing on its position that each seven hours of Rule 30(b)(6) counts as a separate deposition against Rule 30's presumptive deposition limit. Plaintiffs believe the Parties are at impasse. Please confirm.

Separately, please confirm Google's position with respect to the total time Mr. Liechty's Rule 30(b)(6) deposition will count. If Google does not accept Plaintiffs' compromise, then the Parties are at impasse.

*Depositions of Individuals to be Deposed under both Rules 30(b)(1) and 30(b)(6)*

The Parties also discussed how to count depositions of individuals who are being deposed in both their personal capacity and are also designated as Rule 30(b)(6) designees. As Plaintiffs indicated, in the Northern District of California, Rule 30(b)(1) and 30(b)(6) depositions are presumptively subject to independent time limits. *Wesley v. Gates*, 2009 WL 1955997, at *1 (N.D. Cal. July 2, 2009) ("[T]he depositions of an individual who is noticed as an individual witness pursuant to Fed. R. Civ. P. 30(b)(1) and who is also produced as a corporate representative pursuant to Fed. R. Civ. P. 30(b)(6) are presumptively subject to independent seven-hour time limits.") (quoting *Sabre v. First Dominion Capital, LLC*, 2001 WL 1590544, at *1-2 (S.D.N.Y. Dec. 12, 2001)). Google, for its part, does not appear to disagree. Please confirm.

**Google's Responses and Objections to Rule 30(b)(6) Topics**

The Parties discussed Google's Responses and Objections to Plaintiffs' Second Amended Rule 30(b)(6) notice:

*Defendants' General Objections and Topics 1 and 2*

In order to advance discussions such that depositions are completed, the Parties did not discuss Google's general objections and Topics 1 and 2 today. That the Parties did not discuss Topics 1 and 2 today should not be construed as a waiver by Plaintiffs to challenge the adequacy of the deposition testimony that has been produced subject to those two topics, as Plaintiffs have noted previously in correspondence and meet and confers. Plaintiffs again note that Topics 1 and 2 have always been intended as early depositions to frame further discovery rather than as class or merits depositions.

*Defendants' Use of the Word "Generally"*

Throughout Google Responses and Objections for all Topics, Google caveats its witness's designations to "generally" provide testimony as to the noticed topic. This is insufficient—"[u]pon receipt of [a Rule 30(b)(6)] notice, the corporate party has a duty to educate a witness to provide complete, knowledgeable and un-evasive answers to questions on the noticed topics, to state the corporation's position, and to provide binding answers on behalf of the corporation." *Egbert*

*v. Equifax Info. Servs., LLC,* 2020 WL 1529568, at *2 (D. Nev. Mar. 31, 2020) (internal quotation marks and citations omitted). Preparing a witness to "generally" provide testimony is inconsistent with Rule 30(b)(6). *See generally*, Merriam-Webster, https://www.merriam-webster.com/dictionary/generally (last visited August 15, 2025) ("[I]n a general manner: such as [ ] in disregard of specific instances and with regard to an overall picture."). To be clear, Plaintiffs are not seeking that Google's designees be expected to be prepared on each and every document, discussion, communication etc., regarding the noticed topic. But merely being prepared to speak "generally" to a topic is insufficient. To avoid a dispute on the depth of a corporate witness' preparation, Plaintiffs will be satisfied if Google prepares its designees to be able to testify as to the important or primary discussions or deliberations regarding a noticed topic. This is the obligation imposed by Judge Hixson in *Kadrey v. Meta Platforms, Inc.*, No. 23-CV-03417-VC (TSH), 2024 WL 4650508, at *2 (N.D. Cal. Nov. 1, 2024) ("The appropriate way to proceed is for [Defendant] to educate its designee on the important or primary discussions or deliberations, and the Court will consider that sufficient."). Please let us know if Google will accept Plaintiffs' proffered preparation approach.

*Amended Topic 3*

With respect to Topic 3, Plaintiffs explained that the Topic is plainly relevant to Fair Use Factor 4, and in particular the effect on the market. There is no real dispute that this evidence would be relied upon by each class member if tried, and given that Google appears unable to confirm that it will not challenge class certification on this ground, Plaintiffs must proceed in seeking testimony. With respect to the scope of Topic 3, subject to the narrowing articulated by Judge Hixson in *Kadrey* identified herein to "important and primary" aspects of the Topic, Topic 3 appears adequately particularized.

*Amended Topic 4*

As to Topic 4, Plaintiffs will not belabor the extensive correspondence the Parties have exchanged as to the adequacy of Mr. Liechty's testimony with respect to Topic 4, as well as the propriety of Google's belated designation of Mr. Liechty to testify as to only a subpart of Topic 4 and the tardiness of its objections that denied Plaintiffs a meaningful opportunity to meet and confer. It is simply enough to say that Plaintiffs stand firm on their objections and their authority, and Google thus far has failed to support its position with any law. Plaintiffs further take issue to the extent Google contends that its obligations with respect to Topic 4 are complete, especially given that Google itself does not dispute it only designated Mr. Liechty to testify as to a portion of that Topic.

As a compromise, however, if Google's designee for Topic 4 is designated to provide testimony on subparts (a), (c) and (d), that may be acceptable to Plaintiffs. With respect to those subparts, Plaintiffs contend that subpart (a) is properly scoped. With respect to subparts (c) and (d), Plaintiffs would be amenable to narrowing said subparts to the models at issue. As indicated above, Plaintiffs would also expect that Mr. Liechty's deposition count only 3.5 hours, given the continuing dispute regarding his testimony. Please confirm whether this compromise is acceptable, or if the Parties are at impasse with respect to Topic 4.

*Amended Topic 5*

Google indicated it was willing to meet and confer with respect to Topic 5. Plaintiffs explained that at class certification, Plaintiffs bear the burden to show that "damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Comcast v. Behrend.* 569 U.S. 27, 35 (2013). Disgorgement is available as a statutory remedy, which would also be available class-wide. 17 U.S.C. 504(b). Google indicated it may be willing to stipulate that damages are a common issue for class certification purposes. Please propose a stipulation and Plaintiffs will consider it.

*Amended Topic 6*

Plaintiffs questioned whether Google would prepare a witness to testify about actual market effects and on the artists themselves. As to the former, Google responded that it was merely repeating Plaintiffs' Topic as drafted, but Plaintiffs pointed out that other terms such as "studies" and "analyses" may encompass actual effects as well. As to the latter, Google responded that it was a "distinction without a difference." Plaintiffs interpret this to mean that Google will present a witness to also testify as to any analyses or studies of effects on creatives themselves as opposed to the works. Please confirm.

*Amended Topic 7*

5

Plaintiffs explained that Topic 7 relates to Fair Use Factors 1 and 4 with respect to Google's commerciality and the effect on market respectively for the models at issue. Google indicated that it may be amenable to stipulating that these are common issues for purposes of class certification. If that understanding is correct, Plaintiffs are happy to consider any stipulation Google may propose with respect to issues on the commerciality of the models at issue.

Google said that it would respond to Plaintiffs next week after discussing on Monday. Given that depositions are rapidly approaching, and it would inure to the Parties' mutual benefit to have resolution of the scope of depositions before depositions begin in earnest, Plaintiffs' request the courtesy of Google's response by Tuesday, August 19, 2025, at 10:00 a.m. PT so that the Parties may present any outstanding issues to the Court promptly.

**Alex Zeng**
Associate

_____

601 California Street, Suite 1505
San Francisco, CA 94108
**T** 415.500.6800 x920
**F** 415.395.9940

---

**From:** Aaron Cera via Google Gen AI Plaintiffs <googlegenai-plaintiffs@lists.locklaw.com>
**Sent:** Thursday, August 14, 2025 2:22 PM
**To:** Sampson, Paul <psampson@wsgr.com>; Gregory Mullens <gmullens@bfalaw.com>; Grubbs, Deborah <DGrubbs@wsgr.com>; Anne Davis <adavis@bfalaw.com>; Arielle Wagner <aswagner@locklaw.com>; Brian D. Clark <bdclark@locklaw.com>; Cadio Zirpoli <czirpoli@saverilawfirm.com>; Christopher Young <cyoung@saverilawfirm.com>; Elissa A. Buchanan <eabuchanan@saverilawfirm.com>; Evan Creutz <ecreutz@saverilawfirm.com>; Joseph Saveri <jsaveri@saverilawfirm.com>; Josh Samra <jsamra@bfalaw.com>; Laura M. Matson <lmmatson@locklaw.com>; Lesley Weaver <lweaver@bfalaw.com>; Mark I. Richards <mrichards@clarksonlawfirm.com>; Matthew Butterick <mb@buttericklaw.com>; Ryan J. Clarkson <rclarkson@clarksonlawfirm.com>; Tiara Avaness <tavaness@clarksonlawfirm.com>; Tracey Cowan <tcowan@clarksonlawfirm.com>; Yana Hart <yhart@clarksonlawfirm.com>; Teti, Stephen J. <sjteti@locklaw.com>; Raak, Amber M. <amraak@locklaw.com>; Loeding, Greg A. <galoeding@locklaw.com>; Nicole Alioto <nalioto@saverilawfirm.com>
**Cc:** WSGR - In Re Google AI Copyright <InReGoogleAICopyright@wsgr.com>; googlegenai-plaintiffs@lists.locklaw.com <googlegenai-plaintiffs@lists.locklaw.com>
**Subject:** Google Gen AI Plaintiffs - Re: In re Google Generative AI Copyright Litigation; Case No.: 5:23-cv-03440-EKL

Paul,

Just because Google repeats the refrain that Mr. Liechty was adequately prepared and that Google properly narrowed the scope of the deposition does not make it so. Plaintiffs have offered a wealth of authority as to why Google is wrong, and have asked for Google to provide authority multiple times. Google's continued silence as to Plaintiffs' request, however, suggests that Google's position is unsupported by law. We again request any authority Google may have for its position.

Best,
Aaron

**Aaron Cera**

Associate

_____

**JOSEPH SAVERI**
**LAW FIRM**

601 California Street, Suite 1505
San Francisco, CA 94108
**T** 415.500.6800 x909
**F** 415.395.9940

---

**From:** Sampson, Paul <psampson@wsgr.com>
**Sent:** Tuesday, August 12, 2025 5:32 PM
**To:** Gregory Mullens <gmullens@bfalaw.com>; Grubbs, Deborah <DGrubbs@wsgr.com>; Anne Davis <adavis@bfalaw.com>; Arielle Wagner <aswagner@locklaw.com>; Brian D. Clark <bdclark@locklaw.com>; Cadio Zirpoli <czirpoli@saverilawfirm.com>; Christopher Young <cyoung@saverilawfirm.com>; Elissa A. Buchanan <eabuchanan@saverilawfirm.com>; Evan Creutz <ecreutz@saverilawfirm.com>; Joseph Saveri <jsaveri@saverilawfirm.com>; Josh Samra <jsamra@bfalaw.com>; Laura M. Matson <lmmatson@locklaw.com>; Lesley Weaver <lweaver@bfalaw.com>; Mark I. Richards <mrichards@clarksonlawfirm.com>; Matthew Butterick <mb@butticklaw.com>; Ryan J. Clarkson <rclarkson@clarksonlawfirm.com>; Tiara Avaness <tavaness@clarksonlawfirm.com>; Tracey Cowan <tcowan@clarksonlawfirm.com>; Yana Hart <yhart@clarksonlawfirm.com>; Teti, Stephen J. <sjteti@locklaw.com>; Raak, Amber M. <amraak@locklaw.com>; Loeding, Greg A. <galoeding@locklaw.com>; Nicole Alioto <nalioto@saverilawfirm.com>; Aaron Cera <acera@saverilawfirm.com>
**Cc:** WSGR - In Re Google AI Copyright <InReGoogleAICopyright@wsgr.com>; googlegenai-plaintiffs@lists.locklaw.com <googlegenai-plaintiffs@lists.locklaw.com>
**Subject:** RE: In re Google Generative AI Copyright Litigation; Case No.: 5:23-cv-03440-EKL

Greg –

We will review your proposal internally and be prepared to discuss it during our meet and confer. For now, I will simply note that, for the reasons discussed during our last call, Plaintiffs' claim that Mr. Liechty was unprepared to testify on the topics for which he was designated is without merit. Mr. Liechty was well prepared and testified on the record for six hours and forty-five minutes.

We are available to meet and confer on Friday from 2:00 to 3:00 p.m. PT.

7

Separately, we will be designating David Price to testify regarding Topics 3 and 4, as narrowed by Google's responses and objections, served on August 7. Although he is based in London, he can be available for deposition in San Francisco on September 16, 17, or 18. If Plaintiffs intend to depose Mr. Price as a Rule 30(b)(1) witness, that will need to take place at that time. We will object to any attempt to subject him to a second deposition.

Best,

Paul

---

**From:** Gregory Mullens <gmullens@bfalaw.com>
**Sent:** Tuesday, August 12, 2025 5:21 PM
**To:** Grubbs, Deborah <DGrubbs@wsgr.com>; Anne Davis <adavis@bfalaw.com>; Arielle Wagner <aswagner@locklaw.com>; Brian D. Clark <bdclark@locklaw.com>; Cadio R. Zirpoli <czirpoli@saverilawfirm.com>; Christopher K.L. Young <cyoung@saverilawfirm.com>; Elissa A. Buchanan <eabuchanan@saverilawfirm.com>; Evan Creutz <ecreutz@saverilawfirm.com>; Joseph R. Saveri <jsaveri@saverilawfirm.com>; Josh Samra <jsamra@bfalaw.com>; Laura M. Matson <lmmatson@locklaw.com>; Lesley Weaver <lweaver@bfalaw.com>; Mark I. Richards <mrichards@clarksonlawfirm.com>; Matthew Butterick <mb@butericklaw.com>; Ryan J. Clarkson <rclarkson@clarksonlawfirm.com>; Tiara Avaness <tavaness@clarksonlawfirm.com>; Tracey Cowan <tcowan@clarksonlawfirm.com>; Yana Hart <yhart@clarksonlawfirm.com>; Teti, Stephen J. <sjteti@locklaw.com>; Raak, Amber M. <amraak@locklaw.com>; Loeding, Greg A. <galoeding@locklaw.com>; Nicole Alioto <nalioto@saverilawfirm.com>; acera@saverilawfirm.com
**Cc:** WSGR - In Re Google AI Copyright <InReGoogleAICopyright@wsgr.com>; googlegenai-plaintiffs@lists.locklaw.com
**Subject:** RE: In re Google Generative AI Copyright Litigation; Case No.: 5:23-cv-03440-EKL

EXT - gmullens@bfalaw.com

---

Counsel,

Plaintiffs wish to meet and confer on Google's responses and objections to Plaintiffs' second amended notice of Rule 30(b)(6) deposition. Relatedly, to avoid dispute and to provide the Parties clarity as to the scope of discovery, Plaintiffs wish to reach an agreement on the hours for the Rule 30(b)(6) deposition. To that end, Plaintiffs propose **30 hours total** for the Rule 30(b)(6) deposition, pre-class certification. Plaintiffs will agree that 6.5 hours have already been used thus far (i.e., 3 hours for Brian Carver and 3.5 hours for Tyler Liechty in light of the ongoing dispute regarding Mr. Liechty's preparedness and the propriety of Google's designation of him on a partial topic).

Plaintiffs are available to meet and confer on Wednesday (8/13) from 2-3pm PT or Friday (8/15) in the afternoon PT. Please confirm one of those dates/times work or provide dates/times that do, thank you.

Best,

Greg

---

**From:** Grubbs, Deborah <DGrubbs@wsgr.com>
**Sent:** Thursday, August 7, 2025 5:12 PM
**To:** Anne Davis <adavis@bfalaw.com>; Arielle Wagner <aswagner@locklaw.com>; Brian D. Clark <bdclark@locklaw.com>; Cadio R. Zirpoli <czirpoli@saverilawfirm.com>; Christopher K.L. Young <cyoung@saverilawfirm.com>; Elissa A. Buchanan <eabuchanan@saverilawfirm.com>; Evan Creutz <ecreutz@saverilawfirm.com>; Gregory Mullens <gmullens@bfalaw.com>; Joseph R. Saveri <jsaveri@saverilawfirm.com>; Josh Samra <jsamra@bfalaw.com>; Laura M. Matson <lmmatson@locklaw.com>; Lesley Weaver <lweaver@bfalaw.com>; Mark I. Richards <mrichards@clarksonlawfirm.com>; Matthew Butterick <mb@but500ricklaw.com>; Ryan J. Clarkson <rclarkson@clarksonlawfirm.com>; Tiara Avaness <tavaness@clarksonlawfirm.com>; Tracey Cowan <tcowan@clarksonlawfirm.com>; Yana Hart <yhart@clarksonlawfirm.com>; Teti, Stephen J. <sjteti@locklaw.com>; Raak, Amber M. <amraak@locklaw.com>; Loeding, Greg A. <galoeding@locklaw.com>; Nicole Alioto <nalioto@saverilawfirm.com>; acera@saverilawfirm.com
**Cc:** WSGR - In Re Google AI Copyright <InReGoogleAICopyright@wsgr.com>; googlegenai-plaintiffs@lists.locklaw.com
**Subject:** In re Google Generative AI Copyright Litigation; Case No.: 5:23-cv-03440-EKL

Dear Counsel,

Please find attached Google LLC's Responses and Objections to Plaintiffs' Second Amended Notice of Deposition of Defendant Google LLC Pursuant to Federal Rule of Civil Procedure 30(b)(6).

Regards,

Deborah



**Deborah Grubbs (she/her) | Executive Assistant | Wilson Sonsini Goodrich & Rosati**

650 Page Mill Road | Palo Alto, CA 94304-1050 | (650) 493-9300 | dgrubbs@wsgr.com

Office Hours 9:30am to 6:00pm [Pacific]



This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

This e-mail is confidential and may be privileged. Use or disclosure of it by anyone other than a designated addressee is unauthorized. If you are not an intended recipient, please delete this e-mail. If you have received this communication in error, please notify us immediately by return email and destroy this communication and all copies thereof, including all attachments.

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

# EXHIBIT 7
## REDACTED

| | |
|---|---|
| **From:** | Gregory Mullens via Google Gen AI Plaintiffs <googlegenai-plaintiffs@lists.locklaw.com> |
| **Sent:** | Monday, October 27, 2025 4:47 PM |
| **To:** | Sampson, Paul; WSGR - In Re Google AI Copyright |
| **Cc:** | Aaron Cera via Google Gen AI Plaintiffs |
| **Subject:** | Google Gen AI Plaintiffs - Re: Custodians and deposition dates |

Paul, Plaintiffs confirmed for Google on Thursday's (10/23) meet and confer that we have not withheld any document based on its relevance to class certification. Google was unable to make the same confirmation. You stated that your team was having a meeting today and that you would get back to us. **Please confirm by tomorrow (October 28)** that Google has not withheld any document from Plaintiffs based on any basis related to phasing or bifurcation of discovery, including but not limited to Google's perceived relevance of a document to class certification. If Google has withheld documents on the above-mentioned grounds, by **Wednesday (October 29)** those documents must be produced, and by the same date Google needs to provide a written explanation for each document as to why it was withheld.

Best,

Greg

---

**From:** Gregory Mullens
**Sent:** Monday, October 20, 2025 5:15 PM
**To:** 'Sampson, Paul' <psampson@wsgr.com>; WSGR - In Re Google AI Copyright <InReGoogleAICopyright@wsgr.com>
**Cc:** Aaron Cera via Google Gen AI Plaintiffs <googlegenai-plaintiffs@lists.locklaw.com>
**Subject:** RE: Custodians and deposition dates

Paul, the parties have a dispute and must meet and confer once on this before briefing. We'll add this to the upcoming Thursday meet and confer.

Best,

Greg

---

**From:** Sampson, Paul <psampson@wsgr.com>
**Sent:** Friday, October 17, 2025 2:57 PM
**To:** Gregory Mullens <gmullens@bfalaw.com>; WSGR - In Re Google AI Copyright <InReGoogleAICopyright@wsgr.com>
**Cc:** Aaron Cera via Google Gen AI Plaintiffs <googlegenai-plaintiffs@lists.locklaw.com>
**Subject:** Re: Custodians and deposition dates

Greg,

Plaintiffs' request for four new custodians and four additional depositions is neither timely nor consistent with the Court's prior orders governing custodians and depositions. Discovery has proceeded for months under the Court's prior orders. If Plaintiffs believed these additional individuals were necessary custodians or deponents, you could have selected them within the Court-ordered limits and schedule. You chose others instead. You do not get to revisit that choice after the fact, having exhausted both your custodian and your deposition allotment.

This, along with the various other demands you made Wednesday, the day of your late-filed motion for class certification, are a clear and baseless attempt to distract and burden Google as it works up its response.

Best,
Paul

Get [Outlook for iOS](#)

---

**From:** Gregory Mullens <gmullens@bfalaw.com>
**Sent:** Wednesday, October 15, 2025 8:59 PM
**To:** Sampson, Paul <psampson@wsgr.com>; WSGR - In Re Google AI Copyright <InReGoogleAICopyright@wsgr.com>
**Cc:** Aaron Cera via Google Gen AI Plaintiffs <googlegenai-plaintiffs@lists.locklaw.com>
**Subject:** Custodians and deposition dates

**EXT - gmullens@bfalaw.com**

---

Counsel,

Plaintiffs request that Google designate four additional custodians (Megha Goel, Katie Millican, Rebeca Santamaria-Fernandez, and Linhai Qiu) because the record already produced confirms that each of these individuals possess first-hand, non-duplicative knowledge that goes to the heart of Plaintiffs' claims and Google's defenses. The documents below leave little doubt. And we note this list is non-exhaustive. Please also provide dates for their depositions.

**Goel**
GOOG-AIC-000049509 (noting Goel was in a meeting weighing whether the risk of training on books was worth the change in model abilities); GOOG-AIC-000649478 (███████████████████████████████████████████); GOOG-AIC-000313862 (Goel listed as author of Gemini data legal priorities document); GOOG-AIC-000117854 (Goel listed as "representing core PM for data" for Gemini); GOOG-AIC-000116921 (On Project Gemini Steering document Goel listed as owner of "ablations and evals for wide sharing"); GOOG-AIC-000386193 (Directing people to Goel for "data access questions" for at-issue models); GOOG-AIC-000348727 (Goel: "████████████████ ██████████████"); GOOG-AIC-000115985 (Goel: ████████████████████ ██████████████).

**Millican**
GOOG-AIC-000350701(███████████████████████████████████ ████████████████████████)( ██████████████████████████████████████████ ████( ███████████████████████████████████████); GOOG-AIC-000725099 (███████████████████████████████████)(███████████████

██████████████████████████████████████████████ ); GOOG-AIC-000674739 (Millican listed as Need LGTM (Looks Good to Me) on Gemini Small/Medium Pre-Training Data Filtering Overview); GOOG-AIC-000472033 (Millican listed as endorsing books content for Gemini and listed as part of the GDM Book Taskforce); GOOG-AIC-000524704 (Millican writing " ████████████ ███████████████████████████████████████████ ).

**Santa Maria-Fernandez**

GOOG-AIC-000603900 (Santamaria-Fernandez logging numerous inbound publisher dataset acquisition forms and appearing 158 times throughout the excel sheet about third party data tracking); GOOG-AIC-000761954 (Santa Maria-Fernandez discussing "the current process for ingesting third-party data into GDM" and describing " ████████████████████████████████ ███████████ ").

**Qiu**

GOOG-AIC-000370492 ████████████████████████████ ████████████████████████████████████ ; GOOG-AIC-000757950 (Qiu stating " ██████████████████████████████████████ "); GOOG-AIC-000667682 (Qiu is the sole name appearing on "Overview of Training Data Acquistion Projects in CDA" slide); GOOG-AIC-000761076 (Qiu listed as other on document about "Indexing Solution for ML training data"); GOOG-AIC-000372677 (Listed as one of two individuals on the " ████████████ " portion of slide deck discussing "Gemini pre-training needs a large volume of high quality tokens"); GOOG-AIC-000019997 (listed as author on document titled "Acquire 3P Open Source Data for Gemini").

By **Friday (October 17) at 5pm PT**, please confirm that Google will provide deposition dates of availability for the weeks of October 20th and October 27th (along with the dates), and that Google will designate Ms. Goel, Ms. Millican, Ms. Santamaria-Fernandez, and Mr. Qiu as custodians.

Best,

Greg

This e-mail is confidential and may be privileged. Use or disclosure of it by anyone other than a designated addressee is unauthorized. If you are not an intended recipient, please delete this e-mail. If you have received this communication in error, please notify us immediately by return email and destroy this communication and all copies thereof, including all attachments.

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

# EXHIBIT 8

DAVID H. KRAMER, SBN 168452
Email: dkramer@wsgr.com
MAURA L. REES, SBN 191698
Email: mrees@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300

ERIC P. TUTTLE, SBN 248440
Email: eric.tuttle@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone:  (206) 883-2500

PAUL J. SAMPSON (admitted *pro hac vice*)
Email: psampson@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
95 S. State Street, Suite 1000
Salt Lake City, Utah 84111
Telephone: (801) 401-8510

*Counsel for Defendant*
GOOGLE LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| *In re Google Generative AI Copyright Litigation* | Master File Case No.: 5:23-cv-03440-EKL<br>Consolidated with Case No.: 5:24-cv-02531-EKL<br><br>**GOOGLE LLC'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIFTH SET OF REQUESTS FOR PRODUCTION (Nos. 76–79)**<br><br>Judge:  Hon. Eumi K. Lee |

Pursuant to Federal Rules of Civil Procedure 26 and 34 and the Local Rules of the United States District Court for the Northern District of California, Defendant Google LLC ("Google") hereby serves responses and objections to Plaintiffs Steve Almond, Sarah Andersen, Burl Barer, Jessica Fink, Hope Larson, Jill Leovy, Connie McLennan, and Jingna Zhang's ("Plaintiffs") Fifth Set of Requests for Production to Defendant Google LLC (Nos. 76–79) ("Requests") as follows:

## PRELIMINARY STATEMENT

The following responses are provided subject to all appropriate objections (including, without limitation, objections concerning competency, relevancy, materiality, and propriety) that would require the exclusion of any statement contained herein if the statement were made by a witness present and testifying in court.

In addition, all responses to the Requests are based upon the information presently known to Google. Google expressly reserves the right to revise and supplement its responses to the Requests. A response to a Request shall not be deemed a waiver of any applicable objection or an admission of relevancy.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1. As a threshold matter, the prolixity, nested structure, vagueness, overlap, and overbreadth of the Definitions render interpreting the Requests themselves (let alone drafting responses) an unduly burdensome effort that is disproportionate to the needs of this case.

2. Google objects to Plaintiffs' definition of "Agent" on the grounds that the definition is overbroad, vague and ambiguous, and unduly burdensome. Google further objects to the definition on the grounds that it includes Google's attorneys and requires Google to provide a legal conclusion or to produce information that is protected by any privilege, including the attorney-client privilege, work product immunity doctrine, common interest privilege, or any other applicable privilege, immunity, or restriction on discovery. For purposes of responding to the Requests, "Agent" will be defined as those authorized agents and employees acting on Google's behalf and within the scope of their agency or employment.

3. Google objects to Plaintiffs' definition of "Alphabet" as overly broad, vague and ambiguous, and unduly burdensome. In particular, Plaintiffs' definition is overly broad because it

encompasses not only Alphabet Inc., but also "its corporations, businesses, subsidiaries, divisions, subdivisions, predecessors, successors, parents, and affiliates," as well as "their respective officers, directors, employees, partners, representatives, Agents, attorneys, accountants, or other persons occupying similar positions or performing similar functions." Google further objects to Plaintiffs' definition on the grounds that it includes Alphabet's attorneys and requires Alphabet to provide a legal conclusion or to produce information that is protected by any privilege, including the attorney-client privilege, work product immunity doctrine, common interest privilege, or any other applicable privilege, immunity, or restriction on discovery. For purposes of responding to the Requests, "Alphabet" will be defined as Alphabet Inc. and those authorized agents and employees acting on its behalf and within the scope of their agency or employment.

4.      Google objects to Plaintiffs' definition of the terms "Artificial Intelligence" and "AI" as vague and ambiguous. Google further objects to this definition as overly broad and unduly burdensome to the extent it encompasses information not relevant to the parties' claims or defenses and would require Google to collect information that is disproportionate to the needs of this case.

5.      Google objects to Plaintiffs' definition of "Communication" to the extent it exceeds the scope contemplated by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, or other applicable law. Google further objects to Plaintiffs' definition as overly broad and unduly burdensome to the extent it encompasses information not relevant to the parties' claims or defenses and would require Google to collect information that is disproportionate to the needs of this case.

6.      Google objects to the definition of "Consolidated Plaintiffs" insofar as it encompasses named Plaintiffs who have voluntarily dismissed their claims in this action, including Kirsten Hubbard and Mike Lemos. *See* ECF Nos. 246, 247.

7.      Google objects to Plaintiffs' page-long, multi-part definition of "Document" to the extent it exceeds the scope contemplated by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, or other applicable law. Google further objects to Plaintiffs' definition as overly broad and unduly burdensome to the

extent it encompasses information not relevant to the parties' claims or defenses and would require Google to collect information that is disproportionate to the needs of this case.

8. Google objects to Plaintiffs' definition of "Google" as overly broad, vague and ambiguous, and unduly burdensome. In particular, Plaintiffs' definition is overly broad because it encompasses not only Google LLC, but also "its corporations, businesses, subsidiaries, divisions, subdivisions, predecessors, successors, parents, and affiliates," as well as "their respective officers, directors, employees, partners, representatives, Agents, attorneys, accountants, or other persons occupying similar positions or performing similar functions." Google further objects to Plaintiffs' definition on the grounds that it includes Google's attorneys and requires Google to provide a legal conclusion or to produce information that is protected by any privilege, including the attorney-client privilege, work product immunity doctrine, common interest privilege, or any other applicable privilege, immunity, or restriction on discovery. For purposes of responding to the Requests, "Google" will be defined as Google LLC and those authorized agents and employees acting on its behalf and within the scope of their agency or employment.

9. Google objects to Plaintiffs' definition of "Identify" as overly broad. As Plaintiffs define it, "Identify" goes far beyond what the normal English language meaning of the word can bear, using multiple subparts to require Google to provide numerous categories of information for each document, entity, or natural person Google identifies. Google further objects to Plaintiffs' definition of "Identify" "with respect to a Document" as duplicative insofar as it seeks information (such as "the Bates number of the Document") that will be provided in the event that Google produces that document. In addition, Google objects to Plaintiffs' definition of "Identify" "with respect to a natural Person" insofar as that definition requires Google to collect information (such as their last known address) that is not relevant to the parties' claims or defenses in this action and is not proportional to the needs of the case. Google further objects to the extent Plaintiffs' definition seeks confidential information relating to third parties or subject to privacy obligations, such as physical addresses. Google additionally objects to this Definition to the extent that it calls for information protected from discovery by any evidentiary privilege, including without limitation the attorney-client privilege, the work product doctrine, the common interest privilege, or other

applicable privileges or immunities recognized by law. Inadvertent disclosure of any such information shall not be deemed a waiver of any privilege or immunity. Google also objects to this Definition to the extent that Plaintiffs seek to require Google to identify privileged communications or information in a manner more detailed than required by the Federal Rules of Civil Procedure.

10.     Google objects to Plaintiffs' definition of "Imagen" as overly broad, vague and ambiguous, and unduly burdensome. Plaintiffs' definition is unduly burdensome and overly broad insofar as it includes "all versions, iterations, and/or model family members" of the Imagen model, regardless of whether Plaintiffs claim that Google infringed their copyrights in training those versions or iterations.

11.     Google objects to the definition of "Person" as vague and ambiguous. In particular, the definition is overly broad, vague and ambiguous, and unduly burdensome insofar as it encompasses "proprietorships, legal or governmental entities, corporations, partnerships, trusts, joint ventures, groups, associations, or organizations," as well as "all affiliates, divisions, controlled companies, subsidiaries, or otherwise related entities and all of his, her, or its current and former officers, directors, employees, agents, representatives, attorneys, and accountants." Google further objects to this definition as overly broad and unduly burdensome to the extent it encompasses information not relevant to the parties' claims or defenses and would require Google to collect information that is disproportionate to the needs of this case. For purposes of responding to the Requests, "Person" will be defined as any natural person.

12.     Google objects to the definition of the terms "You" and "Your" on the grounds that the definition is overbroad, vague and ambiguous, and unduly burdensome. Google further objects to the definition to the extent it seeks information not currently in the possession, custody, or control of Google. Google will respond solely on behalf of itself (Google LLC), and not any other person or entity. Google further objects to the definition on the grounds that it includes Google's attorneys and requires Google to provide a legal conclusion or to produce information that is protected by any privilege, including the attorney-client privilege, work product immunity doctrine, common interest privilege, or any other applicable privilege, immunity, or restriction on

discovery. For purposes of responding to the Requests, "You" and "Your" will be defined as Google LLC and those authorized agents and employees acting on its behalf and within the scope of their agency or employment.

13.     Google objects to the Instructions accompanying Plaintiffs' Requests to the extent that such Instructions purport to impose obligations on Google in excess of the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, or any other applicable law, or to the extent that the Instructions purport to require Google to take actions or provide information not required by or which exceed the scope of the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, or any other applicable law.

14.     Google objects to the Instructions insofar as they purport to impose requirements on Google's production of electronically stored information (ESI) that exceed the scope of the protocol governing the production of ESI in this action.

15.     Google objects to the Instruction defining the "Relevant Period" as "January 1, 2017 until the Present" to the extent it contravenes the Court's determination as to the relevant time period for discovery in this matter (ECF No. 192), to the extent it calls for information that is beyond the scope of the three-year statute of limitations applicable to Plaintiffs' claims, to the extent it calls for information that post-dates the filing of Plaintiffs' Consolidated Amended Complaint, and/or to the extent it encompasses information not relevant to the parties' claims or defenses. For purposes of responding to the Requests, "Relevant Period" will be defined as July 11, 2020 to December 20, 2024.

## RESPONSES AND OBJECTIONS TO
## FIFTH SET OF REQUESTS FOR PRODUCTION

**DOCUMENT REQUEST NO. 76:**

All Documents and Communications related to "The Books Licensing deals" discussed at the "AI Business Velocity Forum" or "AI Biz Velocity Forum" or any "[Biz/Business] Velocity meeting[s]." *See, e.g.*, GOOG-AIC-000409124; GOOG-AIC-000710517; GOOG-AIC-000710556; GOOG-AIC-000404223; GOOG-AIC-000117092; GOOG-AIC-000406179.

**RESPONSE TO DOCUMENT REQUEST NO. 76:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad (especially insofar as it demands that Google produce "All Documents and Communications"), vague and ambiguous, and insofar as it is not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is overly broad, vague, and ambiguous in its use of the terms "The Books Licensing deals," "AI Business Velocity Forum," "AI Biz Velocity Forum," and "[Biz/Business] Velocity meeting[s]." The Request is also overly broad insofar as it requests that Google produce documents "related to 'The Books Licensing deals' discussed at the 'AI Business Velocity Forum' or 'AI Biz Velocity Forum' or any '[Biz/Business] Velocity meeting[s],'" regardless of whether those materials relate to the models at issue in this action or have any relevance to class certification. This sweeping Request is untethered to Plaintiffs' claims as narrowed by the Court's September 11 Order confining the scope of at-issue models in this action to Bard, Gemini, Imagen, LaMDA, PaLM, and GLaM. ECF No. 216.

Google further objects to this Request as unduly burdensome to the extent that this Request seeks the production of custodial documents. As Plaintiffs know, the deadline for the Parties to substantially complete their production of custodial documents was July 29, 2025—more than three months ago. Using search terms the Parties agreed upon, Google collected and then reviewed and produced many thousands of documents from 25 different custodians. Insofar as Plaintiffs would have Google undertake that process again, in order to collect and produce documents having minimal relevance to the parties' claims or defenses, Google objects that this Request is grossly disproportionate to the needs of this case.

Google further objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

In addition, Google objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. To the extent this Request seeks materials relating to third parties,

Google objects on the grounds that the Request calls for information that is not relevant to Plaintiffs' claims, that is not in Google's possession or control, or that is subject to confidentiality agreements with third parties.

Google also objects to this Request on the grounds that it seeks information that Plaintiffs do not need for the purpose of their motion for class certification.

Without limiting or waiving the foregoing objections, Google will produce reasonably accessible non-privileged slide decks, presentations, and speeches from AI Business Velocity meetings, including any speaker notes or comments contained therein, insofar as those documents expressly discuss either the data that was used to train PaLM, GLaM, LaMDA, Bard, Gemini, or Imagen, or Google's acquisition of training data for the purpose of training PaLM, GLaM, LaMDA, Bard, Gemini, or Imagen, and insofar as those documents are located through an inquiry proportionate to the needs of the case into centralized, project-level documents, if any. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 77:**

All Documents, Including slide decks, presentations, speaker notes, comments, speeches, handouts, notes, or other materials drafted by Google in preparation for or to be disseminated at the "AI Business Velocity Forum" or "AI Biz Velocity Forum" or any "[Biz/Business] Velocity meeting[s]." *See, e.g.*, GOOG-AIC-000409124; GOOG-AIC-000710517; GOOG-AIC-000710556; GOOG-AIC-000404223; GOOG-AIC-000117092; GOOG-AIC-000406179.

**RESPONSE TO DOCUMENT REQUEST NO. 77:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad (especially insofar as it demands that Google produce "All Documents"), vague and ambiguous, and insofar as it is not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is overly broad, vague, and ambiguous in its use of the terms "comments," "notes," "other materials," "drafted by Google," "AI Business Velocity Forum," "AI Biz Velocity Forum," and "[Biz/Business] Velocity

meeting[s]." Among other issues, it is unclear what it means for materials to be "drafted by Google," particularly given the overly broad, vague, and ambiguous definition of "Google" employed by Plaintiffs. It is impractical and unduly burdensome to determine whether a particular Google employee may have created a given document "in preparation for" an "AI Business Velocity" forum or meeting.

The Request is also overly broad insofar as it requests that Google produce "materials drafted by Google in preparation for or to be disseminated at the 'AI Business Velocity Forum' or 'AI Biz Velocity Forum' or any '[Biz/Business] Velocity meeting[s],'" regardless of whether those materials relate to the models at issue in this action or have any relevance to class certification.

Google further objects to this Request as unduly burdensome to the extent that this Request seeks the production of custodial documents. As Plaintiffs know, the deadline for the Parties to substantially complete their production of custodial documents was July 29, 2025—more than three months ago. Using search terms the Parties agreed upon, Google collected and then reviewed and produced many thousands of documents from 25 different custodians. Insofar as Plaintiffs would have Google undertake that process again, in order to collect and produce documents having minimal relevance to the parties' claims or defenses, Google objects that this Request is grossly disproportionate to the needs of this case.

Google further objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

In addition, Google objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. To the extent this Request seeks materials relating to third parties, Google objects on the grounds that the Request calls for information that is not relevant to Plaintiffs' claims, that is not in Google's possession or control, or that is subject to confidentiality agreements with third parties.

Google also objects to this Request on the grounds that it seeks information that Plaintiffs do not need for the purpose of their motion for class certification.

Without limiting or waiving the foregoing objections, Google will produce reasonably accessible non-privileged slide decks, presentations, and speeches from AI Business Velocity meetings, including any speaker notes or comments contained therein, insofar as those documents expressly discuss either the data that was used to train PaLM, GLaM, LaMDA, Bard, Gemini, or Imagen, or Google's acquisition of training data for the purpose of training PaLM, GLaM, LaMDA, Bard, Gemini, or Imagen, and insofar as those documents are located through an inquiry proportionate to the needs of the case into centralized, project-level documents, if any. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 78:**

All Documents, Including slide decks, presentations, speaker notes, comments, speeches, handouts, notes, or other materials received or obtained by Google during or in relation to the "AI Business Velocity Forum" or "AI Biz Velocity Forum" or any "[Biz/Business] Velocity meeting[s]." *See, e.g.*, GOOG-AIC-000409124; GOOG-AIC-000710517; GOOG-AIC-000710556; GOOG-AIC-000404223; GOOG-AIC-000117092; GOOG-AIC-000406179.

**RESPONSE TO DOCUMENT REQUEST NO. 78:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad (especially insofar as it demands that Google produce "All Documents"), vague and ambiguous, and insofar as it is not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is overly broad, vague, and ambiguous in its use of the terms "comments," "notes," "other materials," "received or obtained by Google," "AI Business Velocity Forum," "AI Biz Velocity Forum," and "[Biz/Business] Velocity meeting[s]." It is especially unclear what it means for materials to be "received or obtained by Google" "during or in relation to" an "AI Business Velocity" forum or meeting.

The Request is also overly broad insofar as it requests that Google produce "materials received or obtained by Google during or in relation to the 'AI Business Velocity Forum' or 'AI

Biz Velocity Forum' or any '[Biz/Business] Velocity meeting[s],'" regardless of whether those materials relate to the models at issue in this action or have any relevance to class certification.

Google further objects to this Request as unduly burdensome to the extent that this Request seeks the production of custodial documents. As Plaintiffs know, the deadline for the Parties to substantially complete their production of custodial documents was July 29, 2025—more than three months ago. Using search terms the Parties agreed upon, Google collected and then reviewed and produced many thousands of documents from 25 different custodians. Insofar as Plaintiffs would have Google undertake that process again, in order to collect and produce documents having minimal relevance to the parties' claims or defenses, Google objects that this Request is grossly disproportionate to the needs of this case.

Google further objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

In addition, Google objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. To the extent this Request seeks materials relating to third parties, Google objects on the grounds that the Request calls for information that is not relevant to Plaintiffs' claims, that is not in Google's possession or control, or that is subject to confidentiality agreements with third parties.

Google also objects to this Request on the grounds that it seeks information that Plaintiffs do not need for the purpose of their motion for class certification.

Google further objects to this Request on the grounds that the information sought by this Request is duplicative of Request No. 77.

Without limiting or waiving the foregoing objections, Google will produce reasonably accessible non-privileged slide decks, presentations, and speeches from AI Business Velocity meetings, including any speaker notes or comments contained therein, insofar as those documents expressly discuss either the data that was used to train PaLM, GLaM, LaMDA, Bard, Gemini, or Imagen, or Google's acquisition of training data for the purpose of training PaLM, GLaM,

LaMDA, Bard, Gemini, or Imagen, and insofar as those documents are located through an inquiry proportionate to the needs of the case into centralized, project-level documents, if any. To the extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

**DOCUMENT REQUEST NO. 79:**

All Documents, Including slide decks, presentations, speaker notes, comments, speeches, handouts, notes, or other materials prepared by, prepared for, provided to, or received by the Alphabet Board of Directors related to the "AI Business Velocity Forum" or "AI Biz Velocity Forum" or any "[Biz/Business] Velocity meeting[s]." *See, e.g.*, GOOG-AIC-000409124; GOOG-AIC-000710517; GOOG-AIC-000710556; GOOG-AIC-000404223; GOOG-AIC-000117092; GOOG-AIC-000406179.

**RESPONSE TO DOCUMENT REQUEST NO. 79:**

Google objects to this Request on the grounds that it is unduly burdensome, overly broad (especially insofar as it demands that Google produce "All Documents"), vague and ambiguous, and insofar as it is not relevant to the claims in the Complaint or any party's defenses or proportional to the needs of the case. In particular, the Request is overly broad, vague, and ambiguous in its use of the terms "comments," "notes," "other materials," "related to," "AI Business Velocity Forum," "AI Biz Velocity Forum," and "[Biz/Business] Velocity meeting[s]."

The Request is also overly broad insofar as it requests that Google produce "materials prepared by, prepared for, provided to, or received by the Alphabet Board of Directors related to the 'AI Business Velocity Forum' or 'AI Biz Velocity Forum' or any '[Biz/Business] Velocity meeting[s],'" regardless of whether those materials relate to the models at issue in this action or have any relevance to class certification.

Google further objects to this Request insofar as it targets documents and information in the possession of and related to Alphabet. The Court has dismissed Plaintiffs' vicarious infringement claim, and Alphabet, from this action with prejudice. ECF No. 216. This renders

Plaintiffs' request for documents "prepared by, prepared for, provided to, or received by the Alphabet Board of Directors" not only irrelevant, but vexatious.

Google further objects to this Request as unduly burdensome to the extent that this Request seeks the production of custodial documents. As Plaintiffs know, the deadline for the Parties to substantially complete their production of custodial documents was July 29, 2025—more than three months ago. Using search terms the Parties agreed upon, Google collected and then reviewed and produced many thousands of documents from 25 different custodians. Insofar as Plaintiffs would have Google undertake that process again, in order to collect and produce documents having minimal relevance to the parties' claims or defenses, Google objects that this Request is grossly disproportionate to the needs of this case.

Google further objects to this Request insofar as it seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

In addition, Google objects to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Google that is out of line with Plaintiffs' legitimate needs. To the extent this Request seeks materials relating to third parties, Google objects on the grounds that the Request calls for information that is not relevant to Plaintiffs' claims, that is not in Google's possession or control, or that is subject to confidentiality agreements with third parties.

Google also objects to this Request on the grounds that it seeks information that Plaintiffs do not need for the purpose of their motion for class certification.

Without limiting or waiving the foregoing objections, Google will produce reasonably accessible non-privileged slide decks, presentations, and speeches from AI Business Velocity meetings, including any speaker notes or comments contained therein, insofar as those documents expressly discuss either the data that was used to train PaLM, GLaM, LaMDA, Bard, Gemini, or Imagen, or Google's acquisition of training data for the purpose of training PaLM, GLaM, LaMDA, Bard, Gemini, or Imagen, and insofar as those documents are located through an inquiry proportionate to the needs of the case into centralized, project-level documents, if any. To the

extent Plaintiffs believe any further response to this Request is necessary, Google is willing to meet and confer with Plaintiffs on the relevance of that information, including as to class certification.

Dated:  November 3, 2025

By: */s/ Paul J. Sampson*

Paul J. Sampson (admitted *pro hac vice*)
Email: psampson@wsgr.com
**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
95 S State Street, Suite 1000
Salt Lake City, UT 84111
Telephone:  (801) 401-8510

David H. Kramer, SBN 168452
Email: dkramer@wsgr.com
Maura L. Rees, SBN 191698
Email: mrees@wsgr.com
**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300

Eric P. Tuttle, SBN 248440
Email: eric.tuttle@wsgr.com
**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone:  (206) 883-2500

*Counsel for Defendant*
GOOGLE LLC

## CERTIFICATE OF SERVICE

I, Deborah Grubbs, declare:

I am employed in Santa Clara County, State of California. I am over the age of 18 years and not a party to the within action. My business address is Wilson Sonsini Goodrich & Rosati, 650 Page Mill Road, Palo Alto, California 94304-1050.

On this date, I served:

**1.    GOOGLE LLC'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIFTH SET OF REQUESTS FOR PRODUCTION (Nos. 76–79)**

☒    By forwarding the document(s) by electronic transmission on this date to the Internet email address(es) listed below:

**JOSEPH SAVERI LAW FIRM, LLP**

| | |
|---|---|
| Joseph R. Saveri | Email: jsaveri@saverilawfirm.com |
| Christopher K.L. Young | Email: cyoung@saverilawfirm.com |
| Elissa A. Buchanan | Email: eabuchanan@saverilawfirm.com |
| Evan Creutz | Email: ecreutz@saverilawfirm.com |
| Cadio R. Zirpoli | Email: czirpoli@saverilawfirm.com |
| Aaron Cera | Email: acera@saverilawfirm.com |
| Alexander Zeng | Email: azeng@saverilawfirm.com |
| Louis Andrew Kessler | Email: lkessler@saverilawfirm.com |

**BUTTERICK LAW**

| | |
|---|---|
| Matthew Butterick | Email: mb@buttericklaw.com |

**LOCKRIDGE GRINDAL NAUEN PLLP**

| | |
|---|---|
| Brian D. Clark | Email: bdclark@locklaw.com |
| Laura M. Matson | Email: lmmatson@locklaw.com |
| Arielle Wagner | Email: aswagner@locklaw.com |
| Stephen J. Teti | Email: sjteti@locklaw.com |
| Consuela Abotsi-Kowu | Email: cmabotsi-kowu@locklaw.com |

**BLEICHMAR FONTI & AULD LLP**

| | |
|---|---|
| Lesley E. Weaver | Email: lweaver@bfalaw.com |
| Anne K. Davis | Email: adavis@bfalaw.com |
| Joshua D. Samra | Email: jsamra@bfalaw.com |
| Gregory S. Mullens | Email: gmullens@bfalaw.com |

**CLARKSON LAW FIRM, P.C.**

| | |
|---|---|
| Ryan J. Clarkson | Email: rclarkson@clarksonlawfirm.com |
| Yana Hart | Email: yhart@clarksonlawfirm.com |
| Mark I. Richards | Email: mrichards@clarksonlawfirm.com |
| Tiara Avaness | Email: tavaness@clarksonlawfirm.com |
| Tracey Cowan | Email: tcowan@clarksonlawfirm.com |

CERTIFICATE OF SERVICE                    -1-              MASTER FILE CASE NO.: 5:23-CV-03440-EKL

*Counsel for Plaintiffs*

STEVE ALMOND, SARAH ANDERSEN, BURL BARER, JESSICA FINK, HOPE LARSON, JILL LEOVY, CONNIE MCLENNAN, AND JINGNA ZHANG, AND THE PROPOSED CLASS

I am readily familiar with Wilson Sonsini Goodrich & Rosati's practice for collection and processing of documents for delivery according to instructions indicated above. In the ordinary course of business, documents would be handled accordingly.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct. Executed on November 3, 2025.

_____
Deborah Grubbs

# EXHIBIT 9

| | *In re Mosaic LLM Litigation,* **Case No. 3:24-cv-01451-CRB (N.D. Cal.)** | *Nazemian v. NVIDIA,* **Case No. 4:24-cv-01454-JST (N.D. Cal.)** | *Andersen, et al. v. Stability AI, et al.,* **Case No. 3:23-00201 (N.D. Cal.)** | *In re OpenAI Chat GPT Litig.,* **Master File No. 3:23-cv-03223-AMO (N.D. Cal.)** | *In re OpenAI ChatGPT Litigation,* **Master File No. 1:25-md-03143-SHS-OTW (S.D.N.Y.)** |
|---|---|---|---|---|---|
| **Length of discovery period** | May 15, 2024 – January 3, 2026 (597 days) (ECF No. 47 at 7, noting date of Rule 26(f) conference; ECF No. 238, ordering fact discovery cutoff). Discovery is closed. | June 19, 2024 – May 5, 2026 (685 days) (ECF No. 62 at 5, noting date of Rule 26(f) conference; ECF No. 251, granting stipulated extension). Discovery is open. | October 29, 2024 – June 1, 2026[1] (580 days) Discovery is open. | October 5, 2023 – April 28, 2025 (571 days) The case is no longer active after transfer to the OpenAI MDL in S.D.N.Y. | June 6, 2025 – February 27, 2026 (266 days) (Exclusive of discovery that occurred prior to MDL centralization.) Discovery is open. |
| **Bifurcation** | No. But Defendants proposed phasing discovery with discovery and dispositive briefing initially focusing on fair use, followed by merits and class certification discovery. (ECF No. | No. | Defendants argued for bifurcation but Judge Orrick rejected it. He stated that sequencing has never helped him, that it invariably just extends the case schedule, and that he wanted all first-round motions—summary | No. | No. |

[1] On August 3, 2023, Defendants filed an administrative motion (*Stability* ECF No. 92) to, *inter alia*, stay discovery pending resolution of their motions to dismiss. The Court effectively granted the stay via a minute order (*Stability* ECF No. 204), keeping discovery on hold while the motions to dismiss and subsequent amended pleadings were resolved. On October 29, 2024, Judge Orrick issued a minute order (*Stability* ECF No. 240) conditionally lifting the discovery stay. The Court set a full schedule through trial. On February 2, 2026, the Court granted in part Plaintiffs' motion to modify the case schedule (*Stability* ECF No. 409), pushing all deadlines back by roughly three months. Fact discovery now closes June 1, 2026, with trial set for June 1, 2027.

| | *In re Mosaic LLM Litigation,* Case No. 3:24-cv-01451-CRB (N.D. Cal.) | *Nazemian v. NVIDIA,* Case No. 4:24-cv-01454-JST (N.D. Cal.) | *Andersen, et al. v. Stability AI, et al.,* Case No. 3:23-00201 (N.D. Cal.) | *In re OpenAI Chat GPT Litig.,* Master File No. 3:23-cv-03223-AMO (N.D. Cal.) | *In re OpenAI ChatGPT Litigation,* Master File No. 1:25-md-03143-SHS-OTW (S.D.N.Y.) |
|---|---|---|---|---|---|
| | 47 at 10.) This was not adopted. | | judgment and class certification—heard together at a single hearing. (ECF No. 289 at 4-7.) | | |
| **Number of custodians** | "Each side will identify the ten (10) custodians believed most likely to have discoverable ESI in their possession, custody, or control." "The Requesting Party may request that the Producing Party add up to three (3) additional custodians, to which the Producing Party will object only on the basis of Apex considerations." (ECF No. 61.) | 24 total per Producing Party under the ESI Order. (ECF No. 98.) | Twelve per Producing Party. Named Plaintiffs count as one Producing Party; the two Stability AI entities count as one. The parties can agree to modify these limits without court leave, and either side can request additional custodians as discovery progresses—contested requests go to the Court on a Rule 26 proportionality showing. (ECF No. 275.) | The parties will meet and confer to identify the twenty-four (24) custodians believed most likely to have non-duplicative discoverable ESI in their possession, custody, or control. (*In re ChatGPT* ECF No. 175.) | ". . . the producing party will conduct a reasonable investigation to identify custodians and use search terms reasonably calculated to identify responsive materials consistent with the parties' discovery obligations pursuant to the Federal Rules of Civil Procedure." (ECF No. 162.) |

|  | *In re Mosaic LLM Litigation,* Case No. 3:24-cv-01451-CRB (N.D. Cal.) | *Nazemian v. NVIDIA,* Case No. 4:24-cv-01454-JST (N.D. Cal.) | *Andersen, et al. v. Stability AI, et al.,* Case No. 3:23-00201 (N.D. Cal.) | *In re OpenAI Chat GPT Litig.,* Master File No. 3:23-cv-03223-AMO (N.D. Cal.) | *In re OpenAI ChatGPT Litigation,* Master File No. 1:25-md-03143-SHS-OTW (S.D.N.Y.) |
|---|---|---|---|---|---|
| **Number of hours for depos** | 7 hours per witness per the Federal Rules. No deposition protocol entered. | 7 hours per 30(b)(1) witness. 23 hours maximum and 12 hours minimum across all 30(b)(6) designees. (ECF No. 151.) | Each fact witness deposition is limited to seven hours on the record. Rule 30(b)(6) depositions are capped at thirteen hours per Defendant across all designees. Where a witness is designated in both an individual and corporate representative capacity, each deposition counts separately with independent hourly limits. (ECF No. 274.) | *See* below. | 11 hours per 30(b)(1) witness if deposition is noticed in both News and Class cases. Otherwise, 7 hours. Maximum of 25 hours for OpenAI and Microsoft 30(b)(6) witnesses. (ECF No. 355.) |
| **Number of depositions** | Plaintiffs sought leave to take more than 10 depositions. The Court granted Plaintiffs' request for five extra party depositions. (ECF No. 187.) Plaintiffs took 15 depositions of Party-affiliated witnesses. | 20.5 30(b)(1) depositions of Party-affiliated fact witnesses, "with each deposition limited to seven hours on the record and the half deposition limited to 3.5 hours on the record." (ECF No. | No deposition have yet taken place. Plaintiffs get up to 30 depositions of Defendants' fact witnesses, allocated across all Defendants at Plaintiffs' discretion. Not counted against these | Each side is permitted up to 105 hours of fact depositions (the equivalent of 15 depositions) including party and non-party witnesses, but excluding 30(b)(6) testimony - any additional time | Class Plaintiffs are entitled to 105 hours of deposition time with OpenAI witnesses, exclusive of any deposition time that occurred prior to MDL centralization on April 1, 2025, and exclusive of the Rule |

| | *In re Mosaic LLM Litigation*, Case No. 3:24-cv-01451-CRB (N.D. Cal.) | *Nazemian v. NVIDIA*, Case No. 4:24-cv-01454-JST (N.D. Cal.) | *Andersen, et al. v. Stability AI, et al.*, Case No. 3:23-00201 (N.D. Cal.) | *In re OpenAI Chat GPT Litig.*, Master File No. 3:23-cv-03223-AMO (N.D. Cal.) | *In re OpenAI ChatGPT Litigation*, Master File No. 1:25-md-03143-SHS-OTW (S.D.N.Y.) |
|---|---|---|---|---|---|
| | | 151.) "These limits do not apply to third-party depositions of non-Party-affiliated fact witnesses." *Id.* | limits: 30(b)(6) depositions, depositions of non-parties, expert witnesses, or former employees of any party. Defendants collectively get one deposition of each Plaintiff. (ECF no. 274.) | required for translation into English will not count against the total cap set forth above; (3) the parties may take up to 20 hours of Rule 30(b)(6) testimony; and (4) "apex" depositions are limited to 3.5 hours. (*In re ChatGPT* ECF No. 247.) | 30(b)(6) deposition regarding the Books1 and Books2 addressed at ECF No. 270 at 2. Class Plaintiffs will have 100 hours of witnesses, exclusive of the time spent on the Rule 30(b)(6) deposition regarding particular datasets addressed at ECF No. 270 at 2. Class Plaintiffs will have a maximum of 50 hours of deposition time with non-party (and non-former-employee) witnesses. (ECF No. 355.) |
| **Volume of documents/ESI** | As of August 29, 2025, Defendants had produced more than 10,000 documents and 40 terabytes of data, and Plaintiffs had produced 14,187 | As of December 12, 2025, NVIDIA had produced 26,328 documents and 86 GB of data, and Plaintiffs had produced 26,494 | The parties collectively have produced approximately 58,570 documents as of January 15, 2026. The volume of training | As of November 19, 2024, Defendants collectively produced over 46,000 documents, not including the substantial amount of training data made | As of February 11, 2026, Defendants have collectively produced over 400,000 documents. |

| | *In re Mosaic LLM Litigation,* Case No. 3:24-cv-01451-CRB (N.D. Cal.) | *Nazemian v. NVIDIA,* Case No. 4:24-cv-01454-JST (N.D. Cal.) | *Andersen, et al. v. Stability AI, et al.,* Case No. 3:23-00201 (N.D. Cal.) | *In re OpenAI Chat GPT Litig.,* Master File No. 3:23-cv-03223-AMO (N.D. Cal.) | *In re OpenAI ChatGPT Litigation,* Master File No. 1:25-md-03143-SHS-OTW (S.D.N.Y.) |
|---|---|---|---|---|---|
| | documents. (ECF No. 170.) | documents. (ECF No. 221 at 10.) | data at issue in this litigation is substantial. One defendant alone has produced more than 60 terabytes of such data. (ECF No. 381.) | available for inspection. (ECF No. 203.) As of the same date, Plaintiffs had produced 744 documents. (*Id.*) | |
| **Orders regarding schedule** | The Court first entered a scheduling order setting the close of fact discovery to April 18, 2025. (ECF No. 53, adopting Defendants' schedule). The Court entered a stipulation extending the close of fact discovery on Plaintiffs' copyright claim and fair use to July 1, 2025. (ECF No. 82.) The Court entered another stipulated extension of the fact discovery deadline to September 30, 2025. (ECF No. | The Court entered an initial stipulated case schedule with a close of fact discovery set for November 20, 2025. (ECF No. 71.) The Court entered a stipulated modification extending the close of fact discovery to February 6, 2026. (ECF No. 159.) On October 10, 2025, Plaintiffs filed a motion to extend the fact discovery cutoff to March 6, 2026. (ECF No. 186.) The Court granted | The Court entered an initial case schedule setting the close of fact discovery to March 13, 2026. (ECF Nos. 119, 235, 240.) The Court granted in part Plaintiffs' motion to modify the schedule, extending the fact discovery deadline to June 1, 2026. (ECF No. 409.) | The court entered an initial case schedule setting the close of fact discovery for October 29, 2024. (In re ChatGPT ECF No. 51.) The Court entered a stipulated modification extending the fact discovery cutoff to April 28, 2025. (ECF No. 209.) | The parties submitted a Joint Case Schedule setting the close of fact discovery for February 27, 2026, which the Court entered. (ECF No. 238.) |

| | *In re Mosaic LLM Litigation*, **Case No. 3:24-cv-01451-CRB (N.D. Cal.)** | *Nazemian v. NVIDIA*, **Case No. 4:24-cv-01454-JST (N.D. Cal.)** | *Andersen, et al. v. Stability AI, et al.*, **Case No. 3:23-00201 (N.D. Cal.)** | *In re OpenAI Chat GPT Litig.*, **Master File No. 3:23-cv-03223-AMO (N.D. Cal.)** | *In re OpenAI ChatGPT Litigation*, **Master File No. 1:25-md-03143-SHS-OTW (S.D.N.Y.)** |
|---|---|---|---|---|---|
| | 111.) The Court entered another stipulated extension of the fact discovery deadline to November 21, 2025. (ECF No. 172.) The Court granted Plaintiffs' motion to extend the fact discovery deadline to January 5, 2025. (ECF No. 238.) | Plaintiffs' motion. (ECF No. 188.) The Court entered a stipulated modification extending the close of fact discovery to May 5, 2026. (ECF No. 251.) | | | |

# EXHIBIT 10

HIGHLY CONFIDENTIAL REALTIME ROUGH DRAFT ONLY

THE VIDEOGRAPHER:  Good morning.  We are going on the record at 9:40 a.m. on February 12th, 2026. Please note that these -- that the microphones are sensitive and may pick up whispering and private conversations.  Please mute your phones at this time. Audio and video recording will continue to take place unless all parties agree to go off the record.  This is media unit 1 of the video recorded deposition of Jingna Zhang taken by counsel for defendant in the matter of In Re Google Generative AI Copyright Litigation, filed in the United States District Court, Northern District of California, San Jose Division, Case No. 523-cv-03440-EKL.  The location of the deposition is 1 Market Plaza, Suite 3300, San Francisco, California 94105.

My name is Reilly Leet, representing Veritext Legal Solutions, and I am the videographer.  I am not related to any party in this action, nor am I financially interested in the outcome.

Counsel will now state their appearances and affiliations for the record, beginning with noticing attorney.

MS. WELSH:  This is Madison wealth from Willis

Willis representing defendant Google.  With me from Willis Willis is my colleague Kelly knoll.

HIGHLY CONFIDENTIAL REALTIME ROUGH DRAFT ONLY

1

HIGHLY CONFIDENTIAL REALTIME ROUGH DRAFT ONLY

MR. YOUNG:  Good morning Christopher young justice Saveri for the plaintiffs and the witness accompanying me today is Aaronsary also from the Joseph Blea law firm also representing plaintiffs and the witness.

THE VIDEOGRAPHER:  Thank you will the court reporter please introduce yourself and administer the oath to the witness and then counsel may proceed.

THE REPORTER:  Yes my name is Derek Hoagland and my CSR is 13445.

(Whereupon, the deponent is .

duly sworn by the court reporter.)

BY MS. WELSH:

Q.     Good morning Ms. Zhang?

A.     Good morning.

Q.     Do you understand that you are testifying under oath today as if you were testifying in court?

A.     Yes.

Q.     Is there any reason you cannot give your best

request /TPAOLG's produce all documents, communications that mention name, discuss reference or otherwise identify any of the plaintiffs including but not limited to references to their copyrighted works images or any content associate would them plaintiffs /TPRAEURPBLGTS with the first request -- first request for production and I am puzzled as to why none of these documents have been produced until today.  So I am going to maintain my objections as to authenticity and completion as well as to Google's conduct with conducting this deposition by

HIGHLY CONFIDENTIAL REALTIME ROUGH DRAFT ONLY
246

HIGHLY CONFIDENTIAL REALTIME ROUGH DRAFT ONLY

surprise, but we can continue.

MS. WELSH:  Counsel we only identified these documents in the course of preparing for today's deposition and that's because Ms. Zhang denied in her RFAs having uploaded her works in suit to Google photos and that denial /PHRAEUPly was incorrect, and /UZ bawe only recently uncovered these documents, they will be produced in short order.

MR. YOUNG:  Counsel, your answer had -- raises some troubling implications about the adequacy of Google's search however that will be an issue that we will address some other day let's finish this

deposition.

MS. WELSH:  Counsel, again, these are photos, and records that should have been produced to Google they are from your client's Google account.

MR. YOUNG:  Historical Google account.

MS. WELSH:  So.

MR. YOUNG:  I am disputing the authenticity Google has them obviously and Google didn't produce them.

MS. WELSH:  We dispute any objection you make to these /STKWAOUPLTS the use of them in this deposition.

MR. YOUNG:  So noted.  Continue my objection.

MS. WELSH:  Ms. Zhang I am introducing exhibits

HIGHLY CONFIDENTIAL REALTIME ROUGH DRAFT ONLY
247

HIGHLY CONFIDENTIAL REALTIME ROUGH DRAFT ONLY

52 and 53 thighs are internal inGoogle documents associated with your /SWRAO*EPL at /TKPWAO*L./TKRA*ESZ is a photo file an image upload today Google photos and Exhibit 53 is the metadata for that image.

MR. YOUNG:  Same objections.

BY MS. WELSH:

Q.      Do you see on 52 that the image here is winterland fairy tales from mother land chronicles?

# EXHIBIT 11
## REDACTED

4

UNCERTIFIED DRAFT TRANSCRIPT ONLY

UNCERTIFIED TRANSCRIPT DISCLAIMER

IN THE MATTER OF:

In Re:  Google Generative AI Copyright Litigation
DEPOSITION OF: REBECA SANTAMARIA-FERNANDEZ

_____

The following transcript of proceedings, or any

portion thereof, in the above-entitled matter, taken

on the 12th day of February, 2026, is being

delivered UNEDITED as an UNCERTIFIED DRAFT.  PLEASE

DO NOT QUOTE FROM THIS DRAFT IN PLEADINGS OR

ELSEWHERE.  THE CERTIFIED TRANSCRIPT IS THE ONLY

OFFICIAL RECORD WHICH MAY BE RELIED UPON FOR

VERBATIM CITATIONS OF TESTIMONY.

This transcript has not been proofread.  It is a

draft transcript, NOT a certified transcript.  The

transcript may contain untranslates/misstrokes and

reporter notes.  Corrections will be made in the

preparation of the certified transcript resulting in

differences in content, page and line numbers,

punctuation and formatting.

***A FINAL TRANSCRIPT ORDER IS REQUIRED IN ORDER TO

RECEIVE A ROUGH DRAFT***

↑

UNCERTIFIED DRAFT TRANSCRIPT ONLY

R E B E C A    S A N T A M A R I A, called as a witness, having been first duly sworn by a Notary Public, was examined and testified as follows:

THE VIDEOGRAPHER:  This is file number one of the remote video deposition of Rebeca Santamaria-Fernandez in the matter of In Re: Google Generative AI Copyright Litigation in the United States District Court, Northern District of California, San Jose Division on February 12, 2026.

The video time is 1:10 PM.  My name is Ingrid Rodriguez.  I'm the legal videographer from Digital Evidence Group.  The court reporter is Tricia Lathouris in association with Digital Evidence Group.

Due to the nature of remote reporting please pause briefly before speaking to ensure all

parties are heard completely.  All counsel present will be noted on the stenographic record.

The court reporter will now swear in the witness.

EXAMINATION

6

UNCERTIFIED DRAFT TRANSCRIPT ONLY

BY MS. WEAVER:

Q   Good morning, Ms. Santamaria, I'm Lesley Weaver.  How are you?

A   Good morning.  I'm okay.  Thank you.

Q   Yeah.  Thank you very much for making time today.  And, as you know, we're juggling with a slight time difference here.

You understand that you're testifying as though you were in a court of law, correct?

A   Yes.  Correct.

Q   And where are you currently employed?

A   Google.

Q   And specifically what part of Google

third-party datasets and some of them were what we call human developed datasets.  So we engage with companies that have access to human that would give us access to a number of humans that are giving us their preferences on the model tape and with that that's how we train -- we train the model.

So two years ago I was leading that effort. Gemini was a much smaller scientific effort within Google, primarily within Google DeepMind.

If you fast forward today a lot of dataset acquisitions tape for the rest of Google DeepMind, and that could be a general mix or a fusion effort or a robotics effort, but we no longer do the data acquisitions for Gemini the model.

\       so I'm very aware of the work I've done in

21

UNCERTIFIED DRAFT TRANSCRIPT ONLY

the past, but that's how being handed over to essential team within Google Partnerships.

Q       I'll return to that in a second.  Let me

just cover some definitions very quickly.

What do you mean by data acquisition?

A    What I mean by data acquisition is that there is a lot of data available out there in the world.  There is data that if you think about the models that we're developing within Google, the models are almost like today letters that are being educated.  Those models have a lot of data available to them to begin with when we start developing what we call that base model.

As the model, or as the top layer grows up, as the model he involves, we start to identify gaps in the model's knowledge, or in the model's ability to do a particular function.  We could say to do a math complex and equation, for instance,  to resolve an equation.

My role is to spend a lot of sometime with the product engineers and the researchers that are building the models, whether that's Gemini the model

UNCERTIFIED DRAFT TRANSCRIPT ONLY

or a model that would solve fusion, okay, so across a variety of ranges.  Tape.  Those models would have these gaps.  I talk to the tie team coming to us with specific gaps.  Tape.  They believe often that those gaps, you know, acquring content.  So going out there and talking to partners that might be in possession of high quality -- and when I mean -- when I say high quality what I mean is unique datasets that tend to be in the right format, so very high quality to be ingested by the model not available but also very diverse and unique.  And unique is something that moves with time.  Once we acquire a lot of content in a particular area that stops being unique.  The gaps that the model have been fulfilled.  And that's pretty much what we do as an process.  We acquire the content that is reflected by the gaps in the model.  Tape.

Most of the time as a result the model gets better.  So if you think about Gemini as a today letter still needs content but the content is much more targeted and sophisticated as we go with time. Tape.

UNCERTIFIED DRAFT TRANSCRIPT ONLY

Q   So there could be content at a particular point in time that is more valuable to Google that becomes less valuable later; is that fair?

A   Correct.   It is -- it is fair in the context of model training.

There is content that will be valuable for the foreseeable future for different efforts.

Q   And when you are training the model have you -- does it work on a dataset just once, or does it -- do you use the same data repeatedly until the gap is filled?  Can you describe that process a bit?

MR. SAMPSON:  Objection -- objection.  Vague.

MS. WEAVER:  You may answer.

A   Can you elaborate a bit more what you mean bearing in mind I am not an engineer that is claiming the model directly.

BY MS. WEAVER:

Q   Do you understand how the model is trained?

A   I understand there are points in time at which the model is both assessed in terms of its

Q   And who is that?

A   Multiple teams.  I could -- you know, I could just go back in who is doing what right now but there would be multiple teams because Gemini has become an application that billions of users are using daily, so there are multiple teams assessing gaps, you know, in its knowledge and that continues to exist, and there would be, therefore, things adjacent to those that determine what the model needs.  There could be in Gemini app.  There could be in the partnership team.  That could be anywhere else in the organization.

Gemini had and those continue to be discussed, you know, fluidly by tape.

MR. SAMPSON:  I would appreciate if we could take a break sometime soon.

⬆

65

UNCERTIFIED DRAFT TRANSCRIPT ONLY

MS. WEAVER:  Okay.  We're just going to finish this line of questioning.

MR. SAMPSON:  Thank you.

BY MS. WEAVER:

Q   You say there are multiple teams.

Can you identify them by name, at least as many as you can recall?

A   Yes.  There will be a central Google partnerships team that is supporting some of these efforts.  There is a director that works alongside me.  Her name is Faz Aftab.  She's joined the organization recently and she's taken on some of the duties that my team had early on, so third-party data acquisition for Gen AI, and more broadly, you know, Google products and services.  And I say more broadly and so as not to blur it but often we done know whether the data is going to have impact in more than one place in the organization.

Q   And could you spell her name for the record?

A   Yes.  It's F-A-Z, so Faz.  And her surname is Aftab, A-F-T-A-B.

UNCERTIFIED DRAFT TRANSCRIPT ONLY

think.

A    Yeah.  It's -- it's the same answer.  In the sense that the litigation wasn't part of my day-to-day until I was asked to be deposed.

BY MS. WEAVER:

Q    Have you spoken with anybody in preparation for their deposition for this matter?

A    Their deposition, as in other people?

Q    Yes.

A    No.

Q    Do you know someone named Price?

A    No.

Q    Have you discussed the subject matter of this case, that is whether or not Google trains or develops its AI products using copyrighted

↑

71
UNCERTIFIED DRAFT TRANSCRIPT ONLY

materials, with anyone?

A    The subject matter of today?

Q    Yes.

A    Yes.  With Paul and John, and obviously our counsel team.

Q    Who is the counsel team?

A    So John, who is here.  And then Google DeepMind counsel team.

Q    And you haven't discussed it with friends or colleagues or spouse or anything the subject matter of this litigation?

A    No.

UNCERTIFIED DRAFT TRANSCRIPT ONLY



The topic for this deposition is the topic of the case.

Was, in general, Google's development of

UNCERTIFIED DRAFT TRANSCRIPT ONLY

its artificial intelligence product using copyrights
materials.  That broad, okay?  Tape.

████████████████████████████

███████████████████████████

████████████████████████████

█████████████████    █████████████

█  ████████████████

Q   And is there a budget -- was there a budget
in 2025 for that project?

A   No.

Q   Is there a team specifically assigned to
that?  And  "that" meaning generally Google's
obtaining the right to use copyrighted materials to
develop its AI products?

A   So if you go back to the earlier question
about the teams and what --

Q   Yeah.

A   -- there were multiple teams today that are
acquiring content for the models.

████████████████████████████

A   I understand.  But you also need to understand that there are -- we are an AI company and there are multiple AI products that need data and other types of expertise, not just content, but other things.  Those efforts often overlap, so there could be multiple teams talking about A.  Google

75

UNCERTIFIED DRAFT TRANSCRIPT ONLY

tape.  This is out of my -- way out of my control an remit today, just the nature of how we've evolved in the business.

Q   And how many team its are there and how would I identify them?

A   So there are partnerships team it's cross the organization, and I think if you asked me to identify them it's hard even for me who is in the company to specifically tell you what those teams do and what they are out and about negotiate being. But there are multiple teams within Google that will be talking to partners about their content, their

information.  You know, it's just part of the business.

Q   Is there an organizational chart that identifies who is in what part of the business?

A   No.

Q   Is there a compliance team that determines whether or not the agreements Google is entering into are adhered to?

A   There is a compliance team that looks into the agreements and how -- and who needs to sign

76

UNCERTIFIED DRAFT TRANSCRIPT ONLY

them.  That is certain, yes.

Q   Who is in charge of that team?

A   Actually, centrally, I don't have a name. There is a person within Google DeepMind who is our compliance lead today.  She's not responsible gor the Google process.  She enforces the Google process within Google DeepMind.

Q   Who is that?

A    It's a lady, Jessica, Jess, Spano. S-P-A-N-O.

Q    And where is she located?

A    London.

Q    In 2024 how many agreements were executed by Google that gave Google, in Google's view, the right to develop its AI products based on copyrighted materials and text and image?

A    I don't know.

Q    Was it -- so you can answer for 2025 --

A    No.

Q    -- was it less for 2024 -- go ahead.

A    For 2025 you ask my team --

Q    Yes.

77

UNCERTIFIED DRAFT TRANSCRIPT ONLY



For 2024 if the question is the same again,

not for other teams, because I think the question

was generic and I don't know what other teams would

have started to do in 2024.



UNCERTIFIED DRAFT TRANSCRIPT ONLY

Q    Are you aware of whether or not Google entered into agreements for images?

A    Yes.

Q    They did?

A    Yes.

Q    Who was in charge of that?

A    Again, outside of my control, there is a team within research -- I'm just trying to go back to your question about the organizational chart -- so there would have been a team within search partnerships that would have led on those agreements.  I'm trying to think of the person that leads the team today on whether they were leading the team back then, and I don't remember the name. I can see the face.  Tape.

That team would have negotiated images because they would have the expertise in that area in terms of media, partnerships in the same way the books team would have been advising on the books

I do not recall discussing specifically that sentence or I saw it and felt it was something different to what I've seen before.

I don't know when it appeared. It probably -- for me, when I took conscious that it appeared is when I started negotiating this deal for acquiring content.

It is probable that it was somewhere else. But, don't forget, we weren't -- I don't recall if we were using that same thing or something else just for DeepMind purposes because we would have been doing publishes for DeepMind as an affiliate.

Q    When you reviewed all DeepMind dataset licenses were they collected somewhere?

A    There would have been -- okay. Let me refresh my memory on this one.

MR. SAMPSON:  Hold on.  Hold on.  Hold on. Don't -- so made me nervous because you're saying

Kent Walker asked the question, so don't -- I instruct you not to reveal the content of discussions or statements made by Kent Walker or Tom Lue because they're attorneys for Google.

MS. WEAVER: Well, no. That is overbroad. If he is identifying contracts that is not legal advice and he's a VP. So if you're going to instruct her not to answer I'm going to stand on my right to recall the witness.

BY MS. WEAVER:

Q The question was: Is there a collection of documents that were the DeepMind dataset licenses that you reviewed in that meeting. And your answer was to identify the contracts, right?

MR. SAMPSON: So -- so I will just say -- I'm fine with her answer that question. She was just starting to veer into beyond the question.

So stick to the question. Don't -- don't reveal the contents of privileged communication.

THE WITNESS: Yeah. Thank you.

A Can you repeat the question?

Q Yeah. You were in a meeting where you

something goes back to whether I discussed is it with them or partnered with them in doing that, but it is a big company.

Q    Are you attending to appear for trial in this case?

181

UNCERTIFIED DRAFT TRANSCRIPT ONLY

MR. SAMPSON:  You can answer that, if you know.

A    No.

BY MS. WEAVER:

Q    Okay.  The jury is going to watch this videotape and people -- I just want you to try to answer questions directly.  I'm really just asking a simple question an I know that you're being thorough and I will try to make my questions direct.

Could you access this list of DeepMind dataset licenses today if you wanted to?

A    Yes.  It should be on my Google Drive.

Q    Thank you.

And is there today a comprehensive list of

understand the document a little bit.  The subject says scratch copy proposal on licensing books to support Gemini.  Get Exhibit 18.

Did you write that subject line?

A    No.  And I don't think this is an email.  I think this is -- I'm trying to think what this is. This looks to me as comments on a Power Point or chat -- it's not an email --

Q    Okay.  So maybe you're commenting on slides here?

A    I think -- I think it looks like the word that you see on the rectangle so the termination for the first one is where someone has written that

208

UNCERTIFIED DRAFT TRANSCRIPT ONLY

word, and I would just give me opinion.  This would have been accessible by multiple people.  Get Exhibit 18.

Q    Okay.  So it -- the document is sent from you to I Ayoub but it was containing content that

would have been a conversation, perhaps, with other people?

A    I don't think I sent this document.

Q    Well, looking at the top of the document it says says Rebeca Santamaria-Fernandez.

Do you see that?

A    So one thing that we do -- that you can do with Google chat is when have you a chat between two people I can forward it to my inbox --

Q    Uh-huh?

A    -- you see in so what I think has happened -- you see from me to Kareem, but it's not from me an email.  What Kareem has done is taken a common thread from me and emailed it to his inbox and I would have put a link to this presentation, -- I'm guessing it's a presentation -- I think the icon seems to be like a deck presentation -- but it

209
UNCERTIFIED DRAFT TRANSCRIPT ONLY

doesn't mean it's my presentation.  It means that I

put it in the comment and it comes back on there. Tape.

Q   Okay.   Thank you.

Just looking at the very bottom of the page.  It says books to support Gemini training.

Do you see that?

A   The bottom of the first place or the last page?

Q   Yes.   Yes.   The very first page at 48 6.

A   Yes.

Q   And do you see the note there?   Did you write that note?

A   The one that says   "we do not"?

Q   No.   No.   I'm on the bottom of the page now.

A   Oh.

Q   55 0PM.

A   Yes.   It looks like I wrote this on some slide, yeah.

Q   Format above.   Okay.   And you wrote this would only cover use of books for pre-training.

210

UNCERTIFIED DRAFT TRANSCRIPT ONLY

Do you see that?

A    Yes.

Q    What does that mean?

A    I know what the sentence means.  I don't know why I wrote this because -- so if you see books that support Gemini training that would have been a long paragraph somewhere, so what I'm -- what I'm -- I don't know why or whether they said this was pre-training, post-training.  I don't know people are talking about what this content is asking for tape and I'm clarifying this would only be for pre-training.

Q    What is pre-training?

A    So when we're talking about a large language model -- and, again, this is my understanding from my job, I'm not the engineer that is training the model -- but think about the model about a today letter that is being educated so pre-training is large amounts of content that are available by different means that go into creating the base model.  Tape.  Okay?  That is pre-training.

UNCERTIFIED DRAFT TRANSCRIPT ONLY

A    I'm talking in general.   Because I don't -- I don't know what the comment said, but I think what I'm saying is this -- if we're talking about books for Gemini we're only talking about books for this particular use.

Q    Okay.   So books would be used for pre-training here; is that right?

A    Primarily that's -- that's the object, yes.Okay.   And then what is general reasonableing and will require different typeings of books?   Tape.

What did you mean by that?

A    Yes.   So we're going to model capabilities. The capabilities of the model will be thinking like math and coding and thinking that we said earlier, that's like equations being resolved, mathematical problems, physical problems.   Tape.   If we're now

going to general reasoning, if we want to teach the model to reason around a particular area of expertise and give you some advice or reason with you through a problem the model will need to see

212

UNCERTIFIED DRAFT TRANSCRIPT ONLY

those type of situations, okay.

It is much more likely that that type of content doesn't come from a book, but it comes from, for example, conversation between two team --

Q    Got.

A    -- so you and I are reasoning why we should go to the cinema tonight, right?   So when you ask Gemini it would imitate what the model has been trained with.   Tape.

I don't think -- and I still think that way -- that that's the type of content that we would get with these type of books we would need.

MS. WEAVER:  Let's mark tab 4 Exhibit 19.

(Exhibit SMF 19 marked for identification)

A   I -- I -- I do think we have spoken about this earlier.  There were concerns being addressed. There were groups of people that were advising on

218

UNCERTIFIED DRAFT TRANSCRIPT ONLY

what which we were going to acquire this content, and my role and my perspective has already been we need

THE REPORTER:  We need?  I'm sorry.

███ █████████████  ████████████ ██

████████████████████████

Anything about whether we needed something or not I would go to counsel and ask their opinion.

Q   And the very specific question I'm asking here is about pre-training.  Here you were focused on licensing for pre-training, correct?  Format?

A   Here it's -- it's the same conversation we've had up to now.  It's just that for whatever reason all of a sudden we've become more technical and we're talking about pre-training.  But we've

always been talking about gaps in knowledge in the model an how we could solve those.  Pre-training would have been -- if you think about pre-training ████████████████████████████████ challenge area or an area that we were not performing very well at by including them in the pre-training mix.

UNCERTIFIED DRAFT TRANSCRIPT ONLY

Q   So in your view pre-training and post-training for purposes of this copyright discussion were all part of improving the model; is that right?

A   Both -- both -- if you think about pre and post-data that is acquired or ingested by the model, any means, that is ingested by the model, pre and post-will both improve the model in different ways, and the data is different.  So a book would not be the right content for post-training.  It would be the right content for pre-training.

229
UNCERTIFIED DRAFT TRANSCRIPT ONLY

Q   It's below the chart.  It's in bold.

A   For publisher books not approved to use for training.  Yes, I see that.

Q   So what did you mean in corpus?

A   So in corpus would have meant that Google Books had access to these books somewhere and Stephane referred to them as the corpus.

Q   And how did Google get access to these books?

A   Again, I don't work for Google Books so Stephane would have been a better person but I understand these books would have been scanned tape Stephane would give you a nice definition of everything that is in that corpus.

Q   And do you see where you wrote  "if we want to double check the easiest is to look the book up on books dot Google dot com?   Format?"

A   Yes.

Q   What does that mean?

A   So remember a referred earlier to can we just get access to some books either way and I said

you were acquiring the rights; is that fair?

A   I don't think it's fair.  I would say we're acquiring the access to the content.

Q   But you possessed the content in Google Books dot com?

A   No.  No.  All not all of it --

Q   Some of it?

UNCERTIFIED DRAFT TRANSCRIPT ONLY

general was not completely overlapping with what we needed.

Q   Understood.   It had some of it but not all of it?

A   I think it had long -- I never read the whole corpus, by the way.   If you could click on that link you just have millions -- I don't know.  So all we would do is inter gait it.   You could fine the subject.   Like if I was looking at quantum mechanics, I could say quantum mechanics 2020 and then tell me what books are there.   It's like a library.

Q   What are the fields?   Is it similar to the chart?   Is it a category or a descriptor or is it --

A   I don't.

Q   -- title author tape?

A   All of them.

234
UNCERTIFIED DRAFT TRANSCRIPT ONLY

Q   Okay.   What else?

context.  This person could be thinking about a number of thicks.  I am not sure.

Q   Okay.  Would it include price?

A   If it was written by a commercial person.

Q   Well, are these commercial people?

A   Not all of them, no.

Q   Okay.  Do you see where it says "content (for researchers to answer)"?

A   Yes.

Q   And it says -- will you read in the question, the first question?

A   "What corpus of books have we trained on already?"

Q   And then can you read the answer?

A   Yes.

UNCERTIFIED DRAFT TRANSCRIPT ONLY





UNCERTIFIED DRAFT TRANSCRIPT ONLY



THE REPORTER:  I'm sorry.  In terms of?

"The chief concern continues train expert systems on the tape.



UNCERTIFIED DRAFT TRANSCRIPT ONLY



Q    Looking at the page ending in 038.   The update on the 13th of December.

A    038.   Yes.

Q    Do you see where it says "content endorsement from Gemini leaves"?   Tape?

A    Yes.

Q    What does content endorsement mean?

A    It would be -- so for any partnership or any data acquisition deal that we would be wanting to do the content -- so the actual content -- and this is why I was looking at annex A earlier -- is the information that goes into annex A for the Partner Content Agreement, that is the specs that the Gemini leads are giving us.   If the specs are not what they are need it would not be endorsed.   So if it's not endorsed we would not do that feel.

Q    And do you see where you wrote pricing?

A    No.   But I'll get to it.

Q    It's the third bullet point.

347

UNCERTIFIED DRAFT TRANSCRIPT ONLY

A    Yes.

Q    Can you read that into the record, please?



Q    And turning to the page ending at 037.  You

indexed in Google Scholar, right?

A    Yes.

UNCERTIFIED DRAFT TRANSCRIPT ONLY



A    Correct.

Q    Okay.  We'll move on to -- hang on -- exhibit 36.

A    Yes.

Q    Actually, let's stop for a second.

Can we move on to Exhibit 38 quickly?

A    Thirty eight.  Yeah.  Yes.