DAVID H. KRAMER, SBN 168452
Email: dkramer@wsgr.com
MAURA L. REES, SBN 191698
Email: mrees@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300

PAUL J. SAMPSON (admitted *pro hac vice*)
Email: psampson@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
95 S. State Street, Suite 1000
Salt Lake City, Utah 84111
Telephone: (801) 401-8510

ERIC P. TUTTLE, SBN 248440
Email: eric.tuttle@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone: (206) 883-2500

*Counsel for Defendant*
GOOGLE LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| *In re Google Generative AI Copyright Litigation* | Master File Case No.: 5:23-cv-03440-EKL<br>Consolidated with Case No.: 5:24-cv-02531-EKL<br><br>**DEFENDANT GOOGLE LLC'S OBJECTION TO REPLY EVIDENCE**<br><br>Date:         February 4, 2026<br>Time:         10:00 a.m.<br>Courtroom:  7<br>Judge:        Hon. Eumi K. Lee |

GOOGLE LLC'S OBJECTION TO REPLY EVIDENCE                    MASTER FILE CASE NO.: 5:23-CV-03440-EKL

**Five New Expert Reports**: With their reply, Plaintiffs have submitted *five* new reports of purported experts, including two from brand new witnesses.[1] These reports amount to roughly 50 pages of new argument, and are cited dozens of times in the reply brief. All are improper.

The negotiated Scheduling Order for this case makes no provision for expert reply reports in connection with Plaintiffs' class certification motion. *See* ECF No. 231. That contrasts with the Scheduling Order's authorization to later file expert reply reports in connection with the *merits*. *Cf.* ECF No. 199 at 2 (specifying date for disclosure of expert reply reports for merits issues); ECF Nos. 133 at 9, 173 at 10-11, 223-4 (Plaintiffs' proposed schedules including dates for merits-based expert reply reports but not reply reports on class certification). The difference is no accident. It reflects the parties' agreement and the Court's mandate to conduct efficient class certification proceedings (particularly in light of the multiple delays Plaintiffs have already occasioned). The operative Scheduling Order thus requires Plaintiffs to "disclose supporting expert report(s)" by October 14, 2025, and directs Google to "depose experts offered in support of class certification" by November 12, 2025 and "file *Daubert* motion(s)" by November 19 for a hearing on February 4, 2026. ECF No. 231. It does not contemplate a second wave of new reports from Plaintiffs on December 30, 2025, nor a second round of expert depositions or *Daubert* motions on new expert testimony. Plaintiffs' unauthorized and untimely filings violate the Scheduling Order and are highly prejudicial to Google, exacerbating the problems caused by Plaintiffs' failure to disclose the completely new classes they planned for months to pursue. *See* ECF No. 300-1. True to form, Plaintiffs did not meet and confer with Google about submitting reply reports and did not seek or obtain leave to file them. The impropriety is even more pronounced with respect to the Baker and Seeley submissions. Plaintiffs failed entirely to disclose these witnesses by October 14, 2025, as the Scheduling Order required.[2] What Plaintiffs' inaptly label their "Rebuttal Reports" should be

---

[1] ECF Nos. 325-2/326-4 (McCarron), 325-3/326-5 (Doermann), 325-4/326-6 (Smith), 325-5 (Baker), & 325-6/326-7 (Seeley).

[2] The first time Google learned of Baker was in reading her submission on December 31. Plaintiffs asked to share information under the Protective Order with Seeley on November 5. Google permitted disclosure but expressly noted that the deadline for expert reports on class certification had passed. Plaintiffs did not contradict Google's statement or respond at all.

GOOGLE LLC'S OBJECTION TO REPLY EVIDENCE          -1-          MASTER FILE CASE NO.: 5:23-cv-03440-EKL

excluded based on the Scheduling Order alone. *Stoyas v. Toshiba Corp.*, 2022 WL 19406, at \*2-3 (C.D. Cal. Jan. 3, 2022) (striking supplemental expert report filed with class certification reply as unauthorized under scheduling order where Plaintiffs did not seek leave to file, and requiring further response from Defendants would delay proceedings and thus would not be harmless).

Order violation aside, courts routinely reject the sort of sandbagging Plaintiffs attempt to employ, recognizing it as unfair to the defense. *In re Flash Memory Antitr. Litig.*, 2010 WL 2332081, at \*15 (N.D. Cal. June 9, 2010) (declining to consider expert's supplemental reply declaration, noting Plaintiffs bear the burden at class certification and the evidence "should have been proffered with Plaintiffs' moving papers in order to afford Defendants a full and fair opportunity to respond"); *Rojas v. Bosch Solar Energy Corp.*, 2021 WL 12331659, at \*1-2 (N.D. Cal. Nov. 23, 2021) (declining to consider class certification reply evidence, which included new expert opinion and factual matter, because it "would be unfair and prejudicial to Defendant," and "granting Defendant leave to file a sur-reply [was] not a feasible" alternative in light of class certification hearing date and age of case).

Even if reply reports were permitted, the vast majority of Plaintiffs' new submissions would not qualify. Plaintiffs' belated reports submit volumes of new testimony (and argument disguised as testimony) that could and should have been submitted with their motion. It is sophistry to suggest, as Plaintiffs do, that they only learned of the issues from Google's opposition brief. It was Plaintiffs' burden to support certification of the classes they proposed, and much of what Plaintiffs submit consists of affirmative arguments commonly made in class certification motions. Moreover, Google has highlighted the fatal flaws in Plaintiffs' class action effort since the outset of the case, including at case management conferences, in motions, and in discovery responses. In particular, Google served contention interrogatory responses on July 28, 2025 with over 10 pages of substantive explanation of the reasons a class should not be certified in this case, including most of the issues now purportedly addressed with these reply reports.

Plaintiffs were required to submit all evidence on which they intended to rely with their opening papers. They instead chose to withhold it until reply, hoping to shield it from Google's response. That is indefensible. *See In re Flash Memory Antitr. Litig.*, 2010 WL 2332081, at \*15

GOOGLE LLC'S OBJECTION TO REPLY EVIDENCE     -2-     MASTER FILE CASE NO.: 5:23-cv-03440-EKL

(sustaining objection to expert "supplemental" evidence that "should have been proffered with Plaintiffs' moving papers in order to afford Defendants a full and fair opportunity to respond").

Plaintiffs' witnesses also improperly offer up "corrections" to their flawed methodologies that Google highlighted in its opposition and brand new calculations that differ wildly from their originals. Again, that is unfair and improper under Rule 26(e). *Chinitz v. Intero Real Est. Servs.*, 2020 WL 7391299, at *3-4 (N.D. Cal. July 22, 2020) (barring expert class certification reply declaration as untimely under Rule 26(e), explaining duty to supplement "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' original report," and is not "a loophole through which a party … who wishes to revise her disclosure in light of her opponent's challenges to the analysis and conclusions therein, can add them to her advantage after the court's deadline for doing so has passed."); *Galvan v. First Student Mgmt., LLC*, 2022 WL 20016825, at *4 & n.1 (N.D. Cal. Aug. 23, 2022) (disregarding supplemental expert report with amended calculations, submitted for first time with plaintiffs' class certification reply); *In re Graphics Processing Units Antitr. Litig.*, 253 F.R.D. 478, 501 (N.D. Cal. 2008) (Alsup, J.) (sustaining objections to new regression models contained in expert class certification rebuttal report, where data was available at time of opening report, because "[s]lipping these new arguments into a rebuttal report was a clear-cut form of sandbagging and was simply unfair").

In brief:

- Ms. Baker is a claims administrator through whom Plaintiffs argue for the first time that certain individualized issues in certain cases can be resolved through a claims administration process. Besides being offered for the first time on reply, the testimony also lacks foundation. Ms. Baker's experience is in class action *settlements*; her opinions are irrelevant to adversarial litigation where discovery and fact-finding by a jury are required.

- Mr. Seeley, a licensing attorney, proffers a 22-page legal brief filled with improper legal conclusions and case citations masquerading as a "rebuttal expert report." It is a transparent attempt to circumvent the applicable page limit on briefs. Further, Plaintiffs offer no reason why many of his opinions—such as whether the publishing industry would specifically

outline every permitted use in licensing contracts—are "rebuttals," or are even relevant. Of note, Plaintiffs already offered a report from Victoria Furniss containing a similarly improper and irrelevant opinion. *See* ECF Nos. 252-3/253-6. Google's *Daubert* Motion mentioned the impropriety, but Google did not serve an opposing report.

- Dr. Doermann's "rebuttal" goes on at length about the robots.txt protocol and its application. *See* ECF Nos. 325-3/326-5 ¶¶ 26-31. Google described this industry-standard authorization for web crawling and its important role in the certification analysis in detailed interrogatory responses back in July 2025, and noted the issue in its initial disclosures in September 2024. Plaintiffs could and should have addressed the issue in their opening papers, but chose to remain silent until their reply and thereby deprived Google of a chance to respond. Separately but relatedly, Dr. Doermann does not explain how he is qualified to discuss the robots.txt protocol and thus his testimony lacks foundation. Dr. Doermann's "rebuttal" also repeatedly contradicts his deposition testimony, and attacks strawman arguments that Google's expert, Dr. Psounis, never made in his report.

- Ms. McCarron's unauthorized reply report is an impermissible do-over that attempts to cure fundamental flaws Google identified in her opening report. The changes McCarron downplays as "refinements" and "adjustments" to her methodology—purportedly, to address "edge-cases" scenarios, ECF Nos. 325-2/326-4 ¶¶ 48, 51-53—produce materially different conclusions on issues such as putative class size and composition. Most strikingly, her baseline estimate of the putative class drops from roughly six million works to approximately three million, while other calculations swing dramatically in the opposite direction. These are changes that reflect post hoc methodological revisions, not newly discovered facts.[3] The revisions underscore the instability and unreliability of her approach and constitute the sandbagging that courts reject, particularly where the underlying

---

[3] For example, McCarron originally claimed to have matched 46,875 and 2,133 works, respectively, for two datasets. After the changes to her supposed methodology, McCarron now claims to have matched 480,435 and 173 works, respectively, for the same datasets. *Compare* ECF No. 266-1 at 29-31, Tables 2 and 3, *with* ECF No. 326-4 at 18-20, Updated Tables 2 and 3.

information was available at the time of her original report.[4]

- Prof. Smith's unauthorized reply suffers from the same defects as his opening report. For example, he continues to assert the legal conclusion that use of copyrighted works is "unauthorized" notwithstanding the applicability of licenses or the possibility of fair use. He attempts to excuse this improper opinion by claiming that he is using this term in a supposed "ordinary definitional sense"—a nonsensical assertion when authorized use of a copyrighted work is itself a legal determination. Prof. Smith also attempts to back away from his deposition testimony and change his opinions on multiple subjects, and includes new opinions that should have been included in his opening report.

These reply reports should be stricken in toto.

**Mullens Supplemental Declaration** (ECF Nos. 325/326-2):  Paragraphs 25, 28, 34, 37, 41, 44, and 46 of the Mullens Supplemental Declaration purport to characterize (and actually mischaracterize) Google's position regarding various of Plaintiffs' copyright registrations. Google has highlighted problems with various registrations that Plaintiffs have put forth to demonstrate the need for individualized discovery and fact-finding with respect to registrations. But Mullens' testimony that Google "does not challenge the validity" of other registrations is lacking foundation and constitutes improper attorney argument. The same is true for his testimony in Paragraph 38 that Plaintiffs have "cure[d] any issue related to Larson's ownership."

Respectfully submitted,

Dated:  January 6, 2026

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:  */s/ David H. Kramer*
David H. Kramer
dkramer@wsgr.com

---

[4] Both Plaintiffs and McCarron also take extreme liberties in describing her original opinions and Dr. Zervas' rebuttal of the same. *See, e.g.*, ECF Nos. 325-2/326-4 ¶ 56 (falsely suggesting Dr. Zervas "agreed" that McCarron identified "pirated works" in Google's training data); ECF No. 315-1 at 10 (same). Again, Google has no opportunity to respond to such mischaracterizations.