DAVID H. KRAMER, SBN 168452
Email: dkramer@wsgr.com
MAURA L. REES, SBN 191698
Email: mrees@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300

PAUL J. SAMPSON (admitted *pro hac vice*)
Email: psampson@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
95 S. State Street
Suite 1000
Salt Lake City, Utah 84111
Telephone: (801) 401-8510

ERIC P. TUTTLE, SBN 248440
Email: eric.tuttle@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone: (206) 883-2500

*Counsel for Defendant*
GOOGLE LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| *In re Google Generative AI Copyright Litigation* | Master File Case No.: 5:23-cv-03440-EKL<br>Consolidated with Case No.: 5:24-cv-02531-EKL<br><br>**GOOGLE LLC'S OPPOSITION TO MICHAEL SULLIVAN, KENNETH S. SALADIN, ZVI BODIE, ALAN J. MARCUS, KEVIN PATTON, LION DEN INC., AND DANA LOEWY'S MOTION TO INTERVENE**<br><br>Judge: Hon. Eumi K. Lee<br>Date: January 6, 2027<br>Time: 10:00 AM<br>Courtroom: 7, Fourth Floor |

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

BACKGROUND ..... 2

I. Procedural History ..... 2

II. Movants ..... 2

ARGUMENT ..... 3

I. Whether By Right Or By Permission, Intervention Should Be Denied As Untimely. ..... 3

A. The Class Certification Motion Has Been Fully Briefed and Heard. ..... 4

B. Movants' Delay Was Without Justification. ..... 4

C. Movants' Delay Prejudices the Parties and the Court. ..... 5

II. The Court Should Deny Intervention As Of Right. ..... 6

A. Section 501(b) Does Not Grant Movants a Right to Intervene. ..... 6

B. Denial Would Not Impair Movants' Ability to Protect Their Interests. ..... 6

C. Movants Have Not Shown Inadequate Representation. ..... 7

III. The Court Should Deny Permissive Intervention. ..... 8

CONCLUSION ..... 10

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 7

*Bartz v. Anthropic PBC*,
No. 3:24-cv-05417 (N.D. Cal. Dec. 22, 2025) .......... 1, 3, 5

*Betts v. Reliable Collection Agency, Ltd.*,
659 F.2d 1000 (9th Cir. 1981) .......... 6

*Blake v. Pallan*,
554 F.2d 947 (9th Cir. 1977) .......... 7

*Brown v. Accellion, Inc.*,
2023 WL 1928210 (N.D. Cal. Feb. 10, 2023) .......... 6

*Brown v. Google LLC*,
172 F.4th 1128 (9th Cir. 2026) .......... 1, 3, 4, 5

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
528 F.3d 696 (9th Cir. 2008) .......... 10

*Devlin v. Scardelletti*,
536 U.S. 1 (2002) .......... 7

*Elsevier Inc. v. Meta Platforms, Inc.*,
No. 1:26-cv-03689 (S.D.N.Y.) .......... 3, 4

*Great Bowery Inc. v. Consequence Sound LLC*,
174 F.4th 1336 (11th Cir. 2026) .......... 6

*Hachette Book Grp., Inc. v. Google LLC*,
No. 1:26-cv-05870 (S.D.N.Y.) .......... 2, 8

*Harris v. Vector Mktg. Corp.*,
2010 WL 3743532 (N.D. Cal. Sept. 17, 2010) .......... 5

*In re Flash Memory Antitrust Litig.*,
2010 WL 2332081 (N.D. Cal. June 9, 2010) .......... 8

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) .......... 7

*Kalbers v. U.S. Dep't of Just.*,
22 F.4th 816 (9th Cir. 2021) .......... 4

*League of United Latin Am. Citizens v. Wilson*,
131 F.3d 1297 (9th Cir. 1997) .......... 4, 8

*NAACP v. New York*,
413 U.S. 345 (1973) ..... 3

*Newton v. Diamond*,
388 F.3d 1189 (9th Cir. 2004) ..... 9

*Perry v. Proposition 8 Off. Proponents*,
587 F.3d 947 (9th Cir. 2009) ..... 8

*Silvers v. Sony Pictures Ent., Inc.*,
402 F.3d 881 (9th Cir. 2005) ..... 6

*Smith v. Bayer Corp.*,
564 U.S. 299 (2011) ..... 6

*Smith v. L.A. Unified Sch. Dist.*,
830 F.3d 843 (9th Cir. 2016) ..... 8

*Smith v. Marsh*,
194 F.3d 1045 (9th Cir. 1999) ..... 9

*Spangler v. Pasadena City Bd. of Educ.*,
552 F.2d 1326 (9th Cir. 1977) ..... 8

*United States v. Washington*,
86 F.3d 1499 (9th Cir. 1996) ..... 5

*Valentine v. Crocs, Inc.*,
2024 WL 5340074 (N.D. Cal. Sept. 19, 2024) ..... 4

**STATUTES**

17 U.S.C. § 103 ..... 10

17 U.S.C. § 107 ..... 8

17 U.S.C. § 201 ..... 8

17 U.S.C. § 412 ..... 10

17 U.S.C. § 501 ..... 6, 7

17 U.S.C. § 504 ..... 7, 10

17 U.S.C. § 505 ..... 7

**RULES**

Fed. R. Civ. P. 16 ..... 5

Fed. R. Civ. P. 23 ..... 4, 5, 6, 7

Fed. R. Civ. P. 24 ..... 6, 7, 8

## INTRODUCTION

Seven textbook authors, six individuals and one company, ask to join this more than three-year-old case as parties, to carve a textbook-author subclass out of the putative Books Class, and to have their own lawyers appointed to lead it. ECF 490 ("Mot.") at 1; ECF 490-3 ("Prop. Compl.") ¶ 101. Their motion is untimely. Movants' intervention request rests on the fact that there is no textbook-author named plaintiff and no textbook subclass. Mot. 6. But that has been clear from the start of this litigation in July 2023 and was driven home in October 2025 when the current Plaintiffs moved for class certification. Movants waited until September 28, 2026—more than three years after the lawsuit was filed, nine months after the certification motion was fully briefed, and seven months after it was submitted—to seek a role in the case. That is "too little, too late." *Brown v. Google LLC*, 172 F.4th 1128, 1137 (9th Cir. 2026).

The movants also fail to carry their burden of justifying intervention. Their array of assertions about the uniqueness of the textbook universe (Mot. 2, 4-5) only underscores arguments that Google made in opposing class certification altogether, highlighting the need for work-by-work investigations into who authored, owns, and registered each copyrighted work; who licensed it to whom, for what, when; what market it competes in; and how damages, if any, might be calculated and split between competing claimants. ECF 446 ("Class Cert. Opp.") at 13-22.

Ultimately, movants seem to believe that they need to participate here because Plaintiffs or nonparty textbook publishers "may (just as in *Bartz*)" shortchange textbook authors in some classwide settlement. Mot. 8. They imagine the current Plaintiffs will not adequately represent their interests. But that heaps conjecture upon hypothetical based on proceedings in a different case. Indeed, when textbook publishers sought to intervene here, the Court called their parallel claim—that authors and artists "may not adequately represent the putative class"—"a deficiency of the publishers' own invention." ECF 477 at 1. So too here. Movants say that if the Court denies their motion, they will file a separate action in this District to be related to this one. Mot. 1. They are free to do so, but there is no reason for them to step into and disrupt this long-running suit.

## BACKGROUND

### I. Procedural History

This putative class action has been pending since July 2023. The deadline to add parties passed on December 20, 2024. ECF 88 at 2. After extensive pleading-stage motion practice, the Court closed the pleadings in September 2025, finding that further amendment "would be unduly burdensome on Defendants and would further delay resolution of this important matter," and it barred Plaintiffs from adding "any new claims, parties, or other allegations" to their amended complaint. ECF 216 at 22. Every one of the proposed class definitions since July 2023 included owners of U.S. copyrights in works used to train Google's models. ECF 383 at 2 (quoting ECF 1 ¶ 195); ECF 234 ¶ 163; ECF 418 (Plaintiffs listing shifting class definitions over time up to and including in their certification motion).

Plaintiffs moved for class certification in October 2025, proposing new classes of "[a]ll legal or beneficial owners" of qualifying books and images. ECF 445 at 1-2. Google opposed, showing that a host of issues inherent in the putative class's claims—such as ownership, registration, license, statute of limitations, fair use, and damages—would require individualized, work-by-work proof. Class Cert. Opp. 12-25. The motion was fully briefed by the end of 2025, fact discovery closed on February 13, 2026, and the Court heard argument on that motion and related matters on February 20. ECF 324; ECF 199 at 1; ECF 422. The Court has stayed unexpired case deadlines pending its ruling. ECF 421; ECF 479 at 2.

Others have already tried to belatedly intervene. Two publishers, Cengage and Hachette, sought a publisher subclass in January 2026, ECF 342, then withdrew and filed their own putative class action. *Hachette Book Grp., Inc. v. Google LLC*, No. 1:26-cv-05870 (S.D.N.Y.). At roughly the same time, Plaintiffs moved to add a company associated with an existing Plaintiff and two new authors; that motion remains pending. ECF 468.

### II. Movants

Movants are textbook authors who ask the Court to certify a textbook-author subclass, and appoint them as its representatives. Mot. 1; Prop. Compl. ¶ 101 & Prayer (a). Their proposed complaint adds new allegations of torrent-based distribution, Prop. Compl. ¶¶ 2, 97, broadens the

subclass definition, *id.* ¶ 93, and seeks, long after the close of discovery, to add 84 new works to the case, *id.* ¶¶ 2, 93, 97 & Exs. A-1 to A-6; *see infra* Part III.

Movants base their request on four features they say set claims by textbook authors apart: publishers typically hold legal title to textbooks while authors hold only beneficial interests, Mot. 2, 5; publishing contracts "generally do not include clear language regarding the split of damages," *id.* at 5; market harm and damages require proof distinct to textbooks, *id.* at 4-5; and in the *Bartz* settlement, textbook recoveries were allocated through an adversarial process rather than a default split, *id.* at 5-6; Pawlak Decl. ¶¶ 7-8. A publisher is the registered claimant for 83 of the 84 registrations that movants seek to add. Prop. Compl. Exs. A-1 to A-6.

Movants are no stranger to generative AI copyright litigation. Movants Michael Sullivan and Kevin Patton are current or former officers of the Textbook and Academic Authors Association ("TAA"), an entity that joined the *Bartz v. Anthropic* allocation negotiations in September 2025, assisted by movants' current counsel. *Id.* ¶¶ 14, 24; Pawlak Decl. ¶¶ 2-5. In December 2025, TAA filed a motion to intervene in *Bartz* (which was not granted). Pawlak Decl. ¶ 11; *Bartz v. Anthropic PBC*, No. 3:24-cv-05417 (N.D. Cal. Dec. 22, 2025), ECF 513. On May 29, 2026, movant Kenneth Saladin, through the same lawyers, asked to intervene in *Elsevier Inc. v. Meta Platforms, Inc.*, No. 1:26-cv-03689 (S.D.N.Y.), ECF 44, 56. The court denied the request without prejudice. *Id.*, ECF 56 (June 10, 2026). All seven movants then sued Meta (on July 2) and OpenAI (on August 14). Movants first contacted Google about their intervention request on August 21, 2026. They filed this motion on September 28, 2026. As noted, if their intervention is denied, movants represent to the Court that they will file a "separate related case" in this District. Mot. 6.

## ARGUMENT

### I. Whether By Right Or By Permission, Intervention Should Be Denied As Untimely.

"If it is untimely, intervention must be denied." *NAACP v. New York*, 413 U.S. 345, 365 (1973). Courts weigh "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay," measuring each from the "crucial date" when "proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Brown*, 172 F.4th at 1133 (quoting

*Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 822 (9th Cir. 2021)). All weigh against movants.

**A. The Class Certification Motion Has Been Fully Briefed and Heard.**

Movants arrive at a late stage: after the deadline to add parties, after the Court closed the pleadings, after fact discovery closed, and after certification was briefed and argued, with all else stayed pending decision. The Court has "substantively—and substantially—engaged the issues," which "weighs heavily against allowing intervention as of right." *League of United Latin Am. Citizens v. Wilson* ("*LULAC*"), 131 F.3d 1297, 1303 (9th Cir. 1997). The Court has already observed that the publishers' January 2026 motion came "[a]fter the parties engaged in substantial discovery, motion practice, and class certification briefing." ECF 477 at 1. Movants filed this motion more than eight months later. They say they want to intervene "before class-certification, Rule 23(g) appointments, or settlement architecture crystalize." Mot. 8. But certification was fully briefed nine months ago and submitted seven months ago. A proposed subclass, its representatives, and its counsel belonged in that briefing, not in a motion filed months later. *Valentine v. Crocs, Inc.*, 2024 WL 5340074, at *3 (N.D. Cal. Sept. 19, 2024) (intervention motion untimely when filed 13 days after defendant's opposition to class certification).

**B. Movants' Delay Was Without Justification.**

Delay runs from when an applicant "should have been aware that its interests would no longer be protected adequately by the parties." *Brown*, 172 F.4th at 1137 (quoting *Kalbers*, 22 F.4th at 823). Would-be intervenors must move once they are on notice that their interests "*might* be adversely affected," "not when they could be certain of harm," *id.* at 1135, 1137.

Movants had that notice since this case was filed in July 2023, and certainly no later than October 2025. The gap they allege—no named plaintiff whose "pleaded role is to represent textbook authors as a distinct group," Mot. 6—was plain from the original complaint and still true in October 2025, when Plaintiffs sought to certify a books class of "[a]ll legal or beneficial owners," authors and publishers alike. ECF 445 at 1. There was an additional nine-month delay after the class certification motion was submitted in February 2026. That delay too is unexplained and inexplicable, especially given that movant Saladin filed in May 2026 to represent a textbook subclass in *Elsevier*. *Elsevier*, ECF 44. Movants here waited until September 28, 2026. "[A]ny

substantial lapse of time weighs heavily against intervention," *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996), and *Brown* upheld a finding that an unexplained three-month delay was unreasonable, 172 F.4th at 1138. Movants' explanation for the delay—that they "became aware of the need for intervention" after "the approval of the *Bartz* settlement a few months ago," Mot. 2-3—is badly wanting. That settlement, which was preliminarily approved in September 2025, *Bartz*, ECF 680, changed nothing about the status of *this* case or movants' potential role in it. And even if settlement discussions in *Bartz* suddenly triggered movants' interest, those discussions too were long ago, in 2025. Indeed, the putative publisher-intervenors who filed in January 2026 invoked their *Bartz* settlement experience as justification for their shorter delay, and the Court rightly questioned it even then: "you're having this experience that you're having in *Bartz* in September, or actually last summer, but yet you wait until January." ECF 430 at 12. These movants waited nine more months.[1]

### C. Movants' Delay Prejudices the Parties and the Court.

When weighing whether an intervention motion is timely, prejudice from the movant's delay is "the most important factor." *Brown*, 172 F.4th at 1134. Movants' belated intervention would inflict prejudice here. Had movants come forward in 2025 or earlier, the parties could have taken textbook-specific discovery before fact discovery closed, and the Court could have considered how Rule 23 applies to a putative textbook subclass with the certification motion. Intervention at this late stage requires the Court to lift the stay, reopen discovery into seven new parties and 84 new copyrighted works, and entertain a second certification motion.

The reopened discovery would go to the questions that divided the parties on certification. Movants say their subclass needs "evidence and relief distinct from trade authors" and "tailored proof of market harm," including "evidence of textbook adoption, revision economics, and customer purchasing decisions," and that textbooks' "multiple contributors across editions and formats" make "different damages models" likely. Mot. 5, 10; Prop. Compl. ¶ 4. They say

[1] Movants' request also comes long after the scheduling order's deadline to add parties, and for that reason alone can be denied under Rule 16(b)(4). *Harris v. Vector Mktg. Corp.*, 2010 WL 3743532, at *1-2 (N.D. Cal. Sept. 17, 2010). Movants do not even acknowledge that deadline.

publishing contracts "generally do not include clear language regarding the split of damages," producing "conflicts over control, licensing, and allocation." Mot. 5. Those are the work-by-work questions of ownership, license, market effect, and damages that, as Google has shown, preclude certification. Class Cert. Opp. 13-22. For movants alone, answering them would require discovery into contracts with at least six publishers, the shares of co-authors who are not before the Court, the histories of dozens of editions, and when Google supposedly infringed each work. *See* Prop. Compl. ¶¶ 12, 16, 19, 22, 25, 29, 31, 93 & Exs. A-1 to A-6. And because "each subclass must independently [satisfy] Rule 23," *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981), intervention would require new briefing, evidence, experts and more.

## II. The Court Should Deny Intervention As Of Right.

### A. Section 501(b) Does Not Grant Movants a Right to Intervene.

Section 501(b) provides that a court "may require the joinder, and shall permit the intervention, of any person having or claiming an interest in the copyright." 17 U.S.C. § 501(b). The clause refers to the copyright on which a given plaintiff is already suing; it ensures that "the other owners whose rights [in that work] may be affected are notified and given a chance to join the action." *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 886 (9th Cir. 2005) (en banc) (quoting H.R. Rep. No. 94-1476, at 159 (1976)). Movants claim no interest in any named plaintiff's copyright; they want to litigate their own. And "even if § 501(b) gave [movants] an unconditional right to [intervene], a motion to intervene under Rule 24(a) must be timely." *Great Bowery Inc. v. Consequence Sound LLC*, 174 F.4th 1336, 1341 (11th Cir. 2026). Movants' motion is not.

### B. Denial Would Not Impair Movants' Ability to Protect Their Interests.

Movants must show that, absent intervention, resolution of this action may "impair or impede the[ir] ability to protect [their] interest." Fed. R. Civ. P. 24(a)(2). Movants say the class action will "either bind" them or "require them to opt out and pursue their claims separately." Mot. 6. That is not impairment. "Neither a proposed class action nor a rejected class action may bind nonparties." *Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011). If certification is denied—as the questions movants describe confirm it should be—nothing here binds them. If a class were certified, they would receive notice and could opt out or object to any settlement. *See Brown v. Accellion*,

*Inc.*, 2023 WL 1928210, at *3 (N.D. Cal. Feb. 10, 2023) (it is "well-established" that proposed intervenors' interests are not impaired given their "ability to file objections and opt out of" any class settlement); *Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002) (explaining that "nonnamed class members [may] object to a settlement at the fairness hearing without first intervening"); *see also* Fed. R. Civ. P. 23(e)(2)(D) (requiring Court to find any class settlement treats class members equitably). And "[m]ere inconvenience to the [proposed intervenor] caused by requiring him to litigate separately is not the sort of adverse practical effect contemplated by Rule 24(a)(2)." *Blake v. Pallan*, 554 F.2d 947, 954 (9th Cir. 1977).

Movants are well equipped to litigate separately in this District. They already have their own counsel, complaint, and suits against two other AI developers. They seek statutory damages—for 84 representative works—plus fees. Prop. Compl. ¶ 106; 17 U.S.C. §§ 504(c)(2), 505. They are not among those "people who individually would be without effective strength to bring their opponents into court at all," whom Rule 23's drafters "had dominantly in mind." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). And they can have what they seek—their own lawyers, theories, proof, and a voice on "class governance"—in their own case. Mot. 10.

**C. Movants Have Not Shown Inadequate Representation.**

Movants must show that the existing parties do not "adequately represent" the interest they claim will be impaired. Fed. R. Civ. P. 24(a)(2). The hypothetical divergence of interests that movants describe—over "control, licensing, and allocation" in some imaginary settlement discussion, Mot. 5—is not with the named plaintiffs. It concerns competing claims by authors and publishers—both within Plaintiffs' proposed class of "legal or beneficial owners," ECF 445 at 1—to the same works and to the single statutory award each supports. 17 U.S.C. §§ 501(b), 504(c)(1); *see* ECF 382 at 1. Movants' own evidence shows how contested those questions are: even in a settlement, allocating textbook recoveries called for percentage claims by authors and publishers, an exchange of information when they disagreed, and a Special Master for disputes that remained—"a multi-step, complicated adversarial process." Pawlak Decl. ¶¶ 7-8; Mot. 5. In a litigation class, those disputes become ownership questions that must be tried work-by-work and will present substantial manageability issues, Class Cert. Opp. 13-15. *See In re Hyundai & Kia Fuel Econ. Litig.*,

926 F.3d 539, 556 (9th Cir. 2019) (en banc) (litigation class requires "manageability at trial"). Movants' market-harm contention—that textbooks require "tailored proof of market harm"—is not so much a divergence with Plaintiffs as a recognition that any claim of market harm (as may be relevant to questions of fair use and damages) will vary by work. *See* 17 U.S.C. § 107 (requiring market harm to "*the* copyrighted work" (emphasis added)). That is a problem for *certification*, not a justification for intervention. Mot. 10; *see* Class Cert. Opp. 20-21.

A textbook author subclass would not resolve those disputes; it would bring them to the fore. For example, movants Bodie and Marcus claim interest in 13 registrations, each of which names a co-author who is not before the Court, and lists McGraw-Hill as the claimant. Prop. Compl. Exs. A-3, A-4. Six registrations list a publisher as an author, Ex. A-1 rows 25, 29-31, Ex. A-3 rows 17-18, and the "author" of a work made for hire is "the employer or other person for whom the work was prepared," 17 U.S.C. § 201(b)—so movants' proposed subclass of "textbook authors," Prop. Compl. ¶ 93, could include the very textbook publishers it is meant to exclude. Cengage and Elsevier—the registered claimants for most of the works that movants Loewy and Patton claim interest in—are themselves seeking to represent a putative class in a separate case. Prop. Compl. Exs. A-5, A-6; *Hachette*, ECF 1 ¶ 139. Such ownership questions must be resolved work by work, Class Cert. Opp. 15, and "[t]he inclusion of new class representatives will not cure the deficiencies" that "militate against class certification," *In re Flash Memory Antitrust Litig.*, 2010 WL 2332081, at *18 (N.D. Cal. June 9, 2010).

**III. The Court Should Deny Permissive Intervention.**

Permissive intervention also requires a timely motion, judged "more strictly," *LULAC*, 131 F.3d at 1308, so it fails for the same reasons. But even a timely motion would fail. The Court must consider whether "intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Unlike the timeliness prejudice inquiry, which turns on the movant's delay, *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 857 (9th Cir. 2016), this factor considers the delay and prejudice from intervention itself. Courts weigh if it will "prolong or unduly delay the" case, *Spangler v. Pasadena City Bd.*, 552 F.2d 1326, 1329 (9th Cir. 1977), against "the value added by" the movant's participation, *Perry v. Prop. 8 Off.*, 587 F.3d 947, 956 (9th Cir. 2009).

Movants assert there will be "no delay," Mot. 10, but the differences on which their motion rests—and the discovery to which Google would be entitled—would unduly delay this case.

Movants say they "are not raising new claims." Mot. 3. But their pleading alleges (without factual support) that Google "distributed [works] to others while torrenting them," and lists that as a common question for the subclass—an issue untethered to anything in the current case. Prop. Compl. ¶¶ 2, 97.[2] Their proposed subclass also reaches textbooks Google "downloaded, copied, reproduced, uploaded, and/or otherwise used to train" its models, *id.* ¶ 93, going beyond the operative complaint's class based on works "used by Google to train," ECF 234 ¶ 163, and beyond even the broader formulation in Plaintiffs' class certification motion, ECF 445 at 1; Class Cert. Opp. 10-12. Intervention that would "inject new issues and matters that are well beyond the scope of" the existing claims "at such a late stage in the proceedings" causes undue delay. *See Smith v. Marsh*, 194 F.3d 1045, 1051 (9th Cir. 1999).

Intervention would also add *at least* 84 registrations[3] to the case—each requiring discovery into the same sorts of individualized questions Google identified in the named plaintiffs' claims.

*Ownership.* Movants plead that each of them "assigned exclusive publication and distribution rights" to a publisher. Prop. Compl. ¶ 31. But Patton says he wrote his books "as an employee of Lion Den Inc.," *id.* ¶ 25, while his registrations name him and a co-author as authors, and Elsevier or Mosby as claimant, Ex. A-5—raising the same work-for-hire question Google identified for named Plaintiff Larson, Class Cert. Opp. 5-6.

*Registration.* Movants allege only that "[o]ne or more edition and/or version of each of the representative works has been registered." Prop. Compl. ¶ 32. Several registrations claim only "new and revised text" or "text (revised & updated)." Ex. A-1 rows 1-2, 10-12.[4] What each registration

---

[2] It appears that movants imported these baseless allegations from a complaint filed against another generative AI company as the proposed complaint here includes unexplained references to output of OpenAI's model "ChatGPT." *See* Prop. Compl. ¶ 74.

[3] Movants aver that these registrations are merely "representative works." Prop. Compl. ¶ 32. The actual scale of the expansion of the case thus remains unclear.

[4] For such registrations, movants must prove "substantial" copying of that edition's own contribution. *See Newton v. Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2004). By movants' account,

(continued...)

covers, and whether successive editions support separate statutory damages awards, are questions for each edition. 17 U.S.C. §§ 103(b), 504(c)(1); Class Cert. Opp. 16, 21. Eleven registrations came more than three months after first publication, so both subclass membership—which, for such works, requires registration within five years of publication and "before Google's copying"—and statutory damages turn on when Google supposedly first copied each work. Prop. Compl. ¶ 93; Ex. A-1 rows 8-9, 27, 31-33; Ex. A-2 rows 7, 11; Ex. A-3 rows 3, 13, 18; 17 U.S.C. § 412; *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 699-701 (9th Cir. 2008).

*License.* Movants' claimed rights run through contracts with at least six publishers, Prop. Compl. ¶¶ 12, 16, 19, 22, 25, 29, 31, in a market movants describe as involving "extensive licensing, sub-licensing, [and] permissions," Mot. 2. Whether any of these books reached Google under a publisher's agreement, as countless books have, *see* ECF 448 ¶¶ 10-11, and what such an agreement permits—which "requires an analysis of the terms of each agreement," *id.* ¶ 12—are questions for each book and each contract. *See* Class Cert. Opp. 17-18 (describing license chain from named Plaintiff Almond through his publisher to Google).

*Market effect.* Movants say that textbooks are unlike trade books purchased by individuals because textbooks are "adopt[ed]," and this process varies by educational institution. Prop. Compl. ¶¶ 4, 80-81. Their titles run the gamut of educational levels. Ex. A-1 rows 29-31; Ex. A-3 rows 10-13. Any proof of market effect would thus differ title by title. *See* Class Cert. Opp. 20-21 (market effects for fair use and damages raise individualized issues). Google is entitled to and undoubtedly would contest these and other questions for each work, *see id.* at 23, and the proposed subclass would multiply them across "thousands" of authors, Prop. Compl. ¶ 96.

## CONCLUSION

Movants waited too long, and their own arguments undermine intervention. If the differences they describe matter, they are reasons to deny certification, not add a subclass.

---

their textbooks "undergo substantial revisions and updates on a regular schedule," by author teams "whose composition may change from edition to edition." Mot. 2. The elements of "ownership" and "copying" will thus require individualized inquiries into what works were embodied by a particular edition, who authored those works, whether and how much of those works were copied—inquiries that cannot be resolved by the registration certificate alone.

Respectfully submitted,

Dated: October 19, 2026

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Eric P. Tuttle*
Eric P. Tuttle
E-mail: eric.tuttle@wsgr.com

*Counsel for Defendant*
GOOGLE LLC